# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY AND SURETY
COMPANY as Administrator for RELIANCE
INSURANCE COMPANY,

                Plaintiff,

vs.

DORMITORY AUTHORITY - STATE OF NEW
YORK, TDX CONSTRUCTION CORP.,
and KOHN PEDERSEN FOX ASSOCIATES, P.C.,

                Defendants.

Civil Action No.: 07 CV 6915

COMPLAINT and
JURY DEMAND

     Plaintiff, Travelers Casualty and Surety Company as Administrator for Reliance Insurance Company (hereinafter "Plaintiff"), by and through its attorneys, Dreifuss Bonacci & Parker, LLP, as and for its Complaint and Jury Demand against the Defendants, Dormitory Authority - State of New York, TDX Construction Corp. and Kohn Pedersen Fox Associates, P.C., alleges as follows:

## JURISDICTION AND VENUE

     1.    Travelers Casualty and Surety Company (hereinafter "Travelers") is incorporated in the State of Connecticut with its principal place of business located at One Tower Square, 4PB, Hartford, Connecticut.

     2.    Reliance Insurance Company (hereinafter "Reliance") is incorporated in the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania.

3. Defendant, Dormitory Authority - State of New York (hereinafter "DASNY"), is a public benefit corporation of the State of New York, with a principal place of business located at 515 Broadway, Albany, New York.

4. Defendant, TDX Construction Corp. (hereinafter "TDX"), is a New York corporation with its principal place of business located at 345 Seventh Avenue, New York, New York.

5. Defendant, Kohn Pedersen Fox Associates, P.C. (hereinafter "KPF") is a professional corporation of the State of New York with its principal place of business located at 111 West 57th Street, New York, New York.

6. The matter in controversy, exclusive of interest, costs and attorney's fees, exceeds $75,000.00.

7. This Court has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as the defendants are believed to be located in this District and the matter in controversy took place in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

9. This action arises from a public works construction project known as Baruch College, Site B, a/k/a the Baruch College Vertical Campus, a/k/a the Baruch Academic Complex, a/k/a the William & Anita Newman Vertical Campus (the "Project").

10. The Project involved the design, site preparation, excavation, and construction of a 785,000 square foot mixed-use structure, with three below-grade levels and 14 above-grade stories, occupying approximately ¾ of the city block bounded between 24th and 25th Streets and Lexington and Third Avenues in Manhattan.

### ***The Parties***

11. DASNY was the "owner" of the Project.

12. Upon information and belief, DASNY's client(s) were the City University of New York and/or Baruch College.

13. DASNY engaged Defendant KPF as the architect of record for the Project.

14. DASNY engaged Defendant TDX as the construction manager for the Project.

15. Upon information and belief, TDX served as the "Owner's representative" in connection with this Project, and was designated by DASNY, and operated in fact, as DASNY's authorized agent with respect to the Project.

16. DASNY also entered into thirteen separate co-prime contracts in connection with the Project's construction work. DASNY awarded two such co-prime contracts to Trataros Construction, Inc. ("Trataros") as the lowest responsible bidder.

17. On or about April 22, 1998, DASNY entered into a certain prime contract with Trataros in the amount of $50,222,000.00, said contract being known as "Package No. 1 – General Construction Work, Contract No. 15 at Baruch College, Site B, DA# 6500 1802 2176" (hereinafter "Contract No. 15").

18. As a prerequisite to being awarding the contract, Trataros was required to and did procure performance and payment bonds with a penal sum of $50,222,000.00 naming DASNY as the obligee and Trataros as the principal.

19. On or about August 27, 1998, DASNY entered into a separate co-prime contract with Trataros in the amount of $24,140,000.00, said contract being known as "General Construction #2, - Contract #16 at Baruch College – Site B, DA # 6500 1802 2178, JDE# 61506" (hereinafter, "Contract No. 16").

3

20. As a prerequisite to being awarded the contract, Trataros was required to and did procure performance and payment bonds with a penal sum of $24,140,000.00 naming DASNY as the obligee and Trataros as the principal.

21. Trataros procured these bonds from Reliance, which at the time was engaged in the business of writing surety bonds at the request, and on behalf, of contractors conducting business in the State of New York. With respect to Contract No. 15 and Contract No. 16, Trataros obtained a separate and distinct set of performance and payment bonds from Reliance with respect to each contract.

22. Travelers, which also engages in the business of writing surety bonds at the request of and on behalf of contractors conducting business in the State of New York, entered into an agreement with Reliance wherein Reliance granted Travelers a Power of Attorney to act as administrator for Reliance and as a reinsurer with respect to certain reinsured contracts and reinsured liabilities, including the contracts and liabilities relevant to this Complaint. Travelers is the real party in interest since it is the entity which has suffered, and/or in the future may suffer, the losses pursued in this matter.

23. Trataros has assigned its affirmative claims and causes of action arising from the Project to Travelers.

24. The impact claims of certain Trataros' subcontractors who allege that they have incurred damages resulting from, *inter alia*, extra work, inefficiencies, lost productivity, escalation costs, and individual and/or cumulative impacts caused by the actions, breaches and/or negligence of the Defendants in connection with the Project, have been liquidated in favor of Travelers and/or its subrogor Trataros, pursuant to the terms of their respective subcontracts with

Trataros and/or individual liquidating agreements entered into by and between Travelers and said subcontractors.

### *The Project*

25. Architecturally, the Project incorporated a number of ambitious design elements, including interlocking atria in the interior spaces, multiple land uses within the building, a complex curvilinear façade, and a variety of façade materials including glass curtainwall, masonry, and aluminum paneling.

26. The Project's construction work was split up among thirteen separate co-prime contracts. At various points in the Project's design phase, the number of anticipated co-prime contracts fluctuated, at one point numbering as many as seventeen (17) anticipated construction contracts.

27. Several of the final co-prime contracts were eventually bid out by DASNY as omnibus packages, incorporating work initially designated for other co-prime contracts.

28. In addition to the work initially intended for Contract No. 15, Contract No. 15 also incorporated the work for former Contract No. 5 (exterior paneling, windows and "curtainwall") and Contract No. 14 (elevator and escalator).

29. Contract No. 16 incorporated not only the work originally anticipated to be performed under that contract, but also the work for Contracts Nos. 8 (swimming pool) and 17 (roofing systems).

30. The contract documents, drawings, and technical specifications for the Project were prepared under a compressed design schedule, and the co-prime contracts were bid out on a "fast track" basis, such that certain bid packages were being bid upon and awarded (and construction being commenced under same) before the contracts for related work had been

completed by the architect. Likewise, the Project's planned construction schedule was compressed, with very little margin for slippage in the completion dates.

31. The compressed and/or accelerated design phase resulted in numerous design omissions and/or defects. The plans, specifications, and/or drawings generated by KPF for the various co-prime contracts (the "design documents").

32. In certain cases, the deficiencies in the design documents manifested themselves as discrepancies as between the several bid packages, such that two (or more) prime contractors performing related or dependent work would be required to rely upon conflicting criteria, such that the work of said co-prime contractors was not compatible.

33. The numerous defects and/or omissions in the design documents resulted in significant impacts to the performance of the co-prime contracts, including Contracts Nos. 15 and 16.

34. The Project's construction phase was further hampered by the failure of DASNY, TDX and/or KPF (the "Owner Team") to adequately coordinate, control, and/or manage construction.

35. The Owner Team severely impacted the Project by providing insufficient supervision and inspection of the installed work, inadequate construction scheduling, and dilatory resolution of issues of design/engineering, *inter alia*.

36. The conflicting pressures of public construction, ambitious architecture, compressed design and construction phases, fast-track bidding, thirteen co-prime contracts, together with the inadequate supervision and coordination provided by the Owner Team, KPF's flawed and defective work product (including design work performed <u>during</u> the construction phase and after award of Contracts Nos. 15 and 16), as well as the Owner Team's intransigent

uncooperativeness and lack of accountability, all combined to create significant impacts on the Project, which severely affected not only Trataros and its subcontractors/suppliers, but nearly every co-prime contractor on the Project.

37. As the Project's owner, DASNY was the sole entity to enjoy privity of contract with each of the following, *inter alia*, the architect/engineer of record, KPF; the Project's construction manager, TDX; and each of the thirteen co-prime contractors.

38. Upon information and belief, DASNY also entered into separate contracts with additional entities engaged to perform and/or provide, *inter alia*, asbestos abatement, demolition, furniture and equipment, telecommunications, and security systems for the Project.

39. DASNY competitively bid the various co-prime contracts for construction of the Project. The Project's excavation and foundation work was bid out as "Contract No. 1", and was the first co-prime construction contract awarded for the Project. Upon information and belief, DASNY awarded Contract No. 1 on or about May 2, 1997, nearly a year before Contract No. 15 was awarded to Trataros, and more than fifteen months before Trataros was awarded Contract No. 16.

40. Upon information and belief, although demolition and asbestos activities had preceded it under separate contract(s), construction activities began under Contract No. 1 on or about May 22, 1997.

41. While the construction phase continued, the various co-prime contractors encountered numerous impacts, including significant problems associated with the structural steel prime contract ("Contract No. 2").

42. One of the prime contracts (Contract No. 5) was placed out for competitive bidding, however, DASNY received no responsive bids and determined to incorporate the scope of work for this contract into Contract No. 15.

43. Additional impacts to the Project arose from dilatory finalization, bidding, and award of the various co-prime contracts.

44. The various co-prime contracts contained numerous omissions, defects, and inconsistencies in the contract documents, drawings, and specifications; these led to the issuance of numerous addenda, bulletins, notices of direction, change orders, and requests for information in order to attempt to resolve the design issues.

45. The excessive amounts of changes, "clarifications", revisions, amendments, reversals, additions, and directives imposed upon the Project generally, and Contracts Nos. 15 and 16 specifically, caused significant cumulative impact upon Trataros, and/or its subcontractors/suppliers.

46. All these problems (in addition to impacts associated with the factors outlined in Paragraphs 25-38 & 41-45 ) began affecting the Project even before Contracts Nos. 15 and 16 were awarded, yet Trataros was impacted by these problems insofar as much of the work under its separate co-prime contracts was dependent upon the timely and proper completion of the design work and predecessor construction activities.

47. Even following the award of Trataros' two separate co-prime contracts, the Project continued to be hampered by the problems of mounting inefficiencies associated with the problems identified in Paragraphs 25-38 & 41-46.

48. The Owner Team further exacerbated the impacts upon Trataros and/or its subcontractors/suppliers by providing inadequate coordination of the various co-prime

contractors, late and contradictory decision-making, failure to adequately inspect the work of other co-primes, failure to maintain accurate and adequate construction schedules, among other things.

## FIRST COUNT
### (Breach of Contract)

49. Travelers repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

50. Despite the aforesaid impacts discussed above, Trataros has completed both of its co-prime contracts with DASNY.

51. For approximately five years, the Vertical Campus building has been fully occupied and utilized by Baruch College and is fully operational.

52. Trataros was never defaulted by DASNY with respect to Contract No. 15, nor with respect to Contract No. 16.

53. Despite this, Trataros has not been paid the entire contract balances and retainages due to it under either of its co-prime contracts. DASY currently owes Trataros approximately $4,000,000 in contract balances and retainage on Contracts No. 15 and 16, plus interest, costs, attorney's fees and expenses.

54. Travelers, as administrator for the bonds issued by Reliance, is equitably subrogated to the rights of Trataros, which rights have also been assigned to Travelers by Trataros.

55. Request has been made for payment from DASNY, but DASNY has failed to make said payment.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a. Compensatory damages;

9

b.  Costs;

c.  Attorney's fees and expenses;

d.  Interest; and

e.  Such other relief as the Court deems just and proper.

## SECOND COUNT
### (Impact Claims of Trataros)

56. Travelers repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

57. Trataros provided formal notification to DASNY of its intent to submit a claim for additional costs incurred by Trataros and its subcontractors while completing the work on Contracts Nos. 15 and 16 via letters dated June 7, 2001, September 7, 2001 and October 22, 2001, *inter alia*.

58. As a result of the various unforeseeable impacts discussed above, Trataros incurred significant costs and expenses, performed additional work outside its original scope(s) of work under Contracts Nos. 15 and 16, and was obstructed and/or interfered with in its respective performance of Contracts Nos. 15 and 16.

59. Trataros was impacted by numerous differing site conditions; factors beyond the control of Trataros causing, *inter alia*, delays, lost productivity, inefficiencies, acceleration, cost escalation, and additional work; DASNY's failure to take appropriate action to prevent unreasonable impacts to the Project; DASNY's failure to provide adequate coordination of the Project; DASNY's failure to provide non-defective plans, drawings and specifications; DASNY's breach of the implied covenant of good faith and fair dealing implicit in Contracts Nos. 15 and 16; DASNY's gross negligence in administering the Project; DASNY's active

interference with Trataros' ability to perform Contracts Nos. 15 and 16; and/or DASNY's obstruction of Trataros' ability to perform Contracts Nos. 15 and 16, among other things.

60. Travelers, in its capacity as surety for Trataros, is equitably subrogated to Trataros' impact claims as well as its rights to the contract funds held by DASNY. Trataros' rights in its impact claims, and/or its entitlement to the funds that should be paid pursuant to said claims, have been assigned to Travelers.

61. The impacts discussed above, in part and/or cumulatively, were uncontemplated by Trataros at the time it bid on the Project.

62. The impacts discussed above, in part and/or cumulatively, led to unreasonable and unforeseeable delays, said delays being attributable to breach(es) by DASNY and/or the Owner Team of fundamental contractual obligation(s).

63. The impacts discussed above, in part and/or cumulatively, were caused by the gross negligence of DASNY and/or its representatives.

64. The impacts discussed above, in part and/or cumulatively were so unreasonable and of such magnitude as to constitute an intentional abandonment of Contracts Nos. 15 and 16 by DASNY.

65. DASNY has acknowledged responsibility for at least some of the impacts set forth above by offering to pay, and/or making payment to, some subcontractors of Trataros for the impact of such conditions.

66. In addition, DASNY has paid certain change orders compensating Trataros and/or certain of Trataros' subcontractors/suppliers for costs/expenses arising from some of the aforesaid impacts and/or delays.

67. Travelers is entitled to payment far in excess of $5,000,000 (together with interest, costs, attorney's fees, and expenses), as a result of the damages sustained by Trataros caused by the impacts attributable to DASNY and/or its representatives.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a. Compensatory damages;

b. Costs;

c. Attorney's fees and expenses;

d. Interest;

e. Costs; and

f. Such other relief as the Court deems just and proper.

### THIRD COUNT
(Pass Through Claims)

68. Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

69. Trataros also advised the owner that its subcontractors/suppliers had submitted impact claims and/or were in the process of preparing such claims for which DASNY would be liable, totaling in excess of $20,000,000.00. DASNY was provided with notice of said claims in and around 2002.

70. DASNY, being aware of its ultimate liability, made partial payments to several of Trataros' subcontractors/suppliers and/or entered into settlements with said subcontractors/suppliers in connection with the aforesaid pass-through impact claims. In addition, DASNY agreed to pay certain of the pass-through impact claims but failed to do so.

71. DASNY also engaged in discussions with certain additional subcontractors/suppliers of Trataros, with regard to their respective pass-through impact claims, but was not able to reach an amicable agreement regarding same.

72. DASNY is liable to pay for the pass-through impact claims which it agreed to pay to the extent it has not already done so.

73. DASNY is also liable to pay Travelers for the damages incurred by any of Trataros' unpaid pass-through impact claimants who were adversely impacted by the unforeseen site conditions, design flaws, inadequate coordination, and other problems attributable to the actions, breaches and/or negligence of DASNY and/or its representatives. Upon information and belief, these claims currently far exceed $15,000,000.00.

74. DASNY should be held liable to pay all of Trataros' subcontractors/suppliers the amounts which DASNY previously agreed to pay in compromise of their respective claims, and/or those portions of said pass-though impact claims for which Trataros or Travelers would be liable as a result of the acts and/or omissions of the Owner Team, including but not limited to numerous differing site conditions, factors beyond the control of Trataros causing impacts and/or delays, DASNY's failure to take appropriate action, and its provision of defective, incomplete and/or inaccurate contract documents.

75. Travelers is entitled to said relief pursuant to its rights of equitable subrogation and an assignment by Trataros to Travelers. Further, at least three of said subcontractors have liquidated their pass-through impact claims with Travelers via liquidating agreements, and remaining subcontractors have done so through their subcontract agreements.

76. Travelers will serve as an intermediary with respect to these pass-through impact claims, and will pay the appropriate subcontractor/supplier pursuant to the terms of the

respective subcontracts and/or liquidating agreements, less Travelers' costs in connection with obtaining recovery of same.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a. The total amount of all such claims;

b. Attorney's fees and expenses;

c. Interest;

d. Costs;

e. Such other relief as the Court deems just and proper.

## FOURTH COUNT

77. Plaintiff, Travelers repeats and realleges each and every allegation contained in the above paragraphs of the Complaint and Jury Demand as if set forth herein in their entirety.

78. Travelers, in its capacity as surety for Trataros, itself incurred losses of no less than $3,000,000. A substantial portion of Travelers' losses are attributable to the acts and/or omissions of DASNY, and/or entities with whom DASNY enjoyed privity of contract and over whom DASNY possessed the ability/authority/responsibility to control said parties' actions, including but not limited to KPF, TDX, and the various co-prime contractors.

79. Travelers is entitled to recover from DASNY such amount of Travelers' own losses as is attributable to DASNY's acts and/or omissions, including but not limited to any expenses and attorney's fees which Travelers has incurred and/or will incur in defending claims brought against Travelers and/or its principal, Trataros, as a result of DASNY's said acts and/or omissions.

**WHEREFORE**, Plaintiff hereby requests judgment against DASNY for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Attorney's fees and expenses;

d. Interest;

e. Costs;

f. Such other relief as the Court deems just and proper.

## FIFTH COUNT

80. Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

81. DASNY engaged Defendant TDX as Construction Manager for the Project.

82. TDX did not properly perform its contractual and/or professional responsibilities as Construction Manager. TDX owed a duty of care to Trataros and/or Trataros' subcontractors/suppliers arising from their status as third-party beneficiaries of the contracts between TDX and DASNY, and/or as a result of the functional equivalent of privity existing between same and TDX. Rather than helping alleviate and/or limit the impacts identified above, TDX contributed to the impacts that plagued the Project.

83. The actions and/or failures to act of TDX constituted negligence and/or professional negligence.

84. The negligence and/or professional negligence of defendant TDX contributed in a material respect to the damages incurred by Travelers, Trataros and/or Trataros' subcontractors/suppliers resulting from the impacts discussed above.

85. Travelers has standing to assert claims as against TDX either as a result of the assignment from Trataros; equitable subrogation with respect to the rights of claimants, the

obligees, and/or the principal; third-party beneficiary rights in connection with TDX's contracts with DASNY, and/or as a party whose connection to TDX is so close as to approach privity.

86. Defendant, TDX is liable to Travelers for the damages incurred by Travelers and by Trataros as well as the damages incurred by the subcontractors and/or suppliers of Trataros, including but not limited to the damages associated with the impacts discussed above and such expenses and attorney's fees that Travelers may incur as a result of defending claims brought against Travelers and/or its principal as a result of the acts, omissions, negligence, and/or professional negligence of TDX.

**WHEREFORE**, Plaintiff hereby requests judgment against TDX Corp for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Attorney's fees and expenses;

d. Interest;

e. Costs;

f. Such other relief as the Court deems just and proper.

## SIXTH COUNT

87. Plaintiff, Travelers, repeats and realleges each and every allegation contained in the above paragraphs of this Complaint and Jury Demand as if set forth herein in their entirety.

88. DASNY engaged Defendant KPF as architect/engineer of record for the Project.

89. KPF did not properly perform its contractual and/or professional responsibilities as the Project's architect/engineer. KPF owed a duty of care to Trataros and/or Trataros' subcontractors/suppliers arising from their status as third-party beneficiaries of the contracts between KPF and DASNY, and/or as a result of the functional equivalent of privity existing

between same and KPF. Rather than helping alleviate and/or limit the impacts identified above, KPF contributed to the impacts that plagued the Project.

90. The actions and/or failures to act of KPF constituted negligence and/or professional negligence.

91. The negligence and/or professional negligence of defendant KPF contributed in a material respect to the damages incurred by Travelers, Trataros and/or Trataros' subcontractors/suppliers resulting from the impacts discussed above.

92. Travelers has standing to assert claims as against KPF either as a result of the assignment from Trataros; equitable subrogation with respect to the rights of claimants, the obligees, and/or the principal; third-party beneficiary rights in connection with KPF's contracts with DASNY, and/or as a party whose connection to KPF is so close as to approach privity.

93. Defendant KPF is liable to Travelers for the damages incurred by Travelers and by Trataros as well as the damages incurred by the subcontractors and/or suppliers of Trataros, including but not limited to the damages associated with the impacts discussed above and such expenses and attorney's fees that Travelers may incur as a result of defending claims brought against Travelers and/or its principal as a result of the acts, omissions, negligence, and/or professional negligence of KPF.

**WHEREFORE**, Plaintiff hereby requests judgment against Defendant KPF for:

    a. Compensatory damages;

    b. Consequential and incidental damages;

    c. Attorney's fees and expenses;

    d. Interest;

    e. Costs;

    f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff, Travelers Casualty and Surety Company, hereby demands trial by jury as to all issues in the above matter.

> Respectfully submitted,
> DREIFUSS BONACCI & PARKER, LLP
>
> By: *[signature: Eli Rogers]*
> ELI J. ROGERS (ER-6564)
> *Attorneys for Plaintiff,*
> *Travelers Casualty and Surety Company as*
> *Administrator for Reliance Insurance Company*
> One Penn Plaza, 36th Floor
> New York, New York 10119
>   and
> 26 Columbia Turnpike
> North Entrance
> Florham Park, New Jersey 07932
> 973-514-1414
> *Please respond to New Jersey office.*