UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  vs.<br><br>DORMITORY AUTHORITY - STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>      Defendants. | Case No. 07-CV-6915 (DLC)<br><br><br><br>DECLARATION OF<br>JOHN SCARPELLINO, SR.<br>IN OPPOSITION TO<br>DEFENDANT KOHN PEDERSEN<br>FOX ASSOCIATES, P.C.'S<br>MOTION TO DISMISS |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,<br><br>      Third-Party Plaintiffs,<br><br>  vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>      Third-Party Defendant. | |

**JOHN SCARPELLINO, SR.**, of full age and under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.10, declares as follows:

  1.  I am a Claims Manager for the Plaintiff, Travelers Casualty and Surety Company, as Administrator for Reliance Insurance Company (hereinafter "Travelers"). I make this Affidavit in connection with Travelers' Opposition to the Motion to Dismiss brought by Defendant, Kohn Pedersen Fox Associates, P.C. ("KPF"). The statements I make herein are based primarily upon my personal knowledge and a review of the files and records that Travelers has obtained from its principal, Third-Party Defendant Trataros Construction, Inc. ("Trataros"),

along with any other information that Travelers gathered in its investigation of this matter to date, including but not limited to discovery obtained during the pendency of proceedings before the Honorable Harold Baer, Jr., U.S.D.J., involving the same five parties which appear in the instant action's present caption (among other parties subsequently joined to said proceedings via third-party and fourth-party complaints). (For a more detailed discussion of the procedural history of this matter, see, Certification of JoAnne M. Bonacci, "Bonacci Cert.," at ¶ 17 et seq.)

2. Travelers is in the business of writing a variety of surety bonds, including bonds issued at the request of construction contractors required by law and/or by contract to supply them to project owners such as Defendant/Third-Party Plaintiff, Dormitory Authority - State of New York (hereinafter "DASNY").

3. One such construction contractor, Trataros, obtained two sets of performance and payment bonds when it separately bid upon, and was separately awarded, two construction contracts with DASNY in connection with a construction project commonly referred to as, inter alia, Baruch College, Site B (the "Project"). Upon information and belief, Trataros' two separate contracts with DASNY were styled as "Package No. 1 – General Construction Work, Contract No. 15 at Baruch College, Site B, DA# 6500 1902 2176," (hereinafter "Contract No. 15" or "GC-1"); and "General Construction #2, Contract #16 at Baruch College – Site B, DA # 6500 1802 2178, JDE# 61506," (hereinafter "Contract No. 16" or "GC-2"). (See, Bonacci Cert., at Exhibits 1 & 2, respectively.)

4. Based upon matters set forth on the face of the document, Contract No. 15 is dated April 22, 1998, and its original contract value was $50,222,000.00. (See, id., Exhibit 1.) (Cf., Exhibit A hereto, reciting that the performance bond issued in connection with Contract No. 15 has a penal sum of $50,222,000.)

2

5.      Based upon matters set forth on the face of the document, Contract No. 16 is dated August 27, 1998 and its original contract value was $24,140,000.00. (See, id., Exhibit 2.) (Cf., Exhibit C hereto, reciting that the performance bond issued in connection with Contract No. 16 has a penal sum of $24,140,000.)

6.      Upon information and belief, including information supplied to Travelers by Trataros, the scopes of work, and as a result the respective contract values, for both Contract No. 15 and Contract No. 16 were increased substantially through a number of change orders and other directives following the award of said contracts and during Trataros' performance of same.

7.      Upon further information and belief, many of the change orders issued during the course of the Project were attributed by TDX and/or DASNY as being the result of design errors and/or design omissions, including no less than 74 change orders issued under Contract No. 15 ("GC-1") and 107 issued under Contract No. 16 ("GC-2"). (See, Bonacci Cert., at ¶¶ 14-15 and Exhibits 7 & 8 thereto) (attaching "change order memoranda" prepared by TDX recommending that DASNY approve the increase to Trataros' contract(s) and that the cost should be attributed to design errors/omissions.)

8.      Upon information and belief, as the Project's architect of record, KPF was primarily responsible for the Project's design documents, including its plans and specifications. (See, Declaration of Peter Catalano, submitted with KPF's moving papers, at Exhibit B, p. A8, discussing KPF's obligation to provide "<u>all contract drawings and specifications</u> necessary for the construction of the building" such that they shall be "fully coordinated for bidding by the various Contractors," including "all engineering drawings, plot plans, all floor plans, sections, elevations, details, ... and other data required to obtain complete bids.") (Emphasis added.)

9. The respective bonds obtained by Trataros in connection with Contracts Nos. 15 and 16 were issued by Reliance Insurance Company ("Reliance"), and subsequently came to be administered by Travelers pursuant to a certain agreement with Reliance (hereinafter collectively referred to as, the "Bonds").

10. A true and correct copy of Performance Bond No. B28 80 150 issued by Reliance to Trataros as named principal, in connection with Contract No. 15, and subsequently administered by Travelers, is attached hereto as **Exhibit A**.

11. A true and correct copy of Labor and Material Payment Bond No. B28 80 150 issued by Reliance to Trataros as named principal, in connection with Contract No. 15, and subsequently administered by Travelers, is attached hereto as **Exhibit B**.

12. A true and correct copy of Performance Bond No. B28 80 353 issued by Reliance to Trataros as named principal, in connection with Contract No. 16, and subsequently administered by Travelers, is attached hereto as **Exhibit C**.

13. A true and correct copy of Labor and Material Payment Bond No. B28 80 353 issued by Reliance to Trataros as named principal, in connection with Contract No. 16, subsequently administered by Travelers, is attached hereto as **Exhibit D**.

14. After Travelers agreed to act as Reliance's administrator in connection with, inter alia, the Bonds, Trataros entered into a General Agreement of Indemnification ("GAI") with Travelers on or about November 20, 2001. Under the terms of the GAI, Trataros appointed Travelers as its attorney-in-fact for the purpose of, among other things, pursuing Trataros' rights in connection with the bonds issued and/or administered by Travelers on Trataros' behalf, and/or the contracts underlying same.

15. Upon information and belief, Trataros and its subcontractors incurred substantial impact costs due to extensive delays, unanticipated site conditions, inefficiencies, and/or lost productivity on the Project. (See, Travelers' Complaint filed herein, at ¶¶ 30-36, 44-48, a true and correct copy of which is attached to the Bonacci Cert. at Exhibit 9.) As a result of the losses that Travelers and/or its principal Trataros have suffered to date, and are likely to incur in the future, Travelers commenced the within proceedings against KPF, to the extent that the actions/omissions of KPF and/or its consultants caused the said delays, unanticipated site conditions, inefficiencies, and/or lost productivity on the Project. (See, id. at ¶¶ 87-93; and see, Bonacci Cert., ¶¶ 8-16.)

16. In addition to the causes of action filed by Travelers against KPF, on or about September 28, 2007, DASNY and TDX filed their Answer with Affirmative Defenses, Counterclaims, and Cross-Claims (the "DASNY/TDX Answer"). (See, Bonacci Cert. at Exhibit 14.) The DASNY/TDX Answer sets forth cross-claims against KPF, alleging claims for breach of contract and professional malpractice, as well as counts seeking contribution and/or contractual/common-law indemnification. (Id. at Exhibit 14, ¶¶ 157-205.)

17. Among other things, DASNY and TDX allege that KPF, as the architect of record for the Project, breached its contractual and professional obligations by submitting "plans, specifications and related design information" in an "[un]timely fashion" and which "contained errors, omissions and defects, and were not fully coordinated." (Id. at ¶¶ 171-172.)

18. DASNY and TDX further allege that KPF was notified of the impacts which the purported design defects were causing the Project; however, "[r]ather than correcting the Design Defects in a professionally competent and timely fashion, KPF … compounded [its] … errors by failing to acknowledge the design and coordination problems and refusing to fully cooperate in

offering a solution for their Design Defects." (Id. at ¶¶ 173-174.) As per DASNY's and TDX's allegations, these alleged design defects and KPF's "failure to acknowledge and correct [them] … in a timely or professionally competent fashion, <u>caused the cost of construction to increase</u> and **<u>significantly delayed, disrupted and impacted the construction</u> of the Project**." (Id. at ¶ 175) (emphasis added).

      19.    DASNY separately alleges that:

> KPF failed to exercise the required standard of care, competence and skill in the completion of its duties as architect of record for the Project. Among other things, KPF improperly and negligently: (1) failed to complete and coordinate the [plans, specifications, and related design information] … (2) failed to properly oversee and perform the professional services that were required to complete [said] … Design Documents, (3) failed to supervise and coordinate the work of its subcontractors and consultants and integrate their work into the Design Documents, (4) refused to acknowledge its Design Defects and/or implement the necessary remedial corrections in a timely or professionally competent fashion, and (5) failed to satisfy other elements of the required standard of care.

(Id. at ¶ 203.)

      20.    Upon information and belief, Trataros incurred substantial expense and liability as a result of the delays/impacts that occurred on the Project, at least a portion of which appears attributable to KPF. Upon further information and belief, as a result of the alleged deficiencies in the "plans, specifications and related design information" produced by KPF, numerous changes and/or corrections were required, further delaying the progress of the Project, as well as causing escalation of the labor and material costs of Trataros and/or Trataros' subcontractors and/or suppliers. (See, e.g., Bonacci Cert., ¶¶ 8-16 and Exhibits 4-8 thereto.) To date, a number of Trataros' subcontractors have alleged delay/impact claims arising from the actions/omissions of DASNY, TDX and/or KPF, and requested that Travelers and/or Trataros liquidate their subcontractor pass-through claims and prosecute same against the Defendants.

21. Finally, certain subcontractors and/or suppliers of Trataros filed claims against the Bonds, alleging that they have incurred millions of dollars in impact costs, which they claimed to be owed as a result of the substantial delays, impacts and disruptions that occurred on the Project.

22. In light of the foregoing, Travelers has reason to believe that KPF may be responsible for all or part of the losses that Travelers has incurred to date, and which it may incur in the future, as a result of KPF's alleged negligence.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: October 15, 2007

_____/S/_____
John Scarpellino, Sr.