UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DORMITORY AUTHORITY - STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>Defendants. | Case No. 07-CV-6915 (DLC)<br><br>CERTIFICATION OF JOANNE M. BONACCI IN OPPOSITION TO KOHN PEDERSEN FOX ASSOCIATES, P.C.'S MOTION TO DISMISS |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>Third-Party Defendant. | |

**JOANNE M. BONACCI, ESQ.**, of full age and under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.10, certifies as follows:

1. I am a partner in the law firm of Dreifuss Bonacci & Parker, LLP, attorneys for Plaintiff, Travelers Casualty and Surety Company, as Administrator for Reliance Insurance Company (hereinafter "Travelers") in the within matter, and as such am fully familiar with the facts set forth herein. I have been admitted pro hac vice to practice before this Court, and submit this Certification in connection with Travelers' opposition to the motion to dismiss pursuant to

FRCP 12(b)(6), brought by Defendant, Kohn Pedersen Fox Associates, P.C. ("KPF") in the within action.

2. Upon information and belief, Travelers' affirmative claims in this action relate to two construction contracts entered into by and between Third-Party Defendant, Trataros Construction, Inc. ("Trataros") and Defendant/Third-Party Plaintiff, Dormitory Authority – State of New York ("DASNY"), in connection with a certain construction project known as, inter alia, Baruch College, Site B (the "Project" or the "Baruch Project"). Trataros' contracts with DASNY are colloquially referred to as "Contract No. 15" (and/or contract "GC-1") and "Contract No. 16" (and/or contract "GC-2").

3. Due to the voluminous sizes of both Contract No. 15 and Contract No. 16, Travelers attaches excerpted portions of said contracts. In the event the Court wishes to be provided with complete copies of these two contracts, Travelers will furnish same. A true and correct copy of excerpted portions of Contract No. 15 is attached hereto as **Exhibit 1**.

4. A true and correct copy of excerpted portions of Contract No. 16 is attached hereto as **Exhibit 2**.

5. Upon information and belief, DASNY was the "owner" of the Baruch Project. (See, Exhibit 1, p.1 at preamble, & p.2 at ¶ 4, and, Exhibit 2, at same respective locations.)

6. Upon information and belief, KPF was the architect of record for the Project. (See, Declaration of Peter Catalano, submitted with KPF's moving papers, hereinafter the "Catalano Dec.," at Exhibit B, preamble.) (reciting that "KOHN PEDERSEN FOX ASSOCIATES, P.C., … [is] hereinafter referred to as the ARCHITECT," and that "the OWNER has requested the ARCHITECT to Provide Programming, Architectural, Engineering and

2

Construction Phase Services for the Construction of Baruch College – Site 'B'...," inter alia.) (Caps in original.) (And see, id., Article I and Appendix A.)

7.  Upon information and belief, Defendant, TDX Construction Corp. ("TDX") was the Project's construction manager. (See, a certain agreement purportedly executed on May 12, 1997, by and between DASNY and TDX, and entitled "Construction Phase Agreement", a true and correct copy of which is attached hereto as **Exhibit 3**.) [1]

8.  Upon information and belief, the Project was plagued by numerous impacts and delays, at least a portion of which, even before the start of litigation, was attributed by DASNY to actions/omissions on the part of KPF. Upon further information and belief, on or about May 30, 2002, DASNY apparently wrote to KPF; the face of this letter appears to recite allegations that KPF breached its contractual obligations as well as its standard of professional care in its work for the Project. A true and correct copy of DASNY's May 30, 2002 letter to KPF is attached hereto as **Exhibit 4**.

9.  Based upon the face of the document, DASNY's May 30, 2002 letter apparently refers to a number of alleged deficiencies in KPF's performance, including allegations of impacts to one of Trataros' subcontractors under Contract No. 15, Jordan Panel Systems Corp. ("Jordan Panel"). (Exhibit 4, pp. 6-8.)

10. Among other things, DASNY's May 30, 2002 letter recites that conflicting elements in KPF's design caused impacts for the manufacture and installation of the building's

---

[1] As discussed at greater length below, the claims at issue in this action were the subject of proceedings before the Honorable Harold Baer, Jr., U.S.D.J. (See, ¶¶ 20-34, below.) During the pendency of those earlier proceedings, and several related litigations, document discovery proceeded between the five parties named in this action's present caption (among other parties joined via impleader). No depositions were taken in the prior proceedings. Most of the documents attached to this Certification, such as Exhibit 3, were produced to Travelers by one or more of the defendants herein, and as such are marked with "bates stamps" indicating the originating document production, and thus exist in files presumably maintained by the defendants in the ordinary course of business. With respect to Exhibits 1 and 2, these documents are found in Trataros' project records, and were made available to the defendants for copying during the pendency of the earlier proceedings before Judge Baer.

exterior façade: "KPF's construction documents failed to reconcile the specified design and erection tolerances for the [exterior] siding system with the … tolerances for the [structural] steel …." (Exhibit 4, p. 7.)

11. As recited by DASNY's letter dated May 30, 2002, this alleged conflict in KPF's specifications "prevented … Jordan Panel … from attaching the exterior skin to the building as contemplated by the Construction Documents." (Id., p.4.) (Cf., Exhibit 11, Plaintiff's Complaint and Jury Demand, ¶ 32) (alleging that "deficiencies in the design documents manifested themselves as discrepancies as between the several bid packages, such that two (or more) prime contractors performing related or dependent work would be required to rely upon conflicting criteria, such that the work … was not compatible.") (And see, id., ¶ 44) (alleging that "[t]he various co-prime contracts contained numerous omissions, defects, and inconsistencies in the contract documents, drawings, and specifications….")

12. DASNY's May 30, 2002 letter appear to contain further allegations to the effect that "[t]his inherent conflict in KPF's specification is a design error that ultimately caused significant costs, disruption and delays to the manufacture and erection of the exterior skin"; and that "DASNY, KPF, TDX, … **Trataros** and **JPS** [Jordan Panel] spent the fall and winter of 1998 attempting to resolve the tolerance conflict. Although the tolerance conflict clearly resided within KPF's own specifications, KPF was both passive and reticent in identifying design solutions. KPF also adopted defensive positions rather than being proactive – or even responsive – in correcting its negligent design." (Exhibit 4, p.7) (emphasis added). (Cf., Exhibit 11, ¶ 36) (alleging KPF adversely impacted Trataros and/or its subcontractors as a result of "KPF's flawed and defective work product (including design work performed during the construction phase and after award of Contracts Nos. 15 and 16), as well as [KPF's] …intransigent uncooperativeness

4

and lack of accountability.") (And see, id., ¶ 35) (alleging that KPF and the other Defendants "severely impacted the Project by providing insufficient supervision and inspection of the installed work ... and dilatory resolution of issues of design/engineering, *inter alia*.")

13.  In light of KPF's current position that it purportedly has insufficient notice of the claims against it in this action, it is noteworthy that, upon information and belief, **KPF's present counsel** apparently responded to DASNY's May 30, 2002 claim letter on or about July 11, 2002. A true and correct copy of Zetlin & DeChiara's July 11, 2002 letter to DASNY is attached hereto as **Exhibit 5**.

14.  Upon information and belief, TDX frequently prepared "change order memoranda" outlining the purported justification for respective change orders. Of the change orders issued to Contract No. 15, TDX's change order memoranda appear to attribute at least 74 to design errors and/or design omissions. True and correct copies of selected "change order memoranda," prepared by TDX in connection with changes to Contract No. 15 (GC-1), are attached hereto as **Exhibit 6**.

15.  Upon further information and belief, of the change orders issued to Contract No. 16, TDX's change order memoranda appear to attribute at least 107 change orders to design errors and/or design omissions. True and correct copies of selected "change order memoranda," prepared by TDX in connection with changes to Contract No. 16 (GC-2), are attached hereto as **Exhibit 7**.

16.  As set out on the face of the agreement produced by KPF in its moving papers, KPF's professional duties apparently did not end with its delivery to DASNY of the "final" bid documents, which upon information and belief formed the basis of Trataros' contracts, among other things. KPF's contract with DASNY facially indicates that KPF was contractually

5

obligated to continue performing design services throughout the Project's bidding, construction, and even post-construction phases. (See, Catalano Dec., Exh B, at pp. A9 to A11.) (And see, id., p. B1) (indicating that, of an anticipated price of $11,200,00 for "Architect's Services", more than $2,500,000 -approximately 20%- was to be paid to KPF for services rendered following completion of the "Construction Documents" phase).

17.    Upon information and belief, the duties set forth in KPF's original contract with DASNY were later supplemented by at least thirty (30) "amendments" to its contract. A true and correct copy of Amendment No. 30 to KPF's contract, dated May 7, 2004, is attached hereto as **Exhibit 8**.

18.    Upon information and belief, one such alleged amendment facially obligated KPF to design and incorporate additional work into Contract No. 16 ("the General Construction #2 bid package"). The amendment provides on its face that "KPF will provide construction administration and supervision for this work," thereby apparently obligating KPF to supervise a portion of Trataros' construction work. A true and correct copy of Amendment No. 12 is attached as **Exhibit 9**.

19.    Upon information and belief, and based upon the information recited on the face of Amendment No. 12, the said amendment appears to have been executed by KPF and DASNY on or about April 28, 1999, more than seven months after the date of Contract No. 16. (Cf., Exhibit 9, p. 3, with, Exhibit 2.)

20.    Travelers' claims asserted herein were the subject of prior proceedings before Judge Baer. Indeed, the prior proceedings also encompassed a substantially similar motion to dismiss, filed by KPF upon the same grounds, as well as substantially similar counterclaims, cross-claims, and third-party complaint as those filed by DASNY and TDX herein, except to the

extent that DASNY and TDX were represented by separate counsel in the earlier proceedings. (See, Exhibits 10-22, below.)

21. The proceedings before Judge Baer were captioned as <u>Travelers Casualty and Surety Company as Administrator for Reliance v. The Dormitory of the State of New York, et al.</u>, and were commenced on or about June 28, 2004, when Travelers filed its Complaint and Jury Demand (the "Initial Complaint") with the Clerk of the Court for the United States District Court, Southern District of New York. The Court assigned civil action number 04-CV-5101 to the said proceedings (the "2004 Proceedings"). A true and correct copy of Travelers' Initial Complaint is attached hereto as **Exhibit 10**. [2]

22. Upon information and belief, on or about August 10, 2004, DASNY filed its Answer with Affirmative Defenses, Counterclaim and Cross-Claims ("DASNY's Initial Answer"), in response to the Initial Complaint. A true and correct copy of DASNY's Initial Answer is attached hereto as **Exhibit 12**.

23. Upon information and belief, on or about August 31, 2004, TDX filed its Answer and Jury Demand ("TDX's Initial Answer") in response to the Initial Complaint. A true and correct copy of TDX's Initial Answer is attached hereto as **Exhibit 13**.

24. Upon information and belief, on or about March 15, 2005, TDX filed its "Cross-Claims ... against Defendant Kohn Pedersen Fox Associates, P.C." with the Court in connection with the 2004 Proceedings (hereinafter, the "TDX Cross-Claim"). A true and correct copy of the TDX Cross-Claim is attached hereto as **Exhibit 14**. [3]

---

[2] For purposes of comparison, a true and correct copy of the Complaint and Jury Demand filed by Travelers with the Clerk of the Court on August 1, 2007, and assigned civil action no. 07-CV-6915 (the "2007 Complaint") is attached hereto as **Exhibit 11**.

[3] For purposes of comparison with DASNY's Initial Answer, TDX's Initial Answer, and the TDX Cross-Claim, a true and correct copy of Answer with Affirmative Defenses, Counterclaims, and Cross-Claims filed jointly by

25. Upon information and belief, on or about August 4, 2004, DASNY filed a Third-Party Complaint in the 2004 Proceedings ("DASNY's Initial Third-Party Complaint"). A true and correct copy of DASNY's Initial Third-Party Complaint is attached hereto as **Exhibit 16**. [4]

26. Upon information and belief, on or about August 20, 2004, KPF filed a motion in the 2004 Proceedings seeking dismissal of the Initial Complaint as against KPF.

27. In opposition to KPF's initial motion to dismiss, Travelers submitted, inter alia, the Affidavit of David C. Dreifuss, sworn to on October 27, 2004 (the "Dreifuss Aff."), and the Supplemental Affidavit of Eli J. Rogers, sworn to on May 3, 2005 (the "Supp. Rogers Aff."). True and correct copies of the Dreifuss Aff. (exclusive of exhibits) and the Supp. Rogers Aff. are attached hereto as **Exhibits 18 and 19**, respectively.

28. Following briefing and oral argument, Judge Baer issued an Opinion & Order denying KPF's motion to dismiss. Upon information and belief, the Opinion & Order was entered by the Clerk of the Court on or about May 19, 2005. A true and correct copy of Judge Baer's Opinion & Order is attached hereto as **Exhibit 20**.

29. During the pendency of its first motion to dismiss, KPF filed its own Third-Party Complaint in the 2004 Proceedings ("KPF's Third-Party Complaint"). A true and correct copy of KPF's Third-Party Complaint is attached hereto as **Exhibit 21**. [5]

---

DASNY and TDX in connection with the within proceedings ("DASNY/TDX Answer") is attached hereto as **Exhibit 15**.

[4] For purposes of comparison with DASNY's Initial Third-Party Complaint, a true and correct copy of the Third-Party Complaint filed by DASNY and TDX in connection with the within proceedings is attached as **Exhibit 17**.

[5] In addition to the aforesaid pleadings, additional parties were impleaded to the 2004 Proceedings via a Fourth-Party Complaint and Amended Fourth-Party Complaint, both of which were jointly filed by Travelers and Trataros, however, those pleadings have not been appended as they are not germane to the within motion.

8

30. Subsequently, under supervision of the Honorable Ronald L. Ellis, U.S.M.J., the parties undertook negotiations to dismiss the 2004 Proceedings without prejudice, in order to pursue resolution of the claims alleged therein through non-binding, confidential mediation.

31. The parties reported to Magistrate Judge Ellis on or about September 16, 2005 that all but one active party (which is not currently impleaded in these proceedings) had consented to "opt-in" to the proposed mediation proceedings.

32. During a court conference held before Magistrate Judge Ellis on September 20, 2005, the hold-out party consented to opt-in to the mediation.

33. On or about September 26, 2005, the parties reported to Magistrate Judge Ellis that all active parties to the 2004 Proceedings had executed an agreement to mediate and toll the applicable statutes of limitation with respect to the various claims pleaded in that proceeding, and that a Stipulation of Dismissal Without Prejudice had been executed by all active parties.

34. On or about October 7, 2005, the Clerk of the Court entered a Stipulation of Dismissal Without Prejudice and marked the 2004 Proceedings as closed. A true and correct copy of the Stipulation of Dismissal Without Prejudice is attached hereto as **Exhibit 22**.

35. Without delving into the details of the confidential mediation proceedings, suffice to say that nearly twenty-two months after the 2004 Proceedings were voluntarily dismissed without prejudice, and consistent with the procedures established by the parties for re-filing the litigation, Travelers filed its 2007 Complaint on August 1, 2007. (See, Exhibit 11 hereto.)

36. As no depositions were conducted in the prior proceedings, the following paragraphs attach documents produced by the defendants therein, as said documents appear to reflect direct interactions between KPF and Trataros. For example, upon information and belief, during the Project's construction phase numerous instances of direct interactions occurred

between KPF and Trataros and/or Trataros' subcontractors. Upon further information and belief, these contacts sometimes took the form of direct fax communications and telephone conferences. Attached hereto as **Exhibit 23** is a true and correct copy of a fax communication from one of Trataros' subcontractors for Contract No. 16, G.M. Crocetti, to KPF. True and correct copies of correspondence referencing telephone contacts between KPF and Jordan Panel, one of Trataros' subcontractors for Contract No. 15, are attached hereto as **Exhibit 24**.

   37. Upon information and belief, KPF engaged in in-person interactions with Trataros and/or its subcontractors, including field work. Upon further information and belief, these contacts included performance testing of mock-ups of the Project's exterior façade and/or windows systems. True and correct copies of KPF correspondence memorializing, inter alia, mock-up testing apparently conducted in Miami, Florida, and seemingly attended by KPF and LBL Skysystems (U.S.A.) ("LBL"), among others, are attached hereto as **Exhibit 25**.

   38. Upon information and belief, KPF's interactions with Trataros and/or its subcontractors apparently also took the form of in-person meetings, intended to resolve various concerns or questions that arose during construction. True and correct copies of minutes purportedly prepared by TDX, recording alleged meetings between KPF, Trataros, TDX, and A.C.E. Elevator ("Ace"), one of Trataros' subcontractors for Contract No. 15, are attached hereto as **Exhibit 26**.

   39. Upon information and belief, the face of the undated draft meeting minutes, transmitted from TDX to KPF on or about February 11, 1999, recites that the meeting's purpose was "[t]o discuss architect's notes on elevator and escalator drawings and project status." (Exhibit 26.)

40. Upon information and belief, on or about August 10, 2000, a meeting was held between KPF, TDX and Trataros. A true and correct copy of TDX's minutes for the August 10, 2000 meeting is attached hereto as **Exhibit 27**. Upon further information and belief, and based upon the alleged minutes purportedly prepared by TDX, this meeting apparently concerned "architectural details relating to the escalators and to pubic stair #3," and seemingly precipitated certain changes in the Project sketches. (See, Exhibit 27, 4th and 5th pages) (reciting that particular changes were the "Result of Arch. Meeting 8/10/00).

41. Upon information and belief, a series of meetings were held between KPF, Trataros, Jordan Panel, and LBL, among others, from December, 1998 through at least June 30, 1999. The meeting minutes, apparently prepared by TDX, recite that meetings took place on December 18, 1998, December 22, 1998, January 22, 1999, March 10, 1999, May 12, 1999, and June 30, 1999. Additionally, KPF's correspondence dated June 8, 1999 recites that additional meetings between KPF, Trataros, and/or Jordan Panel took place on January 5, 1999 and April 8, 1999. True and correct copies of the minutes for the aforesaid meetings, and the June 8, 1999 KPF letter, are attached hereto as **Exhibit 28**.

42. On their face, the minutes for the December 22, 1998 meeting appear to recite that "[t]he purpose of the meeting as [sic] to resolve major issues relating to the metal siding, curtainwall and windows." (Exhibit 28.) The minutes for the January 26, 1999 meeting appear to recite on its face that "[t]he purpose of this meeting was to develop a direction on how best to interface the metal siding with the structural steel girt tolerances." (Id.) (Cf., Exhibit 4, p. 7, and ¶¶ 8-12, above.)

43. Without trying the Court's patience, Travelers respectfully submits that, upon information and belief, the foregoing sampling of documents (Exhs. 23-28) is apparently

representative of the "linking" conduct that seemingly occurred between KPF and Trataros and/or its subcontractors, particularly when coupled with the purported contractual amendment seemingly obligating KPF to supervise Trataros' construction work (Exh. 10, above), and the various addenda apparently issued by KPF to Contracts Nos. 15 and 16. (See, Certification of Eli J. Rogers, ¶¶ 5-7, 11-12, and exhibits thereto.) In light of the foregoing, Travelers respectfully submits that KPF's motion to dismiss should be denied.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: Florham Park, New Jersey
October 16, 2007

/S/
JoAnne M. Bonacci
*Admitted Pro Hac Vice*