# EXHIBIT
# 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

TRAVELERS CASUALTY & SURETY COMPANY as
Administrator for RELIANCE INSURANCE
COMPANY,

                         Plaintiff,

       - against -

THE DORMITORY AUTHORITY OF THE STATE
OF NEW YORK, TDX CONSTRUCTION CORP. and
KOHN, PEDERSEN, FOX & ASSOCIATES, P.C.,

                         Defendants.
------------------------------------------------------------------ X

DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,
                         Third-Party Plaintiff,

       -against-

TRATAROS CONSTRUCTION, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY,

                         Third-Party Defendants.


------------------------------------------------------------------ X

TRATAROS CONSTRUCTION, INC. and
TRAVELERS CASUALTY AND SURETY
COMPANY,

                         Fourth-Party Plaintiffs,

       -against-

G.M. CROCETTI, INC., CAROLINA CASUALTY
INSURANCE COMPANY, BARTEC INDUSTRIES
INC., DAYTON SUPERIOR SPECIALTY CHEMICAL
CORP., SPECIALTY CONSTRUCTION BRANDS,
INC. t/a TEC, KEMPER CASUALTY INSURANCE
COMPANY d/b/aKEMPER INSURANCE COMPANY,

CROSS-CLAIMS OF
DEFENDANT
TDX CONSTRUCTION
CORPORATION
AGAINST DEFENDANT
KOHN PEDERSEN FOX
ASSOCIATES, P.C.

Civil Action No.
04 Civ. 5101 (HB)

GREAT AMERICAN INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA., UNITEDSTATES FIRE
INSURANCE COMPANY, ALLIED
WORLDASSURANCE COMPANY (U.S.) INC. f/k/a
COMMERCIALUNDERWRITERS INSURANCE
COMPANY, ZURICHAMERICAN INSURANCE
COMPANY d/b/a ZURICH2 INSURANCE
COMPANY, OHIO CASUALTY
INSURANCECOMPANY d/b/a OHIO CASUALTY
GROUP, HARLEYSVILLE MUTUAL INSURANCE
COMPANY (a/k/aHARLEYSVILLE INSURANCE
COMPANY, an insurer forBARTEC INDUSTRIES
INC.), JOHN DOES 1-20, and XYZCORPS. 1-12,

                    Fourth-Party Defendants.

-------------------------------------------------------------- X

KOHN PEDERSEN FOX ASSOCIATES, P.C.,

                    Third-Party Plaintiff,

          -against-

WEIDLINGER ASSOCIATES CONSULTING
ENGINEERS, P.C., ANTHONY BLACKETT &
ASSOCIATES, POULIN + MORRIS, INC., SHEN
MILSOM & WILKE, INC., AMIS, INC., HOPKINS
FOOD SERVICE SPECIALISTS, INC., CASTRO-
BLANCO PISCIONERI AND ASSOCIATES,
ARCHITECTS, P.C. n/k/a ARQUITECTONICA NEW
YORK P.C., COSENTINI ASSOCIATES, INC.,
VOLLMER ASSOCIATES, LLP, TESTWELL CRAIG
LABORATORIES, INC., JOHN A. VAN DEUSEN &
ASSOCIATES, INC., JEROME S. GILLMAN
CONSULTING ARCHITECT, P.C.,  SYSTEMS
DESIGN ASSOCIATES, SYSTEMS DESIGN
ASSOCIATES INC., WARFEL SHRAGER
ARCHITECTURAL LIGHTING, LLC,
COUNSILMAN/HUNSAKER & ASSOCIATES,
ENTEK ENGINEERING PLLC, THEATRE
PROJECTS CONSULTANTS, JORDAN PANEL

2

SYSTEMS CORP., TRATAROS CONSTRUCTION,
INC. and LBL SKYSYSTEMS (U.S.A.), INC.

                    Third-Party Defendants.
_____ X

    Defendant TDX CONSTRUCTION CORPORATION, by its attorneys, Mazur Carp & Rubin, P.C., for its cross-claims against defendant KOHN PEDERSEN FOX ASSOCIATES, P.C., s/h/a Kohn, Pedersen, Fox & Associates, P.C., respectfully alleges as follows:

    1. Defendant and cross-claim plaintiff TDX Construction Corporation ("TDX") is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 345 Seventh Avenue, New York, New York 10001.

    2. Upon information and belief, cross-claim defendant Kohn Pedersen Fox Associates, P.C., s/h/a Kohn, Pedersen, Fox & Associates, P.C. (KPF"), is a New York professional corporation duly licensed to practice architecture in the State of New York, having its principal place of business at 111 West 57th Street, New York, New York 10019.

    3. This Court has jurisdiction over TDX's cross-claims pursuant to 28 U.S.C. § 1367(a).

    4. This District is the proper venue for TDX's cross-claims under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the cross-claims asserted herein occurred within this District.

3

5.    Upon information and belief, on or about November 20, 1995, KPF entered into a written contract with defendant The Dormitory Authority of the State of New York ("DASNY") under which KPF agreed to provide design services for a Project to construct a new Administration and Academic Building at Baruch College – Site "B" ("the Project"), which was denominated Agreement DA # 6500 1802 3145 ("the KPF Design Contract"). The KPF Design Contract, including all drawings, specifications, addenda, and other contract documents comprising the KPF Design Contract and all subsequent changes, amendments and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

6.    The Project is a 785,000 gross square foot, 14 story structure located on Lexington Avenue between 24th and 25th Streets, in the borough of Manhattan, which was designed to house Baruch College's School of Liberal Arts and Sciences, Business School, Executive Program Division, recreational and performance facilities, and various student activity areas.

7.    Upon information and belief, KPF entered into an agreement with Weidlinger Associates ("Weidlinger") under which Weidlinger agreed to provide structural engineering services for the Project, and KPF entered into agreements with other sub-consultants under which they agreed to provide additional design services and other services for the Project.

8.    On or about October 23, 1996, DASNY, as Owner, and TDX, as construction manager, entered into a written contract under which TDX agreed to provide construction management services for the design phase of

4

the Project, in accordance with a scope of services established by DASNY, which was denominated Agreement DA # 6500 1802 3153 ("the Design Phase CM Agreement"). The Design Phase CM Agreement, including all drawings, specifications, addenda, and other contract documents comprising the Design Phase CM Agreement and all subsequent changes, amendments and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

9.   On or about May 12, 1997, DASNY, as Owner, and TDX, as construction manager, entered into a written contract under which TDX agreed to provide construction management services for the construction phase of the Project, in accordance with a scope of services established by DASNY, which was denominated Agreement DA # 6500 1802 5156 ("the Construction Phase CM Agreement"). The Construction Phase CM Agreement, including all drawings, specifications, addenda, and other contract documents comprising the Construction Phase CM Agreement and all subsequent changes, amendments and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

10.   On or about January 2, 1998, DASNY, as Owner, and TDX, as construction manager, entered into a written contract under whichTDX agreed to provide certain General Conditions work for the construction phase of the Project, which was denominated Agreement DA # 6500 1802 4173 ("the General Conditions CM Agreement"). The General Conditions CM

5

Agreement, including all drawings, specifications, addenda, and other contract documents comprising the General Conditions CM Agreement and all subsequent changes, amendments and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

11.  Upon information and belief, on or about April 22, 1998, DASNY, as Owner, and Trataros Construction, Inc. ("Trataros"), as contractor, entered into a written contract under which Trataros agreed to provide the labor and materials to perform certain general construction work for the Project, based on an agreed price of $50,222,000.00, which was denominated Agreement No. 6500 1802 2176 ("Contract No. 15").   Contract No. 15, including all drawings, specifications, addenda, and other contract documents comprising Contract No. 15 and all subsequent changes, amendments and modifications thereto, is incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

12.  Upon information and belief, on or about August 27, 1998, DASNY, as Owner, and Trataros, as contractor, entered into a written contract under which Trataros agreed to provide the labor and materials to perform certain general construction work for the Project, based on an agreed price of $24,140,000.00, which was denominated Agreement No. 6500 1802 2178 ("Contract No. 16").   Contract No. 16, including all drawings, specifications, addenda, and other contract documents comprising Contract No. 16 and all subsequent changes, amendments and modifications thereto, is

6

incorporated herein by reference as if set forth in its entirety herein, and TDX begs leave to refer to same upon the trial of this action for the exact terms thereof.

13. TDX was designated by DASNY as the "Owner's representative" for the Project pursuant to Article 3, Section 3.01C of the General Conditions.

14. TDX was designated by DASNY, and operated in fact, as DASNY's authorized agent with respect to the Project.

15. Upon information and belief, the KPF Design Contract contemplated that KPF would prepare and provide a complete and "fully coordinated" design for the Project. KPF understood that DASNY would use KPF's design for soliciting bids from various trade construction contractors, who would use KPF's design to build the Project. In this regard, KPF's design was required to be sufficiently coordinated and complete to permit all of DASNY's trade construction contractors to rely upon that design for purposes of submitting bids to DASNY and performing all aspects of their required scopes of work. The KPF Design Contract further required KPF to complete its design within the time periods required by DASNY's program and construction schedules.

16. KPF, Weidlinger and KPF's other subcontractors and consultants (collectively referred to as the "KPF Design Team") prepared plans, specifications and related design information (the "Design Documents"). KPF submitted the Design Documents to DASNY and

represented to DASNY that the Design Documents were sufficiently detailed, coordinated and complete to be used by all of the trade contractors to build the Project in accordance with DASNY's requirements and the terms of the KPF Design Contract.

17. The Design Documents that KPF delivered to DASNY were not submitted in a timely fashion, contained numerous errors, omissions and defects, and were not fully coordinated (collectively referred as the "Design Defects").

18. DASNY notified KPF and the Design Team of the Design Defects and advised KPF that the Design Documents required significant revisions and additional coordination before they could be suitable for use in building the Project. DASNY also advised KPF that Design Defects were adversely impacting the time and cost of construction and directed KPF to implement the necessary corrective work to avoid further cost overruns and delays.

19. Rather than correcting the Design Defects in a professionally competent and timely fashion, KPF and the Design Team compounded their errors by failing to acknowledge the design and coordination problems and refusing to fully cooperate in offering a solution for their Design Defects.

20. The Design Defects and coordination errors, along with the Design Team's failure to acknowledge and correct the Design Defects in a timely or professionally competent fashion, caused the cost of construction to

8

increase and significantly delayed, disrupted and impacted the construction of the Project.

21.  On or about June 28, 2004, Travelers Casualty and Surety Company ("Travelers") filed a Summons and Complaint in this action ("the Complaint").  Travelers alleged in the Complaint that it was the administrator of Reliance Insurance Company ("Reliance"), which had issued performance and payment bonds on behalf of Trataros with respect to the Project and, as such, that Travelers had a right to assert claims for monies allegedly due and owing to Trataros and various of Trataros' subcontractors on the Project.

22.  In the Complaint, Travelers asserted claims against TDX for alleged negligence in performing its services in connection with the Project.

23.  In addition, one of the fourth-party defendants, G.M. Crocetti, Inc. ("Crocetti"), which, upon information and belief, was a subcontractor of Trataros in connection with the Project, has asserted cross-claims against TDX for indemnification and contribution.


## AS AND FOR A FIRST CROSS-CLAIM AGAINST KPF
## (COMMON LAW INDEMNIFICATION)

24.  TDX repeats and realleges the allegations set forth in paragraphs 1 through 23 hereof as though fully set forth herein.

25. Upon information and belief, KPF negligently and/or recklessly performed its responsibilities in connection with the Project, including but not limited to: furnishing design documents which were incomplete, defective, erroneous, delayed the construction and completion of the Project, resulted in inefficient construction sequences, and failed to meet reasonable standards of due care and professional competence; failing to complete design documents in accordance with time schedules established and agreed to by KPF; failing to properly coordinate design documents; delivering incomplete design documents which resulted in an inordinate number of requests for information (RFIs); furnishing incorrect, incomplete, and evasive responses to design problems and design errors; failing to respond to RFIs in a timely manner; and exhibiting a gross lack of experience with New York City public works projects.

26. Upon information and belief, KPF's negligent performance of its responsibilities on the Project caused or contributed to the damages alleged to have been incurred in connection with the Project.

27. Travelers and Crocetti have each asserted or purported to assert claims against TDX arising from the Project.

28. If any damages are awarded against TDX, such damages were, upon information and belief, actually caused by reason of KPF's negligence, carelessness, breach of contract, obligation, warranty, and/or culpable conduct.

10

29. In the event that Travelers and/or Crocetti recovers a judgment against TDX in this litigation, or TDX otherwise becomes obligated to pay claims to any of them arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by KPF's negligence, carelessness, breach of contract, obligation, warranty and/or culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, obligation, warranty, and/or culpable conduct on the part of TDX.

30. In the event that any other party recovers a judgment against TDX, or TDX otherwise becomes obligated to pay claims to a third party arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by KPF's negligence, carelessness, breach of contract, obligation, warranty and/or culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, obligation, warranty, and/or culpable conduct on the part of TDX.

31. By reason of the foregoing, TDX is entitled to indemnification from, and to have judgment over and against, KPF in the amount of any verdict or judgment that is recovered against TDX, together with interest, attorneys' fees, costs, and disbursements of this action.

11

## AS AND FOR A SECOND CROSS-CLAIM AGAINST KPF
## (CONTRIBUTION)

32. TDX repeats and realleges the allegations set forth in paragraphs 1 through 31 hereof as though fully set forth herein.

33. Upon information and belief, KPF negligently and/or recklessly performed its responsibilities in connection with the Project, including but not limited to: furnishing design documents which were incomplete, defective, erroneous, delayed the construction and completion of the Project, resulted in inefficient construction sequences, and failed to meet reasonable standards of due care and professional competence; failing to complete design documents in accordance with time schedules established and agreed to by KPF; failing to properly coordinate design documents; delivering incomplete design documents which resulted in an inordinate number of requests for information (RFIs); furnishing incorrect, incomplete, and evasive responses to design problems and design errors; failing to respond to RFIs in a timely manner; and exhibiting a gross lack of experience with New York City public works projects.

34. Upon information and belief, KPF's negligent performance of its responsibilities on the Project caused or contributed to the damages alleged to have been incurred in connection with the Project.

35. Travelers and Crocetti have each asserted or purported to assert claims against TDX arising from the Project.

36. Upon information and belief, the claims asserted against TDX by Travelers and Crocetti arise, in whole or in part, from KPF's negligent acts and omissions.

37. Accordingly, in the event that Travelers and/or Crocetti recovers a judgment against TDX in this litigation, or TDX otherwise becomes obligated to pay claims to any of them arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by KPF's negligence, carelessness, breach of contract, obligation, warranty and/or culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, obligation, warranty, and/or culpable conduct on the part of TDX.

38. In the event that any other party recovers a judgment against TDX, or TDX otherwise becomes obligated to pay claims to a third party arising from or in connection with the Project, such liability, by operation of law or otherwise, will have been caused by KPF's negligence, carelessness, breach of contract, obligation, warranty and/or culpable conduct, and will not have been caused by any negligence, carelessness, breach of contract, obligation, warranty, and/or culpable conduct on the part of TDX.

39. Pursuant to Article 14 of the New York Civil Practice Law and Rules, TDX is therefore entitled to recover damages in the amount of any judgment against TDX recovered by Travelers, Crocetti, and/or any other third party as determined in accordance with the parties' relative culpability, and TDX is entitled to have judgment over and against KPF in such amount

13

as TDX may be required to pay over and above TDX's equitable share, together with interest, attorneys' fees and the costs and disbursements of this action.

WHEREFORE, defendant and third-party plaintiff TDX Construction Corporation demands judgment:

I.     On its First Cross-Claim against defendant KPF, for indemnification in the amount of any verdict or judgment that is recovered against TDX, together with interest, attorneys' fees and the costs and disbursements of this action and such other and further relief as the Court may deem just and proper.

II.    On its Second Cross-Claim against defendant KPF, in such amount as TDX may be required to pay over and above TDX's equitable share, together with interest, attorneys' fees and the costs and disbursements of this action and such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           March 15, 2005


                              MAZUR CARP & RUBIN, P.C.
                              Attorneys for Defendant/Third-Party Plaintiff
                                  TDX Construction Corporation
                              1250 Broadway, 38th Floor
                              New York, New York 10001
                              Tel. (212) 686-7700


                       By: _____
                                 Gary L. Rubin (GR 5056)


TO:   David C. Dreifuss, Esq.
      Dreifuss Bonacci & Parker, LLP
      26 Columbia Turnpike
      North Entrance
      Florham Park, New Jersey 07932
      *Attorneys for Plantiff and for Trataros Construction, Inc.*

      Stephen B. Shapiro, Esq.
      Holland & Knight, LLP
      195 Broadway
      New York, New York 10007
      *Attorneys for Defendant*
      *Dormitory Authority of the State of New York*

      David Abramovitz, Esq.
      Zetlin & DeChiara, LLP
      801 Second Avenue
      New York, New York 10017
      *Attorneys for Defendant*
      *Kohn, Pederson, Fox & Associates, P.C.*


                              15

Gary Wirth, Esq.
Torre, Lentz, Gamell, Gary & Rittmaster, LLP
100 Jericho Quadrangle, Suite 309
Jericho, NY 11753-2702
*Attorneys for Fourth-Party Defendant*
*G.M. Crocetti, Inc. and Carolina Casualty Insurance Company*

Jeremy Platek, Esq.
O'Connor, Redd, Gollihue & Sklarin, LLP
200 Mamaroneck Avenue
White Plains, New York 10601
*Attorneys for Fourth-Party Defendant*
*Bartec Industries Inc.*

Thomas M. DeSimone, Esq.
Goldberg Segalla, LLP.
170 Hamilton Avenue, Suite 203
White Plains, New York 10601
*Attorneys for Fourth-Party Defendant*
*Dayton Superior Specialty Chemical Corp.*

Christian H. Gannon, Esq.
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, New York 10022
*Attorneys for Fourth-Party Defendant*
*Specialty Construction Brands, Inc. t/a TEC*

16