# EXHIBIT 19

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>      v.<br><br>THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN, PEDERSON, FOX & ASSOCIATES, P.C.,<br><br>              Defendants. | Civil Action No.: 04 Civ. 5101 (HB)<br>ECF CASE |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK,<br><br>              Third-Party Plaintiff,<br><br>      v.<br><br>TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>              Third-Party Defendants | SUPPLEMENTAL AFFIDAVIT OF ELI J. ROGERS IN FURTHER OPPOSITION TO KOHN PEDERSON FOX & ASSOCIATES, P.C.'S MOTION TO DISMISS |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>              Fourth-Party Plaintiffs,<br><br>      v.<br><br>G.M. CROCETTI, INC., CAROLINA CASUALTY INSURANCE COMPANY, BARTEC INDUSTRIES INC., DAYTON SUPERIOR SPECIALTY CHEMICAL CORP., SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC, KEMPER CASUALTY INSURANCE COMPANY d/b/a KEMPER INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., UNITED STATES FIRE INSURANCE COMPANY, ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. f/k/a COMMERCIAL UNDERWRITERS INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY d/b/a ZURICH INSURANCE COMPANY, OHIO CASUALTY INSURANCE COMPANY d/b/a OHIO CASUALTY GROUP, HARLEYSVILLE MUTUAL INSURANCE COMPANY (a/k/a HARLEYSVILLE INSURANCE COMPANY, an insurer for BARTEC INDUSTRIES INC.), JOHN DOES 1-20, and XYZ CORPS. 1-12,<br><br>              Fourth-Party Defendants. | |

```
KOHN PEDERSON FOX ASSOCIATES, P.C.
                    Third-Party Plaintiff,

        v.

WEIDLINGER ASSOCIATES CONSULTING ENGINEERS,
P.C., ANTHONY BLACKETT & ASSOCIATES, POULIN
+MORRIS, INC., SHEN MILSON & WILKE, INC., AMES,
INC., HOPKINS FOOD SERVICE SPECIALIST, INC.,
CASTROBLANCO PISCIONERI AND ASSOCIATES
ARCHITECTS, P.C. n/k/a ARQUITECTONICA NEW
YORK, P.C. COSENTINI ASSOCIATES, INC., VOLLMER
ASSOCIATES, LLP, TESTWELL CRAIG
LABORATORIES, INC., JOHN A. VAN DEUSEN &
ASSOCIATES, INC., JEROME S. GILLMAN
CONSULTING ARCHITECT, P.C., SYSTEMS DESIGN
ASSOCIATES, SYSTEMS DESIGN ASSOCIATES, INC.,
WARFEL SCHRAGER ARCHITECTURAL LIGHTING,
LLC., COUNSILMAN/HUNSAKER & ASSOCIATES,
ENTEK ENGINEERING PLLC, THEATER PROJECTS
CONSULTANTS, JORDAN PANEL SYSTEMS CORP.,
TRATAROS CONSTRUCTION, INC. and LBL
SKYSYSTEMS (U.S.A), INC.,
                    Third-Party Defendants
```

ELI J. ROGERS, ESQ., being duly sworn, deposes and says:

1. I am an associate with the law firm of Dreifuss Bonacci & Parker, LLP, attorneys for Plaintiff/Third-Party Defendant/Fourth-Party Plaintiff, Travelers Casualty and Surety Company, and Third-Party Defendant/Fourth-Party Plaintiff, Trataros Construction, Inc., ("Trataros") and as such I am fully familiar with the facts set forth herein.

2. In connection with a related action, thousands of pages of documents in connection with the Baruch College project have been produced to our firm. Recently, our office has become able to read "scanned" versions of these documents over our computer system.

3.  Through a review of these scanned documents, I recently located the attached documents, amongst others produced by Defendant/Third-Party Plaintiff, Kohn Pederson Fox & Associates ("KPF") pursuant to subpoena in a related litigation. The attached sampling of documents indicate that at a minimum KPF interacted directly with Trataros and/or its subcontractors Jordan Panel Systems Corp. and G.M. Crocetti, Inc.

4.  Upon information and belief, given the opportunity, a more thorough review of the documents already produced may yield additional documents demonstrating additional ways in which KPF interposed itself into the construction phase of the Baruch College project.

4.  Upon information and belief, additional documentation supporting direct interactions between KPF and Trataros and/or Trataros' subcontractors may exist which has yet to be produced in discovery at this early stage of the within proceedings.

Dated: Florham Park, New Jersey
May 3, 2005

*Eli Rogers* (signature)
Eli J. Rogers, Esq.

Sworn to and subscribed before
me this 3rd Day of May, 2005

*JoAnne M. Bonacci* (signature)
JoAnne M. Bonacci, Esq.
Attorney-at-Law and Notary Public
of the State of New Jersey

# KPF

November 18, 1998



*Kohn Pedersen Fox*
*Associates PC*
Architects & Planning
Consultants

111 West 57th Street
New York, NY 10019-2211
Telephone 212-977-6500
Facsimile 212-956-2526

John McCullough
Project Manager
TDX Construction
137 E. 25th Street
NY, NY 10010

Re:  Baruch Academic Complex - Site B
     <u>KPF Project #1063.01</u>
     Contract #15 - GC 1
     Exterior Siding

Dear John:

Pursuant to recent meetings with Jordan Panel Systems and LBL Skysystems regarding steel girt tolerances and their impact on the siding and window systems, KPF has reviewed Jordan Panels concerns and would like to restate the design intent established in the Contract Documents.

## Metal Siding System

The field assembled wall system specified in the construction documents consists of four major components. These are the corrugated metal panel, sub-girt or "Z" clip, galvanized sheet air barrier, and air seal. The air seal specified in the construction documents occurs at the interface between the galvanized sheet air barrier and the strip window mullion (not at the tube as designed by Jordan).

The <u>nominal dimension</u> from face of building to face of steel girt is 3". This dimension was established to allow for a uniform plane for the exterior face of metal siding. The corrugated metal panel is 7/8" in thickness leaving a nominal 2 1/8" cavity between the metal panel and the face of steel girt. The design intent behind this cavity is to accommodate industry standard variation of structural steel due to the specified erection and fabrication tolerances (which are allowed by the AISC). According to specification section 07410, 2.01 C1, the Contractor is responsible for engineering a siding system which can adequately accommodate the specified steel erection and fabrication tolerances. This may be achieved through the use of shims and/or various sized subgirts in order to meet specified wind loads and finish panel tolerances. Specification section 07410, 2.01 C1 reads as follows:



Mr. John McCullough
November 18, 1998
Page 2 of 4

### C. Supporting Elements

1. Subgirts shall be G-90 galvanized in required shape to meet load, deflection and insulation thickness criteria. Minimum gauge shall be 14. Subgirts to be located directly over vertical support steel as shown on the Contract Drawings. Subgirts shall be coated with 0.3 mil epoxy over the G-90 zinc coating. **Design of subgirts shall accommodate specified tolerances for structural steel tube girts** and exterior concrete masonry. **Stainless steel shims with a maximum thickness of 3/8" may be used to meet specified metal wall panel and supporting element tolerances.**

Steel tolerances for horizontal steel girts are as specified in section 07410, 2.01, C1a, and have been addressed in KPF memos dated 10/2/98 and 10/28/98. Specification section 07410, 2.01, C1a reads as follows:

a. *Erection tolerances for structural steel tube girts provided by another contractor per AISC Code of Standard Practice. Section 7.11.3.3 of the AISC Code of Standard Practice shall be adjusted such that this location is within 3/16 inch of its location shown on the contract drawings.*

The above referenced AISC Code of Standard Practice is clarified in the attached memo dated 11/9/98 from Weidlinger and Associates.

The siding subcontractor has proposed a system which fails to provide adequate adjustment in order to accommodate the specified steel tolerances. It appears that they have developed an extremely narrow interpretation of the Technical Specifications included in the Contract Documents, the Technical Specifications of the adjacent structural steel work and the AISC Code of Standard Practice. Furthermore, despite the statement that "we were told that the steel would be within 3/16" at any point" KPF believes that this is not only contrary to the contract documents and industry standards, we believe that it is irrelevant since it is our understanding that verbal directions are non-binding. Let me add for the record, no member of the design team ever made such a statement. If in fact we believed that the steel would be located within 3/16" at any point, we would have made the dimension from face of building to face of steel girt 3/16" instead of 2 1/8".

We are also aware that LBL has raised similar concerns relating to the Horizontal Strip windows. Please note the following:

### Horizontal Window System

The horizontal strip window system is connected at the window's head and sill. The window is hung from the top girt above the window head with a gravity load connection and is restrained at the sill with a horizontal restraint connection back to the lower girt. Variation in steel due the specified tolerances is accommodated through the use of adjustable connections and shims. Adjustable anchors for glazed aluminum windows are specified in the following section 08500, 3.02 B:

A:\January 1.doc



Mr. John McCullough
November 18, 1998
Page 3 of 4

    B. Anchor the window components to the encountered substrates using proper methods and in strict accordance with reviewed shop and/or installation drawings. ***Design supporting brackets to provide adjustments and accurate location of components. After wall is properly positioned, adjustable anchorage connections shall be rigidly fixed.***

Encountered steel tolerances for glazed aluminum windows must comply with requirements specified under section 08920 - Glazed Aluminum Windows. The following specification section 08920, 1.03 K2 is in reference to Weidlinger Associates specified steel tolerances:

    2. ***Field setting tolerances for the structural steel framing members that support the curtain wall and the anticipated thermal expansion and contraction movements of the structural steel during construction will be provided by Project Structural Engineer.***

According to this section the project structural engineer will provide all steel tolerances for the project. These tolerances are as specified and are clarified in the attached memo from Weidlinger Associates.

The window subcontractor has not provided an anchor detail which has sufficient adjustment to accommodate the specified steel tolerances as commented on mock-up shop drawing M-09N returned on 10/7/98. The window connections are not adjustable beyond 3/16" and do not adequately address the steel tolerances for this project.

Essentially, the narrow interpretation of the documents by both Jordan and LBL is not something that we have encountered before. We therefore believe that KPF has an obligation to clarify the documents on behalf of the Owner. It is our position that these two subcontractors are required by contract to provide a system which accommodates the tolerances in the contract documents.

We recognize however, that a great deal of effort has been expended to this point on the part of both Jordan and LBL. In the best interests of the project, we recognize that a wholesale modifications of the systems would be time consuming and possibly delay the project. We believe that both Jordan and LBL can meet the adjustment tolerances in the specifications with relatively minor modifications which should have no impact on the schedule at all.

In the case of Jordan, they should be able to adjust the depth of their subgirt "hat channel" to meet the allowable variations in the steel girts. We would consider some additional shimming in the system where the subgirt dimension is reduced and the reduced subgirt does not reach the steel.

A:\January 1.doc



Mr. John McCullough
November 18, 1998
Page 4 of 4

In the case of LBL, the tolerances specified for the steel are even tighter than the slab edge tolerances typically allowed on most projects. This is a common method of curtain wall attachment which we have done previously on projects with LBL. Since we have worked on many projects where LBL has designed anchors which accommodate these tolerances, we suggest that they resist taking their cues from Jordan Panel and address the issues which they are more than capable of dealing with.

Quite frankly, we believe that DASNY has purchased a system which is required to incorporate the tolerances indicated above. If Jordan Panel believes something to the contrary we feel that they have an obligation to make a stronger case than "we were told the steel would be within 3/16" at any point". We believe that these issues can be resolved in a relatively straightforward manner; we have outlined it above. Incidentally, the solution proposed above would have little impact on the installation of the galvanized air barrier. Since the Jordan Panel design relies on an airseal at the tube (as opposed to the contract documents where the seal is at the mullion) we would consider either an expandable joint filler or field applied sealant at the tube location to accommodate the specified tolerances.

On a final note, you may want to inquire as to how many projects in the past has Jordan encountered where either the specified tolerances or the actual tolerances for the steel that they were attaching to was within 3/16" at any point. Since our interpretation of the specification is so different from theirs, it might be useful to understand what industry standards they may be referring to as they reach their interpretation of the documents.

We would be available to meet and discuss this in greater detail if you would like to do so.

Very truly yours,

KOHN PEDERSEN FOX ASSOCIATES PC

Anthony Moselie, AIA
Senior Associate Partner

AM:sg

cc:   N. D'Ambrosio
      R. Leu
      L. Sigal
      C. Stoddard
      C. File
      File 4.8

A:\January 1.doc



# KPF

December 22, 1998

Kohn Pedersen Fox
Associates PC
Architects & Planning
Consultants

111 West 57th Street
New York, NY 10019-
2211
Telephone 212-977-6500
Facsimile 212-956-2526

Nick D'Ambrosio
Dormitory Authority of the State of New York
One Penn Plaza, 52nd floor
NY, NY  10119

Re: Baruch Academic Complex - Site B
    KPF Project #1063.01
    Contract #15 - GC 1
    Exterior Siding

Dear Nick:

Pursuant to our recent meeting with Gordon Smith on December 18, 1998, KPF would like to summarize and outline the approach agreed upon by DASNY, KPF and Gordon H. Smith Corporation to address the issues relative to the field assembled wall panel/girt tolerance conflict, and the off-site performance mock-ups.

### Field assembled wall panel

The Gordon H. Smith Corporation (GHSC) will be retained by DASNY as an independent consultant to work with KPF and the Contract #15 contractor and sub-contractors. The intention of this process will be to help expedite a positive solution in addressing issues regarding girt and siding system tolerances and details. It was agreed that GHSC, KPF, Trataros, Jordan Panels and LBL will participate in a series of meetings culminating on January 15, 1999, to establish a direction to resolve the current issues relating to the field assembled wall panel system. The work sessions with the above listed parties will occur every Tuesday for the next three weeks. A final concept solution will be presented by GHSC on Friday, January 15, 1999. Based on the developed scheme, the subcontractors will be directed to revise their shop drawings, including the mock-up drawings, to reflect any changes as a result of the developed solution.

As discussed, GHSC will perform this work as an additional service. Please be advised that KPF will be formally submitting a request for these additional services. In light of the urgency in completing this work, we request that DASNY process an Amendment immediately upon receipt of KPF's request.

### Off-site performance mock-ups

There are three mock-up specimens to be tested; punched window in masonry, horizontal strip window and field assembled wall panel, and floor to floor glazed aluminum curtainwall.

As you are aware the punched window mock-up is currently in process. As per attached KPF memo to TDX dated 12/20/98, the mock-up experienced severe air and water infiltration during pre-testing at the masonry cavity wall assembly. In order to assess these



Mr. Nick D'Ambrosio
December 22, 1998
Page 2 of 2

problems, the masonry contractor is going to remove the brick veneer to allow for inspection of the remaining masonry assembly.

GHSC will be retained by DASNY to monitor the removal of the brick veneer, assess the integrity of the bituminous sheet air barrier and component thru-wall flashing installation, and develop a program to address these problems prior to re-commencement of testing. GHSC will continue to monitor the remaining testing, provide a full report documenting in writing and with photographs any masonry and window system revisions, and review and comment laboratory test results and as built shop drawings.

For the remaining two mock-ups GHSC will issue to DASNY a proposal for full performance test monitoring services including erection, testing and as built drawing coordination. In light of the problems experienced in the first performance mock-up, KPF strongly recommends GHSC's involvement because of their direct involvement with KPF in the exterior wall design, mock-up shop drawing review and contractor issues. Their involvement would insure a seamless process throughout the performance mock-up testing. In addition KPF recommends that GHSC be retained in some degree to perform controlled inspections on siding, window and curtainwall systems.

KPF recommends that GHSC propose a lump sum fee for the performance mock-up testing services for all three specimens. In order to do this GHSC will need the general schedule for the remainder of the testing. KPF would like to meet with you as soon as possible to reach an agreement as to how GHSC will be paid. It is very important that we finalize GHSC's involvement in the performance mock-up testing, agree on a fee and how they will be paid so that they can begin work immediately.

Please call either Lloyd Sigal or myself to finalize any issues related to GHSC's services in the field assembled wall panel resolution and the performance mock-up testing. KPF feels that the addition of GHSC to the project will help bring expedient and positive resolutions to the issues outlined above.

Very truly yours,

KOHN PEDERSEN FOX ASSOCIATES PC

Christopher Stoddard

cc:   G. Smith
      J. McCullough
      A. Mosellie
      L. Sigal
      P. Catalano
      C. Stoddard
      C. File
      File 2.3.1

R:\projects\1063bar\DOCS\122298L.DOC

Kohn Pedersen Fox Associates PC     111 West 57th Street, New York, NY 10019
Architects and Planning Consultants  Telephone 212 977 6500
New York, London, Tokyo              Fax 212 956 2526

**DRAFT.**

**Memorandum**

To
John McCullough, TDX

From                               Date
Christopher Stoddard               May 4, 1999

Re
Baruch Academic Complex - Site B
Contract #15 - Exterior Siding

Copies to
N. D'Ambrosio, R. Leu, M. Snyder, A. Mosellie, L. Sigal, C. File, File 4.8

**KPF**

This is in response to RFI# GC-01-164 regarding horizontal displacement of the exterior wall due to building sway.

In this RFI there is a request to provide the applied force to the siding system as a result of building sway. Weidlinger is in the process of calculating the requested force. This issue was discussed in detail during a phone conference with TDX, Jordan Panel Systems and KPF on April 30, 1999. During this conversation the Jordan Panel engineer stated he is engineering a "diaphragm type system which will be designed to resist the forces as a result of the buildings horizontal displacement. [AND AIR BARRIER SHEET]

Indirectly related to this RFI, Jordan Panel has engineered a vertical stiffener that functions to resist the dead load deflection of the exterior wall girts due to the dead load of the glazing system. This stiffener [is held in place by the] [LOAD DEFLECTION VIA] "clamping" force of the fastener connection to the tube. This fastener penetrates either one or two layers of butyl tape depending on the condition.

These two issues are of great concern to KPF. Jordan Panel is proceeding to engineer a system which conceptually stiffens the superstructure of the building. Typically siding systems of this scale are designed to move with the natural movement of the building structure. By resisting this continuous movement this condition may lead to system buckling and long term connection failures. Regarding the vertical stiffener/connection, KPF and Gordon H. Smith has commented on shop drawings and during the last exterior wall coordination meeting on April 8, 1999 that in time the butyl tape [MAY] will relax. As a result the strength of this connection may lose its integrity and put the fasteners into shear.

KPF requests that Jordan Panel Systems promptly address these concerns and incorporate any design changes in the upcoming performance mock-ups.

IT IS STRONGLY RECOMMENDED THAT THE PROJECT STRUCTURAL ENGINEER REVIEW THIS SPECIFIC ASPECT OF THE JORDAN DESIGN & STRUCT. CALCULATIONS

R:\projects\1063bar\DOCS\050499m.doc   SUB-ITTED.

JAN-20-99 11:26 FROM:TDX CONSTRUCTION          ID:2126790031          PAGE 3/4



ARCHITECTURAL     COMMERCIAL AND INDUSTRIAL

# Jordan Panel Systems Corp.

196 LAUREL ROAD -- EAST NORTHPORT, NEW YORK 11731
PHONE: 516-754-4900 -- FAX: 516-754-4643
E-MAIL: jordan@jordanpanel.com -- WWW: jordanpanel.com

January 13, 1999

Trataros Construction, Inc.
122 East 25th Street
New York, NY 10010

Attention:  John F. Clarke

Re:  Baruch Academic Complex - Site B
     55 Lexington Avenue
     New York City, NY
     #DA 6500 1802 2176
     Subcontractor #B07-07410
     JPS Job #9805

Dear Sir:

We had received a phone call today's date from KPF's representative, Chris Stoddard. Chris was inquiring as to the dead weight of our panel system and "loads imposed on structural girts". In turn, we have requested our structural engineer to provide this information.

We provide herewith the attached information. Please immediately pass same onto Chris Stoddard for his use. Should there be any questions, feel free to contact.

Very truly yours,

JORDAN PANEL SYSTEMS CORP.

John A. Finamore, Sr.
Vice President

RECEIVED 1-19-99

JAF:dg
Fax and hard copy
Enc.
cc:  Chris Falcone, TCI
     Ronald A. Finamore, JPS
     Philip J. Carvelas, JPS
     Dennis Dolan, JPS

C:\JORDOCS\CONTRACT\9805\0113.LJF

### Jordan Panel Systems Corp.

| FAX TRANSMITTAL | | # of Pages 3 |
|---|---|---|
| To John F. Clarke | From John Finamore | |
| Co. Trataros Const | JORDAN PANEL SYSTEMS CORP. | |
| Date 1-13-99 | Phone # (516) 754-4900 | |
| Fax # (212) 539-9961 | Fax # (516) 754-4643 | |

DEC-24-98 11:03 FROM:TDX CONSTRUCTION    ID:2128780031    PAGE 1/2



**TDX CONSTRUCTION CORPORATION**

121 West 27th Street
New York, N.Y. 10001
(212) 807-1414
FAX: (212) 807-1421

Baruch College Field Office
137 East 25th Street
New York, N.Y. 10010
(212) 679-0031

## MEMORANDUM

TO:     Nick D'Ambrosio

FROM:   John J. McCullough  JJM

DATE:   December 24, 1998

RE:     Baruch College - Site "B"
        Minutes of Meeting on Metal Siding

---

A meeting was held on December 22, 1998 at TDX's field office with the following attendees:

| | |
|---|---|
| Nick D'Ambrosio | DASNY |
| James Jones | TDX |
| John J. McCullough | TDX |
| Ray Leu | TDX |
| John Barrara | TDX |
| Chris Stoddard | KPF |
| Lou Katsos | Trataros |
| John Clarke | Trataros |
| Chris Flacon | Trataros |
| Ron Finamore | JPS |
| John Finamore Sr. | JPS |
| Henry Diaz | JPS |
| Gus Larosa | JPS |
| Sebastian Martello | JPS |
| Philip Carvelas | JPS |
| Josif Berger | LBL |



The purpose of this meeting as to resolve major issues relating to the metal siding, curtainwall and windows.

The following constitutes what was discussed:

1. TDX to schedule with Commercial Brick Corporation to remove and replace the brick on the off-site mock up #3 to determine the cause of the

FAX: (212) 679-0037



2

**TDX CONSTRUCTION CORPORATION**

air & water infiltration. An air test will be conducted prior to the re-installation of the brick to ensure a proper seal. Based on the preliminary testing of the mock up, LBL to revise their flashing detail at the window jamb and at the sill. This does not affect the integrity of the punch windows. LBL stated that they would release the window for fabrication to meet the February delivery date.

2. Off site mock up #2 for the curtainwall is scheduled for March. KPF to select color of glass by next week. There is a lead-time on the glass. The mock up will be done with or without the right color of glass but with the same type of glass.

3. Off site mock up #1 for the metal siding is also scheduled for March. LBL will have the windows for the siding. Jordan stated that their mock up drawings are not yet fully approved and details need to be resolved prior to any fabrication.

4. A lengthy discussion then ensued regarding the as built location of the girts. JPS stated they are not responsible for the design of the fix to accommodate the tolerances of the girts. Proposed fixes were discussed including the addition of a cap onto the girts and relocating further the working points. KPF to review.

5. JPS wants further direction on the release of the liner panel for fabrication prior to the approval of mock up #1.

6. A meeting is scheduled for December 29, 1998 at 10:30 a.m. at the TDX field office with Trataros, JPS, LBL, KPF and TDX to work out details on the shop drawings and to resolve the above issues.

At this point, the meeting was adjourned.

JJM/amo

Cc:   Ray Leu
      All Attendees

Memo Dmny Minutes Metal Siding

12-22-98

TDX OFFICE

| Name | Affiliation |
|---|---|
| Ron Finamore | J.P.S. |
| John A Finamore Sr. | " " " |
| Henry Diaz | JPS |
| Gus Larosa | J.P.S |
| Sebastian Martello | JPS |
| Philip J. Carvelas | SPS |
| Jim Jones | TDX |
| Chris Falcone | Trataros |
| Josif Berger | LBL |
| John J. Barrera | TDX |
| John McCullough | TDX |
| Ray Leu | TDX |
| Chris Stoddard | KPF |
| Lou Katsos | JCI |
| John Clarke | TCS |
| Mick D'Ambrosio | DASNY |

1067.01
Stollard
Hartwig
Marcolini

G.M. Crocetti, Inc.
3960 Merritt Avenue
Bronx, New York 10466
Phone: 718-994-0900
Fax: 718-994-4505

## FACSIMILE COVER SHEET

**TO:** Michael Marcolini.

**COMPANY:** KPF

**PHONE:** (212) 977-6500

**FAX:** (212) 956-2526

**DATE:** 07/23/02

**SUBJECT:** Baruch College. 1-1/4" Jet Mist Counter Top

**Pages Including
This Cover Sheet:** 02
**COMMENTS:**

Please approve for Fabrication.

Sincerely,
**Juan Carlos Gomez
Project Manager**

This FAX contains privileged and confidential information intended only for use of the individual or entity named above. If the reader of this FAX is not the intended recipient, you are hereby notified that nay dissemination or copying of this FAX is strictly prohibited. If you have received this FAX in error, please notify us by telephone and return the original FAX to us at the return address above via the U.S. Postal Service. Thank you!



1. Plan
   NTS.



A. SECTION DETAIL.
   NTS.

Material: 1-1/4" Jet Mist. Polished

| REVISION: | | | | | | |
|---|---|---|---|---|---|---|
| DATE: | | | | | | |

| G.M. CROCETTI INC. | PROJECT TITLE: | BARUCH COLLEGE | DRAWING #: |
|---|---|---|---|
| 3960 Merritt Avenue | TITLE: | ATRIUM COFFEE BAR | SK-01 |
| Bronx, New York, 10466 | ARCHITECT: | KOHN PEDERSEN FOX & ASSOCIATES | |
| Ph. (718) 994 0900 | CONTRACTOR: | TRATAROS CONSTRUCTION | JOB #: 98106 |
| Fax. (718) 994 4505 | SCALE: AS NOTED | DRAWN BY: JCG   CHECK BY: | DATE: 07/23/02 |

CERAMIC MARBLE GRANITE TERRAZZO

** TOTAL PAGE.02 **