# EXHIBIT 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
TRAVELERS CASUALTY & SURETY COMPANY as :
Administrator for Reliance Insurance Company   :
                                               :
                    Plaintiffs,                :        04 Civ. 5101 (HB)
                                               :
         -against-                             :        **OPINION & ORDER**
                                               :
THE DORMITORY AUTHORITY OF THE                 :
STATE OF NEW YORK, TDX CONSTRUCTION            :
CORPORATION, and KOHN, PEDERSON, FOX           :
& ASSOCIATES, P.C.,                            :
                                               :
                    Defendants.                :
-----------------------------------------------------------------------X
THE DORMITORY AUTHORITY OF THE                 :
STATE OF NEW YORK                              :
              Third-Party Plaintiffs,          :
                                               :
         -against-                             :
                                               :
TRATAROS CONSTRUCTION, INC. and                :
TRAVELERS CASUALTY AND SURETY                  :
COMPANY                                        :
              Third-Party Defendants.          :
-----------------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge[*]:**

On June 28, 2004, Plaintiffs, Travelers Casualty & Surety Company ("Travelers"), as administrator for Reliance Insurance Company ("Reliance"), filed the instant action which alleged, inter alia, negligent misrepresentation against Defendant, Kohn, Pederson Fox & Associates, P.C. ("KPF") in connection with the Site B campus construction project at Baruch College. (See Tr. 2:11 – 17.) Pursuant to Fed. R. Civ. P. 12(b)(6), KPF moves to dismiss the Complaint for lack of privity of contract, or its "functional equivalent," between Travelers and KPF. The Court heard oral arguments on the motion on May 4, 2005. For the foregoing reasons, Defendant's motion to dismiss is DENIED.

---

[*] Mychii Snape, a spring 2005 intern in my Chambers, and currently a second-year law student at Columbia University School of Law, provided substantial assistance in the research and drafting of this Opinion.

1

# I. BACKGROUND

## A. Pre-Building Relationship

The Dormitory Authority of the State of New York ("DASNY") contracted with KPF to perform "programming, design, and certain construction phase services for the construction of Baruch College – Site "B", consisting of a building of approximately 700,000 gross square feet, near the existing school site, to house classrooms, a theater, lecture halls, and other educational facilities." (Peter Catalano, Att'y for Def. KPF ("Catalano"), Aff. at ¶ 3) ("the Project"). The terms of the contract define the nature of the relationship between DASNY and KPF as an "Owner-Architect" relationship:

> The relationship created by this Agreement between the OWNER and ARCHITECT is one of independent ARCHITECT and it is in no way to be construed as creating any agency relationship between the OWNER and the ARCHITECT nor is it to be construed as, in any way or under the circumstances, creating or appointing the ARCHITECT as an agent of the OWNER for any purpose whatsoever.

(Catalano Aff. Ex. A, KPF/DASNY Contract Agreement (herein, "Ex. A"), at App. D ¶ 13.) KPF, or "Architect," was obligated to "prepare and supply the necessary set of Contract Documents for bidding, and eventual award of contracts, between the owner and the Contractors for approximately ten separate contract[ ] packages." (Catalano Aff. Ex. A at ¶ G.1.) KPF was contractually obligated to "investigate questions posed by bidders or any other questions, and issue written replies to all bidders in the form of supplemental bulletins, addenda, or bid instructions." (Catalano Aff. Ex. A at ¶ G.2.) The contract between KPF and DASNY included language to the effect that KPF:

> [S]hall assist the owner in reviewing and analyzing bids, including any investigation that may be required of qualifications and capabilities of low bidders [and] [i]nspect on a bi-weekly basis, or as required by the OWNER, the Work in progress to determine compliance with the requirements of the contract drawings and specifications or approved shop drawings.

(Catalano Aff. Ex. A at ¶ G.4.) As such, KPF was required to both review approved submissions from contractors and monitor the construction of the Project.

Throughout the bidding process, bidders were instructed that all communication regarding Project questions and concerns should be directed to KPF as a final decision-maker. Specifically, the document entitled "Information for Bidders" stated that before bidding, the

prospective bidder "shall make written requests to the Architect, with a copy forwarded to the owner, for an interpretation or correction of any ambiguity, inconsistency or error [in the bidding materials]." (David Dreifuss, Att'y for Pl. ("Dreifuss"), Aff. Ex. C, DASNY Notice to Bidders, at §1A.) Furthermore, "only interpretations, corrections or additional Contract provisions made in writing by the Architect as addenda shall be binding." (Dreifuss Aff. Ex. C at §1J.)

B. **Building the Project**

Trataros Construction, Inc. ("Trataros") successfully bid on construction Contract No. 15 and Contract No. 16. (John Scarpellino, Att'y for Pl. ("Scarpellino"), Aff. at ¶ 3 a - b.) In accordance with the terms of the construction contracts, Trataros' obtained four separate surety bonds from Reliance.[1] Each performance surety bond named Trataros as the principal and DASNY as the obligee or beneficiary. (Compl. at ¶ 12.) Similarly, each labor surety bond named Trataros as the principal and their subcontractors as the obligee. (Scarpellino Aff. Ex. 2, ¶ 1.) The surety bond for Contract No. 15 was valued at $50,222,000. (Scarpellino Aff. ¶ 3a.) The surety bond for Contract No. 16 was valued at $24,140,000. (Scarpellino Aff. ¶ 3b.) Subsequently, Travelers became surety for the bonds and, in this role, Travelers retained the right to act with power of attorney for Reliance on any matter relating to these bonds. (Compl. at ¶14.)

The Project commenced in 1998, but never stayed on schedule. Nonetheless, the entire Project has since been completed. (Compl. at ¶ 17.) Travelers and DASNY, as a counterclaim defendant, both allege that KPF made considerable design errors which led to significant delays and increased costs during the course of construction. (Compl. at ¶¶ 52-56; see also DASNY Ans. ¶¶ 110-116.) As a result, and according to DASNY's pleading, Travelers will incur substantial expense. In particular, DASNY alleged:

> KPF failed to exercise the required standard of care, competence and skill in the completion of its duties as architect of record for the Project. Among other things, KPF improperly and negligently (1) failed to complete and coordinate the Design Documents, (2) failed to properly oversee and perform the professional services that were required to complete the Designed Documents, (3) failed to supervise and coordinate the work of its subcontractors and

---

[1] A surety bond is a unique form of insurance. While insurance generally insures a principal for his own benefit; in a surety bond, the principal obtains insurance for the benefit of a third party, known as the obligee. "A surety guaranties to the project owner that if the contractor defaults, the project will be completed." DCR Trucking & Excavating, Inc. v. Aetna Cas. & Surety Co., No. 96 Civ. 3995, 2002 WL 32096594, at *5 (E.D.N.Y. Oct. 31, 2002) (internal citation omitted).

3

>consultants and integrate their work into the Design Documents, (4) refused to acknowledge its Design Defects and/or implement the necessary remedial corrections in a timely or professionally competent fashion, and (5) failed to satisfy other elements of the required standard of care.

(Scarpellino Aff. ¶ 10, citing to DASNY Counterclaims.)

According to Travelers, KPF may be responsible for some or all the losses.

## II.   STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). The Court's consideration is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). Dismissal of a claim is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## III.   CHOICE OF LAW

When a district court's jurisdiction is based upon diversity of citizenship, as it is here, the court applies the choice-of-law rules of the forum state. Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) (citing to Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Thus, pursuant to New York choice of law rules, I will apply a "'center of gravity' or 'grouping of contacts'" analysis to resolve conflicts of law. Id. Application of the center of gravity test in contract cases requires that the court consider the locus of contract negotiation, formation, performance and subject matter, as well as "the domicile or place of business of the contracting parties." Id. (internal citation omitted.)

Here, it is undisputed that the bidding process, contract award, and construction of the Project, occurred in New York. (Compl. at ¶¶ 9-13; ¶¶ 51-55.) In addition, the defendant is domiciled in New York. (Compl. at ¶ 5.) While Travelers and Reliance are out-of-state entities, their domicile cannot override the significant relationship of New York State to this dispute because alone it "is simply insufficient to outweigh the contacts to New York." Gerling Am. Ins. Co v. Steadfast Ins. Co., No. 00 Civ. 7907, 2001 WL 936288, at *2 n.5 (S.D.N.Y. Aug. 17, 2001) (Baer, J.).

4

In accordance with Maryland Casualty., 332 F.3d at 151, and the center of gravity analysis, New York law governs the adjudication of this matter.

### IV.   Discussion

KPF moves to dismiss the complaint on two grounds. First, KPF contends that Travelers, as insurer, lacks standing to vindicate the rights or pursue the claims of its principal, Trataros. Second, KPF asserts that, assuming Travelers has standing to pursue its claim, the KPF and Trataros relationship fails to manifest the "functional equivalent" to privity of contract. Therefore, Travelers lacks the requisite relationship to seek indemnity from KPF for economic losses incurred as a result of KPF's alleged negligent misrepresentations.

### A.   Travelers Has Standing to Pursue its Claim Against KPF

Pursuant to New York law, a surety is bound by the obligations of its principal. West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co., 49 F.3d 48, 50 (2d Cir. 1995) ("Under New York law a surety's duty generally is coextensive with that of the principal on the bond."). With permission of the principal, a surety has the right to assert any claim or defense of its principal. See DCR Trucking & Excavating, Inc. v. Aetna Cas. & Surety Co., No. 96 Civ. 3995, 2002 WL 32096594 (E.D.N.Y. Oct. 31, 2002) (citing cases); see also Durable Group, Inc. v. De Benedetto, 444 N.Y.S.2d 662 (1st Dep't 1981) (citing Walcott v. Clevite Corp., 13 N.Y. 2d 48, 56 (1963).

Here, Travelers, as surety, is obligated to cover any unexpected economic loss related to Trataros's performance with regards to Contract No. 15 and Contract No. 16. Travelers' claim is brought on behalf of Trataros, which has standing to collect from KPF for damages resulting from KPF's alleged negligent misrepresentations. Trataros has consented to Travelers pursuing that claim on its behalf. (Compl. at ¶ 38.)

Accordingly, Travelers has the right to present any claim and use any argument available to Trataros against KPF in this litigation.

### B.   The Trataros - KPF Relationship is "Functionally Equivalent" to Privity of Contract

Travelers seeks indemnification for economic losses it has suffered, or will suffer, as a result of KPF's alleged negligent misrepresentations. "The long-standing rule is that recovery may be had for pecuniary loss arising from negligent [mis]representations where there is actual privity of contract between the parties, or a relationship so close as to approach that of privity." Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson, 73 N.Y. 2d 417, 424 (1989); see also Bd. of Managers of Astor Terrace Condo. v. Schuman, Lichtenstein, Claman & Efron, 583

N.Y.S.2d 398, 400 (1st Dep't 1992). Such a broad test has the potential to create nearly unlimited liability for service providers.

In Ossining, the New York Court of Appeals defined the scope of a defendant's potential liability in the absence of a contract. 73 N.Y. 2d at 420. There, a school district had brought a negligence and malpractice action against both an architectural firm with whom the school district contracted and two engineering firms with whom the architect had contracted. Id. While the district was unequivocally in contractual privity with the architect, the issue before the Court of Appeals was whether the school district could assert negligence and misrepresentation claims against the engineers, with whom the district lacked contractual privity. The Court of Appeals determined that a relationship will be "so close as to approach that of privity" if the plaintiff can demonstrate:

> (1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance.

Id. at 425; see also Credit Alliance Corp. v. Arthur Andersen & Co., 65 493 N.Y.S. 2d 435, 445 (1985). The Court of Appeals determined that because the engineers were aware that the reports they drafted for the architect would, in turn, be transmitted to, and relied upon by, the school district, the bond between the district and the engineers was the "functional equivalent of contractual privity." Ossining, 73 N.Y. 2d at 419.

1. *KPF's Awareness of Use for a Particular Purpose*

The first prong of the Ossining test requires that a defendant be on notice and that the only logical end for its services is a particular purpose. See Doehla v. Wathne Ltd., Inc., No. 98 Civ. 6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999). For example, New York courts have determined that professional distribution or submission of instructional material to a client, with the knowledge that the materials will be utilized by a third party (e.g., KPF's submission of material to DASNY with the knowledge that the materials will be utilized by Trataros), provides sufficient notice that such materials will be utilized for a particular purpose. See generally, Prudential-Bache Sec., Inc. v. Resnick, 555 N.Y.S.2d 367 (1st Dep't 1990) (law firm had sufficient notice); Ossining, 73 N.Y. 2d at 426 (engineering firm had sufficient notice); Credit Alliance Corp., 65 N.Y. 2d at 554 (accounting firm had sufficient notice).

This is not the first time that KPF has raised the lack of privity argument. In Stratagem

Dev. Corp. v. Heron Intern. N.V., 153 F.R.D. 535 (S.D.N.Y. 1994), Heron Properties, Inc. ("Heron"), and Stratagem Development Corporation ("Stratagem"), executed an agreement to develop two office towers. Id. at 538. As part of the agreement, Stratagem agreed to act as the "owner's representative" for the building project. In addition, Heron hired the architectural firm, KPF, to design one of the office towers. Id. at 538. Heron was ultimately dissatisfied with the services provided by Stratagem and commenced litigation. In the third party complaint, Stratagem alleged that KPF "was responsible for any miscalculations in the construction cost and square footage estimates, . . . delays in construction . . . [and that] Stratagem relied on KPF . . . to provide underlying data. . . ." Id. at 540. KPF moved to dismiss the complaint. As it does here, Stratagem argued that it did not enter into any contracts with Stratagem and, therefore, there was a lack of contractual privity between KPF and Stratagem. Id. at 548. There, in accordance with Ossining, the court held that Stratagem adequately demonstrated all three prongs of the Ossining test:

> First, KPF knew that its drawings were to be used for a particular purpose, namely, the construction of Heron Towers I and II. Second, [Stratagem] relied on figures provided by KPF in drafting the Viability Studies, and submitting construction cost and square footage estimates to Heron. Finally, [Stratagem] alleged facts establishing a sufficiently close relationship between themselves and KPF for the Court to find an equivalent of privity.

Stratagem, 153 F.R.D at 550. As such, the court determined that Stratagem adequately pled the functional equivalent of privity and denied KPF's motion to dismiss. Id.

More recently, in Marcellus Const. Co., Inc. v. Vill. of Broadalbin, 755 N.Y.S.2d 474 (3rd Dep't 2003), the Appellate Division expanded upon the concepts articulated in Stratagem and concluded that by its very nature, architects are put on notice that the designs which they create will be utilized by contractors or construction workers. Id. at 476. While the court ultimately determined that the plaintiff failed to demonstrate the functional equivalent of privity for other reasons, it concluded that since the "design of the project was part of the final bid package for all interested construction bidders . . . the first prong of the tripartite test" was satisfied. Id.

Here, KPF was employed to help achieve a common goal: the building of the Project. As in Stratagem and Marcellus, KPF's designs and obligations were intended to benefit Trataros. Beyond its design obligations, KPF was responsible for "[i]nspect[ing] on a bi-weekly basis, or

as required by the OWNER, the Work in progress to determine compliance with the requirements of the contract drawings and specifications or approved shop drawings" during construction. (Catalano Ex. A at ¶ H.7.) In addition, KPF was obligated to review and oversee the construction to ensure that the contractors adhered to KPF's designs and parameters while building of the Project.

Accordingly, KPF was on sufficient notice that its designs, bid responses and cite management would be used for a particular purpose.

2. *Trataros's Reliance In Furtherance Of a Purpose*

In accordance with the second prong of the Ossining test, the court is required to limit potential liability to "known" parties. See Ossining, 73 N.Y. 2d at 425. The purpose of the second prong is "to protect a defendant from being subjected to liability for lawsuits brought over an indeterminate time by the members of an indeterminate class." Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P., 40 F. Supp. 2d 183, 191 (S.D.N.Y. 1999) (internal citation omitted); see Credit Alliance Corp., 65 N.Y. 2d at 548 (known party requirement was designed to ensure that defendant will not be liable to "any member of an indeterminate class . . . present and prospective, known and unknown"). A plaintiff is required to establish that the plaintiff relied upon that the materials produced by the defendant. See Ossining, 73 N.Y. 2d at 424-425 (internal citation omitted) (emphasis added). In Ossining, the Court of Appeals held that if the defendants worked with the knowledge that it was for the sole benefit of the school district, and represented to others that plaintiff was their employer, then a motion to dismiss should be denied. Id. at 425-426.

For instance, in IT Corp. v. Ecology and Envtl. Eng'g, P.C., 713 N.Y.S.2d 633 (4th Dep't. 2000), a plaintiff sought damages for negligence and malpractice from defendant, an engineering firm retained by the New York State Department of Environmental Conservation (DEC) to design, prepare, and manage a project. Plaintiff alleged, inter alia, that they relied on the studies conducted by the defendant before it bid on the State Department of Environmental Conservation project. Id. at 635. The Appellate Division held that "while defendant may have known that potential bidders would rely upon its work to prepare their bid . . . plaintiff cannot be considered a known party merely because it was a potential bidder." Id. at 636. The defendant's interaction with plaintiff was insufficient and the Appellate Division refused to expand the functional equivalent of privity to an "indeterminate class of persons who, presently

or in the future, might act in reliance on defendant's investigation." Id.

As opposed to the interaction between the parties in IT Corp., KPF cannot maintain that Trataros was an unknown party. As part of KPF's relationship with DASNY, KPF was contractually obligated to interact with Trataros pre- and post-bid. Pre-bid, KPF maintained a list of the parties expected to bid on the contract and solicited such bids. During the bidding process, pursuant to the terms of the contract between DASNY and KPF, KPF was obligated to examine contract bids. Most importantly, and in stark contrast to IT Corp., KPF's contractual obligations to DASNY did not end with the bidding process. While in IT Corp. the engineering company's obligations to the State Department of Environmental Conversation appeared not to include communications between the plaintiff and engineering company, Id. at 636, here, KPF was required to inspect the progression of construction and ensure compliance with the designs created and submitted. (Catalano Ex. A at ¶¶ 1 – 12; Supp. Aff. Rogers Ex. A.) Trataros relied on both KPF's designs and calculations, as well as architectural expertise, as the Project unfolded. See Dorking Genetics v. United States, 76 F.3d 1261, 1271 (2d Cir. 1996) ("[I]t is enough if the complaint shows reliance by the plaintiff that was the end and aim of the transaction.") (internal citation omitted). Indeed, Trataros's services were performed in concert with KPF's instructions regarding the building of the Project.

Accordingly, KPF's duties to oversee and instruct Trataros about the design of the Project clearly indicate that Trataros was not a "member[] of an indeterminate class," Vanguard Mun. Bond Fund, 40 F. Supp. 2d at 191, and, therefore, the second factor of the Ossining test is satisfied.

### 3. *Conduct Between KPF and Travelers*

The third prong of the Ossining test requires "linking conduct," Williams, 983 F.2d at 1183, and "courts have uniformly required more than phone calls, general communications or unacknowledged assertions of reliance in order to establish linking conduct." BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 986 (S.D.N.Y. 2003).

Relying on Williams, 983 F.2d at 1183, KPF argues that any contact or communications between KPF and Trataros occurred only at the direction of DASNY, and KPF only acted as a representative of DASNY. As such, according to KPF, the contact between Trataros and DASNY fails to establish a direct relationship of its own that would link it with Trataros. See Id.

In Williams, the Second Circuit noted that contacts made at the request of the owner do

not establish liability because in such situations the defendant is acting as an agent of the owner, and not in their own capacity. Id. According to the Second Circuit, an architect's limited interaction at the direction of the owner "directed to all prospective bidders . . . is insufficient to establish the relationship required for the imposition of liability under New York law." Id.

However, in a post Williams decision, Dorking Genetics, the Second Circuit held that "direct dealings" is only one approach a party may employ to establish a sufficient nexus so as to demonstrate the "functional equivalent of privity." Dorking Genetics, 76 F.3d at 1270. In Dorking Genetics, The Second Circuit reversed a district court's decision to dismiss a Complaint "on the ground that Dorking could not prove a relationship sufficiently close to privity of contract." Id. at 1263. Relying on the New York Court of Appeals decision in Credit Alliance, a decision which preceded Ossining, the Second Circuit held that "direct dealings" were "one of several factors that might establish a relationship sufficiently close to privity" and "that an action could be brought by plaintiffs if the contract for services was tailored to the plaintiffs' requirements (thus demonstrating that the defendant understood the plaintiffs' reliance) even if the plaintiffs had never interacted directly with the defendant." Id. As a result, the Second Circuit held, if plaintiff's reliance on defendant's services was within the contemplation of the parties, the plaintiff was entitled to bring this cause of action. Id. at 1271.

Here, Trataros's reliance on KPF's services was well within the contemplation of the parties. Not only did KPF design the Project's plans and specifications, but solicited bids, answered inquiries, reviewed submissions, amended plans and specifications from contractors such as Trataros, and most importantly, oversaw the actual construction of the Project by contractors such as Trataros. (Catalano Ex. A at ¶¶ G1 – G4, H; Supp. Aff. Rogers Ex. A.) Indeed, KPF's contractual obligations required KPF's continual communication and oversight of contractors such as Trataros. For example, among other construction phase obligations, KPF was required to:

> Review and approve or disapprove all shop drawings and samples submitted by the Contractor for adherence to the intent and requirements of the Contract Documents. . . . All submittals shall be reviewed promptly and completely. . . .
>
> Inspect on a bi-weekly basis, or as required by the OWNER, the Work in progress to determine compliance with the requirements of the contract drawings and specifications or approved shop drawings. A report shall be issued detailing the inspection. . . .

> Upon completion of each prime contract, make a final inspection of the Work and upon completion of each Phase of Work, represent to the OWNER, in writing, that the Work is complete and in accordance with the Contract Documents. . . .

(KPF Ex. A. at ¶¶ H1, H7, H11.) Moreover, the plain language of KPF's contract with DASNY specifically reject KPF's claim that it acted as DASNY's agent: "[t]he relationship created by this Agreement [is] in no way to be construed as creating any agency relationship between the OWNER and the ARCHITECT . . ." (Catalano Aff. Ex. A at ¶ 13.). KPF's design of the Project, oversight obligations throughout the building phase of the Project, and involvement in the bidding process, clearly satisfy the linking requirement of the Ossining Test. Therefore, KPF's defense that it was merely acting as an agent of the owner becomes untenable.

In accordance with Ossining and its progeny, Travelers' has sufficiently pled the functional equivalent of privity.

## V. CONCLUSION

For the reasons set forth above, KPF's motion to dismiss for failure to state a claim upon which relief may be granted is DENIED and the Clerk of the Court is instructed to Close this motion and remove it from my docket..

**IT IS SO ORDERED.**
**New York, New York**

May 1?, 2005

_____
**U.S.D.J.**

11