IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
TRAVELERS CASUALTY AND SURETY COMPANY
as Administrator for RELIANCE INSURANCE     :   07 Civ. 6915 (DLC)
COMPANY,
                                            :
                    Plaintiff,
                                            :
           -against-
                                            :
DORMITORY AUTHORITY - STATE OF NEW YORK,
TDX CONSTRUCTION CORP. and KOHN PEDERSEN    :
FOX ASSOCIATES, P.C.,
                                            :
                    Defendants.
------------------------------------------------------------------ X

**REPLY MEMORANDUM ON MOTION TO DISMISS COMPLAINT**

                                    ZETLIN & DE CHIARA, LLP
                                    *Attorneys for Defendant*
                                        *Kohn Pedersen Fox Associates, P.C.*
                                    801 Second Avenue
                                    New York, New York 10017
                                    (212) 682-6800

On the Memorandum,

    Michael K. De Chiara, Esq.
    David Abramovitz, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT

    POINT I

    PLAINTIFF'S OPPOSITION PAPERS CONFIRM
    THAT THE COMPLAINT FAILS TO STATE A CLAIM ..................................................... 1

    POINT II

    THE EXTRANEOUS MATERIALS SUBMITTED BY
    PLAINTIFF SHOULD NOT BE CONSIDERED BY THE COURT ...................................... 2

    POINT III

    KPF'S MOTION TO DISMISS SHOULD BE CONSIDERED ON ITS MERITS ................. 2

    POINT IV

    PLAINTIFF FAILS TO DEMONSTRATE THAT THE
    RELATIONSHIP BETWEEN KPF AND TRATAROS
    WAS SO CLOSE AS TO BE FUNCTIONALLY
    THE SAME AS CONTRACTUAL PRIVITY ........................................................................ 3

        A. Plaintiff Fails to Show that the Relationship between KPF and Trataros was
           Virtually Indistinguishable from Contractual Privity ................................................. 3

        B. Plaintiff also Fails to Meet the Individual Elements of the Ossining Test ................. 4

                1. DASNY did not Retain KPF for the Particular Purpose of Making
                   Representations for Trataros' Reliance ............................................................ 4

                2. Trataros was not a Known Party when DASNY Retained KPF ........................ 6

                3. Plaintiff Fails to Demonstrate the Requisite Linking Conduct ......................... 6

    POINT V

    PLAINTIFF FAILS TO DEMONSTRATE THAT TRATAROS,
    ITS SUBCONTRACTORS OR PLAINTIFF WERE INTENDED
    THIRD PARTY BENEFICIARIES OF THE DASNY-KPF AGREEMENT ......................... 9

CONCLUSION ........................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*American Manufacturers Mutual Ins. Co. v. Payton Lane Nursing Home, Inc.*,
   2007 U.S. Dist. LEXIS 15160 (E.D.N.Y. Feb. 28, 2007) .............................................................. 3

*Dictograph Products Co. v. Sonotone Corp.*, 230 F. 2d 131 (2d Cir. 1956) ............................. 2

*ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, 2005 U.S. Dist. LEXIS 42993
   (N.D.N.Y. July 29, 2005) ............................................................................................... 2, 8

*GAF Corp. v. Circle Floor Co., Inc.*, 329 F. Supp. 823 (S.D.N.Y. 1971) ............................. 2

*IFD Construction Corp. v. Corddry Capernter Dietz and Zack*, 253 A.D.2d 89, 685 N.YS.2d 670
   (1st Dep't 1999) .......................................................................................................... 5

*JP Morgan Chase Bank v. Cook*, 322 F. Supp. 2d 353 (S.D.N.Y. 2004) ............................. 5

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) .................................................... 2

*Marcellus Construction, Inc. v. Village of Braodalbin*, 302 A.D.2d 640, 755 N.Y.S.2d 474
   (3rd Dep't 2003) ........................................................................................................... 5

*Ossining Union Free School District v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541
   N.Y.S.2d 335 (1989) ........................................................................................ 1, 4, 5, *passim*

*Pomarc Associates, Inc. v. Beach Concerts, Inc.*, 275 A.D.2d 402, 712 N.Y.S.2d 882
   (2nd Dep't 2000) ........................................................................................................... 5

*Port Chester Electrical Constr. Corp. v. Atlas*, 40 N.Y.2d 655, 389 N.Y.S.2d 327 (1976) ......... 9

*Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377,
   590 N.Y.S.2d 831 (1992) .............................................................................................. 5

*Reliance Insurance Co. v. Morris Assoc., P.C.*, 200 A.D.2d 728, 607 N.Y.S.2d 106
   (2nd Dep't 1994) ........................................................................................................... 5

*Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F. 2d 63 (2d Cir. 2000) ............ 6

*State of California Public Employees' Retirement System v. Shearman & Sterling*,
   95 N.Y.2d 427, 718 N.Y.S.2d 256 (2000) ...................................................................... 9

*Strauch v. Demskie*, 829 F. Supp. 503 (S.D.N.Y. 1995) ......................................................... 3

*Ultramares Corp. v Touche*, 255 N.Y. 170 (1931) .................................................................. 5

*Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176
   (2d Cir. 1993) .................................................................................................... 4, 6, 7, 8

**Statutes**

FRCP 12(b)(6) ......................................................................................................... 1, 2

Kohn Pedersen Fox Associates, P.C. ("KPF") submits this Reply Memorandum of Law in further support of its motion to dismiss the Complaint pursuant to FRCP[1] 12(b)(6).

## PRELIMINARY STATEMENT

Despite its voluminous submittal of documents outside the pleadings in opposition to KPF's motion to dismiss, Plaintiff fails to demonstrate that it is entitled to sue KPF. On the contrary, the sheer volume of Plaintiff's submittals, which total more than 1,400 pages, demonstrates that the Complaint is unable to stand on its own. In the final analysis, nothing in Plaintiff's opposition papers or its submittals demonstrates that KPF stepped beyond its role as the owner's architect and engaged in conduct to establish an independent relationship with Trataros. Although Plaintiff pays lip service to the analysis required under the New York Court of Appeals' decision in *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335 (1989), closer analysis reveals that its claims are premised solely upon Trataros' status as one of the many dozens of contractors that bid upon and performed construction work on the Project. Because New York law does not permit a contractor to sue an owner's architect for economic damages on that basis, the Complaint should be dismissed.

## ARGUMENT

### POINT I

### PLAINTIFF'S OPPOSITION PAPERS CONFIRM THAT THE COMPLAINT FAILS TO STATE A CLAIM

A motion to dismiss addresses whether the allegations in the pleading are sufficient to state a claim. Rather than attempt to demonstrate that the allegations in its Complaint are sufficient, Plaintiff instead submits more than 1,400 pages of extraneous materials and argues that those documents demonstrate the existence of a claim. Notably, although the

---

[1] Terms that were defined in KPF's moving papers are used with the same meaning herein.

"Statement of Facts" in Plaintiff's Memorandum of Law in Opposition ("Plaintiff's Memorandum") contains more than 70 citations, <u>not one of them</u> is to the Complaint itself. Any Complaint that needs to be "supplemented" to such an extent is clearly inadequate on its face.

## POINT II

### THE EXTRANEOUS MATERIALS SUBMITTED BY PLAINTIFF SHOULD NOT BE CONSIDERED BY THE COURT

In considering an FRCP 12(b)(6) motion to dismiss, the Court must limit itself to facts stated in the Complaint or in documents attached or incorporated by reference. Documents that are not an integral part of the Complaint may not be considered. *See, Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Where, as here, the party opposing a 12(b)(6) motion submits extrinsic evidentiary materials, the Court should disregarded those materials and consider only the allegations in the pleading. *See, ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, 2005 U.S. Dist. LEXIS 42993, * 6-7 (N.D.N.Y. July 29, 2005).

## POINT III

### KPF'S MOTION TO DISMISS SHOULD BE CONSIDERED ON ITS MERITS

Plaintiff's assertion that this Court should adopt Judge Baer's ruling in a prior proceeding without further inquiry is both legally and factually incorrect. In this Circuit, a decision of a district court does not deprive another district court of authority to determine an issue, even in the same or a related case. *Dictograph Products Co. v. Sonotone Corp.*, 230 F. 2d 131 (2d Cir. 1956); *GAF Corp. v. Circle Floor Co., Inc.*, 329 F. Supp. 823, 826-27 (S.D.N.Y. 1971) (prior decisions held not to deprive the court "of power to come to [its] own conclusion; indeed the Court of Appeals for this Circuit recommends that course of action to District

2

Judges"). Concerns of efficiency do not warrant abiding by an earlier decision that was erroneous. *See, Strauch v. Demskie*, 829 F. Supp. 503, 506 (S.D.N.Y. 1995).[2]

As discussed in KPF's moving papers, Judge Baer's ruling that Plaintiff pleaded the functional equivalent of privity was inconsistent with New York law set forth by the Court of Appeals. For this reason, the only case that has cited Judge Baer's decision declined to follow it. *See, American Manufacturers Mutual Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2007 U.S. Dist. LEXIS 15160, *22 n. 5 (E.D.N.Y. Feb. 28, 2007).[3] This Court should do the same.

### POINT IV

### PLAINTIFF FAILS TO DEMONSTRATE THAT THE RELATIONSHIP BETWEEN KPF AND TRATAROS WAS SO CLOSE AS TO BE FUNCTIONALLY THE SAME AS CONTRACTUAL PRIVITY

The Complaint does not allege facts sufficient to even suggest that KPF and Trataros had a relationship virtually indistinguishable from contractual privity, as demonstrated by Plaintiff's attempt to supplement the pleading with more than 1,400 pages of documents. Even considering Plaintiff's voluminous submittal, any relationship between KPF and Trataros was limited to the ordinary and usual contacts between an architect and contractor during a project. That is far different than the direct relationship required under New York law.

**A.   Plaintiff Fails to Show that the Relationship between KPF and Trataros was Virtually Indistinguishable from Contractual Privity**

Under Plaintiff's analysis, the relationship between the design professional and contractor would be the functional equivalent of privity on <u>every</u> construction project. That is

---

[2] The *Strauch* court declined to follow an earlier ruling where the cases on which it was based did not support its conclusion.

[3] Allowing Plaintiff to maintain a claim that is unsupported by New York law would force all involved to expend time, effort and expense litigating non-core issues instead of the substance of the dispute. It would also undermine the prospects of orderly settlement because no two parties could settle claims that another party could continue to pursue. Rather than promote judicial economy, what Plaintiff urges would create litigation that is more complicated, time consuming and expensive and would increase the burden on the Court.

not the law in New York. The Court of Appeals made clear in *Ossining* that the scope of a design professional's duty is determined by its relationship with the party asserting a claim.

A contractor seeking to assert a claim must either have actual privity with the design professional[4] or must show that the design professional, by its actions, created an **independent relationship** with the contractor that was "virtually indistinguishable from contractual privity." *Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176, 1182 (2d Cir.1993). The *Ossining* Court cautioned that the circumstances in which the latter can be shown are to be **narrowly, not broadly construed**. *Ossining*, 73 N.Y.2d at 424-425, 541 N.Y.S.2d at 339. Where the owner's architect has not done anything outside the scope of what its contract with the owner required it to do, no such relationship was created. *Williams and Sons*, 938 F.2d at 1183 (where architect's actions were those required by its agreement with the owner, the contractor fails to allege the functional equivalent of privity). Because Plaintiff's allegations and "supplemental" assertions show only that KPF did what its contract required it to do, Plaintiff fails to state a claim and its Complaint should be dismissed.

### B. Plaintiff also Fails to Meet the Individual Elements of the *Ossining* Test

#### 1. DASNY did not Retain KPF for the Particular Purpose of Making Representations for Trataros' Reliance

Plaintiff argues that this element is met because KPF was aware, in general, that its work product might be relied upon by contractors for bidding. The decisions of the Court of Appeals do not support Plaintiff's position. On the contrary, *Ossining* explicitly declined to adopt a rule permitting recovery by any 'foreseeable' plaintiff who relied on the negligently prepared work product. *See, Ossining*, 73 N.Y.2d at 424, 541 N.Y.S.2d at 339. There is no right to sue based "simply by the class of persons who relied on the negligent misrepresentations." *Id.*,

---

[4] For this reason, Plaintiff's attempt to argue that DASNY's cross-claims against KPF have some bearing on whether Plaintiff can sue KPF is misplaced.

at 423, 541 N.Y.S.2d at 338 (citing *Ultramares Corp. v Touche*, 255 N.Y. 170, 182-183 (1931)).

The Court of Appeals has found this element to be met where a defendant was retained specifically to provide information for the plaintiff to rely upon before consummating a transaction. *See, Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 385, 590 N.Y.S.2d 831, 835 (1992) (defendants were retained to provide information that plaintiff required as a condition precedent to close a transaction); *Ossining*, 73 N.Y.2d at 425, 541 N.Y.S.2d at 339 (plaintiff school district's reliance on engineering reports was "the very purpose of defendants' engagement"). By contrast, DASNY retained KPF to design a college building, not to provide information to Trataros.

Plaintiff cites to one decision of the Appellate Division, *Reliance Insurance Co. v. Morris Assoc., P.C.*, 200 A.D.2d 728, 607 N.Y.S.2d 106 (2nd Dep't 1994), in which a contractor was found to have the functional equivalent of privity with an architect. However, the Appellate Division, Second Department seems to have reconsidered whether a contractor can sue an architect. *See, Pomarc Associates, Inc. v. Beach Concerts, Inc.*, 275 A.D.2d 402, 712 N.Y.S.2d 882, 883 (2nd Dep't 2000) (holding that the relationship between a contractor and the owner's architect was not the functional equivalent of privity).[5] Moreover, the decisions cited by Plaintiff are not binding on this Court. *See, JP Morgan Chase Bank v. Cook*, 322 F. Supp. 2d 353, 355 (S.D.N.Y. 2004) ("[C]ases from ... New York's Appellate Division do not constitute 'controlling authority' for this Court...."). Finally, to the extent that those decisions are based upon the design professional's generalized knowledge that contractors will eventually rely upon their

---

[5] The statement on point in *IFD Construction Corp. v. Corddry Capernter Dietz and Zack*, 253 A.D.2d 89, 95, 685 N.YS.2d 670, 673 (1st Dep't 1999) was mere *dictum*, because the court had already ruled that the plaintiff's complaint should be dismissed on other grounds. In addition, in *Marcellus Construction, Inc. v. Village of Braodalbin*, 302 A.D.2d 640, 642, 755 N.Y.S.2d 474, 476-77 (3rd Dep't 2003), the Appellate Division, Third Department concluded that the functional equivalent of privity did not exist between a contractor and design professional.

work product, they are inconsistent with the rulings of the Court of Appeals and were therefore incorrectly decided. For this additional reason, this Court should not rely upon them.

2. **Trataros was not a Known Party when DASNY Retained KPF**

The second *Ossining* element requires a showing that Trataros was a member of "a known group possessed of vested rights, marked by a definable limit and made up of certain components." *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.2d 63, 73, 47 (2d Cir. 2000) (Citation omitted). Simply being a member of the generic class of contractors that might ultimately bid upon or be awarded a contract for construction services is not sufficient to meet this requirement. *See, Williams and Sons Erectors, Inc.*, 983 F.2d at 1183.

Plaintiff argues that Trataros was a "known party" because it eventually became known to KPF when it bid on a portion of the construction work on the Project. This standard would render the second element of the *Ossining* test a nullity, because there are always known parties at <u>some</u> point during the life of a construction project. There is no reason to believe that the Court of Appeals intended this requirement to be devoid of substance and Plaintiff offers no valid reason why this Court should interpret it so as to strip it of all meaning.

3. **Plaintiff Fails to Demonstrate the Requisite Linking Conduct**

Plaintiff fundamentally misconstrues the type of linking conduct that is necessary to meet the *Ossining* test. The essence of the *Ossining* analysis, as the Second Circuit recognized in *Williams and Sons*, is whether the architect's conduct created a relationship with the contractor so close "as to be *virtually indistinguishable from* contractual privity." *Williams* at 1182 (Emphasis added). The "linking conduct" inquiry therefore is not whether KPF and Trataros had contact or even whether such contact was "isolated" or "regular". Rather, the question is whether KPF actions were those of an architect carrying out its contractual

6

obligations to DASNY[6] or, instead, if KPF stepped outside that role and sought to "establish[ ] a direct relationship of its own that would link it with" Trataros. *Id.* at 1183.

The Complaint does not allege any facts showing that KPF stepped outside of its obligations to DASNY under the DASNY-KPF Agreement to establish a direct relationship with Trataros or its subcontractors. Even if the Court were to consider the voluminous documents submitted by Plaintiff in opposition to this motion, they too fail to show anything more than the type of routine contacts between an architect and contractor on a lengthy and large construction project. In no instance do Plaintiff's allegations or the documents it submits demonstrate contacts between KPF and the contractors "establishing a direct relationship" between them – certainly nothing remotely similar to a contractual relationship.

In *Williams and Sons*, the Second Circuit held, on facts that are substantively indistinguishable from those present here, that the contractor's allegations were insufficient to plead the functional equivalent of privity under New York law. In that case, which ironically also involved a DASNY "owned" construction project at a CUNY college, DASNY retained an architect to "provide architectural services *during the design and construction phases* of the project." *Williams and Sons*, 983 F.2d at 1178 (Emphasis added). The architect's contract with DASNY required it "to prepare contract documents for construction of the project that the authority could distribute to prospective bidders ... [and] to respond to questions posed by bidders regarding these project documents." *Id.* Pursuant to its contract with DASNY, the architect attended a pre-bid meeting with prospective contractors at which it "answered questions

---

[6] Plaintiff attempts to distinguish *Williams and Sons* by arguing that the architect there was an "owner's representative" whereas KPF, pursuant to its contract, was not DASNY's agent. This distinction completely misses the mark. The Court in *Williams and Sons* did not address whether the architect was DASNY's agent and the court's decision therefore did not turn on that issue. The court identified the architect as DASNY's representative at the pre-bid meeting to emphasize that the architect was contractually required to attend the meetings and not because it was creating an independent relationship with the contractor.

7

about the plans and specifications" and after which it "issued written clarifications of thee documents." *Id.* at 1179. Finally, the architect issued two entirely new sets of plans that were provided to the contractor <u>after</u> it had been awarded the contract and construction had begun. *Id.*

> Plaintiff relies on virtually identical facts:
>
> Here, the facts support a finding that "linking" conduct existed between KPF and Trataros. As previously discussed, Trataros attended a pre-bid meeting with respect to each of its contracts with DASNY; KPF attended both meetings and maintained records that Trataros was one of the attendees. Additionally, KPF distributed minutes of pre-bid conferences to the potential bidders, thereby answering their questions; KPF also issued five addenda to Contracts 15 and 16 <u>after</u> the pre-bid conferences and <u>before</u> the contracts were awarded. Further, KPF's professional services continued well into the construction phase.

(Plaintiff's Memorandum, p. 22). These are precisely the types of contacts that were at issue in *Williams and Sons* and that the Second Circuit ruled were insufficient to meet the linking conduct requirement under *Ossining*.[7] *Williams and Sons*, 983 F.2d at 1183.

Plaintiff's reliance upon the provisions of the DASNY-KPF Agreement to establish that a direct relationship with the contractor was intended (*see*, Plaintiff's Memorandum, pp. 23-24) is also misplaced. The Second Circuit held in *Williams and Sons* that contacts resulting from the architect fulfilling its contractual obligations to the owner do not constitute the requisite linking conduct. *Id.* at 1183. Only conduct by the architect "establishing a direct relationship of its own that would link it with" the contractor meets this requirement of the *Ossining* test. *Id.* Because Plaintiff, even with its submission of more than 1,400 pages of additional documents, has not alleged or demonstrated the existence of any such conduct it fails to meet this third element of the *Ossining* test.

---

[7] Plaintiff's reliance upon the unreported decision in *ECOR Solutions* is misplaced for the same reason. There, too, the interactions allegedly giving rise to a near contractual relationship included the design professional's attendance at pre-bid meetings, issuance of addenda and continuing communications with the contractor during the course of the project. *ECOR Solutions*, 2005 U.S. Dist. LEXIS at * 19-20.

## POINT V

### PLAINTIFF FAILS TO DEMONSTRATE THAT TRATAROS, ITS SUBCONTRACTORS OR PLAINTIFF WERE INTENDED THIRD PARTY BENEFICIARIES OF THE DASNY-KPF AGREEMENT

Under New York law, an ordinary construction contract does not confer rights upon third-parties, who are considered mere incidental beneficiaries of the agreement. *Port Chester Electrical Constr. Corp. v. Atlas*, 40 N.Y.2d 655, 656, 389 N.Y.S.2d 327, 330 (1976) (holding that absent a showing that a construction contract was intended to benefit a third party, "the third party is merely an incidental beneficiary with no right to enforce" the contract). The mere fact that a contractor might enjoy some benefit from the architect's services is not sufficient to confer standing to sue upon the contract between the architect and owner. Although Plaintiff points to several provisions in the DASNY-KPF Agreement that might theoretically also benefit Project contractors (Plaintiff's Memorandum, p. 14 no. 2), any benefit was incidental to the benefit that DASNY intended for itself. Contrary to Plaintiff's argument, DASNY retained KPF for its own benefit and not for the benefit of contractors generally, or of Trataros specifically. Plaintiff therefore lacks standing to sue as an alleged third-party beneficiary of the DASNY-KPF Agreement. *See, State of California Public Employees' Retirement System v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35, 718 N.Y.S.2d 256, 259 (2000) (citing, e.g., *Port Chester*).

## CONCLUSION

Plaintiff's opposition to KPF's motion to dismiss, especially its submission of 1,400 pages of extrinsic documents, confirms that the allegations in the Complaint are inadequate. Moreover, under Plaintiff's analysis a contractor would always be able to sue an owner's design professional. That is not the law in New York. Plaintiff was required to show that KPF's conduct went beyond actions required under the DASNY-KFP Agreement and

established a direct relationship with Trataros. However, Plaintiff's voluminous submittals show merely the ordinary and usual contacts that were required of KPF in order to perform its contractual obligations to DASNY. Because such conduct cannot create the functional equivalent of privity between KPF and Trataros, Planitiff's Complaint must be dismissed.

For these reasons, Defendant KPF respectfully requests that this Court issue an order pursuant to FRCP 12(b)(6) dismissing the Complaint, with prejudice, as against KPF, and awarding such other and further relief as to this Court shall seem just and proper.

Dated: New York, New York
       October 23, 2007

>ZETLIN & DE CHIARA, LLP
*Attorneys for Defendant*
  *Kohn Pedersen Fox Associates, P.C.*
s/David Abramovitz
David Abramovitz, Esq. (DA-8214)
801 Second Avenue
New York, New York  10017
(212) 682-6800