UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> DORMITORY AUTHORITY - STATE OF NEW YORK, et al. <br><br> Defendants. | Case No. 07-CV-6915 (DLC) <br> **ECF CASE** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> TRATAROS CONSTRUCTION, INC., <br><br> Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY, <br><br> Fourth-Party Plaintiffs, <br><br> vs. <br><br> CAROLINA CASUALTY INSURANCE COMPANY, et al. <br><br> Fourth-Party Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO FOURTH-PARTY DEFENDANT, SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC'S MOTION TO DISMISS THE FOURTH-PARTY COMPLAINT

**Of Counsel and On the Brief,**
JoAnne M. Bonacci, Esq., *Admitted Pro Hac Vice*
Eli J. Rogers, Esq.
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Travelers Casualty and Surety*
  *Company, and Trataros Construction, Inc.*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................I

TABLE OF AUTHORITIES ........................................................................................II

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

LEGAL ARGUMENT................................................................................................ 8

   I.   THE FOURTH-PARTY CLAIMS DO NOT ALLEGE ECONOMIC LOSSES.............. 8

    A.   Relevant Standards of Review. ................................................................... 8

    B.   The Fourth-Party Complaint's Allegations Do Not Implicate..................... 10
       the Economic Loss Rule. ............................................................................ 10

   II.   CONTINGENT SUBROGATION SUPPORTS THE IMPLEADER CLAIMS. ........... 14

   III.   TRATAROS AND/OR TRAVELERS ARE ENTITLED TO ASSERT RIGHTS AS
      INTENDED THIRD-PARTY BENEFICIARIES........................................................ 17

CONCLUSION........................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

Adirondack Combustion Tech., Inc. v. Unicontrol, Inc., 17 A.D.3d 825, 827, 793 N.Y.S.2d 576, 579 (3d Dep't 2005) ............................................................................................................... 11

Aetna Cas. & Sur. Co. v. General Time Corp., 704 F.2d 80, 81-84 (2d Cir. 1983) ............... 12,13

AKV Auto Transport, Inc. v. Syosset Truck Sales, Inc., 24 A.D.3d 833, 835, 806 N.Y.S.2d 254, 255-56 (3d Dep't 2005) ............................................................................................................... 9

Amin Realty v. K&R Constr. Corp., 306 A.D.2d 230, 231, 762 N.Y.S.2d 92, 93 (2d Dep't 2003)......................................................................................................................... 10, 14

Arkwright Mut. Ins. Co. v. Bojoirve, Inc., 1996 WL 361535, * 3 (SDNY June 27, 1996) ........ 10

Bocre Leasing Corp. v. General Motors Corp., 84 N.Y.2d 685, 687-688 & 696 (1995) ............. 10

Brown v. Bellamy, 170 A.D.2d 876, 877, 566 N.Y.S.2d 703, 704 (3d Dep't 1991)................... 17

Brown v. New York City Housing Auth., 2006 WL 137878599, *1 n.1 (SDNY May 17, 2006) . 6

Chambers v. Time Warner, 282 F.3d 147, 153 (2d Cir. 2002)....................................................... 6

Cleary v. South Buffalo Ry. Co., 16 F.R.D. 24, 25 (W.D.N.Y. 1954) ........................................ 13

DeLine v. CitiCapital Commercial Corp., 24 A.D.3d 1309, 1310, 807 N.Y.S.2d 247, 249 (4th Dep't 2005). ............................................................................................................................... 19

Dominion Ins. Co., Ltd. v. State, 305 A.D.2d 779, 781, 760 N.Y.S.2d 248, 250 (3d Dep't 2003)................................................................................................................................ 15

Dweck Law Firm, LLP v. Mann, 340 F. Supp. 2d 353, 358-359 (SDNY 2004)........................... 6

Ellis v. Whippo, 262 A.D.2d 1055, 1056, 692 N.Y.S.2d 279, 280 (4th Dep't 1999)................... 9

Finch, Pruyn & Co. v. M. Wilson Control Serv. Inc., 239 A.D.2d 814, 815-816, 658 N.Y.S.2d 496, 498 (3d Dep't 1997).......................................................................................................... 19

Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45 [1985].................... 18

Gap, Inc. v. Fisher Development, Inc., 27 A.D.3d 209, 210-212, 810 N.Y.S.2d 456, 458-459 (1st Dep't 2006)................................................................................................................................ 19

General Acc. Fire & Life Assur. Corp. v. North American Systems Inc., 216 A.D.2d 725, 726 n.1, 627 N.Y.S.2d 840, 841 (3d Dep't 1995)........................................................................... 17

In re Flanagan Bros., Inc., 47 B.R. 299, 301 (Bankr., D.N.J. 1985)............................................ 15

ii

In re Kriegish, 275 B.R. 838, 846 (E.D. Mich. 2002)................................................................ 15

International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995)........................................................................................................................ 2

Key Int'l Mfg. v. Morse/Diesel, Inc., 142 A.D.2d 448, 457, 536 N.Y.S.2d 792, 797 (2d Dep't 1988) ......................................................................................................................... 18

Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991)................................................. 2, 6

Krause v. American Guar. and Liab. Ins. Co., 22 N.Y.2d 147, 152-153 (1968) .......................... 15

La Barre v. Mitchell, 256 A.D.2d 850, 852-853, 681 N.Y.S.2d 653, 655 (3d Dep't 1998) ........... 9

Lamberson v. Washington Int'l Ins. Co. v. Boatland, Inc., 1993 WL 524855, *1 (SDNY Dec. 16, 1993)....................................................................................................... 16

Plumey v. New York State, 389 F. Supp. 2d 491, 495 (SDNY 2005)........................................... 2

Progressive Insurance Company v. Ford Motor Company, 6 Misc.3d 568, 790 N.Y.S.2d 358 (Dist. Ct., Nassau Co. 2004) ............................................................................................. 13

Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 883-884 (1997) ........................... 11

St. Paul Fire & Marine Ins. Co. v. U.S. Lines Co., 258 F.2d 374, 375-376 (2d Cir. 1958) ......... 15

State Farm Mut. Auto. Ins. Co. v. Croyle Enter., 848 N.Y.S.2d 414, 415 (3d Dep't 2007)......... 17

Sweet v. Sheahan, 235 F.3d 80, 83 [2d Cir. 2000] ...................................................................... 9

Trump International Hotel & Tower v. Carrier Corp., 2007 WL 3120865 (SDNY Oct. 23, 2007) ........................................................................................................ 12

U.S. Fid. & Guar. Co. v. Sidwell, 525 F.2d 472, (10 Cir. 1975 .................................................. 15

**Rules**
Fed. R.Civ. Proc. 14(a) ........................................................................................................ 13, 16

**Treatises**
6 C. Wright, A. Miller, & M. Kane, Federal Prac. and Proc. § 1446, at 355 [1990].................... 16

Restatement (2d) of Contracts § 302[2].................................................................................... 18

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") respectfully submit that the motion to dismiss the Fourth-Party Complaint filed by Specialty Construction Brands, Inc. t/a TEC ("TEC") should be denied.  TEC's motion is based on the assumption that the Fourth-Party Complaint does not allege damage to property other than the products manufactured and/or supplied by TEC.  TEC is simply incorrect.

To the contrary, the Fourth-Party Complaint alleges that there are several components to the epoxy flooring system installed at the construction project at issue herein (the "Project").  In addition to TEC's products, the epoxy terrazzo flooring system incorporates materials manufactured by Dayton Superior Specialty Chemical Corp. a/k/a Dayton Superior Corporation ("Dayton Superior"), work installed by Bartec Industries, Inc. ("Bartec"), and work installed by a separate co-prime contractor other than Trataros.  To the extent Counterclaim Plaintiffs/Third-Party Plaintiffs, Dormitory Authority – State of New York ("DASNY") and TDX Construction Corp. ("TDX") may prove at trial that TEC's products caused damage to these other elements of the epoxy terrazzo flooring system, such property damage is not mere economic loss.

Trataros did not "self-perform" the epoxy terrazzo work alleged to be defective by DASNY and/or TDX.  Rather, this work was subcontracted to Bartec and G.M. Crocetti, Inc. ("Crocetti"). Given that Crocetti utilized TEC's materials, Travelers and/or Trataros are contingently subrogated to such rights as Crocetti may have against TEC, said rights accruing in the event Travelers and/or Trataros are compelled to pay damages as a result of the acts and/or omissions of Trataros' subcontractor, Crocetti.  In light of these contingent rights of subrogation, and the potential for damage to property other than TEC's own products, Travelers and Trataros respectfully submit that their fourth-party claims for indemnification and/or contribution may properly be maintained against TEC.

1

## STATEMENT OF FACTS [1]

### *Relevant Procedural History*

On or about August 1, 2007, Travelers commenced this action by filing its Complaint and

Jury Demand (the "Complaint"), alleging claims against Defendants, DASNY, TDX, and Kohn

Pedersen Fox Associates, P.C. ("KPF"). (Declaration of Eli J. Rogers in Opposition to Specialty

Construction Brands t/a TEC's Motion to Dismiss, hereinafter, the "Rogers Dec.," ¶ 2 & Exh. A

thereto at ¶ 19.)  In their responsive pleading, DASNY and TDX asserted certain counterclaims

against Travelers seeking, among other things, alleged damages relating to purportedly defective

work on the Project performed by Trataros and/or its subcontractors. (Id., Exh. A at ¶ 20.)

DASNY/TDX's counterclaims allege that these purported construction defects include certain

alleged defects in the epoxy terrazzo flooring system. (Id., Exh. A, ¶ 52.)  Significantly, Trataros

did not "self-perform" the installation of the Project's epoxy terrazzo flooring system, but instead

subcontracted that work to two subcontractors, Crocetti and Bartec. (Id., Exh. A, ¶¶ 39-41, 46-

49.)  Movant TEC manufactured/supplied materials used by Crocetti when installing portions of

the epoxy terrazzo flooring system. (Id., Exh. A, ¶¶ 39-43.)

Subsequently, DASNY and TDX filed their Third-Party Complaint, impleading Trataros

and asserting claims that seek, among other things, alleged damages resulting from purportedly

defective, substandard and/or otherwise unacceptable work on the Project. (Id., Exh. A, ¶ 23.)  In

its Third-Party cause of action alleging "Construction Defects," DASNY seeks damages in

---

[1]  Travelers and Trataros rely primarily upon the allegations of the Fourth-Party Complaint for their facts opposing TEC's motion to dismiss.  Plumey v. New York State, 389 F. Supp. 2d 491, 495 (SDNY 2005) (In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the pleading as true, and draw "all reasonable inferences in the [fourth-party] plaintiff's favor.")  As indicated within, the significant exceptions to those facts drawn from the Fourth-Party Complaint are those predicated on various pleadings filed by other parties to this action, of which the Court may permissibly take judicial notice, and one document that is integral to the Fourth-Party Complaint's allegations, as discussed below.  See, Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) (Court may take judicial notice of matters outside the complaint's allegations in the context of a Rule 12(b)(6) motion), and, International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995) (On a Rule 12(b)(6) motion to dismiss, a court may consider documents that are integral to the pleading, even if not actually attached thereto.)

excess of $20,000,000. (Id., Exh. A, ¶ 25.)  The Third-Party Complaint repeats DASNY's and/or TDX's allegations of defects in the Project's epoxy terrazzo flooring system (the "Flooring Claims"), and alludes to other, unspecified alleged construction defects. (Id., Exh. A, ¶¶ 54-58.)

After filing their respective answers to DASNY/TDX's counterclaims and the Third-Party Complaint, Travelers and Trataros filed their Fourth-Party Complaint on November 14, 2007. (Id., ¶ 7.)  The Fourth-Party Complaint alleges claims seeking, *inter alia*, indemnification and/or contribution from TEC, among others, for DASNY's and/or TDX's counterclaims and Third-Party claims. (Id., ¶ 16 and Exh. A, ¶¶ 106-112 & "Wherefore clause", p. 21.)  The majority of Fourth-Party Defendants have answered the Fourth-Party Complaint, including Trataros' floor leveling subcontractor, Bartec; and, Dayton Superior, the supplier/manufacturer of certain materials used by Bartec. (Id., ¶¶ 8-14 & Exhs. B-D thereto.)  On or about January 14, 2008, TEC filed its motion to dismiss the Fourth-Party Complaint pursuant to Rule 12(b)(6).

### *Factual Background*

This action arises from a complex public works construction project "owned" by DASNY, and known as Baruch College, Site B (the "Project"). (Id., Exh. A, ¶¶ 30-32.)  In its capacity as owner, DASNY entered into thirteen separate co-prime contracts for the Project's construction work. (Id., Exh. A, ¶ 35.)  DASNY separately awarded two (2) of the thirteen (13) prime contracts to Trataros, including a contract known as "Contract No. 16." (Id., Exh. A, ¶¶ 36, 38.)  Upon information and belief, DASNY's and/or TDX's  Flooring Claims partially relate to work contracted under Contract No. 16, as well as work contracted by DASNY to prime contractors other than Trataros. (Id., Exh. A, ¶¶ 38-43, 46-51, 60.) [2]

Trataros entered into a subcontract with non-party Crocetti in connection with a portion of Trataros' work under Contract No. 16.  The work subcontracted to Crocetti included, *inter*

---

[2]  For example, one of the major components of the Project's flooring system, the concrete floor slabs, were installed by a co-prime contractor other than Trataros.  (Id., Exh. A, ¶ 48.)

*alia*, installation of a portion of the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶¶ 39-41.)  In connection with the work subcontracted to it by Trataros, Crocetti used materials manufactured and/or supplied by TEC. (Id., Exh. A, ¶ 42.)  TEC's materials were incorporated into the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶ 43.)

DASNY's and/or TDX's allegations of purported defects in the epoxy terrazzo flooring system implicate presently existing and/or potential physical damage to elements of the Project constructed by a co-prime contractor other than Trataros. (Id., Exh. A, ¶¶ 60-61.) This is because the work performed/installed by Crocetti is only the uppermost layer of the Project's flooring system, which also incorporates layers of "floor leveling" installed by Bartec, and concrete floor slabs installed by a separate co-prime contractor. (See, id., Exh. A, ¶¶ 39-49, 60.)  The materials installed by Bartec were supplied by Dayton Superior. (Id., Exh. A, ¶¶ 50-51.)  Nothing in the record indicates that the materials utilized and/or installed by the structural concrete co-prime and/or by Bartec were provided by TEC, nor does TEC allege that it provided such materials to those entities. (Id., ¶ 18.)

### *Fourth-Party Defendants' Cross-Claims Against TEC*

Travelers and Trataros are not the only parties that have asserted claims against TEC in the within action.  A number of cross-claims have been filed against TEC by the various fourth-party defendant insurance carriers.  (See, e.g., "National Union's Answer to the Fourth-Party Complaint, Affirmative Defenses, Jury Demand, Cross Claim and Answer to Cross Claims" filed by National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), p. 13., and, Zurich American Insurance Company's ("Zurich") "Answer to Fourth-Party Complaint", dated January 14, 2008, p.22.)  In addition, fourth-party defendants Carolina Casualty Insurance Company ("Carolina Casualty"), Bartec, and Dayton Superior have alleged cross-claims against TEC. (Rogers Dec., ¶¶ 8-15.)

Carolina Casualty filed its "Answer to Fourth-Party Complaint" (hereinafter, "Carolina Casualty's Answer") on or about December 14, 2007. (Id., ¶ 8 & Exh. B.) Carolina Casualty appears to allege and/or imply that it is presently entitled to enforce the rights, claims and defenses of Crocetti. (Id., ¶ 9 & Exh. B, ¶¶ Sixteenth to Nineteenth, Thirty-Ninth, & Forty-Sixth.)[3] In seeming exercise of the aforesaid rights, claims and defenses, Carolina Casualty asserts a cross-claim for indemnification against TEC, predicated upon Crocetti's implied and express warranty rights against TEC. (Id., ¶ 10 & Exh. B, ¶¶ Twenty-Second to Twenty-Fifth.)

On or about November 30, 2007, Dayton Superior filed its Answer to Fourth Party Complaint (hereinafter, "Dayton Superior's Answer"). (Id., ¶ 11 & Exh. C.) Dayton Superior's Answer alleges a cross-claim against TEC, among others, seeking "apportionment and full recovery of any damages awarded against" Dayton Superior. (Id., ¶ 12 & Exh. C at p. 9.) Dayton Superior's cross-claim alleges that liability may exist on TEC's part as a result of "negligence … in the installation of the flooring system and in the providing and use of improper product as well as the failure to provide appropriate instructions and directions for the use of said product." (Id. ¶ 13 & Exh. C at p. 9.) (Emphasis added.)

Bartec filed its "Answer to Fourth Party Complaint with Cross-Claims and Counterclaim" (hereinafter, "Bartec's Answer") on or about December 10, 2007. Bartec's Answer alleges a cross-claim against TEC, among others, seeking indemnification and/or contribution for any damages awarded against Bartec in favor of the Fourth-Party Plaintiffs. (Id., ¶ 14 & Exh. D.)

Travelers and Trataros respectfully submit that this Court may appropriately take judicial notice of the allegations respectively pleaded by Carolina Casualty, Dayton Superior, Bartec, National Union, Zurich, et al. for purposes of TEC's pending motion, as the pleadings are public

---

[3] Carolina Casualty issued subcontract surety bonds to Crocetti for the Project. (Id., Exh. A at ¶¶ 44-45.)

records.  <u>Dweck Law Firm, LLP v. Mann</u>, 340 F. Supp. 2d 353, 358-359 (SDNY 2004) (On a

motion to dismiss, courts may take judicial notice of filed pleadings in the public record.)  <u>And</u>,

<u>Kramer</u>, 937 F.2d at 773.

### <u>*Crocetti's Subcontract with Trataros*</u>

Trataros subcontracted a portion of its work under Contract No. 16 to Crocetti.  (<u>See</u>,

Rogers Dec., Exh. A, ¶¶ 39-41, & Exh. E.)  Trataros' subcontract agreement with Crocetti (the

"Crocetti Subcontract") recites on its face that the value of the work subcontracted thereunder is

$3,008,000.00. (<u>Id</u>., Exh. E, p. 1, ¶ 2.a.) [4]  The Crocetti Subcontract provides that the "Work"

subcontracted to Crocetti includes "<u>all supervision, labor, materials, … tools, equipment, [and]</u>

<u>supplies</u> … necessary for the completion of" the various items incorporated by reference from

"Exhibit B" to the Crocetti Subcontract. (<u>Id</u>., Exh. E, p.1, ¶ 1.a) (emphasis added.)  (<u>And see</u>, <u>id</u>.,

pp. "15 of 25" to "18 of 25," entitled "Exhibit B- Scope of Work.")  The section of the Crocetti

Subcontract entitled "Exhibit B – Scope of Work" enumerates the sections of the Project's

technical specifications included in Crocetti's scope of work; <u>the epoxy terrazzo work is **only**</u>

<u>**one of three** specification sections identified as comprising Crocetti's scope of work</u>:

> The Scope of Work shall include, but not be limited to, all the
> work in the following Specification Section (s) [sic], except such
> work as may be specifically excluded in Paragraph "C"…
> Specification Section
>
> | | |
> |---|---|
> | 04450 | Interior Stonework |
> | 09410 | Precast Terrazzo |
> | 09420 | Epoxy Terrazzo |

---

[4]  Travelers and Trataros respectfully submit that this Court may permissibly consider the Crocetti Subcontract on
this Rule 12(b)(6) motion to dismiss, given that the Crocetti Subcontract is integral to the allegations of the Fourth-
Party Complaint.  (<u>See</u>, Rogers Dec., ¶¶ 16-21) (outlining the relation between the Crocetti Subcontract and the
Fourth-Party Complaint's allegations.)  <u>Chambers v. Time Warner</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where
a document is not incorporated by reference, the court may nevertheless consider it [on a 12(b)(6) motion] where the
complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.'")
(Citations omitted.)  <u>And see</u>, <u>Brown v. New York City Housing Auth.</u>, 2006 WL 137878599, *1 n.1 (SDNY May
17, 2006) ("In evaluating a motion to dismiss…, a court may consider documents attached to the complaint…, or
incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.")
(Citation omitted.)

(Id., Exh. E, p. "16 of 25.")

Thus, on the face of the Crocetti Subcontract, the agreed-upon value of all labor, materials, supplies, equipment, supervision, etc., necessary to perform Crocetti's epoxy terrazzo work is some percentage of the subcontract value of $3,008,000. Since costs for labor, supervision, etc., are included in the subcontract price, the costs for epoxy terrazzo "materials" and/or "supplies" represent some fraction of Crocetti's work under the epoxy terrazzo specification section (i.e., a fraction of a fraction of the total subcontract value).

DASNY/TDX's Third-Party Complaint alleges that remediation of the purported defects in the epoxy terrazzo flooring system will cost "an estimated thirteen million dollars or more to accomplish." (Id., Exh. A, ¶ 58.) (Emphasis added.)  The total damages sought by DASNY in the Third-Party Complaint for alleged construction defects are in excess of $20,000,000. (Id., Exh. A, ¶ 25.)  These figures respectively represent nearly 400% and 700% of the total value for all "Work" under the three specification sections included under the Crocetti Subcontract.  The proportionate relation between the cost for TEC's materials used by Crocetti, and the alleged damages for which DASNY is suing Trataros, cannot be estimated on the present record. However, the value of the epoxy terrazzo *materials* necessarily represent only a portion of the total cost for Crocetti's epoxy terrazzo *"Work"*, itself only a portion of the total subcontract price.

## LEGAL ARGUMENT

As against TEC, the Fourth-Party Complaint states contingent claims for indemnification and/or contribution for presently existing and/or incipient property damage potentially attributable to TEC's products utilized by Crocetti.  Travelers and/or Trataros have standing to assert such claims as a result of their contingent subrogation to any rights and claims that Crocetti may have against TEC, including possible claims for breach of express/implied warranties, negligence, negligent manufacture, breach of contract, *inter alia*.  The precise nature of TEC's potential liability awaits development of the claims alleged by DASNY and/or TDX in their counter-claims and Third-Party Complaint, and is likely to crystallize through the course of discovery.  Trataros and Travelers respectfully submit that, at this early stage of the proceedings, and in light of the broad scope of impleader contemplated by Rule 14(a), the allegations set forth in the Fourth-Party Complaint are more than adequate to state alternative claims for contribution and indemnification, and respectfully request that the Court deny TEC's Rule 12(b)(6) motion. [5]

## I.    THE FOURTH-PARTY CLAIMS DO NOT ALLEGE ECONOMIC LOSSES.

### A.    Relevant Standards of Review.

When considering a Rule 12(b)(6) motion, the allegations of a complaint are to be construed liberally. Chambers, 282 F.3d at 152.  "The court must … accept[] all allegations in the complaint as true and draw[] all reasonable inferences in the [fourth-party] plaintiff's favor." Plumey, 389 F. Supp.2d at 495.  Indeed, as acknowledged by TEC in its moving brief, dismissal is appropriate only if it "appears beyond doubt that the [fourth-party] plaintiff can prove no set of

---

[5]  At a minimum, Trataros and Travelers respectfully submit that the cross-claims against TEC advanced by Carolina Casualty, predicated upon Crocetti's warranty rights against TEC, and by Dayton Superior, alleging possible negligence in furnishing unsuitable materials and/or negligent labeling, justify TEC's presence in the within action. (Rogers Dec., ¶¶ 8-13.)  In addition, cross-claims have been alleged against TEC by Bartec (id., ¶ 14), Zurich, and National Union, among others.

8

facts which would entitle him or her to relief." <u>Chambers</u>, 282 F.3d at 152 (<u>quoting</u>, <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 [2d Cir. 2000]).  (<u>And</u> <u>see</u>, Moving Brief, p. 3.)

It is respectfully submitted that TEC's motion fails on its own terms, insofar as TEC's primary contention, that the fourth-party claims are barred under the economic loss rule, misconstrues the factual allegations of the Fourth-Party Complaint.  Unlike the authorities relied upon in the Moving Brief, the instant action simply does not present facts where the purported defect is located in a single, unitary product sold and serviced by a lone manufacturer or vendor. <u>Cf</u>., <u>AKV Auto Transport, Inc. v. Syosset Truck Sales, Inc.</u>, 24 A.D.3d 833, 835, 806 N.Y.S.2d 254, 255-56 (3d Dep't 2005) (Purchaser could not maintain tort claims against retail car dealer, where electrical fire damage sustained by truck did not implicate damage to "other property"); <u>Ellis v. Whippo</u>, 262 A.D.2d 1055, 1056, 692 N.Y.S.2d 279, 280 (4th Dep't 1999) (Damage sustained by prefabricated homes sold as discrete units by a single manufacturer did not implicate damage to "other property.")

By contrast, the Project's epoxy terrazzo flooring system, which is, in pertinent part, one subject of the Third-Party Complaint filed by DASNY and TDX, is comprised of products **manufactured** by at least two -possibly three- entities, and **installed** by at least three <u>other</u> contractors/subcontractors. (Rogers Dec., Exh. A, ¶¶ 40-43, 47-51.) The Fourth-Party Complaint, therefore, does not allege a claim which simply seeks the replacement cost of TEC's own products, but the costs associated with alleged property damage potentially caused by TEC's products to "other property" supplied/installed by other entities. (<u>Id</u>., Exh. A, ¶¶ 60-61.)

In that respect, movant's assertion that the economic loss rule restricts Travelers' and/or Trataros' ability to assert claims sounding in negligence is inapposite.  <u>See</u>, <u>La Barre v. Mitchell</u>, 256 A.D.2d 850, 852-853, 681 N.Y.S.2d 653, 655 (3d Dep't 1998) (The question of whether a claimant's damages "were the result of [a product's] … failure to perform as intended" should

9

not be "considered in a vacuum," divorced from the issue of whether other property sustained damage as a result of the purported failure to perform.)

**B.    The Fourth-Party Complaint's Allegations Do Not Implicate the Economic Loss Rule.**

New York's economic loss rule limits the potential liability of product manufacturers, such that a downstream purchaser may not recover in tort against a manufacturer "where the claimed losses flow from damage to the property that is the subject of the contract and personal injury is not … at issue." <u>Amin Realty v. K&R Constr. Corp.</u>, 306 A.D.2d 230, 231, 762 N.Y.S.2d 92, 93 (2d Dep't 2003). That is, when the allegedly defective product only causes damage to itself, recovery may not be had by a downstream purchaser. <u>Id</u>.  As pointed out by movant, this rule extends to so-called "consequential damages resulting from the defect." <u>Id</u>.

Despite the seemingly sweeping nature of this language, the bar against "consequential" damages only refers to those consequences arising from <u>injury to the product itself</u>.  For example, when an engine defect caused damage to a helicopter, and the downstream purchaser sustained lost profits while the helicopter was not operational, those damages were classified as unrecoverable under the economic loss rule.  <u>Bocre Leasing Corp. v. General Motors Corp.</u>, 84 N.Y.2d 685, 687-688 & 696 (1995).

However, when a discrete product causes actual property damage to "other property" (i.e., property other than the product itself), such property damage is _**not**_ considered to be consequential damages flowing from the economic loss sustained by the product itself. <u>E.g.</u>, <u>Arkwright Mut. Ins. Co. v. Bojoirve, Inc.</u>, 1996 WL 361535, * 3 (SDNY June 27, 1996) (The economic loss rule "does not apply in situations where the defective product causes damage to 'persons or property other than the product itself.'")  Rather, the damage to "other property" elevates the claim out of mere economic loss, such that recovery can be pursued via tort-based claims, including impleader claims for contribution and/or indemnity. <u>Id</u>. at *2-3.

10

Where a manufacturer's defective product is incorporated as a component of a larger system, the other components of which are manufactured, sold, and/or installed by entities other than the first manufacturer, and the defective product causes damage to the larger system, the first manufacturer's product has caused damage to "other property." See, Adirondack Combustion Tech., Inc. v. Unicontrol, Inc., 17 A.D.3d 825, 827, 793 N.Y.S.2d 576, 579 (3d Dep't 2005) ("Controller device" manufactured by defendant, and installed into boiler by plaintiff, caused damage to the boiler itself.  Boiler was product of another entity, thus the claim was not for economic losses); and, Arkwright, 1996 WL 361535 at *3 (Defective part manufactured by third-party defendant, and installed in diesel generator, caused damage to generator as a whole and to adjacent property.)

These authorities accord with the 1997 U.S. Supreme Court decision, Saratoga Fishing Company v. J.M. Martinac & Company, 520 U.S. 875.  In Saratoga Fishing, the majority noted that economic loss doctrine distinguishes between component parts installed by a manufacturer or distributor before placing the product into the stream of commerce, and actions by a user that incorporate the product itself as a component within a larger system. Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 883-884 (1997) ("[W]e would maintain that distinction.") The Court went on to hold that "equipment added to a product after the Manufacturer (or distributor…) has sold the product to an Initial User is not part of the product that itself caused physical harm.  Rather…, it is 'other property.'" Id. at 884 (emphasis added).

Likewise, the Adirondack and Arkwright holdings are supported by a parallel doctrine which has developed in insurance law, in which it is recognized that particular insurance policies provide coverage for property damage caused by a defective product installed as part of a larger system.  See e.g., Aetna Cas. & Sur. Co. v. General Time Corp., 704 F.2d 80, 83 (2d Cir. 1983) ("There can be no recovery [under the policy] for [consequential] intangible losses unless there

11

has been actual physical damage to property other than the property of the insured.")  In <u>Aetna</u>, the Second Circuit held that the policy's requirement for damage to "other property" was satisfied where defective motors manufactured by the insured were subsequently incorporated into, and caused damage to, radiators manufactured by the product user. <u>Id.</u>, 704 F.2d at 81-84. Referring to the insurance policy's obvious similarity to the economic loss rule, the <u>Aetna</u> Court endorsed the policy definition of property damage as "a succinct statement of the general rule of law which New York has adopted and which we here apply." <u>Id.</u>, 83-84.

    In light of this line of case law, TEC's reliance upon <u>Trump International Hotel & Tower v. Carrier Corp.</u>, 2007 WL 3120865 (SDNY Oct. 23, 2007), is misplaced.  That decision involved a single, unitary air conditioning device, whose maintenance by defendant Carrier was the subject of a Service Agreement between the parties.  <u>Trump</u>, 2007 WL 3120865 at * 7 ("I conclude that the absorption chiller and all of its safety controls … are one integrated unit.") Thus, Trump's claim that negligent maintenance caused the unit to malfunction was within the ambit of the service contract, and the plaintiff was limited to its contractual rights and remedies. <u>Id</u>. ("Th[e] Service Agreement defined the parties' rights and duties with respect to all of the property in issue, including both the absorption chiller and the pressure differential switch.")

    Here, there is no umbrella agreement between TEC and Trataros that brings all components of the college's flooring system within its scope, or otherwise defines the respective rights and liabilities associated with the epoxy terrazzo elements, the floor leveling materials manufactured by Dayton Superior, and the concrete slabs installed by a separate co-prime contractor. (Rogers Dec., Exh. A, ¶¶ 38-51.)  At this early stage of the proceedings, DASNY and/or TDX have not alleged any theories of causation, however, Travelers and Trataros are within their rights to implead the known manufacturers of the flooring system's discrete components. <u>See</u>, Fed. R.Civ. Proc. 14(a).  In fact, doing so at this stage avoids prejudice to

12

TEC's rights of participation and serves the interests of judicial economy. Cleary v. South Buffalo Ry. Co., 16 F.R.D. 24, 25 (W.D.N.Y. 1954) (The object of the liberal Federal rules governing impleader is to dispose of the entire subject matter arising from one set of facts in one litigation, such that interests of judicial economy are balanced against lack of prejudice.)

In the Trump decision, Judge Scheindlin specifically distinguished between the facts of that action, where the same defendant manufactured and serviced the entire system, and decisions such as "Adirondack and Arkwright, where independent manufacturers of allegedly defective components were being sued in their own right." Trump, 2007 WL 3120865 at *7. The Court analogized the circumstances of Trump to those in Progressive Insurance Company v. Ford Motor Company, in which a defective car part caused fire damage to the car as a whole. Trump, 2007 WL 3120865 at *7; Progressive Ins. Co. v. Ford Motor Co., 6 Misc.3d 568, 790 N.Y.S.2d 358 (Dist. Ct., Nassau Co. 2004). The Progressive court rejected the plaintiff's contention that 'the rest of the car' constituted "other property," reasoning that the car was not purchased as a set of component parts, but rather was sold and bought as an integrated whole. Progressive, 6 Misc.3d at 570-571. But cf., Aetna Cas. & Sur. Co. v. General Time Corp., 704 F.2d 80, 81-84 (2d Cir. 1983) (Insurance policy requirement for physical damage to other property was satisfied where radiator manufacturer incorporated defective motors supplied by another into its product.)

To reverse-paraphrase Progressive, the instant facts do not equate to a Grand Marquis damaged by a defective electrical part. Progressive, 6 Misc.3d at 570. The various elements of the flooring system were not delivered "from the showroom" in prefabricated segments, ready to be laid down. Rather, the flooring system was installed pursuant to several co-prime contracts, including but not limited to Trataros' Contract No. 16. (Rogers Dec., Exh. A, ¶¶ 38-41, 48.) The elements of the flooring system installed pursuant to Contract No. 16 were not even installed by

a single subcontractor, nor were the component products used manufactured by a single corporation. (Id., ¶ 18 & Exh. A, ¶¶ 40-43, 46-51.)  The contracts to purchase terrazzo products manufactured by TEC only relate to one aspect of the property which is purportedly damaged. [6] Cf., Amin Realty, LLC v. K&R Constr. Corp., 306 A.D. 230, 231, 762 N.Y.S.2d 92, 93 (2d Dep't 2003) (The economic loss rule prohibits tort recovery for losses "to the property that is the subject matter of the contract….") (Emphasis added.) Thus, to the extent DASNY and/or TDX may establish at trial that TEC's products caused physical damage to other elements of the flooring system, and to the extent that judgment may be entered against Trataros and/or Travelers for the costs arising from such damage, Travelers and/or Trataros will be entitled to recovery from TEC for those amounts.

As alluded to above the majority of TEC's brief points are premised upon, the purportedly preclusive effect of the economic loss rule upon Travelers' and Trataros' fourth-party claims, including TEC's contentions that Travelers and Trataros fail to state a claim sounding in negligence (Moving Brief, pp. 4-6); that Travelers and Trataros cannot maintain a cause of action for contribution (id., pp. 6-7); and, that Travelers and Trataros cannot maintain a cause of action for implied indemnification. (Id., pp. 7-8.)  Because the premise for the Fourth-Party Plaintiffs' purported inability to assert tort claims is not supported by the factual allegations recited therein, Travelers and Trataros respectfully submit that TEC's motion to dismiss should be denied.

## II.    CONTINGENT SUBROGATION SUPPORTS THE IMPLEADER CLAIMS.

---

[6]  As set forth on pp. 6-7 of this Opposition Brief, the value of TEC's materials used on the Project appears to be less than $3,008,000 (i.e., less than the full price of the Crocetti Subcontract).  However, the Third-Party Complaint alleges, inter alia, that the purported defects in the epoxy terrazzo flooring system will cause DASNY and/or TDX to incur "an estimated thirteen million dollars or more" in damages. (Rogers Dec., Exh. A, ¶ 58.)  Given the drastic differential between Third-Party Plaintiffs' alleged damages and the maximum value of TEC's materials incorporated into the Project, Travelers and Trataros respectfully submit that a strong inference exists that DASNY and/or TDX seek to recover more than economic losses on their third-party claims and counter-claims.

The Fourth-Party Complaint alleges facts sufficient to state contingent, alternative claims for indemnification and contribution, arising from alleged property damage to portions of the Project other than TEC's products.  Contingent claims are a commonplace of impleader practice, and are recognized as valid by both the Second Circuit and the courts of the State of New York, even when the claim is predicated upon contingent rights of subrogation. [7] St. Paul Fire & Marine Ins. Co. v. U.S. Lines Co., 258 F.2d 374, 375-376 (2d Cir. 1958) (It is "irrelevant" whether a party's right of subrogation is contingent or presently existing at the time of impleader, in light of the broad scope of Rule 14[a]); Krause v. American Guar. and Liab. Ins. Co., 22 N.Y.2d 147, 152-153 (1968) ("The language of CPLR 1007 … is certainly broad enough to encompass contingent claims based on subrogation.") (Citations omitted.)

In general, impleader is proper when the fourth-party defendant's liability "is in some way dependent on the outcome of the [third-party] … claim" or when the fourth-party defendant is "secondarily liable to [the third-party] defendant." Lamberson v. Washington Int'l Ins. Co. v. Boatland, Inc., 1993 WL 524855, *1 (SDNY Dec. 16, 1993) (quoting, 6 C. Wright, A. Miller, & M. Kane, Federal Prac. and Proc. § 1446, at 355 [1990].)  There is no requirement that the ultimate question of a fourth-party defendant's liability be conclusively established at the time of impleader; indeed, such a requirement neuters Rule 14(a) and runs contrary to its intended effect.

> The Rule expressly provides that a third-party summons and complaint may be served 'Upon a person not a party to the action who is **or may be liable** to him for all or part of the plaintiff's claim against him.'  The very purpose of the Rule is to eliminate the necessity of independent actions against persons who 'may be

---

[7]  Equitable subrogation entitles a party "to 'stand in the shoes' of" another party on whose behalf it has incurred liability, so that the party may "seek indemnification from third parties whose wrongdoing has caused a loss for which [it] … is bound to reimburse." Dominion Ins. Co., Ltd. v. State, 305 A.D.2d 779, 781, 760 N.Y.S.2d 248, 250 (3d Dep't 2003) (Discussing subrogation in the context of an insurer-insured relationship.)  Federal courts recognize that contractors and/or their sureties can become subrogated to the rights of subcontractors or suppliers. See, e.g., U.S. Fid. & Guar. Co. v. Sidwell, 525 F.2d 472, (10 Cir. 1975) (Sub-subcontractor's surety was subrogated to rights of materialmen); In re Kriegish, 275 B.R. 838, 846 (E.D. Mich. 2002) (General contractor was subrogated to suppliers' rights against subcontractor);  In re Flanagan Bros., Inc., 47 B.R. 299, 301 (Bankr., D.N.J. 1985).

> liable' where liability may be determined upon the facts common
> to, or arising out of, the same transaction.

St. Paul, 258 F.2d at 375. (Emphasis added.)    And, Fed.R. Civ. Proc. 14(a) ("A third-party

defendant may proceed under this rule against any person not a party to the action ***who is or may***

***be liable*** to the third-party defendant for all or part of the [third-party] claim….") (Emphasis added.)

Given the long-standing practice of allowing third-party indemnification claims,

contingent subrogation claims are equally unobjectionable.  "Logically, there is no difference in

terms of maturity of an action based on [contingent] subrogation, as opposed to [contingent]

indemnity, … in either situation the cause of action accrues upon payment or determination of

liability."  Krause, 22 N.Y.2d at 153.

Here, Travelers' and Trataros' fourth-party claims are contingent upon a finding of

liability for the third-party claims advanced by DASNY and/or TDX, among other things. (See,

e.g., Rogers Dec., Exh. A, ¶¶ 106-112.)  Because Trataros did not install the epoxy terrazzo

flooring system itself, any recovery by DASNY and/or TDX for the alleged epoxy terrazzo

construction defects implies that Trataros and/or Travelers will have a right of recovery against

the actor(s) who caused or contributed to the alleged defects. (Id., Exh. A, ¶¶ 38, 41 & 46-49.)

Thus, Trataros and/or Travelers potentially could be found liable due to acts and/or omissions of

Trataros' subcontractor Crocetti, among others. (Id., Exh. A, ¶¶ 84-96 & 105.) In that event,

Travelers and/or Trataros will effectively "stand in the shoes of" Crocetti, such that they may

enforce Crocetti's rights of action against those entities which caused or contributed to Crocetti's

potential liability. See, Brown v. Bellamy, 170 A.D.2d 876, 877, 566 N.Y.S.2d 703, 704 (3d

Dep't 1991) (Under the equitable doctrine of subrogation, a right of recovery arises when one

party pays a debt for which another is primarily liable and which in equity should have been

discharged by the latter.)

16

Assuming that the construction defect claims as developed by DASNY and/or TDX do in fact raise an issue of potential liability on the part of TEC, then Travelers' and/or Trataros' rights as against TEC will include the rights to enforce any warranty or contractual rights which Crocetti may possess.  Cf., State Farm Mut. Auto. Ins. Co. v. Croyle Enter., 848 N.Y.S.2d 414, 415 (3d Dep't 2007) (Subrogation action by insurer alleging breach of implied warranty of merchantability); General Acc. Fire & Life Assur. Corp. v. North American Systems Inc., 216 A.D.2d 725, 726 n.1, 627 N.Y.S.2d 840, 841 (3d Dep't 1995) (Subrogation action by insurer alleging causes of action for products liability, breach of warranties, and negligence.)  In light of the Fourth-Party Defendants' contingent rights of subrogation, it is respectfully submitted that the branches of TEC's motion seeking dismissal of the fourth-party warranty and breach of contract claims should be denied.

## III.    TRATAROS AND/OR TRAVELERS ARE ENTITLED TO ASSERT RIGHTS AS INTENDED THIRD-PARTY BENEFICIARIES.

Finally, TEC argues that Trataros and Travelers "cannot claim" to be intended third-party beneficiaries of the purchase agreement between TEC and Crocetti.  The Fourth-Party Plaintiffs respond that it is unnecessary for them to establish third-party beneficiary status, in light of their contingent rights of subrogation discussed above.  However, assuming *arguendo* that such rights are for some reason deemed insufficient, Trataros and Travelers respectfully submit that the pertinent case law would permit a prime contractor such as Trataros (and, by extension, its surety) to assert a claim as an intended beneficiary of contracts entered into by its own subcontractor for purposes of performing the subcontract.

Contrary to the movant's characterization of New York case law, there is no requirement that a litigant asserting intended third-party beneficiary status must be explicitly identified as such in the agreement.  As the New York Appellate Division has noted, "[s]uch a rule of law,

17

limiting third-party beneficiary status to those parties specifically mentioned in a contract, whether it be a construction contract or otherwise, would … run contrary to binding precedent." Key Int'l Mfrg. v. Morse/Diesel, Inc., 142 A.D.2d 448, 457, 536 N.Y.S.2d 792, 797 (2d Dep't 1988). The Key International Court noted that the Court of Appeals had previously indicated that "express reference to an intended beneficiary in a contract *is but an alternative factor* upon which a court might base a finding that a certain party is, in fact, a third-party beneficiary." Id. (Citing, Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45 [1985]) (emphasis added).

In fact, the essential inquiry is whether "'performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary' or that 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Fourth Ocean, 66 N.Y.2d at 44 (quoting, Restatement (2d) of Contracts § 302[2]) (emphasis added).

> Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is "sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable."

Id. at 44. Thus, in the context of a contractor-subcontractor relationship, a contractor that receives benefit from an agreement entered into by its subcontractor "will be considered an intended beneficiary, rather than merely an incidental beneficiary, when the circumstances indicates that the [subcontractor] … intends to give the [contractor] … the benefit of the promised performance." DeLine v. CitiCapital Commercial Corp., 24 A.D.3d 1309, 1310, 807 N.Y.S.2d 247, 249 (4th Dep't 2005). One traditional factor heavily weighing in favor of a finding of third-party beneficiary status is the existence of a "duty of the promisee to the beneficiary." Fourth Ocean, 66 N.Y.2d at 45.

18

Even without benefit of record evidence establishing the terms of "the TEC/Crocetti purchase agreement" (Moving Brief, p. 11), Travelers and Trataros respectfully submit that the circumstances of the within action are such that Trataros can be deemed an intended third-party beneficiary of the agreement(s) between TEC and Crocetti. First, it is obvious that, pursuant to the terms of the Crocetti Subcontract, promisee Crocetti owed certain duties of performance to Trataros. (Rogers Dec., Exh. E, p. 1, ¶ 1.a; p.2, ¶¶ 4 ["Subcontractor's Liability"], 4.c ["Indemnification"], *et seq.*) Second, as alleged in the Fourth-Party Complaint, any agreements that Crocetti undertook with TEC to obtain materials for use on the Project were undertaken to further the performance of the Crocetti Subcontract (id., Exh. A, ¶¶ 39-43), thus, there can be no serious argument but that Crocetti intended to give the benefit of TEC's promised performance to Trataros. [8] In light of the foregoing, Trataros, and its subrogee/assignee Travelers, are entitled to assert intended third-party beneficiary status, wherefore the Fourth-Party Plaintiffs respectfully request that this Court deny TEC's Rule 12(b)(6) motion to dismiss.

---

[8]  It also bears noting that, although DASNY has not alleged such a claim to date, in light of its position as owner of the Project, it too may be able to assert a claim as an intended third-party beneficiary of the agreement(s) between TEC and Crocetti.  See, e.g., Gap, Inc. v. Fisher Development, Inc., 27 A.D.3d 209, 210-212, 810 N.Y.S.2d 456, 458-459 (1st Dep't 2006) (Project owner was intended third-party beneficiary of purchase order between subcontractor and its supplier); and, Finch, Pruyn & Co. v. M. Wilson Control Serv. Inc., 239 A.D.2d 814, 815-816, 658 N.Y.S.2d 496, 498 (3d Dep't 1997) (Despite fact that subcontract did not specifically identify the project owner as an intended beneficiary, nevertheless the circumstances support finding that owner was intended third-party beneficiary of subcontract agreement).

<u>**CONCLUSION**</u>

For the foregoing reasons, and those adduced in the opposing declaration submitted herewith, Travelers and Trataros respectfully request that TEC's Motion to Dismiss be denied in its entirety.

Dated:    Florham Park, New Jersey       Respectfully submitted,
          February 4, 2008               **DREIFUSS BONACCI & PARKER, LLP**


          By:       /S/
                    Eli J. Rogers (ER:6564)