# EXHIBIT B

Electronic Filing
ECF 1:07-cv-06915

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY, etc.,   07-CV-6915-DLC

      Plaintiffs,

  - - against - -

DORMITORY AUTHORITY - STATE OF NEW YORK, et al.,   **ANSWER**
               **to**
      Defendants.  **Fourth-Party**
-----------------------------------------------------------------------X   **Complaint**
DORMITORY AUTHORITY OF THE STATE OF
NEW YORK, et ano.,

      Third-Party Plaintiffs,

  - - against - -

TRATAROS CONSTRUCTION, INC.,

      Third-Party Defendant.
-----------------------------------------------------------------------X
TRATAROS CONSTRUCTION INC. and TRAVELERS
CASUALTY AND SURETY COMPANY,

      Fourth-Party Plaintiffs,

  - - against - -

CAROLINA CASUALTY INSURANCE COMPANY, et al.,

      Fourth-Party Defendants.
-----------------------------------------------------------------------X

**Carolina Casualty Insurance Company** answers the Fourth-Party Complaint in this action as set forth below. For brevity, the parties involved will be referred to simply as Travelers, DASNY, Trataros, Crocetti, Carolina, etc.

Denials/Admissions

**First**   Carolina denies that it has knowledge or information sufficient to form a belief as to any of the allegations made in the paragraphs of the Fourth-Party Complaint numbered 1, 2, 4 through 14, 17 (except Carolina believes Crocetti is a New York corporation), 35, 36, 37, or 45 through 51.

**Second**   Carolina denies the allegations made in paragraph 3 of the Fourth-Party Complaint, except Carolina admits that Carolina is incorporated (in Iowa) and has its principal place of business in Florida, as is alleged.

**Third**   Carolina denies it has knowledge or information sufficient to form a belief as to any of the allegations made in paragraphs 15 or 16 of the Fourth-Party Complaint, except Carolina admits that a substantial part of the transactions and occurrences referred to in the pleadings in this case took place within this judicial district.

**Fourth**   Carolina admits the allegations made in the paragraph of the Fourth-Party Complaint numbered 18; admits 30 through 34 (except lacks sufficient information as to legal title to the property); and admits 38 through 44 (but refers to the actual writings for their contents).

**Fifth**   Carolina admits that the various pleadings referred to in paragraphs 19 through 29 of the Fourth-Party Complaint were filed as alleged, but otherwise begs leave to refer to the actual texts of those pleadings for their contents; Carolina responds likewise to paragraphs 52 through 61 and 94 (except denies Crocetti's work was defective as is alleged or is implied in the pleadings referred to in such paragraphs).

2

**Sixth**  Carolina does not respond to the allegations of paragraphs 62 through 84 of the Fourth-Party Complaint, for the reason that such allegations are explicitly directed to parties other than Carolina; similarly, no response from Carolina is called for by paragraphs 97 through 149 of the Fourth-Party Complaint.

**Seventh**  Carolina reiterates its responses to the allegations repeated or re-alleged by the paragraphs of the Fourth-Party Complaint numbered 85 and 89.

**Eighth**  Carolina denies the allegations of paragraph 86 of the Fourth-Party Complaint, and respectfully refers to the full text of the Crocetti subcontract-performance bond for an accurate and complete statement of all its terms and conditions.

**Ninth**  Carolina denies each and every allegation made in, or adopted by, the paragraphs of the Fourth-Party Complaint numbered 87 and 95, which refer to Crocetti's alleged "failure faithfully and promptly perform" Crocetti's subcontract with Trataros; Carolina specifically denies Trataros complied with all the expressed and implied terms and conditions of that subcontract in that, among other things - -

- Trataros prevented Crocetti from performing the subcontract work any differently from the way in which Crocetti actually did perform such work; and,

- Even assuming (without conceding) there were any failure on Crocetti's part, Trataros never followed any of the subcontract's protocols concerning the subcontractor's supposed "failure to perform."

**Tenth**  Carolina denies each and every allegation made in the paragraphs of the Fourth-Party Complaint numbered 88, 90, 91, 92, 93, and 96; Carolina specifically denies

3

due and timely compliance with all the terms and conditions of Carolina's performance bond for Crocetti, including in each of the following respects:

- The performance bond given by Carolina as surety for Crocetti names Trataros as the obligee, not Travelers. Nor is Travelers Trataros' "successor". Nor is the bond assignable. Travelers therefore lacks standing to sue Carolina as an obligee, successor, or assignee.

- If Trataros nevertheless did assign the bond to Travelers, as is alleged, then Trataros divested itself of its own rights to sue under the bond.

- Suit on the surety bond was required to be commenced within the time prescribed in the bond, to wit, before the expiration of two years from the date on which final payment was due under Crocetti's contract with Trataros.

- Pursuant to the terms of the bond, the bond-claimant must establish that Crocetti failed promptly and faithfully to perform its subcontract (which assertion Crocetti has denied, and which seems belied by the complaints about Crocetti's finished product.)

- The alleged deficiencies in Crocetti's finished product do not add up to a material breach of contract by Crocetti sufficient to constitute a "default" within the meaning of the performance bond Carolina issued as surety for Crocetti.

- Crocetti was never *declared* in "default" under its subcontract. Such a declaration of "default" is an expressed condition precedent for invoking the said performance bond.

- The surety bond is also conditioned on the bond-obligee's having fulfilled its own obligations under the subcontract. Crocetti maintains that the bond-obligee (namely, Trataros) failed to live up to its own obligations, in particular, failed to make required payments, and failed properly to manage the work or allow Crocetti to perform the work as Crocetti maintained it should have been performed.

- The bond also explicitly requires giving credit to the surety for the unpaid balance (with all proper adjustments) of the contract price, but the Fourth-Party Plaintiffs have not given Carolina credit for such

4

amounts.

### First Affirmative Defense

**Eleventh**   If the Court deems any of the points set forth above, as specific denials, to be more appropriately pleaded as affirmative defenses, then Carolina reiterates them as affirmative defenses.

### Second Affirmative Defense

**Twelfth**   Carolina adopts Travelers' and Trataros' defenses to DASNY's claims, especially the defenses of contributory fault, waiver, and failure to mitigate damages, including, more particularly, in the following respects:

- The conditions complained of at the Baruch building resulted at least in part from the work-product of DASNY's own architects or engineers.

- The conditions complained of resulted to a great extent from decisions made by DASNY itself and from the acts, errors, or omissions, of DASNY's construction manager, including directives as to how and when the flooring work in the building was to be done, in some instances deviating from good practice and even deviating from the original plans and specifications.

- The conditions complained of may have been worsened by things done or not done by DASNY or by the building-user or occupant, including as to repairs to the flooring and as to cleaning and maintenance of the flooring.

### Third Affirmative Defense

**Thirteenth**   Carolina reserves the right to invoke any provisions that may

5

be contained in applicable contract documents imposing time-limitations or limitations-of-liability for claims that work or materials have not stood up to desired quality after being installed and to put to use.

### Fourth Affirmative Defense

**Fourteenth**   Crocetti's work at the Baruch project was performed under the immediate supervision, direction, and control of Trataros. Trataros in fact gave or relayed to Crocetti instructions concerning the very work now alleged to be defective. Trataros therefore caused or contributed to the damages now complained of.

### Fifth Affirmative Defense

**Fifteenth**   If Trataros caused or permitted defective work by Crocetti, then Trataros' own acts or omissions resulted in prejudice to Carolina as Crocetti's surety, making it inequitable for Trataros to look to Crocetti's surety to pay Trataros for Trataros' own failings, and thus discharging in whole or in part any obligation Carolina might otherwise have had to Trataros (or anyone purporting to claim by or in the right of Trataros, like Travelers).

### Sixth Affirmative Defense

**Sixteenth**   Even assuming (without conceding) that Crocetti was in any way responsible for any of the damages complained of, in no event could Crocetti (or

6

Crocetti's surety Carolina) be liable to the Fourth-Party Plaintiffs for more than the *net amount*, if any, by which such Crocetti-caused damages exceeds amounts owed to Crocetti by the Fourth-Party Plaintiffs.

**Seventeenth** According to Crocetti, the Fourth-Party Plaintiffs failed to pay amounts earned by Crocetti totaling not less than $901,091 -- for the unpaid balance of the subcontract price, for extra or additional work, and for damages caused to Crocetti.

**Eighteenth** The amounts earned by Crocetti, but never paid, must be applied to recoup any losses caused by Crocetti before Fourth-Party Plaintiffs can properly look to impose any liability on Crocetti (or Carolina as Crocetti's surety).

### Seventh Affirmative Defense

**Nineteenth** Carolina reserves the right to adopt any other defenses and set-offs that were, or in good faith could have been, asserted by Crocetti itself if Crocetti were participating in this case as a named party in its own right.

### Cross-Claims against various Co-Defendants

Carolina hereby asserts the following cross-claims against those parties alleged by Fourth-Party Plaintiffs to be liable in whole or in part for the same damages claimed against Crocetti -- namely, Fourth-Party Defendants Bartec, Dayton, and TEC, and their respective insurers.

**Twentieth** For purposes of these cross-claims only, and purely

7

hypothetically, Carolina adopts the allegations made against those other Fourth-Party Defendants by the Fourth-Party Plaintiffs.

**Twenty-First**   To the extent any of those allegations prove true, Carolina will be entitled to indemnity or contribution from those Fourth-Party Defendants found to be liable in whole or in part for the damages complained of.

### Cross-Claim against Co-Defendant TEC

**Twenty-Second**   TEC (a trade name for fourth-party defendant Specialty Construction Brands, Inc.) furnished materials to Crocetti, pursuant to purchase orders or sales contracts, which materials were used by Crocetti at the Baruch project.

**Twenty-Third**   TEC expressly or impliedly warranted that such materials conformed to project specifications and were suitable for their intended purposes.

**Twenty-Fourth**   Crocetti found no fault with TEC's materials, and is still not aware of any fault with TEC's materials; others, however, allege otherwise.

**Twenty-Fifth**   If TEC's materials were in fact faulty (as others allege), then TEC is obligated to indemnify Crocetti and Crocetti's surety Carolina for any resulting damage to Crocetti's work and for liabilities consequently imposed on Crocetti and Crocetti's surety Carolina.

### Carolina's Counterclaims against Travelers and Trataros

Carolina reserves the right to prosecute the following counterclaims - - subject however to

8

any approvals that may be or that may become necessary by reason of Crocetti's having filed for protection under the federal Bankruptcy Code, which Crocetti did on or about February 8, 2007.

**Twenty-Sixth**    In addition to supplemental jurisdiction, under 28 USC 1367, this court has independent jurisdiction over these counterclaims, under 28 USC 1332, in that there is diversity between Carolina (an Iowa corporation headquartered in Florida) and Trataros and Travelers (neither of which is incorporated or headquartered in Iowa or Florida).

**Twenty-Seventh**    Carolina is an Iowa corporation, headquartered in Florida.

**Twenty-Eighth**    Trataros Construction, Inc. ("Trataros") was and still is a foreign or domestic corporation actually doing business in the City and State of New York with its principal office for the transaction of business located at 664 64th Street, Brooklyn, New York 11220.

**Twenty-Ninth**    Travelers Casualty and Surety Company ("Travelers") was and still is a domestic or foreign corporation actually doing business as a licensed Surety Company in the State of New York, with an office for the transaction of business located at One Tower Square, 14C, Hartford, Connecticut 06183.

### Carolina's First Counterclaim, against Trataros

**Thirtieth**    On or about August 27, 1998, Trataros as a "general", or

9

"prime", contractor entered into a contract with the Dormitory Authority of the State of New York ("DASNY") for certain construction work at Baruch College, 55 Lexington Avenue, New York, New York for Site B, Package No. 2 - - General Construction Work, Contract No. 16 (Contract No. DA. No. 6500-1802-2178.JDE No. 61505) hereinafter referred to as the "Project" and/or the "Prime Contract".

**Thirty-First**  Thereafter, Trataros, on or about September 18, 1998 entered into a subcontract agreement with Crocetti to perform certain base-subcontract work including furnishing and installing pre-cast terrazzo, epoxy terrazzo, interior stonework and related work at and for the improvement of the Project.

**Thirty-Second**  The agreed upon price and fair and reasonable value of the base contract work referred to in paragraph "Thirty-First" hereof was the sum of $3,008,000.00.

**Thirty-Third**  During the performance of Crocetti's subcontract work at the Project, at the special instance and request of Trataros and/or others acting on behalf of Trataros, Crocetti performed certain extra and/or additional change order work at the Project.

**Thirty-Fourth**  The fair and reasonable value of the extra and/or additional work referred to in paragraph "Thirty-Third" hereof was the agreed upon sum and fair and reasonable value of $990,352.51.

**Thirty-Fifth**  On or about and between September 30, 2000 and February 12, 2003, Crocetti performed all of its labor and furnished all of the materials it was required

to perform and/or furnish in connection with the Project. Crocetti was substantially completed with its subcontract work on or about October 31, 2002.

**Thirty-Sixth** Crocetti duly complied with all of the terms and conditions of the subcontract by and between Crocetti and Trataros, except to the extent Crocetti was prevented from doing so by Trataros.

**Thirty-Seventh** As a result of the foregoing, there became due and owing to Crocetti from Trataros the sum of $3,998,352.51.

**Thirty-Eighth** That no part of said sum of $3,998,352.51 has been paid or credit deductions given, despite demand having been made therefore, except the sum of $3,097,260.86, leaving a balance due and owing to Crocetti from Trataros in the sum of $901,091.65, plus interest thereon from October 31, 2002.

**Thirty-Ninth** Money Trataros owes Crocetti is supposed to go to Carolina, under agreements made between Crocetti and Carolina.

### Carolina's Second Counterclaim, against Travelers

**Fortieth** Trataros was required by DASNY to execute and deliver and did execute and deliver, with a licensed surety thereon, a labor and material payment bond in connection with Trataros' general contract with DASNY for the Baruch project.

**Forty-First** Trataros had originally furnished a labor and material payment bond from Reliance Insurance Company.

**Forty-Second** At the time Crocetti had entered into the contract with

11

Trataros, Reliance was authorized to issue and deliver the labor and material payment bond required for the Baruch project.

**Forty-Third**  Upon information and belief, Travelers either assumed all of the obligations of Reliance under the aforementioned bond, or in the alternative, executed, furnished and delivered a separate and distinct labor and material payment bond.

**Forty-Fourth**  Travelers was and still is the surety responsible for the payment of just claims under the labor and material payment bond(s) upon which this counterclaim is based.

**Forty-Fifth**  Trataros and Travelers are jointly and severally liable to Crocetti for the sum of $901,091.65, plus interest thereon from October 31, 2002, for the labor performed, costs incurred and materials furnished in connection with the construction of the Project under and pursuant to the provisions of the said labor and material payment bond(s).

**Forty-Sixth**  Money Trataros' surety owes Crocetti is supposed to go to Carolina, under agreements made between Crocetti and Carolina.

### Request for Judgment

Wherefore, Fourth-Party Defendant Carolina Casualty Insurance Company respectfully requests judgment dismissing the Fourth-Party Complaint against it and (subject to any necessary bankruptcy-court approvals) awarding Carolina judgment on its counterclaims. Alternatively, if any liability is imposed on Carolina, then Carolina requests judgment-over

on its cross-claims for indemnity or contribution. Carolina also requests judgment for costs and disbursements, and for such further or different relief as may be just and equitable.

### Demand for Jury

At this time, Fourth-Party Defendant Carolina Casualty Insurance Company respectfully reserves its rights to a trial by jury.

Dated: New York, NY
       December 14, 2007

                For Fourth-Party Defendant Carolina Casualty
                Insurance Company

                ZICHELLO & McINTYRE, LLP

By: /s/
                Vincent J. Zichello (VZ-3487)
                Office & P.O. Address
                420 Lexington Avenue
                New York, New York 10170
                Tel. 212-972-5560
                E-mail zimc@msn.com

                - - and - -

                TORRE, LENTZ, GAMELL, GARY
                & RITTMASTER, LLP

By: /s/
                Robert Mark Wasko (RW-7811)
                226 West 26th Street
                New York, NY 10001
                Tel. 516-240-8900
                E-mail rwasko@tlggr.com