UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

TRAVELERS CASUALTY AND SURETY COMPANY as Administrator        Case No. 07-CV-6915(DLC)
for RELIANCE INSURANCE COMPANY,                               ECF Case

                            Plaintiff,

-against-

DORMITORY AUTHORITY – STATE OF NEW YORK, TDX
CONSTRUCTION CORP. and KOHN PEDERSON, FOX ASSOCIATES,
P.C.,

                            Defendants.
-------------------------------------------------------------------------------X
DORMITORY AUTHORITY OF THE STATE OF NEW YORK AND
TDX CONSTRUCTION CORP.,

                      Third-Party Plaintiffs,

-against-

TRATAROS CONSTRUCTION, INC.,

                      Third-Party Defendant.
-------------------------------------------------------------------------------X
TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY
AND SURETY COMPANY,

                      Fourth-Party Plaintiffs,

-against-

CAROLINA CASUALTY INSURANCE COMPANY, Et Al.

                      Fourth-Party Defendants.
-------------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF FOURTH-PARTY DEFENDANT UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Carroll, McNulty & Kull LLC
Attorneys for Fourth Party Defendant
United States Fire Insurance Company
570 Lexington Avenue – 10th Floor
New York, New York 10022

# TABLE OF CONTENTS

Table of Contents ............................................................................ i

Table of Authorities ........................................................................ ii

Preliminary Statement ..................................................................... 1

Factual Background ......................................................................... 2

Procedural History .......................................................................... 3

    A. The 2004 Action .................................................................. 3

    B. The 2007 Action .................................................................. 5

    C. The Trataros Policy ............................................................. 6

Argument ....................................................................................... 8

    A. Trataros/Travelers' Claims For Coverage Are Barred Based
       On The Failure To Provide Timely Notice To U.S. Fire............ 8

       1. Late Notice ................................................................. 8

       2. Unreasonable Delay..................................................... 13

    B. Additional Grounds For Dismissal Of All Claims Against U.S. Fire.......... 15

       1. There Was No "Property Damage" Caused By An "Occurrence" .......... 16

       2. Property Damage ......................................................... 16

       3. Occurrence................................................................. 18

       4. Products Completed Operations Hazards Coverage.............. 19

       5. The Faulty Workmanship Exclusions To The Trataros Policy ....... 20

       6. Trigger of Coverage...................................................... 21

Conclusion ..................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

Allstate Ins. Co. v. Furman,
    84 A.D.2d 29, 31, aff'd, 58 N.Y.2d 613 (1982) ................................... 9

Amer. Home Assur. Co. v. Republic Ins. Co.,
    984 F.2d 76 (2d Cir. 1993) ................................................................ 10

Apache Foam Products v. Continental Ins. Co.,
    528 N.Y.S.2d 448 (1st Dep't 1988)..................................................... 17

Argo Corp. v. Greater New York Mut. Ins. Co.,
    4 N.Y.3d 332, 827 N.E.2d 762, 794 N.Y.S.2d 704 (2005) ............................... 9

Asbeka Indus. V. Travelers Indem. Co.,
    831 F. Supp. 74 (E.D.N.Y. 1993) ....................................................... 9

Continental Cas. Co. v. Rapid-Amer. Corp.,
    80 N.Y.2d 640, 651, 592 N.Y.S.2d 966 (1993).................................... 21

Cortland Pump and Equip., Inc. v. Fireman's Ins. Co. of Newark,
    194 A.D.2d 117, 604 N.Y.S.2d 633, 636 (3d Dep't 1993)............................... 21

Deso v. London & Lancashire Indem. Co. of Amer.,
    3 N.Y.2d 127, 164 N.Y.S.2d 689 (1957)............................................ 10

Darby v. Darby,
    268 A.D.2d 270, 702 N.Y.S.2d 50 (1st Dep't 2000)........................... 14

DiGuglielmo v. Travelers Property Cas. Co.,
    6 A.D.3d 344, 776 N.Y.S.2d 542 (1st Dep't 2004)............................. 12

Fusco v. Amer. Colonial Ins. Co.,
    221 A.D.2d 231, 633 N.Y.S.2d 316 (1st Dep't 1995)......................... 9

George A. Fuller Co. v. United States Fidelity & Guarantee Co.,
    613 N.Y.S.2d 152, 84 N.Y.2d 806 (1994).......................................... 17

Haas Tobacco Co. v. Amer. Fidelity Co.,
    226 N.Y. 343, 123 N.E. 755 (1919) ............................................... 10,12

Hartford Accident & Indem. Co. v. A.P. Reale & Sons., Inc.,
    644 N.Y.S.2d 442 (3d Dep't 1996) ................................................... 18

## TABLE OF AUTHORITIES (Cont'd)

**Cases**

Hartford Fire. Ins. v. Baseball Office of the Comm'r,
    236 A.D.2d 334, 654 N.Y.S.2d 212 (1st Dep't 1997)........................................    14

Herold v. East Coast Scaffolding, Inc.,
    208 A.D.2d 592, 616 N.Y.S.2d 197 (2d Dep't 1994)........................................    10

J.Z.G. Resources, Inc. v. King,
    987 F.2d 98 (2d Cir. 1993) .............................................................................    19,20

Kason v. City of New York,
    8 Misc.2d 810, 373 N.Y.S.2d 458 (N.Y.Co. 1973) .........................................    13

Maryland Cas. Co. v. W.R. Grace and Co.,
    23 F. 3rd 617, 626-27 (2d Cir. 1994)..................................................................    21

Nat'l Cas. Ins. v. City of Mount Vernon,
    515 N.Y.S.2d 267 (2d Dep't 1987) ...................................................................    22

Odgen Corp. v. Travelers Indem. Co.,
    924 F.2d 39, 43 (2d Cir. 1991) .........................................................................    12

Olin v. Ins. Co. of Amer.,
    743 F. Supp. 1044 (S.D.N.Y. 1990) .................................................................    11

Pavarini Constr. Co., Inc. v. Continental Ins. Co.,
    759 N.Y.S.2d 56, 57 (1st Dep't 2004)..............................................................    18

Power Auth. v. Westinghouse Elec. Corp.,
    117 A.D.2d 336, 339, 502 N.Y.S.2d 420 (1st Dep't 1986)...............................    10

Rushing v. Commercial Cas. Ins. Co.,
    251 N.Y. 302, 167 N.E. 450 (1929) .................................................................    10

Safer v. Gov't Employees Ins. Co.,
    254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998)........................................    10

Sec. Mut. Ins. Co. v. Acker-Fitzsimmons Corp.,
    31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) .......................    9,12,13,14

Structure Tone, Inc. v. Burgess Steel Products Corp.,
    249 A.D.2d 144, 672 N.Y.S.2d 33 (1st Dep't 1998).........................................    9

## TABLE OF AUTHORITIES (Cont'd)

<u>Cases</u>

Uniroyal, Inc. v. Home Ins. Co.,
    707 F. Supp. 1368 (E.D.N.Y. 1988) ...................................................................    21

U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.,
    2003 WL 22019429 (S.D.N.Y. 2003) ...................................................................    9

Utica Mut. Ins. v. Fireman's Fund,
    748 F.2d 118, 122 (2d Cir. 1984) .........................................................................    12

White v. City of New York,
    81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993) ......................    8

Winstead v. Uniondale Union Free School Dist.,
    201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994).........................................    10,14

Zadrima v. PSM Ins. Co.,
    208 A.D.2d 529, 616 N.Y.S.2d 817 (2d Dep't 1994).........................................    10

Zandri Constr. Co., Inc. v. Firemen's Ins. Co. of Newark,
    440 N.Y.S.2d 353 (3d Dep't 1981) .......................................................................    20

Zandri Constr. Co. v. Stanley H. Calkins, Inc.,
    446 N.Y.S.2d 45 (1981) ........................................................................................    21

## I.    PRELIMINARY STATEMENT

This brief is submitted in support of Fourth-Party Defendant United States Fire Insurance Company's ("U.S. Fire") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the claims set forth against it in the Fourth-Party Complaint of Trataros Construction Inc. ("Trataros") and Travelers Casualty and Surety Company ("Travelers")(collectively "Trataros"). Prior to submission of this motion, Fourth-Party Plaintiffs agreed to discontinue *without* prejudice certain of their claims against U.S. Fire. More specifically, Trataros has agreed to discontinue all claims against U.S. Fire relative to the insurance policy issued by U.S. Fire to Trataros subcontractor G.M. Crocetti ("Crocetti"). A copy of the fully executed Stipulation memorializing the parties' agreement as to the discontinuance of these claims is annexed to the Affidavit of John P. De Filippis ("De Filippis Aff.") as Exhibit "A."

In light of the foregoing, this motion seeks dismissal of Trataros' remaining claims against U.S. Fire. Trataros' remaining claims are made in connection with the insurance policy issued by U.S. Fire to Trataros. Dismissal of all claims under the policy at issue is warranted because: (i) no work had been performed regarding the subject epoxy terrazzo flooring while the policy issued by U.S. Fire to Trataros was in effect; (ii) Trataros failed to comply with the notice provisions contained in the policy issued to it by U.S. Fire; and (iii) the claims set forth by Trataros, DASNY and/or TDX Construction Corp. ("TDX") regarding "purported defects . . . in Trataros' work separate and apart from the epoxy terrazzo flooring system" do not in any way implicate coverage under the policy issued by U.S. Fire to Trataros.

## II.    FACTUAL BACKGROUND

This action arises from a dispute regarding the construction project at the Baruch College Vertical Campus, located between 24th and 25th Streets and Lexington and Third Avenues in New York, New York (the "Project").

Crocetti performed its installation work for the epoxy terrazzo flooring system between September 20, 2000 and February 12, 2003. See Answer of Crocetti to the Amended Fourth-Party Complaint, dated June 3, 2005, annexed to the De Filippis Aff. as Exhibit "B."

By letter dated March 7, 2003, TDX supplied Trataros with an expert's report revealing the extensive debonding of the terrazzo system. See De Filippis Aff., Exhibit "C." Specifically, TDX informed Trataros that during an investigation performed by Testwell Laboratories ("Testwell") problems with the epoxy membrane were which suggested potential failure of the terrazzo system.

In this correspondence, TDX also informed Trataros that "this serious matter deserves your full cooperation, due to the potential repercussions of what has been found to date, plus the extent of the affected areas," *id.*, and that Trataros, as general contractor, would "be held responsible for all conditions, should final analysis show G.M. Crocetti's system failure was due to poor workmanship; not to mention the potential problems posed by the underlayment subcontractor, Bartec, and its recommended product, Conflow, for floor-leveling." Id.

Thereafter, on June 17, 2003, TDX wrote to DASNY regarding investigations and analyses performed by three different firms with respect to the alleged failure of the terrazzo system. See De Filippis Aff., Exhibit "D."

2

Two months later, on August 28, 2003, TDX again wrote to DASNY, noting that "there has been deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation at Baruch College Site B." See De Filippis Aff., Exhibit "E."

### III.    PROCEDURAL HISTORY

**A.    THE 2004 ACTION**

On June 28, 2004, Travelers, as Administrator for Reliance Insurance Company, ("Reliance"), and Trataros commenced a lawsuit against DASNY, TDX, and Kohn Pederson Fox Associates, P.C. ("KPF"), the Project architects, seeking payment on behalf of itself and its subcontractors from DASNY. Additionally, Travelers asserted a negligence claim against both TDX and KPF for failing to properly perform their responsibilities, resulting in delay and defects on the Project (the "2004 Action"). A copy of the Complaint filed in the 2004 Action is annexed to the De Filippis Aff. as Exhibit "F."

On or about August 4, 2004, DASNY commenced a third-party action against Trataros and Travelers, seeking common law and contractual indemnification, and contribution from Trataros and its subcontractors. DASNY's Complaint also claimed that Trataros and its subcontractors' work caused "construction defects," but the only allegation of a specific "construction defect" refers to substandard work performed by Trataros and Crocetti in breach of their contractual obligations, causing the terrazzo flooring system to "crack and crumble," and to "delaminate and blister" in large areas. A copy of the Third-Party Complaint filed in the 2004 Action is annexed to the De Filippis Aff. as Exhibit "G."

On February 17, 2005, KPF commenced a Second Third-Party action against Trataros and the KPF Design Team, alleging that Trataros and the Design Team were negligent with respect to their work on the Project, and asserting claims for contribution, common law and contractual indemnification, negligence and breach of contract.

On or about February 17, 2005, Travelers and Trataros commenced an Amended Fourth-Party action against U.S. Fire, Crocetti, and other contractors and insurers.[1]  In the Amended Fourth-Party Complaint, Travelers and Trataros alleged that on or about September 18, 1998, Crocetti entered into a subcontract with Trataros pertaining mainly to installation of an epoxy terrazzo system manufactured by Specialty Construction Brands ("TEC").  Among other things, Travelers and Trataros asserted that if DASNY was successful in prosecuting its claims against Travelers and Trataros for defective workmanship relative to the terrazzo flooring, then Crocetti would be liable to Travelers and Trataros: for breach of its subcontract; under the Subcontract Performance Bond issued by Carolina Casualty; and/or for indemnification, contribution and exoneration due to their professional negligence.  See, De Filippis Aff., Exhibit "H."

Moreover, under these conditions, U.S. Fire:

> shall be jointly and severally liable to reimburse, indemnify, and/or exonerate Trataros and/or Travelers for the covered damages either because Trataros is a named insured, or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros and/or DASNY to make a claim against the insurance policies.

De Filippis Aff., Exhibit "H"

---

[1]  The Fourth-Party Complaint, which was originally filed in November 2004, was amended in February 2005 to add the various insurance companies as Fourth-Party Defendants.

On April 21, 2005, U.S. Fire answered the Amended Fourth-Party Complaint, denied the allegations contained therein, and asserted the affirmative defense of late notice. U.S. Fire admitted that it issued policies of insurance to Trataros and Crocetti. De Filippis Aff., Exhibit "I."

On October 7, 2005, the parties to the 2004 Action stipulated to the dismissal without prejudice of all proceedings in order to permit mediation to go forward. Said dismissal was without prejudice. See De Filippis Aff., Exhibit "J."

## B.    **THE 2007 ACTION**

Following the completion of mediation, the instant matter, which is essentially based on the same claims as set forth in the 2004 Action, was commenced. The Fourth-Party Complaint herein was filed with the Court by Trataros on November 14, 2007.

According to the Fourth-Party Complaint, on April 22, 1998, DASNY awarded prime Contract Number 15 to Trataros, and on or about August 27, 1998, DASNY awarded co-prime Contract Number 16 to Trataros. Trataros in turn subcontracted work regarding the epoxy terrazzo flooring under Contract Number 16. De Filippis Aff., Exhibit "K," ¶¶ 37-41.

In the Ninth Count of the Fourth-Party Complaint, Trataros alleges that it is an insured and/or an additional insured under the policies issued by U.S. Fire. Trataros further alleges that, should the trier of fact in this action find that Trataros is liable to DASNY and/or TDX for damages in connection "with the repair, replacement, and/or loss of use of the allegedly damaged and/or impaired property," then the cost of repairing and/or replacing the allegedly defective or damaged property "may be covered in whole

or in part by any one or all of the insurance policies written by the carriers," including those issued by U.S. Fire.   De Filippis Aff., Exhibit "K," ¶ 145.

It is further alleged that, to the extent there is coverage under the policies issued by U.S. Fire for the aforementioned property damage, then U.S. Fire shall also be required to "defend and/or indemnify Travelers and/or Trataros in connection with the within action, either because Trataros qualifies as an 'insured' and/or 'additional insured', or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros, Bartec and/or DASNY to make a claim against the insurance policies." De Filippis Aff., Exhibit "K," ¶ 147.   Trataros claims the right to assert the foregoing claims even though they are "contingent on certain events and/or are not ripe." Id.

## C.    **THE TRATAROS POLICY**

U.S Fire issued Comprehensive General Liability ("CGL") Policy Number 5031690768 to co-prime contractor Trataros, for the period April 1, 1998 to April 1, 1999, with limits of $1 million per occurrence and $2 million in the aggregate (the "Trataros Policy").[2]

As a condition precedent to coverage under the Trataros Policy, any party seeking coverage must "see to it that we are notified promptly of an 'occurrence' which may result in a claim."   Under circumstances where a claim has been made or a lawsuit has been instituted, the party seeking coverage must "notify us as soon as practicable" in

---

[2] U.S. Fire also issued CGL Policy Number 5031763587 to flooring subcontractor Crocetti for the period March 31, 1999 to March 31, 2000, with limits of $1 million per occurrence and $2 million in the aggregate (the "Crocetti Policy").  As set forth above, all claims by the Fourth-Party Plaintiffs under the Crocetti Policy have been discontinued and the Stipulation reflecting this discontinuance is being prepared for filing by the parties.  Therefore, this motion addresses only the claims against U.S. Fire under the Trataros Policy.

writing of the claim or suit.  The Trataros Policy specifically provides that, in the event of

a claim or suit, the insured or additional insured seeking coverage under the Policy must:

> (1)    Immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

> (2)    Authorize us to obtain records and other information;

> (3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

> (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Despite this requirement, RiverStone Claims Management, L.L.C. ("RiverStone"), on behalf of U.S. Fire, was first informed of Trataros' claims for coverage on March 29, 2005, and RiverStone first received copies of the Amended Fourth-Party Complaint and related pleadings in the 2004 Action on March 30, 2005. See Affidavit of Sherrianne Hanavan for RiverStone, with relevant portions of the U.S. Fire Policies, annexed as Exhibit "L" to the De Filippis Aff.

## IV.  ARGUMENT

### A.  TRATAROS/TRAVELERS' CLAIMS FOR COVERAGE ARE BARRED BASED ON THE FAILURE TO PROVIDE TIMELY NOTICE TO U.S. FIRE

As set forth below, there is no coverage available under the Trataros Policy for any claims against Trataros sounding in or relating to the purported negligent workmanship of Trataros or any of its subcontractors.  Indeed, a number of grounds for non-coverage are presented and discussed herein, and each clearly precludes coverage under the Trataros Policy for the claims alleged in this lawsuit.  That said, it is critical to note that no coverage is available to Trataros <u>no matter what the basis of the claim</u> because Fourth-Party Plaintiffs did not provide U.S. Fire with timely notice of any occurrence, claim or lawsuit as is required under the unambiguous terms of the Trataros Policy.

### 1.  <u>Late Notice</u>

U.S. Fire first received notice of Trataros' claim for coverage when it was served with the Amended Fourth-Party Complaint in the 2004 Action.  Such notice constituted a violation of an express condition of the Trataros Policy, as it is required under the Policy that notice be provided "as soon as practicable."  Thus, Trataros' failure to provide proper and timely written notice to U.S. Fire vitiates coverage under the Trataros Policy.

New York case law is clear that compliance with a notice provision of an insurance policy is a condition precedent to coverage, and any unexcused failure of the insured to adhere to such a provision vitiates coverage under the policy.  <u>See</u> <u>White v. City of New York</u>, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993); <u>Sec.</u>

Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). Noncompliance with the provision vitiates the contract, both as to the insured and persons injured by the insured's actions. Fusco v. Amer. Colonial Ins. Co., 221 A.D.2d 231, 633 N.Y.S.2d 316 (1st Dep't 1995) (holding that where insured failed to timely comply with the notice provision of the policy, which is, in effect, a condition precedent to coverage, the insurer is relieved of liability).

The salutary purposes underlying the requirement of proper notice of claim to the insurer are to enable the insurer to: (1) exercise early control over the claim including assessing settlement potential; and (2) to adjust its reserves to account for the insured's claim. Asbeka Indus. v. Travelers Indem. Co., 831 F. Supp. 74 (E.D.N.Y. 1993). The New York Court of Appeals has confirmed that the right of an insurer to receive timely notice is so fundamental that the insurer need not show prejudice to be able to disclaim on this basis. Allstate Ins. Co. v. Furman, 84 A.D.2d 29, 31, aff'd, 58 N.Y.2d 613 (1982). Argo Corp. v. Greater New York Mut. Ins. Co., 4 N.Y.3d 332, 827 N.E.2d 762, 794 N.Y.S.2d 704 (2005).

Furthermore, the duty to give reasonable notice as a condition of recovery is also applicable to purported additional insureds. Structure Tone, Inc. v. Burgess Steel Products Corp., 249 A.D.2d 144, 672 N.Y.S.2d 33 (1st Dep't 1998); and U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., 2003 WL 22019429 (S.D.N.Y. 2003) (the notice requirement in an insurance policy applies to both the named insured and additional insured and timely notice provided by one insured will not be imputed to the other insured).

Pursuant to the Trataros Policy, Trataros was required to give notice of an occurrence "as soon as practicable" and, also, to "immediately" send copies of all pleadings to U.S. Fire. Such provisions have been interpreted to require notice within a reasonable time under the circumstances. <u>Power Auth. v. Westinghouse Elec. Corp.</u>, 117 A.D.2d 336, 339, 502 N.Y.S.2d 420 (1st Dep't 1986).

In interpreting what constitutes timely notice, New York courts have held that relatively short periods of unexcused delay are unreasonable as a matter of law. <u>Amer. Home Assur. Co. v. Republic Ins. Co.</u>, 984 F.2d 76 (2d Cir. 1993)(36 day delay); <u>Deso v. London & Lancashire Indem. Co. of Amer.</u>, 3 N.Y.2d 127, 164 N.Y.S.2d 689 (1957)(51 day delay); <u>Safer v. Gov't Employees Ins. Co.</u>, 254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998)(more than a one month delay); <u>Winstead v. Uniondale Union Free School Dist.</u>, 201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994)(one month delay); <u>Rushing v. Commercial Cas. Ins. Co.</u>, 251 N.Y. 302, 167 N.E. 450 (1929)(22 days); <u>Haas Tobacco Co. v. Amer. Fidelity Co.</u>, 226 N.Y. 343, 123 N.E. 755 (1919)(10 days); <u>Herold v. East Coast Scaffolding, Inc.</u>, 208 A.D.2d 592, 616 N.Y.S.2d 197 (2d Dep't 1994)(failure to notify insurer until three and a half months after the accident was untimely); and <u>Zadrima v. PSM Ins. Co.</u>, 208 A.D.2d 529, 616 N.Y.S.2d 817 (2d Dep't 1994)(four month delay).

Here, DASNY commenced a third-party action against Trataros on August 14, 2004 in which it alleged that Trataros and its subcontractors negligently performed work on the Project. Thus, it is indisputable that, by August 2004, Trataros was well aware of the claims against it. Upon being impleaded, however, Trataros did not "immediately send copies of any demands, notices, summonses or legal papers" or otherwise provide notice of the claim to U.S. Fire as is required under the terms of the Trataros Policy.

10

Instead, some <u>seven and a half months</u> later, on March 30, 2005, Trataros served U.S. Fire with an Amended Fourth-Party Complaint.  This was U.S. Fire's first notice of the claim.

In response, U.S. Fire disclaimed coverage by letter to Fourth-Party Plaintiffs' counsel dated April 18, 2005.  <u>See</u> Exhibit "B" to the Hanavan Aff., which is annexed as Exhibit "L" to the De Filippis Aff.  Furthermore, in its April 21, 2005 Answer to the Amended Fourth-Party Complaint, asserted, among various affirmative defenses, that Trataros' claims were barred by its failure to comply with the notice provision contained in the Trataros Policy.

Furthermore, it has been established that Trataros was aware of DASNY's claims against it long before DASNY commenced its 2004 third-party action.  Indeed, the evidence indicates that, for example, TDX wrote to Trataros and DASNY in March, June and August 2003 and provided unambiguous notice of a potential claim.  <u>See</u> De Filippis Aff., Exhibits "C," "D," and "E."

This correspondence was sent to Trataros <u>nearly two years</u> before Trataros sued U.S. Fire.  Despite being apprized of the potential claims that form the basis of this lawsuit years before it elected to sue U.S. Fire, Trataros never provided notice regarding any potential claim against it, in contravention of the conditions precedent to coverage under the Trataros Policy.

The Trataros Policy clearly and unambiguously required Trataros to provide timely notice of any potential claim against it to U.S. Fire.  <u>See, e.g.</u>, <u>Olin v. Ins. Co of Amer.</u>, 743 F. Supp. 1044 (S.D.N.Y. 1990)(obligation to provide notice accrues when the circumstances known to the insured at that time would have suggested to a reasonable

person the possibility of a claim); and <u>Utica Mut. Ins. v. Fireman's Fund</u>, 748 F.2d 118, 122 (2d Cir. 1984)("New York law applies an objective test, asking what the insured's officers 'reasonably could or should have concluded'" that an alleged occurrence would give rise to liability.).

Additionally, New York courts have consistently held that an insured's duty to give notice arises when, from the information available relative to the accident or "occurrence," the insured could glean a reasonable possibility of a policy's involvement. <u>See, e.g.</u>, <u>DiGuglielmo v. Travelers Property Cas. Co.</u>, 6 A.D.3d 344, 776 N.Y.S.2d 542 (1st Dep't 2004). <u>Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.</u>, 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902 (1972)("<u>Security Mutual</u>")(notice must be given within a reasonable time under all the circumstances); <u>Odgen Corp. v. Travelers Indem. Co.</u>, 924 F.2d 39, 43 (2d Cir. 1991)(an insured's knowledge that a claim is likely, though not yet actually filed, is sufficient to trigger the duty of notice).  Once an insured possesses such knowledge, it cannot recede and do nothing and its carelessness will not absolve it from the consequences of its actions. <u>See, e.g.</u>, <u>Haas Tobacco Co. v. Amer. Fidelity Co.</u>, 226 N.Y. 343, 123 N.E. 755 (1919).  By any objective standard, Trataros and Travelers failed to provide notice in a timely fashion to U.S. Fire of both the potential claims against Trataros and of the lawsuit itself.

Thus, not only did Trataros fail to provide notice of any of the potential claims against it, but it also failed to give timely notice of the lawsuit filed against it. Accordingly, Trataros' late notice should be declared unreasonable as a matter of law and Trataros should not be found to be entitled to coverage under the Trataros Policy.

Consequently, the Amended Fourth-Party Complaint and any cross-claims against U.S. Fire should be dismissed with prejudice.

### 2. **Unreasonable Delay**

Trataros cannot now argue that its delay in providing notice to U.S. Fire was excusable because: (1) there is no evidence to show that it ever received the Policy and, therefore, it did not know what was required of it under the terms of the Policy; (2) evidence of insurance coverage was only obtained subsequent to the filing of the original 2004 third-party action by DASNY; or (3) Trataros ceased operating a year prior to DASNY's filing of the Third-Party Complaint in the 2004 Action. Such excuses are simply unavailing in terms of the Policy's requirements and the law.

For example, in <u>Kason v. City of New York</u>, 8 Misc.2d 810, 373 N.Y.S.2d 458 (N.Y. Co. 1973) the plaintiff filed a property damage claim against the City of New York (the "City") based on the City's alleged negligence in starting a fire. The City then filed a Third-Party Complaint against its insurer seeking coverage. In determining whether the City's claim against its insurer was barred by late notice, the Court found that the City had knowledge of the "occurrence" for approximately 16 to 17 months prior to notifying its carrier. The Court also noted the absence of any proof indicating that the City thought it was not liable for the occurrence. In finding that the City's claim for coverage was barred due to its inability to comply with the notice provision contained in the policy, the Court, citing <u>Security Mutual</u>, held that the City was required to exercise reasonable diligence and care in the discharge of its responsibility to inform its carrier and its own inaction or inefficiency did not absolve it from the consequences.

The Court of Appeals has held that – under very limited circumstances -- an insured's delay in providing notice may be excused.  See Security Mutual, 31 N.Y.2d at 441, 340 N.Y.S.2d at 903.  Specifically, a delay may be excused if it is based on an insured's good faith belief of non-liability; or if the insured lacks or is incapable of acquiring knowledge that an accident has occurred; or if the insured is out of state.

These circumstances are not present here.  Indeed, this is not a case where Trataros had a good faith belief of non-liability or where Trataros lacked or was incapable of acquiring knowledge of the alleged occurrence.

In addition to arguing that they were not aware of their potential liability, Trataros and Travelers cannot claim that they were unaware of the existence of insurance coverage.  The evidence shows that in 1998 Trataros obtained certificates of insurance identifying the insurers, the policies and the insurance brokers to which a claim could be presented.  See De Filippis Aff., Exhibit "M."

Thus, when Trataros received notification of a potential claim, it was required to make reasonable and diligent efforts to alert those carriers with potential coverage of the claim.  It is beyond dispute that no such efforts were made.  See, e.g., Winstead v. Uniondale Union Free School Dist., 201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994); Darby v. Darby, 268 A.D.2d 270, 702 N.Y.S.2d 50 (1st Dep't 2000)(finding that insured who procured the general liability policy was chargeable with the knowledge of whether that insurance coverage covered the potential claim as opposed to law firm retained by insured). See also Hartford Fire Ins. v. Baseball Office of the Comm'r, 236 A.D.2d 334, 654 N.Y.S.2d 212 (1st Dep't 1997).

14

Nor can Travelers, a general liability insurer, credibly take the position that, without benefit of a copy of the Trataros Policy, it did not know what was required under the notice provision of such a general liability policy. Indeed, <u>every</u> general liability insurance policy contains a notice requirement. Thus, notwithstanding any possible variations of such a condition, as a general liability insurer, Travelers was well aware that each liability policy under which it now seeks coverage contained a notice requirement and that the failure to comply with this requirement would vitiate coverage under the policy.

Finally, Trataros was on site at the Project and, therefore, cannot claim that it was "out of state" and detached from any communication regarding the Project. Accordingly, Trataros and Travelers cannot offer any reasonable excuse regarding their delay in providing U.S. Fire with notice under the Trataros Policy, and such delay in providing U.S. Fire with timely notice was unreasonable as a matter of law. For this reason, each and every claim herein against U.S. Fire must be dismissed with prejudice.

## B.    ADDITIONAL GROUNDS FOR DISMISSAL OF ALL CLAIMS AGAINST U.S. FIRE

As established above, no coverage is owed by U.S. Fire to Trataros because Trataros failed to provide U.S. Fire with timely notice of the claims against it, and such notice is a precondition to coverage under the Trataros Policy.

Although this ground alone is clearly sufficient to warrant the dismissal of any and all claims against U.S. Fire herein, it is not the only ground for dismissal. In fact, additional grounds for non-coverage exist as to any potential, as-yet unparticularized claims of "property damage" that are based on alleged substandard or negligent work

unrelated to the flooring system claims, whether such claims are alleged by DASNY or any other party.

### 1.    There Was No "Property Damage" Caused By An "Occurrence"

DASNY, TDX, nor any other party hereto can assert any allegations against Trataros that would qualify as "property damage" arising out of an "occurrence" as those terms are defined under the Trataros Policy.

To establish coverage under the Trataros Policy for "property damage," it must first be determined: (1) whether the claim involves "property damage" within the meaning of the Policy; (2) whether the "property damage," if any, arises out of an "occurrence" as that term is defined under the Policy; (3) if so, whether any policy exclusions bar coverage for such "property damage"; (4) and, if the claim involves "property damage" caused by an "occurrence," and no exclusion applies, whether the "property damage" occurred during the relevant policy period.

In this case, however, Trataros and Travelers cannot establish an entitlement to coverage under any of the foregoing criteria, and, as such, their respective and collective fourth-party claims fail as a matter of law to present any cause of action for which relief can be granted. Therefore, all claims against U.S. Fire must be dismissed herein with prejudice.

### 2.    Property Damage

Any current or potential claims asserted against Trataros do not or will not constitute claims for "property damage" as that term is defined by the Trataros Policy. Under the Trataros Policy, "property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property. . . and . . . loss of use of

tangible property that is not physically injured." Thus, substandard work is not "property damage" under the plain language of the Trataros Policy. The relevant portions of the Trataros Policy are annexed to the De Filippis Aff., at Exhibit "N."

Indeed, New York courts have held that allegations pertaining to the performance of substandard work do not constitute a claim for "property damage" under a policy grant. See, e.g., George A. Fuller Co. v. United States Fidelity & Guarantee Co., 613 N.Y.S.2d 152, lv. denied 84 N.Y.2d 806 (1994)(where it was held that the policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for was defectively produced.)

New York courts, however, will typically find the existence of property damage if the insured's faulty workmanship causes physical injury to tangible property other than the work itself. See, e.g., Apache Foam Products v. Continental Ins. Co., 528 N.Y.S.2d 448 (1st Dep't 1988) (where court acknowledged that insured's foam insulation may have damaged other roof components). Thus, it appears that New York courts will distinguish between the replacement or repair of faulty materials, which is found not to be "property damage" under a general liability policy, and damage to third-party property caused by poor workmanship, which may be held to constitute "property damage."

Although DASNY and/or other parties may have asserted generalized claims of "construction defects" by Trataros and/or its subcontractors at the Project, no particularized claim of damage to the tangible property of any third-party has been asserted, and, therefore, no alleged damages herein constitute "property damage" within the meaning of the Trataros Policy.

3.    **Occurrence**

No allegation relating to substandard work by Trataros and/or its subcontractors constitutes "property damage" caused by an "occurrence" within the meaning of the Trataros Policy, even if the allegedly substandard work took place during the Policy's effective period.  Therefore, there is no possibility of coverage under the Trataros Policy and all claims for same must immediately be dismissed as a matter of law.

In order to trigger the Trataros Policy's property damage coverage, the claimed property damage must have been caused by an "occurrence," which is defined under the Policy as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  De Filippis Aff., Exhibit "N."  Under New York law, damages arising out of a breach of contract – such as where a contractor is alleged not to have performed as required under a contract -- do not constitute damages arising out of an "occurrence."  See, e.g., Pavarini Constr. Co., Inc. v. Continental Ins. Co., 759 N.Y.S.2d 56, 57 (1st Dep't 2004)(general contractor/construction manager was not entitled to coverage for claims, which essentially involved a breach of contract because default under a construction contract was not an "accident including continuous or repeated exposure to substantially the same general harmful conditions" under the policy).

New York courts have held that the term "occurrence" does not include the normal, expected consequences of poor workmanship as the cost for such substandard work is to be born by the tradesman. See, e.g., Hartford Accident & Indem. Co. v. A.P. Reale & Sons, Inc., 644 N.Y.S.2d 442 (3d Dep't 1996)(purpose of a CGL policy is to provide for tort liability for physical damage to others and not for contractual liability of

the insured for economic loss because the product or completed work is not what the damaged person bargained for); and J.Z.G Resources, Inc. v. King, 987 F.2d 98 (2d Cir. 1993)(under New York law, faulty workmanship is not considered to be an "occurrence").

Here, any current or potential allegations against Trataros for damages due to construction defects are/would be based on Trataros' and its subcontractors' failure, under their respective construction contracts, to properly perform the contracted for work and/or to supply the contracted-for materials. Trataros has asserted that if it is found liable for damages to DASNY, then those damages will have been caused primarily by the acts or omissions Trataros' subcontractors in breach of their construction contracts, and/or by failure to comply with industry standards and contract specifications during the work at the Project. Thus, Trataros has conceded that its fourth-party claims are based upon a breach of construction contracts and/or faulty workmanship, neither of which constitutes a covered "occurrence" within the meaning of the Trataros Policy. As such, there can be no coverage owed by U.S. Fire to Trataros or Travelers.

**4.    Products Completed Operations Hazards Coverage**

Setting aside all other issues, there is also no coverage under the U.S. Fire Policies' separate coverage grant for Products Completed Operations Hazards. De Filippis Aff., Exhibit "N." Pursuant to the definition of "products completed operations hazards," the Trataros Policy provides coverage for property damage that occurs away from Trataros' premises which arises out of Trataros' and its subcontractors' operations after their operations have been completed. This coverage grant, however, does not provide coverage for products that are still in Trataros' possession or for work that has

not been completed or abandoned. Thus, wherever Trataros and/or its subcontractors did not complete the work alleged to have been defective (such as the terrazzo flooring) until after the Trataros Policy expired (indeed, work was not even <u>started</u> on the flooring until after expiration of the Policy), Trataros is not entitled to coverage.

**5.      The Faulty Workmanship Exclusions To The Trataros Policy**

There is also no coverage under the Trataros Policy for damages arising out of the defective workmanship of any party purportedly insured under the Policy.

Exclusion J of the Trataros Policy, also known as the Faulty Workmanship exclusion, bars coverage for property damage to:

> (5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (6)      That particular part of any property that must be restored repaired or replaced because "your work" was incorrectly performed on it.

> Paragraph (6) of this exclusion does not apply to property damage" included in the "products-completed operations hazard.

<u>See</u> De Filippis Aff., Exhibit "N."

New York courts have interpreted Exclusions J(5) and J(6) as barring defective workmanship claims and precluding coverage for business risks arising out of construction defect claims. <u>See, e.g.</u>, <u>J.Z.G Resources, Inc. v. King</u>, 987 F.2d 98 (2d Cir. 1998)(distinguishing between "mere faulty workmanship standing alone," and faulty workmanship "resulting in consequential property damage to a third-party). <u>See also</u> <u>Zandri Constr. Co., Inc. v. Firemen's Ins. Co. of Newark</u>, 440 N.Y.S.2d 353 (3d Dep't

1981), aff'd sub nom. Zandri Constr. Co. v. Stanley H. Calkins, Inc., 446 N.Y.S.2d 45 (1981)(court precluding costs incurred by the insured to correct or replace the insured's own defective work).

Thus, coverage is specifically excluded under the Trataros Policy to the extent any claims for defective workmanship are made against Trataros or its subcontractors, pursuant to which the costs of correcting, repairing or replacing the work in question are sought.

### 6.    Trigger Of Coverage

Finally, no alleged "property damage" took place during the Trataros or Crocetti Policy period. As such, there can be no coverage under the Policies.

Even if Trataros could prove the existence of "property damage" caused by an "occurrence," which it cannot do, no such event took place during the Trataros Policy period. New York law tends to apply an "injury-in-fact" approach as to the question of when coverage is triggered under an occurrence policy. This means coverage could be implicated if the alleged property damage took place during the policy period. See, Continental Cas. Co. v. Rapid-Amer. Corp., 80 N.Y.2d 640, 651, 592 N.Y.S.2d 966 (1993); Maryland Cas. Co. v. W.R. Grace and Co., 23 F.3rd 617, 626-27 (2d Cir. 1994); and Cortland Pump and Equip., Inc. v. Fireman's Ins. Co. of Newark., 194 A.D.2d 117, 604 N.Y.S.2d 633, 636 (3d Dep't 1993) (adopting the date of injury-in-fact, as opposed to date of discovery of damage, as trigger for occurrence-based property damage coverage). Moreover, the "injury-in-fact" approach is consistent with the Trataros Policy, which provide coverage for "property damage" that occurs during the policy period. See e.g., Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. 1368 (E.D.N.Y. 1988);

21

and Nat'l Cas. Ins. v. City of Mount Vernon, 515 N.Y.S.2d 267 (2d Dep't 1987)(court recognized that an insurer is liable only for damages for physical injury to tangible property that occurs during its policy period and is not liable for damages for physical injury which occurs before or after the policy period).

Thus, even assuming damage to tangible property caused by an occurrence, such damage would have had to have resulted during the relevant Policy period. To the extent it has not, there is no coverage for Trataros or Travelers under the U.S. Fire Policies.

## CONCLUSION

For all of the reasons set forth herein, it is clear that no coverage is owed by U.S. Fire under the Trataros Policy to Trataros, Travelers or any other party with regard to any claims that already have been raised in this action, nor as to any claims that may be raised in the future.

To that end, U.S. Fire respectfully requests that the Court issue an Order dismissing the action and all pending claims against U.S. Fire with prejudice; and requiring Fourth-Party Plaintiffs to pay all of U.S. Fire's fees and costs in connection with the defense of this action, the 2004 Action and the interim mediation. The latter request is made in response to Fourth-Party Plaintiffs' prior refusal to voluntary discontinue all of its claims against U.S. Fire despite the absence of any good faith basis for same; and for such other and further relief as this Court may deem just and proper.

John P. De Filippis (JD2705)

22