UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>vs.<br><br>DORMITORY AUTHORITY - STATE OF NEW YORK, et al.<br><br>        Defendants. | Case No. 07-CV-6915 (DLC)<br>**ECF CASE** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,<br><br>        Third-Party Plaintiffs,<br><br>vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>        Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>        Fourth-Party Plaintiffs,<br><br>vs.<br><br>CAROLINA CASUALTY INSURANCE COMPANY, et al.<br><br>        Fourth-Party Defendants. | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO FOURTH-PARTY DEFENDANT, ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MOTION TO DISMISS THE FOURTH-PARTY COMPLAINT**

---

<u>**Of Counsel and On the Brief,**</u>
JoAnne M. Bonacci, Esq., *Admitted Pro Hac Vice*
Eli J. Rogers, Esq.
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Travelers Casualty and Surety*
  *Company, and Trataros Construction, Inc.*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS..............................................................................................2

LEGAL ARGUMENT ....................................................................................................7

    I.   EQUITY REQUIRES DENIAL OF ALLIED WORLD'S RULE 12(B)(6)MOTION.......7

      A.    Insurance Carriers Owe a Duty of Disclosure to their Policyholders............................7

      B.    Equitable Principles Preclude the Defense Invoked by Allied World..........................10

    II.  ALLIED WORLD FAILS TO ESTABLISH GROUNDS JUSTIFYING DISMISSAL..12

      A.    Pleadings Should Not Be Dismissed Based on Mere Technicalities............................12

      B.    Fact Questions Are Not Proper for Resolution Under the 12(b)(6) Standard. ..............15

      C.    Bodi Affidavit and Coverage Letter May Not Be Considered on this Motion.............17

CONCLUSION ............................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005) .................................8

Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338 (2d Cir. 2006).....................13

Arfons v. E.I. Du Pont de Nemours & Co., 261 F.2d 434 (2d Cir. 1958).......................................13

Bassett v. Lancer Ins. Co., 2002 WL 2010332 (Civ. Ct., NYC  June 27, 2002).................9, 10, 17

Bayview Gen'l Hosp. v. Associated Hosp. Svc. of N.Y., 45 Misc.2d 218,
    256 N.Y.S.2d 471, (Sup. Ct., N.Y. Co. 1964). .........................................................................11

Bergelt v. Roberts, 144 Misc. 832, 258 N.Y.S. 905 (Sup. Ct., N.Y. Co. 1932)...........................11

Bower v. Weisman, 639 F. Supp. 532 (SDNY 1986) ....................................................................13

Brink v. Hanover Fire Ins. Co., 80 N.Y. 108 (1880).....................................................................7

Brown v. New York City Housing Auth., 2006 WL 137878599 (SDNY May 17, 2006) ............18

Catanzano by Catazano v. Wing, 103 F.3d 223, (2d Cir. 1996)....................................................10

Citadel Equity Fund Ltd. v. Aquila, Inc., 168 Fed. Appx. 474 (2d Cir. 2006)..............................5

Cooper v. Parsky, 140 F.3d 433 (2d Cir. 1998).............................................................................15

Curcic v. Sesti, 225 N.Y.S.2d 172 (Sup. Ct., Suffolk Co. 1962) .................................................12

Dercoli v. Pennsylvania Mut. Ins. Co., 520 Pa. 471, 554 A.2d 906
    (PA Sup. Ct. 1989) ...................................................................................................................8

DiBlasio v. Novello, 344 F.3d 292 (2d Cir. 2003) .......................................................................16

Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 28 A.D.3d 32 (1st Dep't 2006)...............7

Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000)..........................................................6, 18

Gordon v. Nationwide Mut. Ins. Co., 30 N.Y.2d 427, 334 N.Y.S.2d 601 (1972).........................7

In re Estates of Covert, 97 N.Y.2d 68 (2001)...............................................................................11

Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991) .....................................................5, 18

Lauritano v. American Fid. Fire Ins. Co., 162 N.Y.S.2d 530, 3 A.D.2d 564
    (1st Dep't 1957)........................................................................................................................17

LeCorre v. Bjesse Belford Dolewski & DiMicco, 269 A.D.2d 569, 703 N.Y.S.2d 279
(2d Dep't 2000) ..........................................................................................................8

Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402
(SDNY 2006)............................................................................................................16

Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y. 2d 12 (1979)..............................17

New York and Brooklyn Suburban Investment Co. of N.Y. v. Leeds, 100 Misc.2d 1079,
420 N.Y.S.2d 639 (Sup. Ct., N.Y. Co. 1979) ....................................................10, 11

Public Service Mut. Ins. Co. v. Hudson Properties, Inc., 15 Misc. 2d 963,
182 N.Y.S.2d 710 (Sup. Ct., N.Y. Co. 1958) ........................................................7, 14

Ryan, Beck & Co. v. Fakih, 268 F. Supp. 210 (EDNY 2003) ........................................16

Scheuer v. Rhodes, 416 U.S. 232 (1974)........................................................................13

Security Mutual Ins. Co. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436 (1972)............17

Wilson v. Chicago Bridge & Iron, 2 A.D.3d 1004, 768 N.Y.S.2d 405 (3d Dep't 2003) ..........9, 10

## Rules

Fed. R. Evid. 201 ..............................................................................................................5

## Treatises

Eugene R. Anderson, Jordan S. Stanzler & Lorelie S. Masters,
Insurance Coverage Litigation (2d ed. 2000 & Supp. 2008)....................................7, 14

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") submit this memorandum of law in opposition to the Rule 12(b)(6) motion filed by Fourth-Party Defendant, Allied World Assurance Company (U.S.) Inc. f/k/a Commercial Underwriters Insurance Company ("Allied World"). The movant seeks dismissal of the Fourth-Party Complaint on the grounds of a purported technical defect in the pleading, attributed to the effect of the undisclosed terms of allegedly confidential corporate transactions. Respectfully, these grounds are insufficient to justify dismissal, and the Fourth-Party Plaintiffs cannot colorably be charged with knowledge of matters which the movant has refused to disclose. Therefore, Travelers and Trataros submit that Allied World's motion should be denied.

Whether or not Allied World assumed the liabilities on the policies written by Commercial Underwriters Insurance Company ("Commercial Underwriters") is not a question properly disposed on a 12(b)(6) motion, given that its resolution turns on factual issues. In any event, Allied World's argument is irrelevant, to the extent that the Fourth-Party Complaint does not implead the corporate entity styled as Allied World *per se*, but rather Allied World and/or its predecessors, successors, and related entities. Further, since Allied World holds itself out to the public, and in publicly-filed documents, as Commercial Underwriters' successor, equity does not permit Allied World to deny the matter. This preclusive effect is particularly appropriate, due to Allied World's breach of its duty of disclosure owed to the policyholder, Trataros.

Allied World's papers demonstrate that Commercial Underwriters' purported successor, North American Specialty Insurance Company ("NAS"), has actual knowledge of, and actively participates in defending, the claims at issue herein. In light of this factor, the equitable considerations, the inappropriate factual issues, and the motion's formalistic nature, Travelers and Trataros respectfully request that the Court deny Allied World's 12 (b)(6) motion.

## STATEMENT OF FACTS

### *Relevant Procedural History*

On or about August 1, 2007, Travelers commenced this action by filing its Complaint and Jury Demand (the "Complaint"), alleging claims against Defendants, Dormitory Authority – State of New York ("DASNY"), TDX Construction Corp. ("TDX"), and Kohn Pedersen Fox Associates, P.C. ("KPF"). (Declaration of Eli J. Rogers in Opposition to Allied World Assurance Company (U.S.), Inc. f/k/a Commercial Underwriters Insurance Company's Motion to Dismiss (the "Rogers Dec."), ¶ 2 & Exh. A thereto at ¶ 19.) Subsequently, DASNY and TDX asserted counterclaims against Travelers seeking alleged damages relating to purportedly defective work on the Project performed by Trataros and/or its subcontractors, *inter alia*. (Id., Exh. A at ¶ 20.)

DASNY/TDX's counterclaims allege that these purported construction defects include certain alleged defects in the epoxy terrazzo flooring system. (Id., Exh. A, ¶ 52.) Significantly, Trataros did not "self-perform" the installation of the Project's epoxy terrazzo flooring system, but subcontracted that work to two subcontractors, Crocetti and Bartec. (Id., Exh. A, ¶¶ 39-41, 46-49.) Movant Allied World, and/or Commercial Underwriters, issued one or more insurance policies to Trataros, including a certain commercial general liability ("CGL") policy bearing Policy No. BCG 004116 (the "Policies"). (Id., Exh. A, ¶¶ 11 & 140.) (And, Declaration of Diana E. Goldberg, submitted by Allied World in support of its motion (the "Goldberg Dec."), Exh. 2.)

Subsequently, DASNY and TDX filed their Third-Party Complaint, impleading Trataros and asserting claims that seek, *inter alia*, alleged damages resulting from purportedly defective, substandard and/or otherwise unacceptable work on the Project. (Rogers Dec., Exh. A, ¶ 23.) The third-party claims repeat DASNY's and/or TDX's allegations of defects in the Project's epoxy terrazzo flooring system (the "Flooring Claims"), and allude to other, unspecified alleged construction defects. (Id., Exh. A, ¶¶ 54-58.)

After filing their respective answers to DASNY/TDX's counterclaims and the Third-Party Complaint, Travelers and Trataros filed their Fourth-Party Complaint on November 14, 2007. (Id., ¶ 7.) The Fourth-Party Complaint alleges claims seeking, *inter alia*, a declaration of coverage under the Policies and indemnification/contribution from Allied World, its predecessors and/or successors, *inter alia*, for DASNY's and/or TDX's counterclaims and Third-Party claims. (Id., Exh. A, ¶¶ 122-149 & "Wherefore clause", pp. 29-30.)

The relief that Travelers and Trataros seek against the fourth-party insurance carriers, including Allied World, its predecessors and/or successors, relates to both the Flooring Claims and DASNY/TDX's as-yet-undeveloped claims for other alleged construction defects. (Id., Exh. A, ¶¶ 54-55, 122, 142.) Further, the fourth-party claims anticipate that information regarding the identities of additional parties potentially liable for insurance coverage may be developed over the course of discovery in the within action. (Id., Exh. A, ¶134.) On or about January 11, 2008, Allied World filed its motion to dismiss the Fourth-Party Complaint pursuant to Rule 12(b)(6).

### *Factual Background*

This action arises from a complex public works construction project "owned" by DASNY, and known as Baruch College, Site B (the "Project"). (Id., Exh. A, ¶¶ 30-32.) In its capacity as owner, DASNY entered into thirteen separate co-prime contracts for the Project's construction work. (Id., Exh. A, ¶ 35.) DASNY separately awarded two (2) of the thirteen (13) prime contracts to Trataros, including a contract known as "Contract No. 16." (Id., Exh. A, ¶¶ 36, 38.) Upon information and belief, DASNY's and/or TDX's Flooring Claims partially relate to work contracted under Contract No. 16, as well as work contracted by DASNY to prime

contractors other than Trataros. (Id., Exh. A, ¶¶ 38-43, 46-51, 60.) [1] For example, one of the major components of the Project's flooring system, the concrete floor slabs, were installed by a co-prime contractor other than Trataros. (Id., Exh. A, ¶ 48.)

With regard to Contract No. 16, Trataros subcontracted a portion of its work thereunder to non-party G.M. Crocetti, Inc. ("Crocetti"). The work subcontracted to Crocetti included, *inter alia*, installation of a portion of the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶¶ 39-41.) In connection with the work subcontracted to it by Trataros, Crocetti used materials manufactured and/or supplied by Specialty Construction Brands, Inc. t/a TEC ("TEC"). (Id., Exh. A, ¶ 42.) TEC's materials were incorporated into the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶ 43.)

However, the work performed/installed by Crocetti is only the uppermost layer of the Project's flooring system, which also incorporates construction work performed by Bartec Industries, Inc. ("Bartec"), and concrete floor slabs installed by a separate co-prime contractor. (See, id., Exh. A, ¶¶ 39-49, 60.) Trataros entered into a separate subcontract with Bartec with respect to, *inter alia*, the installation of "floor leveling" over portions of the concrete floor slabs installed by a separate co-prime contractor. (Id., Exh. A, ¶¶ 46-48.) Bartec's floor leveling work comprises a portion of the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶ 49.) In connection with the work subcontracted to it by Trataros, Bartec used materials manufactured and/or supplied by Dayton Superior Specialty Chemical Corp. a/k/a Dayton Superior Corporation ("Dayton Superior"). (Id., Exh. A, ¶ 50.) Dayton Superior's materials were incorporated into the Project's epoxy terrazzo flooring system. (Id., Exh. A, ¶ 51.)

---

[1] At the present stage of the proceedings, little detail has been pleaded by DASNY and/or TDX regarding the additional alleged construction defects referred to in the Third-Party Complaint. (Id., Exh. A, ¶¶ 54-55, and, Exh. B, ¶¶ 27-28. )

Upon information and belief, the Flooring Claims implicate purported continuing and/or incipient property damage arising from the alleged defects in the epoxy terrazzo flooring system. (Id., Exh. A, ¶¶ 60-61 & 142-44.)  Further, the alleged presently-existing, and/or potential, property damage referred to in the Flooring Claims purportedly has, or may be, sustained by one or more elements of the Project, including work constructed by a co-prime contractor other than Trataros, as well as by two of Trataros' subcontractors, and/or the "products" of at least two separate manufacturers. (Id., Exh. A, ¶¶ 39-51, 57, 60-61 & 142-43.)  Likewise, the purported property damage relevant to the Flooring Claims may allegedly be caused by one or more of the elements comprising the epoxy terrazzo flooring system.  (Id., Exh. A, ¶¶ 57, 60-61, & 142-44.)

### *Fourth-Party Plaintiffs' Allegations against Allied World*

The Fourth-Party Complaint does not simply implead, *inter alia*, the corporate entity presently styled as "Allied World Assurance Company (U.S.) Inc."  Rather, the pleading names the relevant party as "Allied World ... *f/k/a* Commercial Underwriters Insurance Company *and/or its predecessors, successors, parents, subsidiaries, affiliates, and/or divisions* (hereinafter "Allied World")...."  (Id., Exh. A, ¶ 11) (emphasis added).

Public information on file with the New York State Insurance Department identifies Allied World as a successor to Commercial Underwriters. (Id., ¶ 8 and Exh. C.)  Further, in documents filed by Allied World with the Securities and Exchange Commission ("SEC"), the movant identifies itself as having "formerly [been] Commercial Underwriters Insurance Company." (Id., ¶ 10-11 and Exhs. E-F.) [2] Despite requests for documentation from counsel for

---

[2] Travelers and Trataros respectfully submit that the Court may permissibly take judicial notice of the aforesaid public documents appended as Exhibits C, E & F to the Rogers Dec., as well as the Third-Party Complaint filed by DASNY and TDX in the within action. (Rogers Dec., Exh. B.)  Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) (Court may take judicial notice of matters outside the complaint's allegations pursuant to Fed. R. Evid. 201), and, Citadel Equity Fund Ltd. v. Aquila, Inc., 168 Fed. Appx. 474, 476 (2d Cir. 2006) (Motion court properly took judicial notice of SEC filings).

Travelers and Trataros, Allied World has ignored said requests and/or refused to disclose any documents to support its representations of the corporate transactions on which its defense is based. (Id., ¶ 14.) Further, since the earlier action before Judge Baer was voluntarily dismissed before any depositions were taken in those proceedings, no depositions have been taken with respect to the issue of successor liability for the Policies (Id, ¶15.)

In light of Allied World's inadequate disclosures on this issue, Travelers and Trataros respectfully submit that this Court should not consider the Affidavit of Alfred Bodi (the "Bodi Aff.") submitted as part of Allied World's moving papers. [3]  The Bodi Aff. was never furnished to Travelers or Trataros in advance of Allied World's motion to dismiss. (Rogers Dec., ¶ 14.) Neither the Bodi Aff. nor Exhibit 9 to the Goldberg Dec. are public records, nor are these documents incorporated by reference into the Fourth-Party Complaint, attached thereto, or integral to the allegations contained therein. (See, Goldberg Dec., Exhs. 6 & 9.)  Respectfully, neither Exhibit 6 nor Exhibit 9 to the Goldberg Dec. is material appropriate for consideration on this motion to dismiss.

---

[3]  (See, Opposition Brief, below, pp. 17-18.)  And see, Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) (On a Rule 12(b)(6) motion to dismiss, factual contentions set forth in movant's declaration in support should not be considered, where the factual matters are outside the scope of the allegations contained in the complaint.)

## LEGAL ARGUMENT

## I.    EQUITY REQUIRES DENIAL OF ALLIED WORLD'S RULE 12(B)(6)MOTION.

It is respectfully submitted that equitable considerations preclude judgment in favor of Allied World.  First, Allied World holds itself out to the public as Commercial Underwriters' successor, including representations made in corporate filings with the SEC.  Second, Allied World has failed to make adequate disclosures to its policyholder, Trataros, regarding the purported structure of the transactions between NAS, Commercial Underwriters and itself.  This failure derogates Allied World's duty of good faith and fair dealing owed to Trataros and/or its subrogee, Travelers, and movant should not be permitted to profit from its wrongful conduct.

### A.    Insurance Carriers Owe a Duty of Disclosure to their Policyholders.

It is long-established under New York law that "insurance companies hold a position of public trust and 'every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness.'" Public Service Mut. Ins. Co. v. Hudson Properties, Inc., 15 Misc. 2d 963, 968, 182 N.Y.S.2d 710, 715 (Sup. Ct., N.Y. Co. 1958) (quoting, Brink v. Hanover Fire Ins. Co., 80 N.Y. 108, 113 [1880].)  In light of their superior bargaining power and institutional experience in matters often byzantine to laypersons, carriers have "an affirmative duty to disclose to their policyholders information regarding coverage." Eugene R. Anderson, Jordan S. Stanzler & Lorelie S. Masters, Insurance Coverage Litigation § 11.10[C] (2d ed. 2000 & Supp. 2008).

This duty arises out of the implied covenant of good faith and fair dealing (id.), which New York courts recognize as an implicit term of all insurance policies.  See, Gordon v. Nationwide Mut. Ins. Co., 30 N.Y.2d 427, 437, 334 N.Y.S.2d 601, 609 (1972), and, Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 28 A.D.3d 32, 37 (1st Dep't 2006) ("The duty of

good faith and fair dealing implied in every contract is an integral part of an insurance contract.")

Even where the matter to be disclosed runs contrary to the insurance carrier's economic interests,

they are bound to disclose information relating to coverage under their policies to the

policyholder.

> The duty of an insurance company to deal with the insured fairly
> and in good faith includes the duty of full and complete disclosure
> as to all the benefits and every coverage that is provided by the
> applicable policy ... along with all requirements including any
> time limitations for making a claim.

Dercoli v. Pennsylvania Mut. Ins. Co., 520 Pa. 471, 478, 554 A.2d 906, 909 (PA Sup. Ct. 1989).

A carrier's duty to disclose "arises ... where 'one party possesses superior knowledge,

not readily available to the other, and knows that the other is acting on the basis of mistaken

knowledge,' or where a party has made a partial or ambiguous statement, whose full meaning

will only be made clear after complete disclosure." Aetna Cas. & Sur. Co. v. Aniero Concrete

Co., 404 F.3d 566, 582 (2d Cir. 2005) (emphasis added). When an insurer "is under a duty to

speak, or when his failure to speak is inconsistent with honest dealings and misleads another,

then his silence may be deemed to be acquiescence." LeCorre v. Bjesse Belford Dolewski &

DiMicco, 269 A.D.2d 569, 570, 703 N.Y.S.2d 279, 281 (2d Dep't 2000).

Here, the movant has failed to satisfy the duty of disclosure owed to its policyholder,

Trataros, and cannot permissibly invoke a defense predicated upon the information which it has

refused to disclose. (See, Rogers Dec., ¶ 14.) Allied World's claims are contrary to

representations that Allied World itself made in documents filed with the SEC, as well as

information on file with the New York State Insurance Department. (Id., ¶¶ 8-12 and Exhs. C,E-

F.) Further, the actual language of Exhibits 2, 7, 8, and 9 to the Goldberg Dec. make clear that

Allied World's duty of disclosure was not satisfied by those documents.

8

The statements contained in the aforesaid exhibits are ambiguous at best, and/or deliberately obscure. (See, e.g., Goldberg Dec., Exh. 9, first page) (stating, in pertinent part, that NAS "is the claims administrator for CUIC and administers claims on behalf of CUIC and Allied World ... when improperly sued and served for claims involving CUIC insurance policies.") Simply referring to NAS as Commercial Underwriters' "claims administrator" is not sufficient to place a policyholder on notice as to a transfer of liabilities under its policy. See, e.g., Wilson v. Chicago Bridge & Iron, 2 A.D.3d 1004, 1005, 768 N.Y.S.2d 405, 405-406 (3d Dep't 2003) (Despite having retained two third-party claims administrators to handle claimant's file on behalf of the carrier, the carrier remains the true party in interest); and, Bassett v. Lancer Ins. Co., 2002 WL 2010332, *2 (Civ. Ct., NYC  June 27, 2002) (Third-party claims administrator was neither insurer nor self-insurer for purposes of N.Y. Insurance Law).

Excepting the conclusory Bodi Aff., which is not appropriate material for consideration on a Rule 12(b)(6), Allied World's claim that NAS has assumed all liabilities under the Policies, is not supported by the materials appended to the Goldstein Dec.  For example, Allied World's Initial Disclosures filed in the proceedings before Judge Baer simply identifies "[c]laims personnel of North American Specialty Insurance Company, which is the claims administrator for Commercial Underwriters" as potential witnesses. (Goldberg Dec., Exh. 2, ¶ A.4.)  Similarly, the section disclosing the location of documents in Allied World's possession merely refers to "portions of underwriting files located at NAS Insurance Group...." (Id., Exh. 2, ¶ B.)  Nothing in the disclosure refers to a purported transfer of liabilities under the Policies to NAS.

The same pattern holds true for the other documents relied upon by Allied World.  (See, id., Exh. 7, at p. 8, "Fifth Affirmative Defense," simply stating that "Allied World has[s] ...

assumed no responsibility for claims under the CUIC policy"; Exh. 8, ¶ 2, stating that NAS "is the claim administrator for Commercial Underwriters…."; and Exh. 9, first page.)

Statements to the effect that NAS is a "claim administrator" for Allied World and/or Commercial Underwriters, in and of themselves cannot support the construction which Allied World accords to them. Use of an outside claims administrator is a fairly common practice in the insurance industry, and does not necessarily connote a transfer of a policy's liability. See, e.g., Wilson, 2 A.D.3d at 1005, 768 N.Y.S.2d at 405-406, and, Bassett, 2002 WL 2010332 at *2. Thus, despite Allied World's contention that Trataros was repeatedly informed that NAS had assumed all liabilities and obligations under the Policies, the disclosures contained in movant's exhibits are incomplete and/or ambiguous. Aetna, 404 F.3d at 582 ("Partial or ambiguous statements" give rise to a duty to disclose.) In light of Allied World's failure to adequately disclose the substance of the purported agreements affecting Trataros' rights under the Policies, and its pattern of holding itself out to the public as Commercial Underwriters' successor, equitable principles preclude Allied World from invoking the defense on which it relies.

**B.**    **Equitable Principles Preclude the Defense Invoked by Allied World.**

Under the principles of equity, and in light of its breach of the duty to disclose the purported details of the corporate transactions that, *inter alia*, allegedly transferred the liabilities for Commercial Underwriters' policies, Allied World may not invoke its defense premised upon said transaction(s). Equity generally recognizes that a remedy should be afforded for every wrong. See e.g., Catanzano by Catanzano v. Wing, 103 F.3d 223, (2d Cir. 1996) (citing to the principle "where there is a right there is a remedy"); and, New York and Brooklyn Suburban Investment Co. of N.Y. v. Leeds, 100 Misc.2d 1079, 1091, 420 N.Y.S.2d 639, 647 (Sup. Ct., N.Y. Co. 1979).

Even where a particular set of facts does not fit within an established equitable doctrine, that does not preclude the applicability of equitable principles in the face of a wrong. <u>Leeds</u>, 100 Misc.2d at 1091 ("Equity will ... grant relief even though a case is novel and there is no precise precedent for the relief to be granted where grounds causing [sic] for the exercise of equitable powers to furnish a remedy exist.")  "In equity, the absence of precedent is not fatal, ... [and] does not negative the existence of a right...."  <u>Bergelt v. Roberts</u>, 144 Misc. 832, 837-838, 258 N.Y.S. 905, 911 (Sup. Ct., N.Y. Co. 1932).  Where the litigant's right "demands recognition and enforcement, equity should respond." <u>Id</u>.

One of the fundamental principles of equity is that when a party is revealed as having committed a wrong, the wrong cannot form the basis of relief sought by that party.  <u>Bayview Gen'l Hosp. v. Associated Hosp. Svc. of N.Y.</u>, 45 Misc.2d 218, 221, 256 N.Y.S.2d 471, 475-476 (Sup. Ct., N.Y. Co. 1964).  The New York Court of Appeals "has consistently reaffirmed [this] ... equitable principle...." <u>In re Estates of Covert</u>, 97 N.Y.2d 68, 74 (2001).

Here, Allied World has failed to meet its duty of disclosure owed to Trataros, by withholding details and supporting documentation regarding the corporate transactions surrounding its acquisition of Commercial Underwriters and the purported transfer of liabilities for insurance policies written by the acquired company. (Rogers Dec., ¶14.)  This information has significant implications for Trataros' coverage rights under the Policies, as demonstrated by Allied World's reliance upon said transaction(s) as the grounds for its pending motion to dismiss. In addition, the available public records indicate that Allied World holds itself out to the public, and in records filed with the SEC, as Commercial Underwriters' successor. (<u>Id.</u>.¶ ¶ 8-12 and Exhs. C,E-F.)

In light of Allied World's failure to disclose the aforesaid information and documents, as well as the resulting prejudicial impact upon Trataros' and Travelers' ability to oppose the motion to dismiss, Allied World should not be permitted to invoke a defense predicated on the very information which has been kept shielded from disclosure. Further, and as discussed at greater length below, Allied World's motion to dismiss is predicated on a formalistic interpretation of the Fourth-Party Complaint's allegations, and thus runs contrary to the standards appropriate for a Rule 12(b)(6) motion, as well as equitable principles. Curcic v. Sesti, 225 N.Y.S.2d 172, 175 (Sup. Ct., Suffolk Co. 1962) (The equitable principle that judicial determinations should "look[] to the merits and not [exalt] … form over substance" is well established.) As a result of movant's failure to disclose, it should be precluded from asserting its proffered affirmative defense; for this reason, as well as the formalistic nature of the movant's objections, and additional reasons discussed below, Travelers and Trataros respectfully submit that Allied World's motion to dismiss should be denied.

## II.    ALLIED WORLD FAILS TO ESTABLISH GROUNDS JUSTIFYING DISMISSAL.

### A.    Pleadings Should Not Be Dismissed Based on Mere Technicalities.

Despite the melodramatic tenor of Allied World's moving papers, the argument for dismissal boils down to a hyper-technical parsing of the case caption, relying upon the undisclosed terms of corporate transactions to which neither Travelers nor Trataros were parties. Respectfully, it would be highly inequitable to charge Travelers and Trataros with knowledge of "highly confidential, proprietary and sensitive" information which movant kept shielded from Fourth-Party Plaintiffs up until the date Allied World filed its motion. Since the purported true party in interest had actual notice of the fourth-party claims, the matters of technical form raised by Allied World do not justify dismissal of the Fourth-Party Complaint's substantive allegations.

The Fourth-Party Complaint should be dismissed only if "it appears beyond doubt that the [fourth-party] plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Bower v. Weisman, 639 F. Supp. 532, 539 (SDNY 1986). At this early stage of the proceedings, a Court's "review of the sufficiency of the complaint is a very limited one." Id. (citing, Scheuer v. Rhodes, 416 U.S. 232, 236 [1974]). The Fourth-Party Complaint "must be read liberally" (Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338, 343 [2d Cir. 2006]); its allegations are accepted as true, and construed in a light most favorable to the pleaders. Bower, 639 F. Supp. at 539. "[D]ismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to failure under any available legal theory." Amron, 464 F.3d at 343 (emphasis added).

As the Second Circuit has recognized, a "complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id.(citations omitted). And see, Bower, 639 F. Supp. at 538 ("The essence of a complaint is to inform the defendant as to the general nature of the action and as to the incident out of which the cause of action arose.") The fundamental command of the Federal Rules of Civil Procedure is "never to exalt form over substance." Amron, 464 F.3d at 343 (emphasis added). Dismissals for "mere technical defects or ambiguities in pleadings" are disfavored. Arfons v. E.I. Du Pont de Nemours & Co., 261 F.2d 434, 435 (2d Cir. 1958). Such technical irregularities are "excusable 'as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party.'" Amron, 464 F.3d at 343 (citations omitted).

Here, Allied World's assertion that the wrong corporate nomenclature is used in the Fourth-Party Complaint is insufficient to justify dismissal. The Fourth-Party Complaint alleges that Allied World was "formerly known as" Commercial Underwriters, and defines the party to

include all successors and/or predecessors in interest. (Rogers Dec., Exh. A, ¶ 11.) Movant attempts to narrow the scope of this allegation, interpreting the relevant language as being only applicable to the corporate entity presently styled as Allied World *per se*. This reading is undermined by the language of the entire paragraph taken as a whole (id.), and is inconsistent with the standards applicable to a Rule 12(b)(6) motion.

Further, since Allied World holds itself out to the public, and in SEC filings, as being Commercial Underwriters' successor, under equitable principles it should not be permitted to contest successor liability. (Rogers Dec., ¶¶ 8-12 and Exhs. C, E & F thereto.) Even assuming *arguendo* that movant's characterization of its corporate transactions is accurate, a fourth-party plaintiff cannot reasonably be expected to unearth the details of a party's "confidential" corporate transactions when no depositions have been conducted, and the party refuses to cooperate with requests for supporting documents. (Id., ¶¶ 14-15.) This is particularly so when the public records available suggest that Allied World is indeed a successor to Commercial Underwriters. (Id., ¶¶ 8-12 and Exhs. C, E &F.) [4]

Allied World's own papers demonstrate that the purported true party in interest has, and had, actual knowledge of the proceedings before Judge Baer and the Fourth-Party Complaint filed herein. (See, e.g., Goldberg Dec., Exhs. 6, 8 & 9.) NAS personnel submitted affidavits supporting Allied World's motions in both the previous proceedings and the present action. (Id., Exhs. 6 & 8.) These submittals on Allied World's behalf indicate the existence of a continuing relationship between the two entities. Further, Allied World has identified at least one insurance policy issued by Commercial Underwriters potentially responsive to Trataros' and Travelers

---

[4] Allied World's failure to timely disclose the purported terms of Commercial Underwriters' corporate transactions, runs contrary to its duty owed to its policyholder Trataros, to disclose those matters affecting Trataros' rights under the Policies. See, Public Service, 15 Misc. 2d at 968, 182 N.Y.S.2d at 715 (discussing requirement that insurance companies deal with policyholders frankly and fairly), and, Anderson, Stanzler & Masters, Insurance Coverage Litigation § 11.10[C] (discussing carriers' affirmative duty of disclosure owed to policyholders).

claims. (Id., ¶ 3 and Exh. 2.)  Allied World has known this policy to be potentially implicated by the claims at issue herein since the proceedings before Judge Baer. (Id., Exhs. 8-9.)

Plainly, neither Allied World nor NAS are mystified by the Fourth-Party Complaint's allegations.  The moving papers demonstrate awareness of the potential liabilities, and of the Policies from which these potential liabilities arise. (See, e.g., id., Exhs. 2, 8 & 9.)  There can be no claim that the Fourth-Party Complaint fails to deliver "fair notice" as to the nature of the action and the underlying facts. (See, Rogers Dec., Exh. A, ¶¶ 10,23-61,131-147.)  Thus, there is no colorable claim of failure to state a claim; the grounds advanced by movant are merely formalistic non-issues, insufficient to satisfy Rule 12(b)(6).  In light of this, Travelers and Trataros respectfully request that the Court deny Allied World's motion to dismiss.

**B.    Fact Questions Are Not Proper for Resolution Under the 12(b)(6) Standard.**

Allied World's motion should be denied because the proffered grounds for dismissal are particularly fact-intensive, and therefore inappropriate for disposition under the standards applicable to a Rule 12(b)(6) motion.  Motions under Rule 12(b)(6) are intended to evaluate the sufficiency of the challenged pleading only. Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.")  Here, Allied World's motion essentially challenges the wording of the Fourth-Party Complaint's caption and the single paragraph identifying Allied World as a party; however, its underlying assertions regarding successor liability are in the nature of a fact-based affirmative defense.  Thus, the issue of whether Allied World is a successor to Commercial Underwriters is not proper for resolution before discovery can occur on the issue.

In general, fact-intensive analyses are not properly resolved on a motion to dismiss. <u>See</u>, <u>DiBlasio v. Novello</u>, 344 F.3d 292, (2d Cir. 2003) ("[A] disputed issue of fact … is inappropriate to consider in the context of a Rule 12(b)(6) motion.") <u>And</u>, <u>Merck & Co., Inc. v. Mediplan Health Consulting, Inc.</u>, 425 F. Supp. 2d 402, 412 (SDNY 2006) (declining to delve into fact-intensive inquiry on a 12(b)(6) motion, in context of trademark infringement action.) A motion court should not endeavor to make factual findings and legal conclusions without benefit of a full factual record. <u>Merck</u>, 425 F. Supp. 2d at 412. Where the record has not been sufficiently developed with respect to the movant's grounds for dismissal, the plaintiff should be allowed to conduct further discovery on the issue. <u>Ryan, Beck & Co. v. Fakih</u>, 268 F. Supp. 210, 230 (EDNY 2003) (declining to dismiss complaint due to purported absence of successor liability).

Specifically, "[t]he determination of successor liability is fact-specific." <u>Id.</u>, 229. For example, in order to determine whether a "de facto merger" has occurred, or whether an entity is a "mere continuation" of a predecessor,

> courts consider (1) continuity of ownership; (2) cessation of ordinary business by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operation.

<u>Id.</u>, 229-230. These elements indicate the factually intensive nature of the inquiry.

Yet, despite the earlier proceedings before Judge Baer, Travelers and Trataros have not received any documents from Allied World in support of its successor liability defense.[5] To the

---

[5] The one notable exception to this is Allied World's contention that its initial disclosures from the earlier proceedings constitute notice regarding NAS' assumption of the liability for the Policy. (Moving Brief, p. 7, <u>and</u>, Goldberg Dec., Exh. 2.) As discussed in the initial brief point, these initial disclosures merely indicate, <i>inter alia</i>, that potential witnesses and documents may be in NAS' possession, and that NAS is claims administrator for Commercial Underwriters. (Goldberg Dec., Exh. 2, p. 2.) Contrary to movant's implication, the title Claims Administrator does not necessarily imply an assumption of liabilities. <u>See, e.g., Bassett</u>, 2002 WL 2010332 at *2 (Third-party claims administrator was neither insurer nor self-insurer for purposes of N.Y. Insurance Law).

contrary, the movant has alternately ignored Fourth-Party Plaintiffs' requests for documentation, or refused to produce the materials outright. (Rogers Dec., ¶ 14.)  Similarly, the issue of reasonableness of notice under the Policies, raised obliquely by movant in the Goldberg Dec. but not argued in the Moving Brief, is a factually intensive matter that is inappropriate for resolution at this stage of the proceedings. [6]

It is respectfully submitted that, as with movant's purported successor liability defense, the factual record and/or expert disclosures have not been developed sufficiently to permit submittal of proofs regarding the notice issue, particularly as the fourth-party insurance coverage claims are contingent claims dependent on DASNY's and/or TDX's further development of their Flooring Claims and/or their claims relating to other, unspecified purported construction defects. In light of these two issues of fact, Travelers and Trataros respectfully submit that the motion is not appropriate for disposition, and should be denied by the Court.

### C.    Bodi Affidavit and Coverage Letter May Not Be Considered on this Motion.

Two of the exhibits appended to Allied World's moving papers, the Bodi Aff. and a letter dated July 29, 2005 analyzing coverage under the Policies (the "Coverage Letter"), are inappropriate for consideration on a Rule 12(b)(6) motion. (See, Goldberg Dec., Exhs. 6 and 9, respectively.)  On a motion to dismiss for failure to state a claim, it is inappropriate to consider factual allegations contained exclusively in "'affidavits and exhibits submitted by' defendants, or

---

[6]   The Policies' provisions regarding notice to the carrier state that notice of an "occurrence" or suit must be provided "as soon as practicable." (Goldberg Dec., Exh. 2, at "Exhibit A," p. "8 of 13.")  Such requirements are construed as merely requiring that notice be given within a reasonable time under all the circumstances. Security Mutual Ins. Co. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972).  In that light, courts have ruled that "as soon as practicable" does **not** "connote an ironbound requirement that notice be 'immediate' or even 'prompt', relative as even those concepts are." Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y. 2d 12, 19 (1979).  The passage of time alone is not sufficient to make a delay in providing notice unreasonable. Lauritano v. American Fid. Fire Ins. Co., 162 N.Y.S.2d 530, 557, 3 A.D.2d 564, 568 (1st Dep't 1957).  **Reasonableness of notice is "heavily dependent on the factual contexts in which [it] arises...."** Mighty Midgets, 47 N.Y. 2d at 19 (emphasis added). "[T]he phrase 'as soon as practicable' is an elastic one.... [C]ompliance ... [is not] measured simply by how long it was before written notification came forth.  More crucial [is] the reason it took the time it did.... [T]he provision ... call[s] for a determination of what was reasonable." Id.

... contained in legal briefs...." Friedl, 210 F.3d at 83-84 (vacating motion court's order of dismissal due to reliance upon factual contentions contained in movant's supporting declaration).

If a Court wishes to consider material beyond the four corners of the complaint and the several exceptions discussed below, the motion may be converted to a Rule 56 motion for summary judgment. However, conversion is only appropriate when the plaintiff has been "giv[en] ... notice [of the conversion] and an opportunity to conduct necessary discovery and to submit pertinent material." Kramer, 937 F.2d at 773.

Here, the matters set forth in the Bodi Aff. and the Coverage Letter fall outside the scope of the Fourth-Party Complaint's allegations. (Goldberg Dec., Exhs. 6 and 9.) Further, these documents are neither public records, documents incorporated by reference into the Fourth-Party Complaint, nor documents integral to the allegations set forth therein. Brown v. New York City Housing Auth., 2006 WL 137878599, *1 n.1 (SDNY May 17, 2006) (On a 12(b)(6) motion "a court may consider documents attached to the complaint..., incorporated by reference, [or] that are integral to, or explicitly referenced in, the pleading.") (Citation omitted.) Since the Bodi Aff. was first provided to Travelers and Trataros as part of Allied World's moving papers, it cannot be integral to the Fourth-Party Complaint. (Rogers Dec., ¶ 14.)

In light of the foregoing, Travelers and Trataros respectfully submit that neither the Bodi Aff. nor the Coverage Letter are appropriate for consideration on Allied World's Rule 12(b)(6) motion to dismiss. As a result of the equitable preclusion of movant's proffered grounds for dismissal, the inappropriately formalistic bent of Allied World's reading of the Fourth-Party Complaint, the presence of factual matters inappropriate for disposition on a Rule 12(b)(6) motion, and the lack of discovery had on the issues of successor liability and notice, Travelers and Trataros respectfully request that the Court deny Allied World's motion to dismiss.

## CONCLUSION

For the foregoing reasons, and those adduced in the opposing declaration submitted herewith, Travelers and Trataros respectfully request that the Court deny Allied World's Motion to Dismiss in its entirety.

Dated:  Florham Park, New Jersey          Respectfully submitted,
        February 11, 2008                 **DREIFUSS BONACCI & PARKER, LLP**


        By:      _____/S/_____
                 Eli J. Rogers (ER:6564)