# EXHIBIT D

Home | Previous Page



## U.S. Securities and Exchange Commission

## Electronic Filing and the EDGAR System: A Regulatory Overview

**An outline of the SEC's EDGAR rules as applied to filings processed by the Divisions of Corporation Finance and Investment Management**

Updated by:

- Mauri L. Osheroff, Associate Director (Regulatory Policy), Division of Corporation Finance
- Mark W. Green, Senior Special Counsel (Regulatory Policy), Division of Corporation Finance
- Ruth Armfield Sanders, Senior Special Counsel (Legal and Disclosure), Division of Investment Management

October 3, 2006

The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any of its employees. This outline was prepared by members of the staff of the Divisions of Corporation Finance and Investment Management and does not necessarily represent the views of the Commission, the Commissioners, or other members of the staff.

This outline was prepared by employees of the Securities and Exchange Commission as an aid to those who are subject to mandated electronic filing. The outline is available to the public at large and may be reproduced without restriction or charge by any party at any time.

**Electronic Filing and the EDGAR System: A Regulatory Overview**

In early 1993, the Commission began to mandate electronic filings through its Electronic Data Gathering, Analysis, and Retrieval system, EDGAR. This system is intended to benefit electronic filers, enhance the speed and efficiency of SEC processing, and make corporate and financial information available to investors, the financial community and others in a matter of minutes. Electronic dissemination generates more informed investor participation and more informed securities markets.

In 2006, the Commission awarded contracts to:

- Keane Federal Systems, Inc. to modernize and maintain the EDGAR database (the new system will use interactive data technologies such as XBRL (eXtensible Business Reporting Language) and XML (eXtensible Markup Language) to enable filers to tag key facts to

create machine-readable documents from which computers can extract quickly desired data);

- XBRL US, Inc. to complete the writing of XBRL "taxonomies" or computer labels used to tag data so that companies in all industries can file their financial reports in XBRL; and both

- Rivet Software Inc. and Wall Street on Demand to provide interactive investor tools on the Commission's website to enable investors to view and analyze companies' financial statements that are filed in XBRL.

## A. Chronology of EDGAR Releases

The Commission began developing an electronic disclosure system in 1983. By the fall of 1984, a pilot system was opened for volunteers filing with both the Division of Corporation Finance and the Division of Investment Management. On July 15, 1992, the operational EDGAR system was made available to those filers, still on a voluntary basis.

On February 23, 1993, the Commission issued four releases adopting rules, on an interim basis, that required filers to file electronically, by direct transmission, diskette, or magnetic tape, most documents processed by the Divisions of Corporation Finance and Investment Management. The following releases also contained phase-in schedules to bring filers onto the EDGAR system, a process that began on April 26, 1993:

- Release No. 33-6977 (explaining the EDGAR system generally and setting forth rules and procedures that apply to electronic submissions processed by the Division of Corporation Finance and in some cases, to those processed by the Division of Investment Management)

- Release No. IC-19284 (adopting rules specific to electronic submissions made by investment companies under the Investment Company Act of 1940 and institutional investment managers under Section 13(f) of the Exchange Act)

- Release No. 35-25746 (adopting rules specific to electronic submissions made by public utility holding companies and their subsidiaries under the Public Utility Holding Company Act of 1935 which was repealed as of early 2006)

- Release No. 33-6980 (relating to the payment of filing fees, by both paper and electronic filers, to the Commission's lockbox depository at Mellon Bank in Pittsburgh, Pennsylvania, under Rule 3a of the Rules Relating to Informal and Other Procedures).

After completing the phase-in of a statutorily mandated significant test group in December 1993, the Commission refrained from further phase-in of EDGAR filers while the staff evaluated EDGAR's performance during a six-month test period, which ran from January 1, 1994 to June 30, 1994. The evaluation resulted in a positive assessment of the EDGAR system, based on data gathered from within the Commission as well as from the filers and other members of the public. Consequently, the staff

recommended that the Commission proceed with full implementation of mandated electronic filing.

Since that time, the Commission has issued a number of releases updating and making technical and other changes to the EDGAR filing requirements:

- On December 19, 1994, the Commission issued Release No. 33-7122, which made the EDGAR interim rules final and applicable to all domestic registrants and third parties filing with respect to those registrants. Phase-in recommenced on January 30, 1995 and proceeded as set forth in a revised phase-in schedule. The Commission also adopted minor amendments to the electronic filing rules to reflect the staff's experience with the rules since mandated filing began in 1993.

- On July 1, 1997, the Commission adopted a number of minor and technical amendments to its rules governing electronic filing, including the elimination of the transition rules applicable to the phase-in period. See Release No. 33-7427.

- On October 24, 1997, the Commission adopted Rule 14 of Regulation S-T. See Release No. 33-7472 (effective January 1, 1998). This rule provides that the Commission will not accept in paper format filings required to be submitted electronically, absent a hardship exemption.

- On January 12, 1999, the Commission adopted a rule requiring Form 13F reports to be filed in electronic format. See Release No. 34-40934. Filers must submit Forms 13F electronically, unless a hardship exemption is available.

- On April 15, 1999, the Commission adopted a rule requiring Form N-8F and applications for deregistration under Investment Company Act Rule 0-2 to be filed in electronic format. See Release No. IC-23786.

- On May 17, 1999, the Commission issued Release No. 33-7684 adopting new rules and amendments to existing rules and forms in connection with the first stage of EDGAR modernization. On June 28, 1999, the Commission began accepting live filings submitted to EDGAR in HyperText Markup Language (HTML) as well as documents submitted in American Standard Code for Information Interchange (ASCII) format. The Commission gave filers the option of accompanying their required filings with unofficial copies in Portable Document Format (PDF).

- On April 24, 2000, the Commission issued Release No. 33-7855 adopting amendments to existing rules and forms to reflect changes in filing requirements resulting from the implementation of the next stage of EDGAR modernization. The rules provided for use of the Internet as a means of filing, acceptance of HTML documents with graphic and image files, and expanded use of hyperlinks. These features became available on the system on May 30, 2000. The release also eliminated the Financial Data Schedule requirement, effective January 1, 2001, and removed diskettes as an available means of transmitting filings to the EDGAR system, effective July 10, 2000.

- On May 14, 2002, the Commission issued Release No. 33-8099 adopting rules requiring foreign issuers to make their Commission filings via EDGAR. The rules also eliminate the requirement that any first-time EDGAR filer, domestic or foreign, submit a paper copy of its electronic filing to the Commission. The rules became effective November 4, 2002, except that the rules eliminating the paper filing requirement were effective on May 24, 2002.

- On May 7, 2003, the Commission issued Release No. 33-8230 adopting rules requiring the electronic filing of beneficial ownership reports on Forms 3, 4 and 5 filed by officers, directors and principal security holders (insiders) under Section 16(a) of the Exchange Act, and requiring issuers with corporate websites to post these reports. The release also removed magnetic cartridges as an available means of transmitting filings to the EDGAR system. The changes became effective June 30, 2003.

- On April 21, 2004, the Commission issued Release No. 33-8410 adopting rule and form amendments requiring the electronic filing of applications on Form ID for access codes to file on EDGAR. The changes became effective April 26, 2004.

- On February 3, 2005, the Commission issued Release No. 33-8529 adopting rule amendments to enable registrants to participate in its interactive data initiative by submitting voluntarily supplemental tagged financial information using the XBRL format as exhibits to specified EDGAR filings under the Exchange Act and the Investment Company Act. Registrants choosing to participate in the voluntary program also continue to file their financial information in HTML or ASCII format, as currently required. The changes became effective March 16, 2005.

- On July 18, 2005, the Commission issued Release No. 33-8590 adopting rule amendments that require certain open-end management investment companies and insurance company separate accounts to identify in their EDGAR submissions information relating to their series and classes (or contracts, in the case of separate accounts). These provisions became effective February 6, 2006. The amendments also made filings under Section 17(g) of the Investment Company Act and sales literature filed by non-NASD members with the Commission under Section 24(b) mandatory electronic filings effective June 12, 2006. The amendments also made several minor and technical amendments, that became effective September 19, 2005.

## B. EDGAR Rules

Most of the EDGAR rules apply to all electronic filers, whether the filings are processed by the Division of Corporation Finance or the Division of Investment Management. The most significant differences in the rules applicable to filings made with respect to investment companies and institutional investment managers relate to the treatment of exhibits and annual reports to security holders. The following discussion addresses the rules as applicable to all filers; where applicable, differences in treatment are noted.

### 1. Regulation S-T and EDGAR Filer Manual

The cornerstone of the EDGAR rules is Regulation S-T, a separate regulation containing rules prescribing requirements for filing electronically and the procedures for making such filings. Regulation S-T supersedes a number of the procedural requirements set forth in the Commission's rules and forms, for example, requirements relating to paper size and number of copies. The Commission amended its rules and forms as necessary to make references to specific electronic filing provisions. Electronic filers that obtain an exemption from the electronic filing provisions of Regulation S-T continue to file in paper in accordance with the paper filing requirements. In addition, as discussed below, the rules permit or require certain filings to be submitted in paper.

Instructions for electronic filing, including technical formatting requirements, are set forth in the EDGAR Filer Manual. See Rule 301 of Regulation S-T. The EDGAR Filer Manual and EDGARLink are available on the EDGAR Database section of the SEC's website at http://www.sec.gov/info/edgar.shtml.

#### a. Filing Medium and Filing Format

The EDGAR system accepts electronic submissions by direct transmission via the Internet, dial-up lines or leased lines. Most filers currently make EDGAR submissions via the Internet by linking to the EDGARFILING or EDGAR On-Line websites. A few filers use a dial-up modem connection to EDGAR and some EDGAR filing agents have leased lines that connect directly to the EDGAR system.

On May 5, 2003, a new on-line filing system was implemented as the method for insiders to file electronically their Forms 3, 4 and 5. As a result, EDGARLink (the filer assistance software that is provided to filers filing on EDGAR) support is no longer available for these forms. Persons need the same codes as are required to transmit using EDGARLink, however, to file on the new system. Each insider filing a Form 3, 4 or 5 needs a Central Index Key (CIK) and CIK Confirmation Code (CCC) for validation. This is true whether the insider is filing individually or as a joint filer. Each insider needs and should request only one set of codes even if he or she is an insider of more than one issuer. Persons can acquire the codes only by submitting a Form ID. The Commission's website posts frequently asked questions regarding the system at http://www.sec.gov/divisions/corpfin/sec16faq.htm.

On April 26, 2004, a new on-line filing system accessed through the EDGAR Filer Management website was implemented as the method for applicants to file their applications on Form ID for access codes to file on EDGAR. As before the new system began, the Commission assigns the following access codes in response to a Form ID:

- Central Index Key (CIK) — The CIK uniquely identifies each filer, filing agent, and training agent. An applicant cannot change this code. The CIK is a public number.

- CIK Confirmation Code (CCC) — The applicant will use the CCC in the header of the applicant's filings in conjunction with the applicant's CIK

to ensure that the applicant authorized the filing.

- Password (PW) — The PW allows the applicant to log onto the EDGAR system, submit filings, and change the applicant's CCC.

- Password Modification Authorization Code (PMAC) — The PMAC allows the applicant to change the applicant's password.

In addition, modifications to EDGAR in connection with establishing the new system require not only applicants who file Form ID, but also users who log onto EDGAR for filing for the first time on or after April 26, 2004, to choose a passphrase. A passphrase enables a user to change access codes other than a CIK and remains valid unless and until the user changes it.

### b. Use of HTML

The EDGAR system accepts both ASCII and HTML documents as official filings. The Commission is not now requiring the use of HTML. However, the Commission expects to require HTML for most filings in the future, so it encourages filers to use it and gain experience with this format if they do not have it already. If HTML is used, each EDGAR document may consist of no more than one HTML file.

The EDGAR system imposes certain limitations on HTML documents, as discussed below. Filers may not submit Form N-SAR and Form 13F as HTML documents. These documents have standard formats and tagging designed for presentation in ASCII, and their current format facilitates their downloading and use in other computer applications. However, filers may submit exhibits to Form N-SAR in HTML. See Rule 105 of Regulation S-T.

### c. Use of PDF

In addition to permitting the use of HTML in filings, the Commission permits filers to submit a single unofficial PDF copy of each electronic document other than a Form 3, 4, 5 or ID. See Rule 104 of Regulation S-T. Filers may *not* use PDF documents instead of HTML or ASCII documents to meet filing requirements. Unofficial PDF copies of filings will be disseminated publicly. The unofficial PDF copy is optional, but if a filer submits an unofficial PDF copy of a document, that PDF document must be the same as the official document (the HTML or ASCII document of which it is a copy) in all respects except for the formatting and inclusion of graphics (instead of the narrative and/or tabular description of the graphics). The text of the two documents must be identical. Further, filers may not make a submission consisting solely of PDF documents; filers must include unofficial PDF copies only in submissions containing official documents in HTML or ASCII format.

The substantively equivalent requirement does not apply to non-public correspondence submissions. Filers may submit unofficial PDF copies of correspondence documents that differ from the contents of the associated ASCII or HTML correspondence documents. This enables filers to submit redlined copies of official filings in unofficial PDF copies of EDGAR correspondence documents. If a filer submits an unofficial PDF copy of a correspondence document that differs from the text of the ASCII or HTML document, the text of the ASCII or HTML correspondence document should identify and briefly describe the contents of the unofficial PDF copy.

### d. Use of XBRL

The Commission generally permits registrants that file financial information in ASCII or HTML format to participate in its interactive data initiative by submitting that information voluntarily as supplemental tagged financial information in XBRL format as exhibits to specified EDGAR filings under the Exchange Act and the Investment Company Act. The XBRL submission must contain specified mandatory content (which may be accompanied by specified optional content) and appear in a prescribed format.

In early 2006, the Commission staff began to offer expedited processing of registration statements or annual reports that may be selected for review to companies that volunteer to participate in a new interactive data test group. Participants will furnish financial data contained in their periodic reports in XBRL format for at least one year and provide feedback on their experiences including the costs and benefits associated with reporting in the interactive data format.

Because the voluntary XBRL program is experimental, contains other appropriate safeguards, and should not unnecessarily deter volunteers from participating, the related rules provide limited protections from liability under the federal securities laws.

Also in 2006, the Commission awarded contracts to facilitate filer and investor use on EDGAR of interactive data technologies such as XBRL.

### e. Limitation on Hypertext Links

Filers who choose to use HTML may include hyperlinks between sections of the same HTML document. They also may include hyperlinks to other documents within the same filing (*i.e.*, exhibits) or to other official filings in the EDGAR database on our public website at www.sec.gov. For example, filers may link from within a document to previously filed documents that are incorporated by reference. The EDGAR system permits links to specific filings only, not to specific information within these documents. Links outside the EDGAR database, including links to websites, are prohibited.

Hyperlinks may not be used as a substitute for providing information required in the filed document when incorporation by reference is not available. For example, a Form S-1 for which incorporation by reference is unavailable may contain a hyperlink to the filer's Form 10-K, but the filer still must provide all required business and financial information in the Form S-1.

If incorporation by reference is available, the filer must comply with all related requirements even if the filer chooses to use hyperlinks. For example, a Form S-3 may contain a hyperlink to the previously filed Exchange Act reports incorporated by reference, but the Form S-3 still must make the required statements about which documents are incorporated by reference.

Linking material does not make it part of the official filing for determining compliance with reporting obligations. Such material, however, is subject to the civil liability and anti-fraud provisions of the federal securities laws, whether or not the hyperlink is permitted by the Commission's rules.

Moreover, if a company hyperlinks to a hyperlink, which, in turn, links to another hyperlink, the company will be treated as making all the hyperlinked material its own. Also, if a hyperlinked document is corrected or updated by means of a new filing, the document containing the hyperlink also may have to be amended.

### f. HTML Standard; Permissible Tags

The Commission has adopted a specific HTML standard for HTML documents submitted on the EDGAR system. Because different Internet browsers used by filers or the public may display the information presented in an HTML document in a different fashion, a document viewed through one browser may have a different appearance and layout from the same filing viewed through a different browser. To maximize the likelihood of consistent document appearance across different browsers, and eliminate active content, the rules specify a set of HTML tags permissible in HTML documents. The tag list is included in the EDGAR Filer Manual. In general, the EDGAR system will suspend submissions that contain tags that are not permitted. The EDGAR system will accept a subset of HTML 3.2/4.0 tags.

EDGAR submissions may not contain tags used to include executable code, in official submissions or unofficial submissions of PDF copies or XBRL-related documents (see Rule 106 of Regulation S-T). In addition, filers may not include tables within tables (nested tables) in their HTML documents. This is because users of EDGAR information may find it difficult to locate and use information in documents with nested tables.

### 2. Mandated, Excluded and Permitted Electronic Submissions

Rules 100 and 101 of Regulation S-T require filers, with certain exceptions, to submit electronically all documents, including filings, correspondence, and supplemental information, submitted by or relating to registrants under the Securities Act, the Exchange Act, the Trust Indenture Act, and the Investment Company Act.

Except as noted below, the electronic filing requirement also applies to third party filings, whether the filings are made by business entities or individuals. For example, the following kinds of filings must be made on EDGAR, absent a hardship exemption: proxy materials (whether or not filed by the company), tender offer materials, Forms 13F, and Schedules 13D/G. Effective June 30, 2003, filers are required to submit their Forms 3, 4 and 5 electronically. See Release No. 33-8230 (May 7, 2003). Before then, electronic filing of these forms was optional.

The Commission will not accept in paper format filings required to be submitted electronically, absent a hardship exemption. (See Rule 14 of Regulation S-T.) If the staff inadvertently accepts a paper filing not permitted by the EDGAR rules, the filer is subject to certain penalties: ineligibility to use Securities Act forms incorporating by reference Exchange Act reports; inability to incorporate the paper filing by reference (Rule 303 of Regulation S-T); and tolling of certain tender offer dates.

Some documents may not be filed on EDGAR. Among the documents that are excluded are: confidential treatment applications; interpretive, no-action and exemptive requests; filings pertaining to Regulation A and most

other offerings exempt from Securities Act registration; shareholder proposal filings; and filings under Section 8(f) of the Investment Company Act (except Forms N-8F and applications for deregistration filed under Investment Company Act Rule 0-2).

Electronic filers should exercise special care when submitting documents or parts of documents that are the subject of a confidential treatment request, including preliminary proxy materials relating to business combinations to which the Commission may give confidential treatment if marked appropriately for such treatment under the proxy rules. Filers must submit these documents in paper or they will become available to the public immediately upon acceptance.

The Commission permits, but does not require, Corporation Finance filers to submit several types of documents electronically. Examples include: the "glossy" annual report to security holders furnished to the Commission for its information under the proxy rules (see no. 9, below, for the treatment of an annual report to security holders that is a part of a filing); the Notice of Exempt Solicitation, the submission that indicates reliance by certain security holders on the Exchange Act Rule 14a-2(b) exemption from proxy material filing requirements under the revised proxy rules; and Form 11-K, the report for employee benefit plans. Another example is Form 144, the notice of proposed sale of securities under Rule 144 under the Securities Act. See Release No. 33-7241 (November 13, 1995). Filers may submit Forms 144 electronically only if the issuer of the securities is a public company. The Commission has solicited comment on the concept of requiring more filings to be made electronically, such as Form 144 and exemptive application filings made by investment companies. See Release No. 33-7855 (April 24, 2000).

Effective April 26, 2004, filers are required to submit their Forms ID electronically. See Release No. 33-8410 (April 21, 2004). Before then, filers were required to submit Forms ID in paper.

Investment companies must file their Forms N-8F (and applications for deregistration under Investment Company Act Rule 0-2) electronically. See Release No. IC-23786 (April 15, 1999).

Effective February 6, 2006, filers who filed their latest registration statements or amendments on Form N-1A, N-3, N-4 or N-6 (S/C Funds) must, for EDGAR submissions specified in the EDGAR Filer Manual, include in the EDGAR template for the specified submissions all series and/or class (or contract) identifiers of each series and/or class (or contract) on behalf of which the filing is made. For new series and/or classes (contracts), filers must enter the respective names in the EDGAR submission template of the filing by which they are substantively added to generate the associated identifiers, which will appear on the acceptance message for the filing.

S/C Funds must use the series and class page on the EDGARFILING website ( https://www.edgarfiling.sec.gov/) to update information for their series and classes (contracts) and to add ticker symbols. Effective February 6, 2006:

- Filings that require series and class (contract) identifiers will be suspended if they do not include identifiers or do not include the

correct identifiers for that registrant (CIK); and

- Series and class (contract) identifiers are part of the official filing: a filing made under an incorrect identifier is a filing for the wrong series and/or class (contract), *i.e.*, it is a filing on behalf of the series and/or class (contract) for which an identifier is used and a filing for which an identifier is not included is not a filing for the series and class (contract) for which an identifier is omitted.

S/C Funds are required by Rule 313 of Regulation S-T to keep current their information concerning their existing and new series and/or classes (or contracts, in the case of separate accounts), including series and/or class (or contract) name and ticker symbol, if any; if a class (or contract) does not have but later obtains a ticker symbol, the company must update the information for the class (or contract) to add the ticker symbol.

S/C Funds are also required by Rule 313 to mark as inactive for EDGAR purposes any series and/or class (or contract, in the case of separate accounts) that are no longer offered, go out of existence, or deregister after the last filing for that series and/or class (or contract, in the case of separate accounts) is made, but the registrant must not mark as inactive the last remaining series unless the registrant deregisters.

Effective June 12, 2006, investment companies must submit electronically fidelity bonds under Section 17(g) and sales literature filed with the Commission under Section 24(b). See Release No. 33-8590 (July 18, 2005). Filers should be aware that Rule 304(e) prohibits filers from using graphic or image material to submit information, such as text or tables, that users must be able to search and/or download into spreadsheet form (for example, financial statements). Instead, filers must submit such information as text in an ASCII document, or as text or an HTML table in an HTML document. See Section 8 below.

### 3. Hours of Operation/Date of Filing

Rule 12 of Regulation S-T provides that electronic filings may be submitted by direct transmission via the Internet, dial-up lines or leased lines to the Commission each business day from 8:00 a.m. to 10:00 p.m. Eastern time. Currently, however, filings may be submitted electronically as early as 6 a.m. Rule 13(a) of Regulation S-T provides that any direct transmission filing that commences after 5:30 p.m. will be dated the following business day. The exceptions to this rule are that registration statements filed to increase the number of shares, as provided by Securities Act Rule 462(b), and, effective June 30, 2003, Forms 3, 4 and 5, receive the same day's filing date if transmitted by 10:00 p.m. See Rule 13(a) of Regulation S-T and Release Nos. 33-7168 (May 11, 1995) and 33-8230 (May 7, 2003), respectively. Any direct transmission filing commencing before 5:30 p.m., if accepted, will receive that day's filing date.

### 4. Exhibits

Rule 102 of Regulation S-T provides that filers are not required to refile in electronic format exhibits previously filed in paper when incorporated by reference into an electronic filing. After becoming subject to mandated electronic filing, a filer must file any new exhibits electronically, absent a

hardship exemption. Where an electronic amendment is filed to an exhibit previously filed in paper, the filer must submit electronically only the amendment; the filer will not have to refile electronically the previously filed paper exhibit to which the amendment relates, except for the articles of incorporation, by-laws, and investment advisory contract of the registrant, which must be restated in their entirety upon amendment.

The rules for investment companies differ. In general, filers must submit all investment company exhibits, including exhibits to Form N-SAR, electronically. In addition, investment companies may incorporate by reference only to documents filed electronically. See Rule 102(e) of Regulation S-T.

### 5. Hardship Exemptions/Adjustment of the Filing Date

Two hardship exemptions are available to permit a filing or other submission to be made in paper rather than electronic format. First, Rule 201 of Regulation S-T provides a temporary hardship exemption for electronic filers, generally for unanticipated technical difficulties in submitting an electronic document. The exemption may be appropriate, for example, for a particular document that a filer is unable to file electronically because of problems with the filer's computer equipment that had been used previously to transmit either test or required electronic filings successfully. Under that exemption, the filer may make the filing in paper (with a legend on the cover page identifying it as being submitted under Rule 201) and then follow it with a confirming electronic copy within six business days so that the electronic database will be complete. An electronic filer may take advantage of the exemption simply by filing the subject document in paper under cover of Form TH, Notification of Reliance on Temporary Hardship Exemption. No Commission staff involvement is required. If the filing is an exhibit only, then filers must submit the documents under cover of both Form TH and Form SE. The sanctions for violating electronic filing requirements mentioned above also apply where a filer is required to submit a confirming electronic copy of a document filed in paper under a temporary hardship exemption but fails to do so. A temporary hardship exemption is not available for Forms 3, 4, 5 or ID.

Second, under Rule 202 of Regulation S-T, a continuing hardship exemption is available to electronic filers under limited circumstances for exhibits or a filing or group of filings. For example, this exemption might be appropriate for an exhibit consisting of another government agency's voluminous form that a filer cannot convert into electronic format without causing the filer undue hardship. Unlike the temporary hardship exemption, the staff must act upon a written application for a continuing hardship exemption. If the staff grants the exemption, the filer may make the submission in paper. A continuing hardship exemption is not available for Forms ID.

In most cases, a filer need not follow up a paper filing under a continuing hardship exemption with an electronic copy. However, under some circumstances, the staff believes that it would be in the public interest for the electronic database to contain the document in question. Rule 202(d) allows the grant of a continuing hardship exemption for a limited time only. When the time is up, the filer must submit a confirming electronic copy.

A paper filing submitted under a continuing hardship exemption must

include a legend on the cover page of the document identifying it as being submitted in paper under Rule 202 of Regulation S-T. If the filing is an exhibit only, then filers must submit the document under both Form TH and Form SE. Corporation Finance filers should direct inquiries concerning continuing hardship exemptions to the Office of EDGAR and Information Analysis in the Division of Corporation Finance at (202) 551-3610. Investment company filers should direct their inquiries to the EDGAR contact in the Division of Investment Management at (202) 551-6989.

In addition to the two hardship exemptions, Rule 13 of Regulation S-T permits an electronic filer to request an adjustment of the filing date of an electronic document when the filer encounters technical problems beyond its control that prevent electronic submission by the due date specified by the applicable form or rule. Filers should direct requests for filing date adjustments to the contacts listed in the previous paragraph.

### 6. Signatures

Rule 302 of Regulation S-T provides that required signatures in electronic filings must be submitted in typed form. Required signatures must be typed to ensure legibility of these signatures. Electronic filers must retain a manually signed signature page or other document authenticating, acknowledging or otherwise adopting the signatures that appear in typed form within an electronic filing. Filers must make this document available to the Commission or its staff upon request for a period of five years. Each signatory to the filing must execute the manually signed authentication document before or at the time the filing is made.

Signatures in HTML documents that are not required by statute or regulation may appear as script. The same is true of signatures in unofficial PDF copies, which are not required signatures.

Following a recommendation of the Task Force on Disclosure Simplification, in May 1996 the Commission changed its rules governing signatures to allow typed signatures on all filed documents, with limited exceptions, both paper and electronic. Manually signed signature authentication documents are required whenever typed signatures are filed with the Commission.

### 7. Safe Harbor

Rule 103 of Regulation S-T provides a safe harbor against liability for errors in, or omissions from, documents filed electronically that result solely from electronic transmission errors beyond the control of the electronic filer. The safe harbor is available where the electronic filer takes corrective action as soon as reasonably practicable after becoming aware of the error or omission.

### 8. Graphic, Image, Audio, and Video Material

EDGAR does not accommodate electronic submission of graphic, image, audio, or video material in ASCII filings. EDGAR does, however, accommodate graphic and image material, but not audio or video material, in HTML documents. Rule 304 of Regulation S-T governs the treatment of graphic, image, audio, and video information that is used in the version of the document disseminated to investors but omitted from the electronic

filing. This rule requires that fair and accurate descriptions or transcripts of omitted material be included either at the point in the text where the omission occurs or in an appendix to the electronic filing. A note to Rule 304(a) provides that, if the omitted material includes data, filers must include a tabular representation or other appropriate representation of that data in the electronically filed version of the document. Rule 304 applies only to official filings, not to unofficial PDF copies, which may contain graphic and image material (but not animated graphics, audio or video material).

The graphic, image, audio, and video material in the version of the document distributed to investors is deemed part of the filing and is subject to the liability and antifraud provisions of the federal securities laws. Filers do not need to describe immaterial differences between the distributed and electronically filed versions of a document, such as type size or font, pagination or corporate logos. A safe harbor provides that, to the extent such descriptions or transcripts represent a good faith effort to fairly and accurately describe omitted material, they will not be subject to the civil liability and antifraud provisions of the federal securities laws.

The filer must retain any document containing graphic, image, audio, or video material that is omitted from an electronic filing for five years after the filing date of the document or the date appearing on the document, whichever is later. Filers must make such documents available to the Commission staff upon request.

Rule 304(d) of Regulation S-T gives special treatment to the performance line graph required by Regulation S-K (Release No. 33-8732A, August 29, 2006) moves the performance line graph requirement from Item 402(l) to Item 201(e) of Regulation S-K) and the line graph required by Item 22(b)(7)(ii) of Form N-1A for investment companies. ASCII filers must present the numerical data from which these graphs are created in the body of the electronic document in tabular or chart form. Of course, the paper version of the document disseminated to security holders must include the prescribed line graph. See Release No. 33-7427 (July 1, 1997).

Although the EDGAR system *permits* graphic or image material in HTML documents, filers are not *required* to submit graphics in HTML documents, except in the limited instances when our rules require graphics. Under Rule 304(e), filers submitting HTML documents must use graphics for the performance graph required by Regulation S-K (Release No. 33-8732A (August 29, 2006) moves the performance line graph requirement from Item 402(l) to Item 201(e) of Regulation S-K) and the line graph required by Item 22(b)(7)(ii) of Form N-1A.

Rule 304(e) prohibits filers from using graphic or image material to submit information, such as text or tables, that users must be able to search and/or download into spreadsheet form (for example, financial statements). Instead, filers must submit such information as text in an ASCII document, or as text or an HTML table in an HTML document.

The EDGAR system does not support animated graphics (*e.g.*, files with moving corporate logos or other animation), either in any official document or any unofficial PDF copy or XBRL-related document.

Please note that filers should not place non-public information in graphic files associated with non-public documents within a public submission, since these graphic files are disseminated, even if the associated HTML or unofficial PDF document is non-public and not disseminated.

> 9. Annual Reports to Security Holders and Certain Proxy Materials

The treatment of annual reports differs for Corporation Finance and investment company filers.

Annual reports to security holders ("glossy" reports) for Corporation Finance filers frequently contain extensive graphic information that is difficult to prepare in electronic format. Accordingly, the rules provide special treatment for these documents. As discussed above, Rule 101 of Regulation S-T provides that filers may furnish glossy reports for the Commission's information as required by the proxy and information statement rules (*e.g.*, Exchange Act Rule 14a-3(c)) in either paper or electronic format. In contrast, Rule 303 of Regulation S-T states that if the glossy report is incorporated by reference into any filing — for example, a Form 10-K — filers must file the portions incorporated by reference in electronic format as an exhibit. The same is true for a quarterly report to security holders incorporated by reference into a filing.

Investment company filers are required to file all annual and semi-annual reports to security holders electronically.

Form 10-K and Form 10-KSB both require issuers reporting under Section 15(d) of the Exchange Act to furnish to the Commission for its information any annual report to security holders covering the registrant's last fiscal year and every proxy statement, form of proxy or other proxy soliciting material sent to more than ten of the registrant's security holders with respect to any annual or other meeting of security holders. When these issuers submit this information with their Exchange Act annual reports, it is not deemed filed with the Commission unless it is incorporated by reference into the report itself. Filers should submit these proxy materials electronically. Consistent with the requirements to furnish annual reports to security holders under the proxy rules, registrants have the option to submit their annual report to security holders under these annual reporting provisions either in paper or in electronic format.

> 10. Schedules 13D and 13G

As noted above, Rules 100 and 101 of Regulation S-T require third party filers to transmit their Schedules 13D and 13G via EDGAR. In addition, Rule 101 of Regulation S-T provides that, where these schedules originally were filed in paper, the first electronic amendment must restate the entire text of the schedule, as amended. Where the amendment is made to report a transaction that would allow the filer to exit the reporting system, the filer need only file the amendment. Consistent with the general treatment of exhibits filed electronically, if any exhibit to a Schedule 13D or 13G is amended, the filer need only file the text of the amendment.

Filers filing Schedules 13D and 13G with respect to foreign private issuers should include in the EDGAR submission header all zeroes (*i.e.*, 00-0000000) for the IRS tax identification number. See the note to paragraph

(a)(1)(iii) of Rule 101 of Regulation S-T.

### 11. Foreign Issuers

On May 14, 2002, the Commission issued Release No. 33-8099 to require foreign private issuers and foreign governments to make their filings via EDGAR. The rules became effective on November 4, 2002. The rules require the electronic filing of:

- Foreign private issuers' Securities Act registration statements and Exchange Act registration statements and reports;

- Foreign governments' Securities Act registration statements and Exchange Act registration statements and reports;

- Multijurisdictional Disclosure System (MJDS) forms filed by Canadian issuers;

- Statements of beneficial ownership on Schedules 13D and 13G and tender offer schedules that pertain to the securities of a foreign issuer, whether filed by a foreign or domestic person;

- Form CB, the form used for cross-border rights offers, exchange offers and business combinations that are exempt from the tender offer rules or Securities Act registration, if the filer is an Exchange Act reporting company;

- Form 6-K reports, except as noted below; and

- Most Trust Indenture Act forms.

The amendments also:

- Permit, but do not require, the electronic filing of Forms 6-K used to submit a company's "glossy" annual report to security holders, or used to provide information that has not been furnished to the press or the company's security holders and does not contain new material information;

- Generally require all filings to be in the English language, but permit specified information in foreign language exhibits to be summarized in English instead of fully translated, and provide guidance regarding what constitutes an adequate summary;

- Permit, but do not require, supranational entities such as the World Bank to file their reports electronically; and

- Continue to require documents submitted under Exchange Act Rule 12g3-2(b) to be in paper only.

### 12. Modular Submissions/Segmented Filings

The EDGAR system and Rule 501 of Regulation S-T are designed to facilitate electronic filing by allowing filers to submit in advance of an intended filing information intended to become part of that filed document

by its subsequent inclusion in the electronic filing. A modular submission feature allows a filer to submit information, such as financial statements, to a non-public EDGAR database for inclusion in as many filings as the filer designates, so long as the information remains current.

A similar feature is segmented filing, in which a filer may submit various segments of a document to be filed with the Commission to the EDGAR non-public data storage area up to six business days in advance of the anticipated filing date. For example, filers may submit voluminous exhibits in advance of a filing. On the anticipated filing date, the electronic filer may submit a master segment instructing EDGAR to assemble the desired filing from the previously submitted segments and file it. Filers may use segments only once.

Regulation S-T provides that neither modular submissions nor segments will be deemed "filed" or subject to liability under the federal securities laws until the filer includes the information in an electronic filing.

### 13. EDGAR Forms

There are three forms used in connection with EDGAR filings. (A fourth, Form ET, was rescinded effective June 30, 2003.)

- Form ID is used to request access codes to file on EDGAR. Effective April 26, 2004, this form must be filed electronically through a new on-line system accessed through the EDGAR Filer Management website. For verification purposes, the requestor also must file in paper by fax within two business days before or after filing Form ID a notarized document, manually signed by the requestor over its typed signature, that includes the information contained in the Form ID filed or to be filed and confirms the authenticity of the Form ID.

- Electronic filers must use Form SE as a paper cover sheet attached to any paper format exhibit, including exhibits filed under a temporary or continuing hardship exemption.

- Filers use Form TH as a paper cover sheet accompanying documents filed in paper under a temporary hardship exemption, as described in Section 5 above. If the subject of a temporary hardship exemption is an exhibit only, a filer must file the exhibit and the Form TH under cover of Form SE. (See Release No. 33-8590 (July 18, 2005).)

### 14. Filing Fees; Lockbox

Rule 3a of the Commission's rules governing Informal and Other Procedures requires all electronic filers to pay filing fees via the lockbox at the U.S. Treasury designated lockbox depository maintained by the Commission at the Mellon Bank in Pittsburgh, Pennsylvania. Filers may pay by direct wire transfer or by mailing or delivering a check or cash to the lockbox. Rule 13(c) of Regulation S-T requires electronic filers to pay filing fees in accordance with the lockbox procedures, including those pertaining to documents filed in paper under a hardship exemption. Thus, persons subject to electronic filing must tender all fees to the lockbox at Mellon Bank — not to the Commission's filing desk — even when physically filing a paper document at the Commission's filing desk.

The Commission will deem a Securities Act registration statement (including a Securities Act filing by an investment company) filed as of its date of receipt, provided that all of the conditions of acceptance are satisfied, including verification of any fee payment required. If payment is not confirmed until the day following receipt by the Commission, the Commission will assign the filing a filing date as of the date of confirmation of payment, not the date of receipt. For information relating to fee confirmation with respect to registration statements filed for the purpose of increasing the number of shares, as provided under Securities Act Rule 462 (b), see Release No. 33-7168 (May 11, 1995). If the Commission staff cannot verify payment, EDGAR will place the filing in a suspense file for up to six business days, and the staff will so notify the filer. Since EDGAR verifies fee payments made via wire transfer on a near real-time basis (every 15 minutes), while it verifies those made by check on a daily basis, a filer may wish to pay fees with respect to a time-sensitive Securities Act registration statement by wire transfer to expedite acceptance processing.

Filers should direct questions concerning fee payment to Filer Support at (202) 551-8900.

## 15. Other Electronic Document Issues

The EDGAR rules apply only to filings made with the Commission; the rules do not affect the obligation of filers to deliver to security holders or potential investors documents such as prospectuses, tender offer materials and proxy or information statements. As the ability to send and receive information in electronic form has become more prevalent, issuers and other market participants have requested interpretive guidance regarding the electronic delivery of these documents. Currently, many issuers provide information through electronic means, primarily through the Internet.

- On October 6, 1995, the Commission issued an interpretive release (1995 Interpretive Release) more fully addressing electronic delivery issues. See Release No. 33-7233. The 1995 Interpretive Release is based on the determination that information distributed through electronic means may be viewed as satisfying the delivery or transmission requirements of the federal securities laws if such distribution results in the delivery to the intended recipients of substantially equivalent information as these recipients would have had if the information were delivered to them in paper form. The use of electronic media should be at least an equal alternative to the use of paper delivery. However, until such time as electronic media becomes more universally accessible and accepted, paper delivery of information will continue to be available. The release provides guidance regarding the manner in which filers may achieve electronic delivery and includes many illustrative examples.

- To facilitate electronic delivery, the Commission adopted rule changes to codify some of the interpretations regarding Commission rules that are premised on the distribution of paper documents. See Release No. 33-7289 (May 9, 1996). The Commission has revised the rules to make it clear that filers may modify paper-based requirements relating to font size, bold-face type, red ink, graphics, and mailing as appropriate for documents delivered in electronic format. These rule changes are not intended to affect any substantive requirement. On the same date, the Commission issued an interpretive release

primarily addressing issues relating to the use of electronic media by broker-dealers, transfer agents and investment advisers for delivery of information, but also expanding on some issues addressed in the 1995 Interpretive Release. See Release No. 33-7288 (May 9, 1996).

- The Commission also issued an interpretive release relating to the use of Internet websites to offer securities, solicit securities transactions, or advertise investment services offshore. See Release No. 33-7516 (March 23, 1998).

- On April 28, 2000, the Commission issued an interpretive release (2000 Interpretive Release) addressing the use of electronic media in three areas. See Release No. 33-7856. First, the Commission updated the 1995 Interpretive Release. Second, the Commission discussed an issuer's liability for website content. Third, the Commission outlined basic legal principles that issuers and market intermediaries should consider in conducting online offerings.

- To facilitate electronic delivery, the 2000 Interpretive Release clarifies the following: investors may consent to electronic delivery telephonically; intermediaries may request consent to electronic delivery on a "global," multiple-issuer basis; and issuers and intermediaries may deliver documents in portable document format, or PDF, with appropriate measures to assure that investors can easily access the documents. It also clarifies that an embedded hyperlink within a Section 10 prospectus or any other document required to be filed or delivered under the federal securities laws causes the hyperlinked information to be part of the document. (The Commission issued a further clarification that this view does not extend to a mutual fund's responsibility for hyperlinks to third-party websites from fund advertisements or sales literature. See Release No. 33-7877 (July 27, 2000).) The 2000 Interpretive Release also clarifies that the close proximity of information on a website to a Section 10 prospectus does not, by itself, make that information an "offer to sell," "offer for sale" or "offer" within the meaning of Section 2(a)(3) of the Securities Act.

- The 2000 Interpretive Release clarifies some of the facts and circumstances that may result in an issuer having adopted information on a third-party website to which the issuer has established a hyperlink for purposes of the antifraud provisions of the federal securities laws. Also, it clarifies the general legal principles that govern permissible website communications by issuers when in registration.

- To facilitate online offerings, the 2000 Interpretive Release clarifies the general legal principles that broker-dealers should consider when developing and implementing procedures for online public offerings. Also, it clarifies the circumstances under which a third-party service provider may establish a website to facilitate online private offerings.

- On July 19, 2005, the Commission issued a release adopting amendments to facilitate the securities offering process. The release generally reaffirms the 2000 Interpretive Release regarding information on an issuer's website and provides further related guidance. See Release No. 33-8591 at Part III.D.3.b.iii.(E).

## C. Common Filing Concerns for EDGAR Filers

Since the adoption of the interim rules in February 1993, the Commission staff has been working with electronic filers to help them satisfy their electronic filing obligations. The following is a list of staff suggestions to help electronic filers avoid some of the more common errors associated with electronic filing. Filers should direct technical questions relating to filing on EDGAR to EDGAR Filer Support at (202) 551-8900.

- The registrant, not the filing agent or data transcriber, is responsible for complying with the electronic filing rules. Registrants are responsible for ensuring that correct information is given to and submitted by the filing agent. Registrants making EDGAR submissions "in-house" should not assign this responsibility to the least experienced person.

- Filers should review documents in electronic format and error check using EDGARLink before transmitting documents for filing. For example, filers should check to make sure that they have specified the correct EDGAR submission type (including a "/A" where it is needed to designate an amendment); that they have included all documents within the submission; and that each document is complete.

- Use the correct CIK. A submission under an incorrect CIK is a submission for the wrong registrant. The filer will have to resubmit for the correct registrant. Some filings require additional steps. Do not assume that incorrect submissions will be deleted.

- Use the correct file numbers in submissions, when required.

- Allow sufficient time to submit filings. Filers should not wait until the last minute to make a time-sensitive filing. Adjustments to filing dates of "late" filings are granted only for the circumstances set forth in Rule 13(b) of Regulation S-T.

- Use the correct EDGAR submission type. The staff, upon written request from the registrant, can correct some, but not all, erroneous submission types. Sometimes the registrant must formally withdraw and re-submit the filing. All requests for changes of submission types must be from the filer.

- Follow the procedures of Rule 3a of the Commission's Informal and Other Procedures in making fee payments. Filers must pay filing fees in connection with Securities Act registration statements to the lockbox before or at the time the filing is made except to the extent they are eligible to defer payment and do so in compliance with Rule 456(b) under the Securities Act as the rule was revised effective December 1, 2005. See Release No. 33-8591 (July 19, 2005). Filers should allow time for wire transfers before filing. EDGAR will not accept filings requiring fees until the fee payment is received. Include the correct CIK when making check or wire payment.

- Take care not to designate submissions incorrectly as TEST and CONFIRMING-COPY; submissions with these designations are not official Commission filings.

- Make sure the submission contains the text of the correct document (and not an earlier draft or different document).

- Filers have an obligation to confirm the status of their filings after transmitting them to the Commission. The staff may grant filing date adjustments under Rule 13(b) of Regulation S-T as warranted, for Exchange Act reports, but generally will not adjust a filing date over an extended period of time. It is not staff policy to grant filing date adjustments for Securities Act registration statements or other transactional filings, since shareholder rights may be affected.

- Carefully read the message sent by EDGAR in response to each submission. If a filer uses an Internet address for notification, the filer should carefully read all filing acceptance and suspension notices. If a message doesn't include a FILING DATE, then an official filing has not been made.

- Do not file material intended for confidential treatment on EDGAR. All material submitted via EDGAR is made public, except that cover letters and correspondence are non-public to the extent described immediately below.

- Submit all correspondence related to an electronic filing via EDGAR, and include a cover letter with submissions of public filings whenever appropriate. Cover letters submitted under document type "COVER" and correspondence submitted under document type "CORRESP" are treated initially as non-public and are not immediately disseminated. The staff may release all or parts of these documents electronically if they relate to the staff's review process not less than 45 days after the staff completes a filing review. See Press Release 2005-72, "SEC Staff to Begin Publicly Releasing Comment Letters and Responses."

- Letterheads on cover letters and correspondence will not appear in EDGAR documents unless typed.

- Please label exhibits as indicated in Appendix C of the EDGAR Filer Manual.

- Make sure all co-registrants are identified in the submission. Each co-registrant needs its own CIK and CCC.

Investment Companies:

- A new registered investment company *must* submit its "N-8A" *before* its initial registration statement. This submission assigns the registrant's Investment Company Act (811-) reporting file number, which the EDGAR system "looks up" in subsequent submissions. (A business development company must file its N-6F or N-54A first and is assigned an "814-" reporting number, since it is not registered under the Investment Company Act and does not make its filings under the Investment Company Act.)

- Registrants under the Investment Company Act must submit their filings under only one Investment Company Act file number (811-) and under one CIK. (Registrants may have multiple Securities Act file

numbers under a single CIK.) Any Investment Company Act registrant having more than one Investment Company Act file number or more than one CIK should contact the IM EDGAR Inquiry Line at 202-551-6989 for assistance.

- Where appropriate, designate the correct ACT value(s). For a filing under both the Securities Act and the Investment Company Act, designate "33 40." Failure to make the required designation may result in a submission under only one Act and the need to re-submit the filing under the other Act.

- Usually, the file number required in an investment company submission will NOT be the Investment Company Act number (811-) but the Securities Act number or some other specialized number. The following submissions require the Securities Act number (either 2-, 33-, or 333-): "485APOS," "485BPOS," "485BXT," "24F-2NT," and "N-14/A." An "N-14/A" (a pre-effective amendment to Form N-14) always requires the Securities Act file number assigned to the initial Form N-14 filed for the particular offering in question.

- Fee-bearing filings must be made using an EDGAR submission type that allows for inclusion of a fee in the template. For example, the filing by a closed-end fund of a registration statement to register new securities under paragraph (a) or (b) of Rule 486 of the Securities Act must be filed using EDGAR submission type N-2.

- Fee payment is particularly critical for "24F-2NT" submissions, which cannot be accepted until fee payment is made.

- Fidelity bond filings, EDGAR submission type "40-17G," are now mandatory electronic filings. ASCII and HTML are the only acceptable formats for official filings.

  o All information should go in the primary EDGAR document named "40-17G," i.e., not in exhibit documents.

  o If the document is an HTML document, it may not consist entirely of graphics. That means that the information that comprises the substance of the filing, such as text and numbers that are of the kind normally searchable, may not be presented as graphics. Rule 304(e) of Regulation S-T prohibits filers from using graphic or image material to submit information, such as text or tables, that users must be able to search and/or download into spreadsheet form (for example, financial statements). Instead, filers must submit such information as text in an ASCII document, or as text or an HTML table in an HTML document.

  o The filer may attach an optional "unofficial" PDF copy of the filing if it wishes. See Rule 104 of Regulation S-T.

  o If a filer uses graphics incorrectly in contravention of the rule, the filer needs to file an amendment in compliance with the rule.

- The 40-17F1, 40-17F1/A, 40-17F2, 40-17F2/A, N-27D-1, and N-27D-

1/A submission types now display the following subject company fields: CIK, IRS Number, File Number (when applicable), and Company Name. These changes were made to allow either the investment company or the accountant preparing the filing to make the submission. The "Subject" company will always be the investment company, whether the filing is submitted by the investment company or the accountant. The IRS number will be the IRS number of the company, or any series of the company, that is on file in the EDGAR database; the IRS number provides a double check that the correct subject company CIK is included in the submission.

- Future period dates are now allowed for the following submission types:

  N-23C-2, N-23C-2/A, N-23C3A, N-23C3A/A, N-23C3B, N-23C3B/A, N-23C3C, and N-23C3C/A.

- Please use the correct EDGAR submission type.

| Use: | To Submit: |
| --- | --- |
| 497K1, 497K2, 497K3A, or 497K3B, as appropriate | profiles for open-end management investment companies |
| 485BXT | a filing under rule 485(b) to extend the effective date of a previous 485(a) |
| POS 8C | Post-effective amendments under the Securities Act, or under both the Securities and Investment Company Acts, filed by registrants filing on Forms N-2 and N-5 |
| N-14 8C | Form N-14 registration statements filed by closed-end investment companies; a registration fee is required |
| N-CSR | certified annual shareholder report |
| N-CSRS | certified semi-annual shareholder report |
| NT-NCSR | Notice under Exchange Act Rule 12b-25 of inability to timely file Form N-CSR (annual or semi-annual report) |

- Complete the facing sheets of registration statements and amendments correctly. Check the appropriate box(es) on the facing sheets of filings under Rule 485 and make sure all EDGAR header tags correspond to those boxes.

- Correctly label investment company exhibit documents. See Appendix C of the EDGAR Filer Manual. Please use the fourteen characters following the decimal point to include a descriptive label.

- Form N-PX must contain the registrant's proxy voting record for the most recent twelve-month period ended June 30, and must be filed no later than August 31 of each year. A registrant offering multiple series of shares must provide the information required by Item 1 of Form N-PX separately for each series. Registrants with multiple series may file a separate Form N-PX for each series.

- File as an exhibit to the Form N-Q submission the certifications called for by the form. The exhibit to the "N-Q" submission should be labeled "EX-99.CERT." If more than one certification is to be filed, all such certifications should be included in one EX-99.CERT exhibit document in the Form N-Q submission on EDGAR.

- Refer to "FAQ: EDGAR Filing of Certified Shareholder Reports by Registered Management Investment Companies" on the Commission's website at http://www.sec.gov/info/edgar/certinvco.htm for information on filing exhibits to Form N-CSR.

*http://www.sec.gov/info/edgar/regoverview.htm*

Home | Previous Page                                    Modified: 11/16/2006