UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>      Plaintiff<br><br>   vs.<br><br>DORMITORY AUTHORITY – STATE OF NEW YORK, et al.,<br><br>      Defendants. | Case No. 07-CV-6915 (DLC)<br>**ECF CASE** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK AND TDX CONSTRUCTION CORP.,<br><br>      Third-Party Plaintiffs,<br><br>   vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>      Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>      Fourth-Party Plaintiffs,<br><br>   vs.<br><br>CAROLINA CASUALTY INSURANCE COMPANY, et al.,<br><br>      Fourth-Party Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

              SEGAL McCAMBRIDGE SINGER &
              MAHONEY, LTD.
              *Attorneys for Fourth-Party Defendant*
              *Specialty Construction Brands, Inc. t/a TEC*
              830 Third Avenue, Suite 400
              New York, NY  10022
              (212) 651-7500

On the Memorandum:

Christian H. Gannon, Esq.
Robert R. Rigolosi, Esq.
Gregory N. Harris, Esq.


## **TABLE OF CONTENTS**

I.   Summary Of Argument ............................................................................................ 1

II.  Rule 12(b)(6) Standards ........................................................................................... 1

III. There Is No Damage To "Other Property" Under The Economic Loss Rule ............. 2

IV.  Trataros Has Relinquished Its Breach Of Warranty Claims Against TEC ................. 5

V.   Trataros' Claim For Subrogation Is An Attempt To Legitimize An Illegitimate Claim For Purely Economic Loss Stemming From An Alleged Product Defect ........ 5

VI.  Trataros Is Not An Intended Third-Party Beneficiary To The Crocetti Purchase Agreement ............................................................................................................. 7

VII. Conclusion ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Adirondack Combustion Technologies, Inc. v. Unicontrol, Inc.*
   17 A.D.3d 825, 793 N.Y.S.2d 576 (3d Dept. 2005) ...................................................... 2, 3

*Amin Realty, LLC v. K&R Const. Corp,*
   306 A.D. 2d 230, 762 N.Y.S.2d 92 (2d Dept. 2003) ......................................................... 3

*Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*
   1996 WL 361535 (SDNY June 25, 1996) ..................................................................... 2, 3

*Atlas Air, Inc. v. General Electric,*
   16 A.D.3d 444, 791 N.Y.S.2d 620 (2d Dept. 2005) .......................................................... 3

*Bell Atlantic Corporation v. Twombly,*
   127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................................................. 1, 2, 9

*Bocre Leasing Corp. v. General Motors Corp,*
   84 N.Y.2d 685, 645 N.E.2d 1195, 621 N.Y.S.2d 497 (1995) ............................................ 2

*Brown v. Bellamy,*
   170 A.D.2d 876, 877 (3d Dept. 1991) ............................................................................... 6

*Federal Ins. Co. v. N. Amer. Specialty Ins. Co.,*
   847 N.Y.S.2d 7, 14 (1st Dept. 2007) ................................................................................. 5

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
   66 N.Y.2d 38, 45 (1985) ................................................................................................ 7, 8

*Hanig v. Yorktown Centr. Schl. Dist.,*
   384 F.Supp.2d 710, 716 (S.D.N.Y. 2005) ......................................................................... 3

*Key Int'l Mfg. v. Morse/Diesel, Inc.,*
   142 A.D.2d 448 (2d Dept. 1988) ....................................................................................... 8

*LaBarre v. Mitchell,*
   256 A.D.2d 850, 681 N.Y.S.2d 653 (3d Dept. 1998) ........................................................ 2

*Manhattanville College v. James John Romeo Consulting Engineering, P.C.,*
   5 A.D.3d 637, 774 N.Y.S.2d 542 (2d Dept. 2004) ............................................................ 4

*Progressive Ins. Co. v. Ford Motor Co.,*
   6 Misc.3d 568 (Nassau Cty. 2004) .................................................................................... 4

*Saratoga Fishing Co v. J.M. Martina & Co.,*
   520 U.S. 875, 117 S. Ct. 1783, 138 L.Ed.2d 76 (1997) ..................................................... 5

*Trump Int'l Hotel & Tower* v. *Carrier Corp.*,
 524 F. Supp.2d 302 (S.D.N.Y. 2007) .................................................................... 3, 4

*Weiss v. Polymer Plastics Corporation*,
 21 A.D.3d 1095, 802 N.Y.S.2d 174 (2d Dept. 2005) ............................................. 3

**Treatises**

5 *Wright & Miller* 1216 ...................................................................................................... 2

Fourth-Party Defendant Specialty Construction Brands, Inc. t/a TEC ("TEC") respectfully submits this Reply Memorandum of Law in further support of its Rule 12 (b)(6) Motion to Dismiss the Complaint of Fourth-Party Plaintiffs, Trataros Construction, Inc. and Travelers Casualty and Surety Company ("Trataros").

### I.  SUMMARY OF ARGUMENT

Under the applicable law, Trataros cannot maintain causes of action against TEC, a product manufacturer, for Negligence, Contribution, Indemnification, Breach of Contract or Breach of Warranty.  Trataros' detailed description of the Project, including the roles of the contractors/subcontractors and the moneys expended, is nothing more than a smokescreen to conceal the fact that it does not have a valid claim.  There is no merit to Trataros' argument that TEC's terrazzo flooring damaged the underlying substrate and concrete, creating damage to "other property" under the economic loss rule doctrine.  To the contrary, these alleged damages are clearly "consequential damages" under the economic loss rule as developed under recent New York law.  Nor can Trataros legitimately claim to "stand in the shoes" of Carolina Casualty ("Carolina") or G. M. Crocetti ("Crocetti") for purposes of a subrogation claim.  Lastly, Trataros is not a third-party beneficiary to the Crocetti purchases of TEC products.

### II.  RULE 12(B)(6) STANDARDS

In *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the United States Supreme Court recently stated with regard to pleadings, "[F]actual allegations must be enough to raise a right to relief above the speculative level."  127 S.Ct. 1955 at 1965, 167 L.Ed.2d 929.  In weighing a Rule 12(b)(6) motion, the *Bell Atlantic* Court further noted that "when the allegations in a complaint, however true, could not raise a claim to entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time

1

and money by the parties and the court.'" 127 S.Ct. 1955 at 1966, 167 L.Ed.2d 929 (quoting 5 *Wright & Miller* 1216 at 233 – 234). Trataros' pleadings against TEC fail to raise a claim to entitlement beyond the speculative level, and thus the claim against TEC should not be allowed to proceed into an expensive and protracted discovery phase.

### III. THERE IS NO DAMAGE TO "OTHER PROPERTY" UNDER THE ECONOMIC LOSS RULE

Trataros argues that because it "may establish at trial" that TEC's product caused damage to other parts of the floor, the "other products" exception to the economic loss rule applies. This claim fails as a matter of law.

Trataros cites *LaBarre v. Mitchell*, 256 A.D.2d 850, 681 N.Y.S.2d 653 (3d Dept. 1998) as authority for its negligence claim against TEC. The *LaBarre* case is factually distinguishable. In *LaBarre*, a fire alarm malfunctioned and a fire ensued, damaging plaintiff's property. The Court ruled that the economic loss rule did not apply for public policy reasons, since a defectively designed alarm system is an "inherently dangerous product." *LaBarre*, 256 A.D.2d 850, 852, 681 N.Y.S.2d 653. Trataros does not allege that TEC products were inherently dangerous. Further, *LaBarre*, as an appellate department case, does not comport with the holding of the New York Court of Appeals case, *Bocre Leasing Corp. v. General Motors Corp*, 84 N.Y.2d 685, 645 N.E.2d 1195, 621 N.Y.S.2d 497 (1995) (a hazardous product carve-out of the economic loss rule is "not prudent common-law development and policy"). 84 N.Y.2d at 692, 645 N.E.2d at 1198, 621 N.Y.S.2d at 500. *LaBarre* is not applicable.

Trataros also argues that TEC products should be considered "other property" based on an unpublished decision *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.* 1996 WL 361535 (SDNY June 25, 1996) (allowing tort action for governor failure) and *Adirondack Combustion Technologies, Inc. v. Unicontrol, Inc.* 17 A.D.3d 825, 793 N.Y.S.2d 576 (3d Dept. 2005) (allowing tort action

2

for damage to boiler).[1] *Arkwright Mut. Ins. Co.* was decided in 1996, at a time when "[N]ew York law offers scant guidance" on the definition of other property. *Arkwright Mut. Ins. Co.*, 1996 WL 361535 at *FN 4.[2]

Since 1996, the New York appellate departments have clarified this issue. In *Weiss v. Polymer Plastics Corporation*, 21 A.D.3d 1095, 802 N.Y.S.2d 174 (2d Dept. 2005), a home purchaser could not maintain a negligence action against an exterior synthetic stucco manufacturer when the stucco did not perform properly and [consequentially] allowed moisture to damage the underlying plywood substrate. The facts in *Weiss* are remarkably similar to the facts here. In *Weiss*, plaintiffs had no direct contact with the defendant product manufacturer. Further, defendant's product was laid over – and allegedly damaged – other products. The *Weiss* Court applied the economic loss rule and held that plaintiffs could not recover in tort, since "losses to the product itself as well as consequential damages resulting from the defect" do not constitute damage to other property. 21 A.D.3d at 1096, 802 N.Y.S.2d at 175. Similarly, Trataros should not recover in tort for consequential damages allegedly caused by the TEC materials.

Likewise, in *Amin Realty, LLC v. K&R Const. Corp*, 306 A.D. 2d 230, 762 N.Y.S.2d 92 (2d Dept. 2003), a building owner could not pursue a contractor who poured defective concrete, requiring "the removal, re-installation and repair of the first floor of the building" since the economic loss rule applies "to the product itself, as well as consequential damages resulting from the defect." 306 A.D. 2d 230 at 231, 762 N.Y.S.2d 92 at 92-93. In *Atlas Air, Inc. v. General Electric*, 16 A.D.3d 444, 791 N.Y.S.2d 620 (2d Dept. 2005), an airplane purchaser could not

---

[1] As described in *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp.2d 302 (S.D.N.Y. 2007), the rationale in *Adirondack Combustion Technologies, Inc.* is "flawed," since defendant's product was not damaged. 524 F. Supp 2d at 309.

[2] Further, it also cannot be used as precedential authority, as it is an unpublished decision. "[A]ccording to the Second Circuit rules . . . unpublished decisions. . . 'may not be cited as precedential authority to this or any other court.'" *Hanig v. Yorktown Centr. Schl. Dist.*, 384 F.Supp.2d 710, 716 (S.D.N.Y. 2005).

3

maintain a tort action against an engine manufacturer for damage to the plane. In *Manhattanville College v. James John Romeo Consulting Engineering, P.C.*, 5 A.D.3d 637, 774 N.Y.S.2d 542 (2d Dept. 2004), a building owner could recover under contract theory, but not under negligence theory, for damage to a boiler.

Trataros also mis-applies *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp.2d 302 (S.D.N.Y. 2007) and *Progressive Ins. Co. v. Ford Motor Co.*, 6 Misc.3d 568 (Nassau Cty. 2004). As set forth in *Trump*, the economic loss doctrine "reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectation of the parties are recoverable in contract, not tort." 524 F. Supp.2d at 307 (citations omitted). Judge Schiendlin warned against "over-parsing," which she concluded would represent an "undue expansion of tort law." 524 F. Supp.2d at 312. The "integrated approach" applied by Judge Schiendlin also makes sense here. The Dormitory of the State of New York (DASNY) contracted with Trataros for a floor, not a terrazzo topping, a substrate, and underlying concrete. (*See*, Exhibit A of Declaration of Robert R. Brooks-Rigolosi at ¶¶ 38, 39 regarding the DASNY/Trataros contract).

In *Progressive*, the Nassau County trial court held that a purchase of an automobile was not a collection of component parts. As the Court observed, the purchaser "did not go to his Mercury dealer and purchase a collection of parts. He bought a Mercury Grand Marquis…the Grand Marquis as a whole must be considered the standard" to determine the definition of "other property." 6 Misc. 3d 568, 570, 790 N.Y.S.2d 358. Here, DASNY, as owner of the Project, purchased from Trataros, as one of the general contractors of the Project, a floor. DASNY did

not contract for a collection of floor materials, and Trataros did not deliver a collection of independent floor materials to DASNY.[3]

Trataros alleged damages fall squarely into the economic loss doctrine. Trataros cannot maintain a tort action against TEC.

## IV. TRATAROS HAS RELINQUISHED ITS BREACH OF WARRANTY CLAIMS AGAINST TEC

Trataros has declined to address or oppose TEC's argument in its motion papers that Trataros is not entitled to bring a Breach of Warranty claim. Although Trataros did not explicitly concede that it cannot maintain a Breach of Warranty claim, it is respectfully urged that the Court deem Trataros' failure to respond a concession of the point.

## V. TRATAROS' CLAIM FOR SUBROGATION IS AN ATTEMPT TO LEGITIMIZE AN ILLEGITIMATE CLAIM FOR PURELY ECONOMIC LOSS STEMMING FROM AN ALLEGED PRODUCT DEFECT

Attempting to avoid application of the economic loss doctrine, Trataros tries to recast its indemnification and contribution claims as claims for subrogation. "Subrogation is an equitable doctrine which 'entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" *Federal Ins. Co. v. N. Amer. Specialty Ins. Co.*, 847 N.Y.S.2d 7, 14 (1st Dept. 2007) (internal citations omitted). Trataros' claim is not a true subrogation claim. It is nothing more than a strawman for the claim of products liability, which the economic loss rule bars Trataros from bringing. The party Trataros claims to "stand in the shoes of" – Carolina, as a bond-holder for Crocetti – is a party to this lawsuit. Trataros' claim that it "stands in the shoes" of Crocetti is thus incorrect, since fourth-party defendant Carolina, as Crocetti's surety, has already filled those shoes.

---

[3] For these reasons, *Saratoga Fishing Co v. J.M. Martina & Co.*, 520 U.S. 875, 117 S. Ct. 1783, 138 L.Ed.2d 76 (1997) ("other property" defined as materials added to product after purchase) does apply to the TEC materials.

Trataros urges the Court to take judicial notice of the pleadings submitted. Towards that end, Paragraph 24 of Carolina's answer to Trataros' fourth-party complaint states, "Crocetti found no fault with TEC's materials, and is still not aware of any fault with TEC's materials; others, however, allege otherwise." (*See*, Exhibit B to Declaration of Eli J. Rogers in Opposition to Motion to Dismiss at ¶24). Thus, even the party who purchased the TEC materials does not allege that the materials were defective. Indeed, all of the cross-claims directed against TEC flow from the Trataros allegations.[4] To accept respondents' reasoning would require the Court to accept a completely unfounded legal theory: that Crocetti/Carolina's decision not to exercise the right to assert claims against TEC transfers that right to Trataros, even though Carolina remains a party to the suit.

Subrogation is an equitable remedy intended to make whole a party that is forced to assume the debts or obligations of another either under compulsion, or to protect some interest of the party making the payment. *See, Brown v. Bellamy*, 170 A.D.2d 876, 877 (3d Dept. 1991). Allowing respondents to maintain a subrogation action against TEC would directly counter the very purpose of subrogation; equity. There is nothing equitable in allowing Trataros to advance subrogation as a theory to usurp the rights of Crocetti/Carolina in obtaining relief from any alleged product defect.

Assuming *arguendo* that Trataros has liability in its role as general contractor for Crocetti's actions, Trataros would not be assuming the debts or obligations of another. Rather, Trataros would be assuming its own debts and obligations as the general contractor to the project. Consequently, Trataros' claims for indemnification would lay not in subrogation against TEC, but against its subcontractor Crocetti/Carolina.

---

[4] Indeed, defendants have not made affirmative claims against TEC, and Trataros is the only party to submit an opposition to TEC's Motion to Dismiss.

6

The cases cited by Trataros confirm that subrogation does not apply in the instant case. For example, in addition to the classic use of the remedy in insurance claims, equitable subrogation has been extended to landowners who pay off mortgages obtained by their lessees to avoid foreclosure of their [landowner's] property (debt paid to protect a property right). It allows a surety to become subrogated to the rights of materials suppliers whose invoices it has paid for materials supplied to a subcontractor (debt paid under compulsion as surety). However, it does not permit a contractor to avoid liability by bypassing its subcontractor and seeking indemnification from a product manufacturer, with whom it has no privity, for products used by the subcontractor. For the reasons discussed above, TEC respectfully urges the Court to reject Trataros' subrogation arguments.

## VI. TRATAROS IS NOT AN INTENDED THIRD-PARTY BENEFICIARY TO THE CROCETTI PURCHASE AGREEMENT

The crux of a determination as to whether a party is an intended third-party beneficiary to a contract is whether the promisee intended to give the benefit of the promised performance to the third-party. The New York Court of Appeals has upheld a third party's right to enforce a contract as an intended beneficiary where "no one other than the third party can recover if the promisor breaches the contract or . . . the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985). Neither of these requirements is satisfied here.

In *Fourth Ocean*, the Village of Atlantic Beach ("Village") entered into a contract with a wrecking company to demolish a fire-gutted hotel on Fourth Ocean's property. After the demolition, Fourth Ocean built a new hotel on the property, and then discovered that the demolition had not been done in accordance with contractual specifications. Fourth Ocean sued the wrecking company for breach of contract, alleging status as a third-party beneficiary to the

7

contract. Fourth Ocean clearly benefited from having the useless, damaged structure removed by the Village, putting it in compliance with relevant ordinances and allowing it to improve the property, yet the Court of Appeals determined that under New York law, Fourth Ocean was not an intended beneficiary to the contract. In denying Fourth Ocean status as a third-party beneficiary, the Court of Appeals held that, "[the contract] cannot be viewed as a promise intended to benefit no one other than [Fourth Ocean], for the Village had a contingent interest in [the contract's] performance." *Id.* (emphasis added).

Likewise, the promise between TEC and Terrazzo Marble and Supply ("TMS") and the promise between TMS and Crocetti cannot be viewed as promises intended to benefit no one other than Trataros, since Crocetti was the intended beneficiary of the promise to provide materials.[5] *Key Int'l Mfg. v. Morse/Diesel, Inc.*, 142 A.D.2d 448 (2d Dept. 1988), cited by respondent, involved a very different set of facts than presented by Trataros. The *Key Int'l Mfg.* Court found a parent corporation to be an intended third-party beneficiary of a construction contract entered into by its wholly owned subsidiary. The subsidiary's representative (an officer of both parent and subsidiary) testified that the subsidiary's construction project was "'at the direction of, and under the control of, [the parent corporation]'" and in entering into the contract, the signatory "was 'acting on behalf of the owner, which was [the parent corporation].'" *Id.* The circumstances in the instant case are not even remotely similar. Because respondents are unable to put forth any evidence to demonstrate an intent to permit Trataros to enforce the contract between TEC and TMS or the contract between TMS and Crocetti, or that no one other than

---

[5] Trataros has included the Trataros/Crocetti contract as an exhibit to its papers. (*See*, Exhibit E to the Declaration of Eli J. Rogers in Opposition to Motion to Dismiss). On the last page of this contract, there is a reference to "Terrazzo Marble Supply" (TMS) as the "Material Vendor/Supplier." TEC did not sell materials directly to Crocetti. TEC sold its materials to TMS, and TMS, in turn, sold the materials to Crocetti. TMS is not a party to this action. Any references to a TEC/Crocetti purchase agreement referenced in movant's papers are based on Trataros' pleadings. (*See*, Exhibit A to Declaration of Eli J. Rodgers at ¶¶ 41-43 regarding the Crocetti/TEC relationship). The fact that TEC does not appear in the Trataros/Crocetti contract further shows that Trataros and TEC had no relationship.

8

Trataros could recover for a breach of these contracts, it is respectfully urged that Trataros' argument on this issue also fails.

## VII. <u>CONCLUSION</u>

The parties in this litigation are about to embark upon a very expensive and lengthy process. Over twenty fact witnesses will likely be deposed, as well as numerous experts. The current pre-trial schedule contemplates a trial within the summer or fall of 2009. As the United States Supreme Court has recently observed, "It is one thing to be cautious before dismissing . . . [a] complaint in advance of discovery, but quite another to forget that proceeding to . . . litigation discovery can be expensive." *Bell Atlantic Corporation*, 127 S.Ct. 1995 at 1967, 167 L.Ed.2d 929. Trataros' speculation that TEC's products caused damage to "other property," that Trataros is a subrogee of Crocetti, or that it is an intended beneficiary of the TEC/TMS and TMS/Crocetti contracts does not withstand scrutiny of New York law or the federal standards governing Rule 12(b)(6).

For the reasons described in its Memorandum of Law and its Reply, fourth-party defendant Specialty Construction Brands, Inc. t/a TEC respectfully requests this Court to issue an Order dismissing the fourth-party complaint against TEC, and awarding such other and further relief as this Court shall deem proper and just.

Dated: New York, New York
       February 15, 2008

                                    SEGAL McCAMBRIDGE SINGER &
                                    MAHONEY, LTD.
                                    Attorneys for Fourth-Party Defendant
                                    Specialty Construction Brands, Inc. t/a TEC

                                    /s/
                                    Christian H. Gannon (CHG 1621)
                                    Robert R. Brooks-Rigolosi (RRBR 5264)
                                    Gregory N. Harris (GNH 1976)
                                    830 Third Avenue, 4th Floor
                                    New York, New York 10022
                                    (212) 651-7500
                                    cgannon@smsm.com
                                    rrigolosi@smsm.com
                                    gharris@smsm.com