UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY, *et al.*,   07 Civ. 6915 (DLC)

        Plaintiff,   ECF CASE

-against-

DORMITORY AUTHORITY – STATE OF NEW YORK, *et al.*,

        Defendants.
------------------------------------------------------------------------X
DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,

        Third Party Plaintiffs,

-against-

TRATAROS CONSTRUCTION, INC.,

        Third Party Defendant.
------------------------------------------------------------------------X
TRATAROS CONSTRUCTION, INC., *et al.*

        Fourth-Party Plaintiffs,

-against-

CAROLINA CASUALTY INSURANCE COMPANY, *et al.*

        Fourth-Party Defendants.
------------------------------------------------------------------------X
KOHN PEDERSEN FOX ASSOCIATES, P.C.,

        Third-Party Plaintiff,

-against-

WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, *et al.*

        Third-Party Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISQUALIFY COUNSEL

        Kalb & Rosenfeld, P.C.
        Attorneys for Third Party Defendant
        Jordan Panel Systems, Corp.
        1470 Bruckner Blvd.
        Bronx, N.Y. 10473
        (718) 328-1610

Terrence J. O'Connor (TJO 1549)
Of Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

    POINT I ........................................................................................................................... 5
    DASNY MAY NOT WAIVE THE CONFLICT OF INTEREST, WHERE A POSSIBLE
    RESULT OF THE JOINT LEGAL REPRESENTATION IS THAT THE PUBLIC IS LEFT
    "HOLDING THE BAG" ON DAMAGES CAUSED TO THE PUBLIC OWNER BY THE
    NEGLIGENCE OF A PRIVATE CONSTRUCTION MANAGEMENT FIRM.

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

Ahto v. Weaver, 39 N.J. 418, 431, 189 A.2d 27, 34 (1963)..........................................................10

Cardinale v. Golinello, 43 N.Y.2d 288 (1977) ...............................................................................6

Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2nd Circ. 1995)..................................................................................................................................8

Eisemann v Hazard, 218 NY 155, 159, supra ................................................................................9

General Building Contractors of New York State, Inc. v. City of Syracuse, 334 N.Y.S.2d 730, 731-732 (4th Dep't 1972)......................................................................................................5

Greene v. Greene, 47 N.Y.2d 447, 391 N.E.2d 1355, 418 N.Y.S.2d 379 (1979) ........................6,9

In re Hof, 102 A.D.2d at 59............................................................................................................6

In re Lion Capital Group, 49 B.R. 163 (Bkcy., SDNY 1985) .....................................................12

Kelly v. Greason, 23 N.Y.2d 368, 376 (1968)................................................................................6

Matter of A & B, 44 NJ 331 .........................................................................................................10

Matter of Cohn, 46 NJ 202 ...........................................................................................................10

Matter of Gilchrist, *supra*, at pp 497-498 ....................................................................................10

Matter of Kelly, supra, at p 378....................................................................................................10

Prodel v. State, 125 A.D.2d 805, 509 N.Y.S.2d 911 (3rd Dept. 1986) ........................................11

Seeley v. Seeley, 129 A.D.2d 625, 626, 514 N.Y.S.2d 110, 112 (2nd Dep't 1987).......................7

Trustees of Columbia University v. Gwathmey Siegel and Associates Architects, 192 A.D.2d 151, 601 N.Y.S.2d 116 (1st Dept. 1993)..............................................................................7

## Attorney Disciplinary Codes of the American Bar Association
DR 5-105(C).................................................................................................................................11
DR 8-101(A).................................................................................................................................11
DR 9-101(C).................................................................................................................................11
DR 1-104(A)(4) ............................................................................................................................11

**Opinions of the Ethics Committee of the New York State Bar Association**
N.Y. Eth Op. 629, 1992 W.L. 465631 .................................................................................11

**Rules**
22 NYCRR § 1200.24(b) [DR 5-105(b) ..................................................................................6

**Treatises**
New York Construction Law Manual", Section 11:18, 2nd Ed., 2008,
Thomson West Publishing ......................................................................................................7

Third Party Defendant, Jordan Panel Systems, Corp. ("Jordan"), respectfully submits this Memorandum, together with accompanying Declaration of Terrence J. O'Connor, Esq. ("Supporting Dec.") in support of its motion to disqualify the firm of Holland and Knight from representing either the contract owner or the construction manager in this case, on the grounds that such joint representation presents an irreconcilable conflict of interest.

The Project's "owner" for contract purposes only, Defendant Dormitory Authority of the State of New York shall be referred to herein as "DASNY".[1] The Construction Manager hired by DASNY, Defendant, TDX Construction Corp shall be referred to herein as "TDX" and the project architect, Defendant Kohn Pedersen and Fox, shall be referred to herein as "KPF". All exhibits referred to throughout this Memorandum are those attached to the Supporting Declaration.

**PRELIMINARY STATEMENT**

This is a case involving a public improvement, in which the plaintiff is the surety for a prime contractor, and is suing the public owner for delays, impacts and cost overruns which it incurred in completing the work. Among the various claims, are those arising out of the alleged mismanagement of the work by the construction management firm contracted by the <u>public</u> owner to manage the Project. Claims are asserted by the plaintiff against the owner DASNY, the construction manager TDX, and the architect, KPF. The issue presented on this motion, is whether the same law firm can jointly represent the <u>public</u> owner and the private construction management firm, where the claim against the

---

[1] The City University of New York ("CUNY") is the true owner of the Project. CUNY hired DASNY to serve as its agent during the design and construction phases of the Project. DASNY was responsible for reviewing the plans and specifications as well as overseeing the bid process and Project construction. DASNY also held all of the construction contracts on behalf of CUNY and organized all of the financing for the Project. (See, Supporting Dec., Ex. B, ¶¶ 11, 12 & 26.)

1

owner is that it breached the construction contract **because** the construction management firm that it provided to the Project, performed incompetently.

## SUMMARY OF ARGUMENT

It is respectfully submitted that the same law firm cannot represent both of these parties, as their interests are obviously adverse. Indeed, all the way up until the filing of their joint Answer with DASNY in the present litigation, TDX benefited from the advice of independent counsel, Mazur Carp & Rubin regarding its claims, rights and defenses at issue herein. Prior to dismissal of the original action before Judge Baer, TDX's independent counsel pleaded claims against DASNY for contribution and indemnity. Subsequently, some type of "deal" was apparently reached between DASNY and TDX, by which they became jointly represented and thus dropped their cross claims against one another. But any such "deal" which results in the public owner sacrificing its cross claims against this private construction management firm, smacks of favoritism and cronyism at the public expense.

The duty to represent one's client vigorously (and to protect the public fisc) requires that DASNY assert all available cross claims against the parties allegedly responsible for causing the Plaintiff's damages. In this case, DASNY has done that against KPF, but for unknown reasons, not against TDX, which was paid millions to manage this Project, as an independent contractor. The practical effect of this "pass" being issued to TDX is that the public treasury is serving as free liability insurance for a private corporation.

As explained below, in the public arena, although the parties have some leeway in making informed waivers of conflicts, their authority to do so is tightly restricted, and where, as here, it results in the appearance of sacrificing the interests of the public client for

2

the benefit of the private client, the conflict is unwaivable as a matter of law. By having participated in this conflict of interest and taken the confidences of both clients, Holland & Knight is required to be disqualified from representing either of them.

## STATEMENT OF FACTS

The following facts are established in the Supporting Declaration, which is incorporated herein by reference in its entirety:

The Plaintiff surety seeks to recover various economic damages against DASNY and TDX jointly and severally, for the negligent mismanagement of the subject construction Project. The City University of New York ("CUNY") engaged DASNY as Project Administrator for planning and construction of the Project. DASNY in turn contracted with TDX, KPF, Trataros, the additional prime contractors, and others, for purposes of carrying out the Project on CUNY's behalf. (Supporting Dec., Ex. B ¶¶ 11-16.)

TDX was retained to provide construction management services to DASNY, as an independent contractor. (Id., ¶ 8.) The written construction management contract contains no requirement of errors and omissions insurance or any form of security to be provided by TDX to DASNY. Although there is a standard indemnity clause in DASNY's favor, <u>it is specifically limited</u> to claims of personal injury, wrongful death and property damage. So, for the economic claims at issue in this case, there is no contractual obligation for either TDX or DASNY to indemnify the other. (Id., ¶ 7.) Nor is there any liability sharing agreement in effect between them. (Id., ¶ 13.)

Using its own counsel, Mazur Carp & Rubin, TDX served an Answer to the Complaint in the original lawsuit, which recognized the adverse interests between TDX and DASNY by asserting cross claims against DASNY for contribution and indemnity. It is

only now, in this litigation, with Holland & Knight acting as sole representation of both these parties, that there are no claims for indemnification by TDX against DASNY. (Id., ¶ 12 & Ex. F.)

Ostensibly due to delays and cost overruns during the planning and construction of the Project, DASNY has almost doubled TDX's "no-bid" contract values from their original total of $21,111,192, to $37,692,611. This took place amid contemporaneous allegations that TDX itself caused or contributed to the very cost overruns and delays for which it received such massive, additional compensation. (Id., ¶ 11.) But DASNY's generosity towards TDX was not limited to almost doubling the values of its three (3), no-bid contracts for the Project. Now that there is a major, multi-million dollar litigation for delays and cost overruns asserted by Trataros' surety, we are advised that DASNY is "waiving" the conflict of interest inherent in its joint legal representation with TDX. By acceding to its attorneys' conflict of interest and agreeing to this joint representation, DASNY is prohibited from cross claiming against TDX, thus effectively precluding the recovery of <u>any</u> of the damages caused to the <u>public</u> owner by virtue of TDX's alleged mismanagement and malfeasance.

# ARGUMENT

## POINT I

### DASNY MAY NOT WAIVE THE CONFLICT OF INTEREST, WHERE A POSSIBLE RESULT OF THE JOINT LEGAL REPRESENTATION IS THAT THE PUBLIC IS LEFT "HOLDING THE BAG" ON DAMAGES CAUSED TO THE PUBLIC OWNER BY THE NEGLIGENCE OF A PRIVATE CONSTRUCTION MANAGEMENT FIRM.

Jordan respectfully submits that Holland & Knight's continued dual representation of DASNY and TDX flies in the face of policy interests favoring protection of the public fisc, and ignores presently existing allegations which fairly compel the assertion of cross claims between these two parties. In fact, TDX had asserted such a cross claim against DASNY in the original proceedings before Judge Baer. The continuing dual representation papers over the fact that the economic interests of DASNY and TDX have diverged past the breaking point. Unlike TDX, DASNY is in direct contractual privity with Trataros, and thus potentially answerable for the acts/omissions of the architect, KPF, and the construction manager. Given that DASNY faces potential liability for TDX's purported negligence and/or breach of contract, the two parties are for practical purposes adverse to each other, and DASNY's responsibility to protect the public fisc cannot be reconciled with a defense of TDX's actions.[2]

The Code of Professional Responsibility provides that an attorney

> shall not continue multiple employment if the exercise of
> independent professional judgment in behalf of a client will be or

---

[2] A public owner of a construction project bid out under Wicks Law (see, Supporting Dec., Ex. B, p.23 at ¶ 166, in which DASNY and TDX allege the Project was bid out pursuant to Wicks Law), bears the affirmative legal duty to coordinate the work of the various co-prime contractors, among other things. General Building Contractors of New York State, Inc. v. City of Syracuse, 334 N.Y.S.2d 730, 731-732 (4th Dep't 1972). Upon information and belief, DASNY delegated its duties of coordination on this Project to TDX. (Supporting Dec., ¶ 9.)

> <u>is likely</u> to be adversely affected by the lawyer's representation of another client, <u>or if it would be likely to involve the lawyer in representing differing interests</u>....

22 NYCRR § 1200.24(b) [DR 5-105(b)]. (Emphasis added.) In light of this prohibition, it is "an undeniable maxim of the legal profession that an attorney must avoid even the appearance of impropriety." <u>In re Hof</u>, 102 A.D.2d 591, 597, 478 N.Y.S.2d 39, 43 (2nd Dep't 1984) (citing, inter alia, <u>Cardinale v. Golinello</u>, 43 N.Y.2d 288 (1977)). The New York Court of Appeals has stated that only "with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect or give the appearance of affecting, the obligations of the professional relationship." <u>Kelly v. Greason</u>, 23 N.Y.2d 368, 376 (1968).

"[A]n attorney must avoid not only the fact, **but even the appearance**, of representing conflicting interests." <u>Cardinale</u>, 43 N.Y.2d at 296 (emphasis added). When an attorney simultaneously represents two parties with adverse claims against the other, <u>particularly in the same proceedings</u>,

> the lawyer owes a duty to each client to advocate the client's interests zealously. Yet, to properly represent either one of the parties, he must forsake his obligation to the other. Because dual representation is fraught with the potential for irreconcilable conflict, **it will rarely be sanctioned even after full disclosure has been made and the consent of the clients obtained.**

<u>Greene v. Greene</u>, 47 N.Y.2d 447, 451-452, 391 N.E.2d 1355, 1357-58; 418 N.Y.S.2d 379, 381-82 (1979) (emphasis added) (citations omitted).

When an allegation of potential conflict "precedes a decision on the merits, the courts are justifiably more sensitive to such appearances and **doubts as to the existence of a conflict of interest are to be resolved in favor of disqualification.**" <u>In re Hof</u>, 102 A.D.2d at 597 (citations omitted). (Emphasis added.) And see, <u>Seeley v. Seeley</u>, 129

A.D.2d 625, 626, 514 N.Y.S.2d 110, 112 (2nd Dep't 1987) ("[I]t is well settled that doubts as to the existence of a conflict of interest must be resolved in favor of disqualification.")

Here, if TDX breached its construction management duties to the public owner, as an independent contractor it is liable to DASNY for the resultant damages, on a breach of contract theory and, in some cases, negligence theory. Trustees of Columbia University v. Gwathmey Siegel and Associates Architects, 192 A.D.2d 151, 601 N.Y.S.2d 116 (1st Dept. 1993). (See also, "New York Construction Law Manual", Section 11:18, 2nd Ed., 2008, Thomson West Publishing). (And note, Supporting Dec., Ex. B, ¶ 15, denying that an agency relationship existed between DASNY and TDX. Cf., id., Ex. A, ¶ 15.) Accordingly, in the absence of an indemnity agreement or liability sharing agreement between DASNY and TDX, any law firm objectively representing DASNY and the public interest it stands for, would plead and vigorously assert cross claims against TDX, in order to pass through whatever damages are proven to be the result of TDX's mismanagement.

Given the allegations made in this case by both the Plaintiff and KPF, there is no basis to simply conclude that TDX has no possible liability for any of the cost overruns that are the subject of this action. [For example, see paragraphs "9" and "13" of KPF's cross claims against TDX, where it alleges that TDX did not have the experience necessary for this fast track, high rise project, and that "TDX's own decision making caused and/or contributed to numerous errors, omissions and delays on the construction of the Project" (Supporting Dec., Ex. C, p. 16)]. To be clear, it is not only the contractors who are alleging that TDX mismanaged this Project.

If and when there is a judgment against DASNY for damages caused by TDX, it is fundamental to Holland & Knight's duty of vigorous representation to pass those damages through to the actual wrongdoer, and not to obligate DASNY and New York taxpayers to

7

sit back and simply foot the bill. DASNY has asserted its cross claims against KPF. But with tens of millions of public dollars at stake, there has been no explanation as to how or why DASNY should be allowed to agree to a joint representation with TDX, when the practical effect of that joint representation is the issuance of a multi-million dollar "free pass" to a favored, private corporation.

The potential problems posed by this particular joint representation are myriad. Suppose for example, the Plaintiff were to obtain a multi million dollar negligence verdict jointly against DASNY and TDX, with the allocation of fault between them being 10% against DASNY and 90% against TDX. Suppose further that the Plaintiff then collects the entire judgment against DASNY under the principle of joint and several liability. The public would then have no recourse against TDX, because DASNY and TDX were jointly represented by the same law firm, and thus there was no cross claim against TDX for contribution. What would DASNY do then? It is respectfully submitted that if DASNY were to subsequently file a whole new lawsuit against TDX, any such action would be subject to issue preclusion and collateral estoppel from the present lawsuit, and would require that all new lawyers be assigned to the case due to the previous joint representation. See, Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2nd Circ. 1995) (Collateral estoppel bars the relitigation of issues actually litigated and decided in the prior proceeding.) Any such scheme is clearly not in the public interest, as it would involve duplicative litigation and unnecessary, avoidable expense. The very fact that such proceedings may be necessary to resolve the ultimate liabilities between DASNY and TDX only reinforces the fundamentally adverse relationship between these two parties, and the existence of an irreconcilable conflict of interest.

Regardless of the applicability of negligence theory and joint/several liability to the claims in this case, the same analysis would apply to an award for breach of contract, although the result might be more severe than with a negligence award. If the Plaintiff were to recover an award strictly for breach of contract against DASNY based upon TDX's mismanagement of the Project, then, under this joint representation arrangement, the public is left "holding the bag" for the entire judgment, again, because there can be no cross claim by DASNY against TDX for breach of contract or professional malpractice. The practical effect of this "pass" being issued to TDX is that the public treasury is serving as free liability insurance for a private corporation.

The appearance of this "joint representation deal" when public moneys are at stake is nothing less than awful. As set forth below, the rules prohibiting waiver of attorneys' conflicts of interest, particularly in the public arena, preclude this particular arrangement between DASNY and TDX.

The general rule prohibiting attorneys from representing parties with adverse interests, even after a knowing waiver from the parties, is set forth in <u>Greene v. Greene</u>, 47 N.Y.2d 447, 391 N.E.2d 1355, 418 N.Y.S.2d 379 (1979). In <u>Greene</u>, the Court emphasized that where a public entity is a client, there is heightened scrutiny given to a purported waiver of an attorney's conflict of interest. At the risk of partially re-stating language already quoted above, <u>Greene</u> provides, in pertinent part:

> <u>Perhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding</u>. In such a case, the lawyer owes a duty to each client to advocate the client's interests zealously. Yet, to properly represent either one of the parties, he must forsake his obligation to the other. Because dual representation is fraught with the potential for irreconcilable conflict, it will rarely be sanctioned even after full disclosure has been made and the consent of the clients obtained (<u>Matter of Kelly</u>, 23 NY2d 368, 376, 378; <u>Eisemann v Hazard</u>, 218 NY 155, 159, supra.; <u>Matter of Gilchrist</u>, 208 App Div 497; see, also, <u>Matter of Cohn</u>, 46

9

> NJ 202). **Particularly is this so when the public interest is implicated (see, e.g., Matter of A & B, 44 NJ 331)**, or where the conflict extends to the very subject matter of the litigation (Matter of Kelly, supra, at p 378; see Matter of Gilchrist, supra, at pp 497-498).

Greene, 47 N.Y.2d at 451-52; 391 N.E.2d at 1357-58; 418 N.Y.S.2d at 381-82 (emphasis added).

The Greene Court cited with approval the New Jersey Supreme Court case of Matter of A & B, 44 NJ 331, 209 A.2d 101, which specifically addressed the applicability of the general rule to situations involving the public interest. In Matter of A & B, the Court stated:

> Dual representation is particularly troublesome where one of the clients is a governmental body. <u>So, an attorney may not represent both a governmental body and a private client</u> merely because disclosure was made and they are agreeable that he represent both interests. As Mr. Justice Hall said in Ahto v. Weaver, 39 N.J. 418, 431, 189 A.2d 27, 34 (1963), 'Where the public interest is involved, he may not represent conflicting interests even with consent of all concerned. Drinker, Legal Ethics, 120 (1953); American Bar Association, Opinions of the Committee on Professional Ethics and Grievances 89, 183 (1957). Mr. Chief Justice Weintraub in a 'Notice to the Bar,' 86 N.J.L.J. 713 (1963), stated:
>
> 'Because of some matters called to its attention, the Supreme Court wishes to publicize its view of the responsibility of a member of the Bar when he is attorney for a municipality or other public agency and also represents private clients whose interests come before or are affected by it. In such circumstances the Supreme Court considers that <u>the attorney has the affirmative ethical responsibility immediately and fully to disclose his conflict of interest, to withdraw completely from representing both the municipality or agency and the private client with respect to such matter, and to recommend to the municipality or agency that it retain independent counsel.</u> **Where the public interest is involved, disclosure alone is not sufficient since the attorney may not represent conflicting interests even with the consent of all concerned.**'

Matter of A & B, 44 NJ 331, 333-34; 209 A.2d 101, 102-03 (1965) (emphasis added).

Concededly, the law has liberalized since era of the absolute prohibition set forth in Matter of A & B. That case is cited herein because the discussion of the policy

10

considerations of protecting the public fisc are just as relevant today as they were when that case was decided. For example, in Prodel v. State, 125 A.D.2d 805, 509 N.Y.S.2d 911 (3rd Dept. 1986), New York's Third Department allowed a school district to waive an attorney's conflict of interest where the joint representation of the public client and the private clients was found not to be "fraught with the potential for irreconcilable conflict". However, as explained below, the conflict at issue in the case at bar does not meet even the more relaxed standards of the modern rule.

The evolution of the modern rule is the subject of a published opinion of the New York State Bar Association Committee on Professional Ethics. N.Y. Eth Op. 629, 1992 W.L. 465631 (N.Y. St. Bar. Assn. Comm. Prof. Eth.) (Copy annexed hereto). There, the Ethics Committee recognized that it was moving off an absolute "government cannot consent rule" to a new, modified rule, which sets forth a stringent, three part test:

> A lawyer whose current or past representation of a governmental entity gives rise to a conflict of interest with respect to contemplated or continued employment by another client, or whose obligations to other clients give rise to a conflict of interest with respect to contemplated or continued employment by a governmental entity, may accept or continue the employment with the consent of the governmental entity, provided **(i) such consent is obtained in accordance with DR 5-105(c) and all other applicable disciplinary rules,** (ii) the lawyer is reasonably certain that both the entity is legally authorized to waive the conflict and all legal prerequisites to the consent have been satisfied, and **(iii) the process by which the consent is granted is sufficient to preclude any reasonable perception that the consent was provided in a manner inconsistent with the public trust.**
> Code: DR 1-104(A)(4), 5-105(C), 8-101(A), 9-101(C); EC 8-8; Canon 9.

Digest, N.Y. Eth Op. 629, 1992 W.L. 465631 (N.Y. St. Bar. Assn. Comm. Prof. Eth.) (emphasis added).

It is submitted that the joint representation of both DASNY and TDX in the case at bar fails the requirements labeled (i) and (iii) above, and possibly even the second. Item (i)

addresses compliance with DR 5-105 C, which relates to the requirement that attorneys may not represent clients with differing interests. As previously established, DASNY's interests differ from that of TDX in that DASNY is in the position of being held liable to the Plaintiff by virtue of TDX's malfeasance. Thus, DASNY, who has an obligation to protect its "client" CUNY and the public fisc, has an interest and indeed a duty to pass through any such damages to TDX via cross claims for contribution, indemnity and breach of contract.

    There is even some doubt that the second prong of this three part test is met in this case. Although federal law will ultimately apply in determining the existence of a prohibited conflict, New York State funds are involved, and thus State policy is implicated. See, e.g., In re Lion Capital Group, 49 B.R. 163 (Bkcy., SDNY 1985) (citing to New York precedent recognizing, in another context, the "strong public policy of protecting public funds from dissipation"). Would the New York State Comptroller's Office approve of this arrangement? What about the Ethics Committee of the New York State Bar Association? Is it really clear that DASNY has the authority to knowingly waive conflicts of interest, potentially at the expense of the public?

    DASNY's inability to comply with item (iii) is particularly glaring. This requires that the process by which the consent is granted "is sufficient to preclude any reasonable perception that the consent was provided in a manner inconsistent with the public trust". Here, the "public trust" is being openly violated by this scheme of leaving DASNY (and thus, the taxpayers) ultimately responsible for the damages caused to the Owner by virtue of TDX's negligence.

    The dollar values at issue in this case are in the tens of millions. With public funds of this magnitude, one would expect that every possible safeguard should be exercised for

the protection of the public treasury. But here, it is just the opposite – every possible safeguard is being exercised by a Public Authority for the protection of the interests of a favored private corporation, which has already been the recipient of millions of dollars of additional compensation. It is respectfully submitted that "something is not right here", as the only apparent explanation for this situation is DASNY's cronyism and favoritism towards TDX.

It is respectfully submitted that a lengthy discussion of the caselaw interpreting the rules of attorney conflicts of interests is not necessary. The conflict for Holland & Knight in this case is so obvious and glaring, this does not appear to be a close call. The public treasury may not be sacrificed in order to accommodate this mysterious "special relationship" between the principals of DASNY and TDX. The appearance of this joint representation is that the public trust is being abused for benefit of DASNY's cronies at TDX, and is far from meeting the strict standards applicable to a waiver in this case. For the protection of the public fisc, DASNY, as the <u>public</u> owner, is obligated to recoup from TDX whatever damages it can prove are attributable to TDX. Since the current joint representation precludes that, it is the joint representation that must go, not the Owner's right to hold TDX accountable in damages for the mismanagement of this Project. Once disqualified from the joint representation, since Holland & Knight has the client confidences of both DASNY and TDX, it may not stay on to represent one of them, as it would be in a position of using client confidences against the former client. Jordan takes no position with respect to TDX's prior, independent counsel Mazur Carp & Rubin.

## **CONCLUSION**

For the reasons set forth above, this Court should issue an order disqualifying the firm of Holland & knight from continuing to represent either DASNY or TDX, because it has engaged in a conflict of interest by purporting to represent both.

Dated: March 13, 2008

                                            Respectfully submitted,

                                            Kalb & Rosenfeld, P.C.
                                            Attorneys for Third Party Defendant
                                            Jordan Panel Systems, Corp.

                                            /s/ Terrence J. O'Connor, Esq.
                                            Terrence J. O'Connor (TJO 1549)
                                            Of Counsel
                                            1470 Bruckner Blvd.
                                            Bronx, N.Y. 10473
                                            (718) 328-1610