NY Eth. Op. 629, 1992 WL 465631 (N.Y.St.Bar.Assn.Comm.Prof.Eth.)

Modifies: NYState Number 40 (1966), 110 (1969), 111 (1969), 143 (1970), 149 (1970), 176 (1971), 218 (1971), 247 (1972), 257 (1972), 322 (1973), 323 (1974), 364 (1974), 392 (1975), 413 (1975), 450 (1976), 482 (1978), 578 (1986), 580 (1987), 588 (1988) and 603 (1989).

New York State Bar Association
Committee on Professional Ethics

*1 TOPIC: CONFLICT OF INTEREST; GOVERNMENTAL ENTITIES.

Opinion Number 629

March 23, 1992

Digest: A lawyer whose current or past representation of a governmental entity gives rise to a conflict of interest with respect to contemplated or continued employment by another client, or whose obligations to other clients give rise to a conflict of interest with respect to contemplated or continued employment by a governmental entity, may accept or continue the employment with the consent of the governmental entity, provided (i) such consent is obtained in accordance with DR 5-105(C) and all other applicable disciplinary rules, (ii) the lawyer is reasonably certain that both the entity is legally authorized to waive the conflict and all legal prerequisites to the consent have been satisfied, and (iii) the process by which the consent is granted is sufficient to preclude any reasonable perception that the consent was provided in a manner inconsistent with the public trust.
Code: DR 1-104(A)(4), 5-105(C), 8-101(A), 9-101(C); EC 8-8; Canon 9.

QUESTION

In circumstances involving a conflict of interest, in which a lawyer may accept or continue a representation only with the consent of a current, past or prospective client, must the lawyer decline or withdraw from the representation solely because one of the clients in question is a governmental entity?

OPINION

This Committee frequently is presented with inquiries concerning situations in which a lawyer's conflict of interest can be cured by obtaining the consent of one or more past, present or prospective clients, provided such consent is given after full disclosure of the relevant facts and their implications. On a number of occasions, however, one of the clients has been a governmental entity. In such cases, we have opined that a governmental entity may not consent to a conflict of interest, and the representation may not be accepted or continued under any circumstances, "because the public interest is involved." [FN1]

Although couched in language suggesting that the governmental entity's power or capacity to give consent is limited with respect to waiving conflicts of interest, these opinions in reality have held that a lawyer who could not accept or continue a representation without the consent of a governmental entity ethically may not do so even though the consent of that entity has been or could be obtained pursuant to DR 5-105(C). Having considered the so-called "government cannot consent" rule in depth, and giving due regard to its underpinnings and to the concerns expressed by those who would perpetuate the rule, we have concluded that a per se ban is unjustified and should no longer be imposed in this State.

*2 The well-spring for the "government cannot consent" rule is ABA 16 (1929), which barred one member of a law firm from representing criminal defendants in cases prosecuted by another member

of the same firm in his capacity as part-time prosecutor. The ABA Committee opined: "The prosecutor himself cannot represent both the public and the defendant and neither can a law firm serve two masters." The Committee went on to state, however, that "[n]o question of consent can be involved as the public is concerned and it cannot consent." This precept was reiterated without further elaboration in other ABA opinions during the early 1930's. See ABA 34 (1931) (part-time city attorney may not represent defendants in criminal proceedings in city court); ABA 71 (1932) (attorney who did legal work in connection with a municipal bond issue may not subsequently attack the validity of the bonds on behalf of the city commission or a taxpayer); ABA 77 (1932) (prosecutor may not simultaneously represent in a civil action a person he is prosecuting).

None of the ABA opinions proffer a rationale or suggest any authority for the dogmatic, all-encompassing rule they embrace. This Committee, nevertheless, has relied upon the government cannot consent rule in its opinions, ordinarily with little more than a direct or indirect reference to the early opinions of the ABA Committee, thereby creating the impression that the rule is well-entrenched and axiomatic.

In recent years, a number of state and local ethics committees [FN2] and the courts of New York [FN3] and other jurisdictions [FN4] have either examined and expressly rejected the government cannot consent rule, or concluded that a representation, otherwise impermissible because of a conflict of interest, may be undertaken or continued with the consent of the affected governmental entity, thereby implicitly assuming that a governmental entity can waive a conflict.

Even the ABA Committee appears to have abandoned the government cannot consent rule, and has not cited it for the past 20 years. See ABA Inf. 1235 (1972) [FN5] The most recent ABA opinion to address the issue of governmental consent expressly recognized that the question of the government's power to consent is one of law, not of ethics:
> We give no opinion on applicable law as to the authority of a public officer or public body to give consent to the representation of parties having differing interests when one of the parties is a public or governmental body or agency.

ABA Inf. 1433 (1978) (conflict for municipal attorney's office to represent municipal corporation and autonomous civil service commission in litigation against one another). Any doubt concerning the ABA's position was laid to rest by the adoption in 1983 of the Model Rules of Professional Conduct, Rule I.II(a) of which expressly contemplates governmental consent.

This Committee's prior statements that a government cannot consent to a conflict of interest should not be viewed as expressions of a legal conclusion that a governmental body or officer lacks the requisite legal authority or power to consent, because this Committee is not empowered to issue opinions on questions of law. Accordingly, our prior opinions held only that, when a conflict of interest affects a governmental entity, it would be unethical for the conflicted lawyer to undertake or continue the representation in question even if the governmental entity's consent has been secured in accordance with DR 5-105(C).

*3 We consider, then, whether there is a sufficient and reasoned basis for maintaining such a blanket ethical prohibition. Those who would perpetuate a per se rule against lawyers accepting the consent of governmental entities argue that this rule is justified because lawyers actually may use, or suggest an ability to use, their relationship with the governmental entities to gain an improper advantage for private clients, or alternatively, may secure consent through corruption.[FN6]

While we recognize the risk of corruption where governmental entities are involved, we believe that a blanket prohibition against lawyers accepting the consent of governmental entities is paternalistic and excessive, and that the danger is adequately addressed by several Disciplinary Rules, including the following:
> DR 9-101(C), which prevents lawyers from stating or implying that they have an ability to influence any tribunal, legislative body or public official impermissibly or on irrelevant grounds. [FN7]
>
> DR 8-101(A), which prevents a lawyer from using his or her public position to obtain or attempt to obtain a special advantage in legislative matters for the lawyer or a client. See also EC 8-8.

DR 1-104(A)(4), which prevents lawyers from engaging in conduct involving, among other things, "dishonesty," including participation in governmental corruption.[FN8]

Various statutory provisions governing the conduct of public officials potentially provide additional safeguards against the procurement of consents through governmental corruption.[FN9] Among these provisions are several criminal statutes, see, e.g., Penal Law §§ 100.00 (criminal solicitation), 105.00 (conspiracy), 195.00 (official misconduct), 195.20 (defrauding the government) and 200 (bribery and unlawful gratuities), which arguably apply not only to corrupt public officials, but also to attorneys obtaining consent through unlawful means, see Penal Law § 10.00(14) (defining "public servant" as including "every person specially retained to perform some government service").[FN10] Additionally, a special counsel retained by a municipality generally is subject to the codes of ethics applicable to municipal officials. See 1971 Op.Atty.Gen. (Inf.) 141. See also Gen. Mun.Law §§ 806, 808 (requiring the adoption of codes of ethics by every county, city, town, village and school district and the creation of ethics boards).

The ethical preconditions generally applicable to the acceptance or continuation of a representation, regardless of client consent, also are intended to protect the public interest and the legal profession from the unscrupulous lawyer or politician. Chief among these preconditions are those set forth in DR 5105(C) itself, which renders it improper for a lawyer to seek client consent unless it is "obvious" that he or she can adequately represent each client, including a client that happens to be a governmental entity, and requires full disclosure of the possible effect of the representation on the exercise of the lawyer's professional judgment on behalf of each client. See generally Unified Sewerage Agency v. Jelco Inc., 646 F.2d 1339, 1350 (9th Cir.1981) ("We believe the 'public interest' and 'prejudice' language used on occasion by the courts is merely another way of saying that 'adequate representation' could not be provided in those cases").[FN11]

*4 The other purported justification for a per se government cannot consent rule, the appearance of impropriety Canon 9 counsels lawyers to avoid, see, e.g., N.Y.State 431 (1976), is insufficient standing alone to warrant the imposition of a per se rule in these circumstances.

Accordingly, we conclude that where a lawyer is faced with a conflict of interest, and one of the affected parties is a governmental entity, the lawyer may accept or continue the representation with the entity's consent, provided there is full compliance with DR 5-105(C), i.e., the "obviousness" test is satisfied and full disclosure has been made. Of course, the lawyer must comply with all other disciplinary rules in obtaining the consent of and in representing all affected clients.[FN12] Whether the governmental entity has the legal authority to give such consent is a question of law we cannot address. See N.Y. City 894 (1978).

In addition, because governmental officials have a unique responsibility to act on behalf of the public, a lawyer seeking consent from such an official must be satisfied not only that the official in question is legally authorized and empowered to furnish the requested consent and has complied with all applicable legal requirements, but also that the process by which the consent is granted is sufficient to preclude any reasonable public perception that the consent was provided in a manner inconsistent with the official's public trust. In the context of a consent sought from a municipality or other local governmental entity, public disclosure of the request for consent ordinarily will satisfy this objective. In any case, lawyers should be alert to the potentially significant pitfalls that may accompany the relaxation of a long-established bright-line rule, particularly in the absence of applicable case law and in the face of enabling legislation that may not, explicitly at least, address the appropriate manner of procuring a DR 5-105(C) consent from a governmental entity.

Therefore, we modify our prior opinions (cited in note I) insofar as they state that, as a matter of legal ethics, consent of a governmental entity cannot cure a lawyer's conflict of interest in the same way that consent of a private client can under DR 5-105(C). This is not to say that the results in those opinions necessarily would change. Rather, the result in each opinion might well have been the same because it was not obvious that the lawyer could adequately represent both clients under DR 5-105 (C), because some other provision of the Code would have been violated by the proposed representation, or because, as a matter of law, the governmental entity lacked authority to consent to

the conflict or had not done so in the required manner.

We recognize that the foregoing constitutes a deviation from 25 years of Committee precedent. We are also mindful that lawyers and governmental entities may have refrained from entering into attorney-client relationships based on our prior opinions. However, as Chief Judge Charles Breitel stated:

> *5 Always critical to justifying adherence to precedent is the requirement that those who engage in transactions based on the prevailing law be able to rely on its stability ... The absence of such factors, on the other hand, makes easier the reassessment of aberrational departures from precedents and accepted principles.

People v. Hobson, 39 N.Y.2d 479, 489, 384 N.Y.S.2d 419 (1976); accord. Benjamin Cardozo, The Nature of the Judicial Process 151 (1921). Our retraction of a per se ban on a government waiver of a conflict of interest in favor of a more flexible rule neither renders improper past or ongoing attorney-client relationships nor requires lawyers to withdraw from existing engagements. Rather, it serves the salutary purpose of expanding the availability of counsel to those governmental entities that may wish to retain a certain law firm notwithstanding its other obligations.[FN13]

CONCLUSION

For the reasons stated and subject to the qualifications expressed above, the question posed is answered in the negative.

> FN1 See N.Y.State 40 (1966), 110 (1969), 111 (1969), 143 (1970), 149 (1970), 176 (1971), 218 (1971), 247 (1972), 257 (1972), 322 (1973), 323 (1974), 364 (1974), 392 (1975), 413 (1975), 450 (1976), 482 (1978), 578 (1986), 580 (1987), 588 (1988) and 603 (1989), all of which hold that the government may not waive a conflict of interest. In N.Y.State 453 (1976), we opined that a governmental entity may not consent to the use of its confidences and secrets, relying on N.Y.State 322.
>
> FN2 See Alabama Ops. R0-82-656 (1982), R0-86-12 (1986), RO-86-30 (1986), R0-88-100 (1988); Connecticut Inf. Op. 88-22 (1988); Illinois Op. 86-4 (1986); Kentucky Op. E-200 (1979); Maryland Op. 84-13 (1983); Massachusetts Op. 88-1 (1988); Michigan Inf. Ops. CI-1158 (1986), CI-760 (1983); Mississippi Op. 117 (1986); Missouri Inf. Op. 25 (1979); Nassau Co. Op. 9/88 (1988); N.Y. City 894 (1978); Ohio Sup.Ct.Op. 88-22 (1988); Ohio Op. 81-7 (1981); Tennessee Op. 84-F-59 (1984); Virginia Ops. 819 (1986), 864 (1986), 1086 (1988), 1167 (1989).
>
> FN3 See Prodell v. State, 125 A.D.2d 805, 806, 509 N.Y.S.2d 911 (3d Dep't 1986) (although the lawyer arguably took a position contrary to interests of school district he represented in a related litigation, the school district's consent vitiated any conflict).
>
> FN4 See City of Cleveland v. Cleveland Elec. Illuminating Co., 440 F.Supp. 193 (N.D.Ohio), aff'd mem., 573 F.2d 1310 (6th Cir.1977), cert. denied, 435 U.S. 996 (1978); Black v. State, 492 F.Supp. 848, 867 (W.D.Mo.1980); In re Petition for Review of Opinion 552 of Advisory Committee on Professional Ethics, 102 N.J. 194, 507 A.2d 233, 238-39 (1986) (overruling over 20 years of precedent, including In re A & B, 44 N.J. 331, 209 A.2d 101 [1965] and Ahto v. Weaver, 39 N.J. 418, 189 A.2d 27 [1963]); State v. Jones, 726 S.W.2d 515, 520 (Tenn.1987); Miller v. Norfolk & Western Ry. Co., 183 Ill.App.3d 261, 538 N.E.2d 1293 (4th Dist.1989) (disagreeing with In re LaPinska, 381 N.E.2d 700 [Ill.1978]).
>
> FN5 Arguably, the ABA began its retreat from the government cannot consent rule in ABA 306 (1962), which held that a lawyer could engage in lobbying activities on behalf of a client before a legislative committee where the lawyer's partner or associate was a member of the legislature, provided there was constitutional or statutory authority, i.e., express or implied public "consent," for doing so. This constituted a modification of a

prior opinion, ABA 296 (1959), which had held that such conduct was per se improper, citing ABA 16 for the proposition that "no question of consent could be involved as the public is concerned and it cannot consent."

FN6 One treatise on legal ethics speculates that the government cannot consent rule arises from a concern about the danger of corruption, but continues:
> Such a flat rule threatens more harm than good unless it is limited to circumstances in which the potential for corruption is high because of the lawyer's relationship to the governmental body or to powerful political groups that might strongly influence decisions made in the body's behalf.

Charles Wolfram, Modern Legal Ethics § 7.24, at 348 (1986) (footnotes omitted).

FN7 Indeed, a lawyer must not create the impression that prior or current practice before, or employment by, a governmental entity enables the lawyer to obtain some special advantage, must dispel such impression if it exists, and must decline employment if the potential client has such an expectation. See N.Y.State 507 (1979); N.Y.State 447 (1976); N.Y.State 435 (1976). See also A Mississippi Attorney v. Mississippi State Bar, 453 So.2d 1023 (Miss.1984); In re Connaghan, 613 S.W.2d 626 (Mo.1981); In re Thompson, 67 N.J. 26, 335 A.2d 1 (1975).

FN8 See, e.g., In re Weishoff, 75 N.J. 326 (1978).

FN9 Although this Committee does not opine on questions of law, we cannot render ethical guidance in a legal vacuum. In appropriate circumstances, such as those present here, we must for contextual purposes take into account pertinent legal principles.

FN10 See also Public Officers Law §§ 73 et seq. (conflicts of interest), 75 (bribery) and 77 (unlawful fees and payments); New York City Charter Ch. 68, § 2604 (ethics in general).

FN11 The facts of ABA 16, in which one member of a law firm wished to represent criminal defendants in cases prosecuted by another member of the same firm, present an excellent example of circumstances in which client consent would not be effective to cure a conflict of interest. Were that inquiry before this Committee today, we would conclude under DR 5-105(C) that it was not obvious that the interests of both clients could be represented adequately by the firm, thereby rendering consent unavailable. See also ABA 77 (part-time prosecutor seeking to represent in a civil action a person he is currently prosecuting).

FN12 As the Georgia Supreme Court recently held in Request for Issuance of Proposed Formal Advisory Opinion, Request No. 88-R7 (July 25, 1991), neither adopting nor rejecting an opinion proposed by the Formal Advisory Opinion Board of the State Bar of Georgia which would have incorporated a government cannot consent rule:
> The practice of law on behalf of public agencies is too varied and complex to warrant a per se rule of disqualification. At the same time, the potential for conflicts of interest in that practice are [sic] such that a purported waiver by a public agency may not be sufficient, in se, to eliminate questions of conflicts.

FN13 See In re Petition for Review of Opinion 552 of Advisory Committee on Professional Ethics, 507 A.2d at 239 ("We are additionally moved by the severe financial strains the per se rule imposes on local governments.... Such burdens are not justified in the absence of a demonstrate, albeit potential, conflict of interests realistically militating against effective representation and lawyer-client fidelity.")

NY Eth. Op. 629, 1992 WL 465631 (N.Y.St.Bar.Assn.Comm.Prof.Eth.)

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.