UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY as Administrator    Case No. 07-CV-6915(DLC)
for RELIANCE INSURANCE COMPANY,    ECF Case

                    Plaintiff,

-against-

DORMITORY AUTHORITY – STATE OF NEW YORK, TDX
CONSTRUCTION CORP. and KOHN PEDERSON, FOX ASSOCIATES,
P.C.,

                    Defendants.
------------------------------------------------------------------------------------X
DORMITORY AUTHORITY OF THE STATE OF NEW YORK AND
TDX CONSTRUCTION CORP.,

                    Third-Party Plaintiffs,

-against-

TRATAROS CONSTRUCTION, INC.,

                    Third-Party Defendant.
------------------------------------------------------------------------------------X
TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY
AND SURETY COMPANY,

                    Fourth-Party Plaintiffs,

-against-

CAROLINA CASUALTY INSURANCE COMPANY, Et Al.

                    Fourth-Party Defendants.
------------------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FOURTH-PARTY DEFENDANT UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

                                    Carroll, McNulty & Kull LLC
                                    Attorneys for Fourth Party Defendant
                                    United States Fire Insurance Company
                                    570 Lexington Avenue – 10th Floor
                                    New York, New York 10022

## **TABLE OF CONTENTS**

Table of Contents ................................................................................. i

Table of Authorities .............................................................................. ii

Preliminary Statement ........................................................................... 1

Legal Argument .................................................................................... 2

      A.  Trataros' Notice Was Untimely And Unreasonable
          As A Matter of Law .................................................................. 2

      B.  No "Property Damage" Was Caused By An "Occurrence" .............. 8

      C.  The Faulty Workmanship Exclusions Bar Coverage ..................... 12

      D.  Products Completed Operations Hazards Coverage ...................... 14

Conclusion .......................................................................................... 14

**TABLE OF AUTHORITIES**

<u>Cases</u>

Adler & Nielson Co., Inc. v. Ins. Co. of N. Amer.,
    56 N.Y.2d 540, 542 (1982)................................................................    12

Continental Cas. Co. v. Rapid-Amer. Corp.,
    80 N.Y.2d 640, 651, 592 N.Y.S.2d 966 (1993)....................................    11

Darby v. Darby,
    268 A.D.2d 270, 702 N.Y.S.2d 50 (1st Dep't 2000)...........................    5

DiGuglielmo v. Travelers Property Cas. Co.,
    6 A.D.3d 344, 776 N.Y.S.2d 542 (1st Dep't 2004)............................    3

French v. Assurance Co. of Amer.,
    448 F.3d 693 (4th Cir. 2006) ..............................................................    12

Gebhardt v. Allspect, Inc.,
    96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) ...........................................    7

George A. Fuller Co. v. United States Fidelity & Guarantee Co.,
    613 N.Y.S.2d 152, 84 N.Y.2d 806 (1994)...........................................    10

Haas Tobacco Co. v. Amer. Fidelity Co.,
    226 N.Y. 343, 123 N.E. 755 (1919) .....................................................    3

Hartford Accident & Indem. Co. v. A.P. Reale & Sons., Inc.,
    644 N.Y.S.2d 442 (3d Dep't 1996) ......................................................    11

Hartford Fire. Ins. v. Baseball Office of the Comm'r,
    236 A.D.2d 334, 654 N.Y.S.2d 212 (1st Dep't 1997)..........................    5

J.Z.G. Resources, Inc. v. King,
    987 F.2d 98 (2d Cir. 1993) ..................................................................    11

Kason v. City of New York,
    8 Misc.2d 810, 373 N.Y.S.2d 458 (N.Y.Co. 1973)...........................    3

Marine Midland Svcs. Corp. v. Samuel Kosoff & Sons, Inc.,
    60 A.D.2d 767, 400 N.Y.S.2d 959 (4th Dep't 1977)...........................    10

Maryland Cas. Co. v. W.R. Grace and Co.,
    23 F. 3rd 617, 626-27 (2d Cir. 1994)...................................................    9

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

<u>Cases</u>

Nat'l Cas. Ins. v. City of Mount Vernon,
    515 N.Y.S.2d 267 (2d Dep't 1987) ............................................................. 9

Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Structural Sys. Tech.,
    964 F.2d 759 (8th Cir. 1992) .................................................................... 13

Odgen Corp. v. Travelers Indem. Co.,
    924 F.2d 39, 43 (2d Cir. 1991) .................................................................. 3

Pavarini Constr. Co., Inc. v. Continental Ins. Co.,
    759 N.Y.S.2d 56, 57 (1st Dep't 2004)...................................................... 11

Pozzi Window Co. v. Auto-Owners Ins.,
    446 F.3d 1178 (11th Cir. 2006) ............................................................... 13

Saks v. Nicosia, Constr. Corp.,
    215 A.D.2d 832 (3d Dep't 1995)............................................................. 10

Sec. Mut. Ins. Co. v. Acker-Fitzsimmons Corp.,
    31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) ....................... 3,4

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ...................................................................... 7

Uniroyal, Inc. v. Home Ins. Co.,
    707 F. Supp. 1368 (E.D.N.Y. 1988) .......................................................... 9

United States Underwriters Ins. Co. v. Falcon Constr. Corp.,
    2003 WL 22019429 (S.D.N.Y. 2003) ....................................................... 6

Westervelt v. Dryden Mutual Insurance Company,
    676 N.Y.S.2d 358 (3d Dep't 1998) ........................................................... 8

Winstead v. Uniondale Union Free School Dist.,
    201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994)............................... 5

## I.    **PRELIMINARY STATEMENT**

This brief is submitted in reply to Fourth-Party Plaintiffs Trataros Construction Inc. ("Trataros") and Travelers Casualty and Surety Company's ("Travelers")(collectively "Trataros") Declarations and Memorandum of Law in Opposition to Fourth-Party Defendant United States Fire Insurance Company's ("U.S. Fire") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Trataros Mem.") and in further support of U.S. Fire's Motion to Dismiss.

For purposes of economy, and to avoid unnecessary duplication, U.S. Fire incorporates by reference herein its statements of fact from its Memorandum of Law in Support of its Motion to Dismiss ("U.S. Fire Mem.") and the annexed Reply Declaration of John P. De Filippis ("De Filippis Reply Dec.").

In opposition to U.S. Fire's Motion, Trataros argues that: (1) the claims of defective workmanship for which it will potentially seek indemnification and contribution constitute "occurrences" within the meaning of U.S. Fire Policy Number 5031690768 issued to Trataros for the period April 1, 1998 to April 1, 2000 (the "Trataros Policy"); (2) the Trataros Policy's faulty workmanship exclusions do not bar coverage; (3) Trataros provided "reasonable notice" to U.S. Fire; and (4) Trataros' good faith belief in non-liability excuses its late notice.

These hollow arguments necessarily fail based on the undisputed facts that: (1) neither Trataros nor any of its subcontractors had anything to do with flooring work until after the Trataros Policy had expired (De Filippis Reply Dec.); and (2) U.S. Fire never received timely notice as to any claims related to the Project, whether regarding defective flooring, or any so-called "Miscellaneous Defects" (Trataros. Mem., p. 4) purportedly unrelated to the Project flooring. Moreover, the claims regarding said Miscellaneous Defects in Trataros' work separate and apart from the epoxy terrazzo flooring system do not in any way implicate coverage under

the Trataros Policy, and Trataros' opposition is rife with unsupported factual assertions and citations to cases that are either distinguishable on the facts and/or law, or are simply not authoritative here.

Finally, there is no possibility of coverage for claims first set forth in this action arising out of work completed prior to April 1, 2000, as same would be clearly violative of the three-year Statute of Limitations for negligence claims. In light of the foregoing, U.S. Fire's Motion must be granted as a matter of law.

## II.    **LEGAL ARGUMENT**

### A.    **Trataros' Notice Was Untimely And Unreasonable As a Matter of Law**

In opposition to this Motion, Trataros argues that its admittedly late notice to U.S. Fire was "entirely reasonable" under the circumstances. In fact, the proffered excuses for its belated notice are wholly insufficient as a matter of law and, consequently, Trataros' claims for coverage under the Trataros Policy must be dismissed.

First, Trataros claims that shortly after it was impleaded by DASNY on or about August 4, 2004, it began its "ground up" investigation. See Declaration of Joanne M. Bonacci, Esq. ("Bonacci Dec."), p. 2. Trataros commenced its Fourth-Party impleader against U.S. Fire and others on or about February 17, 2005, prior to giving U.S. Fire notice in order to meet the deadline imposed by the Court for impleading any additional parties in the 2004 Action because its investigation was ongoing. Trataros appears to confuse the issue of impleader with the notice requirement under the Trataros Policy – which it failed to meet.

Second, Travelers claims that: (1) Trataros ceased operating business more than a year prior to the filing of the Third-Party Complaint in the 2004 Action; (2) it had no access to Trataros' documents and no evidence that Trataros ever received the policies in question so that

2

Travelers had no way to know what was required under the policies' terms; and (3) the evidence of insurance coverage was only obtained during its investigation of the DASNY's claims.

The undisputed facts belie these baseless statements. Indeed, Trataros had knowledge of the potential claims herein well in advance of the cessation of its operations and Travelers had the ability to contact Trataros' principles to ascertain the nature of the claims and the identity of Trataros' insurers well in advance of when it purportedly "discovered" this information.

New York case law is clear that an insured's duty to give notice arises when, from the information available relative to the accident or "occurrence," the insured could glean a reasonable possibility of a policy's involvement. See, e.g., DiGuglielmo v. Travelers Property Cas. Co., 6 A.D.3d 344, 776 N.Y.S.2d 542 (1st Dep't 2004); Security Mutual Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972)("Security Mutual"); and Odgen Corp. v. Travelers Indem. Co., 924 F.2d 39, 43 (2d Cir. 1991)(an insured's knowledge that a claim is likely, though not yet actually filed, is sufficient to trigger the duty of notice). Once an insured possesses such knowledge, it cannot recede and do nothing and its carelessness will not absolve it from the consequences of its actions. See, e.g., Haas Tobacco Co. v. American Fidelity Co., 226 N.Y. 343, 123 N.E. 755 (1919).

For example, in Kason v. the City of New York, 8 Misc.2d 810, 373 N.Y.S.2d 458 (N.Y. Sup. Ct. 1973) - a case on which Trataros relies in its opposition - the City's claim against its insurer was barred by late notice when the Court found that the City had knowledge of the "occurrence" for approximately 16 to 17 months prior to notifying its carrier. The Court also noted the absence of any proof that the City thought it was not liable for the occurrence.

The Kason Court, citing Security Mutual, held that the City was required to exercise reasonable diligence and care in the discharge of its responsibility to inform its carrier and its

3

own inaction or inefficiency did not absolve it from the consequences.   Indeed, there are very limited circumstances where an insured's delay in providing notice may be excused. Specifically, a delay may be excused if based on an insured's good faith belief of non-liability; where the insured lacks or is incapable of acquiring knowledge that an accident has occurred; or if the insured is out of state.   <u>Security Mutual</u>, 31 N.Y.2d at 441, 340 N.Y.S.2d at 903, 293 N.E.2d at 77.

These circumstances are not present here.   While Trataros claims documents "accepted by DASNY and TDX" set forth that it "was not for responsible for concrete delamination," and therefore not liable, the fact is that, by letter dated March 7, 2003, TDX supplied Trataros' Project Manager, Athena Kuris, with Testwell Laboratories ("Testwell") March 5, 2003 expert report revealing the extensive debonding of the terrazzo system. De Filippis Aff., Exhibit "C." As set forth in the De Filippis Reply Dec., TDX informed Trataros of these investigatory findings regarding the potential failure of the terrazzo system, and that Trataros, as general contractor, would "be held responsible for all conditions, should final analysis show G.M. Crocetti's system failure was due to poor workmanship; not to mention the potential problems posed by the underlayment subcontractor, Bartec, and its recommended product, Conflow, for floor-leveling."   TDX then advised Trataros that "it would be to [Trataros'] utmost benefit to take an active role in this issue."   Thus, Trataros was notified of a potential claim for liability against it and given documentation of the "accident" in question.   Moreover, at the time of the letter, Trataros was in operation and was headquartered in New York City.

Trataros notes that by the time DASNY "filed its Third-Party Complaint on or about August 4, 2004, Trataros had not operated as a functioning business . . . for nearly 14 months." Trataros Mem., p. 10-11.   This means, by Trataros' own admission, that the company was still in

business until at least mid-June 2003. Thus, it is undisputed that Trataros had more than two months from the time of the March 7, 2003 letter from Construction Manager TDX until the time it purportedly closed its doors to put U.S. Fire on notice of the potential claims. But Trataros did nothing. <u>See</u>, <u>e.g.</u>, <u>Winstead v. Uniondale Union Free School Dist.</u>, 201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994); <u>Darby v. Darby</u>, 268 A.D.2d 270, 702 N.Y.2d 2d 50 (1st Dep't 2000)(finding that insured who procured the general liability policy was chargeable with the knowledge of whether that insurance coverage covered the potential claim as opposed to law firm retained by insured). <u>See also</u> <u>Hartford Fire Ins. v. Baseball Office of the Comm'r</u>, 236 A.D.2d 334, 654 N.Y.S.2d 212 (1st Dep't 1997).

As if this is not enough, at around the same time, Travelers was also put on notice of these potential claims. By correspondence dated June 17, 2003 to DASNY, TDX summarized the results of detailed investigations and analyses performed by three different firms with respect to the alleged failure of the terrazzo system, and by correspondence dated August 28, 2003 to DASNY (in which Travelers and Trataros were copied), TDX stated that "there has been deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation at Baruch College Site B." De Filippis Aff., Exhibits "D" and "E."

In addition to arguing that they were somehow unaware of the potential claims against them, Trataros and Travelers contend that they were unaware of the existence of insurance coverage. Contrary to their assertions, the evidence shows that in or about October 1998, Trataros obtained certificates of insurance identifying the insurers, the policies and the insurance brokers to which a claim could be presented. De Filippis Aff., Exhibit "N."

While Fourth-Party Plaintiffs claim they had no access to any information or documentation until September 24, 2004 when Travelers received documents from Crocetti,

Bonacci Dec., ¶5, the evidence shows that, even after Trataros purportedly ceased its operations, information regarding the identity of Trataros insurer(s) was readily obtainable by Travelers. In fact, Trataros' principals, Costas and Joanne Trataros, set forth their addresses, home telephone numbers and Social Security numbers on page 3 of the Travelers' General Agreement of Indemnity ("GAI"). See Exhibit "3" to the Affidavit of John Scarpellino, Sr., Rogers Dec., Exhibit "E".

Significantly, Travelers offers no evidence of any efforts taken to contact the Trataros principals, or whether anyone ever bothered to telephone them (since their number is on the GAI), or whether a private investigator was ever called out to visit and speak to them (since their address is on the GAI). No evidence was produced that such efforts failed. No evidence was produced that these individuals refused to cooperate. No evidence or documentation was produced regarding precisely when Trataros ceased to be operational or what happened to its records or whether it had any further contact with Travelers, its purported "attorney in fact." Thus, Trataros' unsupported claim of the "reasonableness" of its investigation is insufficient to defeat this Motion, and its excuses for late notice fail as a matter of law.

Furthermore, Trataros' reliance on United States Underwriters Ins. Co. v. Falcon Constr. Corp., 2003 WL 33019429 (S.D.N.Y. 2003)("U.S. Underwriters") in support of its argument that it had to conduct an investigation to determine insurance coverage is misplaced. In U.S. Underwriters, after the insured owner retained a law firm to defend it, the law firm immediately conducted a search to identify the negligent subcontractor and its insurance information. Despite the fact that the place where the relevant documents were located was closed, the insurer received notification of the owner's claim approximately two months after the firm received the relevant documents.

By contrast, it was more than two years from the time that Trataros was first advised of a potential claim against it (via the March 7, 2003 TDX letter) before Travelers notified U.S. Fire (on March 30, 2005, by service of the Amended Fourth-Party Complaint and related pleadings in the 2004 Action, De Filippis Aff., Exhibit "L"). Additionally, it was nearly eight months from the time that Travelers inspected the premises (in August 2004, Bonacci Dec., ¶4) until it first provided notice to U.S. Fire by serving it with the Amended Fourth-Party Complaint in the 2004 Action. All that Trataros offers as an excuse for this delay is the unsupported allegations of its counsel as to its "good faith investigation of the Flooring Claims," and the "need to undertake extensive investigation of the highly technical Flooring Claims." Trataros Mem. P. 11, citing to Bonacci Dec., p. 2. Indeed, it is beyond question that an attorney's unsupported, conclusory statements are not admissible as evidence. See Fed.R.Civ. 56(e). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002) (citing Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y.2000).

It is also incredulous to believe that Travelers, as an insurer, would argue that without having the benefit of the Trataros Policy, it did not know that timely notice was required. Indeed, virtually every general liability insurance policy contains a notice requirement. Although disputed, even if Travelers did not have the exact language of the notice provision contained in the Trataros Policy, as a general liability insurer, Travelers was well aware that the policies issued to Trataros contained a notice requirement and that the failure to comply with such requirements vitiates coverage under the policies.

In any event, it is firmly established that an assignee of an insured's rights under a liability policy has only those rights that an insured has against the insurer and the assignee is

subject to any defense which might have been asserted against the insured.  Westervelt v. Dryden Mutual Insurance Co., 676 N.Y.S.2d 358 (3d Dep't 1998).  Thus, at the end of the day, Travelers and its attorneys' knowledge and actions are irrelevant.  The sole issue is whether Trataros provided timely notice of the claim to U.S. Fire, and it plainly did not.

Accordingly, based on the facts presented herein and as a matter of law, Trataros has failed to provide U.S. Fire with timely and reasonable notice.  Therefore, the Fourth-Party Complaint and any cross-claims against U.S. Fire, must be dismissed with prejudice.

**B.    No "Property Damage" Was Caused By An "Occurrence"**

To establish coverage under the Trataros Policy it must first be determined: (1) whether the claim involves "property damage" within the meaning of the Policy; (2) whether the "property damage," if any, arises out of an "occurrence" as that term is defined under the Policy; (3) if so, whether any policy exclusions bar coverage for such "property damage"; (4) and, if the claim involves "property damage" caused by an "occurrence," and no exclusion applies, whether the "property damage" occurred during the relevant policy period.  In this case, however, Trataros and Travelers cannot establish an entitlement to coverage under any of the foregoing criteria, and, as such, their respective and collective fourth-party claims fail as a matter of law to present any cause of action for which relief can be granted.  Therefore, all claims against U.S. Fire must be dismissed herein with prejudice.

Trataros alleges that "property damage" arising out of an "occurrence" exists under the Trataros Policy by way of "continuous or repeated exposure to substantially the same general harmful conditions."   The cases cited by Trataros in support of its position are unpersuasive and distinguishable.

Trataros cites <u>Maryland Cas. Co. v. W.R. Grace and Co.</u>, 23 F.3rd 617, 626-27 (2d Cir. 1994) for the adoption of the date of the injury-in-fact as the trigger for occurrence-based property damage coverage. The "injury-in-fact" approach is consistent with the Trataros Policy, which provides coverage for "property damage" that occurs during the policy period. <u>See e.g.</u>, <u>Uniroyal, Inc. v. Home Ins. Co.</u>, 707 F. Supp. 1368 (E.D.N.Y. 1988); and <u>Nat'l Cas. Ins. v. City of Mount Vernon</u>, 515 N.Y.S.2d 267 (2d Dep't 1987)(court recognized that an insurer is liable only for damages for physical injury to tangible property that occurs during its policy period and is not liable for damages for physical injury which occurs before or after the policy period).

Thus, even assuming Trataros could demonstrate property damage caused by an occurrence, such damage would have had to have resulted during the relevant Policy period. To the extent it has not, there is no coverage for Trataros or Travelers under the U.S. Fire Policy. Indeed, in the instant matter, no duty to defend or to indemnify is present relative to the flooring claims or any connected property damage to the Project because, as is shown above, and in the undisputed facts set forth in the accompanying De Filippis Reply Dec., Trataros did not engage the flooring contractor services of Bartec or Crocetti, and in fact did not have DASNY's authority to do so until <u>after</u> the Trataros Policy had expired. Thus, all property damage claims in any way connected to defective flooring derive from work contracted for and conducted after April 1, 2000, the expiration date of the Trataros Policy. For this reason, all claims for property damage coverage in any way connected with the flooring work authorized under the April 19, 2000 change order must be dismissed as against U.S. Fire.

U.S. Fire also respectfully refers this Honorable Court to the cases cited in its Memorandum of Law in Support regarding the proposition that allegations pertaining to the performance of substandard work do not constitute a claim for "property damage" under a policy

9

grant.  See, e.g., George A. Fuller Co. v. United States Fidelity & Guarantee Co., 613 N.Y.S.2d 152, lv. denied 84 N.Y.2d 806 (1994)(the policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for was defectively produced.)   Although DASNY and/or other parties may have asserted generalized claims of "construction defects" by Trataros and/or its subcontractors at the Project (the so-called "Miscellaneous Defects"), no claim of damage to the tangible property of any third-party has been asserted herein that constitutes "property damage" within the meaning of the Trataros Policy.

Saks v. Nicosia, Constr. Corp., 215 A.D.2d 832 (3d Dep't 1995), cited by Trataros, addresses a claim for damage to the real property surrounding a defectively constructed house and involves an insurance policy which does not define the term "occurrence." Significantly, the Third Department acknowledged that the policy excludes coverage for faulty workmanship to the work product itself, which is exactly the claim at issue herein as to the flooring work by Trataros' subcontractors.

As to what constitute an "occurrence" under a CGL policy, Marine Midland Svcs. Corp. v. Samuel Kosoff & Sons, Inc., 60 A.D.2d 767, 400 N.Y.S.2d 959 (4th Dep't 1977), also cited by Trataros, illustrates that faulty workmanship is itself not an occurrence.   Marine Midland addressed an insurer's duty to defend under a policy for claims of damage to a building due to, but distinct from, faulty workmanship in construction of a roof on that building.  The duty to indemnify was never addressed and the Court also noted that the damage to the building could constitute an occurrence.  Indeed, throughout its opposition, Trataros has offered no authority for the contention that faulty workmanship itself constitutes an occurrence, because under New York law, it does not.

10

Setting aside the undisputed fact that Trataros did not perform or contract for any flooring-related work prior to the expiration of the Trataros Policy on April 1, 2000, it is well-established under New York law that damages arising out of a breach of contract – such as where a contractor is alleged not to have performed as required under a contract - do not constitute damages arising out of an "occurrence." See, e.g., Pavarini Constr. Co., Inc. v. Continental Ins. Co., 759 N.Y.S.2d 56, 57 (1st Dep't 2004). New York courts have held that the term "occurrence" does not include the normal, expected consequences of poor workmanship as the cost for such substandard work is to be born by the tradesman. See, e.g., Hartford Accident & Indem. Co. v. A.P. Reale & Sons, Inc., 644 N.Y.S.2d 442 (3d Dep't 1996)(purpose of a CGL policy is to provide for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not what the damaged person bargained for); and J.Z.G Resources, Inc. v. King, 987 F.2d 98 (2d Cir. 1993)(under New York law, faulty workmanship is not considered to be an "occurrence").

Continental Cas. Co. v. Rapid-Amer. Corp., 80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) is likewise distinguishable because it addresses, among other things, the issue of the duty to defend certain bodily injury asbestos claims under a standard form CGL policy with a different definition of occurrence than that contained in the Trataros Policy. Nor does the case address property damage arising out of faulty workmanship. Moreover, Trataros seeks "indemnification and or contribution" should DASNY or TDX recover against it – not a defense as is addressed in Continental -- and the cases discussed above that Trataros has cited. This is significant because, of course, the duty to defend is broader than the insurer's obligation to indemnify." Id. at 649, 969.

11

Trataros has asserted that if it is found liable for damages to DASNY, then those damages will have been caused primarily by the acts or omissions of Trataros' subcontractors in breach of their construction contracts, and/or by failure to comply with industry standards and contract specifications during the work at the Project. Thus, Trataros has conceded that its fourth-party claims are based upon a breach of construction contracts and/or faulty workmanship, neither of which constitutes a covered "occurrence" within the meaning of the Trataros Policy. As such, there can be no coverage owed by U.S. Fire to Trataros or Travelers.

**C.    The Faulty Workmanship Exclusions Bar Coverage**

Adler & Nielson Co., Inc. v. Ins. Co. of N. Amer., 56 N.Y.2d 540, 542 (1982), cited by Trataros, confirms that there is no coverage for "property damage to work performed by or on behalf of the named insured" under a policy exclusion that precludes coverage for damage to the work product itself. Thus, any claims related to defective or substandard flooring, setting aside the fact that no flooring work was done during the Policy period, would not be covered under the Policy under exclusion J(5), which provides that there is no coverage for property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

Trataros argues that work by a subcontractor is not included in the scope of the faulty workmanship exclusions notwithstanding the fact that the above-cited exclusion J(5) specifically refers to work by subcontractors. Trataros curiously cites French v. Assurance Co. of Amer., 448 F.3d 693 (4th Cir. 2006), a case applying Maryland's substantive law, and discussing a 1986 ISO CGL policy form. (Here, New York substantive law is being applied to a 1994 ISO CGL form.) Trataros cites French for the proposition that property damage to non-defective portions

12

of a structure caused by the defective work of a subcontractor of the insured is not excluded for coverage under the 1986 policy form. Trataros also cites Pozzi Window Co. v. Auto-Owners Ins., 446 F.3d 1178 (11th Cir. 2006), a case applying Florida law, and Nat'l Union Fire Ins. Co of Pittsburgh, Pa. v. Structural Sys. Tech., 964 F.2d 759 (8th Cir. 1992), a case applying Missouri law, for essentially the same purpose.

These cases are all irrelevant. In the first place, none apply New York law. Moreover, coverage is precluded under New York law and in this case (and French agrees with this) for defective, contracted-for work. Moreover, the subcontractor's exception does not exist in exclusion J(5) of the Trataros Policy, as is set forth above.

Essentially, Trataros contends that: (1) exclusion J(6) does not exclude coverage for property damage arising out of work by subcontractors; (2) exclusion J(5) does not apply to property damage arising out of work by Trataros or its subcontractors after said work has been completed; and (3) the products-completed operations hazard coverage does apply to damage arising out of Trataros or its subcontractors' work after it has been completed.

Thus, by negative implication, Trataros must admit (and it offers no evidence in admissible form to rebut such implication) that: (1) exclusion J(6) precludes coverage for damages arising out of defects in ongoing work by Trataros; (2) exclusion J(5) precludes coverage for property damage arising out of work by Trataros or its subcontractors while such work is ongoing; and (3) the products-completed operations hazard does not apply to property damage arising out of ongoing work by Trataros or its subcontractors.

Finally, as has been documented herein and in the De Filippis Reply Dec., no flooring work was even commenced by Trataros or any of its subcontractors prior to the expiration of the Trataros Policy. Furthermore, to the extent there are ever any claims of defective workmanship

13

by Trataros or its subcontractors for work ongoing during the Trataros Policy that was not related to the flooring work, coverage for same is precluded by exclusions J(5) and J(6).

Therefore, all claims for coverage relative to any current or potential property damage charges must be summarily dismissed because there can be no coverage under the Trataros Policy for any defective flooring work or damage alleged to derive therefrom. To deny such relief as premature is to ignore the fact that Trataros has brought such unripe claims for possible or potential relief in the Fourth-Party Complaint.

**D.    Products Completed Operations Hazards Coverage**

Trataros also desperately attempts to create coverage under the separate coverage grant for Products Completed Operations Hazards. See De Filippis Aff., Exhibit "N." Pursuant to the definition of "products completed operations hazards," the Trataros Policy provides coverage for property damage that occurs away from Trataros' premises which arises out of Trataros' and its subcontractors' operations after their operations have been completed. In other words, wherever Trataros and/or its subcontractors did not complete the work alleged to have been defective (such as the terrazzo flooring) until after the Trataros Policy expired (indeed, work was not even started on the flooring until after expiration of the Policy), Trataros is not entitled to coverage. Furthermore, as argued above, coverage for completed work is excluded to the extent such claims reflect damage to the work itself. Thus, this argument has absolutely no merit.

**III.    CONCLUSION**

For all of the reasons set forth herein, it is clear that no coverage is owed by U.S. Fire under the Trataros Policy to Trataros, Travelers or any other party because Trataros' admittedly untimely notice was not reasonable under the circumstances of this case. Nor is coverage available under the Trataros Policy with regard to any claims relative to flooring work as such

14

work was show not to have been commenced until after expiration of the Trataros Policy.  Nor is there the possibility coverage for any unparticularized claims of damages arising out of work not begun prior to April 1, 2000.  Nor is there any possibility of claims first set forth in this action arising out of work completed prior to April 1, 2000, as same would be clearly violative of the Statute of Limitations for negligence claims.

To that end, U.S. Fire respectfully requests that the Court issue an Order dismissing the action and all pending claims against U.S. Fire with prejudice; and requiring Fourth-Party Plaintiffs to pay all of U.S. Fire's fees and costs in connection with the defense of this action, the 2004 Action and the interim mediation.  The latter request is made in response to Fourth-Party Plaintiffs' prior refusal to voluntary discontinue all of its claims against U.S. Fire despite the absence of any good faith basis for same; and for such other and further relief as this Court may deem just and proper.

Kristin V. Gallagher (KG6820)

John P. De Filippis (JD2705)