# EXHIBIT "C"

82TAATRAC                   Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   TRAVELERS CASUALTY & SURETY
    and TRATAROS CONSTRUCTION
4   INC.,

5                 Plaintiffs,

6            v.                          07 CV 6915 (DLC)

7   THE DORMITORY AUTHORITY OF THE
    STATE OF NEW YORK and TDX
8   CONSTRUCTION CORP.,

9                 Defendants.

10  ------------------------------x

                                         New York, N.Y.
11                                       February 29, 2008
                                         11:30 a.m.
12
    Before:
13
                        HON. DENISE L. COTE,
14
                                            District Judge
15
                            APPEARANCES
16
    DREIFUSS BONACCI & PARKER, LLP
17       Attorneys for Plaintiffs Travelers & Trataras
    BY:  JOANNE BONACCI
18        ELI ROGERS

19

    HOLLAND & KNIGHT, LLP
20       Attorneys for Defendant The Dormitory
    BY:  STEPHEN BRETT SHAPIRO
21        TIMOTHY FROESSEL

22  ZETLIN & DECHIARA
         Attorneys for Defendant Kohn Pederson Fox
23  BY:  LOUIS J. DENNIS

24  SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD
         Attorneys for Defendant Specialty Construction
25  BY:  ROBERT RIGOLOSI

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

82TAATRAC                    Conference

```
 1   GOLDBERG SEGALLA LLP
          Attorneys for Defendant Dayton Superior
 2   BY:  SUZIN RASO

 3   GREEN & LAVELLE
          Attorneys for Defendant National Union Insurance
 4   BY:  ERIKA ALJENS

 5   GOGICK BYRNE & O'NEILL
          Attorneys for Defendant Weidlinger & Arquitectonica
 6   BY:  STEPHEN SCHRECKINGER

 7   KALB & ROSENFELD P.C.
          Attorneys for Defendant TPS Jordan Panel
 8   BY:  TERRENCE J. O'CONNOR

 9   THELAN REID BROWN RAYSMAN & STEINER LLP
          Attorneys for Defendant CBC Systems USA
10   BY:  JOHN FEDUN

11   CARROLL MCNULTY & KIM LLC
          Attorneys for Defendant US Fire Insurance
12   BY:  JOHN P. DEFILIPPIS

13   TOMPKINS MCGUIRE WACHENFELD & BARR LLP
          Attorneys for Defendant Lumberman's Mutual/Kemper
14   BY:  MICHAEL S. MILLER

15   MOUND COTTON WOLLAN & GREENGRASS
          Attorneys for Defendant Allied
16   BY:  DIANA E. GOLDBERG

17   ZICHELLO & MCINTYRE LLP
          Attorneys for Defendant Carolina Casualty
18   BY:  VINCENT J. ZICHELLO

19   RIKER DANZIG SCHERER HYLAND PERRETTI LLP
          Attorneys for Defendant Harleysville Mutual
20   BY:  TRACEY K. WISHERT

21   O'CONNOR REDD
          Attorneys for Defendant Bartec Ind.
22   BY:  JEREMY PLATEK

23   L'ABBATE BALKAN COLAVITA & CONTINI LLP
          Attorneys for Defendant Cosentini
24   BY:  MARTIN A. SCHWARTZBERG

25   GENNET KALLMANN ANTIN & ROBINSON P.C.
          Attorneys for Defendant Great American
```

82TAATRAC                    Conference

1    BY:   DONALD GEORGE SWEETMAN

2    MELITO & ADOLFSEN P.C.
          Attorneys for Defendant Zurich
3    BY:   S. DWIGHT STEPHENS

4    MORGAN MELHUISH MONAGHAN ARVIDSON ABRUTIN & LISOWSKI
          Attorneys for Defendant Ohio Casualty
5    BY:   JAMES F. MULLEN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

82TAATRAC                    Conference

1              (Case called)

2              MS. BONACCI:  Joanne Bonacci and Eli Rogers, on behalf

3    of plaintiffs.

4              MR. SHAPIRO:  Steven Shapiro, from Holland and Knight

5    for the Dormitory Authority, the State of New York and TDX

6    Construction Corporation.

7              Timothy Froessel is with here with me.

8              MR. DENNIS:  Louis Dennis, for Kohn Pederson Fox.

9              MR. RIGOLOSI:  Robert Rigolosi for party defendants

10   Specialty Construction Brands TA Tech, TEC.

11             MS. RASO:  Susan Raso, for third-party defendant,

12   fifth party plaintiff.

13

14             MS. ALJENS:  Erica Aljens, National Union Fire

15   Insurance Company.

16

17             MR. SCHRECKINGER:  Stephen Schrechinger.  I represent

18   two of the recently added third-party defendants.

19             MR. O'CONNOR:  Terrence O'Connor, for third party

20   defendant Jordan Panel Systems Corporation.

21             MR. FEDUN:  John Fedun, for third-party defendant, LPI

22   USA.

23             MR. DEFILLIPIS:  John DeFilippis for fourth party

24   defendant United States Fire Insurance Company.

25             MR. MILLER:  Michael S. Miller on behalf of fourth

82TAATRAC                    Conference

1  party defendant Lumberman Mutual.

2          MS. GOLDBERG:  Diane Goldberg, on behalf of defendant

3  Allied World Insurance Company Inc.

4          MR. ZICHELLO:  Vincent Zichello, for fourth party

5  defendant Carolina Casualty Insurance.

6          MS. WISHERT:  Tracey Wishert, on behalf of fourth

7  party defendant Harleysville Insurance Company.

8          MR. WASKO:  Robert Mark Wasko, cocounsel for Caroline.

9          MR. PLATEK:  Jeremy Platek, for --

10          MR. SCHWARTZBERG:  Barton Schwartzberg for the

11  third-party defendant.

12          MR. SWEETMAN:  Donald G. Sweetman, for Great American

13  Insurance Company, fourth party defendant.

14          MR. STEPHENS:  Dwight Stephens.

15          MR. MULLENS:  James Mullen -- fourth party defendant

16  Ohio Casualty Insurance Company.

17          THE COURT:  Thank you all.

18          This conference had two slated purposes.  One was to

19  hear whether this was going to be a jury or a nonjury trial.

20  And the second was to talk about the remainder of the discovery

21  process including limitations on depositions and the scheduling

22  of those depositions.

23          Mr. Shapiro, should I be turning to you for a report?

24          MR. SHAPIRO:  I believe Ms. Bonacci has the report.

25          THE COURT:  Ms. Bonnaci, keep your voice up, please.

82TAATRAC                          Conference

1          MS. BONACCI:  Yes, your Honor.

2          With respect to the jury trial I had spoken to my

3    client about what your Honor had proposed a method as handling

4    as a bench trial, and both Travelers and Trataras agreed to

5    that, so we would waive our jury demand.  However, since that

6    point in time I believe KPF had since placed in the jury

7    demand, so I'm not sure what will occur with that.

8          THE COURT:  I need an attorney to take charge here.

9          Now, Ms. Bonacci, will you be that lawyer or --

10         MS. BONACCI:  Sure.

11         THE COURT:  -- do I have some other candidate to take

12   charge of really making sure that all counsel in the case are

13   contacted and we can have a report with respect to the parties'

14   positions on issues today and going forward?

15         MS. BONACCI:  Yes, your Honor, I will do that.

16         THE COURT:  Okay.  Good.  So I think the bottom line

17   is we don't have universal agreement that this should be a

18   nonjury trial; am I right?

19         MS. BONACCI:  I believe the KPF counsel would answer

20   to that.  He is the only other one that demanded a jury.  We

21   waived our demand.

22         THE COURT:  I am going to assume based on your report,

23   Ms. Bonnaci, that this is a jury trial case and I'll give you a

24   week to contact all counsel and to advise me if that has

25   changed.

82TAATRAC                        Conference

1        Good.  With respect to deposition discovery,

2   Ms. Bonnaci.

3        MS. BONACCI:  Your Honor, we have a proposal that we

4   would seek the Court's approval on with respect to depositions.

5   Essentially, we have approximately 30 witnesses that are

6   necessary parties to be deposed.  Currently, your Honor, you

7   had 17 different law firms that are representing parties in the

8   case.  However, KPF has recently filed a third party complaint

9   adding an additional eight parties.  However, one of those

10  parties is my client, so it would be an additional seven

11  counsel that would be coming into the case giving us a total of

12  24 law firms.

13       And therefore because of that we would ask your Honor

14  to extend the current requirements in the Federal Rules to

15  allow us to have additional depositions and five days per

16  witness for those depositions.  It truly does limit the amount

17  of time that the different attorneys can ask questions and then

18  we can come to an agreement amongst all of us assuming all

19  parties are represented in the case to see how many hours each

20  specific counsel will be allotted.

21       THE COURT:  Are you saying to me, Ms. Bonnaci, that

22  all counsel agree that each witness should be subject to

23  examination for five days?

24       MS. BONACCI:  The only counsel, your Honor, that have

25  discussed this are the main parties to the case which would be

82TAATRAC                    Conference

1   KPF Daz and TDF and my client the additional parties are just

2   coming into the case and being represented now.  They

3   presumably don't have the same amount of time constraint on

4   witnesses.  It's mainly the main parties to the case that are

5   going to be taking the lion's share of the depositions.  A lot

6   of the fourth party defendants, your Honor, are joint carriers

7   and the like.

8              THE COURT:  So, I take it also the list of 30

9   witnesses does not include a survey of all the parties to know

10  if this agreement with respect to 30 witnesses is something

11  that I can rely on with respect to all the parties in the case?

12             MS. BONACCI:  Yes, your Honor.

13             THE COURT:  I'm sorry.  Yes, what?

14             MS. BONACCI:  It would not include the new parties who

15  have not made appearances yet in accordance with KPF's third

16  party client that was filed and you also have Dayton Superior

17  who has also filed a fifth party complaint against Croschetti.

18             THE COURT:  So, it includes everyone else?  It's the

19  agreement of everyone except the most newly added parties?

20             MS. BONACCI:  Well, your Honor what I would like is

21  the same one week that you've allotted for the jury trial to

22  get any objections that the other counsel would have to proceed

23  in that fashion, but the main parties were fine with five days

24  per witness and the 30 witnesses.

25             THE COURT:  Do you have a list of the 30 witnesses by

82TAATRAC                           Conference

1    name?

2            MS. BONACCI:  No, your Honor, we do not.

3            THE COURT:  How did you arrive at the number 30 then?

4            MS. BONACCI:  We each went through our Rule 26

5    disclosures and approximated who we could, what a good pool of

6    the number would be for us to agree to.

7            THE COURT:  Where do we stand on document discovery?

8            MS. BONACCI:  Your Honor, in connection with the

9    earlier matter that was filed, the majority of the parties had

10   conducted document discovery.  For the additional parties to

11   conduct document discovery they would have either served

12   document demands.  We've received a few mainly in connection

13   with the fourth party, the third party complaint that my client

14   filed and those parties still have time for one another to

15   respond to their document demands.

16           For the major parties, your Honor, in the first

17   instance we've all opened up our files for examination and a

18   lot of those examinations have already occurred prior to this

19   action being instituted and prior to the mediation going

20   forward.

21           MR. SHAPIRO:  Your Honor, if I may there are still a

22   fair --

23           THE COURT:  Is it Mr. Shapiro?

24           MR. SHAPIRO:  Yes, that's right.

25           There is still a fair amount of document discovery

82TAATRAC                              Conference

1    left to occur.  There was some documents exchanged in advance

2    of a mediation that was between some of the parties in this

3    case.  There are still a number of document demands outstanding

4    and I know that there's some document issues that may arise.

5    We're hoping to work those out.  It would certainly be

6    premature to bring that to the Court's attention at this time.

7    So you are aware of the universe of documents, it's probably

8    very similar to what you encountered in the Marriott case.  I

9    would say with four or $500 the equivalent of four or five

10   hundred bankers boxes to exchange the parties' location and I

11   think that there are probably ten to 15 parties that need to

12   commence during that review at this point in time.  However,

13   Ms. Bonnaci is correct, a lot of document discovery has already

14   occurred.

15          THE COURT:  I think that it probably is, it may be

16   helpful in this case to group the defendants and have lead

17   counsel with respect to groups of defendants so that not too

18   great a burden is placed on Ms. Bonnaci.

19          And, Mr. Shapiro, I think can't be one of those as the

20   owner or representing the owner of the site at least for all

21   the parties here that represent subcontractors.

22          Do I have a volunteer?  Someone?

23          MS. RASO:  I'll volunteer.

24          THE COURT:  Is this Ms. Raso?

25          MS. RASO:  Yes, it is, your Honor.

82TAATRAC                    Conference

1          THE COURT:  Thank you, Ms. Raso.  And you represent
2     Dayton Superior; is that right?
3          MS. RASO:  Yes, your Honor.
4          THE COURT:  And what was Dayton Superior's position in
5     the project?
6          MS. RASO:  We supplied materials to Trataras.
7          THE COURT:  Okay.  And would you feel comfortable then
8     acting as a sort of liaison counsel for the subcontractors who
9     worked on the project?
10         MS. RASO:  Yes.
11         THE COURT:  Thank you.  That's very kind of you to
12    offer.
13         And then, Ms. Bonnaci, you represent in essence
14    Trataras as I understand it and Travelers, of course, but are
15    the other major entities here the engineering firms and
16    architects, are they the other major entities that would be
17    unaccounted for in this subdivision of parties?
18         MS. BONACCI:  Your Honor, there's actually, to help
19    your grouping better it would probably help if you had a lead
20    counsel for the third party complaint that was instituted by
21    the architect against his sub-consultants because that's
22    another eight parties that was recently brought in on February
23    1st.
24         THE COURT:  Okay.  And is that you, Mr. Dennis, who
25    brought those parties in?

82TAATRAC                    Conference

1        MS. RASO:  Yes, your Honor, it is.

2        THE COURT:  So, Mr. Dennis, I am going to ask you to

3   be the lead counsel with respect to all those adversaries you

4   just brought into the case so that when we're consulting on

5   these procedural issues with respect to how to manage this

6   litigation, Mr. Shapiro and Ms. Bonnaci and Ms. Raso can call

7   you and you'll be able to represent that you have solicited the

8   opinions of that group that you brought into this litigation.

9   And I'm not asking you to advocate, obviously, for those

10  defendants, but to have taken responsibility for collecting

11  their positions on the issue at hand and be able to describe

12  that.

13        Would you be willing to do that, sir?

14        MR. DENNIS:  That's fine, your Honor.  One point of

15  clarification, two of the parties that we brought in are

16  actually subcontractors, so I don't know LDL and Jordan Panel

17  whether they would fall into the subcontractor group or into

18  our group.

19        THE COURT:  Would you discuss that with Ms. Raso and

20  resolve that so that there's clarity?

21        MR. DENNIS:  Sure.

22        THE COURT:  And who else then don't we have covered?

23        MR. SHAPIRO:  Your Honor, I believe the insurance

24  company defendant should have a representative as well.

25        THE COURT:  But who do the insurance companies

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82TAATRAC                    Conference

1    represent?  Who are their insureds?

2              MR. SHAPIRO:  Ms. Bonnaci brought them in.  I'll let

3    her --

4              MS. BONACCI:  Your Honor, I would think unless

5    Ms. Raso would disagree with continuing to volunteer to do that

6    it would serve best that there would be one lead counsel in

7    connection with our third party complaint which was Travelers

8    and Trataras third party complaint bringing in essentially what

9    we would call the flooring parties.  It's in connection with

10   Dagny's allegation against us.

11             We in turn brought in the various insurance carriers

12   for subcontractors as well as any subcontractor or product

13   supplier in connection with the flooring.  So your grouping in

14   the litigation is Travelers as the surety suing the architect,

15   the owner and the construction manager.

16             We then have the owner making a complaint against the

17   contractor Trataras.  Trataras which is my client then files

18   the third party action bringing in all of the insurance

19   carriers and what I will just call the flooring parties in

20   general and then --

21             THE COURT:  But the insurance carriers for who?

22             MS. BONACCI:  A party entitled Croschetti which is a

23   floor contractor.

24             THE COURT:  Okay.  Shouldn't the insurance companies

25   who represent the flooring subcontractors be in the same pool

82TAATRAC                    Conference

1  of people that have to consult with each other?  Why would you

2  separate those into two separate groups?

3          MS. BONACCI:  I wouldn't, your Honor.  Mr. Shapiro had

4  indicated the insurance party should be represented.  But they

5  in my view of how we, I instituted the lawsuit they fall within

6  the independent group for the third party, so they're part of

7  the flooring parties of which Dayton Superior who has

8  volunteered to coordinate all those defendants has, is part of.

9          MR. SHAPIRO:  I don't have any objection to

10 Ms. Bonnaci's proposal.

11         THE COURT:  Ms. Raso.

12         MS. RASO:  I don't have any objection either.  That's

13 fine.

14

15         MS. ALJENS:  Erica Aljens.

16         Some of the insurance companies that are listed in

17 this are actually insurance of Trataras and not of subflooring

18 subcontractors so I just wanted to clarify that.

19         THE COURT:  Well, Trataras should be coordinating with

20 its own insureds.  So I am going to put the burden on you,

21 Ms. Bonnaci, to write me a letter within one week.  You will

22 advise me and I don't want to know, if there's one party in

23 this case that wants a jury trial.  I don't need to show who it

24 is.  I don't want to know who it is.  They have a right to a

25 jury trial, so be it.  So if you've found out from everyone

82TAATRAC                  Conference

1   that they all want to go nonjury, great.  You can represent

2   that.  If you don't have unanimity, great.  You can represent

3   that.

4        Secondly, I want your letter to describe who are going

5   to be the lead counsel and hopefully we get a group of three or

6   four attorneys and I want all parties allocated among those

7   three or four attorneys an agreement from those three or four

8   attorneys that they're willing to take on what is really just a

9   procedural role to help coordinate the litigation here.

10       So, I want to know how that's organized and in

11  specificity which parties fall in which groups?  Which lawyer's

12  responsible for that group and their contact information for

13  me.

14       We're not moving the cut-off date for fact discovery.

15  It's December 14 and it will remain December 14.  The cut-off

16  for expert discovery remains May 2nd, next year.  We're not

17  moving that either.  There's play in the joints with respect to

18  interim scheduling but those two dates are not moving.

19       MR. SCHRECKINGER:  Can I just speak to that issue.  We

20  represent architect -- two of third-party defendants have just

21  recently brought in.  We haven't appeared in the action yet or

22  decide whether or not we're going to file a motion to dismiss.

23  I was going to ask if we could have a little bit of leeway with

24  the scheduling order which we weren't a party to maybe get a

25  couple of months in addition to the dates that you had already

82TAATRAC                    Conference

1    ordered.

2            THE COURT:  Your application is denied.

3            MR. SCHRECKINGER:  Thank you, your Honor.

4            THE COURT:  Your welcome.

5            MR. SCHRECKINGER:  There is a significant amount of

6    document discovery that we -- complete.  We didn't participate

7    in the full document discovery.  We haven't looked at any of

8    plaintiff's documents or the few hundred boxes of documents

9    that are available.  So there is a significant amount of

10   discovery that does have to be completed.  Like I said we

11   haven't answered.

12           THE COURT:  Good.  So I'd answer or move promptly.  I

13   won't extend any answer or move dates.  You have your 20 days.

14   Get to it.  And also I'd start looking at the discovery

15   materials.

16           MR. SCHRECKINGER:  We will do that, your Honor, but I

17   believe we have 60 days to appear.  We were served on counsel.

18   I believe it's 60 days to appear in the action since it was

19   served on the attorneys.

20           THE COURT:  Good.  If you want to use your time that

21   way that's fine with me.

22           MR. SCHRECKINGER:  Thank you.

23           THE COURT:  You are welcome.

24           So, I am unlikely to approve a five day deposition of

25   30 witnesses.  I would have hoped we would be much further

82TAATRAC                    Conference

1    along today with respect to the names of witnesses, the

2    deponents and a schedule with respect to when they will be

3    deposed.

4          And more precise way of handling the time limits here,

5    there may be a couple of witnesses that need extended

6    depositions, but let's assume, given the number of parties,

7    that you don't have to come to me for a deposition of two days.

8    And if you want a deposition longer than two days you are going

9    to have to have agreement of all the parties in the case.

10   There is, obviously, not going to be any duplicative

11   questioning.

12         Let me just describe the rules that apply during a

13   deposition.  None of this is new or startling to anyone.  There

14   are no instructions not to answer except on the ground of

15   privilege.  There are no speaking objections.  If you have an

16   objection it's simply the word "objection" and one word such as

17   "form".

18         There are no breaks except prescheduled breaks.  So if

19   you've scheduled a mid morning, a luncheon and a midafternoon

20   break to take place at roughly a certain time; fine, but no

21   other breaks.

22         And I would expect that groups of defendants will

23   coordinate their questioning so that we're not going to have 24

24   questioners but it'll depend witness by witness what makes

25   sense.

82TAATRAC                    Conference

1      And depending on how late in the year you start these

2      depositions you are going to have to double and triple to track

3      them, so you should make those arrangements.

4            So, in order to pin down in more detail what's

5      happening with these depositions so we could have a more

6      productive conference, how much time do you need, Ms. Bonnaci?

7            MS. BONACCI:  Your Honor, with all the parties that

8      are currently in the case I could coordinate I believe within

9      five days and decide if there was any witness we felt would go

10     longer than two days so that we could present them to your

11     Honor.  My only complication to that if KPF's third party

12     defendant that they -- then I wouldn't be able to include them

13     in that unless they're all here.

14           Perhaps, Mr. Dennis could let us know if all the

15     counsel that he brought in are here today.

16           THE COURT:  Mr. Dennis, are they?

17           MR. DENNIS:  Your Honor, there are five parties that

18     are represented here today.  There are two that are not.

19           THE COURT:  Thank you.  So I'll take a letter from

20     Ms.~Bonnaci Monday March 24, with respect to the scheduling of

21     depositions and whether there is agreement.  And to the extent

22     that there is any disagreement or a need to be heard with

23     respect to any of the fact discovery issues implicated by the

24     scheduling of depositions I'll take a responsive letter from

25     any counsel by March 28.  That responsive letter should be no

82TAATRAC                    Conference

1   longer than two pages.

2          I don't remember if we had a transcript of our first

3   conference, a court reporter, did we?

4          MS. BONACCI:  I don't think so, your Honor.

5          THE COURT:  We have one today.

6          So, let me just repeat for the benefit of everyone

7   some things that I covered in the last conference and should

8   there be anyone who is not represented here they'll be order to

9   order a transcript and read it.  So I think that is the most

10  efficient way to go.  We, obviously, have a written scheduling

11  order that's been issued and that's docketed and available to

12  everyone.  But with respect to the conduct of discovery,

13  counsel are required to meet and confer with each other to

14  resolve any discovery disputes.

15         If you want discovery you have to be diligent about

16  it.  We have a schedule.  If you are not getting cooperation

17  from another side, another party in the case and you don't act

18  it's going to be too late.  The burden is on you if you want

19  certain discovery to act and be diligent in the case.  This is

20  a very old case.  It's been pending for a long time even though

21  it has a recent docket number, so we're moving forward.

22         If there is a meet and confer process and you are

23  unable to resolve the discovery issue you may write me a letter

24  no longer than two pages and I'll get the relevant parties on

25  the phone and give you an opportunity to be heard and give you

82TAATRAC                    Conference

1  a ruling.  I don't want letters unless I've given you

2  permission for a letter.  I don't want letters longer than two

3  pages.

4          Obviously, because the litigation is so -- with so

5  many parties if we have telephone conference calls so you all

6  don't have to come into court and I will try to conduct this

7  litigation that way.  If at all possible it's really going to

8  be important that if we have those telephone conference calls

9  that no one interrupt someone else who is speaking, that before

10 you speak you identify yourself by name so the record's clear

11 and we know who is speaking up.  I don't know your voices and I

12 won't be able to identify you otherwise.  And, again, don't

13 interrupt an attorney and don't interrupt me if I'm speaking

14 otherwise we are not going to be able to conduct those phone

15 calls which I hope would make it unnecessary to bring you all

16 into court again for an in court conference.

17         Do any counsel who are here today have questions about

18 the procedures we will follow during the fact or expert

19 discovery period?

20         So, Ms. Bonnaci, you'll circulate this list of the

21 lead counsel for the various groups and contact information and

22 I am going to ask those lead counsel who will be roughly four

23 in number to act as sort of a clearing house for their group's

24 positions on various procedural issues, so the burden on

25 Ms. Bonnaci can be lessened somewhat as she's trying to figure

82TAATRAC                    Conference

1    out what dates work and what the parties' position on who needs

2    to be deposed etc.

3         I am hoping that a status letter from Ms. ~Bonnaci by

4    March 24 will give her the time she needs to consult with all

5    of parties to the litigation so we can have a more comfortable

6    and defined schedule with respect to depositions.

7         Is there anything else that we need to do today?

8         Counsel.

9         MR. O'CONNOR:  Jordon has not yet appeared in this

10   refiled case.  But there is an issue that I've raised in the

11   past.  Since we are getting back into this litigation now and

12   we're still at the pleading stage now is the time to raise it.

13   There is a serious conflict of interest in this case by the law

14   firm that is respecting both Daz knee and TDX in this case.  If

15   you read the complaint there are allegations of active

16   negligence against TDX which is Daz knee's construction

17   manager.  Now, Daz is not pursuing any cross claims against TDX

18   and we're dealing here with public funds.

19        Now, why are they not pursuing the cross claims?

20   They're represented by the same law firm.  When I raised the

21   issue in the past I was told that both parties knowingly

22   consent to waive the conflict.  But the law is when you are

23   dealing with the public fist you are very limited in waiving

24   conflicts of interest.

25        Basically, the rule if it has a bad appearance you

82TAATRAC                    Conference

1   can't do it.  If you look at the deal that was made here so TDX

2   now is being given a free pass by Daz knee with public funds

3   and one law firm in the middle of it.  This simply is not

4   allowable.  It's a conflict of interest and the public tax

5   payers are the ones that are bearing the loss on this to the

6   extent that Daz knee is not passing through any losses to TDX

7   then that means the public is paying for the exercise of this

8   conflict.

9           THE COURT:  Well, I am absolutely happy to have this

10  resolved through motion practice sooner rather than later, but

11  isn't it possible that the owner of the project and its

12  construction manager worked so closely together that they would

13  have no viable cross claims because they were fully

14  knowledgeable of what the other was doing?  I mean that

15  conceivable.  Wouldn't you agree, counsel?

16          MR. O'CONNOR:  Yes, your Honor, I would.  But it's

17  also conceivable that the allegations of the complaint could be

18  accepted by the jury that the construction manager's negligence

19  caused a great deal of the delays, impacts and cost over-runs

20  on this project.

21          THE COURT:  But if Daz fee as the owner of the project

22  couldn't take advantage of that negligence because it was

23  working hand and glove with TDX then it couldn't bring that

24  claim successfully in court?

25          MR. O'CONNOR:  Your Honor, the whole purpose of hiring

23

82TAATRAC                    Conference

1    TDX is for TDX to manage the project.  That's what they got

2    paid millions of dollars for here.

3         THE COURT:  True.  I understand that there was a role

4    for a construction manager in that project, but I am just

5    talking about the legal issue in terms of whether or not there

6    is a conflict such that the same law firm couldn't represent

7    both parties.

8         Do you want an opportunity to make a motion with

9    respect to that issue, or not?

10        MR. O'CONNOR:  Your Honor, I have no intent on making

11   a motion of the issue.  I feel I am duty bound to bring it to

12   the Court's attention.

13        THE COURT:  OK.  Thanks.  I appreciated you bringing

14   that issue to my attention.  There is no need to schedule

15   motion practice since no party intends to bring a motion in

16   that regard and I see nothing based on my present knowledge of

17   the case to suggest I need to sua sponte investigate that

18   issue.  Okay.

19        Good.  Anything else?

20        MR. SHAPIRO:  Your Honor, just this is being

21   transcribed.  Daz fee disagrees with the Mr. O'Connor.

22   (inaudible).  I won't respond in detail to this issue at this

23   point in time.

24        THE COURT:  Well, conflict issues are something that

25   should be sorted out earlier rather than later in a case.  So

82TAATRAC                      Conference

1    if any party wishes to bring a motion with respect to the

2    conflict issue let's set a schedule for that.  So we don't

3    leave that issue dangling, so to speak.  Any motion should be

4    brought by March 14, opposition March 28, reply April 4.

5              MR. SHAPIRO:  Thank you, your Honor.

6              And for the record, there is no conflict as you might

7    imagine.  This is a common practice.  There are many counsel.

8    Several counsel in this case who are representing more than one

9    party and this is not an issue that involves an ethical

10   conflict, whatsoever, and if anybody wishes to bring a motion

11   I'd be happy to respond to it.

12             THE COURT:  Well, I am not inviting motions and I am

13   not saying that a motion must be brought by any party.  I just

14   want to preserve everyone's rights in this regard.

15             Counsel.

16             MR. SWEETMAN:  Several of the insurers had filed

17   summary judgment motions that were before Judge Baer in the

18   last action, primarily focused on an issue concerning late

19   notice or no notice until they had been sued.  It's primarily a

20   legal matter, your Honor.  And in view of the very extensive

21   but expansive discovery I know that my clients would ask to be

22   permitted to file a summary judgment motion along those lines

23   at the earliest possible time.

24             THE COURT:  Okay.  You don't need permission from me

25   to file a motion that the Federal Rules of Civil Procedure give

82TAATRAC                    Conference

1   you the right to file.  I don't have premotion conferences.  So

2   if you have a motion you wish to bring preliminary summary

3   judgment motion that you believe is right it's not dependent

4   only discovery or not dependent on discovery that's yet to be

5   taken, feel free to bring such a motion.  I would suggest what

6   you do is discuss a proposed schedule with whoever the motion

7   impacts and who will be opposing or responding to the motion

8   and just get me a stip with a proposed schedule.

9           As everyone knows in this district the default rule

10  under our Southern District local rules in civil cases is two

11  weeks to oppose and one week to reply to a motion.  It's my

12  customary practice to allow you three weeks to oppose and one

13  week to reply in almost any motion schedule I set for a complex

14  motion.

15          So, anything along those lines is not going to be

16  looked at twice by me.  I'll be happy to so order the schedule

17  and I try to accommodate, also a little premature, but things

18  like Thanksgiving and Christmas breaks and that elongates a

19  briefing schedule if we get into that part of the year,

20  counsel.

21          MR. SCHWARTZBERG:  This issue came in front of Judge

22  Baer and I'll bring it up again.  I would request permission to

23  supplemental interrogatories beyond those permitted at local

24  rules to ask KPF identify the specific design claims against my

25  client.

82TAATRAC                    Conference

1       THE COURT:  Well, counsel, I just want to check, but I

2   would be amazed if the local rules didn't give you enough scope

3   as they are now given all the interrogatories that everybody

4   has served or will be serving in this case.  Okay.  Help me

5   find quickly if you could, the rule to which you are referring.

6       MR. SCHWARTZBERG:  I am not familiar with the specific

7   section.  I do recall reading it.

8       THE COURT:  It could be 33.3.  Let me see if this is

9   the one you are referring to.

10      Unless otherwise ordered by the Court at the commence

11  of discovery interrogatories will be restricted to those

12  seeking names of witnesses with knowledge of information

13  relevant to the subject matter, the computation of damages,

14  insurance agreements, physical evidence, etc.

15      During discovery interrogatories other than those may

16  be served if they are a more practical method of obtaining the

17  information sought than a request for production or a

18  deposition or ordered by the Court at the conclusion of

19  discovery or at least 30 days prior to the discovery cut-off

20  interrogatories seeking the claims and contentions may be

21  served.

22      So you want permission to serve an interrogatory

23  seeking claimant's contentions at this stage?

24      MR. SCHWARTZBERG:  Correct.

25      THE COURT:  Is there opposition?  There is no

82TAATRAC                    Conference

1   opposition?

2           MR. DENNIS:  I would just ask that if the Court is

3   going to make that order that it be extended to KPF to inquire

4   to Dagny well with respect to those types of claims.

5           THE COURT:  Any objection?

6           MR. SHAPIRO:  No objection, your Honor.  I would not

7   have an objection to permitting any party who asked for

8   contention of interrogatories at the outset of this case.

9           THE COURT:  Any objection?  Hearing no objections,

10  contention interrogatories which are covered by Local Civil

11  Rule 33.3 (C) may be posed now.

12          Any other issue?

13          MS. RASO:  We recently impleaded fifth party defendant

14  GM Newshell Seto.  We were notified by their attorney to their

15  in bankruptcy, so we are withdrawing.  We would like you to

16  have you sign a voluntary notice of dismissal.

17          THE COURT:  Thank you.  Just provide it to my clerk.

18  Appreciate it.

19          MS. RASO:  One less party.

20          MS. BONACCI:  Your Honor, just one clarification.

21          THE COURT:  Yes, Ms. Bonnaci.

22          MS. BONACCI:  I am to write two letters to your Honor.

23  The first one is within one week to identify whether or not

24  we've all come to agreement as to the jury trial.  And also the

25  lead counsel, so to speak, and then the second letter is by the

82TAATRAC                    Conference

1   24th and that is a deposition schedule of witnesses that we

2   believe extend beyond two days and would it also include those

3   whose depositions would fall within two days.  I just want to,

4   didn't want to misunderstand.

5          THE COURT:  Sure.  It is the parties' agreement,

6   hopefully, with respect to the scheduling of all the

7   depositions so you can organize the case.

8          MS. BONACCI:  Thank you, your Honor.

9          THE COURT:  Good.  Thank you all.  Appreciate it.

10                    o 0 o

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25