UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY, *et al.*,          07 Civ. 6915 (DLC)

        Plaintiff,          ECF CASE

-against-

DORMITORY AUTHORITY – STATE OF NEW YORK, *et al.*,

        Defendants.
------------------------------------------------------------------------X
DORMITORY AUTHORITY OF THE STATE OF NEW YORK and
TDX CONSTRUCTION CORP.,

        Third Party Plaintiffs,

-against-

TRATAROS CONSTRUCTION, INC.,

        Third Party Defendant.
------------------------------------------------------------------------X
TRATAROS CONSTRUCTION, INC., *et al.*

        Fourth-Party Plaintiffs,

-against-

CAROLINA CASUALTY INSURANCE COMPANY, *et al.*

        Fourth-Party Defendants.
------------------------------------------------------------------------X
KOHN PEDERSEN FOX ASSOCIATES, P.C.,

        Third-Party Plaintiff,

-against-

WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, *et al.*

        Third-Party Defendants.
------------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISQUALIFY COUNSEL

        Kalb & Rosenfeld, P.C.
        Attorneys for Third Party Defendant
        Jordan Panel Systems, Corp.
        1470 Bruckner Blvd.
        Bronx, N.Y. 10473
        (718) 328-1610

Terrence J. O'Connor (TJO 1549)
Of Counsel

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT.................................................................................................................................... 1

   POINT I
   SINCE HOLLAND & KNIGHT ADMITS THE EXISTENCE OF A CONFLICT OF INTEREST
   INVOLVING MILLIONS OF DOLLARS OF STATE FUNDS, THERE IS A SERIOUS ISSUE AS
   TO WHETHER THE GOVERNMENT LEGITIMATELY CONSENTED TO THIS CONFLICT
   WAIVER AGREEMENT.......................................................................................................... 1

   POINT II
   HOLLAND & KNIGHT'S CONFLICT IS UNWAIVABLE AND THE TIME TO FIX THIS IS
   NOW, WHILE THIS CASE IS STILL IN THE PLEADING STAGE ................................... 3

   POINT III
   HOLLAND & KNIGHT HAS NOT SUBMITTED CUNY'S WRITTEN CONSENT TO THE
   CONFLICT............................................................................................................................... 5

   POINT IV
   HOLLAND & KNIGHT HAS NOT ADRESSED HOW THE PRINCIPLES OF CLAIM
   PRECLUSION, ISSUE PRECLUSION, COLLATERAL ESTOPPEL AND JOINT AND SEVERAL
   LIAIBLITY WILL NOT ADVERSELY AFFECT DASNY IN THE CONTEMPLATED FUTURE
   LAWSUIT BETWEEN THEM................................................................................................ 6

   POINT V
   THE CONFLICT IN THIS CASE FAILS BOTH PRONGS....................................................... 8
   OF THE "EITHER OR" TEST ESTABLISHED IN GREENE.................................................... 8

   POINT VI
   JORDAN HAS STANDING TO ASSERT THIS MOTION ................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

Booth v. Continental Ins. Co., 167 Misc.2d 429, 438-439 (N.Y. Sup. 1995) ............................................. 5

Burkoski v. Structure Tone, Inc., 40 A.D.3d 378, 380 (1st Dept. 2007) ..................................................... 7

Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2nd Circ. 1995) ............................................................................................................................. 6

Delahaye v. Saint Anns School, 40 A.D.3d 679 (2d Dept. 2007) ............................................................. 7

Develop Don't Destroy Brooklyn v. Empire State Development Corp. 31 A.D.3d 144, 816 N.Y.S.2D 424 (1st Dept. 2006), app. den., 8 N.Y.3d 802, 830 N.Y.S.2d 698 (2007) ............................................. 3

Estates Theatres, Inc. v. Columbia Pictures Indus., 345 F. Supp. 93, (SDNY 1973) ........................... 5, 10

Greene v. Greene, 47 N.Y.2d 447, 451-452 (1979) ..................................................................... 4, 5, 8, 9

In re Gustavo G., 9 A.D.3d 102, 112 (1st Dept. 2004) ............................................................................. 9

People v. Liuzzo, 167 A.D.2d 963, 963 (4th Dep't 1990) ......................................................................... 5

Rosen v. Rosen, 5 Misc.3d 1031(a) (NY Sup. 2003) ........................................................................... 9, 10

Town of Riverhead v. New York State Board of Real Property Services, 777 N.Y.S.2d 533, 535 (3d Dept. 2004) ............................................................................................................................. 11

**Statutes**

N.Y. Executive Law § 55 ..................................................................................................................... 1, 2

State Finance Law § 123 ........................................................................................................................ 11

**Rules**

22 NYCRR § 1200.4 ............................................................................................................................... 10

**Treatises**

41 Am. Jur. 2d Independent Contractors § 27 (2008) ............................................................................... 7

<u>**PRELIMINARY STATEMENT**</u>

Third Party Defendant Jordan Panel Systems Corp. ("Jordan") submits this Memorandum in reply to the opposition papers filed by Holland & Knight, and in further support of Jordan's motion to disqualify counsel.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**SINCE HOLLAND & KNIGHT ADMITS THE EXISTENCE OF A CONFLICT OF INTEREST INVOLVING MILLIONS OF DOLLARS OF STATE FUNDS, THERE IS A SERIOUS ISSUE AS TO WHETHER THE GOVERNMENT LEGITIMATELY CONSENTED TO THIS CONFLICT WAIVER AGREEMENT**</u>

In their opposition papers, Holland & Knight has admitted the existence of a conflict of interest. Their position is that the dual representation is not improper, because the government has allegedly consented to waive the conflict. But that consent was obtained from DASNY, whose conduct and relationship with TDX is at issue in the underlying case and on this motion. For an admitted conflict of interest involving millions of dollars in State funds, the government agency that should be heard from is the State Inspector General's Office, not the officials at DASNY whose conduct and relationship with TDX are already at issue.

Now that DASNY has admitted the existence of a conflict of interest in its opposition papers, it is respectfully submitted that this motion should be granted, based purely upon what is already in the record. However, DASNY's position -that it purportedly waived a known conflict of interest- raises a threshold question of whether DASNY or any other public agency has the independent legal authority to do so (especially where millions of dollars in State funds are involved). While the opposition brief glibly refers to the Attorney General as the proper arbiter of this conflict, actually, under Article 4-A of the New York State Executive Law, the State Inspector General is the entity that oversees conflicts of interest involving state agencies and "public benefit corporations". N.Y. Executive Law §§ 51, 53(1).

1

(And see, Declaration of Terrence J. O'Connor submitted with Jordan's moving papers (the "Moving Declaration"), Ex. "B" at para. 3, reciting that DASNY is a public benefit corporation.)

As established in Jordan's moving papers, the doubling of TDX' contract, followed by a "joint defense agreement" in which DASNY "runs cover" for TDX, has led to the appearance of using public funds to pay potential damages rightfully attributable to a private corporation. This suggests an improper relationship between DASNY and TDX, making the purported waiver subject to review by the State Inspector General. N.Y. Executive Law § 55.

If this arrangement were to be approved, statutes, rules and regulations prohibiting public officials from engaging in conflicts of interest could be bypassed by the simple expedient of hiring an outside law firm or other entity to engage in the conflict, and then sign some sort of waiver document.[1] To be clear, the conflict waiver agreement at issue actually establishes two sets of conflicts, the first for the DASNY officials who signed it, and the second for Holland & Knight. It goes without saying that public officials are supposed to have undivided loyalty to the public agency that employs them. As such, they are prohibited by State conflict of interest rules from engaging in government give-aways to their apparent cronies at private corporations, which are doing business with the State. See, N.Y. Public Officers Law, Art. 4, Sec. 74(2) ("No officer or employee of a state agency…should …engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest.") If the Inspector General objects to this arrangement, then the conflict waiver is void for illegality, before even getting to Holland & Knight's conflict issues.

---

[1] In fact, DASNY's own website sets forth ethical guidelines requiring its employees "to pursue a course of conduct which will not raise suspicion among the public that you are likely to be engaged in acts in violations of your public trust," and stating that DASNY "expects its members, officers, and employees and the many contractors… with whom the Authority interacts… to adhere to the highest ethical standards." (Reply Dec., Exs. D&E, respectively.) Thus, by DASNY's own terms, the conflict at issue here is impermissible.

## POINT II
## HOLLAND & KNIGHT'S CONFLICT IS UNWAIVABLE AND THE TIME TO FIX THIS IS NOW, WHILE THIS CASE IS STILL IN THE PLEADING STAGE

In their opposition papers, DASNY and TDX essentially admit the validity of the elements necessary for disqualification. What is immediately apparent, is that there is no liability sharing agreement or any type of indemnity agreement between these two parties. (Opposition Brief, p. 5.) That fact alone makes one wonder how two defendants with adverse claims can be jointly represented in the same case. This normally occurs only in three limited situations: 1) When there is an indemnity obligation (common law or contractual) between the two clients; 2) When there is an additional insured situation; and 3) The relatively rare situation where there is a liability sharing agreement. None of those factors are present here. The opposing parties cite <u>not a single case</u> in which the same law firm represented both owner and construction manager on a delay/impact claim. <u>Nor do they cite any cases where a government entity voluntarily undertakes a joint defense with a private corporation</u>. It is respectfully submitted that if this is not unprecedented, it is close to it.

The main case relied upon in opposition to this motion, <u>Develop Don't Destroy Brooklyn v. Empire State Development Corp.</u> 31 A.D.3d 144, 816 N.Y.S.2D 424 (1st Dept. 2006), app. den., 8 N.Y.3d 802, 830 N.Y.S.2d 698 (2007) did not involve a joint representation of a government agency and a private corporation at all, but rather a conflict allegedly arising out of the government lawyer's previous representation of the contractor on an unrelated matter. Thus, the decision does not appear particularly applicable. The "standing rule" enunciated in that case was not a universal prohibition on non-clients raising the issue of a conflict, but rather was a narrow rule, that where the basis for the motion to disqualify is an attorney's prior representation of a client, then only the present or former client had standing to raise that specific type of argument.

Similarly, DASNY and TDX rely upon numerous decisions relating to conflicts arising from <u>successive</u> representation, rather than dual representation of <u>adverse</u> interests in the <u>same proceeding</u>.

3

(See, e.g., Opposing Brief, p. 8, citing to <u>Evans</u>, <u>Cook Indus.</u>, and <u>Bennett Silvershein</u> decisions.) Respectfully, there is an enormous difference in the policy interests and potential prejudice to a litigant's rights as between those two scenarios. <u>Greene v. Greene</u>, 47 N.Y.2d 447, 451-452 (1979).

DASNY and TDX further rely upon a conflict waiver agreement, which they characterize as a "joint defense agreement." (Although not produced by DASNY and TDX, the pertinent terms are discussed in the opposing papers, see e.g., Weissman Aff., para. 13.) First, both DASNY and TDX acknowledge that they have viable claims against one another. (Id., para. 13; Jones Aff., para. 7-9.) Having thus admitted they are in an adverse relationship, both parties expressly reserve their rights to sue one another at a later date. (Weissman Aff., para. 13; Jones Aff., para. 7-9.) That begs the question, at what point will the clients or the lawyers have an "epiphany" and realize that DASNY should be suing TDX, or vice-versa. Whether this realization comes during discovery, at conclusion of depositions, or even on the eve of trial, the longer this issue remains unresolved, the more difficult it will be to order DASNY and TDX to obtain independent counsel.[2]

Regardless, it is a false question to try to divine the point where the acknowledged conflicts will inflict "too much" damage; the mere presence of the conflict is sufficiently damaging to the public interest and the integrity of these proceedings to justify disqualification. <u>Estates Theatres, Inc. v. Columbia Pictures Indus.</u>, 345 F. Supp. 93, (SDNY 1973) (Guesswork regarding the eventual impact of conflicts would require Courts "to speculate as to the course a litigation would take and…tend to undermine the confidence of clients" in counsel's undivided loyalty.) Further, given the seriousness of the conflict here, these parties' selection of counsel for tactical purposes must yield to the public policy imperatives. <u>People v. Liuzzo</u>, 167 A.D.2d 963, 963 (4th Dep't 1990).

---

[2] Jordan further notes that DASNY/TDX's claim that the joint defense agreement serves to protect the parties' confidential information disclosed over the course of dual representation appears to be nullified by the explicit language of the written letter-agreement authored by Holland & Knight. (Cf., Shapiro Aff., para. 13, with, Ex. A thereto, second pg.) ("[W]e will disclose to each of you all [confidential] information we receive from either of you" and such information will not be privileged in the event of a subsequent law suit between the parties.)

4

In light of the public moneys involved, the clients' consent is insufficient to resolve the issue here, since enforcement of the clients' consent to dual representation "would unduly affect the integrity of the legal process and public interest." Booth v. Continental Ins. Co., 167 Misc.2d 429, 438-439 (N.Y. Sup. 1995) (Even with full disclosure and consent, dual representation of adverse interests may be improper.) And Greene, 47 N.Y.2d at 451-452 (Dual representation will rarely be sanctioned even after full disclosure and consent.) Jordan respectfully submits that the time to fix this problem is now, while the case is at the pleadings stage and before depositions begin.

## POINT III
### HOLLAND & KNIGHT HAS NOT SUBMITTED CUNY'S WRITTEN CONSENT TO THE CONFLICT

As the facts are understood by counsel in this case, the City University of New York ("CUNY") is the entity whose funds are ultimately at stake in the event of a recovery against DASNY.[3] (Moving Declaration, Ex. B, para. 11-12.) Yet no affidavit was submitted by CUNY, nor do the opposition papers make any reference to CUNY at all. Based on the information submitted by the opposing parties, it does not appear to be a signatory to the joint defense agreement, despite the fact that it is CUNY's public coffers that will pay any judgment in this case. The question of CUNY's consent to this arrangement cannot be determined on this record; however, it is CUNY's funds that are being frittered away to TDX. If the concept of "client consent" is to have any meaning, such consent should be required. This is not to say that CUNY possesses sufficient, independent authority to waive this conflict; indeed, any such "consent" may be void for the same reason as that given by DASNY. (See, Point I, above.) But the question does raise a serious question about Holland & Knight's entire premise for its opposition, that is, that all of the "interested parties" have purportedly given written consent to, at least temporarily, waive the conflict. That appears to be inaccurate, given that CUNY is the ultimate financial party in interest.

---

[3] DASNY is only the owner of record for contract purposes. (Moving Declaration, Ex. B, para. 11-12.)

5


## POINT IV
### HOLLAND & KNIGHT HAS NOT ADRESSED HOW THE PRINCIPLES OF CLAIM PRECLUSION, ISSUE PRECLUSION, COLLATERAL ESTOPPEL AND JOINT AND SEVERAL LIAIBLITY WILL NOT ADVERSELY AFFECT DASNY IN THE CONTEMPLATED FUTURE LAWSUIT BETWEEN THEM.

Given that issues of comparative negligence may be foreclosed from re-litigation due to the related doctrines of collateral estoppel, claim preclusion, and/or issue preclusion, the essentially adverse relationship between DASNY and TDX needs to be clarified, so as to establish that cross-claims as between those defendants are necessary. Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 366-369 (2nd Circ. 1995) (Discussing doctrines of res judicata and collateral estoppel.) As the Court pointed out at the February 29, 2008 conference, if TDX's role was that of an agent, serving merely as a conduit for DASNY's own decisions, then the significance of this conflict would, perhaps, be lessened. However, these parties have not settled with each other, but are simply reserving their mutual cross claims until a later date. Further, TDX' contract established an independent contractor relationship with DASNY, pursuant to which TDX was paid millions to actively manage this project. (Moving Declaration, para. 9 & 11.) By their respective silence, DASNY and TDX concede that TDX operated in the capacity of an independent contractor, analogous to a construction contractor.

When an owner is sued for the negligence of a construction contractor, it sues the contractor in turn. The same should hold true with respect to TDX. See e.g., Burkoski v. Structure Tone, Inc., 40 A.D.3d 378, 380 (1st Dept. 2007) (owner asserted cross claims for indemnification against construction manager, prime contractor, and subcontractor); Delahaye v. Saint Anns School, 40 A.D.3d 679 (2d Dept. 2007) (dismissing owner's cross claims against construction manager for failure of proof). TDX' status as independent contractor goes to the heart of this issue. 41 Am. Jur. 2d Independent Contractors § 27 (2008) (discussing vicarious liability implications arising from independent contractor status).

The most obvious defense that DASNY sacrifices under this scheme is its ability to assert that, if plaintiff recovers for costs incurred by Trataros and/or its subcontractors due to project mismanagement,

6

then TDX should "take the hit" for some of that liability. Such a defense arises from TDX' contracts with DASNY, which obligate TDX to coordinate, schedule and inspect the work, among other things. (Moving Declaration, para. 9-10.) But, DASNY will be unable to assert even that most basic of defenses because of the "joint defense agreement." On the contract, DASNY is potentially liable to Trataros for TDX' alleged malfeasance; the only way to pass through that liability to TDX is by a cross claim.

The opposition papers do not explain how these defendants plan on addressing the implications of collateral estoppel, issue preclusion, claim preclusion, and joint and several liability. If Plaintiff recovers in this case, the odds are overwhelming there will be an allocation of certain degrees of fault on each of the defendants. If this joint defense scheme is followed through to its conclusion, it is virtually certain that these two clients are going to end up in the position of having to sue one another in a future action. Under principles of joint and several liability, Jordan anticipates that the whole judgment may be collected from DASNY (and therefore from public monies), even if DASNY is found responsible for a percentage of the total liability. When DASNY finally sues TDX and asserts its contribution claim, claim preclusion and/or collateral estoppel will be significant impediments, such that DASNY may be stuck with particular allocations of liability due to its failure to submit evidence against TDX here.

In light of the "strategic" deferment of this issue, and counsel's acknowledged structuring of a future law suit between two present clients, vigorous representation of both parties in this action is veritably impossible. By denying DASNY (and by extension the public) the benefit of this most obvious of defenses, the owner loses its ability to maximize set-offs. Further, the record from this case will be admissible in the subsequent action, and all communications between attorney and clients discoverable. This action's outcome would "seal the fate" of both clients, despite their apparent anticipation of an opportunity to re-litigate comparative liability.

In its letter of May 10, 2005, Holland & Knight admits its knowledge of the disadvantages of the joint representation. That letter states, in part, that "ordinarily" dual representation of two parties with

7

claims against each other "is a conflict of interest," and entails "certain disadvantages." (Shapiro Aff., Ex. A, first and second pp.) The conflict letter confirms that Holland & Knight was keenly aware of the problems posed by this joint representation from its very outset. Ergo, this motion should come as no surprise to DASNY, TDX or their counsel. Respectfully, these risks and dangers cannot be reconciled with the relevant policy interests and New York's strict standard for conflicts of interest involving public entities. Greene, 47 N.Y.2d at 452; In re Gustavo G., 9 A.D.3d 102, 112 (1st Dept. 2004) (dual representation is ordinarily not permitted, but "especially ... where the public interest is involved.")

### POINT V
### THE CONFLICT IN THIS CASE FAILS BOTH PRONGS OF THE "EITHER OR" TEST ESTABLISHED IN GREENE.

This conflict waiver letter-agreement may well be put into evidence at trial, as the DASNY-TDX relationship is explored as one potential explanation as to why the project money is gone, where (or to whom) it has gone, and why the entities that actually built the Project, including Trataros and its subcontractors, remain unpaid. (See, Reply Declaration, Exs. A & B; Moving Declaration, para. 11.) For example, as early as 1999, DASNY internal e-mails identified "a projected budget shortfall of $28.3 Million," and states: "Clearly, we have not managed this project. The Project is managing us." (Id., Ex. A.) More than two years later, the project management apparently had not improved appreciably, as a DASNY internal memorandum of September 28, 2001 announced: "On paper we are out of money." (Id., Ex. B.) Given TDX' contractual responsibility for managing the project, these records highlight the owner's potential claims against its construction manager.

Moreover, this action has been in and out of litigation since 2004; the owner's profligate expenditures on this construction project are likely to become a significant issue in relation to its seeming inability or unwillingness to resolve the claims in chief. (Reply Declaration, Ex. B.) In this sense, the conflict extends to the subject matter of the litigation, which is the Greene test's second prong. Greene, 47 N.Y.2d at 452 (Despite waiver, dual representation is particularly improper when the public

interest is implicated, <u>or where the conflict extends to the very subject matter of the litigation</u>.) Under <u>Greene</u>, if the conflict waiver fails either prong, it may not be endorsed. Id. The waiver here fails **both** prongs. Jordan respectfully submits the question is not a close call; disqualification should be ordered.

## POINT VI
## JORDAN HAS STANDING TO ASSERT THIS MOTION

In its opposition brief, Holland & Knight argues that Jordan has no standing to assert this motion. Contrary to its current position, at the Court Conference of February 29, 2008, DASNY's counsel made the following statement: "There are many counsel. Several counsel in this case who are representing more than one party and this is not an issue that involves an ethical conflict, whatsoever, and <u>if anybody wishes to bring a motion</u> I'd be happy to respond to it". (Reply Declaration, Ex. "C" at pg 24, emphasis added) The Court then set down a motion schedule. So, the opposing papers show a reversal of two representations made in Court – first, that there is "no ethical conflict whatsoever," and second, that DASNY and TDX would be "happy to respond" to a motion brought by "anybody."

Aside from DASNY's express invitation to bring this motion, the general rule is that any party has standing to assert a motion to disqualify adversary counsel. See, 22 NYCRR § 1200.4, and, <u>Rosen v. Rosen</u>, 5 Misc.3d 1031(a) (NY Sup. 2003) (Attorney has authority to bring potential ethical violation to Court's attention.) "In such an instance 'the adverse party may move to disqualify the attorney for the opposite party on the ground of a conflict of interest.'" Id. And, <u>Estates Theatres, Inc. v. Columbia Pictures Indus.</u>, 345 F. Supp. 93 (SDNY 1973) (Conflicts are a matter of public interest.) [4]

This rule of standing is even more pertinent here, where public funds are involved. As <u>Rosen</u> recognizes, "[l]ack of standing, where a conflict of interest is demonstrated, <u>must ... be subsumed by a</u>

---

[4] Jordan further notes that DASNY/TDX's request for "compensation" of its costs associated with this motion is disingenuous at best, in light of opposing counsel's explicit statement, on the record in open Court, inviting a motion to disqualify from any party that wished to bring it. (Shapiro Aff., para. 17.) Moreover, there is no basis for an award of costs against Jordan; movant's concerns regarding the presently existing, and acknowledged, conflict of interest arising from the dual representation of DASNY and TDX are more than legitimate. The fact that these two defendants entered into a written (and previously undisclosed) conflict waiver, and felt a need to submit four (4) affidavits to rebut Jordan's moving papers, only underlines the presence of a legitimate question regarding the conflict.

9

broader protection that adequately ensures both clients **and the general public** that lawyers will act within the bounds of ethical conduct." Rosen, 5 Misc.3d 1031(a) (emphasis added.) Further, New York recognizes the public's right to raise issues of public corruption or misuse of public funds, under common law and statute. E.g., State Finance Law § 123-b; Town of Riverhead v. New York State Board of Real Property Services, 777 N.Y.S.2d 533, 535 (3d Dept. 2004).

The central purpose of the strict scrutiny rule established in Greene is to guard against public corruption. Under Holland & Knight's "standing" argument, the only parties who may object to public corruption are the client/signatories to the corrupt deal. Obviously, that cannot be the appropriate standard. Jordan as a directly-affected party submits that its standing is more than adequate to move for counsel's disqualification.

## CONCLUSION

DASNY and TDX concede in their opposition that their positions are inherently adverse. So much so, in fact, that their counsel concedes its own clients are set up to sue one another in a future lawsuit. This arrangement makes vigorous representation of both clients impossible in this case. When a conflict of interest is present, and large amounts of public funds are involved, one cannot waive the conflict, as a matter of public policy and established legal precedent. For these reasons, it is respectfully submitted that the motion to disqualify should be granted.

Dated: April 4, 2008

                                        Respectfully submitted,

                                        Kalb & Rosenfeld, P.C.
                                        Attorneys for Third Party Defendant
                                        Jordan Panel Systems, Corp.
                                          /s/ Terrence J. O'Connor, Esq.
                                        Terrence J. O'Connor (TJO 1549)
                                        Of Counsel
                                        1470 Bruckner Blvd.
                                        Bronx, N.Y. 10473
                                        (718) 328-1610