```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY as  :
Administrator for RELIANCE INSURANCE      :
COMPANY,                                  :
              Plaintiff,                  :   07 Civ. 6915 (DLC)
                                          :
              -v-                         :   OPINION AND ORDER
                                          :
DORMITORY AUTHORITY - STATE OF NEW YORK,  :
TDX CONSTRUCTION CORP. and KOHN PEDERSEN  :
FOX ASSOCIATES, P.C.,                     :
              Defendants.                 :
                                          :
------------------------------------------:
DORMITORY AUTHORITY OF THE STATE OF NEW   :
YORK and TDX CONSTRUCTION CORP.,          :
              Third-Party Plaintiffs,     :
                                          :
              -v-                         :
                                          :
TRATAROS CONSTRUCTION, INC.,              :
              Third-Party Defendant.      :
------------------------------------------:
TRATAROS CONSTRUCTION, INC. and TRAVELERS :
CASUALTY AND SURETY COMPANY,              :
              Fourth-Party Plaintiffs,    :
                                          :
              -v-                         :
                                          :
CAROLINA CASUALTY INSURANCE COMPANY;      :
BARTEC INDUSTRIES, INC.; DAYTON SUPERIOR  :
SPECIALTY CHEMICAL CORP. a/k/a DAYTON     :
SUPERIOR CORPORATION; SPECIALTY           :
CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER :
CASUALTY INSURANCE COMPANY d/b/a KEMPER   :
INSURANCE COMPANY; GREAT AMERICAN         :
INSURANCE COMPANY; NATIONAL UNION FIRE    :
INSURANCE COMPANY OF PITTSBURGH, PA.;     :
UNITED STATES FIRE INSURANCE COMPANY;     :
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.:
f/k/a COMMERCIAL UNDERWRITERS INSURANCE   :
COMPANY; ZURICH AMERICAN INSURANCE COMPANY:
d/b/a ZURICH INSURANCE COMPANY; OHIO      :
CASUALTY INSURANCE COMPANY d/b/a OHIO     :
CASUALTY GROUP; HARLEYSVILLE MUTUAL       :
INSURANCE COMPANY (a/k/a HARLEYSVILLE     :
INSURANCE COMPANY); JOHN DOES 1-20 and XYZ:
CORPS. 1-20,                              :
              Fourth-Party Defendants.    :
----------------------------------------X
```

Appearances:

For Fourth-Party Plaintiffs Trataros Construction, Inc. and
Travelers Casualty and Surety Company:
JoAnne M. Bonacci
Eli J. Rogers
Dreifuss Bonacci & Parker LLP
26 Columbia Turnpike, North Entrance
Florham Park, NJ 07932

For Fourth-Party Defendant Specialty Construction Brands, Inc.
t/a TEC:
Christian H. Gannon
Robert R. Rigolosi
Gregory N. Harris
Segal McCambridge Singer & Mahoney, Ltd.
830 Third Avenue, Suite 400
New York, NY 10022


DENISE COTE, District Judge:

On August 1, 2007, plaintiff Travelers Casualty and Surety Company ("Travelers"), acting as administrator for Reliance Insurance Company ("Reliance") and asserting claims assigned to Travelers by Trataros Construction, Inc. ("Trataros"), commenced this action against defendants Dormitory Authority - State of New York ("DASNY"), TDX Construction Corp. ("TDX"), and Kohn Pedersen Fox Associates, P.C. ("KPF"). On September 28, 2007, DASNY and TDX filed their answer to the complaint, and asserted various affirmative defenses, counterclaims against Trataros, and cross-claims against KPF. A third-party complaint asserting these counterclaims was also filed by DASNY and TDX on that date. Trataros filed an answer to the third-party complaint on November 13, 2007, which included a cross-claim against KPF and

a counterclaim against TDX, both seeking indemnification, contribution, and exoneration.  On that date, Trataros and Travelers also filed a fourth-party complaint against a subcontractor, two material suppliers, and twelve insurance companies.  Two of those insurance companies -- Allied World Assurance Company (U.S.) Inc. ("Allied World") and United States Fire Insurance Company ("U.S. Fire") -- and one of the material suppliers -- Specialty Construction Brands, Inc. (known as "TEC") -- moved to dismiss the fourth-party claims against them.  Allied World's motion was denied in an Order dated April 2, 2008.  The instant opinion addresses the motion filed by TEC.  A separate Opinion will address U.S. Fire's motion.  For the following reasons, TEC's motion to dismiss is granted.[1]

BACKGROUND

The parties to this action were each involved, directly or indirectly, with the design or construction of a 785,000 square-foot structure for the use of Baruch College (part of the City University of New York ("CUNY")) located between 24th and 25th Streets and Lexington and Third Avenues in Manhattan (the

---

[1] Since TEC's motion was submitted, Trataros and Travelers have filed an amended fourth-party complaint in order to add an additional fourth-party defendant.  The allegations of the amended complaint against TEC are identical to the allegations contained in the original complaint.  TEC's motion will be construed as a motion to dismiss the amended complaint.

3

"Project"). According to Travelers's initial complaint, the Project was architecturally ambitious, and included interlocking atria, a complex curvilinear façade, and aluminum paneling. DASNY acted as the "owner" of the Project on behalf of CUNY and Baruch College. Defendant KPF was retained by DASNY to act as the architect of record for the Project; TDX was hired to act as the construction manager.

DASNY entered into more than a dozen co-prime contracts for the Project's construction work, two of which -- referred to by the parties as Contract No. 15 and Contract No. 16 -- were awarded to Trataros (the "Trataros Contracts").[2] The work called for under the Trataros Contracts included the construction or installation of, <u>inter alia</u>, exterior paneling, windows, the "curtainwall," elevators and escalators, roofing systems, a swimming pool, and, most relevant here, an epoxy terrazzo flooring system that, according to the third-party compliant filed by DASNY and TDX, was to cover "thousands of square feet of public space in the Project."

---

[2] The contract value of the Trataros Contracts was a total of $74,362,000.00, and Trataros was required to obtain performance and payment bonds in that amount as a prerequisite to being awarded the contracts. Those bonds were obtained from Reliance, who subsequently entered into an administrative and reinsurance agreement with Travelers with respect to these bonds; Trataros, in turn, assigned its affirmative claims and causes of action arising from the Project to Travelers.

4

As alleged in the fourth-party complaint, Trataros entered into subcontracts with several entities, including G.M. Crocetti Inc. ("Crocetti"). Under the terms of their subcontract, Crocetti was responsible for, among other things, the installation of some portion of the epoxy terrazzo flooring system. The fourth-party complaint alleges upon information and belief that "in connection with the work subcontracted to it by Trataros, Crocetti used materials manufactured and/or supplied by TEC," which were then "incorporated into the project's epoxy terrazzo flooring system."[3]  The fourth-party complaint also alleges upon information and belief that the concrete floor slabs over which the epoxy terrazzo flooring was laid were installed by a "separate co-prime contractor other than Trataros."

DASNY and TDX's third-party complaint against Trataros alleges that

> [t]he epoxy terrazzo that Trataros and Crocetti installed in the Project is deteriorating and is otherwise defective. Among other things, the epoxy terrazzo is cracking and crumbling at the perimeter of the poured area at the zinc divider strips over substantial areas of the epoxy terrazzo installation. The epoxy terrazzo is also delaminating and "blistering" in increasingly larger areas.

---

[3] Fourth-party defendant Bartec Industries, Inc. ("Bartec") also received a subcontract that called for the installation of a portion of the epoxy terrazzo flooring. Bartec is alleged to have used materials manufactured or supplied by fourth-party defendant Dayton Superior Corporation ("Dayton Superior"), materials which, like TEC's, were then "incorporated" into the flooring.

These defects are alleged to have been "caused by defective workmanship and inappropriate materials provided by Trataros and its subcontractors and suppliers, who, among other things, failed to properly prepare and install the material." The third-party complaint asserts that "remediation" of this defective flooring will cost at least $13 million, and contains a $20 million breach of contract claim against Trataros based primarily on the problems identified in the epoxy terrazzo flooring system.

The fourth-party complaint filed by Trataros and Travelers, in turn, asserts negligence, breach of contract, breach of warranty, indemnification, contribution, and exoneration claims against TEC, each contingent upon a finding that Trataros or Travelers is liable to DASNY and TDX for the alleged defects in the epoxy terrazzo flooring. The fourth-party complaint recites DASNY and TDX's claims regarding the flooring and adds, "upon information and belief," that those allegations

> relate to allegations of purported defects in the Project's epoxy terrazzo flooring system that have allegedly caused and/or allegedly will cause physical damage to, and/or impair the use of, the Project including but not limited to alleged physical damage and/or impairment to work performed and/or installed by separate co-prime contractors other than Trataros.

TEC has now moved to dismiss Trataros and Travelers's fourth-party claims under Rule 12(b)(6), Fed. R. Civ. P.

DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). A court must apply a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In deciding the motion, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted).

The parties focus most intently on the question of whether Trataros and Travelers can maintain a negligence action against TEC arising out of the alleged defects in the epoxy terrazzo flooring. Based upon a review of the allegations of the third- and fourth-party complaints, it is apparent that they may not.

The New York Court of Appeals has concluded that "[t]ort recovery in strict products liability and negligence against a manufacturer should not be available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract." Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.), 84 N.Y.2d 685, 694 (1995); cf. East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 871 (1986). Tort remedies are not available under these circumstances for "injury to the product itself or consequential losses flowing therefrom." Bocre Leasing, 84 N.Y.2d at 693. This is known as the "economic loss doctrine." See, e.g., Weiss v. Polymer Plastics Corp., 21 A.D.3d 1095, 1096 (N.Y. App. Div., 2d Dep't 2005).

Courts have recognized an exception to the economic loss doctrine where a defective product causes damage not only to itself, but also to "other property," see Trump Intern. Hotel & Tower v. Carrier Corp., 524 F. Supp. 2d 302, 309 (S.D.N.Y. 2007) (citing cases); see also Bocre Leasing, 84 N.Y.2d at 692 (noting that tort liability is "generally present" when "personal injury

8

and other property damage" is at issue), and it is on this exception that Trataros and Travelers rely here. They argue that "to the extent DASNY and/or TDX may establish at trial that TEC's products caused physical damage to other elements of the flooring system," they "will be entitled to recovery from TEC" on a negligence theory. This argument is grounded in Trataros and Travelers's fourth-party allegation, upon information and belief, that DASNY and TDX's third-party allegations against them regarding the epoxy terrazzo flooring "relate to" actual or potential damage that the defective flooring has caused or will cause "to work performed and/or installed by separate co-prime contractors other than Trataros." In sum, Trataros and Travelers maintain that the floor elements -- such as the underlying concrete floor slabs -- that were installed by other contractors constitute "other property," and that insofar as DASNY and TDX have alleged that the defective epoxy terrazzo flooring has caused or will cause damage to such "other property," its own forth-party tort action against TEC cannot be dismissed under the economic loss doctrine.

Regardless of the merits of the contention that the flooring work performed by other contractors constitutes "other property" under the economic loss doctrine,[4] Trataros and

---

[4] TEC has cited several recent New York cases that cast serious doubt upon that premise. See, e.g., Weiss, 21 A.D.3d at 1096

9

Travelers's contention on this point must be rejected because the representations in the fourth-party complaint regarding the claims made by DASNY and TDX in the third-party complaint do not withstand scrutiny. Simply put, DASNY and TDX have not, in fact, alleged that the defective epoxy terrazzo caused damage to any "work performed and/or installed by separate co-prime contractors other than Trataros." As described above, DASNY and TDX have alleged in their third-party complaint that the epoxy terrazzo itself is "deteriorating," "defective," "cracking," "crumbling," "delaminating," and "blistering," but they do not allege that these defects have, in turn, caused damage to any other aspect of the structure or flooring. Trataros and Travelers's allegation to the contrary -- <u>i.e.</u>, that such damage to "other property" is, in fact, implicated by DASNY and TDX's third-party complaint -- cannot be credited and will not defeat the instant motion.[5]  <u>See generally</u> <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).[6]

---

(action against stucco manufacturer barred by economic loss doctrine despite allegations of damage to the underlying plywood substrate due to water infiltration); <u>Amin Realty, LLC v. K&R Const. Corp.</u>, 306 A.D.2d 230, 231 (N.Y. App. Div., 2d Dep't 2003) (action against contractor who poured defective concrete dismissed despite resulting need to remove, reinstall, and repair the entire first floor of the building).

[5] The fourth-party plaintiffs also contend that the $13 million in damages claimed by DASNY and TDX as a result of the defective flooring creates a "strong inference" that "more than economic losses" are at issue here, because the products supplied by TEC appear to have cost far less than that amount. This argument is

Viewed in this context, this case appears remarkably similar to Bellevue South Assocs. v. HRH Const. Corp., 78 N.Y.2d 282 (1991), in which the plaintiff-building owner sought to hold the defendant-manufacturer liable in tort in connection with allegedly defective floor tiles. After noting that the defective floor tiles were not "inherently dangerous product[s]," id. at 294, the Court of Appeals stated that "delamination of the tile" is not "personal injury or property damage, but solely injury to the product itself," and "simply a case of economic disappointment" for which "the remedy lies in

---

simply not "sufficient to raise a right to relief above the speculative level." ATSI Commc'ns, 493 F.3d at 98. It should suffice to note that the $13 million is sought not simply because the flooring is allegedly defective and in need of replacement, but also because such replacement "will cause major disruptions to CUNY's operations in the building." Put differently, it may be safely assumed that the total cost of installing a floor during the construction of a building is significantly less than the total cost of removing and replacing a floor while a building is already in use.

[6] As the Court of Appeals noted in Roth, "[w]hen a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed." 489 F.3d at 509. Similarly, "when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made." Id. In this case, Trataros and Travelers's fourth-party complaint alleges, in essence, that DASNY and TDX have filed third-party complaint against them premised, in part, on a assertion that the defective epoxy terrazzo flooring caused damage to other elements of the flooring system. Under Roth, it is thus permissible to look to the third-party complaint to see whether such a claim was, in fact, made against Trataros.

11

contract-law theories such as express and implied warranties." Id. at 294-95. Similarly, in this case, the cracking, delamination, and other alleged defects in the epoxy terrazzo do not implicate damage to "other property," and thus cannot, standing alone, give rise to claims by Trataros and Travelers against TEC sounding in tort.[7]

Trataros and Travelers's other arguments regarding their breach of contract, breach of warranty, indemnification, and contribution, claims also may be swiftly rejected.[8]  First, with respect to their indemnification and contribution claims, Trataros and Travelers invoke the doctrine of equitable subrogation.  "Rooted in equity, the purpose of the subrogation doctrine is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full."  Chemical Bank v. Meltzer, 93 N.Y.2d 296, 304 (1999); see also Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999).  Trataros and Travelers argue that their indemnification and contribution claims must survive insofar as Trataros or Travelers may be held liable to DASNY and TDX for flooring defects attributable to Crocetti (who installed

---

[7] Although the Bellevue South court was addressing the question of whether the manufacturer could be held strictly liable, the same logic applies to negligence claims.

[8] Trataros and Travelers do not separately defend their exoneration claim.

portions of the epoxy terrazzo flooring), who, in turn, may be entitled to payment from TEC, who allegedly supplied the materials used by Crocetti. "In that event," they argue, having been held liable to DASNY and TDX for defects attributable to Crocetti, "Travelers and/or Trataros will effectively 'stand in the shoes' of Crocetti, such that they may enforce Crocetti's rights of action against those entities which caused or contributed to Crocetti's potential liability."

As TEC notes, however, Crocetti's "shoes" have already been filled. Trataros and Travelers have included Carolina Casualty Insurance Company ("Carolina Casualty"), Crocetti's surety,[9] as a fourth-party defendant in this action, and seek from it recovery against the performance bond for any liability imposed upon them by DASNY and TDX that is attributable to Crocetti. In its answer, Carolina Casualty has, in turn, asserted a cross-claim against TEC alleging that TEC is required to indemnify Crocetti/Carolina Casualty in the event that any liability is imposed upon it by Trataros or Travelers.[10] It is not apparent why, under this scenario, equity requires that Trataros and

---

[9] Crocetti itself is not a party to this action; Carolina Casualty's answer to the fourth-party complaint reports that Crocetti has filed for bankruptcy.

[10] TEC also notes that Carolina Casualty's answer to the fourth-party complaint states that "Crocetti found no fault with TEC's materials, and is still not aware of any fault with TEC's materials."

13

Travelers be permitted to maintain their own action against TEC on subrogation grounds, and Trataros and Travelers have cited no case requiring or recommending such a result.  Cf. Aetna Cas. & Sur. Co. v. Norwalk Foods, Inc., 480 N.Y.S.2d 851, 853 (N.Y. Civ. Ct. 1984) ("The doctrine [of subrogation] should not be invoked against one whose equities are equal or superior to the party seeking to be subrogated.").

Second, Trataros and Travelers argue that Trataros was an intended beneficiary of a contract between TEC and Crocetti, and that they therefore may proceed with their breach of contract and breach of warranty claims on that basis.  (It is not alleged that any contract existed between TEC and Trataros directly.) "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed."  Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir. 2006) (citation omitted).  "'A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"

14

Id. (quoting State of Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling, 95 N.Y.2d 427, 434-35 (2000)).

The fourth-party complaint does not state a third-party beneficiary claim. The only allegation in Trataros and Travelers's fourth-party complaint relating to any manner of agreement between Crocetti and TEC is that "Crocetti used materials manufactured and/or supplied by TEC" in installing the floor, and no allegations are made regarding the terms of any such agreement. And, as TEC points out, Rider "G" to the subcontract between Trataros and Crocetti (submitted by Trataros and Travelers in opposition to the motion to dismiss[11]), lists "Terrazzo Marble Supply" of Chicago, Illinois as the "Material Vendor/Supplier" for Crocetti, not TEC. In sum, there is simply no basis in the pleadings or the documents incorporated by reference therein for permitting Trataros and Travelers's breach of contract and breach of warranty claims against TEC to proceed on the theory that Trataros was an intended beneficiary to an agreement between TEC and Crocetti.

---

[11] The terms of the Trataros-Crocetti agreement may be considered in deciding this motion to dismiss, as that agreement is incorporated by reference in the fourth-party complaint. Sira, 380 F.3d at 67.

CONCLUSION

TEC's motion to dismiss the fourth-party complaint, filed on January 14, 2008, is granted.

SO ORDERED:

Dated:   New York, New York
         April 25, 2008

```
                              _____
                                      DENISE COTE
                              United States District Judge
```