# Exhibit O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
TRAVELERS CASUALTY AND SURETY COMPANY as  :
Administrator for RELIANCE INSURANCE      :
COMPANY,                                  :
             Plaintiff,           :          07 Civ. 6915 (DLC)
                                          :
        -v-                       :          OPINION AND ORDER
                                          :
DORMITORY AUTHORITY - STATE OF NEW YORK,   :
TDX CONSTRUCTION CORP. and KOHN PEDERSEN   :
FOX ASSOCIATES, P.C.,                      :
           Defendants.             :
---------------------------------------- :
DORMITORY AUTHORITY OF THE STATE OF NEW    :
YORK and TDX CONSTRUCTION CORP.,           :
        Third-Party Plaintiffs,       :
                                          :
        -v-                       :
                                          :
TRATAROS CONSTRUCTION, INC.,               :
        Third-Party Defendant.        :
---------------------------------------- :
TRATAROS CONSTRUCTION, INC. and TRAVELERS  :
CASUALTY AND SURETY COMPANY,               :
        Fourth-Party Plaintiffs,      :
                                          :
        -v-                       :
                                          :
CAROLINA CASUALTY INSURANCE COMPANY;       :
BARTEC INDUSTRIES, INC.; DAYTON SUPERIOR   :
SPECIALTY CHEMICAL CORP. a/k/a DAYTON      :
SUPERIOR CORPORATION; SPECIALTY            :
CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER  :
CASUALTY INSURANCE COMPANY d/b/a KEMPER    :
INSURANCE COMPANY; GREAT AMERICAN          :
INSURANCE COMPANY; NATIONAL UNION FIRE     :
INSURANCE COMPANY OF PITTSBURGH, PA.;      :
UNITED STATES FIRE INSURANCE COMPANY;      :
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. :
f/k/a COMMERCIAL UNDERWRITERS INSURANCE    :
COMPANY; ZURICH AMERICAN INSURANCE COMPANY :
d/b/a ZURICH INSURANCE COMPANY; OHIO       :
CASUALTY INSURANCE COMPANY d/b/a OHIO      :
CASUALTY GROUP; HARLEYSVILLE MUTUAL        :
INSURANCE COMPANY (a/k/a HARLEYSVILLE      :
INSURANCE COMPANY); JOHN DOES 1-20 and XYZ :
CORPS. 1-20,                               :
        Fourth-Party Defendants.      :
---------------------------------------- X

Appearances:

For Fourth-Party Plaintiffs Trataros Construction, Inc. and
Travelers Casualty and Surety Company:
JoAnne M. Bonacci
Eli J. Rogers
Dreifuss Bonacci & Parker LLP
26 Columbia Turnpike, North Entrance
Florham Park, NJ 07932

For Fourth-Party Defendant United States Fire Insurance Company:
Kristin V. Gallagher
John P. De Filippis
Carroll, McNulty & Kull LLC
570 Lexington Avenue - 10th Floor
New York, NY 10022

DENISE COTE, District Judge:

    This Opinion concludes that a seven-month delay in

providing notice of a claim to an insurer is unreasonable and

relieves the insurer of any obligation to provide coverage in

this complex construction litigation.  This litigation relates

to alleged problems in the design and construction of a building

for the use of Baruch College (the "Project").  On August 1,

2007, plaintiff Travelers Casualty and Surety Company

("Travelers"), acting as administrator for Reliance Insurance

Company ("Reliance") and asserting claims assigned to Travelers

by Trataros Construction, Inc. ("Trataros"), commenced this

action against defendant Dormitory Authority - State of New York

("DASNY") and others.  Trataros performed work on the Project

for DASNY, the owner of the Project.

On November 13, 2008, after waves of pleadings, Trataros
and Travelers filed a fourth-party complaint against a
subcontractor, two material suppliers, and twelve insurance
companies.  One of the insurance companies, United States Fire
Insurance Company ("U.S. Fire"), filed the motion addressed
through this Opinion.[1]  For the following reasons, U.S. Fire's
motion to dismiss[2] is converted to a motion for summary judgment
and granted.


BACKGROUND

    Much of the relevant background is provided in this Court's
Opinion of April 25, 2008, familiarity with which will be
assumed.  Travelers Cas. & Sur. Co., 2008 WL 1882714, at *1-2.
The parties to this action were each involved, directly or

---

[1] A second insurance company -- Allied World Assurance Company
(U.S.) Inc. ("Allied World") -- and one of the material
suppliers -- Specialty Construction Brands, Inc. (known as
"TEC") -- also moved to dismiss the fourth-party claims against
them.  Allied World's motion was denied in an Order dated April
2, 2008; TEC's motion was granted in an Opinion dated April 25,
2008.  Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ.
6915, 2008 WL 1882714 (S.D.N.Y. Apr. 25, 2008).

[2] After U.S. Fire's motion was submitted, Trataros and Travelers
filed an amended fourth-party complaint in order to add an
additional fourth-party defendant.  The allegations of the
amended complaint against U.S. Fire are identical to the
allegations contained in the original fourth-party complaint.
By letter dated April 17, 2008, U.S. Fire -- with the consent of
Trataros and Travelers -- requested that U.S. Fire's motion be
construed as a motion to dismiss the amended complaint.  That
request was granted by a memorandum endorsement of April 18.

indirectly, with the design or construction of the Project, a
785,000 square-foot structure located between 24th and 25th
Streets and Lexington and Third Avenues in Manhattan.  DASNY,
who acted as the "owner" of the Project on behalf of City
University of New York and Baruch College, entered into more
than a dozen co-prime contracts for the Project's construction
work, two of which were awarded to Trataros.[3]

In connection with the work to be performed by Trataros
under these contracts, U.S. Fire issued a comprehensive general
liability policy to Trataros for the period April 1, 1998 to
April 1, 1999, which was subsequently renewed and extended to
April 1, 2000 (the "U.S. Fire CGL Policy").[4]  Under the U.S. Fire
CGL Policy, coverage is provided for, inter alia, claims based
upon "property damage" arising out of an "occurrence."
"Property damage" is defined by the policy as "[p]hysical injury
to tangible property, including all resulting loss of use of
that property" and "[l]oss of use of tangible property that is

---

[3] The contract value of Trataros's contracts was a total of
$74,362,000.00, and Trataros was required to obtain performance
and payment bonds in that amount as a prerequisite to being
awarded the contracts.  Those bonds were obtained from Reliance,
who subsequently entered into an administrative and reinsurance
agreement with Travelers with respect to these bonds; Trataros,
in turn, assigned its affirmative claims and causes of action
arising from the Project to Travelers.

[4] U.S. Fire's initial moving papers indicated that its policy
expired on April 1, 1999; in its reply papers, however, U.S.
Fire acknowledges that April 1, 2000 is the expiration date for
the policy at issue here.

not physically injured"; an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The U.S. Fire CGL Policy also contains two notice provisions. One is a condition requiring that, in the event of an "occurrence," Trataros, as the insured, "must see to it that we [U.S. Fire] are notified as soon as practicable." In the event of a "claim or 'suit'" (where "suit" is defined as a "civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged"), Trataros is similarly required to "see to it that we receive written notice of the claim or 'suit' as soon as practicable." It is this second notice provision on which resolution of U.S. Fire's motion to dismiss depends.

The work called for under the contracts awarded to Trataros included the installation of an epoxy terrazzo flooring system that, according to the third-party compliant filed by DASNY and its construction manager against Trataros, was to cover "thousands of square feet of public space in the Project." The third-party complaint alleges that

> [t]he epoxy terrazzo that Trataros and [G.M. Crocetti Inc.]
> installed in the Project is deteriorating and is otherwise
> defective. Among other things, the epoxy terrazzo is
> cracking and crumbling at the perimeter of the poured area
> at the zinc divider strips over substantial areas of the
> epoxy terrazzo installation. The epoxy terrazzo is also
> delaminating and "blistering" in increasingly larger areas.

The third-party complaint also alleges more generally that

"[t]he work performed by Trataros and its subcontractors failed

to satisfy the technical and quality requirements" contained in

the contracts between DASNY and Trataros as well as "accepted

industry practices," and that, as a result, "significant

portions of Trataros'[s] work was defective, substandard, or

otherwise unacceptable" and thus "had to be repaired or

replaced."

    The fourth-party complaint filed by Trataros and Travelers

seeks, <u>inter alia</u>, a declaratory judgment that coverage exists

under the U.S. Fire CGL Policy for the claims asserted by DASNY

and its construction manager, as well as "complete

indemnification and/or compensatory damages, to the full extent

of such coverage," in the event that DASNY prevails on those

claims.  U.S. Fire has now moved to dismiss Trataros and

Travelers's fourth-party claims under Rule 12(b)(6), Fed. R.

Civ. P.


DISCUSSION

I.   <u>Conversion to Motion for Summary Judgment</u>

    U.S. Fire asserts, in sum, that the fourth-party

complaint's claims against it must be dismissed because (1) U.S.

Fire was not given timely notice of the claims that form the

basis for the instant action, in violation of the terms of the
U.S. Fire CGL Policy, and (2) the allegations of the third- and
fourth-party complaints demonstrate that no coverage exists
under the U.S. Fire CGL Policy in any event.  Both sides have
made factual submissions primarily directed toward the issue of
timely notice.

In light of the parties' submissions, it is appropriate to
convert U.S. Fire's motion to one seeking summary judgment, at
least on the issue of timely notice.  A district court must
ordinarily give notice to the parties before converting a motion
to dismiss to a motion for summary judgment.  See, e.g., Kopec
v. Coughlin, 922 F.2d 152, 154-55 (2d Cir. 1991).  "A party is
deemed to have notice that a motion may be converted," however,
"if that party should reasonably have recognized the possibility
that such a conversion would occur."  Sira v. Morton, 380 F.3d
57, 68 (2d Cir. 2004) (citation omitted).  In connection with
its motion, U.S. Fire submitted several documents detailing the
circumstances in which, it alleges, Trataros became aware of the
claims giving rise to this action, including correspondence from
March, June, and August of 2003 between the Project's
construction manager, DASNY, and Trataros concerning developing
problems with the epoxy terrazzo flooring.  In opposition,
Travelers and Trataros have submitted, inter alia, two
declarations (from JoAnne M. Bonacci and Guido Webber, counsel

for Travelers and Trataros), and one affirmation (from John
Scarpellino, Sr., the Claims Manager for Travelers) detailing
the circumstances under which they became aware of Trataros's
insurance coverage and ultimately gave notice to U.S. Fire, as
well as several documents exchanged by Trataros and others
involved in the Project related to the epoxy terrazzo flooring.[5]

Where a party attaches to a motion to dismiss or to their
opposition thereto "materials that were not included in the
pleadings," they "plainly should [be] aware of the likelihood
of" a conversion to a motion for summary judgment, and "cannot
complain that they were deprived of an adequate opportunity to
provide the materials they deemed necessary to support their"
position. Id. That is the case here, at least with respect to
the issue of timely notice. Although Travelers and Trataros
argue that the record has not been sufficiently developed to
permit resolution of the notice issue at this stage, they do not
identify any further discovery that would be necessary to
complete that record.[6] In sum, having countered U.S. Fire's

---

[5] The Webber declaration and the Scarpellino affirmation were
both submitted in the prior litigation between these parties
related to the Project, which will be discussed further below.
These documents are submitted here as exhibits in support of the
fourth-party plaintiffs' opposition to U.S. Fire's motion.

[6] Moreover, given that the question of whether timely notice was
provided to U.S. Fire -- i.e., whether Travelers and Trataros
took reasonable steps to fulfill their obligation to provide
notice "as soon as practicable" as required under the U.S. Fire
CGL Policy -- depends almost exclusively on facts and records in

factual submissions with factual submissions of their own, it cannot be said that Travelers and Trataros have been "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." Groden v. Random House, Inc., 61 F.3d 1045, 1053 (2d Cir. 1995) (citation omitted). The motion to dismiss will therefore be converted to one for summary judgment pursuant to Rule 56, Fed. R. Civ. P.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims or defenses cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed. R. Civ. P.; accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d

the possession of Travelers and Trataros, it is not apparent that further discovery would be necessary on that issue in any event.

161, 169 (2d Cir. 2006).  Only disputes over material facts,

facts that might affect the outcome of the suit under the

governing law, will properly preclude the entry of summary

judgment.  Anderson, 477 U.S. at 248.


II.   Timely Notice to U.S. Fire

        The parties agree that New York law applies in this

diversity action.  "Under that law, compliance with the notice

provisions of an insurance contract is a condition precedent to

an insurer's liability."  Am. Ins. Co. v. Fairchild Indus.,

Inc., 56 F.3d 435, 438 (2d Cir. 1995); see also Green Door

Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003).

Notice provisions

        enable insurers to make a timely investigation of relevant
        events and exercise early control over a claim.  Early
        control may lead to a settlement before litigation and
        enable insurers to take steps to eliminate the risk of
        similar occurrences in the future.  When insurers have
        timely notice of relevant occurrences, they can establish
        more accurate renewal premiums and maintain adequate
        reserves.

New York v. Blank, 27 F.3d 783, 794 (2d Cir. 1994) (citation

omitted).  "If an insured fails to provide timely notice as

required by the particular policy, then, absent a valid reason

for the delay, the insurer is under no obligation to defend or

indemnify the insured."  Fairchild Indus., Inc., 56 F.3d at 438

(citing Allcity Ins. Co. v. Jimenez, 78 N.Y.2d 1054, 1055

(1991)).  Such failure provides "a complete defense to coverage,

regardless of whether the carrier was prejudiced by the late notice." Green Door Realty, 329 F.3d at 287 (citing Am. Home Assurance Co. v. Int'l Ins. Co., 90 N.Y.2d 433, 440 (1997)); see also Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008).

The U.S. Fire CGL Policy required that notice of an occurrence or claim be given "as soon as practicable," which is "a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances." Travelers Ins. Co. v. Volmar Const. Co., Inc., 300 A.D.2d 40, 43 (N.Y. App. Div., 1st Dep't 2002); see also Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 723 (2d Cir. 1992) (citing Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 441 (1972)). Under New York law, "the question [of] whether notice" of a claim or occurrence "was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." Blank, 27 F.3d at 795. See also Green Door Realty, 329 F.3d at 287 ("[W]hile the question of the reasonableness of an excuse for late notice is generally a question of fact for the jury, a delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is meritless.") (citation omitted). "The burden is on

the insured to show that a delay was reasonable under the circumstances." Fairchild Indus., Inc., 56 F.3d at 438 (citing Acker-Fitzsimons Corp., 31 N.Y.2d at 441).

Whether notice was timely given to an insurer depends in part, of course, on when the insured's obligation to provide notice was triggered.  The obligation to provide notice of an occurrence (as opposed to a claim) is triggered when the "circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim" resulting from that occurrence. Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 272 (2d Cir. 1987). Thus,

> [w]hile the duty to provide notice therefore does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question, when an insured complying with its duty to use due diligence in investigating potential claims against it would believe from the information available that its policy would be involved, the notice obligation arises.

Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 979 F.2d 268, 275-76 (2d Cir. 1992); see also Fairchild Indus., 56 F.3d at 439.  Failure to provide notice of an occurrence under these circumstances may be excused, however, where "the insured has a reasonable argument that it was unaware of the accident" or occurrence, "or where the insured had a good-faith belief in its nonliability." Volmar Const. Co., 300 A.D.2d at 43.

By contrast, "[a] notice of claim provision . . . focuses on the actions of third parties and may be triggered by an unreasonable -- even sanctionable -- assertion of liability." Fairchild Indus., 56 F.3d at 439.  Thus, once a claim has been filed, the insured can no longer offer its good faith belief in nonliability for the underlying occurrence (or the claim itself) as an excuse for a failure to provide notice, as "virtually any assertion of an exposure to liability within the risks covered by an insurance policy is a claim" triggering the duty to provide notice.  Id.; see also Mount Vernon Fire Ins. Co. v. Abesol Realty Corp., 288 F. Supp. 2d 302, 314 (E.D.N.Y. 2003); Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc., No. 03 Civ.1420, 2003 WL 22999464, at *10 n.4 (S.D.N.Y. Dec. 22, 2003); Paul K. Rooney, P.C. v. Chi. Ins. Co., No. 00 Civ. 2335, 2001 WL 262703, at *9-10 (S.D.N.Y. Mar. 16, 2001).

The relevant facts are not in dispute.  Putting aside the question of whether the letters sent to Trataros (and others) in 2003 regarding the developing problems with the epoxy terrazzo flooring were sufficient to trigger Trataros's obligation to notify U.S. Fire of an "occurrence," the parties acknowledge that, in a prior action in this District concerning the same subject matter as the instant action, DASNY filed a third-party complaint against Trataros and Travelers on August 4, 2004, that

contained substantially the same allegations as are set forth in
DASNY's third-party complaint in this action.[7] Trataros and
Travelers do not dispute -- indeed, it is the very premise of
their fourth-party complaint here -- that the August 4, 2004
third-party complaint (or the third-party complaint filed in
this action) was a "suit" within the meaning of the U.S. Fire
CGL Policy, i.e., a "civil proceeding in which damages because
of . . . 'property damage' . . . to which [the U.S. Fire CGL
Policy] applies are alleged."[8]  It is further undisputed that
U.S. Fire did not receive notice of this "suit" until March 29,
2005 (more than seven months later), when its representatives
were served with the amended fourth-party complaint filed by
Trataros and Travelers in the prior proceedings.[9]

---

[7] As described in the parties' submissions, the claims at issue
in this action were previously the subject of proceedings in
this District before the Honorable Harold Baer (No. 04 Civ.
5101).  These proceedings were discontinued without prejudice on
October 7, 2005, in order to provide the parties an opportunity
to resolve their dispute through voluntary mediation.  That
effort failed, thereby precipitating the instant action.

[8] Put differently, if Trataros and Travelers were to argue that
the third-party complaints filed in these actions were not
"suits" encompassed by the U.S. Fire CGL Policy, they would be
conceding, in essence, that no coverage exists under the U.S.
Fire CGL Policy for the damages alleged in those complaints, and
their fourth-party action would have to be dismissed on that
basis.

[9] The docket for the prior proceedings before Judge Baer does not
reflect the filing of an affidavit of service of the amended
fourth-party complaint upon U.S. Fire.  In support of its
motion, however, U.S. Fire has provided an affidavit from
Sherrianne Hanavan, an employee of U.S. Fire's claims management

Case 1:07-cv-06915-DLC    Document 262-16    Filed 08/07/2008    Page 16 of 21

Case 1:07-cv-06915-DLC    Document 235    Filed 06/25/2008    Page 15 of 20


Absent a valid excuse, this seven-month delay in
notification is unreasonable as a matter of law, see, e.g.,
Fairchild Indus., Inc., 56 F.3d at 440 ("Under New York law,
delays for one or two months are routinely held
'unreasonable.'"), and the two excuses offered by Trataros and
Travelers do not suffice.  First, as described in the
declarations and affirmation filed in opposition to the instant
motion, Travelers reports that following the receipt of the
third-party complaint filed in the prior action, it "undertook
to investigate DASNY's allegations" regarding the epoxy terrazzo
flooring.  This task was made difficult by the fact that
Trataros itself had ceased its business operations and dismissed
all of its employees more than a year before that third-party
complaint was filed in August 2004.  As a result of this
investigation, however, at some point in 2004 Travelers claims
that it developed a good-faith belief that it and Trataros could
not be held liable for claims made by DASNY in the August 4,
2004 third-party complaint.  This belief was premised upon
allegedly exculpatory language contained in the change order
related to the flooring work, which states that Trataros will
"[n]ot [be] responsible for concrete delamination."

---

agency, which states that it was informed of the amended fourth-
party complaint on March 29, 2005.

15

Based upon this language, Travelers and Trataros argue here that their delayed notice should be excused because they had no "reason to believe they faced potential liability for [DASNY's] Flooring Claims."  As described above, however, a good faith belief that a claim or suit against an insured that alleges damages within the scope of an insurance policy will not ultimately succeed does not relieve that insured of its obligation to provide notice of that claim or suit. "[A] notice of occurrence requirement is treated differently under New York law from a notice of claim requirement."  Id. at 439.  While a good faith belief that a particular occurrence will not lead to liability (and thus a claim against the policy by the insured) can excuse a failure to provide notice, "[a]n assertion of possible liability, no matter how baseless, is . . . all that is needed to trigger a notice of claim provision."  Id. at 439.[10]

_____

[10] The rationale behind this distinction between occurrences and claims was described by the Court of Appeals in Blank:

> The cases excusing an insured's failure to notify an insurer of an occurrence based on a good faith belief of non-liability are supported by the rationale that if insureds were required to notify insurers of every incident that poses even a remote possibility of liability, insurers would soon be swamped with notice of minor incidents that pose little danger of resulting even in an action by the injured party against the insured, let alone a claim by the insured against the insurer. . . . Once there is a reasonable possibility that the policy will be involved, however, this rationale is no longer applicable."

See also <u>Paul K. Rooney, P.C.</u>, 2001 WL 262703, at *9-10.  Thus,
Travelers and Trataros's argument that their good faith belief
that the third-party complaint filed on August 4, 2004, would
not result in liability cannot excuse their failure to provide
timely notice to U.S. Fire.

      Second, Travelers and Trataros imply, but do not formally
argue, that their failure to give timely notice should be
excused because Trataros (the insured under the U.S. Fire CGL
Policy) ceased business operations in 2003, and thus Travelers
(Trataros's "attorney in fact") had difficulty locating the
policy or, indeed, even determining who had issued potentially
relevant policies to Trataros during the course of the Project.

---

<u>Blank</u>, 27 F.3d at 795-96.  Although one intermediate
appellate decision from New York has subsequently disagreed
with the Second Circuit on this point, <u>see</u> <u>Reynolds Metal
Co. v. Aetna Cas. & Sur. Co.</u>, 259 A.D.2d 195, 201 (N.Y.
App. Div., 3d Dep't 1999), (1) that decision's conclusion
that there is "no reason" to draw a distinction between
claims and occurrences regarding notice requirements, <u>id.</u>,
is belied by the cases cited above, and (2) even if this
Opinion were to follow the Third Department's holding on
that issue, this Court would then have to determine whether
Travelers and Trataros's belief in non-liability was
"reasonable under the circumstances," <u>id.</u> (citation
omitted), which, based on their submissions here, it is far
from clear that they have demonstrated.  Put simply,
Travelers and Trataros's proffered belief that the August
4, 2004 third-party complaint related to nothing more than
the "concrete delamination" referred to in the change
orders cannot withstand scrutiny, particularly in light of
the claims therein unrelated to the epoxy terrazzo flooring
(the so-called "Miscellaneous Defects").  It is not
necessary to reach that issue, however, as this Opinion
adheres to the holding and rationale of <u>Fairchild</u> and
<u>Blank</u>.

The factual submissions made by Travelers in connection with this motion indicate that at some point in January 2005 it discovered various insurance certificates among Trataros's records and the documents obtained from other parties in the prior action. Travelers reports that despite its good faith belief in non-liability, a February 17, 2005 impleader deadline compelled it to follow up on the information contained on the certificates in order to determine whether Trataros had obtained any policies implicated by the claims filed by DASNY. It is not apparent precisely when the U.S. Fire CGL Policy itself was discovered, but U.S. Fire was among the parties included in the amended fourth-party complaint filed by Travelers and Trataros on February 17, 2005.

To the extent that it is necessary to reach this issue, it is sufficient to note that under New York law "a lack of knowledge of an insurance policy does not excuse a delay in notification." Olin Corp., 966 F.2d at 724. As the Court of Appeals explained,

> [i]t is true that delay may be excused if there was a justifiable lack of knowledge of coverage. A justifiable lack of knowledge of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of

the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance.

Id. at 724-25 (citation omitted).  Cf. Briggs Ave LLC v. Ins. Corp. of Hannover, No. 05 Civ. 4212, 2006 WL 1517606, at *5-7 (S.D.N.Y. May 30, 2006) (Lynch, J.) (relying on this principle in finding eight-month delay unreasonable as a matter of law).[11]

In short, the relevant facts not being in dispute and Travelers and Trataros not having offered a valid excuse for the unreasonably delayed notification to U.S. Fire, it must be concluded as a matter of law that the notice obligations contained in the U.S. Fire CGL Policy have been breached, and

---

[11] Travelers and Trataros argue, citing U.S. Underwriters Ins. Co. v. Falcon Construction Corp., No. 02 Civ. 4182, 2003 WL 22019429 (S.D.N.Y. Aug,. 27, 2003), that the time taken to investigate a claim and obtain insurance information may be "considered" in determining whether notice was timely.  As they also recognize, however, the question of whether notice was given as soon as practicable is "heavily dependent on the factual contexts in which [it] arise[s]."  Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 19 (1979), and the scenarios presented here and in Falcon Construction Corp. are distinguishable.  In that case, a significant delay between the filing of a claim and the notification of the insurer was held not to be unreasonable as a matter of law where it was not clear which of a number of contractors had worked on the relevant site -- and thus which contract and which insurance policy were implicated by the injured party's claim -- and the locating the contract required a search of a remote records storage facility. Falcon Const. Corp., 2003 WL 22019429, at *2, *6.  Here, by contrast, there was no such confusion regarding which contract was implicated by the third-party complaint -- rather, the explanation offered here is that the insured (Trataros) had gone out of business, fired its employees, and, it appears, ceased keeping track of its insurance policies and obligations.  This scenario is more accurately captured by the above-cited passage from Olin than the discussion contained in Falcon Construction Corp.

thus that U.S. Fire cannot be called upon to provide coverage to Trataros or Travelers under that policy. <u>Blank</u>, 27 F.3d at 795. Summary judgment must therefore be granted to U.S. Fire and the fourth-party complaint against it dismissed.


CONCLUSION

U.S. Fire's motion to dismiss the fourth-party complaint, filed on February 11, 2008, is converted to a motion for summary judgment and granted.

SO ORDERED:

Dated:    New York, New York
          June 25, 2008


                              _____
                              DENISE COTE
                    United States District Judge