UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY AND SURETY COMPANY
as Administrator for RELIANCE INSURANCE COMPANY,

                  Plaintiff,

vs.

                                Case No. 07-CV-6915 (DLC)
                                **ECF CASE**

DORMITORY AUTHORITY – STATE OF NEW YORK,
TDX CONSTRUCTION CORP. and KOHN PEDERSEN
FOX ASSOCIATES, P.C.,
                  Defendants.

DORMITORY AUTHORITY – STATE OF NEW YORK, et. al,

                  Third-Party Plaintiffs,

vs.

TRATAROS CONSTRUCTION, INC.,

                  Third-Party Defendant.

TRATAROS CONSTRUCTION, INC., et. al,

                  Fourth-Party Plaintiffs,

vs.

CAROLINA CASUALTY INSURANCE COMPANY; et. al,

                  Fourth-Party Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF FOURTH-PARTY DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON LATE NOTICE GROUNDS

**MELITO & ADOLFSEN P.C.**
233 Broadway
New York, New York 10279
(212) 238-8900
*Attorneys for Fourth-Party Defendants*

Ignatius John Melito
S. Dwight Stephens
*Of Counsel*

# TABLE OF CONTENTS                    Page

PRELIMINARY STATEMENT ........................................................................... 2

FACTUAL BACKGROUND ............................................................................. 4

The notice to Trataros of the
terrazzo problems beginning in
2001 and culminating with the suit
against it on August 8, 2004 ........................................................................... 4

Trataros' first notice to Zurich and Assurance of
the claim and suit against it in March 2005 when
it filed an Amended Fourth-Party Complaint
against Zurich ................................................................................................. 6

The renewal of essentially the same
claims by Trataros in the 2007 Action ........................................................... 8

The Trataros Policy ........................................................................................ 9

The U.S. Fire motion to dismiss .................................................................. 13

POINT I

THE INSURANCE COVERAGE CLAIMS BY
TRAVELERS AND TRATAROS AGAINST
ZURICH AND ASSURANCE ARE BARRED
BY THEIR UNTIMELY NOTICE ................................................................ 15

New York law applies to the
notice issue in this diversity action ............................................................. 15

Travelers' first notice to Zurich and
Assurance of the "occurrence," claim
and suit, which was seven months after
its receipt of the suit papers, is untimely
as a matter of law ........................................................................................ 15

CONCLUSION .............................................................................................. 23

# TABLE OF AUTHORITIES

Cases                                                                                                          Page

*Allcity Ins. Co. v. Jimenez,*
78 N.Y.2d 1054, 1055 (1991) ................................................................................17

*Am. Home Assurance Co. v. Int's Ins. Co.,*
90 N.Y.2d 433, 440 (1997) ...................................................................................18

*Am. Ins. Co. v. Fairchild Indus., Inc.,*
56 F. 3d 435, 438 (2d Cir. 1995) ....................................................................17, 18

*American Manufacturers Mutual Ins. Co. v. CMA Enterprises, Ltd.,*
246 A.D.2d 373, 667 N.Y.S.2d 724 (1st Dep't 1998) ..........................................23

*Atlantic General Contracting, Inc. v. U.S. Liability Ins. Group,*
24 A.D.3d 480, 806 N.Y.S.2d 225 (2d Dep't 2005).............................................16

*Auten v. Auten,*
308 N.Y. 155, 124 N.E.2d 99 (1954)....................................................................15

*Bergassi Agency, Inc. v. Employers Reinsurance Corp.,*
247 A.D.2d 577, 669 N.Y.S.2d 345 (2d Dep't 1998).....................................19, 21

*Briggs Avenue L.L.C. v. Ins. Corp. of Hannover,*
516 F. 3d 42 (2d Cir. 2008). ................................................................................17

*Briggs Ave LLC v. Ins. Corp. of Hannover,*
No. 05 Civ. 4212, 2006 WL 1517606m at *5-7 (S.D.N.Y. May 30, 2006)...........22

*Christiania Gen. Ins. Co. Corp. of N.Y. v. Great Am. Ins. Co.,*
979 F.2d 268, 275 (2d Cir. 1992) .........................................................................18

*City of New York v. St. Paul Fire & Marine Ins. Co.,*
21 A.D.3d 978, 801 N.Y.S.2d 362 (2d Dep't 2005)..............................................23

*Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,*
822 F. 2d 267 (2d Cir. 1987) ................................................................................18

*Eagle Ins. Co. v. Garcia,*
280 A.D.2d 476, 720 N.Y.S.2d 172 (2d Dep't 2001).............................................22

*Green Door Realty Corp. v. TIG Ins. Co.,*
329 F. 3d 282 (2d Cir. 2003) ............................................................17, 18

*Horowitz v. Transamerica Ins. Co.,*
257 A.D.2d 560, 683 N.Y.S.2d 290 (2 Dep't 1999)...............................22

*Matter of Allstate Ins. Co. [Stolarz],*
81 N.Y.2d 219, 597 N.Y.S.2d 904 (1993)..............................................16

*Matter of Allstate Insurance Co. (Stolarz),*
81 N.Y.2d 219, 597 N.Y.S.2d 904 (1993).........................................15, 16

*Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.,*
288 F. Supp. 2d 302 (E.D. N.Y. 2003) ...................................................19

*New York v. Blank,*
27 F.3d 783 (2d Cir. 1994) ....................................................................17

*Olin Corp. v. Ins. Co. of North America,*
734 F. Supp.1044 (S.D.N.Y. 1990),
*aff'd* 929 F.2d 62 (2d Cir. 1991) .......................................................15, 17

*Paul K. Rooney, P.C. v. Chi. Ins. Co.,*
No. 00 Civ. 2335, 2001 WL 262703,
at *9-10 (S.D.N.Y. Mar. 16, 2001)....................................................19, 21

*Roofing Consultants, Inc. v. Scottsdale Ins. Co.,*
273 A.D.2d 933, 709 N.Y.S.2d 782 (4th Dep't 2000);.............................23

*Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.,*
31 N.Y.2d 436 (1972) ........................................................................17, 18

*Thomson v. Power Authority of the State of New York,*
217 A.D.2d 495, 629 N.Y.S.2d 760 (1st Dep't 1995)..............................23

*Travelers Ins. Co. v. Volmar Const. co., Inc.,*
300 A.D. 2d 40 (1st Dep't 2002) .......................................................17, 18

*Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc.,*
No. 03 Civ.1420, 2003 WL 22999464, (S.D.N.Y. Dec. 22, 2003) .........19

*Worth Construction Construction Co., Inc. v. Admiral Ins. Co.,*
40 A.D.3d 423, 836 N.Y.S.2d 155 (1st Dep't 2007), *mod. on other grounds,*
10 N.Y.3d 411, 859 N.Y.S.2d 101 (2008)..............................................................16

*Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.,*
84 N.Y.2d 312, 618 N.Y.S.2d 609 (1994)..............................................................15

## PRELIMINARY STATEMENT

On August 1, 2007, Plaintiff Travelers Casualty and Surety ("Travelers"), acting as administrator for Reliance Insurance Company ("Reliance") and asserting claims assigned to Travelers by Trataros Construction, Inc. ("Trataros"), commenced this action against Defendants Dormitory Authority – State of New York ("DASNY"), TDX Construction Corp. ("TDX") and Kohn Pedersen Fox Associates, P.C. ("KPF") attempting to recoup money paid out under certain performance bonds issued by Reliance to Trataros.

DASNY then impleaded Trataros. The third-party action against Trataros alleges defective work by Trataros and its subcontractors including, *inter alia*, Bartec Industries, Inc. ("Bartec"), and seeks contractual and common law indemnity and contribution. The complaint also seeks breach of contract damages arising out of construction delays, disruptions and defects.

Trataros and Travelers commenced a fourth-party action against Zurich American Insurance Company ("Zurich"), Bartec and others. The fourth-party complaint seeks, *inter alia,* a declaratory judgment that coverage exists under a Zurich general liability policy issued to Trataros and a general liability policy issued by Assurance Company of America ("Assurance") to Bartec for the claims asserted by DASNY and TDX, as well as "complete indemnification and/or compensatory damages, to the full extent of such coverage," in the event that DASNY prevails on those claims.[1]

By opinion and order dated June 25, 2008, this Court concluded that a seven-month delay in providing notice of a suit to an insurer is unreasonable and relieves the insurer of any

---

[1] Travelers did not include Assurance, which is a sister company of Zurich, as a fourth-party defendant in this action despite the fact that Zurich alerted it to the omission in its answer and Zurich produced the Assurance Bartec Policy in discovery in the prior action. Zurich opted not to make a motion to dismiss the claims concerning the Bartec Policy on this ground so as not to make an already complicated action unnecessarily more complicated. However, for purposes of this motion, Zurich requests that the court add Assurance as a fourth-party defendant, pursuant to FRCP 21, and grant summary judgment to it for the reasons set forth in this motion.

obligation to provide coverage in this complex construction litigation. In doing so, the Court converted Fourth-party Defendant United States Fire Insurance Company's ("U.S. Fire") motion to dismiss to a motion for summary judgment and granted the motion on late notice grounds, declaring that U.S. Fire cannot be called upon to provide coverage to Trataros or Travelers under the U.S. Fire Policy issued to Trataros. Thereafter, the Court issued an order directing, in effect, that similarly situated Fourth-party Defendant insurers could file motions for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56 on late notice grounds on or before August 8, 2008. Zurich and Assurance do so here.

Travelers and Trataros never formally tendered the DASNY claim to Zurich or Assurance. Instead, their first "tender" was the commencement of the original fourth-party action against Zurich. Zurich responded to that tender with a denial of coverage and the assertion of the affirmative defenses that the claim for insurance coverage by Travelers and Trataros under both policies was barred, *inter alia,* by their failure to comply with the conditions requiring timely notice of an occurrence, claim and suit and requiring the timely forwarding of suit papers. This first-notice constituted a nearly seven-month delay, making the notice untimely and relieving Zurich and Assurance of any obligation to provide coverage to Travelers and Trataros in this action. Since the first-notice was received by Zurich and Assurance in the context of a complaint in a litigation, the law is settled in New York that the denial of coverage by Zurich and Assurance in their answer to the complaint constituted a valid disclaimer.

Accordingly, this Court should grant Zurich and Assurance summary judgment and issue a declaration that they have no obligation to provide coverage to Travelers and Trataros under the Zurich policy issued to Trataros and the Assurance policy issued to Bartec. (In the event that this Court denies this motion, Zurich and Assurance reserve their right to move for summary

judgment on the other grounds raised in their affirmative defenses at the close of discovery pursuant to the present scheduling order.)

## FACTUAL BACKGROUND

The factual background for this complex construction litigation is set forth in detail in this Court's prior opinions and orders dated April 25, 2008 and June 25, 2008. The facts set forth below focus primarily on the facts relevant to the notice question at issue in this motion.

**The notice to Trataros of the terrazzo problems beginning in 2001 and culminating with the suit against it on August 8, 2004**

This claim arises out of alleged construction defects in connection with the construction of a building for Baruch College in New York City. Trataros contracted with DASNY to, among other things, install throughout the building an epoxy terrazzo flooring on top of concrete, which was laid down by a separate prime contractor. Trataros subcontracted the work to G.M. Crocetti, Inc. ("Crocetti"). Because the concrete work was not level when it was completed, Trataros subcontracted with Bartec to install an underlayment material to provide a level surface upon which Crocetti was to place the epoxy terrazzo flooring. DASNY alleges that gaps in the divider strips that are part of Crocetti's work permitted the infiltration of water when the floor was cleaned and this water softened the underlayment material installed by Bartec, causing significant debonding within the flooring system and buckling of the floor panels. Part of the problem also is allegedly attributable to the fact that the underlayment product used by Bartec and approved by the architect is water soluble.

Reliance issued performance bonds to Trataros. Trataros on behalf of itself and its subcontractors made payment claims against DASNY for substantial cost overruns that it blamed

4

on DASNY and others.  DASNY, in turn, responded with claims against Trataros alleging damages from delays and defective work.

By letter dated February 28, 2001, TDX notified Trataros that there were areas where the terrazzo flooring installation had separated from the substrates and areas of delamination of the layers of the conflow floor fill on the 6th floor (Exhibit A).  TDX directed Trataros to provide a survey of the entire terrazzo installation for any other areas of uplift, provide a survey of the remaining exposed conflow installation for delamination, provide the results of Trataros' token core samples from various locations of the terrazzo installation, advise TDX the reason for the separation and delamination, and advise TDX of the steps Trataros planned to take to remediate the problems (*Id.*).

By letter dated March 7, 2003, TDX provided Trataros with an expert report from Testwell Laboratories, Inc., concluding that there was extensive debonding of the terrazzo system (Exhibit B).  TDX informed Trataros that Testwell's "observation of debonding shows the epoxy membrane separating from the substrate, which suggests a potential failure of the terrazzo system."  (*Id.*).  The letter notifies Trataros that TDX will hold Trataros responsible for all conditions resulting from a failure of the terrazzo system.  (*Id.*).

By letter dated June 17, 2003, TDX wrote to DASNY summarizing the findings of three different firms detailing their investigations and analyses of the failures of the terrazzo flooring systems (Exhibit C).

On August 28, 2003, TDX wrote Trataros again, noting that "[t]here have been deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation at Baruch College Site 'B.'" (Exhibit D).

At some point, Trataros ceased business operations. Travelers became administrator of the Reliance performance bonds issued to Trataros. Trataros also entered into a General Agreement of Indemnification with Travelers, pursuant to which Trataros appointed Travelers as its attorney-in-fact for pursuing Trataros' rights in connection with the bonds.

On June 28, 2004, Travelers, as Administrator for Reliance, and Trataros commenced a lawsuit against DASNY, TDX, and KPF, the Project architects, seeking payment on behalf of Trataros and its subcontractors from DASNY. Additionally, Travelers asserted a negligence claim against both TDX and KPF for failing to properly perform their responsibilities, resulting in delay and defects on the Project ("the 2004 Action"). (Exhibit E).

On or about August 4, 2004, DASNY commenced a third-party action against Trataros and Travelers, seeking common law and contractual indemnification and contribution from Trataros and its subcontractors' alleging that their work caused "construction defects." The only allegation of a specific "construction defect" refers to substandard work performed by Trataros and Crocetti in breach of their contractual obligations, causing the terrazzo flooring system to "crack and crumble," and to "delaminate and blister" in large areas. (Exhibit F).

On February 17, 2005, KPF commenced a Second Third-Party action against Trataros and the KPF Design Team, alleging that Trataros and the Design Team were negligent with respect to their work on the Project, and asserting claims for contribution, common law and contractual indemnification, negligence and breach of contract.

**Trataros' first notice to Zurich and Assurance of
the claim and suit against it in March 2005 when
it filed an Amended Fourth-Party Complaint
<u>against Zurich.</u>**

On or about February 17, 2005, Travelers and Trataros filed an Amended Fourth-Party Complaint against Zurich, Bartec, and other contractors and insurers (Exhibit G). In the Seventh

Count, Travelers and Trataros alleged that Zurich, among others, had issued general liability coverage on behalf of Trataros (*Id.* at para. 78).   The Seventh Count further alleges that "if and to the extent that any of the insurance policies written by the insurers cover part or all of the [damages awarded against Trataros], those insurers will be jointly liable to reimburse, indemnify, and/or exonerate Trataros and/or Travelers for the covered damages either because Trataros is a named insured, or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros and/or DASNY to make a claim against the insurance policies." (*Id.* at para. 82).

An affidavit of service contained in the court file indicates that the Fourth-Party Complaint was served on Zurich by substituted service via the New York State Insurance Department on March 2, 2005 (Exhibit H).   Zurich received the complaint on or about March 15, 2005 (See affidavit of Priscilla May, sworn to August 6, 2008, at para. 5).   This was Zurich's and Assurance's first notice from Trataros or Travelers of the "occurrence," claim and "suit" involved in this action.

On April 5, 2005, Zurich answered the Amended Fourth-Party Complaint, denied the allegations against it contained in the Complaint, and asserted as affirmative defenses that Travelers and Trataros had breached the conditions requiring timely notice of an occurrence, claim and suit and requiring the timely forwarding of suit papers. (Exhibit I at p. 11, Fourth Affirmative Defense). The answer also noted that Travelers and Trataros had improperly failed to name Assurance as a party to the action (Ex. I at p. 2).

On October 7, 2005, the parties to the 2004 Action stipulated to the dismissal without prejudice of all proceedings in order to permit mediation to go forward.

**The renewal of essentially the same
claims by Trataros in the 2007 Action**

Following the completion of mediation, this action was commenced, and a Fourth-Party

Complaint was filed with the Court by Travelers and Trataros on November 14, 2007 (Exhibit J).

According to the Fourth-Party Complaint, on April 22, 1998, DASNY awarded prime Contract

Number 15 to Trataros, and on or about August 27, 1998, DASNY awarded co-prime Contract

16 to Trataros (*Id.* at paras. 37-38). Trataros in turn subcontracted work regarding the epoxy

terrazzo flooring under Contract Number 16 (*Id.* at para. 39).

In the Ninth Count of the Fourth-Party Complaint, Travelers again alleges that Trataros is

an insured and/or additional insured under policies issued by, among others, Zurich to Trataros,

Bartec, and other named contractors. Trataros further alleges that, should the trier of fact in this

action find that Trataros is liable to DASNY and/or TDX for damages in connection "with the

repair, replacement, and/or loss of use of the allegedly damaged and/or impaired property," then

the cost of repairing and/or replacing the allegedly defective or damaged "may be covered in

whole or in part by any one or all of the insurance policies written by the carriers," including

those issued by Zurich. (Exhibit J at para. 145).

It is further alleged that, to the extent there is coverage under the policies issued by

Zurich for the property damage, then Zurich shall also be required to "defend and/or indemnify

Travelers and/or Trataros in connection with this action, either because Trataros qualifies as an

'insured' and/or 'additional insured', or because Travelers shall acquire by equitable subrogation

or legal assignment the right of Trataros, Bartec and/or DASNY to make a claim against the

insurance policies." (Exhibit J at para. 147).

On January 18, 2008, Zurich answered the Fourth-Party Complaint, again asserting as affirmative defenses that Travelers had breached the notice conditions requiring timely notice of an "occurrence," claim and "suit" and requiring timely forwarding of suit papers (Exhibit K, Fourth Affirmative Defense). Zurich's answer further pleaded as an affirmative defense the failure to name Assurance as a party to the action (Exhibit K, Twenty-Seventh Affirmative Defense).

**The Trataros Policy**

Zurich issued one general liability policy to Trataros, effective April 1, 2001 to April 1, 2002 (Exhibit L at Z 212)("the Trataros Policy"). The Trataros Policy includes Commercial General Liability Form CG 00 01 07 98, which contains the following condition requiring notice to Zurich as soon as practicable of an "occurrence," claim or suit and the *immediate* forwarding to Zurich of any demands or legal papers:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
>        *     *     *
>
> **2.**   **Duties In The Event Of Occurrence, Offense Claim or Suit**
>
>    **a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>      **(1)**   How, when and where the "occurrence" or offense took place;
>
>      **(2)**   The names and addresses of any injured persons and witnesses; and
>
>      **(3)**   The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**    You and any other involved insured must:

        **(1)**    ***Immediately*** send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. (Exhibit L at Z 234)(emphasis added).

Trataros entered a contract with Bartec that was fully executed on June 28, 2000 (Exhibit M). Among other things, the contract required Bartec to obtain additional insured coverage for Trataros (Exhibit M, Terms and Conditions at para. 21).

Assurance, a Zurich affiliate, issued a combined primary commercial general liability policy and umbrella policy to Bartec, effective May 26, 2000 to May 25, 2001 (Exhibit N)("the

Bartec Policy").[2]  The Commercial General Liability Coverage Form of the primary policy includes as insureds "any person or organization other than an architect, engineer or surveyor, which requires in a 'work contract' that such person or organization be made an insured under this policy." (*Id.* at Z 75). A "work contract" is defined to mean "a written agreement into which you enter for work performed by your or on your behalf." (*Id.* at Z83).

The Coverage Form contains the following notice provision requiring, among other things, notice to Assurance as soon as practicable of an "occurrence," claim or suit and the *immediate* forwarding to Zurich of any demands or legal papers:

> 2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>> (1)  How, when and where the "occurrence" or offense took place:
>>
>> (2)  The names and addresses of any injured persons and witnesses; and
>>
>> (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b.  If a claim is made or "suit" is brought against any insured, you must:
>
>> (1)  Immediately record the specifics of the claim or "suit" and the date received; and

---

[2]  While Assurance issued consecutive annual policies to Bartec beginning on May 26, 1995, the only potentially applicable policy for Trataros' additional insured claim is this one policy (5/26/00-5/25/01) since Trataros is only an additional insured by virtue of the Bartec subcontract and that contract was not fully executed until June 28, 2000.

11

> (2)    Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c.    You and any other involved insured must:
>
> > (1)    ***Immediately*** send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . .

(Exhibit N at Z 77-78)(emphasis added).

The Assurance Umbrella Coverage Form includes as insureds, among others, "A) Any person or organization for which you have agreed in a written contract to include as an insured, however: 1) Only in connection with liability arising out of the operation of your business; 2) Only to the extent that coverage is afforded to that person or organization by 'underlying insurance'; and 3) Only up to the extent of the limits of liability required by such contract, not to exceed the applicable LIMITS OF INSURANCE of this coverage part. B) Any other person or organization that is included as an insured or additional insured under 'underlying insurance' is an insured but only to the extent that coverage is afforded to that person or organization by the 'underlying insurance.'" (Exhibit N at 175).

The umbrella policy has the following notice condition:

> 4.07    Duties in the Event of Occurrence, Claim or Suit
>
> > A)    You must see to it that we are notified as soon as practicable of an "occurrence" or an "offense" which may result in a "claim". To the extent possible, notice should include:
> >
> > > (1)    The insured's name and address:
> > >
> > > (2)    How, when and where the "occurrence" or offense took place;

12

(3)    The names and addresses of any injured persons witnesses; and

(4)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

B)    Notice of an "occurrence" or offense is not notice of a "claim". However, if a "claim" is made or "suit" is brought against any insured you must:

1)    Immediately record the specifics of the "claim" or "suit" and the date received;

2)    Notify us as soon as practicable; and

3)    Provide us with written notice of the "claim" or "suit" as soon as practicable.

C)    You and any other involved insured must:

1)    ***Immediately*** send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" . . . (Exhibit N at 177)(emphasis added).

### The U.S. Fire motion to dismiss

In this action, U.S. Fire made a motion to dismiss the Fourth-Party Complaint against it on several grounds including late notice. Based on the parties' documentary submissions, the Court converted the motion to a summary judgment motion and granted U.S. Fire summary judgment, declaring that U.S. Fire has no obligation to defend or indemnify Trataros or Travelers for the claims against Trataros based on their breach of the notice of suit provision by delaying seven months in providing notice of the 2004 action against Trataros (Exhibit O).

The Court found that DASNY filed a third-party complaint against Trataros and Travelers on August 4, 2004, that this was a "suit" within the meaning of the U.S. Fire policy, and that U.S. Fire did not receive notice until March 29, 2005 (Exhibit O at pp. 13-14). The affidavit of service documenting when the complaint was served on U.S. Fire apparently was not filed with the court, but a U.S. Fire representative testified that it learned of the complaint on March 29, 2000 (*Id.* at p. 14-15 n. 9). The Court determined that absent a valid excuse, this over 7-month delay is unreasonable as a matter of law (*Id.* at p. 15).

Travelers stated that upon receipt of the third-party complaint, it undertook to investigate DASNY's allegations and that its investigation was made difficult by the fact that Trataros had ceased operation and dismissed all of its employees over one year before the complaint was filed. As a result of its investigation, Travelers also claimed that it developed a good-faith belief that it and Trataros could not be liable for the claims asserted by DASNY based on allegedly exculpatory language contained in the change order relating to flooring work, which states Trataros will "[n]ot [be] responsible for concrete delamination." (Exhibit O).

The Court held that a good faith belief that a claim or suit will not ultimately succeed does not relieve the insured of its obligation to provide notice of the claim or suit (Exhibit O at p. 17). Whereas notice of an occurrence may be excused by a good-faith belief in non-liability in certain circumstances, notice of a claim or suit must be provided promptly regardless of any such belief in non-liability (*See id.*).

As to Travelers' claim that its untimely notice should be excused because it had difficulty locating Trataros' policies, the court held that under New York law, a lack of knowledge of an insurance policy does not excuse late notice (Exhibit O at pp. 18-19).

14

## POINT I

### THE INSURANCE COVERAGE CLAIMS BY TRAVELERS AND TRATAROS AGAINST ZURICH AND ASSURANCE ARE BARRED BY THEIR UNTIMELY NOTICE.

**New York law applies to the notice issue in this diversity action.**

In reaching its decision on the U.S. Fire motion, this Court determined that New York law governed the action. New York law should also apply to the motion herein by Zurich and Assurance.

Under New York choice-of-law rules, New York courts generally apply the law of the jurisdiction "which has the most significant contacts with the matter in dispute." *See, e.g., Auten v. Auten,* 308 N.Y. 155, 160, 124 N.E.2d 99 (1954); *Olin Corp. v. Ins. Co. of North America,* 734 F. Supp.1044, 1048 (S.D.N.Y. 1990), *aff'd* 929 F.2d 62 (2d Cir. 1991).

As to the relevant contacts, New York follows the Restatement approach which looks at five factors in determining what state has the center of gravity:  the place of contracting; the place of negotiation; the place of performance of the contract; the location of the subject matter of the contract; and the domicile of the parties. *See Matter of Allstate Insurance Co. (Stolarz),* 81 N.Y.2d 219, 597 N.Y.S.2d 904 (1993); *Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.,* 84 N.Y.2d 312, 618 N.Y.S.2d 609 (1994).

New York law applies to the Trataros Policy in this diversity action because the Policy was issued to Trataros in New York through a New York broker to cover Trataros' New York operations.

New York law also applies to the Bartec Policy because the center of gravity is in New York, where the construction site was located and the underlying personal injury action is being

15

litigated, not New Jersey, where Assurance issued its policy to Bartec. *See, e.g., Worth Construction Construction Co., Inc. v. Admiral Ins. Co.,* 40 A.D.3d 423, 836 N.Y.S.2d 155 (1st Dep't 2007), *mod. on other grounds,* 10 N.Y.3d 411, 859 N.Y.S.2d 101 (2008). *See also Atlantic General Contracting, Inc. v. U.S. Liability Ins. Group,* 24 A.D.3d 480, 806 N.Y.S.2d 225 (2d Dep't 2005)(holding that New York law, not New Jersey law, applied to late notice issue because New York had most significant contacts with insurance coverage dispute since New York was location of construction project, accident and underlying personal injury suit). *See generally Matter of Allstate Ins. Co. [Stolarz],* 81 N.Y.2d 219, 225-226, 597 N.Y.S.2d 904 (1993).

In *Worth v. Admiral,* the Appellate Division, First Department held that New York law applied to the interpretation of the policy and specifically the late notice issue where, as in this case, an additional insured sought coverage under a policy issued to the named insured in New Jersey but the construction site was located in New York and the underlying personal injury action was being litigated in New York, not New Jersey. 40 A.D.3d at 424. In a further appeal, the Court of Appeals did not address the late notice issue but implicitly held that New York law was applicable when it applied New York law to the interpretation of the "arising out of" language in the blanket additional insured endorsement, which was the issue as to which it disagreed with the Appellate Division. *See* 10 N.Y.3d at 415-16.

**Travelers' first notice to Zurich and Assurance of the "occurrence," claim and suit, which was seven months after its receipt of the suit papers, is untimely <u>as a matter of law.</u>**

Under New York law, "compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability," regardless of whether the insurer suffers

16

prejudice. *Am. Ins. Co. v. Fairchild Indus., Inc.,* 56 F. 3d 435, 438 (2d Cir. 1995). *See also*

*Green Door Realty Corp. v. TIG Ins. Co.,* 329 F. 3d 282, 287 (2d Cir. 2003). Notice provisions:

> enable insurers to make a timely investigation of relevant
> events and exercise early control over a claim. Early control
> may lead to a settlement before litigation and enable
> insurers to take steps to eliminate the risk of similar
> occurrences in the future. When insurers have timely notice
> of relevant occurrences, they can establish more accurate
> renewal premiums and maintain adequate reserves.

*New York v. Blank,* 27 F.3d 783, 794 (2d Cir. 1994) (citation omitted). "If an insured fails to

provide timely notice as required by the particular policy, then, absent a valid reason for the

delay, the insurer is under no obligation to defend or indemnify insured." *Fairchild Indus., Inc.,*

56 F.3d at 438 (*citing Allcity Ins. Co. v. Jimenez,* 78 N.Y.2d 1054, 1055 (1991)). Such a failure

provides "a complete defense to coverage, regardless of whether the carrier was prejudiced by

the late notice." *Green Door Realty,* 329 F.3d at 287 (*citing Am. Home Assurance Co. v. Int's*

*Ins. Co.,* 90 N.Y.2d 433, 440 (1997)); *See also Briggs Avenue L.L.C. v. Ins. Corp. of Hannover,*

516 F. 3d 42, 49 (2d Cir. 2008).

The Trataros and Bartec policies both required that a notice of an occurrence or claim be

given "as soon as practicable," which is "a standard provision in liability policies that has been

interpreted to require notice within a reasonable time under the circumstances." *Travelers Ins.*

*Co. v. Volmar Const. co., Inc.,* 300 A.D. 2d 40, 43 (1st Dep't 2002). *See also Olin Corp. v. Ins.*

*Co. of N. Am.,* 966 F.2d 718, 723 (2d Cir. 1992) (*citing Security Mut. Ins. Co. v. Acker-*

*Fitzsimons Corp.,* 31 N.Y.2d 436, 441 (1972)). Under New York law, "the question [of] whether

notice " of a claim or occurrence "was given within a reasonable time may be determined as a

question of law when (1) the facts bearing on the delay in providing notice are not in dispute and

(2) the insured has not offered a valid excuse for the delay." *Blank,* 27 F.3d at 795. *See also*

*Green Door Realty*, 329 F.3d at 287 (" [W]hile the question of the reasonableness of an excuse for late notice is generally a question of fact for the jury, a delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is meritless.") (citation omitted).  "The burden is on the insured to show that a delay was reasonable under the circumstances." *Fairchild Indus., Inc.*, 56 F.3d at 438 (*citing Acker-Fitzsimons Corp.*, 31 N.Y. 2d at 441).

Whether notice was timely given to an insurer depends in part on when the insured's obligation to provide notice was triggered. The obligation to provide notice of an occurrence (as opposed to a claim) is triggered when the "circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim" resulting from that occurrence. *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F. 2d 267, 272 (2d Cir. 1987). Thus,

> [w]hile the duty to provide notice therefore does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question, when an insured complying with its duty to use sue diligence in investigating potential claims against it would believe from the information available that its policy would be involved, the notice obligations arises.

*Christiania Gen. Ins. Co. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 275-76 (2d Cir. 1992). *See also Fairchild Indus.*, 56 F.3d at 439. Failure to provide notice of an occurrence under these circumstances may be excused, however, where "the insured has a reasonable argument that it was unaware of the accident" or occurrence, "or where the insured has a good-faith belief in its non-liability." *Volmar Cost. Co.*, 300 A.D.2d at 43.

By contrast, "[a] notice of claim provision…focuses on the actions of third parties and may be triggered by an unreasonable—even sanctionable—assertion of liability." *Fairchild*

18

*Indus.*, 56 F.3d at 439. Thus, once a claim has been filed, the insured can no longer offer its good faith belief in non-liability for the underlying occurrence (or the claim itself) as an excuse for a failure to provide notice, as "virtually any assertion of an exposure to liability within the risks covered by an insurance policy is a claim" triggering the duty to provide notice. *Id.; see also Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F. Supp. 2d 302, 314 (E.D. N.Y. 2003); *Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc.*, No. 03 Civ.1420, 2003 WL 22999464, at 10 n.4 (S.D.N.Y. Dec. 22, 2003); *Paul K. Rooney, P.C. v. Chi. Ins. Co.*, No. 00 Civ. 2335, 2001 WL 262703, at *9-10 (S.D.N.Y. Mar. 16, 2001). *See Bergassi Agency, Inc. v. Employers Reinsurance Corp.*, 247 A.D.2d 577, 669 N.Y.S.2d 345 (2d Dep't 1998) (insured's excuse for delayed notice after suit filed against it that it believed allegations to be without merit held to be unreasonable as a matter of law).

The relevant facts are not in dispute. In a prior action in this District concerning the same subject matter as this action, DASNY filed a third-party complaint against Trataros and Travelers on August 4, 2004, that contained substantially the same allegations as are set forth in DASNY's third-party complaint in this action. There is no dispute that the August 4, 2004 third-party complaint was a "suit" within the meaning of the Trataros and Bartec policies, *i.e.*, a "civil proceeding in which damages because of ...'property damage'...to which [the Zurich CGL Policies] appl[y] are alleged." (*See* Exhibit L at Z 238 and Exhibit N at Z83). It is further undisputed that neither Zurich nor Assurance received notice of this "suit" until March 15, 2005 (over seven months later), when its representatives received the amended fourth-party complaint filed by Travelers and Trataros in the prior proceedings.

Absent a valid excuse, this seven-month delay in notification is unreasonable as a matter of law. *See, e.g., Fairchild Indus., Inc.*, 56 F.3d at 440 ("Under New York law, delays for one

19

or two months are routinely held 'unreasonable.'"). As this Court has already held, the two excuses offered by Travelers and Trataros do not suffice.

First, Travelers has claimed that following the receipt of the third-party complaint filed in the prior action, it undertook to investigate DASNY's allegations regarding the epoxy terrazzo flooring. This task was made difficult by the fact that Trataros itself had ceased its business operations and dismissed all of its employees more than a year before that third-party complaint was filed in August 2004. As a result of this investigation, however, at some point in 2004 Travelers claims that it developed a good faith belief that it and Trataros could not be held liable for claims made by DASNY in the August 4, 2004 third-party complaint. This belief was premised upon allegedly exculpatory language contained in the change order related to the flooring work, which states that Trataros will "[n]ot [be] responsible for concrete delaminations."

Based upon this language, Travelers and Trataros have argued that their delayed notice should be excused because they had no "reason to believe they faced potential liability for [DASNY's] flooring claims."

As already found by this court, however, a good faith belief that a claim or suit against an insured that alleges damages within the scope of an insurance policy will not ultimately succeed does not relieve that insured of its obligation to provide notice of that claim or suit. "[A] notice of occurrence requirement is treated differently under New York law from a notice of claim requirement." *Id.* at 439. While a good faith belief that a particular occurrence will not lead to liability can excuse a failure to provide notice, "[a]n assertion of possible liability, no matter how baseless, is … all that is needed to trigger a notice of claim provision." *Id.* at 439. The rationale behind this distinction between occurrences and claims was described by the Second Circuit Court of Appeals in *Blank*:

> The cases excusing an insured's failure to notify an insurer of an occurrence based on a good faith belief of non-liability are supported by the rationale that if insured's were required to notify insurers of every incident that poses even a remote possibility of liability, insurers would soon be swamped with notice of minor incidents that pose little danger of resulting even in an action by the injured party against the insured, let alone a claim by the insured against the insurer....Once there is a reasonable possibility that the policy will be involved, however, this rationale is no longer applicable. 27 F.3d at 795-96.

*See also Paul K. Rooney, P.C.,* 2001 WL 262703, at *9-10; *Bergassi, supra.* Thus, Travelers and Trataros's argument that their good faith belief that the third-party complaint filed on August 4, 2004, would not result in liability cannot excuse their failure to provide timely notice to Zurich and Assurance.

Second, Travelers and Trataros have implied that their failure to give timely notice should be excused because Trataros (the insured under the Trataros Policy) ceased business operations in 2003, and thus Travelers (Trataros' "attorney in fact") had difficulty locating the policy or, indeed, even determining who had issued potentially relevant policies to Trataros during the course of the Project. In this connection, Travelers has claimed that at some point in January 2005 it discovered various insurance certificates among Trataros' records and documents obtained from other parties in the prior action. Travelers reports that despite its good faith belief in non-liability, a February 17, 2005 impleader deadline compelled it to follow up on the information contained ion the certificates in order to determine whether Trataros had obtained any policies implicated by the claims filed by DASNY. Although Travelers has not stated precisely when the Zurich CGL Policies were discovered, Travelers included Zurich among the parties in the amended fourth-party complaint filed by Travelers and Trataros on February 17, 2005.

As this court has already found, this claimed excuse is meritless. Under New York law "a lack of knowledge of an insurance policy does not excuse a delay in notification." *Olin Corp.,* 966 F.2d at 724.  As the Court of Appeals explained:

> [i]t is true that delay may be excused if there was a justifiable lack of knowledge of coverage. A justifiable lack of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance.

*Id.* at 724-25 (citations omitted).  *Cf. Briggs Ave LLC v. Ins. Corp. of Hannover,* No. 05 Civ. 4212, 2006 WL 1517606m at *5-7 (S.D.N.Y. May 30, 2006) (Lynch, J.) (relying on this principle in finding eight-month delay unreasonable as a matter of law).  *See also Horowitz v. Transamerica Ins. Co.,* 257 A.D.2d 560, 683 N.Y.S.2d 290, 291 (2d Dep't 1999)(concluding that insured's 48-day delay in notifying homeowner's insurer of fire loss was unreasonable as a matter of law where insured claimed ignorance of identity of insurer and fire destroyed the documents needed to determine its identity and holding that "[t]his ignorance constitutes gross negligence, and no trier of fact could rationally conclude that the delay in furnishing notice of the loss, occasioned by such ignorance, was reasonable (cits. omitted))"); *Eagle Ins. Co. v. Garcia,* 280 A.D.2d 476, 720 N.Y.S.2d 172 (2d Dep't 2001)(holding that an insured's ignorance of insurance carrier constitutes gross negligence and is not a valid excuse for the failure to provide the carrier with timely notice).

Finally, since the first notice to Zurich and Assurance was by a complaint, the law is clear in New York that their assertion of late notice in answer to the complaint constituted a valid disclaimer of coverage. *See, e.g., City of New York v. St. Paul Fire & Marine Ins. Co.,* 21 A.D.3d 978, 801 N.Y.S.2d 362 (2d Dep't 2005); *Roofing Consultants, Inc. v. Scottsdale Ins. Co.,* 273 A.D.2d 933, 709 N.Y.S.2d 782 (4th Dep't 2000); *American Manufacturers Mutual Ins. Co. v. CMA Enterprises, Ltd.,* 246 A.D.2d 373, 667 N.Y.S.2d 724, 725 (1st Dep't 1998); *Thomson v. Power Authority of the State of New York,* 217 A.D.2d 495, 629 N.Y.S.2d 760, 761 (1st Dep't 1995).

Accordingly, based on the undisputed relevant facts, as a matter of law the notice obligations contained in the Zurich and Assurance CGL Policies have been breached, and thus Zurich and Assurance are not obligated to provide coverage to Trataros or Travelers under those policies.

## CONCLUSION

Zurich respectfully requests that this Court (i) add Assurance as a fourth-party defendant to this action pursuant to FRCP 21, and (ii) grant the motion by Zurich and Assurance, pursuant to FRCP 56, for summary judgment and issue a declaration that Travelers and Trataros are not entitled to liability insurance coverage under the Trataros Policy and the Bartec Policy.

Dated: New York, New York
     August 7, 2008           MELITO & ADOLFSEN P.C.

          By: _____
                Ignatius John Melito
                S. Dwight Stephens
                233 Broadway
                New York, New York 10279
                (212) 238-8900
                *Attorneys for Fourth-Party Defendant*
                *Zurich American Insurance Company*

66924