UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY AND SURETY COMPANY
as Administrator for RELIANCE INSURANCE COMPANY,

       Plaintiff,
vs.

DORMITORY AUTHORITY – STATE OF NEW YORK,
TDX CONSTRUCTION CORP. and KOHN PEDERSEN
FOX ASSOCIATES, P.C.,
       Defendants.

DORMITORY AUTHORITY – STATE OF NEW YORK, et. al,

       Third-Party Plaintiffs,
vs.

TRATAROS CONSTRUCTION, INC.,

       Third-Party Defendant.

TRATAROS CONSTRUCTION, INC., et. al,

       Fourth-Party Plaintiffs,
vs.

CAROLINA CASUALTY INSURANCE COMPANY; et. al,

       Fourth-Party Defendants.

Case No.
07-CV-6915 (DLC)

ECF CASE

**Rule 56.1 Statement**

**STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL
RULE 56.1 IN SUPPORT OF ZURICH AMERICAN INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

  1.  This action alleges claims based on the design and construction of a 785,000 square foot building in Manhattan (the "Project")(Exhibit O attached to the affidavit of S. Dwight Stephens, sworn to August 6, 2008 (the "Stephens Aff.")).

2. The Dormitory Authority of the State of New York ("DASNY"), as the "owner" of the Project, on behalf of the City of University of New York and Baruch College entered into multiple prime contracts for the design and construction of the Project. *Id.* at 4.

3. Two of the prime contracts for the Project were awarded to Trataros Construction Company ("Trataros"), one of which encompassed floor finishing work. *Id.*

4. By letter dated February 28, 2001, TDX Construction Corp. ("TDX") notified Trataros that there were areas where the terrazzo flooring installation had separated from the substrates and areas of delamination of the layers of the conflow floor fill on the 6th floor (Exhibit A to the Stephens Aff.).

5. TDX directed Trataros to provide a survey of the entire terrazzo installation for any other areas of uplift, provide a survey of the remaining exposed conflow installation for delamination, provide the results of Trataros' token core samples from various locations of the terrazzo installation, advise TDX of the reason for the separation and delamination, and advise TDX of the steps Trataros planned to take to remediate the problems (*Id.*).

6. By letter dated March 7, 2003, TDX provided Trataros with an expert report from Testwell Laboratories, Inc., concluding that there was extensive debonding of the terrazzo system (Exhibit B attached to the Stephens Aff.). TDX informed Trataros that Testwell's "observation of debonding shows the epoxy membrane separating from the substrate, which suggests a potential failure of the terrazzo system." (*Id.*). The letter notifies Trataros that TDX will hold Trataros responsible for all conditions resulting from a failure of the terrazzo system. (*Id.*).

7. By letter dated June 17, 2003, TDX wrote to DASNY summarizing the findings of three different firms detailing their investigations and analyses of the failures of the terrazzo flooring systems (Exhibit C attached to the Stephens Aff.).

8. On August 28, 2003, TDX wrote Trataros again, noting that "[t]here have been deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation at Baruch College Site 'B.'" (Exhibit D attached to the Stephens Aff.).

9. At some point, Trataros ceased business operations, and Travelers Casualty and Surety Company ("Travelers") became administrator of performance bonds issued by Reliance Insurance Company ("Reliance") to Trataros. Trataros also entered into a General Agreement of Indemnification with Travelers, pursuant to which Trataros appointed Travelers as its attorney-in-fact for pursuing Trataros' rights in connection with the bonds.

10. On June 28, 2004, Travelers, as Administrator for Reliance, and Trataros commenced a lawsuit against DASNY, TDX, and Kohn Pedersen Fox Associates, P.C. ("KPF"), the Project architects, seeking payment on behalf of Trataros and its subcontractors from DASNY. Additionally, Travelers asserted a negligence claim against both TDX and KPF for failing to properly perform their responsibilities, resulting in delay and defects on the Project ("the 2004 Action")(Exhibit E attached to the Stephens Aff.).

11. On or about August 4, 2004, DASNY commenced a third-party action against Trataros and Travelers, seeking common law and contractual indemnification and contribution from Trataros and its subcontractors' alleging that their work caused "construction defects" (Exhibit F attached to the Stephens Aff.).

12. The only allegation of a specific "construction defect" in the DASNY complaint refers to substandard work performed by Trataros and its subcontractor G.M. Crocetti, Inc.

("Crocetti") in breach of their contractual obligations, causing the terrazzo flooring system to "crack and crumble," and to "delaminate and blister" in large areas (*Id.*).

13.   On or about February 17, 2005, Travelers and Trataros filed an Amended Fourth-Party Complaint (the "Amended Fourth-Party Complaint") against Zurich American Insurance Company ("Zurich"), Bartec Industries, Inc. ("Bartec"), and other contractors and insurers (Exhibit G attached to the Stephens Aff.).

14.   In the Seventh Count of the Amended Fourth-Party Complaint, Travelers and Trataros alleged that Zurich, among others, had issued general liability coverage on behalf of Trataros (*Id.* at para. 78). The Seventh Count further alleges that "if and to the extent that any of the insurance policies written by the insurers cover part or all of the [damages awarded against Trataros], those insurers will be jointly liable to reimburse, indemnify, and/or exonerate Trataros and/or Travelers for the covered damages either because Trataros is a named insured, or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros and/or DASNY to make a claim against the insurance policies." (*Id.* at para. 82).

15.   An affidavit of service contained in the court file indicates that the Amended Fourth-Party Complaint was served on Zurich by substituted service via the New York State Insurance Department on March 2, 2005 (Exhibit H attached to the Stephens Aff.).

16.   Zurich received the Amended Fourth-Party Complaint on or about March 15, 2005. *See* affidavit of Priscilla May, sworn to August 6, 2008, at para. 5 ("May Aff.").

17.   Zurich's and Assurance's receipt of the Amended Fourth-Party Complaint on or about March 15, 2005 was their first notice from Trataros or Travelers of the "occurrence," claim and "suit" involved in this action (*Id.*).

4

18. On April 5, 2005, Zurich answered the Amended Fourth-Party Complaint, denied the allegations against it contained in the Complaint, and asserted as affirmative defenses that Travelers and Trataros had breached the conditions requiring timely notice of an occurrence, claim and suit and requiring the timely forwarding of suit papers. (Exhibit I attached to the Stephens Aff. at p. 11, Fourth Affirmative Defense). The answer also noted that Travelers and Trataros had improperly failed to name Assurance as a party to the action (*Id.* at p. 2).

19. Following an unsuccessful mediation, this action was commenced, and a Fourth-Party Complaint was filed with the Court by Travelers and Trataros on November 14, 2007 (the "Fourth-Party Complaint")(Exhibit J to the Stephens Aff.).

20. According to the Fourth-Party Complaint, on April 22, 1998, DASNY awarded prime Contract Number 15 to Trataros, and on or about August 27, 1998, DASNY awarded co-prime Contract 16 to Trataros (*Id.* at paras. 37-38).

21. Trataros in turn subcontracted work regarding the epoxy terrazzo flooring under Contract Number 16 (*Id.* at para. 39).

22. In the Ninth Count of the Fourth-Party Complaint, Travelers again alleges that Trataros is an insured and/or additional insured under policies issued by, among others, Zurich to Trataros, Bartec, and other named contractors (*Id.*).

23. Trataros further alleges that, should the trier of fact in this action find that Trataros is liable to DASNY and/or TDX for damages in connection "with the repair, replacement, and/or loss of use of the allegedly damaged and/or impaired property," then the cost of repairing and/or replacing the allegedly defective or damaged property "may be covered in whole or in part by any one or all of the insurance policies written by the carriers," including those issued by Zurich (*Id.* at para. 145).

24. It is further alleged that, to the extent there is coverage under the policies issued by Zurich for the property damage, then Zurich shall also be required to "defend and/or indemnify Travelers and/or Trataros in connection with this action, either because Trataros qualifies as an 'insured' and/or 'additional insured', or because Travelers shall acquire by equitable subrogation or legal assignment the right of Trataros, Bartec and/or DASNY to make a claim against the insurance policies" (*Id.* at para. 147).

25. On January 18, 2008, Zurich answered the Fourth-Party Complaint, again asserting as affirmative defenses that Travelers had breached the notice conditions requiring timely notice of an "occurrence," claim and "suit" and requiring timely forwarding of suit papers (Exhibit K attached to the Stephens Aff.; *see* Zurich's Fourth Affirmative Defense).

26. Zurich's answer further pleaded as an affirmative defense the failure to name Assurance as a party to the action (*Id.*; *see* Zurich's Twenty-Seventh Affirmative Defense).

27. Zurich issued one general liability policy to Trataros, effective April 1, 2001 to April 1, 2002 (Exhibit L attached to the Stephens Aff. at Z 212)("the Trataros Policy").

28. The Trataros Policy includes Commercial General Liability Form CG 00 01 07 98, which contains the following condition requiring notice to Zurich as soon as practicable of an "occurrence," claim or suit and the immediate forwarding to Zurich of any demands or legal papers:

**SECTION IV – COMMERCIAL GENERAL**
**LIABILITY CONDITIONS**

\*   \*   \*

2. **Duties In The Event Of Occurrence, Offense Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may

      result in a claim. To the extent possible, notice should include:

        (1)    How, when and where the "occurrence" or offense took place;

        (2)    The names and addresses of any injured persons and witnesses; and

        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.**    If a claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and

        (2)    Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.**    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. (*Id.* at Z 234).

29. Trataros entered a contract with Bartec that was fully executed on June 28, 2000 (Exhibit M attached to the Stephens Aff.). Among other things, the contract required Bartec to obtain additional insured coverage for Trataros (*Id.*; *see* Terms and Conditions at para. 21).

30. Assurance, a Zurich affiliate, issued a combined primary commercial general liability policy and umbrella policy to Bartec, effective May 26, 2000 to May 25, 2001 (Exhibit N attached to the Stephens Aff.)("the Bartec Policy").

31. While Assurance issued consecutive annual policies to Bartec beginning on May 26, 1995, the only potentially applicable policy for Trataros' additional insured claim is this one policy (5/26/00-5/25/01) since Trataros is only an additional insured by virtue of the Bartec subcontract and that contract was not fully executed until June 28, 2000. *See* Exhibit M attached to the Stephens Aff.

32. The Commercial General Liability Coverage Form of the primary policy includes as insureds "any person or organization other than an architect, engineer or surveyor, which requires in a 'work contract' that such person or organization be made an insured under this policy." (*Id.* at Z 75).

33. A "work contract" is defined to mean "a written agreement into which you enter for work performed by your or on your behalf." (*Id.* at Z83).

34. The Coverage Form contains the following notice provision requiring, among other things, notice to Assurance as soon as practicable of an "occurrence," claim or suit and the immediate forwarding to Zurich of any demands or legal papers:

> 2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which

>   may result in a claim. To the extent possible, notice should include:
>
>   (1) How, when and where the "occurrence" or offense took place:
>
>   (2) The names and addresses of any injured persons and witnesses; and
>
>   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b.  If a claim is made or "suit" is brought against any insured, you must:
>
>   (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
>   (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c.  You and any other involved insured must:
>
>   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . .

(*Id.* at Z 77-78).

35. The Assurance Umbrella Coverage Form includes as insureds, among others, "A) Any person or organization for which you have agreed in a written contract to include as an insured, however: 1) Only in connection with liability arising out of the operation of your business; 2) Only to the extent that coverage is afforded to that person or organization by 'underlying insurance'; and 3) Only up to the extent of the limits of liability required by such contract, not to exceed the applicable LIMITS OF INSURANCE of this coverage part. B) Any other person or organization that is included as an insured or additional insured under

'underlying insurance' is an insured but only to the extent that coverage is afforded to that person or organization by the 'underlying insurance.'" (*Id.* at 175).

36. The umbrella policy has the following notice condition:

    4.07    Duties in the Event of Occurrence, Claim or Suit

        A) You must see to it that we are notified as soon as practicable of an "occurrence" or an "offense" which may result in a "claim". To the extent possible, notice should include:

            (1) The insured's name and address:

            (2) How, when and where the "occurrence" or offense took place;

            (3) The names and addresses of any injured persons witnesses; and

            (4) The nature and location of any injury or damage arising out of the "occurrence" or offense.

        B) Notice of an "occurrence" or offense is not notice of a "claim". However, if a "claim" is made or "suit" is brought against any insured you must:

            1) Immediately record the specifics of the "claim" or "suit" and the date received;

            2) Notify us as soon as practicable; and

            3) Provide us with written notice of the "claim" or "suit" as soon as practicable.

        C) You and any other involved insured must:

Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit" . . . (*Id.* at 177).

37. Trataros and Travelers did not forward the August 4, 2004 third-party summons and complaint until service of the Amended Fourth-Party Complaint on March 2, 2005 which was not received by Zurich until March 15, 2005. *See* the May Aff.

38. Trataros and Travelers have no reasonable excuse for the more than seven month delay. *See* Exhibit O attached to the Stephens Aff. at p. 19.

Dated: New York, New York
      August 7, 2008

Respectfully submitted,

Ignatius John Melito
S. Dwight Stephens
Melito & Adolfsen P.C.
233 Broadway
New York, New York 10279
(212) 238-8900
*Attorneys for Fourth-Party Defendant*
*Zurich American Insurance Company*

TO: All counsel

67773