Index No. 113225/2003

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

R & J CONSTRUCTION CORPORATION,

                Plaintiff,

    -against-

TRATAROS CONSTRUCTION INC.,
RELIANCE INSURANCE COMPANY, TRAVELERS
CASUALTY SURETY COMPANY OF AMERICA,
THE DORMITORY AUTHORITY OF THE STATE OF
NEW YORK, ALEXANDRIA TILE CORP., AMERICAN
WOODS & VENEER WORKS INC., ARCHITECTURAL
MILLWORK INSTALLATION CORP., BARTEC
INDUSTRIES, INC., BAYSIDE FENCING, INC.,
COMPONENT ASSEMBLY SYSTEMS INC.,
CONSTRUCTAMAX INC.,
CRAFT-TECH MFG CORP., G.M. CROCETTI INC.,
GOETZ FITZPATRICK LLP, KLEPP WOOD FLOORING
CORP., L&L PAINTING CO. INC.,
LBL SKYSYSTEMS CORPORATION, PORTER
ATHLETIC EQUIPMENT CO., REIDMAN
CONSTRUCTION CORP., and
UNIVERSAL SERVICES GROUP LTD.,

             Defendants,

             and

BARTEC INDUSTRIES, INC.,

           Third Party Plaintiff,

        -against-

DAYTON SUPERIOR SPECIALTY CHEMICAL CORP.

          Third Party Defendant

**VERIFIED ANSWER TO COMPLAINT OF PLAINTIFF WITH CROSS-CLAIMS AND COUNTERCLAIM OF DEFENDANT BARTEC INDUSTRIES, INC.;**

**VERIFIED REPLY TO CROSS-CLAIMS IN ANSWER OF DEFENDANT, G.M.CROCETTI, INC.;**

**REPLY TO CROSS-CLAIM IN ANSWER OF DEFENDANT UNIVERSAL SERVICES GROUP LTD. FOR FORECLOSURE OF MECHANIC'S LIEN;**

**REPLY TO CROSS-CLAIMS IN ANSWER OF DEFENDANT CONSTRUCTAMAX, INC.; and,**

**THIRD PARTY COMPLAINT OF DEFENDANT BARTEC INDUSTRIES, INC. against THIRD PARTY DEFENDANT, DAYTON SUPERIOR SPECIALTY CHEMICAL CORP.**

## VERIFIED ANSWER TO COMPLAINT OF PLAINTIFF WITH CROSS-CLAIMS AND COUNTERCLAIM

Defendant, Bartec Industries, Inc. ("BARTEC") by its attorney, W. Patrick Quast, answers the Verified Complaint of the Plaintiff (the "Complaint"), as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs "1" through and including "8" and "10" through and including "21" of the Complaint, except believes as to certain of the facts alleged in each of the indicated paragraphs of the Complaint as set forth hereinafter, the following:

as to ¶ 2, that the defendant Trataros Construction Inc. ("Trataros") was and is a domestic corporation with its principal place of business at 664 64th Street, Brooklyn, New York 11220; as to ¶ 3, that Reliance Insurance Company ("Reliance") was a corporation organized under the laws of the Commonwealth of Pennsylvania and was licensed to do business as a surety in the State of New York and has an office in New Jersey; as to ¶ 4, that Travelers Casualty Surety Company of America ("Travelers") was and is a corporation existing under the laws of Connecticut, is licensed to do business in the State of New York and has an office in New Jersey; and, as to ¶5, that the Dormitory Authority of the State of New York ("DASNY") is a public authority existing under the laws of the State of New York.

2.      Admits the allegations set forth in paragraph 9 of the Complaint.

### AS AND FOR A RESPONSE TO FACTS RELATED TO CONTRACT NO. 15, DA # 6500 1802 2176

3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 22, 23, 24 and 25 of the Complaint, except that BARTEC believes as to each of the indicated paragraphs of the Complaint, set forth hereinafter, the following: as to ¶ 22, that defendant Trataros entered into a certain written contract with DASNY, Contract No. 15, DA #6500 1802 2176, ("prime contract no. 15") whereby Trataros was to

perform work and supply materials for the project known as Baruch College – Site B, Package No. 1 – General Construction Work; and, as to ¶ 23, that pursuant to prime contract 15, that Trataros as Principal and Reliance as Surety duly executed and delivered a Labor and Material Payment Bond as set forth at Exhibit A of the Complaint.

## AS AND FOR A RESPONSE TO THE
## FIRST CAUSE OF ACTION

4.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 26, 27 and 28 of the Complaint.

## AS AND FOR A RESPONSE TO THE
## SECOND CAUSE OF ACTION

5.    In response to paragraph 29 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 28 as if fully set forth herein.

6.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 30, 31, 32 and 33 of the Complaint.

## AS AND FOR A RESPONSE TO THE
## THIRD CAUSE OF ACTION

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 34, 35, 36, 37 and 38 of the Complaint.

## AS AND FOR A RESPONSE TO THE
## FOURTH CAUSE OF ACTION

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 39, 40, 41, 42, 43 and 44 of the Complaint.

## AS AND FOR A RESPONSE TO THE
## FIFTH CAUSE OF ACTION

9.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraphs 45, 46, 47, 48, 49, 50, 51, 52 and 53 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### SIXTH CAUSE OF ACTION

10.    In response to paragraph 54 of the Complaint, BARTEC repeats, re-alleges and reiterates

its responses to paragraphs 45 through 53 as if fully set forth herein.

11.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraphs 55, 56, 57, 58, 59 and 60 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### SEVENTH CAUSE OF ACTION

12.    In response to paragraph 61 of the Complaint, BARTEC repeats, re-alleges and reiterates

its responses to paragraphs 26 through 60 as if fully set forth herein.

12a.    BARTEC agrees with the allegations of paragraph 62.

13.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraphs  63, 64, 65, 66, 67, 68, 69, 70 and 71 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### EIGHTH CAUSE OF ACTION

14.    In response to paragraph 72 of the Complaint, BARTEC repeats, re-alleges and reiterates

its responses to paragraphs 61 through 71 as if fully set forth herein.

14a.    BARTEC agrees with the allegations of paragraph 73.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraphs 74, 75, 76 and 77 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### NINTH CAUSE OF ACTION

16.    In response to paragraph 78 of the Complaint, BARTEC repeats, re-alleges and reiterates

its responses to paragraphs 26 through 60 as if fully set forth herein.

4

17.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 79, 80, 81, 82, 83 and 84 of the Complaint, except that BARTEC states it has an interest in, claim or lien upon the monies due Trataros.

RE:SITE B, PACKAGE NO. 2 - GENERAL
CONSTRUCTION WORK, CONTRACT NO. 16, DA # 6500
1802 2178 AS AND FOR A RESPONSE TO THE
TENTH CAUSE OF ACTION

18.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 85, 86, 87, 88, 89, 90 and 91 of the Complaint.

AS AND FOR A RESPONSE TO THE
ELEVENTH CAUSE OF ACTION

19.    In response to paragraph 92 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 85 through 91 as if fully set forth herein.

20.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 93, 94, 95 and 96 of the Complaint.

AS AND FOR A RESPONSE TO THE
TWELFTH CAUSE OF ACTION

21.    In response to paragraph 97 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 85 through 96 and paragraph 54 as if fully set forth herein.

22.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 98, 99, 100, 101, 102, 103, 104, 105 and 106 of the Complaint.

AS AND FOR A RESPONSE TO THE
THIRTEENTH CAUSE OF ACTION

23.    In response to paragraph 107 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 97 through 106 as if fully set forth herein.

24.    Denies knowledge or information sufficient to form a belief as to the truth of the

5

allegations set forth in paragraphs 108, 109, 110 and 111 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### FOURTEENTH CAUSE OF ACTION

25.     In response to paragraph 112 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 85 through 96 as if fully set forth herein.

26.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 113, 114, 115, 116 and 117 of the Complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 118 of the Complaint.

## AS AND FOR A RESPONSE TO THE
### FIFTEENTH CAUSE OF ACTION

28.     In response to paragraph 119 of the Complaint, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 26 through 118 as if fully set forth herein.

29. Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 120, 121, 122, 123 and 124 of the Complaint.

## AS AND FOR A FIRST CROSS-CLAIM AGAINST
## TRATAROS CONSTRUCTION CORP.
### BREACH OF CONTRACT

30.     Upon information and belief, Trataros as prime contractor, entered into a contract with the Dormitory Authority of the State of New York ("DASNY"), as owner, in connection with the project known as Baruch College, Academic Complex, Site B, New York, New York under Contract No.: DA 650018022176 (the "Project").

31.     Thereafter, on or about May 12, 2000, BARTEC, as subcontractor, entered into a written contract with Trataros ("Subcontract"), pursuant to which BARTEC furnished labor and materials to install floor leveling underlayment at various locations, as required, within the Baruch Academic Complex, Site B.

32.     BARTEC has performed all of the terms, conditions and work under the Subcontract.

33.     The total price agreed upon under the Subcontract, with Change Orders, was $641,275.82 of which $37,519.42 has not been paid, although payment thereof has been duly demanded.

34.     By reason of the foregoing, Trataros has breached its Subcontract with BARTEC and BARTEC has been damaged in an amount to be proven at trial, but not less than $37,519.42, plus interest.

AS AND FOR A SECOND CROSS-CLAIM
AGAINST TRATAROS CONSTRUCTION INC.
ACCOUNT STATED

35.     BARTEC repeats, re-alleges and reiterates each and every allegation set forth in paragraphs 30 through 34 of this Answer as if fully set forth at length herein.

36.     On or about May 12, 2000, BARTEC and Trataros entered into a business transaction and thereafter agreed to a resulting balance.

37.     BARTEC rendered a statement of this balance to Trataros, to which Trataros did not object.

38.     Trataros has paid no part of this balance and there is now due and owing a balance of $37,519.42.

39.     By reason of the foregoing, an amount to be proven at trial, but not less than the sum of $37,519.42, is justly due and owing to BARTEC from Trataros, together with appropriate interest thereon.

AS AND FOR A THIRD CROSS-CLAIM AGAINST
TRATAROS CONSTRUCTION INC.
QUANTUM MERUIT

40.     BARTEC repeats, re-alleges and reiterates each and every allegation set forth in paragraphs 30 through 39 of this Answer as if fully set forth at length herein.

41.     Between About July 01, 2000 and December 31, 2002, BARTEC, at the special linsistence

7

and request of Trataros, rendered certain work, labor, and services and furnished certain materials, all for the agreed price of $641,275.82.

42.    There is due and owing to BARTEC a sum of $37,519.42, no part of which has been paid to BARTEC, although payment thereof has been duly demanded.

43.    Trataros agreed and promised to pay that sum, and that sum is due and owing and no part thereof has been paid, although payment thereof has been duly demanded.

44.    By reason of the foregoing, an amount to be proven at trial, but not less than the sum of $37,519.42 is justly due and owing to BARTEC from Trataros, together with appropriate interest thereon.

### AS AND FOR A FOURTH CROSS-CLAIM AGAINST TRATAROS CONSTRUCTION, INC. and FIRST CROSS-CLAIM AGAINST ALL OTHER DEFENDANTS AND FIRST COUNTERCLAIM AGAINST R&J CONSTRUCTION INC., FOR MECHANIC'S LIEN FORECLOSURE

45.    BARTEC repeats, re-alleges and reiterates the allegations in paragraphs 1 through 44 of this Answer, as if fully set forth at length herein.

46.    Upon information and belief, Trataros entered into a written contract with DASNY under contract number DA650018022176 for certain construction work to be performed at the Project ("Prime Contract No. 15").

47.    Thereafter, and in furtherance of said Prime Contract No. 15, Trataros entered into the Subcontract with BARTEC, wherein and whereby BARTEC agreed to supply labor, materials and services to Trataros at the Project referred to in paragraph 31 hereof.

48.    The total price of the Subcontract, with change orders, was $641,275.82 of which $37,519.42 has not been paid, although payment thereof has been duly demanded.

49.    BARTEC entered into the performance of its work under the Subcontract and duly performed all of the terms and conditions of the Subcontract between it and Trataros on its part to be performed and such performance and work was duly accepted by Trataros and DASNY.

8

50.    By reason of the foregoing there is now due and owing to BARTEC from Trataros the sum of $37,519.42 for a period in excess of ninety days, no part of which has been paid, although duly demanded.

51.    The materials and services described above as furnished to Trataros were used in the performance of Prime Contract No. 15 for the Project, a public improvement.

52.    On or about February 13, 2003, BARTEC caused there to be filed with DASNY, a Notice of Mechanic's Lien on Account of Public Improvement ("Public Lien"), pursuant to and in accordance with the Lien Law, in due form, claiming the sum of $37,519.42, against the interest of Trataros, as Contractor, in monies due or to become due pursuant to Prime Contract No. 15 for the Project. The Public Lien, duly and timely filed and served, in form and substance, all as required by the Lien Law, is hereby incorporated herein by reference. A copy of the Public Lien is annexed hereto at Exhibit "1".

53.    Upon information and belief, at the time of the filing of the Public Lien, the construction of the Project, a public improvement, had not yet been completed and accepted by DASNY and there was due and owing from DASNY to Trataros, under and pursuant to the terms of Prime Contract No. 15 and by virtue of the work performed by Trataros in and about the public improvement, a sum in excess of $37,519.42.

54.    More than thirty days have elapsed since the claim upon which this action is based was presented to Trataros and Trataros has failed, neglected or refused to make an adjustment or payment thereof.

55.    In or about October, 2003, Trataros filed with DASNY, an undertaking dated October 23, 2003, the purpose for which is to seek a Court Order discharging the Lien. Said bond was executed by Trataros, as principal, and defendant Travelers, as surety, in the sum of $41,337.36, conditioned for the payment of any judgment which may be rendered against Trataros in any action brought by BARTEC to enforce the Lien pursuant to Section 21(5) of the Lien Law of the

9

State of New York, a copy of said undertaking is annexed hereto as <u>Exhibit "2"</u>.

56.    Neither the Public Lien nor BARTEC's claim asserted therein has been waived or discharged in whole or in part and except for this action, no proceedings have heretofore been instituted for the foreclosure or enforcement thereof or for the recovery of the amount due BARTEC or any part thereof.

57.    Upon information and belief, DASNY claims an interest in the Prime Contract Funds.

58.    Upon information and belief, all other defendants claim an interest in the Prime Contract Funds.

59    Upon information and belief, no other person or persons have filed any other liens on account of said public improvement upon the monies of DASNY applicable to the construction involving the Project, due or to become due under the Prime Contract.

60.    By reason of the foregoing, BARTEC has acquired a good, valid and subsisting mechanic's lien against the contract funds due Trataros under the Prime Contract.

61.    By reason of the filing of the Lien Discharge undertaking, Trataros as principal, and Travelers, as surety, are jointly and severally liable to BARTEC in the amount of $37,519.42, together with interest, attorney's fees, costs and expenses.

62.    By reason of the foregoing, BARTEC has acquired a good, valid and subsisting lien against the Project and demands judgment in the sum of $37,519.42 for the enforcement of the Public Improvement Lien, together with interest, as of December 31, 2002, plus costs, disbursements and attorney's fees.

**AS AND FOR A FIFTH CROSS-CLAIM AS AGAINST TRATAROS AND
FIRST CROSS-CLAIM AGAINST DEFENDANT RELIANCE AND
TRAVELERS UNDER THE
<u>LABOR AND MATERIAL PAYMENT BOND CLAIM</u>**

63.    BARTEC repeats, re-alleges and reiterates the allegations in paragraphs 1 through 62 of this Answer, as if fully set forth at length herein.

64.    Upon information and belief, defendant Reliance Insurance Company ("Reliance"), as surety, together with Trataros, as Principal, duly made, executed and acknowledged and delivered for value to DASNY, a Labor and Materials Payment Bond dated April 27, 1998 in the amount of Fifty Million Two Hundred Twenty-Two Thousand ($50,223,000.00) Dollars (the "Payment Bond"), in relation to the Project. Upon information and belief, Defendant Travelers Casualty Surety Company of America ("Travelers") on its own behalf and/or as Administrator for Reliance has assumed the responsibilities of Reliance under the Payment Bond.

65.    The Payment Bond conferred upon all claimants, including BARTEC, furnishing labor and materials in connection with the Project and who were not paid in full before ninety (90) days after the date on which the last of such claimant's work or labor was done, a right to sue on the Payment Bond.

66.    BARTEC has given written notice to DASNY as Owner, and Trataros pursuant to the terms and conditions of the Payment Bond and still no payment has been made.

67.    BARTEC has duly performed and complied with all the terms and conditions of the Subcontract and the Payment Bond on its part to be performed.

68.    By reason of the foregoing there is now justly due and owing from defendants Trataros and Reliance and/or Travelers Casualty and Surety Company, jointly and severally, under the terms of the Payment Bond, the sum of $37,519.42, with interest thereon, no part of which has been paid although duly demanded.


**WHEREFORE**, BARTEC INDUSTRIES, INC. respectfully requests judgment as follows:

a)    Dismissing Plaintiff's Complaint in its entirety and/or granting such other relief as to the court may seem just and proper;

b)    On its first Cross-Claim against Trataros Construction Inc., the sum of $37,519.42, with interest;

c)  On its second Cross-Claim against Trataros Construction Inc., the sum of $37,519.42, with interest;

d)  On its third Cross-Claim against Trataros Construction Inc., the sum of $37,519.42, with interest`;

e)  On its first counterclaim against plaintiff, fourth cross-claim against Trataros Construction Inc. and first cross-claim against all other defendants, a determination by the Court: (i) that BARTEC by filing and causing the docketing of its mechanic's lien, acquired a good and valid lien against the Prime Contract funds due or to become due from the Dormitory Authority of the State of New York to Trataros Construction, Inc.; (ii) adjudging and determining the equities of all the parties to this action and determining the validity, extent and priority of each and all of the liens and claims which may be presented and asserted herein; (iii) adjudging that all lienors and all persons claiming by, through or under them be forever foreclosed of all equity of redemption or other lien, claim or interest in the Prime Contract funds; (iv) that defendant BARTEC have judgment for the enforcement of its lien against monies due or to become due the defendant Trataros Construction, Inc. from the Dormitory Authority of the State of New York in form only for the purpose of satisfying the condition of the bond; (v) directing the Defendant Travelers to pay over to the Defendant BARTEC the amount of its lien claim of $37,519.42 together with interest; and, (vi)that if for any reason said lien shall not be determined to be a valid lien for the sum of $37,519.42 or that there are insufficient funds to pay the amount determined to be due BARTEC, that BARTEC have and recover judgment against Trataros Construction, Inc., Travelers Casualty and Surety Company of America and Reliance Insurance Company for the amount adjudged with interest, and the costs and disbursements of this action.

f)  On its fifth Cross-Claim against Defendant Trataros Construction, Inc., and its First Cross-Claim against defendants Reliance Insurance Company and Travelers Casualty and Surety Company of America under the Payment Bond, the sum of $37,519.42, with interest.

12

g)     On all of its defenses and cross and counter claims, its costs and disbursements, and for such other relief as the court may seem just and proper.

## VERIFIED REPLY TO CROSS-CLAIMS IN ANSWER OF DEFENDANT, G.M.CROCETTI, INC.

Bartec Industries, Inc. ("BARTEC") by its attorney responds to the cross-claims of the defendant, G.M. CROCETTI, INC. ("Crocetti") presented in its Verified Answer ("Crocetti's Answer"), dated September 30, 2003, as follows:

69.     Denies knowledge or information sufficient to form a belief as to the allegations of Crocetti's first cross-claim contained in ¶ 55 to ¶ 65 inclusive of Crocetti's Answer, except to admit that BARTEC has and/or claims to have an interest in, claim or lien upon the monies due or to become due to Trataros under the Lien Law of the State of New York as applied to public improvements.

70.     Denies knowledge or information sufficient to form a belief as to the allegations of Crocetti's second cross-claim contained in ¶ 66 of Crocetti's Answer except as may otherwise be acknowledged or admitted herein.

71.     Denies the allegations of ¶ 67 of Crocetti's Answer except to state BARTEC is a corporation of the State of New Jersey with an office for the transaction of business located at 453 Main Street, Little Falls, New Jersey 07424.

72.     Denies the allegations of ¶ 68 and ¶ 69 Crocetti's Answer except to state that BARTEC entered into a written Contract with Trataros ("Subcontract") pursuant to which BARTEC furnished labor and materials to install floor leveling underlayment at various locations with the Baruch Academic Complex, Site B.

73.     Denies the allegations of ¶ 70 through ¶ 75 inclusive of Crocetti's Answer.

### AS FOR A FIRST AFFIRMATIVE DEFENSE AS TO DEFENDANT CROCETTI'S SECOND CROSS-CLAIM

74.     The cross-claim fails to state a cause of action against the defendant BARTEC.

13

AS FOR A SECOND AFFIRMATIVE DEFENSE AS TO
DEFENDANT CROCETTI'S SECOND CROSS-CLAIM

75.    To the extent that any alleged loss occurred, such loss directly and proximately resulted from cross-claimant Crocetti's own independent mishandling of its own affairs and any purported damage caused to cross-claimant Crocetti is wholly unrelated to any purported acts or alleged obligations of defendant BARTEC.

AS FOR A THIRD AFFIRMATIVE DEFENSE AS TO
DEFENDANT CROCETTI'S SECOND CROSS-CLAIM

76.    Counterclaimant Crocetti has failed to mitigate its damages.

**WHEREFORE,** Defendant Bartec Industries, Inc. respectfully requests judgment as follows: on defendant Crocetti's first Cross-Claim, dismissing it in its entirety, with costs and disbursements; on defendant Crocetti's second Cross-Claim, dismissing it in its entirety, with costs and disbursements; and, such other relief as the court may seem just and proper.

**REPLY TO CROSS-CLAIM IN ANSWER OF DEFENDANT UNIVERSAL SERVICES
GROUP LTD. FOR FORECLOSURE OF MECHANIC'S LIEN**

Defendant Bartec Industries, Inc. ("BARTEC") by its attorney in reply to the First Cross-claim against all other defendants, including BARTEC, in the Answer of the Defendant Universal Services Group, Ltd. ("USG Answer"), alleges upon information and belief as follows:

77.    Denies knowledge or information sufficient to form a belief as to allegations contained in ¶ 30 to ¶ 44 of the USG Answer as repeated in ¶ 45 thereof except as may be otherwise stated herein.

78.    Denies knowledge or information sufficient to form a belief as to allegations contained in

¶ 46 to ¶ 68 of the USG Answer.

**WHEREFORE,** Defendant Bartec Industries, Inc. respectfully requests judgment as follows: dismissing the Cross-Claim of Defendant Universal Services Group, Ltd. in its entirety; costs and disbursements in defending against the Cross-Claims; and/or such other relief as the court may seem just and proper.

## REPLY TO CROSS-CLAIMS IN ANSWER OF DEFENDANT CONSTRUCTAMAX, INC.

Defendant Bartec Industries, Inc. ("BARTEC") by its attorney in reply to the Cross-Claims against all other defendants, including BARTEC, in the Answer of the Defendant Constructamax Inc. ('Constructamax") dated November 7, 2003 ("Constructamax Answer") alleges upon information and belief as follows:

### In Answer to the First Cross-Claim

79.    Denies knowledge of information sufficient to form a belief as to allegations contained in ¶1 to ¶23 of the Constructamax Answer, except as may have been otherwise stated herein.

### In Answer to the Second Cross-Claim

80.    In response to paragraph 24 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 23 thereof as if fully set forth herein.

81.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 25, 26, 27, 28, 29, 30, 31, 32 and 33 of the Constructamax Answer except as may have been otherwise stated herein.

### In Answer to the Third Cross-Claim

82.    In response to paragraph 34 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 33 thereof as if fully set forth herein.

83.    Denies knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in paragraphs 35, 36, 37, 38 and 39 of the Constructamax Answer except as may have been otherwise stated herein.

### In Answer to the Fourth Cross-Claim

84.    In response to paragraph 40 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 39 thereof as if fully set forth herein.

85.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 41, 42 and 43 of the Constructamax Answer except as may have been otherwise stated herein.

### In Answer to the Fifth Cross-Claim

86.    In response to paragraph 44 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 43 thereof as if fully set forth herein.

87.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 45, 46, 47, 48 and 49 of the Constructamax Answer except as may have been otherwise stated herein.

### In Answer to the Sixth Cross-Claim

88.    In response to paragraph 50 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 49 thereof as if fully set forth herein.

89.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 51, 52, 53, 54, 55 and 56 of the Constructamax Answer except as may have been otherwise stated herein.

### In Answer to the Seventh Cross-Claim

90.    In response to paragraph 57 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 56 thereof as if fully set forth herein.

91.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 58, 59 and 60 of the Constructamax Answer except as may

have been otherwise stated herein.

In Answer to the Eighth Cross-Claim

92.    In response to paragraph 61 of the Constructamax Answer, BARTEC repeats, re-alleges and reiterates its responses to paragraphs 1 through 60 thereof as if fully set forth herein.

93.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 62 and 63 of the Constructamax Answer except as may have been otherwise stated herein.


**WHEREFORE**, Defendant Bartec Industries, Inc. respectfully requests judgment as follows: dismissing the Cross-Claims of Defendant Constuctamax, Inc.. in their entirety; costs and disbursements in defending against the Cross-Claims; and/or such other relief as the court may seem just and proper.


### THIRD PARTY COMPLAINT OF DEFENDANT BARTEC INDUSTRIES, INC. against THIRD PARTY DEFENDANT, DAYTON SUPERIOR SPECIALTY CHEMICAL CORP

Defendant, Third Party Plaintiff, Bartec Industries, Inc., ("BARTEC") by its attorney, W. Patrick Quast, complaining of the Third Party Defendant, Dayton Superior Specialty Chemical Corp., alleges, upon information and belief, as follows:

94.    BARTEC at all times hereinafter mentioned was and is a foreign corporation with its principal place of business at 453 Main Street, Little Falls, New Jersey, 07424.

95.    Defendant Dayton Superior Specialty Chemical Corp. ("Dayton") is a Kansas Corporation, formerly known as Conspec Marketing and Manufacturing Co., Inc., ("Conspec") with offices presently located at 4226 Kansas Avenue, Kansas City, Kansas 66106. Defendant Dayton willl be referred to hereinafter as "Defendant DAYTON/CONSPEC".

96.    Heretofore pursuant to public bidding and in compliance with the laws made and provided therefor, Defendant Trataros Construction Inc. ("Trataros") entered into a written contract with

17

the Dormitory Authority of the State of New York whereby Trataros was to perform work and supply materials for the project known as Baruch College – Site B, Package No. 1 – General Construction Work, Contract No. 15, DA #6500 1802 2176. ("prime contract no. 15").

97.    Heretofore, on or about May 12, 2000, Defendant BARTEC entered into an agreement with Trataros to furnish and install all necessary labor, material and equipment to provide self leveling floor fill ("underlayment"), as required, at the Baruch site, in connection with the prime contract 15 for a per bag price of $47. ("BARTEC subcontract/15"). Exhibit 3.

98.    BARTEC thereupon entered into the performance of the BARTEC subcontract/15 and duly performed all of the terms and conditions of said BARTEC subcontract/15 on its part to be performed.

99.    Pursuant to the BARTEC subcontract/15, BARTEC, through a series of purchase orders, contracted with the Defendant DAYTON/CONSPEC to provide the self leveling and self finishing cementitious underlayment to be used at the Baruch site. The material is known in the trade as Conflow. The use of this specific material had been approved by the architectural firm of Kohn Pedersen Fox Associates, P.C., the architect and agents for the owner, the Dormitory Authority. Exhibit 4. The material was shipped by the Defendant DAYTON/CONSPEC per defendant BARTEC's instruction, directly to the Baruch site in Manhattan.

100.    Defendant BARTEC performed its obligations under the BARTEC subcontract/15 over the period from July 2000 to December 2001.

101.    Upon information and belief, Defendant G. M. Crocetti, Inc. ("Crocetti") was engaged by Trataros pursuant to a subcontract agreement to furnish and install, inter alia, epoxy terrazzo and related work at the Baruch site. The epoxy terrazzo over various concrete surfaces at the Baruch site including some of those covered with the Conflow underlayment material installed by the Defendant BARTEC.

102.    Thereafter, on or about February 2001, representative(s) of DAYTON/CONSPEC visited

18

the Baruch site to investigate the cause of some terrazzo flooring that had become loose. One

representative of DAYTON/CONSPEC in a follow - up letter - report dated February 22, 2001,

noted a "powdery loose surface not suitable for any type of flooring material" and attributed it to

"some type of contamination, foreign substance, or environmental condition affect[ing] the floor

after the material application, thereby compromising the surface." Exhibit 5.

103.    Since the completion of Defendant BARTEC's work and Defendant Crocetti's terrazzo

work installed over the Conspec underlayment applied by the Defendant BARTEC, debonding of

the terrazzo was detected after its installation.

104.    Defendant Crocetti in a Cross-Claim against Defendant BARTEC in this matter alleges

that BARTEC performed its subcontact work in a negligent and/or unworkmanlike manner;

and/or that the Conspec materials used by BARTEC were defective and/or not proper for the use

intended; and that certain of the defective terrazzo work is attributable to BARTEC'S negligence

and/or use of defective or improper materials. Defendant Crocetti further alleges that Trataros will

not pay it the sum of $901,091.65 at least in part, due to the allegations in this paragraph.

105.    Defendant BARTEC purchased individual bags of the Conflow underlayment material,

prepared the material in accordance with the specification of the Defendant

DAYTON/CONSPEC, and applied the prepared materials in accordance with, again, the

specification of the Defendant DAYTON/CONSPEC.

106.    Defendant BARTEC purchased and used the Conspec material on account of and in

reliance upon Defendant DAYTON/CONSPEC's skill and judgment in the manufacture of such

material.

107.    Defendant DAYTON/CONSPEC carelessly and negligently manufactured, furnished and

supplied self leveling underlayment material under the trademark Conflow which was defective

and/or not proper for the use intended, which was known to or should have been known to the

Defendant DAYTON/CONSPEC.

108.   Defendant DAYTON/CONSPEC carelessly and negligently failed to inspect and examine the Conflow material before its shipment to the Baruch site to determine whether it was fit and proper for the use of the Defendant BARTEC for the known application.

109.   Defendant DAYTON/CONSPEC carelessly and negligently sold an underlayment material which was not reasonably fit for the purpose for which it was to be used, as known to the Defendant DAYTON/CONSPEC, because when used in the manner and for the purpose for which it was allegedly intended it was liable to result in debonding failures between the underlayment and the terrazzo flooring; between various Conflow lifts; and between the Conflow material and the concrete substrate.

### As and For a First Cause of Action against the Defendant DAYTON/CONSPEC
(Breach of Contract)

110.   Third Party Plaintiff, Defendant BARTEC, repeats and realleges each and every allegation contained in paragraphs 96 through 109 of its Answer with the same force and effect as if fully set forth at length herein.

111.   Defendant DAYTON/CONSPEC was obligated in consideration of the money paid for the underlayment material to provide said material fully compliant with its specification which in fact it was not, by reason of which, Defendant DAYTON/CONSPEC has breached its contracts with the Defendant BARTEC.

112.   At the time of the various contracts (purchase orders) between the Defendant DAYTON/CONSPEC and the Defendant BARTEC pursuant to which Defendant DAYTON/CONSPEC provided the Conflow material it was understood that significant consequential damages would result if in fact the material to be provided did not meet fully the technical specification covering the material.

113.   Upon information and belief as a direct and proximate result of the failure of the material, the Defendant BARTEC may incur damages totalling $901,091.65 plus interest thereon from October 31, 2002 or more.

As and For a Second Cause of Action against the Defendant DAYTON/CONSPEC
(Breach of Express Warranty)

114.    Third Party Plaintiff, Defendant BARTEC, repeats and realleges each and every allegation

contained in paragraphs 110 through 113 of its Answer with the same force and effect as if fully

set forth at length herein.

115.    Defendant DAYTON/CONSPEC through its authorized agent confirmed by its on-site

evaluation of the delamination problem in February 2001, that the Conflow material was suitable

for the application as an underlayment beneath a terrazzo floor. This constituted an express

warranty of the Conflow product's fitness for such application.

116.    The debonding that occurred subsequently is inconsistent with this express warranty of the

product's fitness for this application.

117.    Upon information and belief as a direct and proximate result of the breach of this express

warranty of fitness for the application below a terrazzo floor, the Defendant BARTEC may incur

damages totalling $901,091.65 plus interest thereon from October 31, 2002 or more.

As and For a Third Cause of Action against the Defendant DAYTON/CONSPEC
(Breach of Warranty of Fitness for a Particular Purpose)

118.    Third Party Plaintiff, Defendant BARTEC, repeats and realleges each and every allegation

contained in paragraphs 114 through 117 of its Answer with the same force and effect as if fully

set forth at length herein.

119.    Defendant DAYTON/CONSPEC at the time of contracting with the Defendant BARTEC

knew and understood the particular purpose for which the Conflow material was required.

120.    Defendant BARTEC relied on Defendant DAYTON/CONSPEC's skill and judgment to

select and/or furnish a suitable underlayment product.

121.    The debonding that occurred subsequently is inconsistent with this warranty of the

product's fitness for this application.

122.    Defendant DAYTON/CONSPEC has breached its warranty as to the underlayment

21

material and its fitness for the known particular purpose for which it was used.

123.    Upon information and belief as a direct and proximate result of the breach of this

warranty of fitness for the application below a terrazzo floor, the Defendant BARTEC may incur

damages totalling $901,091.65 plus interest thereon from October 31, 2002 or more.

As and For a Fourth Cause of Action against the Defendant DAYTON/CONSPEC
(Breach of Implied Warranty of Merchantability)

124.    Third Party Plaintiff, Defendant BARTEC, repeats and realleges each and every allegation

contained in paragraphs 118 through 123 of its Answer with the same force and effect as if fully

set forth at length herein.

125.    The Defendant DAYTON/CONSPEC is in the business of supplying, inter alia, certain

cementitious materials for use as self leveling, underlayment materials for various subsequent

applications, including as an underlayment for epoxy terrazzo floors.

126.    The Conflow material is held out by the Defendant DAYTON/CONSPEC as one such

underlayment material. In effect, the Defendant DAYTON/CONSPEC implicitly warrants the

merchantability of the Conflow product for various underlayment applications and does not

except therefrom use under an epoxy terrazzo floor.

127.    The debonding that occurred subsequent to the application of the Conflow material is

inconsistent with this implied warranty of merchantability.

128.    Defendant DAYTON/CONSPEC has breached its implied warranty of merchantability as

to the underlayment material and its use below a terrazzo floor.

129.    Upon information and belief as a direct and proximate result of the breach of this implied

warranty of merchantability, the Defendant BARTEC may incur damages totalling $901,091.65

plus interest thereon from October 31, 2002 or more.


WHEREFORE, Third Party Plaintiff, Defendant BARTEC INDUSTRIES, INC. respectfully

requests judgment as follows:

a)    On its first Cause of Action against Third Party Defendant, Dayton Superior Specialty Chemical Corp., the sum of $901,091.65, plus interest thereon from October 31, 2002, or to the extent of Third Party Plaintiff, Defendant BARTEC INDUSTRIES, INC.'s liability for the loss/damages incurred as alleged herein as proven at trial;

b)    On its second Cause of Action against Third Party Defendant, Dayton Superior Specialty Chemical Corp., the sum of $901,091.65, plus interest thereon from October 31, 2002, or to the extent of Third Party Plaintiff, Defendant BARTEC INDUSTRIES, INC.'s liability for the loss/damages incurred as alleged herein as proven at trial;

c)    On its third Cause of Action against Third Party Defendant, Dayton Superior Specialty Chemical Corp., the sum of $901,091.65, plus interest thereon from October 31, 2002, or to the extent of Third Party Plaintiff, Defendant BARTEC INDUSTRIES, INC.'s liability for the loss/damages incurred as alleged herein as proven at trial;

d)    On its fourth Cause of Action against Third Party Defendant, Dayton Superior Specialty Chemical Corp., the sum of $901,091.65, plus interest thereon from October 31, 2002, or to the extent of Third Party Plaintiff, Defendant BARTEC INDUSTRIES, INC.'s liability for the loss/damages incurred as alleged herein as proven at trial;

e)    On all of its third party causes of action, its costs and disbursements, and for such other relief as the court may seem just and proper.

Dated  Waldwick, New Jersey
       December 3, 2003

By:    _____
       W. PATRICK QUAST, ESQ.
       Attorney for Bartec Industries, Inc.
       164 Franklin Turnpike, Waldwick, New Jersey 07463
       201/444-5990

23

STATE OF NEW JERSEY   )
                      )ss.:
COUNTY OF BERGEN      )

## VERIFICATION

W. Patrick Quast being duly sworn deposes and says:

That deponent is attorney for Bartec Industries, Inc., one of the defendants herein, that deponent has read the foregoing Verified Answer With Cross-Claims, Counterclaim and Third Party Complaint and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes them to be true.

The reason why deponent and not Bartec Industries, Inc. makes this verification is that Bartec Industries, Inc. maintains its offices outside the county where the New York offices of W. Patrick Quast, Esq. are located, i.e., 6 Water Street, New York, New York.

Dated   Waldwick, New Jersey
        December 3, 2003

By:  _____
     W. PATRICK QUAST, ESQ.

Sworn to before me this 3st day of December, 2003

_____
Notary Public        PATRICIA R. QUAST
            A Notary Public of New Jersey
      My Commission Expires October 28, 2008

24

## NOTICE OF LIEN

PAGE 1 OF 2 PAGES

To: Executive Director of the Dormitory Authority of the State of New York (AUTHORITY) and the Chief Financial Officer for the Authority.

Notice is hereby given that BARTEC INDUSTRIES, INC., a foreign corporation, incorporated in the State of New Jersey, hereby claims a lien, pursuant to the Lien Law of the State of New York, under a certain contract no. DA # 6500 18022176 made between TRATAROS CONSTRUCTION, INC., and the AUTHORITY for construction work, including but not limited to the installation of "self leveling" floor fill from the 3rd floor through the 14th floor, stops, sanding of floors, and final clean-up, at Baruch College, Academic Complex, Site B, in the Borough of Manhattan, State of New York, as follows:

**LIENOR** : **Bartec Industries, Inc.,** a corporation organized and existing under the laws of the State of New Jersey, consisting of one shareholder, and having a business address at 453 Main Street, Little Falls, New Jersey 07424.

**CONSTRUCTION CONTRACTOR** : **TDX CONSTRUCTION CORP.**
137 East 25th Street
New York, New York 10010

**PRIME CONTRACTOR** : **TRATAROS CONSTRUCTION, INC.**
664 64th Street
Brooklyn, New York 11220

**PUBLIC INSTITUTION** : **Baruch College of City University of New York**
55 Lexington Avenue
New York, New York 10010

**LABOR PERFORMED** : Lienor was engaged, inter alia, pursuant to a contract dated May 12, 2000, to furnish labor and materials to install "self leveling" floor fill from the 3rd floor through the 14th floor, stops, sanding of floors,, and final clean-up at Baruch College, Academic complex, Site B, in the Borough of Manhattan.. **Lienor has completed all work and its work product is to the satisfaction of all parties.**

**AGREED PRICE AND VALUE** : The total agreed price and value for the labor and materials was **$641,275.82**

PAGE 2 OF 2 PAGES

**INSTITUTION – BARUCH COLLEGE, ACADEMIC COMPLEX, SITE B (MANHATTAN);**

**LIENOR**              : Bartec Industries, Inc.

**PRIME
CONTRACTOR**     : TRATAROS CONSTRUCTION, INC.

**AMOUNT PAID
TO DATE**           : $603,756.40

**AMOUNT DUE:**    : $37,519.42

**PAYMENT DUE
DATE**               : September 04, 2002

**DATE OF FIRST
PERFORMANCE**    : on or about **July 03, 2000**

**DATE OF LAST
PERFORMANCE**    : on or about **September 04, 2002**

**LIENOR'S
ATTORNEY**         :W. PATRICK QUAST, having offices at 164 Franklin Turnpike,
                   Waldwick, New Jersey 07463;  and, c/o John F. McHugh, Esq., 6 Water
                   Street, Suite 401, New York,  N.Y., 10004.

STATE OF NEW JERSEY  )
                     )
COUNTY OF BERGEN     )

## VERIFICATION

I, Craig B. Negus, the undersigned, President of BARTEC INDUSTRIES, INC., upon my oath being first duly sworn state that I have read the attached NOTICE OF LIEN and know the contents thereof, that the statements contained in the attached NOTICE OF LIEN as to the contract performed on the property listed below by BARTEC INDUSTRIES, INC. are true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to these matters I believe them to be true. The reason why this verification is being made by deponent is that deponent is an officer, to wit, PRESIDENT of BARTEC INDUSTRIES, INC., which is a New Jersey Corporation, and deponent is familiar with the facts and circumstances herein.

The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon deponent's knowledge are as follows: N.A.

**PROPERTY: Baruch College, Academic Complex Site B (Borough of Manhattan)**
            **55 Lexington Avenue**
            **New York, New York 10010**

CRAIG B. NEGUS

Sworn to before me this 11th day of
February, 2003.

Notary Public    PATRICIA R. QUAST
            A Notary Public of New Jersey
            My Commission Expires October 28, 2003

## AFFIDAVIT OF SERVICE

STATE OF NEW JERSEY    )
                       )
COUNTY OF BERGEN       )

I, W. PATRICK QUAST, being duly sworn, upon my oath do state as follows:

1. I am not a party to this matter; I am over eighteen (18) years of age; and, reside at 69 Moore Avenue, Waldwick Borough, County of Bergen, State of New Jersey.

2. I am a member in good standing of both the New York and New Jersey State Bars.

3. On February 11, 2003, I served a copy of the attached Notice of Lien for work performed by the Lienor, Bartec Industries, Inc., at Baruch College, in the Borough of Manhattan, by mailing the copy, by Certified Mail, and by ordinary mail, in postpaid envelopes and depositing same in an official depository under the exclusive care and custody of the U.S. Postal Service, to the Contractors below at the indicated addresses:

TDX CONSTRUCTION CORP.
137 East 25th Street
New York, New York 10010
CM RRR, # 7002 0860 0004 3229 4573

TRATAROS CONSTRUCTION, INC.
664 64th Street
Brooklyn, New York 11220
CM RRR, # 7002 0860 0004 3229 4559

CHIEF FINANCIAL OFFICER
DASNY
515 Broadway
Albany, New York 12207
CM RRR, # 7002 0860 0004 3229 4542

W. PATRICK QUAST

Sworn to before me this 11th day
of February, 2003

Notary Public  PATRICIA R. QUAST
A Notary Public of New Jersey
My Commission Expires October 28, 2003

Bond No. 104192705

## UNDERTAKING DISCHARGING MECHANIC'S LIEN

## UPON ACCOUNT OF PUBLIC IMPROVEMENT

KNOW ALL MEN BY THESE PRESENTS, that we, Trataros Construction, Inc., a New York corporation, as principal (hereinafter referred to as "Principal"), and Travelers Casualty and Surety Company of America, a Connecticut Corporation, authorized to transact business in the State of New York, having an office and place of business at One Whitehall Street, New York, New York 10004, (hereinafter referred to as "Surety"), are held and firmly bound unto the Dormitory Authority of the State of New York, as Obligees, in the sum of **Forty One Thousand Three Hundred Thirty Seven and 36/100 DOLLARS ($41,337.36)** lawful money of the United States of America, to which payment well and truly to be made, we, the Principal and Surety bind ourselves, our and each of our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, on or about the 14th day of February 2003, a notice of lien in writing was filed by Bartec Industries, Inc. in the offices of the Dormitory Authority of the State of New York in the amount of $37,519.42; and

WHEREAS, such notice of lien purports to have been made and filed as prescribed in the Lien Law of the State of New York, wherein such Lienor claims a lien against monies due or to become due to Trataros Construction, Inc. as contractor under a Contract with Dormitory Authority of the State of New York, for the Project known as general construction Baruch College, Site B, Contract # 61094 OS; and

WHEREAS, Section 21(5) of the Lien Law of the State of New York fixes the amount of undertaking to be executed for the purpose of discharging said lien at one hundred ten percent of such lien; and

**WHEREAS,** the amount of undertaking to discharge said lien is **Forty One Thousand Three Hundred Thirty Seven and 36/100 DOLLARS ($41,337.36).**

**NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION** is such that if the above bounden Principal shall and well truly pay and judgment which may be rendered in an action or proceeding to enforce said lien, then this obligation shall be void, otherwise to remain in full force and effect.

**IN WITNESS WHEREOF,** said Principal and Surety have caused these Presents to be duly signed and sealed this 23rd day October 2003.

TRATAROS CONSTRUCTION, INC.

BY:

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

BY:

Claribel Ferraren, Attorney-In-Fact

## STATE OF NEW YORK

## INSURANCE DEPARTMENT

It is hereby certified that

### TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
Hartford, Connecticut

a corporation organized under the laws of the State of Connecticut, and duly authorized to transact the business of insurance in this State, is qualified to become surety or guarantor on all bonds, undertakings, recognizances, guaranties and other obligations required or permitted by law; and that the said corporation is possessed of a capital and surplus including gross paid-in and contributed surplus and unassigned funds (surplus) aggregating the sum of $707,744,210. (Capital $6,000,000.), as is shown by its sworn financial statement for the year ended December 31, 2002, on file in this Department, prior to audit.

The said corporation cannot lawfully expose itself to loss on any one risk or hazard to an amount exceeding 10% of its surplus to policyholders, unless it shall be protected in excess of that amount in the manner provided in Section 4118 of the Insurance Law of this State.



In Witness Whereof, I have here-unto set my hand and affixed the official seal of this Department at the City of Albany, this 24th day of April, 2003.

Gregory V. Serio
Superintendent of Insurance

By

Special Deputy Superintendent

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: Dennis J. Chamberlain, Donna M. Boehne, Mark A. Agostinelli, Stephen W. Rogers, Mark E. Farina, Katie J. Madalone, Elda Martocci, Kim Corcoran, Alexandra L. Cuffari, Sherry L. Guzman, Mary V. Kenna, Dana Boyer, Joseph B. Powers, Tara Quigley, Claribel Ferraren, Liam Russell, John F. Spencer, Christopher Perry, of Edison/Morris Plains, New Jersey, their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

(11-00 Standard)

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**HARTFORD, CT. 06183**

## ATTORNEY-IN-FACT JUSTIFICATION
### PRINCIPAL'S ACKNOWLEDGMENT — IF A CORPORATION

State of New York, County of *Hartford* } ss. *Hartford*

On this *23rd* day of *October*, 20 *03*, before me personally appeared *John Serapiglia* CT
to me known, who, being by me duly sworn, deposes and says: That he/she resides in the City of *West Haven* CT
that he/she is the *Attorney in Fact* of *Trataros Construction - Inc*, the
corporation described in and which executed the within instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that
it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

*Carol A. Thompson*

MY COMMISSION EXPIRES DECEMBER 31, 2007

### PRINCIPAL'S ACKNOWLEDGMENT — IF INDIVIDUAL OR FIRM

State of New York, County of } ss.

On this          day of          , 20          , before me personally appeared                                        to me known
to be (the individual) (one of the firm of                                                  ) described in and who executed the within instrument, and
he/she thereupon duly acknowledged to me that he/she executed the same (as the act and deed of said firm).

### SURETY COMPANY'S ACKNOWLEDGMENT

State of New York, County of *Monmouth* } ss.

On this *23rd* day of *October*, 20 *03*, before me personally appeared *Claribel Ferraren*, to me
known, who, being by me duly sworn, did depose and say: That he/she resides in the City of *Edison NJ*; that he/she is
Attorney-in-Fact of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, the corporation described in and which executed the within instrument; that
he/she knows the corporate seal of said Company; that the seal affixed to said instrument is such corporate seal; and that he/she signed said instrument as Attorney-in-Fact by
authority of the Board of Directors of said Company; and affiant did further depose and say that the Superintendent of Insurance of the State of New York has, pursuant to Chapter
882 of the Laws of the State of New York for the year 1939, constituting chapter 28 of the Consolidating Laws of the State of New York as the Insurance Law as amended, issued to
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA his/her certificate that said Company is qualified to become and be accepted as surety or guarantor on
all bonds, undertakings, recognizances, guaranties, and other obligations required or permitted by law; and that such certificate has not been revoked.

*Katie J. Madalone*
Notary Public

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
Hartford, Connecticut 06183

KATIE J. MADALONE
Notary Public of New Jersey
My Commission Expires Apr. 28, 2008

FINANCIAL STATEMENT AS OF DECEMBER 31, 2002
AS FILED WITH THE INSURANCE DEPT. OF THE STATE OF NEW YORK
CAPITAL STOCK $ 6,000,000

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash & Invested Cash | $ 278,843,790 | Unearned Premiums | $ 406,266,504 |
| Bonds | 1,677,446,816 | Losses | 389,252,880 |
| Stock | 24,767,760 | Loss Adjustment Expenses | 81,861,145 |
| Other Invested Assets | -- | Accrued Expenses and other | |
| Investment Income Due | | Liabilities | 324,699,570 |
| and Accrued | 17,774,761 | Provision for Reinsurance | 27,488,539 |
| Premium Balances | 103,906,338 | Payable for Securities | 260,454,330 |
| Reinsurance Recoverable | 50,822,902 | | |
| Federal Income Tax Recoverable | 26,247,667 | Total Liabilities | 1,490,022,968 |
| Receivable for Securities | 6,059,188 | | |
| Other Assets | 11,116,982 | | |
| | | Capital Stock | 6,000,000 |
| | | Paid in Surplus | 303,297,402 |
| | | Other Surplus | 397,665,834 |
| | | Surplus to Policyholders | 706,963,236 |
| Total | $ 2,196,986,204 | Total | $ 2,196,986,204 |

Securities carried at $13,735,771 in the above statement are deposited with public authorities, as required by law



# IMPORTANT DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of covered losses caused by certain acts of international terrorism. We are providing you with this notice to inform you of the key features of the Act, and to let you know what effect, if any, the Act will have on your premium.

Under the Act, insurers are required to provide coverage for certain losses caused by international acts of terrorism as defined in the Act. The Act further provides that the Federal Government will pay a share of such losses. Specifically, the Federal Government will pay 90% of the amount of covered losses caused by certain acts of terrorism which is in excess of Travelers' statutorily established deductible for that year. The Act also caps the amount of terrorism-related losses for which the Federal Government or an insurer can be responsible at $100,000,000,000.00, provided that the insurer has met its deductible.

Please note that passage of the Act does not result in any change in coverage under the attached policy or bond (or the policy or bond being quoted). Please also note that no separate additional premium charge has been made for the terrorism coverage required by the Act. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and is no more than one percent of your premium.

## AFFIDAVIT OF SERVICE

State of Connecticut  )
                      ):SS.: Hartford
County of Hartford    )

JOHN SCARPELLINO, being duly sworn deposes and says: Deponent is not a party to this action, is over 18 years of age, and resides in North Haven, CT.

On the 27 day of October , 2003, I served a copy of the within:

### UNDERTAKING DISCHARGING MECHANIC'S LIEN
### UPON ACCOUNT OF PUBLIC IMPROVEMENT

Upon the following party(ies)
To:

W. Patrick Quast, Esquire
164 Franklin Turnpike
Waldwick, NJ 07463

By causing to be delivered a copy of the same by first class mail under the exclusive care and custody of the United States Postal Service within the State of Connecticut.

JOHN SCARPELLINO

Sworn to before me this
27 Day of October 2003

Notary Public

MY COMMISSION EXPIRES DECEMBER 31, 2007

**TRATAROS CONSTRUCTION, INC.**
*664 64th Street*
*Brooklyn, NY 11220*
*Tel. No. (718) 833-6070*
*Fax No. (718) 238-4462*

COST CODE: GC2-028
**PURCHASE ORDER NO.** 16780
*(Please include on all invoices)*

*DATE:* 5/12/00

Vendor/Subcontractor:

BARTEC INDUSTRIES, INC.
453 MAIN STREET
LITTLE FALLS, NJ 07424
PH# (973) 256-9262

Project:  BARUCH COLLEGE, NY

Owner:  CITY OF NY

----------------------------------------------------------------------------------------------------

Price:$ __UNIT PRICE P.O. $47/BAG__          Architect/Engineer:  KPF

Please provide all services, labor, materials, equipment and rubbish removal necessary to perform the Work set forth in the following construction documents:

THIS SUBCONTRACTOR SHALL FURNISH AND INSTALL "SELF LEVELING" FLOOR FILL FROM THE 3RD FLOOR THROUGH THE 14TH FLOOR IN ACCORDANCE WITH ATTACHED BARTEC INDUSTRIES, INC. PROPOSAL WITH AGREED TO COMMENTS DATED MAY 8, 2000 INCLUDIN BUT NOT LIMITED TO: SANDING OF FLOORS, FINAL CLEAN UP WITH SWEEPING COMPOUNI INSTALLATION OF STOPS, PROTECTION OF WALLS, OPERATING ENGINEER COSTS, SHOOTI OF FLOOR ELEVATION ON A 5 FOOT GRID ETC... FOR THE UNIT PRICE OF $47 PER BAG

PURCHASE ORDER EXCLUDES: HOIST CHARGES

Unless otherwise stated, this is a Lump Sum Purchase Order and Vendor/Subcontractor shall perform the above-described Work for the above-stated price.

**The Terms and Conditions of this Purchase Order appear on the reverse side hereof.**

Vendor/Subcontractor:                    Trataros Construction, Inc.

By:_____          By:_____
                                            JONATHAN HOROWITZ

Title:_____          Title:_____

Date:_____          Date:_____

# BARTEC INDUSTRIES, INC.

P.O. BOX 356 – LITTLE FALLS, NJ 07424                    (973) 256-9262

Trataros Construction Inc.
664 64th Street
Brooklyn, NY 11220                    PROPOSAL (UL)                    RECEIVED 5-8-00

ATTN: RAMESH                          DATE: May 8, 2000

FAX: 646-935-0757                     PROJECT: Baruch Academic Complex Site B
                                               Floor Leveling

We propose to furnish and install within the above mentioned project
the following: Portland Cement Based Floor Underlayment System, Con-flow
system by Conspec and/or E-945 system by Boiardi. Thickness as required
and directed by Construction Manager.
The areas of work are defined as follows: Concrete Substrate, floors 1-14
as directed. Price includes shooting floor elevations on a 5 ft. grid and
providing an O.E. when required. Price does not include elevator or hoist
charges. These are to be provided by others.

TERMS AND CONDITIONS:
a) All floors to receive underlayment must be prepared by others
   immediately prior to commencement of our work as follows:

   1) All areas are to be broomed and/or vacuumed removing all
      loose material, including dust.
   2) All areas are to be sound and free of substances that would
      impair adhesion, e.g. oil, grease, chemicals, curing
      compounds, etc.
   3) All areas are to be examined and all holes, voids, joints,
      etc. must be sealed.

b) All necessary light, power, heat and water without charge.

   1) Substrate must be 32°F and rising.
   2) Water must be clean and potable and be of constant pressure
      to maintain job schedule. (1" line and min. quantity of 50
      gallons per minute)

c) The site must be able to accommodate the delivery and placing of
   material and equipment.

d) We must be provided sufficient notice to mobilize and secure
   materials called for in our proposal.

e) Areas to be covered will be made available so that the application
   will be continuous. Any interruption causing time delay shall be
   charged to the General Contractor at cost plus 10% overhead.

f) Total installation will be accomplished in an orderly and
   expedient manner. Payment will be made to BARTEC as specified in
   Schedule of Payment, item g, since normal pay periods can not be
   in effect for this work.

g) Schedule of Payment: Work will be billed at a unit bag price installed
   of $47.00 per bag. Billing will be done on a weekly basis and payment
   will be made on a 30 day cycle. Payments will be issued on or about 5
   days after receipt from owner

NOTE: The underlayment material is free flowing and will run through
small voids and openings. The run-through can cause damage, staining of
ceilings and walls of the floor below and or reflect voids in the
underlayment after it cures that may require patching at additional cost.

                         Respectfully Submitted,
                         BARTEC INDUSTRIES, INC.

                         By _Craig Negus_
                              Craig Negus
Accepted _____     This proposal is subject to acceptance
Firm _____        and approval be officers of both
By _____          parties before becoming a contract.
                         BY _____ 20___

NOTE: Material will be handled and loaded by full pallets approx. 2500 lbs.
42"x42" Access and clear passage must be provided from street to elevator
for use of pallet jack and/or forklift. A lockable room with electricity
will be provided by others for storage of equipment.

# Trataros Construction, Inc.

**TRANSMITTAL**

**No. 00611**

122 East 25th Street
New York, New York 10010

**Phone:** (212)539-9960
**Fax:** (212)539-9961

**PROJECT:** BARUCH ACADEMIC COMPLEX

**DATE:** 4/17/00

**TO:**    Bartec Industries, Inc.
P.O.Box 356
Little Falls, New Jersey 07424

**REF:**    RETURN SUBMITTALS
GC 2 - CONTRACT NO. 16

**ATTN:**    Craig Negus

| WE ARE SENDING: | SUBMITTED FOR: | ACTION TAKEN: |
|---|---|---|
| ☐ Shop Drawings | ☐ Approval | ☐ Approved as Submitted |
| ☐ Letter | ☑ Your Use | ☐ Approved as Noted |
| ☐ Prints | ☐ As Requested | ☐ Returned After Loan |
| ☐ Change Order | ☐ Review and Comment | ☐ Resubmit |
| ☐ Plans | | ☐ Submit |
| ☐ Samples | **SENT VIA:** | ☐ Returned |
| ☐ Specifications | ☑ Attached | ☐ Returned for Corrections |
| ☑ Other: PRODUCT DATA | ☐ Separate Cover Via: Mail | ☐ Due Date: |

| ITEM | PACKAGE | SUBMITTAL | DRAWING | REV. | ITEM NO. | COPIES | DATE | DESCRIPTION | STATUS |
|---|---|---|---|---|---|---|---|---|---|
| SUB | 16-03551 | 03551-0001 | PRODUCT D | 001 | 1 | 1 | 4/17/00 | Dwg: PRODUCT DATA Title: SELF LEVELING UNDERLAYMENT | APP |

Remarks:

Signed: _____

Athena Curis

CC:

03551-01-01

## SHOP DRAWING AND SAMPLE TRANSMITTAL

| CONSTRUCTION MANAGER: TDX CONSTRUCTION CORP. | OWNER: DORMITORY AUTHORITY OF THE STATE OF N.Y. | | TO: P. SHEEHAN @ KPF |
|---|---|---|---|
| SUBMITTED BY: J. PHILLIP | PROJECT: BARUCH ACADEMIC COMPLEX - SITE B | | DATE RECEIVED: 4-11-2000 |
| CONTRACT NO. 16 | CONTRACTOR: TRATAROS CONSTRUCTION, INC. | | DATE RETURNED: 4-13-2000 |
| DATE SUBMITTED: 4-10-00 | KPF JOB NO. 1063-01 | | TO: L. JANKOWSKI @ T.D.X. |

A APPROVED
B APPROVED AS NOTED
C REVISE & RESUBMIT
D REJECTED

| SPEC. SECT. | FILE NO. | SUB NO. | QTY. ORIG/PRINTS | TYPE | DESCRIPTION | ACTION A | B | C | D |
|---|---|---|---|---|---|---|---|---|---|
| 3551 | DD01 | 1 | 4 | (Cuts) | SELF LEVELING UNDERLAYMENT | X | | | |

RECEIVED
APR 14 2000
TDX CONSTRUCTION

4-17-00

**T E C H N I C A L   D A T A**

GC ___2___ CONTRACT # ___16___
TRATAROS CONSTRUCTION, INC.
TITLE _SELF LEVELING UNDERLAYMENT_
SUB. # _03551-0001-01_
4/5/00

(FOR FLOOR LEVELING CHANGE ORDER)

# Conflow

## Self-finishing and Leveling Composition

RECEIVED
APR -7 2000
TOY CONSTRUCTION

## Description

*Conflow is a self-leveling and self-finishing polymer modified Portland Cement based material. Use Conflow as an underlayment for interior applications.*

## Manufacturer

Conspec Marketing &
Manufacturing Co., Inc.
636 South 66th Terrace
Kansas City, Kansas 66111
Telephone: (913) 287-1700
          (800) 348-7351

## Use

For new concrete, old concrete, old concrete with cutback, tile or terrazzo, wood and special shot-blasted surfaces.

## Architectural Specifications

*Self-leveling Underlayment:* All concrete floors to be leveled and/or resurfaced shall be topped with a self-leveling, polymer modified material. Approved product: Conspec Conflow or approved equivalent.

## Application

*Surface Preparation - Typical for All Surfaces:*
1. Floor should be free of oils, waxes, curing compounds, sealers and any foreign material.
2. Clean floors with a mechanical scrubber with a vacuum pickup or shot blasting equipment to remove dust and dirt. DO NOT broom sweep.
3. Use hand metal scrubbers. Mop or wet dry vacuum in small areas where a mechanical scrubber is impractical. NOTE: Refer to specific floor sections below for further instructions.

*New and Old Concrete Surfaces:*
1. Surface should be hard, dense and non-dusting.
2. Surface should be twenty-eight days or older and free of all curing agents, sealers etc.
3. Patching materials that are loose or unsound should be removed. Refer to "Special Surfaces" for further details.
4. Test the Primeflow* on the prepared surface to insure good adhesion: STEP A. Apply the Primeflow to a 4' by 4'(1.22 m x 1.22 m) area with a broom or mop and allow it to dry. STEP B. Using the pointed end of a knife or a sharp device, scrape through the Primeflow. If the Primeflow can be peeled up, it is not a suitable

application. If the scraper only scratches the Primeflow, the surface is suitable for application.

*Old Concrete Surfaces With Cutback:*
1. Refer to the general procedures for "New and Old Concrete."

2. Areas with heavy or loose cutback must be removed.
3. Shot blasting is recommended.
4. Use Conspec Orange Peel to remove any residual cutback.

*Tile and Terrazzo Surfaces:*
1. Must be free of all waxes, sealers, oils or grease and any loose or foreign material.
2. The Primeflow test is critical. Refer to the Primeflow instructions in "New and Old Concrete."

## A P P L I C A T I O N   P R O P E R T I E S

| | |
|---|---|
| Working Time (depending on environment) | |
| Interior | 10 - 25 minutes |
| Setting Time (ASTM C-266) | |
| Initial | 50 - 75 minutes |
| Final | 2 hrs. - 2 hrs., 30 min. |
| Avg. Compressive Strength, w/m = 0.21 (ASTM C-109) | |
| 1 day | 1500 psi min. (10.3 MPa) |
| 7 days | 3500 psi min. (24.1 MPa) |
| 28 days | 6000 psi min. (41.3 MPa) |
| Tensile Strength (ASTM C-307) | |
| 1 day | 300 psi (2.1 MPa) |
| 7 days | 500 psi (3.4 MPa) |
| Expansion (ASTM C-157) | |
| 1 day | .001% |
| 7 days | .001% |
| 28 days | .002% |
| Bond Strength (tension) | |
| 7 days exceeds | 200 psi (1.4 MPa) |
| Shear Bond Strength (ASTM C-1042) | |
| 14 days | 1054 psi (7.3 MPa) |
| Coverage of 45 lbs. at 1/4" | 22 sq. ft. (2.04 sq. m.) |
| Water Requirements for 45 lbs. (1 bag) | 1.18 to 1.31 gal.(4.5-5 L) |
| Mixing Time | 2 - 3 minutes. |
| Maximum Depth | 1" (2.54 cm) |



## CONSPEC ®

*ood Floors and Wood Floors With Cutback Surfaces:*
1. Refer to the general procedures for "New and Old Concrete", steps 1-4.
2. The construction of the floor should be sufficient for the intended loading and use without any flexing or moving.
3. Because concrete and wood have very different expansion movement characteristics it is recommended that reinforcing such as hardware cloth be used and attached with staples on a minimum of 12"(30.5 cm) centers.
4. Primeflow can be applied before or after the installation of wire.

*Wear Surface:* Conflow can be used as an interior wearing surface for foot traffic when coated with an appropriate Conspec sealer. Please consult Conspec for specific recommendations for your application.

*Shot Blasted or Sanded Surfaces:*
1. Refer to the general procedures for "New and Old Concrete", steps 1-4.
2. These surfaces can be very dusty requiring extra care in removing dust.
3. Because these surfaces are more porous, extra Primeflow will be required.
4. A test patch should be applied to determine if surface is properly primed and sealed. Numerous pinholes appearing either during or after placing the primer indicates the floor is not adequately primed and sealed.

*Special Surfaces:* Special surfaces require special procedures and should be referred to the manufacturer's representative. Special surfaces such as: Gypsum, latex cement, lightweight concrete, ceramic tile and vinyl tile.

Conflow can be extended with clean predampened 3/8" pea gravel for deep application. Please contact Conspec for specific application instructions.

* *Primer Application:* Primeflow, a special adhesive agent made especially for Conflow, is critical to the installation of Conflow. The purpose of Primeflow is to seal the surfaces which otherwise absorb water from the material and do not allow proper hydration or provide a suitable surface for the adhesion of Conflow.

1. The Primeflow comes ready-to-use. Coverage is 100-300 square ft. per gallon(2.5-7.4 m²/L) depending on the porosity of the surface.
2. Apply with a mop or broom. Drying time is 2-3 hours at 75°F(23.9°C) but slightly longer with a decrease in temperatures and slightly less with an increase in temperatures. Primeflow will remain slightly tacky when dry. NOTE: Poor ventilation will delay normal drying time. Fans will help increase circulation to increase drying time.
3. Any Primeflow puddled in low areas should be wiped up.
4. Primed surfaces are good for 24 hours providing it is not subjected to traffic. If the placing of the leveler exceeds 48 hours or there

has been traffic across the floor a re-application of primer is necessary.
5. Very porous surfaces require at least two applications of Primeflow. The first application may be diluted at a ratio of 1:1 with water and the second coat at full strength.
6. It is recommended that in all cases a primer test be performed prior to placing Conflow. Refer to the "New and Old Concrete" instructions.

*Material Installation - Hand Equipment Required:*
1. 1/2"(1.27 cm) electric drill 6.50 r.p.m.
2. Marked container for measuring water.
3. Mixing container size: minimum 5 gal. pail(18.9 L), a 15 gal. pail(56.7 L) is recommended.
4. Mixing paddle: wire or egg beater type.

*Mixing:* Place pre-measured water into mixing container. Start drill and add Conflow slowly but DO NOT exceed two to three minutes. Water may be adjusted slightly to produce desired consistency. CAUTION: Excessive water will cause segregation and cracking; reducing compressive strength resulting in bond failure.

*Water Requirements:*
Interior
45 lb. Conflow (1 bag)(20.4 kg)
9.5 - 10.5 pints of water (4.5-4.9 L)

Note: The data shown is based on controlled laboratory testing. Reasonable variation from results shown can be expected. Field and laboratory testing should be controlled on the basis of the desired placing consistency, rather than strictly on the water content.

*Placing:* It is recommended that placing should be in lanes 15' (4.6 m)in width formed using foam tape or other suitable forming material. Place in a continuous operation by pouring back and forth within the width of the formed area. It is important that this be done in a continuous operation to achieve proper merging of the material. DO NOT exceed 2-3 minutes in placing material. Crew sizes, equipment and material should be of such a size to continuously place in 2-3 minutes.

*Pumping:* There are various types of pumps manufactured and available for the application of Conflow. Consult with your local representative for their names, availability and recommendations.

## Packaging

45 lb. triple lined bag (20.4 kg)

## Limitations/Precautions

DO NOT place at temperatures below 50°F(10°C) or if the temperature is expected to fall below 50°F(10°C) in the next twenty-four hour period. Severe variation of 1" (2.54 cm)or more over 1 '(.30 m)or less should be referred to manufacturer for proper procedure. Wind over 5 m.p.h. can dehydrate Conflow and cause cracking. Unless area of application can be

protected from wind, application should be postponed until there are favorable conditions. Temperatures in excess of 80°F(26.7°C), ambient or surface, can cause flash set and dehydration, resulting in cracking and debonding.

Caution. Contains Portland Cement and sand. Cement will cause irritation. Avoid contact. Use of a dust respirator, safety goggles and rubber gloves are recommended. Avoid prolonged contact with clothing. In case of contact with eyes, immediately flush with water for at least 15 minutes. Get prompt medical attention. DO NOT wear contact lenses when working with this product. DO NOT take internally. Keep out of reach of children.

Avoid hazards by following all precautions found in the Material Safety Data Sheet (MSDS), product labels and technical literature. Please read this information prior to using the product.

## Warranty

Conspec Marketing & Manufacturing Co., Inc. warrants that at the time and place we make shipment, our materials will be of good quality and will conform with our published specifications in force on the date of acceptance of the order. THE FOREGOING WARRANTY SHALL BE EXCLUSIVE AND IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES OTHERWISE ARISING BY OPERATION OF LAW, COURSE OF DEALING, CUSTOM OR TRADE OR OTHERWISE. As the exclusive remedy for breach of this Warranty, we will replace defective materials, provided, however, that the buyer examine the materials when received and promptly notify us in writing of any defect before the materials are used or incorporated into a structure. Twelve (12) months after Conspec Marketing & Manufacturing Co., Inc. has shipped the materials, all our Warranty and other duties with respect to the quality of the materials delivered shall conclusively be presumed to have been satisfied, all liability therefore terminates, and no action for breach of any duties may thereafter commence. Conspec Marketing & Manufacturing Co., Inc. shall in no event be liable for consequential damages. Unless otherwise agreed to in writing, no warranty is made with respect to materials not manufactured by Conspec Marketing & Manufacturing Co., Inc. No Conspec warrant or in any way guarantee any particular method of use of application or the performance of materials under any particular condition. Neither this Warranty nor our liability may be extended or amended by our salespeople, distributors or representatives or by any sales information or drawings.

## Receiving

All bagged products should be checked for dryness prior to signing shipping papers.

## Storage

Conflow should be stored in a cool, dry interior area. At no time should material be exposed to high moisture, rain or snow conditions.

## Fax-On-Demand

Request Document 1000 for a complete Index of Conspec Product Information. For Conflow documents request 1525 for Literature and 1526 for the MSDS.



Fax-On-Demand                                    0608098



CONSPEC ®

CONSPEC Marketing & Manufacturing Co., Inc. • 636 S. 66th Terrace • Kansas City, KS 66111 • 913-287-1700 • 800-348-7351

**BARUCH ACADEMIC COMPLEX**
**55 LEXINGTON AVENUE**
**NEW YORK, N.Y.**

| ACTION A | APPROVED |
| ACTION B | APPROVED AS NOTED<br>Resubmit for Record Purposes Only |
| ACTION C | REVISE AND RESUBMIT |
| ACTION D | REJECTED |

Reviewing is only for conformance with the design concept of the project and compliance with the information given in the contract documents. The contractor is responsible for and must confirm and correlate all quantities and information that pertains solely to the fabrication processes or to the means, methods, techniques, sequences and procedures of construction, and for coordination of the work of all trades.

KOHN PEDERSEN FOX ASSOCIATES P.C.

Date  4-13-00  By  MK

| SECTION | FILE NO. | SUBMISSION |
| 02531 | 01 | 01 |

TDX CONSTRUCTION

RECEIVED
APR 14 2000