# EXHIBIT A

B09-09420



# TRATAROS CONSTRUCTION, INC.

664 64th Street
Brooklyn, NY 11220
Tel: (718) 833-6070 Fax: (718) 238-4462

## Subcontract Agreement

This subcontract made this 18th day of September 1998, by and between TRATAROS, the General Contractor (hereinafter "Contractor") and G. M. Crocetti Inc. 3960 Merritt Avenue Bronx, New York 10466 (hereinafter "Subcontractor") (hereinafter collectively "Parties")

WITNESSETH:

WHEREAS, Contractor and Dormitory Authority State of New York (hereinafter "Owner") have entered into a contract for Baruch College – Site B, Package No. 2 - General Construction Work, Contract No. 16 (Contract No. DA#6500 1802 2178) (hereinafter "Project"), according to the Contract Documents listed in Exhibit A attached hereto (hereinafter "Contract Documents") which are made a part of this Subcontract insofar as they apply; and

WHEREAS, Contractor desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work a. the prices and upon the terms and conditions hereinafter expressed;

NOW, THEREFORE, in consideration of the mutual agreements herein expressed, the Parties contract as follows:

1. Subcontractor's Work

a. Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B (hereinafter "Work") and work incidental thereto, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner.

b. In respect of work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall have all rights which contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner in the Contract Documents. Subcontractor shall have the right to enforce its rights and remedies and to defend against claims against it by the Owner as provided in Article 9.

2. Payment

a. Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by change order, the total sum of THREE MILLION EIGHT THOUSAND Dollars ($ $3,008,000.00 ) (hereinafter "Subcontract Price").

b. Partial payments shall be due Subcontractor in the amount of 90*% of the Work in place, and for which payment has been made to Contractor by Owner. If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of 90 *% of stored materials for which payment has been made to Contractor by Owner. Subcontractor shall submit a breakdown of the total Subcontract Price in form and detail acceptable to Contractor. In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments. (* Subject to Owner's approval)

c. Partial payments shall be due on or about the fifteenth day following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part. All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all Work and materials upon which payments have been made until final acceptance thereof by Owner.

d. Subcontractor shall ensure that all sub-subcontractors, employees and suppliers at all times, are paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all previous amounts owed in connection with performance of this Subcontract have been paid. In addition to the requirements for payment in the Contract, as requested by Contractor, Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a lien waiver for Subcontractor and its subcontracts and suppliers in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor and its subcontractors. Subcontractor shall also immediately reimburse Contractor for any amounts paid by Contractor or under Contractor's payment bond in connection with this Subcontract caused by failure by Subcontractor to make payment as provided in this Article. Contractor may with hold amounts otherwise due under this Subcontract or any other contractual arrangement between the parties to cover any costs or liability Contractor has incurred or may incur for which Subcontractor may be responsible hereunder. THIS TO BE NOT ARBITRARY AND SHALL BE SUBSTANTIATED.

e. Subcontractor expressly agrees that payment by the Owner to the Contractor for any Work performed by the Subcontractor is a condition precedent to any payment by the Contractor to the Subcontractor and that the Contractor is under no obligation until and unless the Contractor has been paid by the Owner.

f. Final payment shall be made after Subcontractor's work has been accepted by Owner, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, consent of Subcontractor's surety has been received, the Subcontractor's Work is complete, and Contractor has been paid in full for the Subcontractor's Work.

g. Subcontractor accepts exclusive liability for all taxes and contributions required of Subcontractor by federal, state or local acts or regulations, including, without limitation, the Federal Social Security Act and the Unemployment Compensation Law or similar laws in any state with respect to the employees of Subcontractor and the performance of the Work. Subcontractor agrees to furnish Contractor with suitable written evidence that it has fulfilled such obligation. Subcontractor shall indemnify and hold harmless Contractor with respect to the payment of any such taxes or contributions under any applicable act, law or regulation.

h. Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual ~~or potential~~ liability or damage directly ~~or indirectly~~ relating to the Subcontract, or for any liability or damage for which Subcontractor otherwise may be liable to Contractor.

3. Subcontractor's Investigations and Representations

Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation as ascertained (i) the Work required by this Subcontract, (ii) the conditions involved in performing the Work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Contractor or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to independently investigate and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

4. Subcontractors Liability

a. Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, ~~whether or not erected in place~~, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until ~~final~~ acceptance of the Work by Owner. In the event of any loss, damage or destruction thereof ~~from any cause~~, Subcontractor ~~shall be liable therefor~~ and shall repair, rebuild and make good said loss, damage or destruction ~~at Subcontractor's~~ cost as directed by the contractor.

b. Subcontractor shall be liable for all costs Contractor incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its suppliers or subcontractors of any tier to perform. Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by Contractor to Owner; (2) Contractor's increased costs of performance, delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; and (5) attorneys' fees and related costs.

c. Indemnification

To the fullest extent permitted by law, the Subcontractor shall indemnify, hold harmless and defend the Contractor, Owner and all of their agents, directors and employees from and against all claims, damages, demands, losses, expenses, causes of action, suits or other liabilities, (including all costs and reasonable attorney' fees), arising out of or resulting from the performance of Subcontractor's Work under the Subcontract, provided any such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, ~~regardless whether it is caused in part by a party indemnified hereunder~~. This indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under any workers' compensation acts, disability benefits acts or other employee benefits acts. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents.

d. In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilizes any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Contractor, Subcontractor shall be liable to Contractor for ~~any~~ loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be due solely to the negligence of Contractor's employees operating Contractor-owned or leased equipment.

e. Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 5, or otherwise.

5. Subcontractor's Insurance

Prior to commencing the Work, Subcontractor shall procure, with Contractor and Owner as additional insured parties, and thereafter maintain, at its own expense, until final acceptance of the Work, insurance coverage as more fully described in Exhibit C in a form and from insurers acceptable to Contractor.

6. Time Performance

a. Subcontractor will proceed with the Work in a prompt and diligent manner, in accordance with Contractor's schedule, as reasonably amended from time to time. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement.

b. If requested by Contractor, Subcontractor Shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Article 6. a. above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

c. Subcontractor will coordinate its work with the work of Contractor, other subcontractors, and Owner's other builders, if any, so no delays or interference will occur in the completion of any part or all of the Project.

d. Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the Contractor, other subcontractors, or the Contractor's suppliers, or delayed, impacted or disrupted by any acts or causes which would entitle Contractor to an extension of time under the Contract Documents, the Subcontractor shall receive an equitable extension of time for the performance of this Subcontract, but shall not be entitled to

any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays impacts, disruptions, or acceleration resulting therefrom unless the Owner is liable and pays Contractor for such delays, impacts, disruptions, or acceleration. Contractor will pay the Subcontractor the amount allowed and paid by the Owner for the Subcontractor's delay, impact, disruption or acceleration. Within five (5) days after the commencement of any delay, impact or disruption, or acceleration caused by Contractor, other subcontractors, or the Contractor's suppliers, the Subcontractor shall notify Contractor in writing stating full details of the cause of the alleged delay, impact, disruption or disruptions or acceleration for which the Owner is responsible in sufficient time so that its claim may be timely processed against the Owner.

7 Changes and Claims

a. Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the Work covered by this Subcontract. Any unilateral order, or agreement, under this Article 7. a. shall be in writing. Subcontractor shall perform the Work as changed without delay.

b. Subcontractor shall submit in writing any claims for adjustment in the price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for damages for which the Owners liable, or as a result of deficiencies or discrepancies in the Contract Documents, to Contractor in time to allow Contractor to comply with the applicable provisions of the Contract Documents. Contractor shall process said claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor receives relief from or must grant relief to Owner. Further, each Subcontract adjustment shall be equal in laid Subcontractor's allocable share of any adjustment in Contractor's contract with owner. Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and other interest in any recovery, by making a reasonable apportionment, if applicable, among Subcontractor, Contractor and other subcontractors or persons with interest in the adjustment. This paragraph will also cover other equitable adjustments or other relief allowed by the Contract Documents.

c. For changes ordered by Contractor independent of Owner of Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract Price if Subcontractor submits in writing to Contractor its claim within five (5) days of the beginning of the event for which claim is made.

d. Pending resolution of any claim, dispute or other controversy nothing shall excuse Subcontractor from proceeding with prosecution of the Subcontract Work.

e. Subcontractor shall indemnify and hold Contractor harmless from any cost, expense, fine or liability resulting from a claim or claim certification deemed wrongful in whole or in part.

8. Subcontractor's failure to Perform



a. If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the current schedule, (3) cause, by any action or omission, the stoppage, delay of, or interference with the work of Contractor or of any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, the Contractor may at its option (I) without voiding the other provisions of the Subcontract and without notice to the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof, or (ii) terminate the Subcontract for default, or (iii) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to Contractor and/or Owner. In the event of termination for default, Contractor may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project, or (3) complete the Work either by itself or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner. At such time, if the unpaid balance of the Subcontract Price to be paid shall exceed the expense incurred by Contractor, including an overhead fee of ten percent (10%) of the costs of finishing the Work, such excess shall be paid by Contractor to Subcontractor. If such amount due Contractor shall exceed such unpaid balance, then Subcontractor shall pay Contractor the difference within five (5) business days following demand by Contractor. Subcontractor shall pay all reasonable costs of collection, if any.

b. If Contractor wrongfully terminates Subcontractor under Article 8, the termination shall be deemed to be a termination for convenience, as provided in Article 13.

9. Settlement and Disputes

a. In case of any dispute between Contractor and Subcontractor, due to any action of Owner or involving the Contract Documents, Subcontractor agrees to be bound to the same extent that Contractor is bound to Owner, by the terms of the Contract Documents, and by any and Ill preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, ~~whether or not Subcontractor is a party to such proceedings~~. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, whenever Contractor is permitted to do so by the terms of the Contract Documents. IF such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay or reimburse Contractor for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

b. With respect to any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents, Contractor shall issue a decision which shall be followed by Subcontractor. If the Subcontractor is correct as to the controversy, Subcontractor shall be entitled to an equitable adjustment in the Subcontract Price as its sole remedy. Notification of any such claim for equitable adjustment must be asserted in writing within ten (10) days of Subcontractor's knowledge of the claim.

c. Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents and which is not amicably resolved by the Parties will be submitted to a court of competent jurisdiction in the State of New York, 2nd department, County of Kings. In no event will any such controversy be submitted to arbitration, except at the sole option of Contractor.

10. Warranty

Subcontractor warrants its Work hereunder to Contractor on the same terms, and for the same period, as Contractor warrants the work to Owner under the Contract Documents; and with respect to Subcontractor's Work. Subcontractor shall perform all warranty obligations and responsibilities assumed by Contractor under the Contract Documents.

11. Liens

a. In the event that liens are filed by anyone in relation to the labor or material being furnished by Subcontractor, Subcontractor and its surety agree to protect, indemnify and hold harmless Contractor and Owner therefrom, to have the same discharged or removed, by posting a bond with the appropriate authorities, or otherwise, at its own cost and expense (including attorneys' fees) within five (5) days of notice. In the event such lien is not so discharged, such circumstance shall be deemed a failure to perform the Work on the part of the Subcontractor, subject to the conditions and terms set forth in Article 8 above. **G.M. Crocetti does not agree to waive any rights under New York Lien law.**

b. Subcontractor shall, as often as required by Contractor, furnish a sworn statement showing all parties who furnish labor or material to Subcontractor, with their names and addresses and the amount due or to become due to each. Like statements may be required from any subcontractors or vendors, of any tier, of Subcontractor.

c. Prior to final payment, Subcontractor shall provide to Contractor a release of its liens and claims and all liens and claims of all persons furnishing labor or materials for the performance of this Subcontract in the form acceptable to Contractor, and satisfactory evidence that there are no other liens or claims whatsoever outstanding against the Work.

d. If required by Contractor, Subcontractor shall furnish releases of liens with respect to all prior payments, as part of each request for partial payment other than the initial request.

12. Inspection and Acceptance

Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Contractor or Owner of the Work and materials provided under this Subcontract, whether at the Project site or at any place where such Work or materials may be in preparation, manufacture, storage, or installation. Subcontractor shall promptly replace or correct any Work or materials which Contractor or Owner shall reject as failing to conform to the requirements of this Subcontract. The Work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or Contractor shall not constitute acceptance of the Work.

13. Termination for Convenience

Contractors shall have there right to terminate this Subcontract, in whole or part, for convenience, if there is a termination of Contractor's contract with Owner, by providing Subcontractor with a written notice of termination, to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to Contractor. The Subcontractor's remedy under this Article 13, shall be exclusive. Nothing herein shall bar withholdings by Contractor permitted by other provisions of the Subcontract.

14. Approvals

a. Subcontractor shall deliver to Contractor copies of shop drawings, cuts, samples and material lists required by Contractor or the Contract Documents and in accordance with the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for contract or to submit same within the time stated in the Contract Documents, whichever is earlier. Any deviation from the Contract Documents shall be clearly identified on shop drawings.

b. Contractor's review of shop drawings, cuts, samples and material lists is only for the convenience of the Owner and shall not relieve the Subcontractor of its obligation to perform the Work in strict accordance with Contract Documents, including addenda, or the proper matching and fitting of the work with contiguous Work. In the event that discrepancies exist in the contract documents which preclude proper matching and fitting of the work with contiguous work the subcontractor shall at the contractor's direction make the necessary changes to effect proper matching and fitting with contiguous work. There will be no change in contract price unless the owner issues a contract modification. Should the proper and accurate performance of the Work included in this Subcontract depend upon the proper and accurate performance of other work not included in this Subcontract, Subcontractor shall use all necessary means to discover defects in such other work, and shall report the said defects in writing to contractor before proceeding with the Work, and shall allow the Contractor a reasonable time to remedy such defects.

c. Subcontractor warrants and agrees that it can and will obtain all requisite approvals from Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the Work as required by the Contract Documents.

15. Clean-Up

**All rubbish will be placed at a designated area on each floor and removed by others at no cost to G.M. Crocetti in accordance with contract documents.**

16. Assignment



Subcontractor shall not sub-subcontract the Work of this Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Contractor and Subcontractor's surety. Contractor shall not unreasonably withhold its consent to the assignment of funds due hereunder.

17. Patents and Royalties

Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Contractor or Owner arising out of the Work, and shall be liable to contractor and Owner for all loss, including all costs and expenses, on account thereof.

18. Taxes and Permits

Except as otherwise provided by the Contract Documents, Subcontractor agrees to pay and comply with and hold Contractor harmless against the payment of all contributions, taxes or premiums which may be payable by it under federal, state or local laws arising out of the performance of this Subcontract, and all sales, use or other taxes of whatever nature levied or assessed against Owner, Contractor, or Subcontractor arising out of this Subcontract, including any interest or penalties. Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of its Work and shall arrange for all necessary inspections and approvals by public officials.

19. Laws, Regulations and Ordinances

Subcontractor agrees to be bound by, and, at its own cost, comply with all Federal, state and local laws, ordinances and regulations applicable to this Subcontract and the performance of the Work hereunder including the Occupational Safety and Health Act of 1970. Subcontractor shall be duly licensed to operate under the law of the applicable jurisdictions. Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents resulting from failure to comply including, but not limited to, any fines, penalties or corrective measures.

20. Labor

a. Subcontractor and its lower-tier subcontractors shall not employ anyone in Subcontract Work whose employment may be objected to by Contractor or Owner.

b. Should any workers performing work covered by this Subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the Work on the part of the Subcontractor subject to the conditions and terms set forth in Article 8 above.

21. Equal Opportunity

a. In connection with the performance of Work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex, handicap, color or national origin. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or advertising; layoff or termination; rates of pay or other forms of compensation-, and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provision of this Article 21.

b. Subcontractor shall permit access to its books, records, and accounts by representatives of Contractor or Owner for purposes of investigation to ascertain compliance with the provisions of this Article 2 1.

c. In the event of Subcontractor's non-compliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

d. Subcontractor shall include the provisions of this Article 21 in every lower-tier subcontract and purchase order. The requirements of this Article 21 shall be in addition to any equal opportunity provisions of the Contract Documents.

22. Notices

All notices shall be addressed to the Parties at the addresses set out herein, and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

23. Safety

Subcontractor agrees that the prevention of accidents to workers engaged in the Work is the responsibility of the Subcontractor. Subcontractor shall comply with approved Safety and Accident Plans. Subcontractor agrees to comply with all labor department laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established during the progress of the Work by the Contract. When so ordered, the Subcontractor agrees to stop any part of the Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken, and further agrees to make no claim for damages growing out of such Work stoppages. Should the Subcontractor neglect to adopt such corrective measures, Contractor may perform them and deduct the cost from payments due or to become due to Subcontractor. Failure on the part of Contractor to stop unsafe practices shall in no way relieve Subcontractor of its responsibility.

24. Severability

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise and right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

25. Governing Law

This Subcontract shall be governed by and construed in accordance with the laws of the State of New York.

26 Advertising

Neither Subcontractor, its subcontractors, suppliers nor employees shall take photographs of the Work on site, or publish or display advertising matter of any description relating to the Project without first obtaining the written consent of Contractor and Owner.

Subcontractor No. B09-09420

27. Bond

The Subcontractor shall furnish at Subcontractor's expense a Performance and Payment Bond in the full amount of this Subcontract. Performances and payment bonds for subcontractors work shall be provided by the subcontractor and are to be issued by a U.S. Department of Treasury listed bonding company acceptable to the Contractor for the full amount of the subcontract The cost is to be born by the subcontractor and is included in the amount of this Subcontract Agreement.

28. Execution

The Subcontract is signed and received by a legal representative of the Subcontractor authorized to bind Subcontractor, be it individual, partnership or corporation, to all terms of this Subcontract. Should this Subcontract, because of the manner of execution, not be legally binding upon the Subcontractor for any reason whatsoever, all Work under this Subcontract shall be performed at the risk of the Subcontractor, and, should this Subcontract be voided due to improper execution, Subcontractor agrees to waive all claims for compensation for Work performed. **If a portion of the work is completed properly Subcontractor will be compensated accordingly as agreed to with the Owner.**



29. Complete Agreement

This Subcontract contains the entire agreement between the Parties hereto with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the Parties hereto.

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year and above written.

Exhibits: A - Contract Document; B - Scope of Work; C - Insurance; D - Partial Lien Waivers; E - Final Release; F - Subcontractor Size Certification; G - Rider to all Subcontracts and/or Purchase Orders

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

TRADE: Precast Terrazzo, Epoxy Terrazo, Interior Stonework

General Contractor: **Trataros Construction, Inc.**

By: ______________________
Costas N. Trataros, President

Notary: ______________________ 4/21/99
date

PRISCILLA J. OLIVO
Notary Public, State of New York
No 01OL5018005
Qualified in Kings County
Commission Expires Sep. 20, 1999

Be advised that progress payments, final payment and/or payment of retainage, shall be subject to receipt, acceptance and verification of Item "A" through "H" mentioned in Rider G.

Subcontractor: **G. M. Crocetti, Inc.**

By: ______________________ V.P.
Arthur C. Cayazzi, Vice President

Notary: ______________________ 3/29/99
date

Seal:

MICHAEL ZANZANO
Notary Public, State of New York
No. 60 468-7765
Qualified in Westchester County
Certificate Filed in Bronx County
Commission Expires Aug. 31, 1999

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

Subcontractor: G. M. Crocetti, Inc.

By: [signature]
Arthur C. Cavazzi, Vice President

Witness: Donna M. Mollica

Trataros Construction, Inc.

By: [signature]
Costas N. Trataros, President

Witness: [signature]

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16

EXHIBIT A
LIST OF CONTRACT DOCUMENTS

CONTRACT BETWEEN OWNER AND CONTRACTOR, Dated August 27, 1998 DASNY # 6500 1802 2178, JDE # 61506

TABLE OF CONTENTS

VOLUME #1 - PROJECT MANUAL AND CONTRACT SPECIFICATIONS

ADDENDUMS: 1, 2 & 3

TABLE OF CONTENTS


I NOTICE TO BIDDERS
II INFORMATION FOR BIDDERS
III SUPPLEMENT TO INFORMATION FOR BIDDERS
IV FORM OF BID
V FORM OF BID BOND
VI CONTRACT
VII PERFORMANCE BOND
VIII LABOR AND MATERIAL PAYMENT BOND
IX GENERAL CONDITIONS
- APPENDICES ATTACHED
- NYS UNIFORM CONTRACTING QUESTIONNAIRE
- AFFIRMATIVE ACTION FORMS
- CHANGE ORDER FORMS
- SAMPLE INSURANCE CERTIFICATES
- CERTIFICATE FOR PAYMENT
- PUBLIC WORK PROJECT DECLARATION
X CONTRACTOR'S TRADE PAYMENT BREAKDOWN
XI WAGE RATES
XII GENERAL REQUIREMENTS
XIII SUPPLEMENTAL GENERAL REQUIREMENTS
XIV SCOPE OF WORK
XV SAMPLE CPM SCHEDULE
XVI TECHNICAL SPECIFICATIONS


| SECTION | TITLE |
|---|---|
| SECTION 01030 | ALTERNATES |
| SECTION 02518 | SAND SET PAVERS |
| SECTION 02520 | CONCRETE SIDEWALKS |
| SECTION 02900 | LANDSCAPING |
| SECTION 03302 | CAST-IN-PLACE CONCRETE - SWIMMING POOL |
| SECTION 03303 | CAST-IN-PLACE CONCRETE (CURBS, EQUIPMENT PADS, TOPPING) |
| SECTION 03551 | CEMENTITIOUS FLOOR LEVELING |
| SECTION 04101 | MASONRY MORTARS & GROUTS (GC#2) |
| SECTION 04224 | INTERIOR CONCRETE BLOCK CURBS (GC#2) |
| SECTION 04420 | EXTERIOR STONEWORK |
| SECTION 04440 | STONE TESTING |
| SECTION 04450 | INTERIOR STONEWORK |
| SECTION 05301 | METAL DECK (GC#2) - RECITAL HALL STAGE |
| SECTION 05505 | MISCELLANEOUS METAL WORK |
| SECTION 05510 | METAL STAIRS |
| SECTION 05520 | HANDRAILS, RAILINGS & GUARDRAILS |
| SECTION 05540 | CONSTRUCTION CASTINGS |
| SECTION 05700 | ORNAMENTAL METAL |
| SECTION 06100 | ROUGH CARPENTRY |
| SECTION 06200 | FINISH CARPENTRY |
| SECTION 06400 | ARCHITECTURAL WOODWORK |
| SECTION 06420 | WOOD PANELING |
| SECTION 07111 | VAULT WATERPROOFING |
| SECTION 07112 | WATER TANK COATING |
| SECTION 07115 | HOT APPLIED ASPHALTIC MEMBRANE |

Subcontractor No. **B09-09420**

SECTION 07125 CAPILLARY WATERPROOFING
SECTION 07131 BENTONITE WATERPROOFING
SECTION 07193 SELF-ADHESIVE MEMBRANE GALVANIZED STEEL CLOSURES AND INSULATION (EXTERIOR STONE)
SECTION 07210 BUILDING INSULATION
SECTION 07218 SPRAYED THERMAL INSULATION
SECTION 07271 FIRESTOPPING/SMOKE SEALS (GC#2)
SECTION 07521 INVERTED HOT LIQUID MEMBRANE ROOFING
SECTION 07575 TRAFFIC BEARING DECK COATING
SECTION 07625 STAINLESS FLASHING (WITH ROOFING ONLY)
SECTION 07628 EXTERIOR PLAZAS STAINLESS FLASHING
SECTION 07700 ROOF ACCESSORIES
SECTION 07903 INTERIOR JOINT SEALERS (GC#2)
SECTION 08301 SLIDING FIRE DOOR (S)
SECTION 08306 FLOOR HATCHES
SECTION 08330 OVERHEAD COILING DOORS
SECTION 08333 COUNTER SHUTTER
SECTION 08340 OVERHEAD COILING GRILLES
SECTION 08348 MAUNUAL FIRE RATED COUNTER SHUTTERS
SECTION 08400 MAIL SLOT DOORS & FRAMES
SECTION 08420 ALUMINUM AND GLASS DOORS
SECTION 08426 INTERIOR STAINLESS STEEL ENTRANCE DOORS
SECTION 08470 REVOLVING ENTRANCE DOORS
SECTION 08830 UNFRAMED MIRRORS
SECTION 08850 INTERIOR GLASS & GLAZING
SECTION 08860 GLASS RAILINGS
SECTION 08955 TUBULAR ALUMINUM FRAMING
SECTION 08960 INTERIOR ALUMINUM WINDOW WALLS
SECTION 09111 STEEL STUD FRAMING (GC#2 )
SECTION 09216 VENEER PLASTER (GC#2)
SECTION 09251 GYPSUM DRYWALL (GC#2)
SECTION 09275 PREFABRICATED REINFORCED GYPSUM (GFRG)
SECTION 09310 CERAMIC TILE
SECTION 09315 SWIMMING POOL TILE
SECTION 09330 QUARRY TILE
SECTION 09410 PRECAST TERRAZZO
SECTION 09420 EPOXY TERRAZO
SECTION 09521 FABRIC WRAPPED PANELS
SECTION 09550 WOOD STRIP FLOORING
SECTION 09650 RESILIENT FLOORING
SECTION 09665 SHEET FLOORING (LINOLEUM)
SECTION 09677 RESILIENT SPORTS FLOORING
SECTION 09685 GLUE-DOWN CARPETING (FOR INFORMATION ONLY)
SECTION 09703 BITUMINOUS EPOXY COATIING
SECTION 09704 TROWELED EPOXY RESIN FLOORING
SECTION 09781 CONCRETE FLOOR SEALER
SECTION 09900 PAINTING
SECTION 10100 VISUAL DISPLAY BOARDS
SECTION 10120 BULLETIN BOARDS
SECTION 10121 DISPLAY CASES
SECTION 10160 METAL TOILET PARTITIONS
SECTION 10190 CUBICLE CURTAINS AND TRACKS
SECTION 10260 WALL PROTECTIVE DEVICES
SECTION 10350 FLAGPOLES
SECTION 10500 METAL LOCKERS (FOR INFORMATION ONLY)
SECTION 10505 WOOD LOCKERS (FOR INFORMATION ONLY)
SECTION 10520 FIRE EXTINGUISHER CABINETS
SECTION 10601 WIRE MESH PARTITIONS
SECTION 10650 OPERABLE PARTITIONS
SECTION 10675 METAL STORAGE SHELVING
SECTION 10800 METAL TOILET ACCESSORIES
SECTION 11062 PERFORMANCE DRAPERY (FOR INFORMATION ONLY)
SECTION 11063 PERFORMANCE PLATFORM (FOR INFORMATION ONLY)
SECTION 11064 PERFORMANCE RIGGING (FOR INFORMATION ONLY)
SECTION 11065 PERFORMANCE TENSION WIRE GRID MESH
SECTION 11091 COAT & HAT RACKS
SECTION 11132 PROJECTION SCREENS
SECTION 11135 MOTORIZED PROJECTION SCREENS
SECTION 11161 HYDRAULIC DOCK LEVELER
SECTION 11165 DOCK BUMPERS
SECTION 11170 SOLID WASTE HANDLING EQUIPMENT
SECTION 11400 FOOD SERVICE EQUIPMENT (FOR INFORMATION ONLY)
SECTION 11452 APPLIANCES
SECTION 11470 DARKROOM EQUIPMENT (FOR INFORMATION ONLY)

Subcontractor No. B09-09420

SECTION 11480 SCOREBOARD
SECTION 11484 BASKETBALL BACKSTOPS
SECTION 11490 GYMNASIUM EQUIPMENT
SECTION 11964 PERFORMANCE LIGHTING INSTRUMENTS & ACCESSORIES (FOR INFORMATION ONLY)
SECTION 12522 MANUAL ROLL-UP SHADES
SECTION 12525 MOTORIZED ROLL-UP SHADES
SECTION 12550 FIXED FURNITURE (FOR INFORMATION ONLY)
SECTION 12670 ENTRANCE MAT ASSEMBLIES
SECTION 12691 FLOOR MATS & FRAMES
SECTION 12760 TELESCOPING BLEACHERS (FOR INFORMATION ONLY)
SECTION 13030 SAUNA
SECTION 13031 RACQUETBALL COURTS
SECTION 13150 SWIMMING POOL
SECTION 16051 BASIC ELECTRICAL MATERIALS AND METHODS
SECTION 16121 WIRES AND CABLES
SECTION 16131 RACEWAYS AND BOXES

VOLUME #1

------ COVER SHEET
01 GENERAL #2 DRAWING LIST

ARCHITECTURAL

A-002 MATERIAL LEGEND, KEY, GRAPHIC SYMBOLS & ABBREVIATIONS
P-2 SITE SURVEY

BP-01 BUILDERS PAVEMENT SITE PLAN & GENERAL NOTES
BP-02 BUILDERS PAVEMENT LAYOUT PLAN
BP-03 BUILDERS PAVEMENT LAYOUT PLAN
BP-04 BUILDERS PAVEMENT LAYOUT PLAN
BP-05 BUILDERS PAVEMENT LAYOUT PLAN
BP-06 BUILDERS PAVEMENT LAYOUT PLAN
BP-07 BUILDERS PAVEMENT LAYOUT PLAN
BP-08 BUILDERS PAVEMENT PROFILE
BP-09 BUILDERS PAVEMENT PROFILE
BP-10 BUILDERS PAVEMENT PROFILE
BP-11 BUILDERS PAVEMENT CROSS SECTION
BP-12 BUILDERS PAVEMENT CROSS SECTION
BP-13 BUILDERS PAVEMENT SECTION
BP-14 BUILDERS PAVEMENT DETAILS
BP-15 BUILDERS PAVEMENT DETAILS
BP-16 BUILDERS PAVEMENT-PAVEMENT PROFILE
BP-17 BUILDERS PAVEMENT RESTORATION

A-050 SITE PLAN
A-051 PLAZA PARTIAL PLANS
A-052 PLAZA ELEVATIONS
A-053 SITE DETAILS
A-054 SITE DETAILS
A-055 SITE DETAILS
A-056 SITE DETAILS

| DWG. NO. | TITLE |
|---|---|
| A-101 | 2ND SUBCELLAR/B3 FLOOR PLAN |
| A-102 | SUBCELLAR/B2 FLOOR PLAN |
| A-103 | CELLAR/B1 FLOOR PLAN |
| A-104 | GROUND FLOOR PLAN |
| A-105 | 2ND FLOOR PLAN |
| A-106 | MEZZANINE FLOOR PLAN |
| A-107 | 3RD FLOOR PLAN |
| A-108 | 4TH FLOOR PLAN |
| A-109 | 5TH FLOOR PLAN |
| A-110 | 6TH FLOOR PLAN |
| A-111 | 7TH FLOOR PLAN |
| A-112 | 8TH FLOOR PLAN |
| A-113 | 9TH FLOOR PLAN |
| A-114 | 10TH FLOOR PLAN |
| A-115 | 11TH FLOOR PLAN |
| A-116 | 12TH FLOOR PLAN |

Subcontractor No. B09-09420

| | |
|---|---|
| A-117 | 13TH FLOOR PLAN |
| A-118 | 14TH FLOOR PLAN |
| A-119 | MECHANICAL PENTHOUSE PLAN |
| A-120 | ROOF PLAN |
| A-121 | 2ND SUBCELLAR/B3 FLOOR RCP |
| A-122 | SUBCELLAR/B2 FLOOR RCP |
| A-123 | CELLAR/B1 FLOOR RCP |
| A-124 | GROUND FLOOR RCP |
| A-125 | 2ND FLOOR RCP |
| A-126 | 3RD FLOOR RCP |
| A-127 | 4TH FLOOR RCP |
| A-128 | 5TH FLOOR RCP |
| A-129 | 6TH FLOOR RCP |
| A-130 | 7TH FLOOR RCP |
| A-131 | 8TH FLOOR RCP |
| A-132 | 9TH FLOOR RCP |
| A-133 | 10TH FLOOR RCP |
| A-134 | 11TH FLOOR RCP |
| A-135 | 12TH FLOOR RCP |
| A-136 | 13TH FLOOR RCP |
| A-137 | 14TH FLOOR RCP |
| A-140 | INTERIOR FINISHES SCHEDULE |
| A-141 | 2ND SUBCELLAR/B3 FINISH PLAN |
| A-142 | SUBCELLAR/B2 FINISH AND FIXTURE PLAN |
| A-143 | CELLAR/B1 FINISH AND FIXTURE PLAN |
| A-144 | GROUND FLOOR FINISH AND FIXTURE PLAN |
| A-145 | 2ND FLOOR FINISH AND FIXTURE PLAN |
| A-145A | MEZZANINE FLOOR FINISH AND FIXTURE PLAN |
| A-146 | 3RD FLOOR FINISH AND FIXTURE PLAN |
| A-147 | 4TH FLOOR FINISH AND FIXTURE PLAN |
| A-148 | 5TH FLOOR FINISH AND FIXTURE PLAN |
| A-149 | 6TH FLOOR FINISH AND FIXTURE PLAN |
| A-309 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-310 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-311 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-312 | EXTERIOR WALL PARTIAL ELEVATIONS -- HIGHRISE |
| A-313 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-314 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-315 | EXTERIOR WALL PARTIAL ELEVATIONS - HIGHRISE |
| A-316 | EXTERIOR WALL PARTIAL ELEVATIONS - EXT. STONE PATTERN |
| A-320 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-321 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-322 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-323 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-324 | EXTERIOR WALL PARTIAL SECTIONS - LOWRISE |
| A-330 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-331 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-332 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-333 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-334 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-335 | EXTERIOR WALL PARTIAL SECTIONS - HIGHRISE |
| A-340 | EXTERIOR WALL PARTIAL PLANS - NORTH AND WEST LOWRISE |
| A-341 | EXTERIOR WALL PARTIAL PLANS - SOUTHWEST LOWRISE |
| A-342 | EXTERIOR WALL PARTIAL REFL. CLG. PLAN - NORTH AND WEST LOWRISE |
| A-350 | EXTERIOR WALL DETAILS - BRICK SCHEDULE |
| A-351 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-351A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-352 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-353 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-354 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-355 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-356 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-357 | EXTERIOR WALL PLAN DETAILS - LOW RISE |
| A-357A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-358 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-358A | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-359 | EXTERIOR WALL PLAN DETAILS - LOWRISE |
| A-360 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-360A | EXTERIOR WALL SECTION DETAILS - LOWRISE |

Subcontractor No. B09-09420

| | |
|---|---|
| A-361 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-362 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-363 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-364 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-365 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-365A | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-366 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-367 | EXTERIOR WALL SECTION DETAILS - LOWRISE |
| A-415 | FIRE STAIR DETAILS |
| A-416 | FIRE STAIR DETAILS |
| A-420 | ELEVATOR HOISTWAY PLANS |
| A-421 | ELEVATOR HOISTWAY PLANS |
| A-422 | ELEVATOR HOISTWAY SECTIONS |
| A-423 | ELEVATOR HOISTWAY PLANS |
| A-425 | THEATER ELEVATOR (HPE-4) CAB ELEVATIONS |
| A-426 | SPORTS ELEVATOR (HPE - 14) CAB ELEVATIONS |
| A-427 | FACULTY ELEVATOR (P E-1, PE-2, PE-3) CAB ELEVATIONS |
| A-428 | STUDENT ELEVATOR (PE-5 THRU PE-11) CAB ELEVATIONS |
| A-430 | ELEVATOR DETAILS |
| A-431 | ELEVATOR DETAILS |
| A-435 | ESCALATOR SECTIONS |
| A-437 | ESCALATOR DETAILS B2 TO GROUND FLOOR |
| A-440 | TOILET ROOM PLANS |
| A-441 | TOILET ROOM PLANS |
| A-442 | TOILET ROOM ELEVATIONS |
| A-443 | TOILET ROOM ELEVATIONS |
| A-444 | TOILET ROOM ELEVATIONS |
| A-445 | TOILET ROOM PLANS & ELEVATIONS |
| A-446 | TOILET ROOM PLANS & ELEVATIONS |
| A-447 | TOILET ROOM TILE DETAILS |
| A-450 | LOADING DOCK AREA PLAN |
| A-451 | LOADING DOCK AREA SECTIONS |
| A-452 | LOADING DOCK AREA DETAILS |
| A-460 | PUBLIC STAIR #1, PLANS & DETAILS |
| A-461 | PUBLIC STAIR #3, PLANS & DETAILS |
| A-462 | PUBLIC STAIR #4, PLANS & DETAILS |
| A-463 | TYPICAL ATRIUM STAIR PLANS, PUBLIC STAIRS #2, 5-8 |
| A-464 | ATRIUM RAILING PLANS |
| A-465 | PUBLIC STAIR SECTIONS |
| A-466 | PUBLIC STAIR SECTIONS |
| A-467 | PUBLIC STAIR & RAILING DETAILS |
| A-468 | PUBLIC STAIR & RAILING DETAILS |
| A-469 | PUBLIC STAIR #1 DETAILS |
| A-470 | THEATRE AREA DETAIL PLANS |
| A-471 | THEATRE AREA DETAIL PLANS |
| A-475 | MISCELLANEOUS STEEL DETAILS |
| A-476 | MISCELLANEOUS STEEL TYPICAL DETAILS |
| A-545 | STUDENT ELEVATOR LOBBY ELEVATIONS |
| A-551 | ELEVATIONS @ CLASSROOM CORRIDOR |
| A-552 | LECTURE HALL - 3RD FLOOR PLAN |
| A-553 | LECTURE HALL -3RD AND 4TH FLOOR PLAN |
| A-554 | LECTURE HALL -5TH FLOOR PLAN |
| A-555 | LECTURE HALL - SECTIONS |
| A-556 | LECTURE HALL RCP |
| A-557 | LECTURE HALL - SECTIONS |
| A-561 | SUITE ENTRY DETAILS |
| A-563 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-564 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-565 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-566 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-567 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-568 | 14TH FLOOR ELEVATIONS/SECTIONS |
| A-601 | INTERIOR MASONRY DETAILS - POOL/GYM |
| A-602 | INTERIOR MASONRY DETAILS - RECITAL HALL & THEATER |
| A-603 | CERAMIC TILE DETAIL @ POOL |
| A-604 | INTERIOR MASONRY DETAILS |
| A-605 | RECITAL HALL/THEATER DETAILS |



CR0790

Subcontractor No. B08-09420

| | |
|---|---|
| A-606 | INT. MASONRY PLAN DETAILS - SPORTS & THEATER ATRIA |
| A-607 | INT. MASONRY PLAN DETAILS - SPORTS, THEATER & GROUND FLOOR ATRIA |
| A-608 | INTERIOR BRICK PLAN DETAILS |
| A-609 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-610 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-611 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-612 | INTERIOR BRICK SECTION DETAILS - BASEMENT ATRIA |
| A-613 | INTERIOR MASONRY PLAN DETAILS -24TH ST. LOBBY |
| A-614 | INTERIOR MASONRY PLAN DETAILS - GR. & 2ND FLOOR |
| A-615 | INTERIOR MASONRY SECTION DETAILS - 24TH ST. LOBBY |
| A-616 | INTERIOR MASONRY DETAILS - ENTRY HALL |
| A-618 | FIN TUBE ENCLOSURE DETAILS |
| A-620 | ATRIUM WALL DETAILS |
| A-621 | ATRIUM WALL DETAILS |
| A-622 | ATRIUM WALL DETAILS |
| A-623 | ATRIUM WALL DETAILS |
| A-624 | ATRIUM WALL DETAILS |
| A-625 | ATRIUM WALL DETAILS |
| A-626 | ATRIUM WALL DETAILS |
| A-630 | FOOD COURT BRIDGE DETAILS |
| A-635 | MISCELLANEOUS POOL DETAILS |
| A-637 | TERRAZZO DETAILS |
| A-640 | DISPATCH DESK |
| A-641 | DISPATCH DESK |
| A-642 | GYM CONCESSIONS |
| A-643 | DISPATCH DESK |
| A-734 | CEILING DETAILS |
| A-735 | CEILING DETAILS |
| A-736 | CEILING DETAILS |
| A-737 | CEILING DETAILS |
| A-738 | LIGHT FIXTURE/CEILING DETAILS |
| A-739 | CEILING DETAILS |
| A-740 | INTERIOR COLUMN ENCLOSURES |
| A-741 | INTERIOR COLUMN ENCLOSURES |
| A-742 | MISCELLANEOUS DRYWALL DETAILS |
| A-743 | MISCELLANEOUS DRYWALL DETAILS |
| A-744 | MISCELLANEOUS DRYWALL DETAILS |
| A-745 | INTERIOR WINDOW DETAILS |
| A-746 | INTERIOR WINDOW DETAILS |
| A-747 | ROLL-DOWN GRILLE - COFFEE SHOP |
| A-750 | PARTITION DETAILS - CLASSROOM CORRIDORS |
| A-751 | CEILING/SOFFIT DETAILS |
| A-752 | PARTITION DETAILS - CLASSROOM CORRIDORS |
| A-753 | PARTITION DETAILS - LOBBY |
| A-755 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-756 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-757 | MISCELLANEOUS DETAILS - LECTURE HALL |
| A-757A | MISCELLANEOUS DETAILS - CLASSROOM CORRIDOR |
| A-758 | MISCELLANEOUS DETAILS - CLASSROOM |
| A-759 | MISCELLANEOUS DETAILS - CLASSROOM |
| A-801 | MISCELLANEOUS FLOOR DETAILS |
| A-810 | RECITAL HALL STAGE AND ANTE ROOM DETAILS |
| A-811 | RECITAL HALL ACOUSTIC PANEL DETAILS |
| A-812 | RECITAL HALL ACOUSTIC PANEL DETAILS |
| A-813 | RECITAL HALL MISCELLANEOUS DETAILS |
| A-814 | RECITAL HALL CONTROL ROOM SECTIONS/DETAILS |
| A-821 | MISC. DETAILS, FOOD SERVERY |
| A-822 | MISC. DETAILS, FOOD SERVERY |
| A-825 | MISC. DETAILS, FOOD SERVERY |

**SWIMMING POOL DRAWINGS**

| | |
|---|---|
| SP-1.0 | POOL PLAN AND SECTIONS |
| SP-1.1 | POOL AREA DETAILS |
| SP-2.0 | MECHANICAL PLAN & ELEVATIONS |
| SP-2.1 | POOL MECHANICAL DETAILS |

**THEATER DRAWINGS (FOR INFORMATION ONLY)**

| | |
|---|---|
| TE-01A | PLATFORMS |
| TE-01B | PLATFORMS |
| TE-02 | PERFORMANCE EQUIPMENT STUDIO THEATRE |
| TE-03 | THEATRE EQUIPMENT RECITAL HALL |

Subcontractor No. **B0S-09420**

| | |
|---|---|
| S-210 | COLUMN SCHEDULE 1 |
| S-211 | COLUMN SCHEDULE 2 |
| S-212 | WIND BRACING ELEVATIONS |
| S-213 | TRUSS ELEVATIONS 1 |
| S-214 | TRUSS ELEVATIONS 2 |
| S-215 | TYPICAL SECTIONS AND DETAILS |
| S-215A | SUPERSTRUCTURE TYPICAL DETAILS - 2 |
| S-216 | SUPERSTRUCTURE SECTIONS AND DETAILS (1) |
| S-217 | SUPERSTRUCTURE SECTIONS AND DETAILS (2) |
| S-218 | SUPERSTRUCTURE SECTIONS AND DETAILS (3) |
| S-219 | SUPERSTRUCTURE SECTIONS AND DETAILS (4) |
| S-220 | SUPERSTRUCTURE SECTIONS AND DETAILS (5) |
| S-221 | SUPERSTRUCTURE SECTIONS AND DETAILS (6) |
| S-222 | SUPERSTRUCTURE SECTIONS AND DETAILS (7) |
| S-223 | SUPERSTRUCTURE SECTIONS AND DETAILS (8) |
| S-224 | SUPERSTRUCTURE SECTIONS AND DETAILS (9) |
| S-225 | PARAPET SECTIONS AND DETAILS 1 |
| S-226 | PARAPET SECTIONS AND DETAILS 2 |
| S-227 | PARAPET SECTIONS AND DETAILS 3 |
| S-228 | SUPERSTRUCTURE SECTIONS AND DETAILS (10) |
| S-229 | SUPERSTRUCTURE SECTIONS AND DETAILS (11) |
| S-230 | SUPERSTRUCTURE SECTIONS AND DETAILS (12) |
| S-231 | SUPERSTRUCTURE SECTIONS AND DETAILS (13) |
| S-300 | EXTERIOR GIRT SYSTEM - NORTH AND WEST ELEVATIONS |
| S-301 | EXTERIOR GIRT SYSTEM - SOUTH AND EAST ELEVATIONS |
| S-302 | SLOPED EXTERIOR COLUMN GEOMETRY (1) |
| S-303 | SLOPED EXTERIOR COLUMN GEOMETRY (2) |
| S-304 | SLOPED EXTERIOR COLUMN GEOMETRY (3) |
| S-305 | SLOPED EXTERIOR GIRT GEOMETRY (1) |
| S-306 | SLOPED EXTERIOR GIRT GEOMETRY (2) |
| S-307 | SLOPED EXTERIOR GIRT GEOMETRY (3) |
| S-308 | SLOPED EXTERIOR GIRT GEOMETRY (4) |

**CON EDISON DRAWINGS**

| | |
|---|---|
| TRANSFORMER VAULT LAYOUT UNDER SIDEWALK | 3/9/98 |
| TRANSFORMER VAULT LAYOUT SECTIONS AND DETAILS | 3/9/98 |
| TRANSFORMER VAULT LAYOUT REINFORCEMENT PLAN | 3/9/98 |
| REMOVABLE P.C. ROOF SLAB SIDEWALK - DETAILS | 3/9/98 |

**THE FOLLOWING BID PACKAGE DRAWINGS ARE INCLUDED AS PART OF THE CONTRACT DOCUMENTS:**

| | |
|---|---|
| CONTRACT #3: | DUCTWORK |
| CONTRACT #6: | PLUMBING |
| CONTRACT #7: | SPRINKLER AND STANDPIPE WORK |
| CONTRACT #10: | HEATING, VENTILATION AND AIR CONDITIONING WORK |
| CONTRACT #11: | ELECTRICAL WORK |
| CONTRACT #12: | FIRE ALARM SYSTEM |
| CONTRACT #13: | AUTOMATIC TEMPERATURE CONTROLS |

 

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT B
SCOPE OF WORK

G. M. Crocetti, Inc.

TRADE: Precast Terrazzo, Epoxy Terrazzo, Interior Stonework

A. GENERAL CONDITIONS

1. The Subcontractor represents that he is familiar with, and has expertise in the scope of this work. The Subcontractor agrees that this Subcontract Agreement includes all work for that scope as may be required to make a complete job which may be fully defined in the Contract Documents.

2. The Subcontractor shall comply with all of the legal regulations including OSHA safety regulations and of other governmental agencies having jurisdiction concerning the work of this Subcontract. The Subcontractor shall deliver all notices and comply with all laws, ordinances, codes, rules and regulations bearing on the conduct of the work such as notifying local agencies and other Governmental agencies having jurisdiction.

3. The Subcontractor shall be fully responsible for all layouts of his work. Axis lines to be provided by others. This subcontractor shall coordinate with the steel shop drawings and flag any deviations. Steel surveys will be provided to this subcontractor for review. Any deviation from the contract documents will be brought to the attention of the General Contractor.

4. The Subcontractor shall collect all rubbish, scrap and other debris resulting from this Subcontractor's work, and dispose as per contract documents.

5. The Subcontractor shall place and relocate his office trailers or shanties when and where directed. It is understood that the Subcontractor is responsible for acquisition, maintenance and subsequent removal of all utility and telephone services required for his office trailers. Each structure this Subcontractor maintains must contain an appropriate number of fire extinguishers.

6. Any temporary openings required for subsequent installation of SubContractors' equipment must be brought to the attention of the General Contractor prior to completion of the pertinent work in the area of the opening needed. Failure to request access will result in the Subcontractor assuming all costs involved in the subsequent movement of the equipment, etc.

7. The Subcontractor must take special care in stocking own material on floors to allow other trades free access to their work and not to overload the slabs.

8. The Subcontractor will provide protection necessary to safeguard his own work, as well as the work of other trades, from damages by his own operations.

9. The Subcontractor has visited and carefully examined the project site and is familiar with the existing conditions and difficulties that may affect the execution of own work. The Subcontractor agrees that he will take all necessary steps to avoid damages to the existing areas. Any damages caused by this Subcontractor will be repaired by Subcontractor at no additional cost to the General Contractor. The Subcontractor is cautioned that due to the location of this job he may encounter certain areas of special coordination involving traffic congestion, building access, security requirements, material delivery, etc. It is understood that the Subcontractor is aware of these conditions and that the Subcontractor will not attempt to seek additional monies for hardships that may arise due to his having to take special measures and precautions regarding the same.




B. SCOPE OF WORK

Without restricting the generality of work which shall be performed within the contract price. It is clearly understood and agreed that the Subcontractor shall provide all material, labor, trucking, hoisting, fees, engineering, scaffolding, power hookups, protection, shop drawings, permits, templates, quality, assurance, layout, warranties, guarantees, submittals, equipments, supervision, insurance, etc., necessary for the furnishing and installation of all specified and related work contained herein in accordance with the Contract Drawings, Specifications, Addendums, 1, 2 and 3.

The Scope of Work shall include, but not be limited to, all the work in the following Specification Section (s), except such work as may be specifically excluded in Paragraph "C" "WORK NOT IN SUBCONTRACT".

Specification Section

| | |
|---|---|
| 04450 | Interior Stonework |
| 09410 | Precast Terrazzo |
| 09420 | Epoxy Terrazzo |

Also included in this contract are the requirements of the following specification(s) as they pertain to this subcontractors work.

| | |
|---|---|
| 03300 | Cast-in-Place Concrete |
| 04210 | Brick Masonry |
| 04440 | Stone Testing |
| 04450 | Exterior Stone Work |
| 05510 | Metal Stairs |
| 05700 | Ornamental Metal |
| 06400 | Architectural Woodwork |
| 06420 | Wood Paneling |
| 07900 | Joint Sealers |
| 09250 | Gypsum Drywall |
| 09685 | Glue-Down Carpeting |
| Division 15 | Plumbing – Sinks and Fitting |

Subcontractor shall be responsible for examining all of the Documents listed on the "List of drawings and Specifications (EXHIBIT A) and all items related to this subcontractor's work and called for in these documents shall be included in Subcontract price.

In addition to the above Specification. this Subcontractor's work will include but not be limited to the following items, highlights, clarifications and/or modifications.

1. This Subcontractor shall furnish and install all epoxy terrazzo complete in strict accordance with contract drawings, specifications and addendums 1 & 2 including but not limited to:
   a. Epoxy terrazzo floors where scheduled
   b. Crack suppression membrane
   c. Precast terrazzo bases
   d. Divider and control strips
   e. Colorants and primers
   f. Cleaners and sealers
   g. Field constructed mock-up
   h. The use of specified manufacturers
   i. Sloping to drains

2. This Subcontractor shall furnish and install precast terrazzo complete in strict accordance with contract drawings, specifications and addendums 1 & 2 including but not limited to:
   a. Stair treads and platforms
   b. Mortar setting materials
   c. Integral abrasive strips for stair treads

  Initials 

d. Food service tray slide and food guard top
e. The use of specified manufacturers
f. Connecting, anchoring means and method to steel stairs including anchoring devices and all other appurtenances

3. This Subcontractor shall furnish and install all interior stonework complete in strict accordance with contract drawings, specifications and addendums 1 & 2, including but not limited to:

a. Interior stonework as scheduled in specification including brick wall coping, counter tops, security desk, atrium coffee bar, theater-concession, front counter, dispatch desk, gym concessions, toilet room vanities, etc.
b. Mortar setting materials
c. Shop fabrication and finishing
d. Anchoring devices
e. Grouting and pointing joints
f. The use of specified manufacturers

4. In general this Subcontractor shall furnish and install all items mentioned in "Scope of Work" which is required by Contract #16 in quantities shown on drawings.

5. Subcontract price includes allowances of 10,000 SF for repairing random cracks and 20,000 SF for flash patching utilizing a silca graded sand with epoxy in ¼" thickness as indicated in addendum #1.

6. Subcontractor shall furnish and install all joint sealers if necessary integral with own work in strict accordance with contract drawings, specifications, and addendums 1 & 2.

7. Subcontract Price includes all material hoisting charges as indicated in Supplemental General Conditions of Contract Documents.

C. WORK NOT IN SUBCONTRACT

1. Ceramic Tile
2. Quarry Tile
3. Protection
4. Rubbish Removals (handwritten, initialed)

D. TIME OF PERFORMANCE

This Subcontractor understands the Project Schedule and phasing plan provide by owner. Subcontractor shall immediately expedite the submission of shop drawing samples and ordering of materials and equipment so that work of this Subcontract shall be installed in sufficient time to comply with the Project Construction Schedule. This Subcontractor agrees that the following specific scheduling intervals shall be maintained by him and coordinated with other trades provided that the work of others has advanced sufficiently to permit the sequencing as called for:

1. Work under this Subcontract shall commence immediately upon receipt of instructions from the General Contractor and shall proceed when and where directed, with sufficient labor and manpower, to allow the entire Project to be completed in accordance with the Project Construction Schedule. The work under this Subcontractor shall follow all interim schedules that may be issued by the General Contractor, as the job conditions require.

2. Due to the aggressive schedule provided by owner, all drawings, schedules, literature, samples, certifications, schedule of values, etc. as required by specifications shall be submitted immediately so as not to delay project schedule.

3. The Subcontractor understands that work of this trade may not be continuous and that he may be required to work out of sequence and/or leave a portion of work out due to coordination at the direction of the General Contractor. There shall be no charges for "comeback time" or out of sequence work.

4. The Subcontractor shall be prepared to commence his work as directed by General Contractor provided that the work of others has advance sufficiently to permit such a start and shall be capable

of completing his work in accordance with the Project Construction Schedule.

E. BOND

The Subcontractor shall furnish at Subcontractor's expense a Performance and Payment Bond in the full amount of this Subcontract. Performance and payment bonds for subcontractors work shall be provided by the subcontractor and are to be issued by a U.S. Department of Treasury listed bonding company acceptable to the Contractor for the full amount of the subcontract. The cost is to be born by the subcontractor and is included in the amount of this Subcontract Agreement.

F. ALTERNATES

**The following Alternates shall be excluded when required by the General Contractor and shall be inclusive of furnishing and installing all materials, labor overhead and profit, taxes, equipment, trucking, handling, engineering and layout, hoisting, scaffolding, appliances, permits, insurance, delivery and supervision required for a complete Scope of Work pursuant to contract documents and throughout the course of construction and shall be valid for additions to or deletions from contract amount.**

1. In the event that subcontractor is required to furnish and install all epoxy terrazzo flooring and bases at office corridors on floors 3-13 as indicated in contract documents;

   ADD: $625,000.00

2. In the event that subcontractor is required to furnish and install all terrazzo flooring and bases at classroom corridors on floors 3-13 as indicated in contract documents;

   ADD: $1,050,000.00

Subcontractor No. **B09-09420**



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT C
INSURANCE AND INDEMNIFICATION RIDER

Prior to commencement of any work under this Contract and until all obligations under this contract are fulfilled, the subcontractor and each and every lower tier Subcontractor of the Subcontractor shall, at its sole expense, maintain the following insurance on its own behalf, and furnish to Trataros Construction, Inc. (hereinafter referred to as "Contractor"), certificates of insurance evidencing same and reflecting the effective date of such coverage as follows:

The term "Subcontractor" as used in this insurance rider shall mean and include Subcontractors of every tier.

Subcontractor shall, at its own expense, maintain in effect until final completion and acceptance with insurers and through policy forms satisfactory to Contractor, minimum insurances as described below. Before permitting any lower tier Subcontractor to perform any work under this subcontract, Subcontractor shall require that Contractor be furnished satisfactory evidence that the lower tier Subcontractor maintains insurance similar to that required below.

Subcontractor shall procure and maintain the following minimum insurance coverages:

The following limits or specific coverages do not restrict or limit any contractual obligation between the parties as may be defined elsewhere. Contractor failure to identify insurance deficiencies does not relieve the Subcontractor from any insurance obligations.

I) WORKERS COMPENSATION AND OCCUPATIONAL DISEASE INSURANCE & EMPLOYERS LIABILITY INSURANCE covering all Subcontractors' employees directly or indirectly engaged in the performance of the subcontract. The latter insurance shall not provide less that $1,000,000 including.

- USL&H - 'if any' basis, where applicable
- Include all states endorsement, where applicable
- All insurers shall agree to waive the right of subrogation against the Owner and Contractor
- Certificate must clearly identify that coverage applies in state of operation.

The Subcontractor shall provide a copy of the "Employer's First Report of Injury" or its equivalent to Contractor within thirty (30) days of any injury or illness to any employee of the contractor arising out of, or alleged to have arisen out of or during the course of work performed on this project.

II) DISABILITY INSURANCE: As required by New York State Law

III) GENERAL LIABILITY

A) Commercial General Liability Form
1988 ISO Occurrence Form or equivalent (identify form # and edition date on certificate)

Limits: $5,000,000 - Each occurrence for Bodily Injury and Property Damage
$5,000,000 - Products, Completed Operations Aggregate Limit
$5,000,000 - General Aggregate* Limit (other than Products/Compiled Operations)
$5,000,000 - Personal Injury Liability

*General Aggregate MUST include per project endorsement (must evidence on certificate).
Above limits will be revised to coincide with Owner's requirements if necessary.

Policy coverage terms and conditions to include:

1) Premises/Operations - must cover all work to be performed by Subcontractor & their Subcontractors.
2) Contractual Liability written specifically for this contract.
3) Products/Completed Operations must include a two year extension beyond acceptance date (refer to attached wording).
4) Broad Form Property Damage including completed operations.
5) Independent Contractors.
6) Blanket Explosion, Collapse & Underground Property Damage Liability.
7) Employees as additional insureds.
8) Supplementary payments in addition to limit of liability.
9) Contractual exclusion pertaining to operations performed within 50' of railroad must be eliminated (if applicable)
10) Additional Insureds: See Item VIII.15 for specific listing of necessary additional insured.
    A) Owner
    B) Contractor
    C) Other
11) Any deductible causes, exclusions or special endorsements must be approved by contractor prior to Inclusion.
12) Insuring agreement to read "to pay on behalf of".
13) Waiver of subrogation for Owner, Contractor, its director, officers, employees, subsidiaries and affiliates.
14) Severability of interests. (cross liability)

Subcontractor No. B09-09420

IV) COMMERCIAL BUSINESS AUTOMOBILE

Covering all owned, non-owned & hired vehicles

Limit: $5,000,000 any one loss for Bodily Injury (including death) & Property Damage combined.
- Contractual liability
- All insurers agree to waive their rights of subrogation against Owner and Contractor, its directors, officers, employees, subsidiaries and affiliates.

V) BUILDER'S RISK/INSTALLATION FLOATER

Where an Off Project Site Property exposure exists, the Contractor at its sole expense shall furnish to Contractor Certificates of Insurance and other required documentation evidencing the following coverage which shall provide for the interests of Contractor To be named as Loss Payees and shall contain a provision requiring the insurance carriers to waive their rights of subrogation against all indemnities named in the contract.

NAMED INSURED: Owner, contractor & Subcontractor, AIMA
LIMITS OF LIABILITY: Amount of subcontract (unless otherwise specified in owner's specifications)
DEDUCTIBLE: $500 per occurrence

COVERAGE INCLUDING:

1. 60 days notice of cancellation, non-renewal or material policy change
2. "All risk" of loss including flood, earthquake and earth movement
3. Replacement cost valuation
4. Transit limit to offsite storage
5. Agreed amount clause
6. Property in the insured's care, custody and control covered
7. Testing/processing shall be a covered peril.
8. Electrical injury/damage shall be a covered peril.
9. Waive rights of subrogation against contractor and owner.
10. Coverage to apply until machinery/equipment, etc. has been installed and been accepted as satisfactory, coverage to apply after materials have become a physical part of realty.
11. Error, omission or deficiency in design, workmanship or materials shall be considered a covered peril.
12. Exclusion pertaining to property, while it is on premises owned, leased or operated by the insured shall be deleted.
13. Full theft coverage without exception.
14. Permission granted to complete and occupy (if applicable)
15. Eliminate underground exclusion.
16. Standard city wording or special cancellation clauses, when mandated.

VI) POLLUTION LIABILITY INSURANCE

When applicable, Subcontractor shall furnish evidence that it has provided Pollution Liability Insurance covering all lead, asbestos and pollution operations with limits not less than $1,000,000* each occurrence combined singe limit for bodily injury, property damage and clean-up costs including completed operations (5 year continuation beyond acceptance), broad form contractual (including coverage for third party over claims), and independent contractors coverage. If policy contains a general aggregate, this aggregate must apply on a per project basis, all of which must be evidenced on certificate. All insurers agree to waive their rights of subrogation against the additional insureds and the Contractor and its directors, officers, employees, subsidiaries, and affiliates.

- Defense costs must be payable in addition to limit of liability
- Any deductibles, clauses, exclusions or special endorsements must be approved by Contractor prior to inclusion.
- Coverage must include on-site, off-site and in-transit exposures.
- Policy to read "to pay on behalf of" (in lieu of indemnify).
- Must include loading and unloading coverages.
- Must be written on occurrence form.
- Policy to be submitted to the Contractor for review and approval.
- Higher limit to be obtained, if mandated.

Note: The Contractor, at its option, may require a separate contractor's protective liability policy in Contractor's name (at Subcontractor's expense)

VII) ADDITIONAL INSURED ENDORSEMENTS:

Insurance policies specified in III and IV above shall be endorsed to name Owner and Contractor, its directors, officers, employees, subsidiaries and affiliates as additional insureds, and shall stipulate that this insurance is primary, that any other insurance or self-insurance maintained by Owner and Contractor be excess only and shall not be called upon to contribute with this insurance. ISO Additional Insurance Endorsement form number CG2010 1185, Contractors Form B must be utilized and accompany the Certificate of Insurance.

NOTE: Contractor at its option may require a separate contractor's protective liability policy in contractor's name (at subcontractor's expense.)

VIII) APPLICABLE TO ALL INSURANCES:

1. Higher limits required depending upon particulars of each specific contract may be obtained. The above limits may be written by combination of CGL & Umbrella policies.

2. Certificates must include an insurer obligation to provide sixty (60 days) prior written notice of cancellation, material change and non-renewal by certified mail, return receipt requested.

3. Certificates and endorsements as required must be submitted to Contractor prior to commencement of any work.

4. Contractor has the right but not the duty to receive copies of all insurance policies upon request. Policies shall not contain any exclusion that are unacceptable to Contractor. If requested by Contractor, all policies must be certified by an insurance carrier as being true and complete.

5. Contractor must be provided updated renewal certificates and required endorsement as appropriate. Failure of Contractor to request renewal certificates or endorsements does not relieve the Subcontractor from the obligation to maintain such insurances as required herein.

6. Any deductibles or self-insured retention included within any of the above insurances shall be the responsibility of the Subcontractor.

7. Owner and Contractor have no obligation for premium payments. Subcontractor acknowledges that any sums necessary for premium payment related to this Subcontract will not be in addition to the price of this Subcontract.

8. If at any time during the period of this subcontract, insurance as required is not in effect or proof thereof is not provided to Contractor, Contractor shall have the option to:

   a) Direct the Subcontractor to suspend work with no additional cost of extension for time due on account thereof; or

   b) Treat such failure as a material breach/default in respect of the Subcontract.

9. If subcontracted operations involve or are anticipated to involve hazardous operations including but not limited to lead, pollution or asbestos liability, special insurance must be implemented for same. Subcontractor will be responsible for premium.

10. If required by Owner, Contractor may require Subcontractor to carry an Installation Floater covering materials to be installed under Subcontractor's portion of the work. Contractor will advise Subcontractor of same by addendum.

11. Contractor may, at its option, allocate to Subcontractor its proportionate share of the cost of obtaining Builder's Risk (All Risk) insurance, as required by Owner.

12. Claims made policies are not acceptable.

13. The amount of insurance contained in aforementioned insurance coverages, shall not be construed to be a limitation of the liability on the part of the Subcontractors or any of their Subcontractors in any tier.

14. The subcontractor shall file certificates of insurance prior to the commencement of work and/or payment with the Contractor which shall be subject to the Contractor's approval of adequacy of protection and the satisfactory character of the Insurer.

15. Trataros Construction, Inc., Baruch College, D.A.S.N.Y., C.U.N.Y., TDX Construction Corp. and The University Construction Fund all must be evidences as Additional Insureds in accordance with all contract obligations.

IX) HOLD HARMLESS AGREEMENT/INDEMNIFICATION AGREEMENT TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN.

To the fullest extent permitted by law, the Subcontractor shall indemnify, hold harmless and defend the Contractor, Owner and all of their agents, directors and employees from and against all claims, damages, demands, losses, expenses, causes of action, suits or other liabilities, (including all costs and reasonable attorney' fees), arising out of or resulting from the performance of Subcontractor's Work under the Subcontract, ' provided any such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless whether it is caused in part by a party indemnified hereunder. This indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under any workers' compensation acts, disability benefits acts or other employee benefits acts. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents.

X) WAIVER OF SUBROGATION

The General Liability, Automobile Liability, Employers' Liability and Umbrella Liability policies are required to contain a waiver of all subrogation rights of both the subcontractor and their insurance Company against Trataros Construction Inc. The Certificate of Insurance shall indicate that such waiver is in effect.





Initials 

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT D
PARTIAL LIEN WAIVER

GREETINGS: KNOW YE, that_______________________________________________________, (Subcontractor supplier) a corporation organized and existing under and by virtue of the laws of the State of___________________, with an office and principal place of business in________________, acknowledges receipt of payment for all labor, materials or services up to and including the date of________________referred to hereinafter as the "release date" paid by TRATAROS CONSTRUCTION INC, a corporation organized an existing under the laws of the State of NEW YORK with an office and principal place of business in BROOKLYN, has to the "release date" remised, released and forever 'discharged, and by these presents does for itself and its successors, remised release and forever discharge TRATAROS CONSTRUCTION INC and _________________________ (surety) a corporation organized and existing under the laws of the New York with an office and principal place of business in ____________, its successors, heirs, executors and administrators, of and from all, and all manner of action and actions, cause and causes of actions, suits debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, , trespasses, damages, Judgments, extents, executions, claims and demands whatsoever, in laws, in admiralty, or in equity which against the said TRATAROS CONSTRUCTION INC and said _________________________, said ever had, now had or which it or its successors, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the "release date", and especially in connection with any and all claims of any nature whatsoever arising out of the construction project known as located at in the Town of and the State of___________________.

FURTHER, and in addition to the foregoing, said _____________ does hereby to the "release date" forever waive, relinquish and release any mechanic's, materialman's or like liens, and all claims of liens it now has, may have or may obtain in the future upon a piece of land and all the buildings thereon standing, known as______________________________ located at _________________________ in the Town of _____________________ and the State of _______________________ **upon receipt of payment due on said release date. Release is contingent of payment.**

FURTHER and in addition to the, foregoing, said ______________________________ does hereby expressly release, waive and relinquish any and all right or claim it may now have or may hereafter have under the Surety Labor and Material Payment Bond provided on said project by TRATAROS CONSTRUCTION INC as principal and the ________________________________________________ as surety.

IN WITNESS WHEREOF, the said _____________________________________ has caused its corporate seal to be hereunto affixed and these presents to be signed by its___________________________ on the day of ____________________, nineteen hundred and ninety.

Signed, sealed and delivered
in the presence of:

______________________________________________ BY

______________________________________________ Its

STATE OF

SS:

COUNTY OF

On this the __________ day of ___________, 19__,before me, ____________________________the undersigned officer, personally appeared _____________________________ who acknowledged himself to be the ____________________ of ______________________ and to he duly authorized by said corporation to execute the foregoing document on behalf of said corporation, and that he, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing" the name of the corporation by himself as ________________________________________.

In witness whereof I hereunto set my hand and official seal.

________________________________________
Commissioner of the Superior Court/Notary Public





Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT E
FINAL RELEASE

TO ALL WHOM THESE PRESENTS SHALL COME OR MAY CONCERN.

GREETINGS: KNOW YE, that ______________________________ (A supplier/Subcontractor to our Subcontractor/Supplier) a corporation organized and existing under and by virtue of the laws of the State of______________with an office and principal place of business in ______________, for and in consideration of the sum of one dollar ( $100) lawful money of the United States of America and other good consideration to it in hand paid by ______________ a corporation organized and existing under the laws of the State of - with an office and principal place of business in tie receipt whereof is acknowledged, has remised released and forever discharged, hereby and by these presents does for itself and its successors, remise, release and forever discharge TRATAROS CONSTRUCTION INC a corporation organized and existing under the laws of the State of New York and ______________ (surety) a corporation organized and existing under the laws of the State of ______________with an office and principal place of business in ______________, its successors, heirs, executors and ad. administrators of and from all, and all manner of action and actions, cause and causes of actions, suits, debts, dues, suings of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, execution, claims and demands whatsoever, in laws, in admiralty, or in equity which against the said TRATAROS CONSTRUCTION INC, and said ______________.NY . said ever had, now had or which: it or its successors, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of tie world to the day of the date of these presents, and especially in connection with any and all claims of any nature whatsoever arising out of the construction project known as______________ located at ______________ in the Town of ______________ and the State of ______________.

FURTHER and in addition to the foregoing, said______________ does hereby forever waive, relinquish and release any mechanic's, materialman's or like liens, and all claims of liens it now has, may have or may obtain in the future upon a piece of land and all the buildings thereon standing, known as ______________, situated in ______________.

FURTHER and in addition to the, foregoing, said ______________ does hereby expressly release, waive and relinquish any and right or claim it may now have or may hereafter have under the Surety Labor and Material Payment Bond provided on said project by TRATAROS CONSTRUCTION INC as principal and the ______________ as surety.

IN WITNESS WHEREOF, the said ______________ has caused its corporate seal to be hereunto affixed and these presents to be signed by its______________ on the day of ______________, nineteen hundred and ninety.

Signed, scaled and delivered
in the presence of:

______________ BY

______________ Its

STATE OF

SS:

COUNTY OF

On this the __________ day of __________, 19__,before me, ______________the undersigned officer, personally appeared ______________ who acknowledged himself to be the ______________ of ______________ and to be duly authorized by said corporation to execute the foregoing document on behalf of said corporation, and that he, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing" the name of the corporation by himself as ______________.

In witness whereof I hereunto set my hand and official seal.

______________
Commissioner of the Superior Court/Notary Public

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

EXHIBIT F
SUBCONTRACTOR SIZE CERTIFICATION

Please check off which business indicates the size of your company:

"This is to certify that G. M. Crocetti, Inc. is ":

( ) Small Business

( ) Small Disadvantage Business

( ) Women Owned Business

(X) Large Business

( ) Other Explain:________________

X [signature] VP
Signature of Officer

Please refer to Small Business size regulations part 121.1 for CFR size standards.

Subcontractor No. B09-09420



TRATAROS
Construction, Inc.
664 64th Street
Brooklyn, NY 11220

BARUCH ACADEMIC COMPLEX
55 Lexington Avenue
New York City, NY 10010

General Construction Work
Package No. 2 - Contract No. 16
DASNY Project No. 6500 1802 2178

## RIDER "G" TO ALL SUBCONTRACTS AND/OR PURCHASE ORDERS

In accordance with terms of the contract, you are required to provide the following information within five (5) working days:

A) Name and Address of Material Vendor/Supplier:

Terrazzo Marble Supply
5700 South Hamilton Ave., Chicago, Illinois 60636

B) Name of Material Fabricator:

N/A

C) Name of Equipment Rental/Distributor:

N/A

D) Certified Payroll Report;

E) Certificate of Insurance;

F) Proposed Delivery Schedule;

G) Proposed Itemized Contract Cost Breakdown, including Labor, Materials, Equipment;

H) Certified Statement Confirming Labor Benefits Contributions have been satisfied;

Include address, telephone number, fax number and person to contract.

Be advised that progress payments and/or final payment, payment of retainage, shall be subject to receipt, acceptance and verification of Item "A" through "H" mentioned above.

SUBCONTRACTOR:

**G. M. Crocetti, Inc.**

BY: [signature] V.P.
Arthur C. Cavazzi, V.P.

DATE: 3/29/99




May 28, 1999

Trataros Construction Inc.
664 64th Street
Brooklyn, New York, 11220

Attn.: Mr. Jonathan Horowitz

RE: **Baruch Academic College – Site B**
**55 Lexington Avenue**
**New York, NY**
**Contract #16, DA# 6500 1802 2178**

Gentlemen,

Enclosed please find one (1) set of Performance and Payment bonds for the above captioned project.

We trust all is in order. If you have any questions please do not hesitate to contact the undersigned.

Very truly yours,

GM CROCETTI, INC.

Donna M. Mollica

DMM/encl.
encl.

Recommended for use where the General Contractor has filed Performance Bond approved by American Institute of Architects.

Bond No. 075641

# SUBCONTRACT PERFORMANCE BOND FORM A

**KNOW ALL MEN BY THESE PRESENTS,** That we,

G.M. CROCETTI, INC., 3960 MERRITT AVENUE, BRONX, NY 10466

(Here insert the full name and address of the subcontractor)

as Principal, hereinafter called Principal, and CAROLINA CASUALTY INSURANCE COMPANY a corporation organized and existing under the laws of the State of FLORIDA, as Surety, hereinafter called Surety, are held and firmly bound unto

TRATAROS CONSTRUCTION, INC., 664 64TH STREET, BROOKLYN, NY 11220

(Here insert the full name and address of the general contractor)

as Obligee, hereinafter called Obligee, in the amount of THREE MILLION EIGHT THOUSAND DOLLARS AND NO CENTS Dollars ($3,008,000.00 ), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS,** Principal has by written agreement dated 9/18/98 entered into a subcontract with Obligee for BARUCH ACADEMIC COLLEGE - SITE B, 55 LEXINGTON AVE., NY, NY, PRECAST TERRAZZO, EPOXY, INTERIOR STONEWORK, SUBCONTRACT # B09-09420, C# 16, DA# 650018022178

in accordance with drawings and specifications prepared by

which subcontract is by reference made a part thereof, and is hereinafter referred to as the subcontract.

**NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH THAT,** if Principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Whenever Principal shall be, and declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:

(1) Surety may promptly remedy the default, subject to the provisions of paragraph 3 herein, or;

(2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums would have been payable to Principal had there been no default under the subcontract. The term "balance of the subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of two (2) years from date on which final payment under the subcontract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators or successors of Obligee.

Signed and sealed this 26TH day of APRIL A.D. 19 99

Donna M. Mollica
(Witness)

G.M. CROCETTI, INC.
(Principal) (Seal)
By:
(Title)

(Witness)

CAROLINA CASUALTY INSURANCE COMPANY
(Surety) (Seal)
By:
DAVID W. ROSEHILL, Attorney-in-Fact

ACKNOWLEDGEMENT OF CONTRACTOR, IF A CORPORATION

STATE OF NEW YORK )
) ss:
COUNTY OF Bronx )

On the 26TH day of APRIL in the year 19 99, before be personally came Arthur Cavazzi to me known, who, being by me duly sworn, did depose and say that he resides at Armonk, New York, that he is the Vice Pres. of G.M. CROCETTI, INC. ,the corporation described in and which executed the above instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

FERN PERRY
Notary Public, State of New York
Qualified in Nassau County
Commission Expires ... 19

NOTARY PUBLIC OR COMMISSIONER OF DEEDS

ACKNOWLEDGEMENT OF SURETY

STATE OF NEW YORK )
) ss:
COUNTY OF NASSAU )

On the 26TH day of APRIL in the year 19 99, before me personally came DAVID W. ROSEHILL to me known, who, being by me duly sworn, did depose and say that he resides at E. NORTHPORT, NY, that he is the ATTORNEY-IN-FACT of CAROLINA CASUALTY INSURANCE COMPANY the corporation described in and which executed the above instrument; and that he signed his name thereto by order of the board of directors of said corporation.

FERN PERRY
Notary ... New York
... 28, 19

NOTARY PUBLIC OR COMMISSIONER OF DEEDS

No. 107

# POWER OF ATTORNEY
## CAROLINA CASUALTY INSURANCE COMPANY
## JACKSONVILLE, FLORIDA

NOTICE: **The warning found elsewhere in this Power of Attorney affects the validity thereof. Please review carefully.**

KNOW ALL MEN BY THESE PRESENTS: that CAROLINA CASUALTY INSURANCE COMPANY ("Company") a corporation duly organized and existing under the laws of the State of Florida, having its Principal office in Jacksonville, Florida, has made, constituted and appointed, and does by these presents make, constitute and appoint William A. Marino or David W. Rosehill or George O. Brewster or Nancy Schnee or Vincent A. Walsh or David A. Goldstein or Fern Perry or Gloria Loyd of Jericho, New York
its true and lawful Agent and Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, seal, acknowledge and deliver:
any and all bonds and undertakings
and to bind the Company thereby as fully and to the same extent as if such bonds had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office in their own proper persons.

This Power of Attorney is granted pursuant to the Minutes of the Special Meeting of the Board of Directors of Carolina Casualty Insurance Company held on March 30, 1966, to wit:

RESOLVED: "That the following Officers of the Carolina Casualty Insurance Company, Chairman of the Board, President, Secretary and Treasurer, or either of them, are hereby authorized to execute on behalf of the Carolina Casualty Insurance Company, Powers of Attorney authorizing and qualifying the Attorney-in-Fact named therein to execute bonds on behalf of the Carolina Casualty Insurance Company, and further, that the said Officers of the Company mentioned, are hereby authorized to affix the corporate seal of the said Company to Powers of Attorney executed pursuant hereto".

RESOLVED FURTHER, this Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind the company except in the manner and to the extent therein stated.

RESOLVED FURTHER, this Power of Attorney revokes all previous powers issued in behalf of the attorney-in-fact named above.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any power of attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed. The Company may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Company, notwithstanding the fact that they may have ceased to be such at the time when such instruments shall be issued.

IN WITNESS WHEREOF Carolina Casualty Insurance Company has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 13 day of April, 19 98.

CAROLINA CASUALTY INSURANCE COMPANY CORPORATE SEAL FLORIDA

Attest:

By [signature]
Betty C. Sutherland
Vice President & Secretary

Carolina Casualty Insurance Company

By [signature]
Armin W. Blumberg
President & Chief Executive Officer

**WARNING: THIS POWER INVALID IF NOT PRINTED ON GREEN "MONITOR" SECURITY PAPER.**

**STATE OF FLORIDA)**
**COUNTY OF DUVAL)** SS

Sworn to before me, a Notary Public in the State of Florida, this 13th day of April, 1998, by Betty C. Sutherland who is known to me to be the Secretary of Carolina Casualty Insurance Company.

OFFICIAL NOTARY SEAL
PATRICIA M JOHNSON
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC615749
MY COMMISSION EXP. FEB. 25,2001

[signature]
Notary Public, State of Florida at Large

**CERTIFICATE**

I, the undersigned, Secretary of CAROLINA CASUALTY INSURANCE COMPANY, DO HEREBY CERTIFY that the foregoing is a just, true, correct and complete copy of original Power of Attorney; that the said Power of Attorney has not been revoked or rescinded and that the authority of the Attorney-in-Fact set forth therein, who executed the bond to which this Power of Attorney is attached, is in full force and effect as of this date.

Given under my hand and the seal of the Company, this ____ day of APR 26 1999, 19

CAROLINA CASUALTY INSURANCE COMPANY CORPORATE SEAL FLORIDA

[signature]
Betty C. Sutherland, Secretary

## CAROLINA CASUALTY INSURANCE COMPANY

STATEMENT, DECEMBER 31, 1998
(AMOUNTS IN THOUSANDS)

STATUTORY BALANCE SHEET

**Admitted Assets**

| | |
|---|---|
| Bonds | $ 124,148 |
| Common & Preferred Stocks | 33,048 |
| Cash & Short Term Investments | 27,435 |
| Receivables for Securities | 521 |
| Premiums Receivable | 13,987 |
| Investment Income Receivable | 2,330 |
| Reinsurance Recoverables | 580 |
| Other Assets | 2,799 |
| Total Admitted Assets | $ 204,848 |

**Liabilities & Surplus**

| | |
|---|---|
| Loss & LAE Reserves | $ 71,557 |
| Unearned Premium Reserves | 39,471 |
| Drafts Outstanding | 4,271 |
| Other Liabilities | 29,029 |
| Total Liabilities | $ 144,328 |
| Capital Stock | 3,687 |
| Additional Paid In Capital | 27,090 |
| Unassigned Surplus | 29,743 |
| Total Policyholders' Surplus | $ 60,520 |
| Total Liabilities & Surplus | $ 204,848 |

**Officers:**

| | |
|---|---|
| President: | Armin Walter Blumberg |
| Vice President: | Gary R. Wothe |
| Vice President: | Charles E. Estes |
| Vice President: | Barbara B. Murray |
| Vice President: | Carroll D. Starmer |
| Corporate Secretary: | Betty C. Sutherland |

**Directors:**

Armin W. Blumberg
Anthony J. Del Tufo
Edwin L. Heer
Michael J. Snead
Carroll D. Starmer
Edward A. Thomas
Gary R. Wothe

Bond No. 075641

# SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND

**KNOW ALL MEN BY THESE PRESENTS,** That we,

G.M. CROCETTI, INC., 3960 MERRITT AVENUE, BRONX, NY 10466

(Here insert the full name and address of the Subcontractor)

as Principal, hereinafter called Principal, and CAROLINA CASUALTY INSURANCE COMPANY a FLORIDA corporation, as Surety, hereinafter called Surety, are held and firmly bound unto

TRATAROS CONSTRUCTION, INC., 664 64TH STREET, BROOKLYN, NY 11220

(Here insert the full name and address of the General Contractor)

as Obligee, hereinafter called Obligee, for the use and benefit of claimants as hereinbelow defined, in the amount of THREE MILLION EIGHT THOUSAND DOLLARS AND NO CENTS Dollars ($3,008,000.00 ), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS,** Principal has by written agreement dated 9/18/98 entered into a subcontract with Obligee for BARUCH ACADEMIC COLLEGE - SITE B, 55 LEXINGTON AVE., NY, NY, PRECAST TERRAZZO, EPOXY, INTERIOR STONEWORK, SUBCONTRACT # B09-09420, C# 16, DA# 650018022178

in accordance with drawings and specifications prepared by

which subcontract is by reference made a part thereof, and is hereinafter referred to as the subcontract.

**NOW THEREFORE, THE CONDITION OF THIS OBLIGATION** is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

(1) A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract.

(2) The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

(3) No suit or action shall be commenced hereunder by any claimant,

(a) After the expiration of one ( 1) year following the date on which Principal ceased work on said subcontract it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which he project, or any part thereof, is situated, and not elsewhere.

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

Signed and sealed this 26TH day of APRIL A.D. 19 99

Donna M. Mollica
(Witness)

G.M. CROCETTI, INC.
(Principal) (Seal)

By: [signature]
(Title)

[signature]
(Witness)

CAROLINA CASUALTY INSURANCE COMPANY
(Surety) (Seal)

By: [signature]
DAVID W. ROSEHILL
Attorney-in-fact

Sucontract Labor and Material Payment Bond. This Bond is issued simultaneously with another bond in favor of the general contractor conditioned for the full and faithful performance of the contract.

CR0809

ACKNOWLEDGEMENT OF CONTRACTOR, IF A CORPORATION

STATE OF NEW YORK )
) ss:
COUNTY OF Bronx )

On the 26TH day of APRIL in the year 19 99, before be personally came Arthur Cavazzi to me known, who, being by me duly sworn, did depose and say that he resides at Armonk, New York, that he is the Vice President of G.M. CROCETTI, INC. , the corporation described in and which executed the above instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.

NOTARY PUBLIC OR COMMISSIONER OF DEEDS

FERN PERRY
Notary Public, State of New York
No. [illegible]
Qualified in Nassau County
Commission Expires May 28, 19

ACKNOWLEDGEMENT OF SURETY

STATE OF NEW YORK )
) ss:
COUNTY OF NASSAU )

On the 26TH day of APRIL in the year 19 99, before me personally came DAVID W. ROSEHILL to me known, who, being by me duly sworn, did depose and say that he resides at E. NORTHPORT, NY, that he is the ATTORNEY-IN-FACT of , CAROLINA CASUALTY INSURANCE COMPANY the corporation described in and which executed the above instrument; and that he signed his name thereto by order of the board of directors of said corporation.

NOTARY PUBLIC OR COMMISSIONER OF DEEDS

Notary Public, State of New York
Qualified in Nassau County
Commission Expires May 28, 19

No. 107

**POWER OF ATTORNEY**
**CAROLINA CASUALTY INSURANCE COMPANY**
**JACKSONVILLE, FLORIDA**

**NOTICE: The warning found elsewhere in this Power of Attorney affects the validity thereof. Please review carefully.**

KNOW ALL MEN BY THESE PRESENTS: that CAROLINA CASUALTY INSURANCE COMPANY ("Company") a corporation duly organized and existing under the laws of the State of Florida, having its Principal office in Jacksonville, Florida, has made, constituted and appointed, and does by these presents make, constitute and appoint William A. Marino or David W. Rosehill or George O. Brewster or Nancy Schnee or Vincent A. Walsh or David A. Goldstein or Fern Perry or Gloria Loyd of Jericho, New York its true and lawful Agent and Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, seal, acknowledge and deliver:

any and all bonds and undertakings

and to bind the Company thereby as fully and to the same extent as if such bonds had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office in their own proper persons.

This Power of Attorney is granted pursuant to the Minutes of the Special Meeting of the Board of Directors of Carolina Casualty Insurance Company held on March 30, 1966, to wit:

RESOLVED: "That the following Officers of the Carolina Casualty Insurance Company, Chairman of the Board, President, Secretary and Treasurer, or either of them, are hereby authorized to execute on behalf of the Carolina Casualty Insurance Company, Powers of Attorney authorizing and qualifying the Attorney-in-Fact named therein to execute bonds on behalf of the Carolina Casualty Insurance Company, and further, that the said Officers of the Company mentioned, are hereby authorized to affix the corporate seal of the said Company to Powers of Attorney executed pursuant hereto".

RESOLVED FURTHER, this Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind the company except in the manner and to the extent therein stated.

RESOLVED FURTHER, this Power of Attorney revokes all previous powers issued in behalf of the attorney-in-fact named above.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any power of attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed. The Company may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Company, notwithstanding the fact that they may have ceased to be such at the time when such instruments shall be issued.

IN WITNESS WHEREOF Carolina Casualty Insurance Company has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 13 day of April, 19 98.

[SEAL: CAROLINA CASUALTY INSURANCE COMPANY, CORPORATE SEAL, FLORIDA]

Attest:

By [signature]
Betty C. Sutherland
Vice President & Secretary

Carolina Casualty Insurance Company

By [signature]
Armin W. Blumberg
President & Chief Executive Officer

**WARNING: THIS POWER INVALID IF NOT PRINTED ON GREEN "MONITOR" SECURITY PAPER.**

**STATE OF FLORIDA)**
**COUNTY OF DUVAL)** SS

Sworn to before me, a Notary Public in the State of Florida, this 13th day of April, 1998, by Betty C. Sutherland who is known to me to be the Secretary of Carolina Casualty Insurance Company.

OFFICIAL NOTARY SEAL
PATRICIA M JOHNSON
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC615749
MY COMMISSION EXP. FEB. 25,2001

[signature: Patricia M. Johnson]
Notary Public, State of Florida at Large

**CERTIFICATE**

I, the undersigned, Secretary of CAROLINA CASUALTY INSURANCE COMPANY, DO HEREBY CERTIFY that the foregoing is a just, true, correct and complete copy of original Power of Attorney; that the said Power of Attorney has not been revoked or rescinded and that the authority of the Attorney-in-Fact set forth therein, who executed the bond to which this Power of Attorney is attached, is in full force and effect as of this date.

Given under my hand and the seal of the Company, this _____ day of APR 26 1999, 19

[SEAL: CAROLINA CASUALTY INSURANCE COMPANY, CORPORATE SEAL, FLORIDA]

[signature]
Betty C. Sutherland, Secretary

## CAROLINA CASU...TY INSURANCE COMPANY

STATEMENT, DECEMBER 31, 1998 (AMOUNTS IN THOUSANDS) — STATUTORY BALANCE SHEET

| **Admitted Assets** | |
|---|---|
| Bonds | $ 124,148 |
| Common & Preferred Stocks | 33,048 |
| Cash & Short Term Investments | 27,435 |
| Receivables for Securities | 521 |
| Premiums Receivable | 13,987 |
| Investment Income Receivable | 2,330 |
| Reinsurance Recoverables | 580 |
| Other Assets | 2,799 |
| Total Admitted Assets | $ 204,848 |
| **Liabilities & Surplus** | |
| Loss & LAE Reserves | $ 71,557 |
| Unearned Premium Reserves | 39,471 |
| Drafts Outstanding | 4,271 |
| Other Liabilities | 29,029 |
| Total Liabilities | $ 144,328 |
| Capital Stock | 3,687 |
| Additional Paid In Capital | 27,090 |
| Unassigned Surplus | 29,743 |
| Total Policyholders' Surplus | $ 60,520 |
| Total Liabilities & Surplus | $ 204,848 |

**Officers:**

| | |
|---|---|
| President: | Armin Walter Blumberg |
| Vice President: | Gary R. Wothe |
| Vice President: | Charles E. Estes |
| Vice President: | Barbara B. Murray |
| Vice President: | Carroll D. Starmer |
| Corporate Secretary: | Betty C. Sutherland |

**Directors:**

Armin W. Blumberg
Anthony J. Del Tufo
Edwin L. Heer
Michael J. Snead
Carroll D. Starmer
Edward A. Thomas
Gary R. Wothe