# EXHIBIT L

## ENDORSEMENT NO. 5

## UNINTENTIONAL FAILURE TO DISCLOSE ALL HAZARDS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM March 31, 2000, forms part of Policy No. 4LS 001795, issued to G.M. Crocetti, Inc. by Lumbermen's Mutual Casualty Company.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

Based on our reliance on your representations as to existing hazards, if you unintentionally fail to disclose all such hazards prior to the beginning of the policy period of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

_John W. Reynolds_

_____
(Authorized Representative)

CLASS CODE: 2-14055

## ENDORSEMENT No. 4

## EXCESS INSURANCE AMENDED

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM March 31, 2000, forms part of Policy No. 4LS 001759, issued to G.M. Crocetti, Inc. by Lumbermen's Mutual Casualty Company.

In consideration of the premium paid, it is hereby understood and agreed that the NAMED INSURED and the Company agree to the following Policy Changes:

**Under SECTION IV – CONDITIONS, Part 4 – Other Insurance, sub-part b. Excess Insurance, the following is added:**

(4)  Where the Named Insured has been added as an additional insured onto another policy providing Commercial General Liability Coverage or Contractors Pollution Coverage.

All other policy terms, conditions, and endorsements remain unchanged.

John W. Reynolds
_____
(Authorized Representative)

CLASS CODE: 2-14055

## ENDORSEMENT No. 3

## ADDITIONAL NAMED INSURED

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM March 31, 2000, forms part of Policy No. 4LS 001759, issued to G.M. Crocetti, Inc. by Lumbermen's Mutual Casualty Company.

The following entities are added as Additional NAMED INSUREDS to Item I of the Declarations:

Superior Stone & Terrazzo Corp.
Beverly Tile & Marble Corp.

All other policy terms, conditions and endorsements remain unchanged.

*John W Reynolds*

_____
(Authorized Representative)

CLASS CODE: 2-14055



**Kemper.**
Insurance Companies
KEMPER ENVIRONMENTAL

**Princeton Forrestal Village**
**155 Village Boulevard, Suite 300**
**Princeton, NJ 08540-5743**
**1-800-679-0025**

## LUMBERMENS MUTUAL CASUALTY COMPANY
### Long Grove, Illinois

## GL POLLUTION
## Combined Occurrence General Liability with Pollution

#### Declarations

Policy No. 4LS 001759-00

Renewal of Policy No. NEW

NOTICE ... ... ... ... AND THE ... ARE CA... ... ... REQUIREMEN... OF TH... ... ... ... DEPARTMENT, HOWEVER, SE... ... ... MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

| | | |
|---|---|---|
| Item I: | First NAMED INSURED:<br>Address: | G.M. Crocetti, Inc.<br>3960 Merritt Avenue<br>Bronx, NY 10466 |

Item II:   The POLICY PERIOD is from 03/31/2000 12:01 A.M. to 03/31/2002 12:01 A.M. Standard Time at the address of the First NAMED INSURED shown above.

| | | | |
|---|---|---|---|
| Item III: | Limit of Liability: | US $2,000,000<br>US $1,000,000 | General Aggregate Limit<br>Products-Completed<br>Operations Aggregate Limit |
| | | US $1,000,000<br>US $1,000,000<br>US $ 50,000 any one fire<br>US $ 5,000 any one person | Personal & Advertising Injury Limit<br>Each Occurrence Limit<br>Fire Damage Limit<br>Medical Expense Limit |

Item IV:   Deductible:      US $1,000 BI/PD      per Occurrence

Item V:   Premium:   $130,000      % Minimum Earned: 25%
                                    Effective Date of Minimum Earned: 03/31/2000

Item VI:   Description of Your Work: Marble, Stone & Tile Contracting subject to policy terms and conditions.

**ALLIED NA INSURANCE B'KGE**
**CORP. OF NEW YORK**
390 NORTH BROADWAY, CS9016
JERICHO, NY 11753-2110
(516) 733-9200

EL 70 32 (Ed. 10 97)                                    1

Item VII:   Forms and Endorsements attached to this Policy at inception:  Endt. No. 1 (Schedule), Endt. No. 2 (Additional Insured), CG2233 1185 (Exclusion – Testing or Consulting), CG2234 1093 (Exclusion – Construction Management Errors and Omissions), CG2243 1185 (Exclusion – Engineers, Architects or Surveyors Professional Liability), CG2417 1093 (Contractual Liability – Railroads), CG7710 0986 (Employee Benefit Liability),  EL7033 1097 (Coverage Form), IL0017 1185 (Common Policy Conditions), IL0021 1194 (Nuclear Energy Liability Exclusion), CG7999 0986 (Knowledge of Occurrence), CG7999 0986 (Notice of Cancellation), CG7999 0986 (Notice of Occurrence), CG2404 1093 (Waiver of Transfer of Rights of Recovery), CG2504 1185 (Amendment – Aggregate of Limits of Insurance), CG2503 (Aggregate Limits of Insurance Per Project).

The INSURED'S Broker/Representative is:  Allied Coverage Corp.
              Address:   390 N. Broadway
                         Jericho, NY  11753

Countersigned this 20th day of July, 2000.

*John W. Reynolds*

_____

Authorized Representative

EL 70 32 (Ed. 10 97)

2

# ENDORSEMENT No. 1

This endorsement, effective 12:01 AM, March 31, 2000, forms part of Policy No. 4LS 001759, issued to G.M. Crocetti, Inc. by Lumbermens Mutual Casualty Company.

## SCHEDULE

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

| Location # | Building # | Street Address, City, State, Zip Code |
|---|---|---|
| 1 | 1 | 3960 Merritt Avenue Bronx, NY 10466 |
| 2 | 1 | 3966 Merritt Avenue Bronx, NY 10466 |
| 3 | 1 | 1611 East 233rd Street Bronx, NY 10466 |

| CLASSIFICATION | CLASS CODE | BASIS OF PREMIUM | AMOUNT | RATE PER $100 OF RECEIPTS | PREMIUM |
|---|---|---|---|---|---|
| Environmental Contractors | 90120 | Revenue | $20,000,000 | FLAT | $130,000 |

TOTAL PREMIUM: $130,000

EI 7633 (Ed. 10 97)

## ENDORSEMENT No. 2

## ADDITIONAL INSURED

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM, 03/31/2000, forms part of Policy No. 4LS 001759 issued to G.M. Crocetti, Inc. by Lumbermens Mutual Casualty Company.

**THIS ENDORSEMENT MODIFIES THE INSURANCE PROVIDED UNDER COVERAGES A OF THE POLICY.**

Section II-WHO IS AN INSURED, Item 5. is amended to include:

The below entity is an additional insured provided that the Named Insured is required in a written contract or agreement that the insurance afforded to the additional insured shall apply as primary and that any other similar insurance available to the additional insured will be excess only and will not contribute to the primary insurance, provided the bodily injury or property damage occurs subsequent to the execution of the written contract or agreement, but only with respect to bodily injury or property damage arising from your work for that additional insured by or for you.

ADDITIONAL INSURED:     ALL ENTITIES WHO ARE REQUIRED BY WRITTEN CONTRACT TO BE NAMED AS AN ADDITIONAL INSURED ON A PRIMARY BASIS.

ADDRESS:

CONTRACT TITLE/No.:

With respect to this endorsement, only for the additional insured shown above, Section IV-CONDITIONS, Item 4. Is deleted in its entirety and replaced with the following:

**Other Insurance.**

**Applicable to Coverages A and B**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this policy, our obligations are limited as follows:

   a.   **Primary Insurance**

       This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b.   **Excess Insurance**

       This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)  That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for your work;

(2)  That is Fire insurance for premises rented to you; or

(3)  If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limit of Liability shown in the Declarations of this Coverage Part.

All other policy terms, conditions and exclusions remain the same.

*John W. Reynolds*

_____

(Authorized Representative)

# EXCLUSION -- TESTING OR CONSULTING ERRORS AND OMISSIONS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to COVERAGES A and B (Section I):

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1. An error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured; or

2. The reporting of or reliance upon any such test, evaluation, consultation or advice.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

Copyright, Insurance Services Office, Inc., 1984

Printed in U.S.A.

CG 22 33 (Ed. 11 85)

# EXCLUSION -- CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph 2., Exclusions of COVERAGE A -- BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I -- Coverages) and Paragraph 2., Exclusions of COVERAGE B -- PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I -- Coverages):

This insurance does not apply to "bodily injury" "property damage," "personal injury" or "advertising injury" arising out of:

1.  The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager, or

2.  Inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

Copyright, Insurance Services Office, Inc., 1992

CG 22 34 (Ed. 10 93)                                   Printed in U.S.A.

# EXCLUSION --
# ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2. Supervisory, inspection or engineering services.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

Copyright, Insurance Services Office, Inc., 1984

CG 22 43 (Ed. 11 85)

Printed in U.S.A.

# CONTRACTUAL LIABILITY -- RAILROADS

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Scheduled Railroad:**

IF ANY

**Designated Job Site:**

IF ANY

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the DEFINITIONS section is replaced by the following:

6. "Insured Contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph 1) above and supervisory inspection or engineering services.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

Copyright, Insurance Services Office, Inc., 1992

Printed in U.S.A.

CG 24 17 (Ed. 10 93)

# EMPLOYEE BENEFIT LIABILITY COVERAGE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

DECLARATIONS -- Applicable to this coverage form only.

The limit of our liability for this coverage is as follows, subject to all of the terms and conditions of the referenced policy.

| Limit of Insurance | Coverage EB -- Employee Benefit Liability: $1,000,000 | | | Annual Aggregate |
|---|---|---|---|---|
| Code 73920 | Basic Charge Included | No. Employees 25 | Rate per Employee Included | Advance premium Included |

| Policy Number 4LS 001759 | This coverage is effective   03/31/2000   12:01 A.M. | Policy Effective Date 03/31/2000 |
|---|---|---|

## SECTION I -- COVERAGE EB -- EMPLOYEE BENEFIT LIABILITY

### A.  Insuring Agreements

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any claim made against the insured by any employee, former employee, or employee's beneficiaries or legal representatives for injury caused by any negligent act, error, or omission of the insured or of any other person for whose acts, errors, or omissions the insured is legally liable, in the administration of the insured's "employee benefit program." We will have the right and duty to defend any "suit" seeking those damages. But:

    a.  The amount we will pay for "damages" is limited as described in SECTION III -- LIMIT OF INSURANCE of this coverage;

    b.  We may investigate any claim or "suit" at our discretion;

    c.  We may settle any claim or "suit" with your written consent when we deem it expedient to do so; and

    d.  Our right and duty to defend ends when we have used up the applicable

Limit of Insurance in the payment of judgements or settlements.

2.  This insurance applies only to claims made against the insured in the "coverage territory":

    a.  During the policy period provided the insured at the effective date of this insurance had no knowledge of or could not have reasonably foreseen any circumstances which might result in such claim;

    b.  After the expiration of the policy provided:

        1)  The act, error or omission from which the claim results occurs during the policy period; and

        2)  The insured gives us written notice of the act, error or omission during the policy period.

### B.  Exclusions

This insurance does not apply to:

1.  Any dishonest, fraudulent, criminal or malicious act.

Printed in U.S.A.

CG 77 10 (Ed. 09 86)

2. Libel, slander, discrimination or humilia-
tion.

3. To "bodily injury," "property damage," "per-
sonal injury," or "advertising injury."

4. Any claim for failure of performance of
contract by any insurer.

5. Any claim based upon the insured's failure
to comply with any law concerning worker's
compensation, unemployment insurance,
social security, disability benefits or any
similar law.

6. Any claim based upon:

   a. Failure of stock shares to perform as
   represented by the insured; or

   b. Advice given by an insured to an em-
   ployee to participate or not to partici-
   pate in stock subscription plans.

7. Fines, civil penalties or taxes.

8. Any claim arising out of the insured's failure
to procure or maintain adequate bonds or
insurance on assets of any "employee
benefit program."

## SECTION II -- WHO IS INSURED

If you are designated in the Commercial General
Liability Declarations as:

A. An individual, you and your spouse are in-
sureds, but only with respect to the conduct of
a business of which you are the sole owner.

B. A partnership or joint venture, you are any in-
sured. Your members and your partners are also
insured, but only with respect to the conduct of
your business.

C. An organization other than a partnership or
joint venture, you are an insured. Your execu-
tive officers and directors are insureds, but only
with respect to their duties as your officers or
directors. Your stockholders are also insureds,
but only with respect to their liability as stock-
holders.

D. Your employees authorized to act in the ad-
ministration of your "employee benefit pro-

grams" are insureds, but only for acts within the
scope of their employment with you.

No person or organization is an insured with respect
to the conduct of any current or past partnership or
joint venture that is not shown as a Named Insured
in the Declarations of this Coverage Form.

## SECTION III -- LIMIT OF INSURANCE, DEDUCTI-
BLE

A. The Limit of Insurance shown in the Declara-
tions of this coverage and the rules below fix the
most we will pay regardless of the number of:

   1. Insureds;

   2. Claims made or "suits" brought; or

   3. Persons or organizations making claims or
   bringing "suits."

B. Our obligation to pay "damages" on your behalf
applies only to the amount of "damages" in ex-
cess of a deductible amount of $1,000 applica-
ble to each claim.

The terms of this insurance, including those
with respect to:

   1. Our right and duty to defend any "suits"
   seeking those damages; and

   2. Your duties in the event of an act, error or
   omission apply irrespective of the applica-
   tion of the deductible amount.

We may pay any part or all of the deductible
amount to effect settlement of any claim or
"suit" and, upon notification of the action taken,
you shall promptly reimburse us for such part of
the deductible amount as has been paid by us.

## SECTION IV -- ADDITIONAL CONDITIONS

### Duties in the Event of Act, Error or Omission

You must see to it that we are promptly notified in
writing of an act, error or omission that may result in
a claim. Notification on your behalf will be in accor-
dance with Condition 2. Duties In the Event of Oc-
currence, Claim or Suit of the Commercial General
Liability Coverage Part.

# SECTION V -- ADDITIONAL DEFINITIONS

"Damages" means only those damages which are payable because of a claim to which this insurance applies.

"Employee Benefit Programs" means group life insurance, group accident or health insurance, profit sharing plans, pension compensation insurance, unemployment compensation, social security and death benefits insurance.

"Administration" means:

a. Giving counsel to employees with respect to the employee benefit programs;

b. Interpreting the "employee benefit programs";

c. The handling of records in connection with the employee benefit programs; and

d. Effecting enrollment, termination or cancellation of employees under the "employee benefit programs."

Provided all such acts are authorized by you, but "Administration" does not mean:

a. The exercise of or failure to exercise any authority or control respecting:

    a. The management of any "employee benefit program"; or

    b. The investment or disposition of any "employee benefit program" or its assets; or

b. The rendering of any advice with respect to the investment of any assets of any "employee benefits program."

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

CG 77 10 (Ed. 09 86)                  Page 3 of 3                  Printed in U.S.A.

# AMENDMENT -- AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

Copyright, Insurance Services Office, Inc., 1984

# AMENDMENT -- AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned or rented by you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

Copyright, Insurance Services Office, Inc., 1984

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**

ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED IN A WRITTEN CONTRACT OR AGREEMENT TO INCLUDE AS AN ADDITIONAL INSURED, PROVIDED THE "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURS SUBSEQUENT TO THE EXECUTION OF THE WRITTEN CONTRACT OR AGREEMENT.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV — COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products--completed operations hazard." This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

Copyright, Insurance Services Office, Inc., 1992



# MANUSCRIPT FORM

## AMENDATORY ENDORSEMENT

### KNOWLEDGE OF OCCURRENCE

IT IS AGREED THAT KNOWLEDGE OF AN ACCIDENT BY THE AGENT, SERVANT, OR EMPLOYEE OF THE INSURED SHALL NOT IN ITSELF CONSTITUTE KNOWLEDGE BY THE INSURED UNLESS THE INDIVIDUAL NAMED INSURED OR ANY PARTNER OR ANY EXECUTIVE OFFICER OR THE INSURED CORPORATION OR THE INSURANCE DEPARTMENT MANAGER OF ANY INSURED SHALL HAVE RECEIVED SUCH NOTICE FROM THE AGENT, SERVANT OR EMPLOYEE.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# MANUSCRIPT FORM

## AMENDATORY ENDORSEMENT

### NOTICE OF CANCELLATION

IT IS AGREED THAT IN THE EVENT THE COMPANY ELECTS TO CANCEL THIS POLICY, THE COMPANY WILL PROVIDE WRITTEN NOTICE OF SUCH CANCELLATION AT LEAST NINETY (90) DAYS PRIOR TO SUCH CANCELLATION WITH THE EXCEPTION OF TEN (10) DAYS WRITTEN NOTICE OF CANCELLATION FOR NON-PAYMENT OF PREMIUM.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

# MANUSCRIPT FORM

## AMENDATORY ENDORSEMENT

### NOTICE OF OCCURRENCE

IN THE EVENT OF AN OCCURRENCE, INJURY, OR DAMAGE, WRITTEN NOTICE CONTAINING PARTICULARS SUFFICIENT TO IDENTIFY THE INSURED AND ALSO REASONABLY OBTAINABLE INFORMATION WITH RESPECT TO THE TIME, PLACE AND CIRCUMSTANCES THEREOF, AND THE NAMES AND ADDRESSES OF THE INJURED AND IF AVAILABLE THE NAMEDS AND ADDRESSES OF WITNESSES SHALL BE GIVEN BY OR FOR THE INSURED TO THE COMPANY OR ANY OF ITS AUTHORIZED AGENTS AS SOON AS PRACTICABLE; PROVIDED THAT WITH RESPECT TO THE NAMED INSURED, SUCH NOTICE SHALL BE GIVEN AS SOON AS PRACTICABLE AFTER KNOWLEDGE OF THE OCCURRENCE, INJURY, OR DAMAGE HAS BEEN REPORTED TO AN EXECUTIVE OFFICER OF THE NAMED INSURED OR TO THE EMPLOYEE DESIGNATED BY THE NAMED INSURED TO GIVE SUCH NOTICE.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.



**Princeton Forrestal Village**
**155 Village Boulevard, Suite 300**
**Princeton, NJ 08540-5743**
**1-800-679-0025**

## LUMBERMENS MUTUAL CASUALTY COMPANY
### Long Grove, Illinois

### GL POLLUTION

### COMMERCIAL GENERAL LIABILITY WITH POLLUTION

### PLEASE READ THE ENTIRE FORM CAREFULLY

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in bold have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or suit that may result. But:

        (1)  The amount we will pay for damages is limited as described in LIMIT OF LIABILITY AND DEDUCTIBLE (Section III); and

        (2)  Our right and duty to defend end when we have used up the applicable Limit of Liability in the payment of judgments or settlements under Coverage A or B, or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

FEB-28-2007  10:42    96%    P.029

b.  This insurance applies to bodily injury and property damage only if:

   (1)  The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

   (2)  The bodily injury or property damage occurs during the policy period.

c.  Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

2.  **Exclusions.**

This insurance does not apply to:

a.  **Expected or Intended Injury**

   Bodily injury or property damage expected or intended from the standpoint of the insured.  This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**

   Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  The exclusion does not apply to liability for damages:

   (1)  Assumed in a contract or agreement that is an insured contract provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an insured contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury or property damage, provided:

      (a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same insured contract; and

      (b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; or

   (2)  That the insured would have in the absence of the contract or agreement.

c.  **Liquor Liability**

   Bodily injury or property damage for which any insured may be held liable by reason of:

   (1)  Causing or contributing to the intoxication of any person;

   (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.   **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e.   **Employer's Liability**

Bodily Injury to:

(1)   An employee of the insured, arising out of and in the course of:

(a)   Employment by the insured; or

(b)   Performing duties related to the conduct of the insured's business; or

(2)   The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an insured contract.

f.   **Pollution**

(1)   Bodily injury or property damage which would not have occurred in whole or in part but for the actual, alleged, possible or threatened intentional or unintentional discharge, disposal, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)   Any loss, cost or expense arising out of any request, demand, order, directive, complaint, or claim by or on behalf of any person, group of persons or entity, including any governmental entity, that any insured or any other person, group of persons or entity test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess pollutants or the effects of pollutants at or from any premises, site, or location which was at any time owned by, rented to or occupied by the insured.

(3)   Part (1) of this exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  This applies only when such premises, site or location has never at anytime been used by anyone for the handling, storage, disposal, processing or treatment of waste.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(4) Except with respect to waste disposal sites, this exclusion does not apply to bodily injury or property damage when:

   (a) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants arises out of pollution conditions as a result of your work and takes place at a job site where you or your subcontractors are working; and

   (b) Such job site was never at any time owned or occupied by, or rented or loaned to any insured, other than an insured which is an additional insured or qualifies as an insured under Section II, paragraph 5.

(5) Except with respect to waste disposal sites, this exclusion does not apply to bodily injury or property damage when the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants arises out of the products-completed operation hazard of your work.

(6) With respect to paragraphs (4) and (5) of this exclusion, in determining whether bodily injury or property damage has occurred during the policy period, the following rules apply:

   Progressive, indivisible bodily injury or property damage over a period of days, weeks, months or longer, caused by related or continuous exposure to substantially the same general harmful conditions or substances, shall be deemed to have occurred only on the date of first exposure to such conditions or substances.

   However, if the date of first exposure is before the inception date of the first GL Pollution Commercial General Liability Policy with Pollution we issued to you, or can not be determined, but the progressive, indivisible bodily injury or property damage continues in fact to exist during this policy period, it will be deemed to have occurred only on the inception date of the first GL Pollution Commercial General Liability Policy with Pollution we issued to you which provides coverage substantially similar to that provided under paragraphs (4) and (5) above.

   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

**Bodily injury or property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and
   (b) Not being used to carry persons or property for a charge;

(3) Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any insured contract for the ownership, maintenance or use of aircraft or watercraft;

(5) Bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph f. (2) or f. (3) of the definition of mobile equipment (Section V); or

(6) Bodily injury or property damage within the scope of paragraphs (4) and (5) of Exclusion f., Pollution, and which is caused by:

    (a) any on site loading or unloading of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured; or

    (b) transportation of materials on site.

h.   Mobile Equipment

Bodily injury or property damage arising out of:

    (1) The transportation of mobile equipment by an auto owned or operated by or rented or loaned to any insured; or

    (2) The use of mobile equipment in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i.   War

Bodily injury or property damage due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.   Damage to Property

Property damage to:

    (1) Property you own, rent, or occupy;

    (2) Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

    (3) Property loaned to you;

    (4) Personal property in the care, custody or control of the insured;

    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

    (6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraph (6) of this exclusion does not apply to property damage included in the products-completed operations hazard.

**k.   Damage to Your Product**

Property damage to your product arising out of it or any part of it.

**l.   Damage to Your Work**

Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage to Impaired Property or Property Not Physically Injured**

Property damage to impaired property or property that has not been physically injured, arising out of:

    (1)   A defect, deficiency, inadequacy or dangerous condition in your product or your work; or

    (2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

**n.   Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)   Your product;

    (2)   Your work; or

    (3)   Impaired property;

        if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Employment - Related Practices**

Bodily injury to:

    (1)   A person arising out of any:

        (a)   Refusal to employ that person;

        (b)   Termination of that person's employment; or

        (c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of the person as a consequence of bodily injury to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   (a) Whether the insured may be liable as an employer or in any other capacity; and

   (b) To any obligation to share damage with or repay someone else who must pay damages because of the injury.

p.  **Professional Services**

Bodily injury or property damage arising out of the rendering or failure to render any professional services by or for you, including:

   (1) The preparing, approving, or failing to prepare or approve maps, drawings, opinions, recommendations, reports, surveys, change orders, designs or specifications;

   (2) Supervisory, inspection, construction or project management, quality control or engineering services;

   (3) An error, omission, defect or deficiency in any test performed, evaluation, consultation or advice given by or on behalf of any insured; or

   (4) The reporting of or reliance upon any such test, evaluation, consultation or advice.

q.  **Claims by One Insured Against Another**

Bodily injury or property damage arising out of any claims for damages by any Named Insured against another Named Insured under this policy.

r.  **Covered by Other Coverages**

Any claim or part thereof which may be alleged as covered under this Coverage of this policy, if we have accepted coverage or coverage has been held to apply for such claim or part thereof under any other Coverage in this policy. This exclusion does not apply to any claim for medical expenses under Coverage C caused by bodily injury which is covered under Coverage A.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1.  **Insuring Agreement.**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for personal injury or advertising injury to which this insurance does not apply. We may at our discretion investigate any occurrence or offense and settle any claim or suit that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMIT OF LIABILITY AND DEDUCTIBLE (Section III); and

   (2) Our right and duty to defend end when we have used up the applicable Limit of Liability in the payment of judgments, settlements or supplementary payments.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.   This insurance applies to:

(1)  **Personal injury** caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)  **Advertising injury** caused by an offense committed in the course of advertising your goods, products or services;

but only if:

(a)  The offense was committed in the coverage territory; and
(b)  The offense was committed during the policy period.

2.   **Exclusions.**

This insurance does not apply to:

a.   **Personal injury or advertising injury:**

(1)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2)  Arising out of oral or written publication of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations;

(3)  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4)  For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b.   **Advertising injury** arising out of:

(1)  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)  The failure of goods, products or services to conform with advertised quality or performance;

(3)  The wrong description of the price of goods, products or services;

(4)  An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting; or

(5)  An offense disclosed in your application of insurance, or any accompanying documents provided to us, or, an offense you had knowledge of or information on, prior to the first inception date of continuous claims-made coverage with us, and which may result in a claim.

c.   **Personal injury** arising out of the actual, alleged or threatened exposure of persons or property to any radioactive matter.

EL 70 33 (Ed. 10 97)                                                                 8

d.  Personal injury arising out of the presence, ingestion or inhalation of, or exposure to, asbestos in any form or products containing asbestos.

e.  Personal injury arising out of the presence, ingestion, inhalation or absorption of, or exposure to, lead in any form or products containing lead.

f.  Personal injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time:

    (1)  Any loss, cost or expense arising out of any:

        (a)  Request, demand or order that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        (b)  Any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

g.  Personal Injury to:

    (1)  A person arising out of any:

        (a)  Refusal to employ that person;
        (b)  Termination of that person's employment; or
        (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person.

    (2)  The spouse, child, parent, brother or sister of the person as a consequence of bodily injury to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    (1)  Whether the insured may be liable as an employer or in any other capacity; and

    (2)  To any obligation to share damages with or repay someone else who must pay damages because of injury.

h.  Personal injury or advertising injury arising out of the rendering or failure to render any professional services by or for you, including:

    (1)  The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

    (2)  Supervisory, inspection or engineering services.

i.  Any claim or part thereof which may be alleged as covered under this Coverage of this policy, if we have accepted coverage or coverage has been held to apply for such claim under any other Coverage in this policy.

EL 70 33 (Ed. 10 97)                                                                          9

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement.**

   a. We will pay medical expenses as described below for bodily injury caused by an occurrence:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your work;

      provided that:

         (a) The accident takes place in the coverage territory and during the policy period;
         (b) The expenses are incurred and reported to us within one year of the date of the accident; and
         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Liability. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

   We will not pay expenses for bodily injury:

   a. To any insured.

   b. To a person hired to do work for or on behalf of any insured or tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an employee of any insured, if benefits for the bodily injury are payable or must be provided under a workers compensation or disability benefits law or a similar law.

   e. To a person injured while taking part in athletics.

   f. Included within the products-completed operations hazard.

   g. Excluded under Coverage A.

   h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any suit against an insured we defend under Coverage A and B:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments; but only for bond amounts within the applicable Limit of Liability. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the suit.

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the Limit of Liability.

## SELECTION OF COUNSEL - APPLICABLE TO COVERAGES A and B

In the event the insured is entitled by law to select independent counsel to defend a suit at our expense, the attorneys fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims or suits in the community where the claim arose or the suit is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency including experience in defending suits similar to the one pending against the insured and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the insured agrees that counsel will immediately respond to our requests for information regarding the suit.

EL 70 33 (Ed. 10 97)

11

## SECTION II - WHO IS AN INSURED

1.  Under Coverages A, B and C, if you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Under Coverages A, B and C, each of the following is also an insured:

    a.  Your employees, other than your executive officers but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no employee is an insured for:

        (1) **Bodily injury or personal injury:**

            (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-employee while in the course of his or her employment or while performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-employee as a consequence of paragraph (1)(a) above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) **Property damage to property:**

            (a) Owned, occupied or used by, or

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your employees or, if you are a partnership or joint venture, by any partner or member.

    b.  Any person (other than your employee) or any organization while acting as your real estate manager.

    c.  Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

BL 70 33 (Ed. 10 97)                                                                 12

P.040    96%    FEB-28-2007  10:43

3. Under Coverages A, B and C, with respect to mobile equipment registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. Bodily injury to a co-employee of the person driving the equipment; or

   b. Property damage to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Under Coverages A, B and C, any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to bodily injury or property damage that occurred before you acquired or formed the organization.

   c. Coverage B does not apply to personal injury or advertising injury arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

5. Under Coverage A, any person or organization that you are required in a written contract or agreement to include as an additional insured, provided the bodily injury or property damage occurs subsequent to the execution of the written contract or agreement, but only with respect to bodily injury or property damage arising from your work for that additional insured by or for you.

## SECTION III – LIMIT OF LIABILITY AND DEDUCTIBLE

1. The Limit of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. claims made or suits brought; or

   c. persons or organizations making claims or bringing suits.

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages, other than those covered under paragraph (5) of Exclusion f., in Section I., Coverage A, because of bodily injury or property damage included in the products completed operations hazard; and

   c. Damages under Coverage B.

EL 70 33 (Ed. 10 97)                                                13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of bodily injury and property damage included in the products-completed operations hazard.

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all personal injury and all advertising injury sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and
   b. Medical expenses under Coverage C

   because of all bodily injury and property damage arising out of any one occurrence.

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of property damage to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of bodily injury sustained by any one person.

8. The Deductible amount shown in the Declarations applies to each occurrence or each loss, as the case may be. The Limits of Liability apply in excess of the Deductible amount. You shall promptly reimburse us for advancing any amounts within your Deductible.

9. The same, related, or continuous occurrences or the same related, or continuous pollution conditions may result in bodily injury or property damage which occurs during the policy periods of different GL Pollution policies the Company issued to the Named Insured. In that case, all damages from all bodily injury or property damage resulting from such occurrences or pollution conditions shall be subject to the Each Occurrence Limit applicable to the first policy period during which any of such bodily injury or property damage occurred.

10. The inclusion herein of more than one insured or the making of claims and the bringing of suit by more than one person shall not operate to increase the Company's limit of liability. One or more claims arising out of the same or related pollution conditions arising from your work performed shall be considered a single claim, and the Each Occurrence Limit shown in the Declarations shall apply and only one Retention shall apply thereto.

11. The inclusion herein of more than one insured or the making of claims and the bringing of suit by more than one person shall not operate to increase the Company's limit of liability. One or more claims arising out of the same or related pollution conditions arising from your work performed shall be considered a single claim, and the Each Occurrence Limit shown in the Declarations shall apply and only one Retention shall apply thereto.

12. One or more occurrences arising out of the same or related pollution conditions arising from your work rendered over more than one policy period shall be considered a single claim. The claim shall be subject to the same limit in effect at the time of the first reported pollution condition.

   Furthermore, progressive or indivisible bodily injury or property damage over a period of days, weeks, months, or longer caused by the same, related, or continuous pollution conditions shall be deemed to have occurred only on the date of first exposure to such pollution conditions. Furthermore, if the date of first exposure is before the inception date of the first GL Pollution Policy the Company issued to the Named Insured, or can not be determined, but the progressive, indivisible bodily injury or property damage continues in fact to exist during this policy period, it will be deemed to have occurred only on the inception date of the first GL Pollution Policy the Company issued to the Named Insured.

   The Limit of Liability of this policy applies to the complete policy period, regardless of length.

EL 70 33 (Ed. 10 97)

14

## SECTION IV - CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or that of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit.**

   a. You must see to it that we are immediately notified in writing of an occurrence, or offense which may result in a claim. Notice should include:

      (1) How, when and where the occurrence, or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the occurrence or offense.

   b. Notice of an occurrence is not notice of a claim.

      If a claim is made or suit is brought against any insured, you must see to it that we receive immediate notice of the claim or suit.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or suit; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, admit any liability, settle any claims, assume any obligation, or incur any expense, other than for first aid, without written consent of the Company.

   **TO WHOM NOTICE SHOULD BE SENT**

   All Notices required under this Section IV. 2. shall be reported to:

   > Kemper Environmental Claims
   > Princeton Forrestal Village
   > 155 Village Boulevard, Suite 300
   > Princeton, NJ 08540-5743
   > FAX: 609 936-3118
   > PHONE: 800 679-0025

   or such other address(es) as we may substitute in writing.

EL 70 33 (Ed. 10 97)                                                                                      15

3. **Legal Action Against Us.**

No person or organization has a right under this policy:

    a.  To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

    b.  To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

**Applicable to Coverages A and B**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this policy, our obligations are limited as follows:

    a.  **Primary Insurance**

        This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

    b.  **Excess Insurance**

        This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

        (1)  That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for your work;

        (2)  That is Fire insurance for premises rented to you; or

        (3)  If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

        When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

        (1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        (2)  The total of all deductible and self-insured amounts under all that other insurance.

        We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limit of Liability shown in the Declarations of this Coverage Part.

    c.  **Method of Sharing**

EL 70 33 (Ed. 10 97)

16

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Liability or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Liability to the total applicable Limit of Liability of all insurers.

5.  **Premium Adjustment.**

When requested by us, the Named Insured shall furnish us with a signed statement of the insured's gross receipts total or other premium base as specified in the Declarations for the policy period.

The actual earned premium shall be computed thereon at the premium rate stipulated in the rate endorsement attached to this policy. If the actual earned premium is more than the deposit premium, the insured shall pay the difference to the us; if less, we shall refund the difference to the insured except that we shall be entitled to the minimum premium as stated in the Declarations.

6.  **Representations.**

By accepting this policy, you agree:

    a.  The statements in the Declarations are accurate and complete;

    b.  Those statements are based upon representations you made to us; and

    c.  We have issued this policy in reliance upon your representations.

7.  **Separation of Insureds.**

Except with respect to the Limit of Liability, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

    a.  As if each Named Insured were the only Named Insured; and

    b.  Separately to each insured against whom claim is made or suit is brought.

8.  **Transfer of Rights of Recovery Against Others to Us.**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

9.  **When We Do Not Renew.**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. **Advertising injury** means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels any person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or infringement of copyright, title or slogan.

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include mobile equipment.

3. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **Claim** means a written demand received by the insured seeking a remedy and alleging liability or responsibility on the part of the insured for compensatory damages. Claim includes a suit or a demand for injunctive or equitable relief.

5. **Claim expenses** means:

   a. Fees charged by any lawyer designated by us; and

   b. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a claim, if authorized by us.

   Claim expenses shall not include:

   a. The salaries of any employee of ours; and

   b. Costs, charges or other expenses incurred by the insured for goods supplied or services performed by or on behalf of the staff or salaried employees of the insured or its parent, subsidiary or affiliate, unless such costs, charges or other expenses are incurred with the prior written approval of us at our sole discretion.

6. **Cleanup costs** means expenses incurred in the removal or remediation of contaminated soil, surface water, groundwater, or other contamination.

7. **Coverage Territory** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or
         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

EL 70 33 (Ed. 10 97)                                                                                      18

(2) The insured's responsibility to pay damages is determined in a suit on the merits, in the territory described in a. above or in a settlement we agree to.

8.  **Employee** includes a leased worker. **Employee** does not include a temporary worker.

9.  **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

      (1) The repair, replacement, adjustment or removal of **your product** or **your work**, or

      (2) Your fulfilling the terms of the contract or agreement.

11. **Insured contract** means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

      Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

EL 70 33 (Ed. 10 97)                                                               19

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering services.

12. **Leased Worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. Leased worker does not include a temporary worker.

13. **Loading or Unloading** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or auto;

    b. While it is in or on an aircraft, watercraft or auto; or

    c. While it is being moved from an aircraft, watercraft or auto to the place where it is finally delivered; but loading or unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft.

14. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or;

        (2) Cherry pickers and similar devices used to raise or lower workers.

EL 70 33 (Ed. 10 97)

P.048   96%   FEB-28-2007  10:44

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

(1) Equipment designed primarily for:

(a) Snow removal;
(b) Road maintenance, but not construction or resurfacing;
(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

15. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. **Personal Injury** means injury, other than bodily injury, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

17. **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of cancellation of this policy.

18. **Pollution Conditions** means the discharge, dispersal, release, seepage, migration, escape, or presence of smoke, vapors, odors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, including medical, infectious, or pathological wastes, or other irritants, contaminants, pollutants, or radiation, including electromagnetic fields and naturally occurring radioactive materials, into or upon land or structures thereupon, the atmosphere, or any watercourse or body of water (including groundwater), which results in bodily injury or property damage.

19. **Products - Completed Operations Hazard**

a. Includes all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:

(1) Products that are still in your physical possession; or

EL 70 33 (Ed. 10 97)

21

(2) Work that has not yet been completed or abandoned. However, your work will be deemed to be completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b.  Does not include bodily injury or property damage arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

20. Property damage means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it; or

  c.  Solely with respect to coverage within the scope of paragraphs (4) and (5) of Exclusion f., Pollution, in Section I., Coverage A, 2. Exclusions, property damage also means loss, cost or expense arising out of the testing, monitoring, cleanup, removal, containment, treatment, detoxification, neutralization or other response to or assessment of the effect of pollutants, as defined in Section I., Coverage A, 2. Exclusions, Exclusion f., Pollution.

21. Suit means a civil proceeding in which damages to which this insurance applies are alleged. Suit includes:

  a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

22. Temporary Worker means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

23. Waste disposal sites means sites utilized for the purpose of the disposal of any solid waste, whether hazardous or not and whether authorized or not, other than sites at which you are performing your work.

EL 70 33 (Ed. 10 97)

22

24. **Your product means:**

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:

        (1) You;

        (2) Others trading under your name; or

        (3) A person or organization whose business or assets you have acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product includes:**

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

    b. The providing of or failure to provide warnings and instructions.

**Your product does not include** vending machines or other property rented to or located for the use of others but not sold.

25. **Your work means:**

    a. Work or operations performed by your or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work includes:**

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

    b. The providing of or failure to provide warnings or instructions.

IN WITNESS WHEREOF we have caused this policy to be signed by our president and secretary and signed on the Declarations page by our duly authorized representative.

President

Secretary

BL 70 33 (Ed. 10 97)

23

FEB-28-2007  10:44                96%                P.051

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A.  CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

## B.  CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C.  EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D.  INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E.  PREMIUMS

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

IL 00 17 (Ed. 11 85)                Page 1 of 2                Printed in U.S.A.

02/28/2007  11:35                NO.855  P051

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

IL 00 17 (Ed. 11 85)

Printed in U.S.A.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**FARM COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
**SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION**
**UNDERGROUND STORAGE TANK POLICY**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      1) With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "Special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

a)  Any "nuclear reactor";

b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

c)  Any equipment or device used for the processing fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 (Ed. 11 94)                     Page 2 of 2                     Printed in U.S.A.