# EXHIBIT P

Slip Copy, 2008 WL 1882714 (S.D.N.Y.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for Reliance Insurance Company, Plaintiff,
v.
DORMITORY AUTHORITY-STATE OF NEW YORK, TDX Construction Corp. and Kohn Pedersen Fox Associates, P.C.,
Defendants.
Dormitory Authority of the State of New York and TDX Construction Corp., Third-Party, Plaintiffs,
v.
Trataros Construction, Inc., Third-Party Defendant.
Trataros Construction, Inc. and Travelers Casualty and Surety Company, Fourth-Party, Plaintiffs,
v.
Carolina Casualty Insurance Company; Bartec Industries, Inc.; Dayton Superior Specialty Chemical Corp. a/k/a
Dayton Superior Corporation; Specialty Construction Brands, Inc. t/a TEC; Kemper Casualty Insurance Company
d/b/a Kemper Insurance Company; Great American Insurance Company; National Union Fire Insurance Company of
Pittsburgh, Pa.; United States Fire Insurance Company; Allied World Assurance Company (U.S.) Inc. f/k/a
Commercial Underwriters Insurance Company; Zurich American Insurance Company d/b/a Zurich Insurance
Company; Ohio Casualty Insurance Company d/b/a Ohio Casualty Group; Harleysville Mutual Insurance Company
(a/k/a Harleysville Insurance Company); John Does 1-20 and XYZ Corps. 1-20, Fourth-Party Defendants.
No. 07 Civ. 6915(DLC).
April 25, 2008.

JoAnne M. Bonacci, Eli J. Rogers, Dreifuss Bonacci & Parker LLP, Florham Park, NJ, for Fourth-Party Plaintiffs
Trataros Construction, Inc. and Travelers Casualty and Surety Company.

Christian H. Gannon, Robert R. Rigolosi, Gregory N. Harris, Segal McCambridge Singer & Mahoney, Ltd., New York,
NY, for Fourth-Party Defendant Specialty Construction Brands, Inc. t/a TEC.

*OPINION AND ORDER*

DENISE COTE, District Judge.

*1 On August 1, 2007, plaintiff Travelers Casualty and Surety Company ("Travelers"), acting as administrator for Reliance Insurance Company ("Reliance") and asserting claims assigned to Travelers by Trataros Construction, Inc. ("Trataros"), commenced this action against defendants Dormitory Authority-State of New York ("DASNY"), TDX Construction Corp. ("TDX"), and Kohn Pedersen Fox Associates, P.C. ("KPF"). On September 28, 2007, DASNY and TDX filed their answer to the complaint, and asserted various affirmative defenses, counterclaims against Trataros, and cross-claims against KPF. A third-party complaint asserting these counterclaims was also filed by DASNY and TDX on that date. Trataros filed an answer to the third-party complaint on November 13, 2007, which included a cross-claim against KPF and a counterclaim against TDX, both seeking indemnification, contribution, and exoneration. On that date, Trataros and Travelers also filed a fourth-party complaint against a subcontractor, two material suppliers, and twelve insurance companies. Two of those insurance companies-Allied World Assurance Company (U.S.) Inc. ("Allied World") and United States Fire Insurance Company ("U.S.Fire")-and one of the material suppliers-Specialty Construction Brands, Inc. (known as "TEC")-moved to dismiss the fourth-party claims against them. Allied World's motion was denied in an Order dated April 2, 2008. The instant opinion addresses the motion filed by TEC. A separate Opinion will address U.S. Fire's motion. For the following reasons, TEC's motion to dismiss is granted. FN1

> FN1. Since TEC's motion was submitted, Trataros and Travelers have filed an amended fourth-party complaint in order to add an additional fourth-party defendant. The allegations of the amended complaint against TEC are identical to the allegations contained in the original complaint. TEC's motion will be construed as a motion to dismiss the amended complaint.

BACKGROUND

The parties to this action were each involved, directly or indirectly, with the design or construction of a 785,000 square-foot structure for the use of Baruch College (part of the City University of New York ("CUNY")) located between 24th and 25th Streets and Lexington and Third Avenues in Manhattan (the "Project"). According to Travelers's initial complaint, the Project was architecturally ambitious, and included interlocking atria, a complex curvilinear façade, and aluminum paneling. DASNY acted as the "owner" of the Project on behalf of CUNY and Baruch College. Defendant KPF was retained by DASNY to act as the architect of record for the Project; TDX was hired to act as the construction manager.

DASNY entered into more than a dozen co-prime contracts for the Project's construction work, two of which-referred to by the parties as Contract No. 15 and Contract No. 16-were awarded to Trataros (the "Trataros Contracts"). [FN2] The work called for under the Trataros Contracts included the construction or installation of, *inter alia,* exterior paneling, windows, the "curtainwall," elevators and escalators, roofing systems, a swimming pool, and, most relevant here, an epoxy terrazzo flooring system that, according to the third-party compliant filed by DASNY and TDX, was to cover "thousands of square feet of public space in the Project."

> FN2. The contract value of the Trataros Contracts was a total of $74,362,000.00, and Trataros was required to obtain performance and payment bonds in that amount as a prerequisite to being awarded the contracts. Those bonds were obtained from Reliance, who subsequently entered into an administrative and reinsurance agreement with Travelers with respect to these bonds; Trataros, in turn, assigned its affirmative claims and causes of action arising from the Project to Travelers.

*2 As alleged in the fourth-party complaint, Trataros entered into subcontracts with several entities, including G.M. Crocetti Inc. ("Crocetti"). Under the terms of their subcontract, Crocetti was responsible for, among other things, the installation of some portion of the epoxy terrazzo flooring system. The fourth-party complaint alleges upon information and belief that "in connection with the work subcontracted to it by Trataros, Crocetti used materials manufactured and/or supplied by TEC," which were then "incorporated into the project's epoxy terrazzo flooring system." [FN3] The fourth-party complaint also alleges upon information and belief that the concrete floor slabs over which the epoxy terrazzo flooring was laid were installed by a "separate co-prime contractor other than Trataros."

> FN3. Fourth-party defendant Bartec Industries, Inc. ("Bartec") also received a subcontract that called for the installation of a portion of the epoxy terrazzo flooring. Bartec is alleged to have used materials manufactured or supplied by fourth-party defendant Dayton Superior Corporation ("Dayton Superior"), materials which, like TEC's, were then "incorporated" into the flooring.

DASNY and TDX's third-party complaint against Trataros alleges that

[t]he epoxy terrazzo that Trataros and Crocetti installed in the Project is deteriorating and is otherwise defective. Among other things, the epoxy terrazzo is cracking and crumbling at the perimeter of the poured area at the zinc divider strips over substantial areas of the epoxy terrazzo installation. The epoxy terrazzo is also delaminating and "blistering" in increasingly larger areas.

These defects are alleged to have been "caused by defective workmanship and inappropriate materials provided by Trataros and its subcontractors and suppliers, who, among other things, failed to properly prepare and install the material." The third-party complaint asserts that "remediation" of this defective flooring will cost at least $13 million, and contains a $20 million breach of contract claim against Trataros based primarily on the problems identified in the epoxy terrazzo flooring system.

The fourth-party complaint filed by Trataros and Travelers, in turn, asserts negligence, breach of contract, breach of warranty, indemnification, contribution, and exoneration claims against TEC, each contingent upon a finding that Trataros or Travelers is liable to DASNY and TDX for the alleged defects in the epoxy terrazzo flooring. The fourth-party complaint recites DASNY and TDX's claims regarding the flooring and adds, "upon information and belief," that those allegations

relate to allegations of purported defects in the Project's epoxy terrazzo flooring system that have allegedly caused and/or allegedly will cause physical damage to, and/or impair the use of, the Project including but not limited to alleged physical damage and/or impairment to work performed and/or installed by separate co-prime contractors other than Trataros.

TEC has now moved to dismiss Trataros and Travelers's fourth-party claims under Rule 12(b)(6), Fed.R.Civ.P.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir.2006) (citation omitted). A court must apply a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007) (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). In deciding the motion, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citation omitted).

*\*3* The parties focus most intently on the question of whether Trataros and Travelers can maintain a negligence action against TEC arising out of the alleged defects in the epoxy terrazzo flooring. Based upon a review of the allegations of the third- and fourth-party complaints, it is apparent that they may not.

The New York Court of Appeals has concluded that "[t]ort recovery in strict products liability and negligence against a manufacturer should not be available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract." *Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.)*, 84 N.Y.2d 685, 694 (1995); *cf. East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 871 (1986). Tort remedies are not available under these circumstances for "injury to the product itself or consequential losses flowing therefrom." *Bocre Leasing*, 84 N.Y.2d at 693. This is known as the "economic loss doctrine." *See, e.g., Weiss v. Polymer Plastics Corp.*, 21 A.D.3d 1095, 1096 (N.Y.App. Div., 2d Dep't 2005).

Courts have recognized an exception to the economic loss doctrine where a defective product causes damage not only to itself, but also to "other property," *see Trump Intern. Hotel & Tower v. Carrier Corp.*, 524 F.Supp.2d 302, 309 (S.D.N.Y.2007) (citing cases); *see also Bocre Leasing*, 84 N.Y.2d at 692 (noting that tort liability is "generally present" when "personal injury and other property damage" is at issue), and it is on this exception that Trataros and Travelers rely here. They argue that "to the extent DASNY and/or TDX may establish at trial that TEC s products caused physical damage to other elements of the flooring system," they "will be entitled to recovery from TEC" on a negligence theory. This argument is grounded in Trataros and Travelers's fourth-party allegation, upon information and belief, that DASNY and TDX's third-party allegations against them regarding the epoxy terrazzo flooring "relate to" actual or potential damage that the defective flooring has caused or will cause "to work performed and/or installed by separate co-prime contractors other than Trataros." In sum, Trataros and Travelers maintain that the floor elements-such as the underlying concrete floor slabs-that were installed by other contractors constitute "other property," and that insofar as DASNY and TDX have alleged that the defective epoxy terrazzo flooring has caused or will cause damage to such "other property," its own forth-party tort action against TEC cannot be dismissed under the economic loss doctrine.

Regardless of the merits of the contention that the flooring work performed by other contractors constitutes "other property" under the economic loss doctrine,[FN4] Trataros and Travelers's contention on this point must be rejected because the representations in the fourth-party complaint regarding the claims made by DASNY and TDX in the third-party complaint do not withstand scrutiny. Simply put, DASNY and TDX have not, in fact, alleged that the defective epoxy terrazzo caused damage to any "work performed and/or installed by separate co-prime contractors other than Trataros." As described above, DASNY and TDX have alleged in their third-party complaint that the epoxy terrazzo itself is "deteriorating," "defective," "cracking," "crumbling," "delaminating," and "blistering," but they do not allege that these defects have, in turn, caused damage to any other aspect of the structure or flooring. Trataros and Travelers's allegation to the contrary- *i.e.*, that such damage to "other property" is, in fact, implicated by DASNY and TDX's third-party complaint-cannot be credited and will not defeat the instant motion.[FN5] *See generally Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007).[FN6]

FN4. TEC has cited several recent New York cases that cast serious doubt upon that premise. *See, e.g., Weiss*, 21 A.D.3d at 1096 (action against stucco manufacturer barred by economic loss doctrine despite allegations of damage to the underlying plywood substrate due to water infiltration); *Amin Realty, LLC v. K & R Const. Corp.*, 306 A.D.2d 230, 231 (N.Y.App. Div., 2d Dep't 2003) (action against contractor

who poured defective concrete dismissed despite resulting need to remove, reinstall, and repair the entire first floor of the building).

FN5. The fourth-party plaintiffs also contend that the $13 million in damages claimed by DASNY and TDX as a result of the defective flooring creates a "strong inference" that "more than economic losses" are at issue here, because the products supplied by TEC appear to have cost far less than that amount. This argument is simply not "sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns*, 493 F.3d at 98. It should suffice to note that the $13 million is sought not simply because the flooring is allegedly defective and in need of replacement, but also because such replacement "will cause major disruptions to CUNY's operations in the building." Put differently, it may be safely assumed that the total cost of installing a floor during the construction of a building is significantly less than the total cost of removing and replacing a floor while a building is already in use.

FN6. As the Court of Appeals noted in *Roth*, "[w]hen a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed." 489 F.3d at 509. Similarly, "when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made." *Id.* In this case, Trataros and Travelers's fourth-party complaint alleges, in essence, that DASNY and TDX have filed third-party complaint against them premised, in part, on a assertion that the defective epoxy terrazzo flooring caused damage to other elements of the flooring system. Under *Roth*, it is thus permissible to look to the third-party complaint to see whether such a claim was, in fact, made against Trataros.

*4 Viewed in this context, this case appears remarkably similar to *Bellevue South Assocs. v. HRH Const. Corp.*, 78 N.Y.2d 282 (1991), in which the plaintiff-building owner sought to hold the defendant-manufacturer liable in tort in connection with allegedly defective floor tiles. After noting that the defective floor tiles were not "inherently dangerous product[s]," *id.* at 294, the Court of Appeals stated that "delamination of the tile" is not "personal injury or property damage, but solely injury to the product itself," and "simply a case of economic disappointment" for which "the remedy lies in contract-law theories such as express and implied warranties." *Id.* at 294-95. Similarly, in this case, the cracking, delamination, and other alleged defects in the epoxy terrazzo do not implicate damage to "other property," and thus cannot, standing alone, give rise to claims by Trataros and Travelers against TEC sounding in tort.FN7

FN7. Although the *Bellevue South* court was addressing the question of whether the manufacturer could be held strictly liable, the same logic applies to negligence claims.

Trataros and Travelers's other arguments regarding their breach of contract, breach of warranty, indemnification, and contribution, claims also may be swiftly rejected.FN8 First, with respect to their indemnification and contribution claims, Trataros and Travelers invoke the doctrine of equitable subrogation. "Rooted in equity, the purpose of the subrogation doctrine is to afford a person who pays a debt that is owed primarily by someone else every opportunity to be reimbursed in full." *Chemical Bank v. Meltzer*, 93 N.Y.2d 296, 304 (1999); *see also Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir.1999). Trataros and Travelers argue that their indemnification and contribution claims must survive insofar as Trataros or Travelers may be held liable to DASNY and TDX for flooring defects attributable to Crocetti (who installed portions of the epoxy terrazzo flooring), who, in turn, may be entitled to payment from TEC, who allegedly supplied the materials used by Crocetti. "In that event," they argue, having been held liable to DASNY and TDX for defects attributable to Crocetti, "Travelers and/or Trataros will effectively 'stand in the shoes' of Crocetti, such that they may enforce Crocetti's rights of action against those entities which caused or contributed to Crocetti's potential liability."

FN8. Trataros and Travelers do not separately defend their exoneration claim.

As TEC notes, however, Crocetti's "shoes" have already been filled. Trataros and Travelers have included Carolina Casualty Insurance Company ("Carolina Casualty"), Crocetti's surety,FN9 as a fourth-party defendant in this action, and seek from it recovery against the performance bond for any liability imposed upon them by DASNY and TDX that is attributable to Crocetti. In its answer, Carolina Casualty has, in turn, asserted a cross-claim against TEC alleging that TEC is required to indemnify Crocetti/Carolina Casualty in the event that any liability is imposed upon it by Trataros or Travelers. FN10 It is not apparent why, under this scenario, equity requires that Trataros and Travelers be permitted to maintain their own action against TEC on subrogation grounds, and Trataros and Travelers have

cited no case requiring or recommending such a result. Cf. *Aetna Cas. & Sur. Co. v. Norwalk Foods, Inc.,* 480 N.Y.S.2d 851, 853 (N.Y.Civ.Ct.1984) ("The doctrine [of subrogation] should not be invoked against one whose equities are equal or superior to the party seeking to be subrogated.").

> FN9. Crocetti itself is not a party to this action; Carolina Casualty's answer to the fourth-party complaint reports that Crocetti has filed for bankruptcy.

> FN10. TEC also notes that Carolina Casualty's answer to the fourth-party complaint states that "Crocetti found no fault with TEC's materials, and is still not aware of any fault with TEC's materials."

**\*5** Second, Trataros and Travelers argue that Trataros was an intended beneficiary of a contract between TEC and Crocetti, and that they therefore may proceed with their breach of contract and breach of warranty claims on that basis. (It is not alleged that any contract existed between TEC and Trataros directly.) "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *Madeira v. Affordable Hous. Found., Inc.,* 469 F.3d 219, 251 (2d Cir.2006) (citation omitted). " 'A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.' " *Id.* (quoting *State of Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling,* 95 N.Y.2d 427, 434-35 (2000)).

The fourth-party complaint does not state a third-party beneficiary claim. The only allegation in Trataros and Travelers's fourth-party complaint relating to any manner of agreement between Crocetti and TEC is that "Crocetti used materials manufactured and/or supplied by TEC" in installing the floor, and no allegations are made regarding the terms of any such agreement. And, as TEC points out, Rider "G" to the subcontract between Trataros and Crocetti (submitted by Trataros and Travelers in opposition to the motion to dismiss FN11), lists "Terrazzo Marble Supply" of Chicago, Illinois as the "Material Vendor/Supplier" for Crocetti, not TEC. In sum, there is simply no basis in the pleadings or the documents incorporated by reference therein for permitting Trataros and Travelers's breach of contract and breach of warranty claims against TEC to proceed on the theory that Trataros was an intended beneficiary to an agreement between TEC and Crocetti.

> FN11. The terms of the Trataros-Crocetti agreement may be considered in deciding this motion to dismiss, as that agreement is incorporated by reference in the fourth-party complaint. *Sira,* 380 F.3d at 67.

CONCLUSION
TEC's motion to dismiss the fourth-party complaint, filed on January 14, 2008, is granted.

SO ORDERED.

S.D.N.Y.,2008.
Travelers Cas. and Sur. Co. v. Dormitory Authority-State of N.Y.
Slip Copy, 2008 WL 1882714 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 2008 WL 2304973 (Trial Pleading) Answer of Dayton Superior Corporation to Fourth-Party Plaintiff's Amended Complaint, With Counterclaims, Cross-Claims and Answer to Cross-Claims (Apr. 29, 2008) Original Image of this Document (PDF)
• 2008 WL 2304972 (Trial Pleading) National Union's Answer to the Amended Fourth Party Complaint, Affirmative Defenses, Jury Demand, Cross Claim and Answer to Cross-claims (Apr. 15, 2008) Original Image of this Document (PDF)
• 2008 WL 2304971 (Trial Pleading) Answer to Amended Fourth-Party Complaint of Trataros Construction, Inc. and Travelers Casualty & Surety Company on Behalf of Ohio Casualty Insurance Company d/b/a Ohio Casualty Group, Separate Defenses, Counterclaim, Crossclaims and Answer to Crosscl aims (Apr. 10, 2008) Original Image of this Document (PDF)
• 2008 WL 2304970 (Trial Pleading) Amended Fourth-Party Complaint (Apr. 8, 2008) Original Image of this Document (PDF)

- **2008 WL 2304968** (Trial Pleading) Answer of Weidlinger Associates to Defendant Kohn Petersen Fox Associates, P.C.'s Third-Party Complaint (Apr. 4, 2008) Original Image of this Document (PDF)
- **2008 WL 2304969** (Trial Pleading) Answer of Castro-Blanco and Arquitectonica to Kohn Petersen Fox Associates, P.C.'s Third-Party Complaint (Apr. 4, 2008) Original Image of this Document (PDF)
- **2008 WL 2304967** (Trial Pleading) Third-Party Answer, Cross-Claim and Counterclaim (Mar. 26, 2008) Original Image of this Document (PDF)
- **2008 WL 2304966** (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Fourth-Party Defendant United States Fire Insurance Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Mar. 24, 2008) Original Image of this Document (PDF)
- **2008 WL 2304965** (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Fourth-Party Defendant, United States Fire Insurance Company's Motion to Dismiss the Fourth-Party Complaint (Mar. 11, 2008) Original Image of this Document (PDF)
- **2008 WL 877036** (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Allied World Assurance Company (U.S.) Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Feb. 22, 2008) Original Image of this Document (PDF)
- **2008 WL 877035** (Trial Pleading) Answer to Fourth Party Complaint on behalf of Great American Insurance Company with Crossclaims, Answer to Crossclaims and Jury Demand (Feb. 21, 2008) Original Image of this Document (PDF)
- **2008 WL 872862** (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Dismiss Complaint (Feb. 15, 2008) Original Image of this Document (PDF)
- **2008 WL 872861** (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Fourth-Party Defendant, Allied World Assurance Company (U.S.) Inc.'s Motion to Dismiss the Fourth-Party Complaint (Feb. 11, 2008) Original Image of this Document (PDF)
- **2008 WL 877034** (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Fourth-Party Defendant United States Fire Insurance Company's Motion to Dismiss Pursuant to Fed.R. Civ. P. 12(b)(6) (Feb. 11, 2008) Original Image of this Document (PDF)
- **2008 WL 877043** (Trial Pleading) Defendant Kohn Pedersen Fox Associates, P.C.'s Amended Answer to the Complaint and Cross-Claims (Feb. 8, 2008) Original Image of this Document (PDF)
- **2008 WL 877041** (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Fourth-Party Defendant, Specialty Construction Brands, Inc. t/a Tec's Motion to Dismiss the Fourth-Party Complaint (Feb. 4, 2008) Original Image of this Document (PDF)
- **2008 WL 877037** (Trial Pleading) Fifth-Party Complaint (Feb. 1, 2008) Original Image of this Document (PDF)
- **2008 WL 877042** (Trial Pleading) Defendant Kohn Pedersen Fox Associates, P.C.'s Third-party Complaint (Feb. 1, 2008) Original Image of this Document (PDF)
- **2008 WL 877040** (Trial Pleading) Harleysville's Answer to the Fourth Party Complaint, Answer to Crossclaims, and Crossclaims for Contribution and/or Indemnification (Jan. 15, 2008) Original Image of this Document (PDF)
- **2008 WL 877038** (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Dismiss Complaint (Jan. 14, 2008) Original Image of this Document (PDF)
- **2008 WL 877039** (Trial Pleading) Answer of Lumbermens Mutual Casualty Company, Improperly Sued as Kemper Casualty Insurance Company d/b/a Kemper Insurance Company to Fourth-party Complaint, and Counterclaim (Jan. 14, 2008) Original Image of this Document (PDF)
- **2008 WL 872863** (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Allied World Assurance Company (U.S.) Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Jan. 11, 2008) Original Image of this Document (PDF)
- **2007 WL 5041304** (Trial Pleading) Answer to Fourth-Party Complaint (Dec. 14, 2007) Original Image of this Document (PDF)
- **2007 WL 5041303** (Trial Pleading) Answer to Fourth-Party Complaint of Trataros Construction, Inc. and Travelers Casualty & Surety Company on Behalf of Ohio Casualty Insurance Company d/b/a Ohio Casualty Group, Separate Defenses, Counterclaim and Crossclaims (Dec. 7, 2007) Original Image of this Document (PDF)
- **2007 WL 5041302** (Trial Pleading) Answer to Fourth Party Complaint (Nov. 30, 2007) Original Image of this Document (PDF)
- **2007 WL 5041301** (Trial Pleading) Fourth-Party Complaint (Nov. 14, 2007) Original Image of this Document (PDF)
- **2007 WL 5041300** (Trial Pleading) Trataros Construction, Inc.'s Answer to Third-Party Complaint (Nov. 13, 2007) Original Image of this Document (PDF)
- **2007 WL 5041299** (Trial Pleading) Plaintiff's Answer to Counterclaims Asserted by Dormitory Authority - State of New York -with- Cross-Claims (Oct. 26, 2007) Original Image of this Document (PDF)

- 2007 WL 5041298 (Trial Motion, Memorandum and Affidavit) Reply Memorandum on Motion to Dismiss Complaint (Oct. 23, 2007) 🖺 Original Image of this Document (PDF)
- 2007 WL 5041297 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendant, Kohn Pedersen Fox Associates, P.C.'s Motion to Dismiss (Oct. 17, 2007) 🖺 Original Image of this Document (PDF)
- 2007 WL 5041296 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Dismiss Complaint (Oct. 2, 2007) 🖺 Original Image of this Document with Appendix (PDF)
- 2007 WL 5041295 (Trial Pleading) Third-Party Complaint (Sep. 28, 2007) 🖺 Original Image of this Document (PDF)
- 2007 WL 5041305 (Trial Pleading) Answer of Dasny and TDX With Affirmative Defenses, Counterclaims, and Cross-Claims (Sep. 28, 2007) 🖺 Original Image of this Document (PDF)
- 1:07cv06915 (Docket) (Aug. 1, 2007)

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT Q

**Westlaw.**

Slip Copy                                                                                           Page 1
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

**H**
**Travelers** Cas. and Sur. Co. v. Dormitory Author-
ity-State of New York
S.D.N.Y.,2008.
Only the Westlaw citation is currently available.
        United States District Court,S.D. New York.
**TRAVELERS** CASUALTY AND SURETY COM-
PANY as Administrator for Reliance Insurance
                Company, Plaintiff,
                        v.
DORMITORY AUTHORITY-STATE OF NEW
YORK, **TDX** Construction Corp. and Kohn Peder-
        sen Fox Associates, P.C., Defendants.
Dormitory Authority of the State of New York and
**TDX** Construction Corp., Third-Party, Plaintiffs,
                        v.
Trataros Construction, Inc., Third-Party, Defendant.
Trataros Construction, Inc. and **Travelers** Casualty
    and Surety Company, Fourth-Party, Plaintiffs,
                        v.
Carolina Casualty Insurance Company; Bartec In-
dustries, Inc.; Dayton Superior Specialty Chemical
Corp. a/k/a Dayton Superior Corporation; Specialty
    Construction Brands, Inc. t/a TEC; Kemper Casu-
    alty Insurance Company d/b/a Kemper Insurance
    Company; Great American Insurance Company;
    National Union Fire Insurance Company of Pitts-
    burgh, Pa.; United States Fire Insurance Company;
    Allied World Assurance Company (U.S.) Inc. f/k/a
        Commercial Underwriters Insurance Company;
    Zurich American Insurance Company d/b/a Zurich
        Insurance Company; Ohio Casualty Insurance
    Company d/b/a Ohio Casualty Group; Harleysville
    Mutual Insurance Company (a/k/a Harleysville In-
        surance Company); John Does 1-20 and XYZ
        Corps. 1-20, Fourth-Party Defendants.
                **No. 07 Civ. 6915(DLC).**

                    June 25, 2008.

JoAnne M. Bonacci, Eli J. Rogers, Dreifuss Bon-
acci & Parker LLP, Florham Park, NJ, for Fourth-
Party Plaintiffs Trataros Construction, Inc. and
Travelers Casualty and Surety Company.

Kristin V. Gallagher, John P. De Filippis, Carroll,
McNulty & Kull LLC, New York, NY, for Fourth-
Party Defendant United States Fire Insurance Com-
pany.

                *OPINION AND ORDER*

DENISE COTE, District Judge.
*1 This Opinion concludes that a seven-month
delay in providing notice of a claim to an insurer is
unreasonable and relieves the insurer of any obliga-
tion to provide coverage in this complex construc-
tion litigation. This litigation relates to alleged
problems in the design and construction of a build-
ing for the use of Baruch College (the "Project").
On August 1, 2007, plaintiff Travelers Casualty and
Surety Company ("Travelers"), acting as adminis-
trator     for     Reliance     Insurance     Company
("Reliance") and asserting claims assigned to Trav-
elers by Trataros Construction, Inc. ("Trataros"),
commenced this action against defendant Dormit-
ory Authority-State of New York ("DASNY") and
others. Trataros performed work on the Project for
DASNY, the owner of the Project.

On November 13, 2008, after waves of pleadings,
Trataros and Travelers filed a fourth-party com-
plaint against a subcontractor, two material suppli-
ers, and twelve insurance companies. One of the in-
surance companies, United States Fire Insurance
Company ("U.S.Fire"), filed the motion addressed
through this Opinion.[FN1]For the following reasons,
U.S. Fire's motion to dismiss [FN2] is converted to a
motion for summary judgment and granted.

>        FN1. A second insurance company-Allied
>        World Assurance Company (U.S .) Inc.
>        ("Allied World")-and one of the material
>        suppliers-Specialty     Construction     Brands,
>        Inc. (known as "TEC")-also moved to dis-
>        miss the fourth-party claims against them.
>        Allied World's motion was denied in an
>        Order dated April 2, 2008; TEC's motion
>        was granted in an Opinion dated April 25,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

2008. *Travelers Cas. & Sur. Co. v. Dormitory Auth.,* No. 07 Civ. 6915, 2008 WL 1882714 (S.D.N.Y. Apr. 25, 2008).

FN2. After U.S. Fire's motion was submitted, Trataros and Travelers filed an amended fourth-party complaint in order to add an additional fourth-party defendant. The allegations of the amended complaint against U.S. Fire are identical to the allegations contained in the original fourth-party complaint. By letter dated April 17, 2008, U.S. Fire-with the consent of Trataros and Travelers-requested that U.S. Fire's motion be construed as a motion to dismiss the amended complaint. That request was granted by a memorandum endorsement of April 18.

## BACKGROUND

Much of the relevant background is provided in this Court's Opinion of April 25, 2008, familiarity with which will be assumed. *Travelers Cas. & Sur. Co.,* 2008 WL 1882714, at *1-2. The parties to this action were each involved, directly or indirectly, with the design or construction of the Project, a 785,000 square-foot structure located between 24th and 25th Streets and Lexington and Third Avenues in Manhattan. DASNY, who acted as the "owner" of the Project on behalf of City University of New York and Baruch College, entered into more than a dozen co-prime contracts for the Project's construction work, two of which were awarded to Trataros.FN3

FN3. The contract value of Trataros's contracts was a total of $74,362,000.00, and Trataros was required to obtain performance and payment bonds in that amount as a prerequisite to being awarded the contracts. Those bonds were obtained from Reliance, who subsequently entered into an administrative and reinsurance agreement with Travelers with respect to these bonds; Trataros, in turn, assigned its affirmative claims and causes of action arising from

the Project to Travelers.

In connection with the work to be performed by Trataros under these contracts, U.S. Fire issued a comprehensive general liability policy to Trataros for the period April 1, 1998 to April 1, 1999, which was subsequently renewed and extended to April 1, 2000 (the "U.S. Fire CGL Policy").FN4 Under the U.S. Fire CGL Policy, coverage is provided for, *inter alia,* claims based upon "property damage" arising out of an "occurrence." "Property damage" is defined by the policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured"; an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

FN4. U.S. Fire's initial moving papers indicated that its policy expired on April 1, 1999; in its reply papers, however, U.S. Fire acknowledges that April 1, 2000 is the expiration date for the policy at issue here.

The U.S. Fire CGL Policy also contains two notice provisions. One is a condition requiring that, in the event of an "occurrence," Trataros, as the insured, "must see to it that we [U.S. Fire] are notified as soon as practicable." In the event of a "claim or 'suit' " (where "suit" is defined as a "civil proceeding in which damages because of ... 'property damage' ... to which this insurance applies are alleged"), Trataros is similarly required to "see to it that we receive written notice of the claim or 'suit' as soon as practicable." It is this second notice provision on which resolution of U.S. Fire's motion to dismiss depends.

*2 The work called for under the contracts awarded to Trataros included the installation of an epoxy terrazzo flooring system that, according to the third-party compliant filed by DASNY and its construction manager against Trataros, was to cover "thousands of square feet of public space in the Project." The third-party complaint alleges that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

[t]he epoxy terrazzo that Trataros and [G.M. Crocetti Inc.] installed in the Project is deteriorating and is otherwise defective. Among other things, the epoxy terrazzo is cracking and crumbling at the perimeter of the poured area at the zinc divider strips over substantial areas of the epoxy terrazzo installation. The epoxy terrazzo is also delaminating and "blistering" in increasingly larger areas.

The third-party complaint also alleges more generally that "[t]he work performed by Trataros and its subcontractors failed to satisfy the technical and quality requirements" contained in the contracts between DASNY and Trataros as well as "accepted industry practices," and that, as a result, "significant portions of Trataros'[s] work was defective, substandard, or otherwise unacceptable" and thus "had to be repaired or replaced."

The fourth-party complaint filed by Trataros and Travelers seeks, *inter alia,* a declaratory judgment that coverage exists under the U.S. Fire CGL Policy for the claims asserted by DASNY and its construction manager, as well as "complete indemnification and/or compensatory damages, to the full extent of such coverage," in the event that DASNY prevails on those claims. U.S. Fire has now moved to dismiss Trataros and Travelers's fourth-party claims under Rule 12(b)(6), Fed.R.Civ.P.

## DISCUSSION

### I. *Conversion to Motion for Summary Judgment*

U.S. Fire asserts, in sum, that the fourth-party complaint's claims against it must be dismissed because (1) U.S. Fire was not given timely notice of the claims that form the basis for the instant action, in violation of the terms of the U.S. Fire CGL Policy, and (2) the allegations of the third- and fourth-party complaints demonstrate that no coverage exists under the U.S. Fire CGL Policy in any event. Both sides have made factual submissions primarily directed toward the issue of timely notice.

In light of the parties' submissions, it is appropriate to convert U.S. Fire's motion to one seeking summary judgment, at least on the issue of timely notice. A district court must ordinarily give notice to the parties before converting a motion to dismiss to a motion for summary judgment. *See, e.g., Kopec v. Coughlin,* 922 F.2d 152, 154-55 (2d Cir.1991)."A party is deemed to have notice that a motion may be converted," however, "if that party should reasonably have recognized the possibility that such a conversion would occur."*Sira v. Morton,* 380 F.3d 57, 68 (2d Cir.2004) (citation omitted). In connection with its motion, U.S. Fire submitted several documents detailing the circumstances in which, it alleges, Trataros became aware of the claims giving rise to this action, including correspondence from March, June, and August of 2003 between the Project's construction manager, DASNY, and Trataros concerning developing problems with the epoxy terrazzo flooring. In opposition, Travelers and Trataros have submitted, *inter alia,* two declarations (from JoAnne M. Bonacci and Guido Webber, counsel for Travelers and Trataros), and one affirmation (from John Scarpellino, Sr., the Claims Manager for Travelers) detailing the circumstances under which they became aware of Trataros's insurance coverage and ultimately gave notice to U.S. Fire, as well as several documents exchanged by Trataros and others involved in the Project related to the epoxy terrazzo flooring.[FN5]

> FN5. The Webber declaration and the Scarpellino affirmation were both submitted in the prior litigation between these parties related to the Project, which will be discussed further below. These documents are submitted here as exhibits in support of the fourth-party plaintiffs' opposition to U.S. Fire's motion.

*3 Where a party attaches to a motion to dismiss or to their opposition thereto "materials that were not included in the pleadings," they "plainly should [be] aware of the likelihood of" a conversion to a motion for summary judgment, and "cannot com-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

Page 4

plain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support their" position. *Id.* That is the case here, at least with respect to the issue of timely notice. Although Travelers and Trataros argue that the record has not been sufficiently developed to permit resolution of the notice issue at this stage, they do not identify any further discovery that would be necessary to complete that record.[FN6]In sum, having countered U.S. Fire's factual submissions with factual submissions of their own, it cannot be said that Travelers and Trataros have been "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading."*Groden v. Random House, Inc.,* 61 F.3d 1045, 1053 (2d Cir.1995) (citation omitted). The motion to dismiss will therefore be converted to one for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

> FN6. Moreover, given that the question of whether timely notice was provided to U.S. Fire-*i.e.,* whether Travelers and Trataros took reasonable steps to fulfill their obligation to provide notice "as soon as practicable" as required under the U.S. Fire CGL Policy-depends almost exclusively on facts and records in the possession of Travelers and Trataros, it is not apparent that further discovery would be necessary on that issue in any event.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims or defenses cannot be sustained, the opposing party must "set

forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed.R.Civ.P.; *accord Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir.2006). Only disputes over material facts, facts that might affect the outcome of the suit under the governing law, will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248.

II. *Timely Notice to U.S. Fire*

The parties agree that New York law applies in this diversity action. "Under that law, compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability."*Am. Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 438 (2d Cir.1995); *see also Green Door Realty Corp. v. TIG Ins. Co.,* 329 F.3d 282, 287 (2d Cir.2003). Notice provisions

> enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.

*4 New York v. Blank,* 27 F.3d 783, 794 (2d Cir.1994) (citation omitted)."If an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend or indemnify the insured."*Fairchild Indus., Inc.,* 56 F.3d at 438 (citing *Allcity Ins. Co. v. Jimenez,* 78 N.Y.2d 1054, 1055 (1991)). Such failure provides "a complete defense to coverage, regardless of whether the carrier was prejudiced by the late notice."*Green Door Realty,* 329 F.3d at 287 (citing *Am. Home Assurance Co. v. Int'l Ins. Co.,* 90 N.Y.2d 433, 440 (1997)); *see also Briggs Avenue L.L.C. v. Ins. Corp. of Hannover,* 516 F.3d 42, 49 (2d Cir.2008).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

The U.S. Fire CGL Policy required that notice of an occurrence or claim be given "as soon as practicable," which is "a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances."*Travelers Ins. Co. v. Volmar Const. Co., Inc.*, 300 A.D.2d 40, 43 (N.Y.App. Div., 1st Dep't 2002); *see also Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir.1992) (citing *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972)). Under New York law, "the question [of] whether notice" of a claim or occurrence "was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay."*Blank*, 27 F.3d at 795. *See also Green Door Realty*, 329 F.3d at 287 ("[W]hile the question of the reasonableness of an excuse for late notice is generally a question of fact for the jury, a delay may be unreasonable as a matter of law when either no excuse is advanced or the proffered excuse is merit less.") (citation omitted)."The burden is on the insured to show that a delay was reasonable under the circumstances."*Fairchild Indus., Inc.*, 56 F.3d at 438 (citing *Acker-Fitzsimons Corp.*, 31 N.Y.2d at 441).

Whether notice was timely given to an insurer depends in part, of course, on when the insured's obligation to provide notice was triggered. The obligation to provide notice of an occurrence (as opposed to a claim) is triggered when the "circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim" resulting from that occurrence.*Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 272 (2d Cir.1987). Thus,

> [w]hile the duty to provide notice therefore does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question, when an insured

complying with its duty to use due diligence in investigating potential claims against it would believe from the information available that its policy would be involved, the notice obligation arises.

**\*5** *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 275-76 (2d Cir.1992); *see also Fairchild Indus.*, 56 F .3d at 439. Failure to provide notice of an occurrence under these circumstances may be excused, however, where "the insured has a reasonable argument that it was unaware of the accident" or occurrence, "or where the insured had a good-faith belief in its nonliability."*Volmar Const. Co.*, 300 A.D.2d at 43.

By contrast, "[a] notice of claim provision ... focuses on the actions of third parties and may be triggered by an unreasonable-even sanctionable-assertion of liability."*Fairchild Indus.*, 56 F.3d at 439. Thus, once a claim has been filed, the insured can no longer offer its good faith belief in nonliability for the underlying occurrence (or the claim itself) as an excuse for a failure to provide notice, as "virtually any assertion of an exposure to liability within the risks covered by an insurance policy is a claim" triggering the duty to provide notice. *Id.; see also Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F.Supp.2d 302, 314 (E.D.N.Y.2003); *Underwriters at Lloyd's of London v. 150 Nassau Street Billiards, Inc.*, No. 03 Civ .1420, 2003 WL 22999464, at *10 n. 4 (S.D.N.Y. Dec. 22, 2003); *Paul K. Rooney, P.C. v. Chi. Ins. Co.*, No. 00 Civ. 2335, 2001 WL 262703, at *9-10 (S.D.N.Y. Mar. 16, 2001).

The relevant facts are not in dispute. Putting aside the question of whether the letters sent to Trataros (and others) in 2003 regarding the developing problems with the epoxy terrazzo flooring were sufficient to trigger Trataros's obligation to notify U.S. Fire of an "occurrence," the parties acknowledge that, in a prior action in this District concerning the same subject matter as the instant action, DASNY filed a third-party complaint against Trataros and Travelers on August 4, 2004, that contained sub-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

Page 6

stantially the same allegations as are set forth in DASNY's third-party complaint in this action.[FN7]Trataros and Travelers do not dispute-indeed, it is the very premise of their fourth-party complaint here-that the August 4, 2004 third-party complaint (or the third-party complaint filed in this action) was a "suit" within the meaning of the U.S. Fire CGL Policy, *i.e.,* a "civil proceeding in which damages because of ... 'property damage' ... to which [the U.S. Fire CGL Policy] applies are alleged."[FN8]It is further undisputed that U.S. Fire did not receive notice of this "suit" until March 29, 2005 (more than seven months later), when its representatives were served with the amended fourth-party complaint filed by Trataros and Travelers in the prior proceedings.[FN9]

> FN7. As described in the parties' submissions, the claims at issue in this action were previously the subject of proceedings in this District before the Honorable Harold Baer (No. 04 Civ. 5101). These proceedings were discontinued without prejudice on October 7, 2005, in order to provide the parties an opportunity to resolve their dispute through voluntary mediation. That effort failed, thereby precipitating the instant action.

> FN8. Put differently, if Trataros and Travelers were to argue that the third-party complaints filed in these actions were not "suits" encompassed by the U.S. Fire CGL Policy, they would be conceding, in essence, that no coverage exists under the U.S. Fire CGL Policy for the damages alleged in those complaints, and their fourth-party action would have to be dismissed on that basis.

> FN9. The docket for the prior proceedings before Judge Baer does not reflect the filing of an affidavit of service of the amended fourth-party complaint upon U.S. Fire. In support of its motion, however, U.S. Fire has provided an affidavit from

Sherrianne Hanavan, an employee of U.S. Fire's claims management agency, which states that it was informed of the amended fourthparty complaint on March 29, 2005.

Absent a valid excuse, this seven-month delay in notification is unreasonable as a matter of law, *see, e.g., Fairchild Indus., Inc.,* 56 F.3d at 440 ("Under New York law, delays for one or two months are routinely held 'unreasonable.' "), and the two excuses offered by Trataros and Travelers do not suffice. First, as described in the declarations and affirmation filed in opposition to the instant motion, Travelers reports that following the receipt of the third-party complaint filed in the prior action, it "undertook to investigate DASNY's allegations" regarding the epoxy terrazzo flooring. This task was made difficult by the fact that Trataros itself had ceased its business operations and dismissed all of its employees more than a year before that third-party complaint was filed in August 2004. As a result of this investigation, however, at some point in 2004 Travelers claims that it developed a good-faith belief that it and Trataros could not be held liable for claims made by DASNY in the August 4, 2004 third-party complaint. This belief was premised upon allegedly exculpatory language contained in the change order related to the flooring work, which states that Trataros will "[n]ot [be] responsible for concrete delamination."

*6 Based upon this language, Travelers and Trataros argue here that their delayed notice should be excused because they had no "reason to believe they faced potential liability for [DASNY's] Flooring Claims."As described above, however, a good faith belief that a claim or suit against an insured that alleges damages within the scope of an insurance policy will not ultimately succeed does not relieve that insured of its obligation to provide notice of that claim or suit. "[A] notice of occurrence requirement is treated differently under New York law from a notice of claim requirement."*Id.* at 439.While a good faith belief that a particular occurrence will not lead to liability (and thus a claim

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

against the policy by the insured) can excuse a failure to provide notice, "[a]n assertion of possible liability, no matter how baseless, is ... all that is needed to trigger a notice of claim provision."*Id* at 439.FN10*See also Paul K. Rooney, P.C.,* 2001 WL 262703, at *9-10. Thus, Travelers and Trataros's argument that their good faith belief that the third-party complaint filed on August 4, 2004, would not result in liability cannot excuse their failure to provide timely notice to U.S. Fire.

> FN10. The rationale behind this distinction between occurrences and claims was described by the Court of Appeals in *Blank:*
>
> The cases excusing an insured's failure to notify an insurer of an occurrence based on a good faith belief of non-liability are supported by the rationale that if insureds were required to notify insurers of every incident that poses even a remote possibility of liability, insurers would soon be swamped with notice of minor incidents that pose little danger of resulting even in an action by the injured party against the insured, let alone a claim by the insured against the insurer.... Once there is a reasonable possibility that the policy will be involved, however, this rationale is no longer applicable." *Blank,* 27 F.3d at 795-96. Although one intermediate appellate decision from New York has subsequently disagreed with the Second Circuit on this point, *see Reynolds Metal Co. v. Aetna Cas. & Sur. Co.,* 259 A.D.2d 195, 201 (N.Y.App. Div., 3d Dep't 1999), (1) that decision's conclusion that there is "no reason" to draw a distinction between claims and occurrences regarding notice requirements, *id.,* is belied by the cases cited above, and (2) even if this Opinion were to follow the Third Department's holding on that issue, this Court would then have to determine whether Travelers and Trataros's belief in non-liability was "reasonable under the circumstances," *id.*(citation omitted), which, based on their submissions here, it is far from clear that they have demonstrated. Put simply, Travelers and Trataros's proffered belief that the August 4, 2004 third-party complaint related to nothing more than the "concrete delamination" referred to in the change orders cannot withstand scrutiny, particularly in light of the claims therein unrelated to the epoxy terrazzo flooring (the so-called "Miscellaneous Defects"). It is not necessary to reach that issue, however, as this Opinion adheres to the holding and rationale of *Fairchild* and *Blank.*

Second, Travelers and Trataros imply, but do not formally argue, that their failure to give timely notice should be excused because Trataros (the insured under the U.S. Fire CGL Policy) ceased business operations in 2003, and thus Travelers (Trataros's "attorney in fact") had difficulty locating the policy or, indeed, even determining who had issued potentially relevant policies to Trataros during the course of the Project. The factual submissions made by Travelers in connection with this motion indicate that at some point in January 2005 it discovered various insurance certificates among Trataros's records and the documents obtained from other parties in the prior action. Travelers reports that despite its good faith belief in non-liability, a February 17, 2005 impleader deadline compelled it to follow up on the information contained on the certificates in order to determine whether Trataros had obtained any policies implicated by the claims filed by DASNY. It is not apparent precisely when the U.S. Fire CGL Policy itself was discovered, but U.S. Fire was among the parties included in the amended fourth-party complaint filed by Travelers and Trataros on February 17, 2005.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

Page 8

To the extent that it is necessary to reach this issue, it is sufficient to note that under New York law "a lack of knowledge of an insurance policy does not excuse a delay in notification."*Olin Corp.,* 966 F.2d at 724. As the Court of Appeals explained,

> [i]t is true that delay may be excused if there was a justifiable lack of knowledge of coverage. A justifiable lack of knowledge of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of the insured, not the insurance company, to keep track of which carriers have provided it with liability insurance.

*7 *Id.* at 724-25 (citation omitted).*Cf. Briggs Ave LLC v. Ins. Corp. of Hannover,* No. 05 Civ. 4212, 2006 WL 1517606, at *-7 (S.D .N.Y. May 30, 2006) (Lynch, J.) (relying on this principle in finding eight-month delay unreasonable as a matter of law).[FN11]

> FN11. Travelers and Trataros argue, citing *U.S. Underwriters Ins. Co. v. Falcon Construction Corp.,* No. 02 Civ. 4182, 2003 WL 22019429 (S.D.N.Y. Aug,. 27, 2003), that the time taken to investigate a claim and obtain insurance information may be "considered" in determining whether notice was timely. As they also recognize, however, the question of whether notice was given as soon as practicable is "heavily dependent on the factual contexts in which [it] arises]."*Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 19 (1979), and the scenarios presented here and in *Falcon Construction Corp.* are distinguishable. In that case, a significant delay between the filing of a claim and the notification of the insurer was held not to be unreasonable as a matter of law where it was not clear which of a number of contractors had worked on the relevant site-and thus which contract and which insurance policy were implicated by the injured party's claim-and the locating the contract required a search of a remote records storage facility. *Falcon Const. Corp.,* 2003 WL 22019429, at *2, *6. Here, by contrast, there was no such confusion regarding which contract was implicated by the third-party complaint-rather, the explanation offered here is that the insured (Trataros) had gone out of business, fired its employees, and, it appears, ceased keeping track of its insurance policies and obligations. This scenario is more accurately captured by the above-cited passage from *Olin* than the discussion contained in *Falcon Construction Corp.*

In short, the relevant facts not being in dispute and Travelers and Trataros not having offered a valid excuse for the unreasonably delayed notification to U.S. Fire, it must be concluded as a matter of law that the notice obligations contained in the U.S. Fire CGL Policy have been breached, and thus that U.S. Fire cannot be called upon to provide coverage to Trataros or Travelers under that policy. *Blank,* 27 F.3d at 795. Summary judgment must therefore be granted to U.S. Fire and the fourth-party complaint against it dismissed.

CONCLUSION

U.S. Fire's motion to dismiss the fourth-party complaint, filed on February 11, 2008, is converted to a motion for summary judgment and granted.

SO ORDERED:

S.D.N.Y.,2008.
Travelers Cas. and Sur. Co. v. Dormitory Authority-State of New York

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 2567784 (S.D.N.Y.)
**2008 WL 2567784 (S.D.N.Y.)**

Slip Copy, 2008 WL 2567784 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.