# EXHIBIT D-2

# EXHIBIT D-2

# EXHIBIT D-2

# EXHIBIT D-2

0316928  GREAT AMERICAN ALLIANCE INS CO
COPY OF ORIGINAL

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 74 37
(Ed. 09 88)

## PROVIDES CLAIMS MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
## EXCLUDING FIDUCIARY LIABILITY

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VII - DEFINITIONS.**

## SECTION I - EMPLOYEE BENEFITS COVERAGES

### 1. Insuring Agreement

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages sustained by an employee, former employee, prospective employee or the beneficiaries or legal representatives thereof and caused by any "negligent act, error or omission" of the Insured, or any other person for whose acts you are legally liable in the "administration" of your "Employee Benefit Program." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTAL PAYMENTS.**

This insurance applies to any "negligent act, error or omission" which results in a claim first made against the Insured during the policy period providing the Insured at the effective date of this insurance had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or "suit." The negligent act, error or omission must take place in the "coverage territory."

We will have the right and duty to defend any suit seeking those damages. But:

**(1)** the amount we pay for damages is limited as described in Section III – Limits of Insurance.

**(2)** we may at our discretion, investigate any "negligent act, error or omission" and settle any claim or "suit" that may result; and

**(3)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Coverage Part.

**b.** This insurance applies to a "negligent act, error or omission" only if a claim for damages arising out of a "negligent act, error or omission" is first made in writing against any Insured during the policy period.

**(1)** A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any Insured or by us, whichever comes first.

**(2)** All claims for damages causing loss to the same person or organization as a result of a "negligent act, error or omission" will be deemed to have been made at the time the first of those claims is made against any Insured.

**2. Exclusions**

This insurance does not apply to:

**a.** damages arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any Insured;

**b.** "bodily injury" or "property damage" or "personal injury;"

**c.** damages arising out of failure of performance of contract by any Insured;

**d.** damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program;"

**e.** any claim or "suit" based upon:

**(1)** failure of any investment to perform as represented by any Insured, or

**(2)** advice given to any person to participate or not to participate in any plan included in the "employee benefit program;"

**(3)** the investment or non-investment of funds.

**f.** damages arising out of your failure to comply with the mandatory provisions of any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

**g.** damages for which the Insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended; or

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim or "suit" we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

**4.** All costs taxed against the Insured in the "suit."

**5.** Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we made an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an Insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

**d.** Your employees provided they are authorized to act in the administration of your "Employee Benefit Program."

**e.** Any organization you newly acquire or form other than a partnership or joint venture and over which you maintain ownership or majority interest, will qualify as a

Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The limits of liability shown in the Declarations applicable to Each Claim is the most we will pay for all damages arising out of any covered claim.

   The Limit of Liability shown in the Declarations as Aggregate is subject to the above provision respecting Each Claim, the most we will pay for all losses.

   The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEDUCTIBLE

1. Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the deductible amount stated in the Declarations. The Limits of Insurance applicable to each claim for such coverage will be reduced by the amount of such deductible amount.

2. The terms of this insurance, including those with respect to:

   (a) our right and duty to defend any "suits" seeking those damages; and

   (b) your duties in the event of a negligent act, claim or "suit"

   apply irrespective of the application of the deductible amount.

3. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the Insured will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of A Claim or "Suit"**

   a. the Insured must see to it that we are notified as soon as practicable of any "negligent act, error or omission" which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "negligent act, error or omission" took place;

      (2) the names and addresses of any insured persons and witnesses; and

      (3) the nature of any injury or damage arising out of the "negligent act, error or omission."

      Notice of the "negligent act, error or omission" will be treated as a claim first made during the policy period.

   b. If a claim is received by an Insured, you must:

CG 74 37 (Ed. 09/88) XS                    (Page 3 of 6)

**(1)** immediately record the specifics of the claim and the date received; and

**(2)** notify us as soon as practicable.

**c.** You and any other involved Insured must:

**(1)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit;"

**(2)** authorize us to obtain records and other information;

**(3)** cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

**(4)** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**d.** No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## 3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

**a.** to join us as a party or bring us into a "suit" asking for damages from an Insured; or

**b.** to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial, but we will not be liable for damages that are not due under the terms of this Coverage Part or that are in excess of the Limits of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal agent.

## 4. Other Insurance

**a.** The Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**b.** As respects all other situations we will share with all that other insurance by the method described below:

**(1)** if all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

**(2)** if any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this endorsement in accordance with our rules and rates.

**b.** Premium shown in this endorsement as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

CG 74 37 (Ed. 09/88) XS                    (Page 4 of 6)

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

### 7. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each Insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the Insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI - EXTENDED REPORTING PERIOD

If this Coverage Part is cancelled or not renewed, you have the right, upon payment of an additional premium of 25% of the annual premium for this Coverage Part, to an extended reporting period with respect to any claim which shall be first made against the Insured during the period of twelve calendar months after the date of such cancellation or nonrenewal, but only with respect to any "negligent act, error or omission" committed before the date of such cancellation or non-renewal. A claim first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period. The first Named Insured shown in the Declarations must give us a written request for this extension, together with payment of the appropriate premium, within sixty (60) days after the effective date of cancellation or nonrenewal.

## SECTION VII - DEFINITIONS

1. "Administration" means:

   a. giving counsel to employees with respect to the "Employee Benefit Programs;"

   b. interpreting the "Employee Benefit Programs;"

   c. handling of employee records in connection with the "Employee Benefit Programs;"

   d. effecting enrollment, termination or cancellation of employees under the "Employee Benefit Programs;" provided all such acts are authorized by you.

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Coverage territory" means:

   a. the United Sates of America (including its territories and possessions), Puerto Rico and Canada.

4. "Employee" means your officers, partners and employees whether actively employed, disabled or retired.

5. "Employee Benefit Program" means the following plans:

   a. group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

   b. unemployment insurance, social security benefits, workers' compensation and disability benefits;

CG 74 37 (Ed. 09/88) XS                    (Page 5 of 6)

COPY OF ORIGINAL

c. any other similar plan designated in the Declarations or added thereto by endorsement.

6. "Negligent act, error or omission" means the failure to execute a required action, or a mistaken action committed by the administration of the Insured's employee benefit program to said program.

7. "Personal Injury" means injury other than "bodily injury," arising out of one or more of the following offenses;

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

   d. oral or written publication of material that slanders or libels a person or organization or. disparages a person's or organization's goods, products or services; or

   e. oral or written publication of material that violates a person's right of privacy.

8. "Profit sharing plans" means only such plans that are equally available to all full time employees.

9. "Property damage" means:

   a. physical injury to tangible property, including all resulting loss of use of that property; or

   b. Loss of use of tangible property that is not physically injured.

10. "Stock subscription plans" mean only such plans that are equally available to all full time employees.

11. "Suit" means a civil proceeding in which damage because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

CG 74 37 (Ed. 09/88) XS

CG 25 03
(Ed. 11 85)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT – AGGREGATE LIMITS OF INSURANCE
## (PER PROJECT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your projects away from premises owned by or rented to you.

CG 25 03 (Ed. 11/85) XS

GREAT**AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

TAU 2641
(Ed. 02 98)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NEW YORK SELF-INSURED RETENTION ENDORSEMENT
### (Defense Costs Included In Retention)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SELF-INSURED RETENTION

| | | |
|---|---|---|
| N/A | Dollars | Each Claim |
| $5,000 | Dollars | Each Occurrence |
| N/A | Dollars | Aggregate |

(Fill in amounts, if applicable.)

The Limits of Insurance of this policy shall be excess of and not reduced by the Insured's payments of damages and/or defense costs under the Self-Insured Retention(s).

If the Self-Insured Retention applies to each claim, the Insured shall be responsible for and pay up to that retention all damages arising from each claim against the Insured to which this policy applies.

If the Self-Insured Retention applies to each occurrence, the Insured shall be responsible for and pay up to that retention all damages for which the Insured is liable in all claims and/or suits arising from one occurrence, regardless of the number of persons or companies making such claim(s) or properties sustaining such damages.

If the Self-Insured Retention applies in the aggregate, the Insured shall be responsible for and pay all damages, either on an each claim or each occurrence basis as applicable, up to the aggregate Self-Insured Retention. Upon satisfaction by the Insured of the aggregate Self-Insured Retention, we shall have the right, to assume charge of the settlement or defense of any claim or suit against the Insured not yet settled, whether or not reported to us.

Defense costs are included within the Self-Insured Retention(s).

We will pay such defense costs only upon the Insured's satisfaction of the applicable retention by payment of damages and/or defense costs, and otherwise in accordance with and subject to the terms, conditions, and limits of the policy.

**Defense costs,** as used herein, means:

1.  Claims expenses, including attorney's fees, incurred by or on behalf of the Insured in the handling and defense of claims or suits against the Insured arising out of an occurrence to which this policy applies, but excluding salaries or wages of the Insured's officers or employees or the Insured's office expenses.

2.  Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the bodily injury liability coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for the bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $100 a day because of time off from work.

5.  All costs taxed against the Insured in the suit.

We shall have the right and duty to defend any claim or "suit" to which this policy applies seeking damages in excess of the Self-Insured Retention. Notwithstanding any provision to the contrary in the Policy, we shall not have any duty to defend a claim or "suit" which falls within the Self-insured Retention. In the event any claim or "suit" is made against the Insured for damages less than the Self-Insured Retention, we shall have the right and opportunity to associate, at our own expense, with the Insured in the defense, appeal, settlement, or control of any such claim or "suit." In such event, we and the Insured shall cooperate fully.

Should any claim or "suit" to which this policy applies appears likely to exceed the Self-Insured Retention, no defense costs shall be incurred on behalf of us without our prior consent.

**Claim** means, whenever used in this policy, a demand received by the Insured for money or services, including the service of suit or institution of arbitration proceedings against the Insured.

A.  **COVERAGE FORM SECTION IV. CONDITIONS 2. "Duties in the Event of Occurrence, Offense, Claim or Suit"** is replaced by the following:

   2.  **Duties in the Event of Occurrence, Claim or Suit**

      a.  You must see to it that the Claims Service Company is notified as soon as practible of an "occurrence" which may result in a claim. Notice should include:

         (1) how, when and where the "occurrence" took place; and

         (2) the names and addresses of any injured persons and witnesses.

      b.  You must see to it that we are notified as soon as praticable of an "occurrence" which may result in a claim, that is likely to involve this policy or which involves fatalities, spinal injuries, head injuries, loss of limb and other serious "bodily injury," irrespective of liability or reserves. Notice should include:

         (1) how, when and where the "occurrence" took place; and

TAU 2641 (Ed. 02/98) PRO          (Page 2 of 4)

(2) the names and addresses of any injured persons and witnesses. Failure to notify us of any act or omission which at the time of its happening did not appear to give rise to claims here-under, shall not prejudice such claims.

You and any other involved Insured must also:

(1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with a claim or "suit";

(2) authorize us to obtain records and other information;

(3) cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**B.    SPECIAL CONDITIONS**

1. Under the terms and conditions of this Self-Insured Retention Endorsement, you shall contract with CRAWFORD AND COMPANY

   (Name of Claims Service Company) to administer claims handling within the Self-Insured Retention until the conclusion of all reported incidents or claims. Alternatively, you shall have the right to designate your own Claims Service Company to administer claims handling within the Self-Insured Retention. Your choice of an alternative Claims Service Company is subject to our consent, which consent shall not be unreasonably withheld. The expiration or termination of this policy with us shall not absolve you of this obligation.

2. In the event of a cancellation, expiration or revision of the contract between you and the Claims Service Company, you will notify us within ten days from the date of such cancellation, expiration or revision of the contract. If you fail to contract with a substitute Claims Service Company acceptable to us or are unable to pay for covered damages, defense costs, or supplementary payments within the Self-Insured Retention you acknowledge that we shall have the right but not the obligation, to administer claims handling within the Self-Insured Retention, including but not limited to contracting directly with a Claims Service Company, until the conclusion of all reported claims and you shall indemnify us for any costs or expenses incurred to administer claims handling within the Self-Insured Retention should we elect to exercise our rights under such circumstances, including the right to contract directly with a Claims Service Company.

3. We shall have the right but not the duty to assume charge of the defense and/or settlement of any claim or "suit" brought against the Insured and, upon written request from us, you shall tender such portion of the Self-Insured Retention as we may deem necessary to complete the settlement of such claim or "suit" and to pay for defense costs.

If the applicable Self-Insured Retention is Ten Thousand Dollars ($10,000) or greater and has not been fully satisfied, then we shall not settle any claim without your consent. If consent to settlement is required and you refuse to provide your consent to a settlement recommended by us and acceptable to the claimant, and instead elect to contest the claim or continue legal or arbitration proceedings in connection with such claim, then our liability for the claim shall not exceed the amount for which the claim could have been so settled plus defense costs incurred up to the date of such refusal. Such amounts are subject to the provisions of Section III, Limits of Insurance. Nothing contained in this paragraph shall afford the Insured a right to consent to a settlement which is to be paid entirely by us or where the Self-Insured Retention is less than Ten Thousand Dollars ($10,000).

TAU 2641 (Ed. 02/98) PRO          (Page 4 of 4)

COPY OF ORIGINAL

CG 20 10
(Ed. 03 97)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WHERE REQUIRED BY WRITTEN CONTRACT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (SECTION II)** is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that Insured.

Copyright, Insurance Services Office, Inc., 1996
(Page 1 of 1)

COPY OF ORIGINAL

CG 24 04
(Ed. 10 93)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Name of Person or Organization:

WHERE REQUIRED BY WRITTEN CONTRACT OWNERS AND LESSORS ONLY

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition (Section IV - Commercial General Liability Conditions) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products- completed operations-hazard." This waiver applies only to the person or organization shown in the Schedule above.

Copyright, Insurance Services Office, Inc., 1992
CG 24 04 (Ed. 10/93) PRO          (Page 1 of 1)

COPY OF ORIGINAL

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

THIS ENDORSEMENT CHANGED THE POLICY.   PLEASE READ IT CAREFULLY.

TOTAL POLLUTION EXCLUSION ENDORSEMENT EXCEPT FOR HOSTILE FIRE
"PRODUCTS - COMPLETED OPERATIONS HAZARD"

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

EXCLUSION F.   UNDER PARAGRAPH 2., EXCLUSIONS OF COVERAGE A., BODILY INJURY
AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES) IS HEREBY, DELETED.
THE FOLLOWING EXCLUSION IS HEREBY ADDED TO COVERAGE A., BODILY INJURY AND
PROPERTY DAMAGE LIABILITY UNDER PARAGRAPH 2., EXCLUSIONS AND TO COVERAGE B.,
PERSONAL AND ADVERTISING LIABILITY UNDER PARAGRAPH 2., EXCLUSIONS.

THIS INSURANCE DOES NOT APPLY TO:

(1) "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", CAUSED BY OR
ARISING OUT OF IN WHOLE OR IN PART, THE ACTUAL, ALLEGED OR THREATENED
DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS AT
ANY TIME.

(2) ANY LOSS, COST OR EXPENSE ARISING OUT OF ANY:

(A) REQUEST, DEMAND OR ORDER THAT ANY INSURED OR OTHERS TEST FOR MONITOR,
CLEAN UP, REMOVE, CONTAIN, TREAT, DETOXIFY OR NEUTRALIZE, OR ASSESS THE
EFFECTS OR POLLUTANTS; OR

(B) CLAIM OR SUIT BY OR ON BEHALF OF A GOVERNMENTAL AUTHORITY FOR DAMAGES
BECAUSE OF TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING,
TREATING, DETOXIFYING OR NEUTRALIZING, OR IN ANY WAY RESPONDING TO, OR
ASSESSING THE EFFECTS OF POLLUTANTS.

POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR
CONTAMINANT INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACID, ALKALIS CHEMICALS AND
WASTE.   WASTE INCLUDES MATERIAL TO BE RECYCLED, RECONDITIONED OR RECLAIMED.

THIS EXCLUSION DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", OR
"ADVERTISING INJURY" ARISING OUT OF HEAT, SMOKE, OR FUMES FROM A HOSTILE
FIRE.

THIS EXCLUSION DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE", OR
"ADVERTISING INJURY" ARISING OUT OF HEAT, SMOKE, OR FUMES FROM A HOSTILE
FIRE.THIS EXCLUSION DOES NOT APPLY TO "BODILY INJURY", PROPERTY DAMAGE",
PERSONAL INJURY", OR "ADVERTISING INJURY" ARISING OUT OF THE
"PRODUCTS-COMPLETED OPERATIONS HAZARD".

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.    PLESE READ IT CAREFULLY.

### SUBCONTRACTOR'S LIABILITY INSURANCE ENDORSEMENT

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM,  IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING SPECIAL CONDITIONS ARE MADE A PART OF THE POLICY:

THE INSURED SHALL REQUIRE ALL SUBCONTRACTORS TO MAINTAIN COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE,  (UNDERWRITTEN BY AN INSURANCE COMPANY WITH AT LEAST AN "A" BEST RATING), WITH MINIMUM LIMITS OF $1,000,000. PER OCCURRENCE, $1,000,000. GENERAL AGGREGATE,   $1,000,000.   PRODUCTS-COMPLETED OPERATIONS AGGREGATE.   THE INSURED SHALL ALSO BE AN ADDITIONAL INSURED ON THE SUBCONTRACTOR'S POLICY FOR DAMAGES BECAUSE OF "BODILY INJURY,"   "PROPERTY DAMAGE,"   "PERSONAL INJURY" OR "ADVERTISING INJURY" ARISING OUT OF OR CAUSED BY THE WORK, ACTIVITIES, OR OPERATIONS OF THE SUBCONTRACTOR, INCLUDING THE INSURED'S SUPERVISION, REVIEW OR INSPECTION OF THE SUBCONTRACTOR. FURTHERMORE, THE INSURED SHALL OBTAIN ALL NECESSARY DOCUMENTATION TO ENSURE THAT SUCH COVERAGE HAS BEEN OBTAINED BY ALL SUBCONTRACTORS.  IF A SUBCONTRACTOR HAS NOT OBTAINED THE INSURANCE SET FORTH ABOVE, THE INSURED WILL BE SURCHARGED BY THE COMPANY FOR ADDITIONAL PREMIUM FOR THE COVERAGE RELATING TO THE SUBCONTRACTOR'S WORK, ACTIVITIES, OR OPERATIONS.  A RATE OF $3.52 WILL APPLY PER 1,000. OF THE COST RELATED TO THE UNINSURED OR UNDER INSURED WORK,  ACTIVITIES, OR OPERATIONS.

COPY OF ORIGINAL

0316928 - GREAT AMERICAN ALLIANCE INS CO

GREATAMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT TO "INSURED CONTRACT" DEFINITION
(INCLUSION OF OPERATIONS WITHIN 50 FEET OF RAILROAD PROPERTY)

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

IT IS HEREBY UNDERSTOOD AND AGREED THAT SECTION V - DEFINITIONS, ITEM 9
"INSURED CONTRACT" IS AMENDED AS FOLLOWS:

SECTION V - DEFINITIONS, ITEM 9.F.(1) IS DELETED.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

COPY OF ORIGINAL

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### NOTICE OF OCCURRENCE

IN THE EVENT OF AN OCCURRENCE, WRITTEN NOTICE CONTAINING PARTICULARS SUFFICIENT TO IDENTIFY THE INSURED AND ALSO REASONABLY OBTAINABLE INFORMATION WITH RESPECT TO THE TIME, PLACE AND CIRCUMSTANCES OF THE EVENT AND THE NAMES AND ADDRESSES OF THE INSURED AND OF AVAILABLE WITNESSES, SHALL BE GIVEN BY OR FOR YOU TO US OR ANY OF OUR AUTHORIZED AGENTS AS SOON AS PRACTICABLE AFTER NOTICE HAS BEEN RECEIVED BY YOU.

### KNOWLEDGE OF OCCURRENCE

KNOWLEDGE OF AN OCCURRENCE FALLING WITHIN THE COVERAGE PROVIDED BY THIS POLICY BY YOUR AGENT, SERVANT OR EMPLOYEE SHALL NOT IN ITSELF CONSTITUTE KNOWLEDGE BY YOU UNLESS THE CORPORATE RISK MANAGER OF YOUR CORPORATION SHALL HAVE RECEIVED NOTICE OF SUCH OCCURRENCE FROM ITS AGENT, SERVANT OR EMPLOYEE.

### UNINTENTIONAL ERRORS AND OMISSIONS/FAILURE TO DISCLOSE

FAILURE BY YOU TO DISCLOSE ALL HAZARDS EXISTING ON THE EFFECTIVE DATE OF THIS POLICY SHALL NOT PREJUDICE YOU WITH RESPECT TO THE COVERAGE AFFORDED BY THIS POLICY PROVIDED SUCH FAILURE OR ANY SUCH OMISSION IS NOT INTENTIONAL.

GREATAMERICAN.
INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

# BUSINESSPRO GENERAL ENDORSEMENT

### CANCELLATION BY US

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE

### NUMBERS OF DAYS

### 60

(IF NO ENTRY APPEARS ABOVE, INFORMATION REQUIRED TO COMPLETE THIS SCHEDULE WILL BE SHOWN IN THE DECLARATIONS AS APPLICABLE TO THIS ENDORSEMENT.)

PARAGRAPH 2. OF CANCELLATION (COMMON POLICY CONDITIONS) IS REPLACED BY THE FOLLOWING:

2. WE MAY CANCEL THIS COVERAGE FORM BY MAILING OR DELIVERING TO THE FIRST NAMED INSURED WRITTEN NOTICE OF CANCELLATION AT LEAST:

A. 10 DAYS BEFORE THE EFFECTIVE DATE OF CANCELLATION IF WE CANCEL FOR NONPAYMENT OF PREMIUM; OR

B. THE NUMBER OF DAYS SHOWN IN THE SCHEDULE BEFORE THE EFFECTIVE DATE OF CANCELLATION IF WE CANCEL FOR ANY OTHER REASON.

BUSINESSPRO (Reg. U.S. Pat. Off.)
CG 88 02 (Ed. 11/85) PRO          (Page 1 of 1 )

COPY OF ORIGINAL

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

### SUPERVISORY EMPLOYEE LIABILITY AMENDMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM

SECTION II - WHO IS AN INSURED, PARAGRAPH 2., SUBPARAGRAPH (1)(A) AS
CONTAINED IN THE POLICY IS DELETED AND REPLACED WITH:

HOWEVER, NO "EMPLOYEE" IS AN INSURED FOR:
(1) "BODILY INJURY" OR "PERSONAL INJURY"
(A) TO YOU, TO YOUR PARTNERS OR MEMBERS (IF YOU ARE A PARTNERSHIP OR
JOINT VENTURE), OR TO A "CO-EMPLOYEE" WHILE IN THE COURSE OF HIS OR HER
EMPLOYMENT OR WHILE PERFOMING DUTIES RELATED TO THE CONDUCT
OF YOUR BUSINESS, EXCEPT THAT FOR PURPOSES OF THIS SECTION, AN EMPLOYEE
CAUSING SUCH "BODILY INJURY" IS AN INSURED IF THAT EMPLOYEE HOLDS MANAGERIAL
POSITION OR HIGHER AT OR WITHIN THE INSURED ORGANIZATION.

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PARAGRAPH 2.
EXCLUSIONS, SUBPARAGRAPH E. EMPLOYER'S LIABILITY AS CONTAINED IN THE POLICY
IS DELETED AND REPLACED WITH:

THIS INSURANCE DOES NO APPLY TO:

E. EMPLOYERS LIABILITY

    "BODILY INJURY" TO:

(1) AN "EMPLOYEE" OF THE INSURED ARISING OUT OF AN IN THE COURSE OF:

(A) EMPLOYMENT BY THE INSURED; OR
(B) PERFORMING DUTIES RELATED TO THE CONDUCT OF THE INSURED'S
BUSINESS; OR
(2) THE SPOUSE, CHILD, PARENT, BROTHER OR SISTER OF THE "EMPLOYEE" AS A
CONSEQUENCE OF PARAGRAPH (1) ABOVE.

THIS EXCLUSION APPLIES:

(1) WHETHER THE INSURED MAY BE LIABLE AS AN EMPLOYER OR IN ANY OTHER
CAPACITY; AND
(2) TO ANY OBLIGATION TO SHARE DAMAGES WITH OR REPAY SOMEONE ELSE WHO MUST
PAY DAMAGES BECAUSE OF THE INJURY.

THIS EXCLUSION DOES NOT APPLY TO "BODILY INJURY' TO AN EMPLOYEE OF THE
INSURED IF SUCH EMPLOYEE IS INJURED BY AN EMPLOYEE HOLDING A MANAGERIAL
POSITION OR HIGHER AT OR WITHIN THE INSURED ORGANIZATION ACTING WHILE IN THE
COURSE OF HIS OR HER EMPLOYMENT OR WHILE PERFORMING DUTIES RELATED TO THE
CONDUCT OF THE INSURED'S BUSINESS.

COPY OF ORIGINAL

**GREAT**AMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

0316928 - GREAT AMERICAN ALLIANCE INS CO

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

MINIMUM PREMIUM AT TIME OF AUDIT ENDORSEMENT

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE MINIMUM PREMIUM AT TIME OF AUDIT IS $190,000 (90% OF DEPOSIT PREMIUM)

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

COPY OF ORIGINAL

GREAT**AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE EMPLOYEE BENEFITS LIABILITY COVERAGE FORM CG 7437 IS SUBJECT TO THE POLICY SELF-INSURED RETENTION AMOUNT OF $5,000 PER OCCURRENCE.

ALL OTHER TERMS AND CONDITIONS ARE UNCHANGED.

0316928   GREAT AMERICAN ALLIANCE INS CO   COPY OF ORIGINAL

GREAT**AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

### MINIMUM AND DEPOSIT PREMIUM ENDORSEMENT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE PREMIUM SHOWN ON THE DECLARATIONS PAGE IS THE ANNUAL MINIMUM AND DEPOSIT PREMIUM PAYABLE AT INCEPTION.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

COPY OF ORIGINAL

GREAT AMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 88 02 (Ed. 11 85)

## BUSINESSPRO GENERAL ENDORSEMENT

IT IS UNDERTOOD AND AGREED THE FOLLOWING NAMED INSURED IS HEREBY ADDED
TO THE POLICY:

ARROW ENTERPRISES, LLC.

EFFECTIVE 4/1/00

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

## BUSINESSPRO GENERAL ENDORSEMENT

IN CONSIDERATION OF A $25,582. ADDITIONAL PREMIUM THE ACTUAL SALES FIGURE DETERMINED AT AUDIT FOR THE 4/1/00 TO 4/1/01 POLICY PERIOD IS $100,885,903.

THE AUDITED ADDITIONAL PREMIUM CALCULATION IS AS FOLLOWS:

```
$100,885,903   ACTUAL SALES FOR THE 4/1/00 TO 4/1/01 PERIOD
$    X    2.35  RATE PER $1,000 OF SALES
-------------
$      237,082  EARNED PREMIUM FOR THE 4/1/00 TO 4/1/01 PERIOD


EARNED PREMIUM BASED ON AUDIT:   $237,082
              DEPOSIT PREMIUM:   $211,500
                                 --------
                                 $ 25,582  ADDITIONAL PREMIUM DUE COMPANY.
```

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED..

COPY OF ORIGINAL

CG 21 16
(Ed. 07/98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description Of Professional Services:**

1.    ALL PROFESSIONAL SERVICES

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

Copyright, Insurance Services Office, Inc., 1997
(Page 1 of 1)

CG 21 35
(Ed. 10 93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION--COVERAGE C--MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Description and Location of Premises or Classification: ALL LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, Coverage **C. MEDICAL PAYMENTS** (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to **SUPPLEMENTARY PAYMENTS** (Section I):

   **8.** Expenses incurred by the Insured for first aid administered to others at the time of an accident for "bodily injury" to which this Insurance applies.

Copyright, Insurance Services Office, Inc., 1992
CG 21 35 (Ed. 10/93) PRO          (Page 1 of 1)

COPY OF ORIGINAL

CG 21 54
(Ed. 01 96)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation(s):**

ALL WRAP-UPS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2.**, **Exclusions** of **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):**

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products—completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1)    provides coverage identical to that provided by this Coverage Part;

(2)    has limits adequate to cover all claims; or

(3)    remains in effect.

Copyright, Insurance Services Office, Inc., 1994

(Page 1 of 1)

CG 29 51
(Ed. 01 96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART

**The following exclusion is added to Paragraph 2., Exclusions of COVERAGES -- BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):**

This insurance does not apply to:

"Bodily injury" to:

(1) a person arising out of any:

    (a) refusal to employ that person;

    (b) termination of that person's employment; or

    (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) whether the Insured may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1994

CG 29 51 (Ed. 01/96) XS

COPY OF ORIGINAL

CG 21 60
(Ed. 09 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **EXCLUSIONS** of Section I - Coverage A - **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2.**, **EXCLUSIONS** of Section I - Coverage B - **PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** any of the following, whether belonging to any Insured or to others:

   **(a)** computer hardware, including microprocessors;

   **(b)** computer application software;

   **(c)** computer operating system and related software;

   **(d)** computer networks;

   **(e)** microprocessors (computer chips) not part of any computer system; or

   **(f)** any other computerized or electronic equipment or components; or

**(2)** any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advise, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

COPY OF ORIGINAL

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 81 39
(Ed. 06 99)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

This endorsement modifies insurance provided under the following:

SOCIAL WORKERS' COUNSELORS' PROFESSIONAL LIABILITY INSURANCE COVERAGE A
INSTITUTIONAL PROFESSIONAL LIABILITY INSURANCE COVERAGE B
HEALTH CARE SERVICES INSURANCE COVERAGE C
EDUCATORS PROFESSIONAL LIABILITY INSURANCE COVERAGE D

This insurance does not apply to:

1. any loss, cost, expense, liability or other type of obligation that the Insured becomes legally obligated to pay because of any act, error, or omission of the Insured, arising out of the Insured's "Professional Social Work Activity," "Professional Social Work" of others, "Institutional Acts," "Educators Professional Liability," or health care services for which you are liable arising out of, resulting from, or in any way caused by or related to the actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead in any form from any source in any location; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any

"Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy arising out of or in any way related to testing for, monitoring, cleaning up, removing, containing, treating or detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form from any source in any location.

We shall not be obligated to investigate on behalf of an "Insured" or to defend or indemnify an "Insured" or any person or entity claiming any right under the policy for the matters excluded in this endorsement.

CG 00 55
(Ed. 03 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition – (**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**) is replaced by the following:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** that is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(c)** if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **Coverage A (Section I).**

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **Coverages A** or **B** to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996

CG 00 55 (Ed. 03/97) XS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

1. When this Coverage Part is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the coverage part for Bodily Injury Liability or Property Damage Liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

2. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for those coverages.

CG 99 01 (Ed. 11/85) XS

CG 28 67
(Ed. 09 95)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY

A. Paragraphs **a., b., c.** and **e.** of the **CANCEL-LATION** Condition are replaced by the following:

a. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

b. **Cancellation Of Policies In Effect:**

(1) **60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured and the "contractor" written notice of cancellation at least:

(a) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **(b)** below.

(b) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

i. nonpayment of premium;

ii. conviction of a crime arising out of acts increasing the hazard insured against;

iii. discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

iv. after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

v. material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

vi. required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public; or

vii. a determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code.

Copyright, Insurance Services Office, Inc., 1995
(Page 1 of 3)

**(2) For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel this policy only for any of the reasons listed in Paragraph **(1)(b)** above, provided we mail the first Named Insured and the "contractor" a notice of cancellation at least 15 days before the effective date of cancellation.

**c.** We will mail or deliver our notice including the reason to the first Named Insured and the "contractor" at the respective addresses shown in the policy and the authorized agent or broker.

**e.** If this policy is cancelled, we will send the "contractor" any premium refund due. If we cancel the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **CANCELLATION** Condition:

If one of the reasons for cancellation in Paragraph **A.b.(1)(b)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following Conditions are added and supersede any other provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we condition renewal of this policy upon:

**a.** change of limits;

**b.** change in type of coverage;

**c.** reduction of coverage;

**d.** increased deductible;

**e.** addition of exclusion;

**f.** increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations and the "contractor" at least 60 but not more than 120 days before:

**(1)** the expiration date; or

**(2)** the anniversary date if this is a continuous policy.

**b.** Notice, including the specific reason(s) for nonrenewal or conditional renewal, the amount of any premium increase (for conditional renewal) and a description of any other changes, will be mailed or delivered to the first Named Insured and the "contractor" at the respective addresses shown in the policy and the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or

Copyright, Insurance Services Office, Inc., 1995

CG 28 67 (Ed. 09/95) XS

(Page 2 of 3)

another insurer of yours mails or delivers notice that the policy has been replaced or no longer desired.

**d.** If we send the first Named Insured or the "contractor" an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **(1)** as provided for in Paragraph **C.3.** above, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel sooner;

   **(2)** on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another required policy period at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional required policy period, has replaced the coverage or elects to cancel sooner.

**e.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**f.** The last sentence of **Limits Of Insurance** does not apply when the policy period is extended because we sent the first Named Insured or the "contractor" an incomplete or late conditional renewal notice or a late nonrenewal notice.

Copyright, Insurance Services Office, Inc., 1995

CG 28 67 (Ed. 09/95) XS

CG 01 05
(Ed. 04 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NEW YORK CHANGES - PREMIUM AUDIT**

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY

**A.** Paragraph **b.** of the **PREMIUM AUDIT CONDITION (SECTION IV - CONDITIONS)** is replaced by the following:

**10. Pemium Audit**

 **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500. Audit premiums are due and payable on notice to the "contractor." If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the "contractor."

**B.** Except as provided in Paragraph **A.** above, the **Examination of Your Books and Records Condition (Section IV - Conditions)** continues to apply.

Copyright, Insurance Services Office, Inc., 1996

CG 01 05 (Ed. 04/97) XS

COPY OF ORIGINAL

CG 26 24
(Ed. 08 92)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **LEGAL ACTION AGAINST US** Condition (Section IV) is replaced by the following:

**Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

  **b.** to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

Copyright, Insurance Services Office, Inc., 1992

CG 26 24 (Ed. 08/92) XS