| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY AS ADMINISTRATOR FOR RELIANCE INSUANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DORMITORY AUTHORITY – STATE OF NEW YORK, TDX CONSTRUCTION CORP. AND KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>Defendants.<br><br>Et al. | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK<br><br>Civil Action No. 07-cv-6915<br><br>Hon. Denise Cote |

## HARLEYSVILLE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

and

500 Fifth Avenue, Suite 4920
New York, New York 10010
(212) 302-6574

Attorneys for Fourth Party Defendant, Harleysville Insurance Company of New Jersey (improperly pled as Harleysville Mutual Insurance Company)

Of Counsel:
    Lance J. Kalik

On the Brief:
    Tracey K. Wishert

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL ARGUMENT ..........................................................................................................5

I.    SUMMMARY JUDGMENT STANDARD ...................................................................5

II.    TRATAROS FAILED TO PROVIDE TIMELY NOTICE TO HARLEYSVILLE ...........6

CONCLUSION ...................................................................................................................11

## PRELIMINARY STATEMENT

Fourth-Party Defendant Harleysville Insurance Company of New Jersey, improperly pled as Harleysville Mutual Insurance Company ("Harleysville"), submits this brief in support its motion for summary judgment that Trataros is not entitled to coverage under the Harleysville Policy issued to Bartec Industries, Inc. ("Bartec").[1]  Trataros did not provide Harleysville with any notice that it was seeking coverage under a Harleysville Policy for damages arising from the Baruch Project until March 2005, seven months after Trataros had been sued by DASNY for these damages and two years after Trataros received correspondence and expert reports concluding that the epoxy terrazzo flooring was failing.  Such delay in providing notice to Harleysville is unreasonable as a matter of law and violates the notice provision of the Harleysville Policy.  Consequently, Trataros is not entitled to coverage under the Policy and Harleysville respectfully requests that the Court dismiss the Amended Fourth Party Complaint against Harleysville with prejudice.

---

[1] Pursuant to the Court's July 14, 2008 Order, Harleysville submits this brief only as to the issue of late notice but reserves it rights to pursue all other coverage defenses available to it in a subsequent motion to be submitted in June 2009 as directed in the July 2008 Order.

## FACTUAL BACKGROUND

As the Court is aware, this litigation arises from alleged damages related to the construction of a 785,000 square foot building for Baruch College ("the Baruch Project"). See Affirmation of Tracey K. Wishert, dated August 8, 2008 ("Wishert Aff."), Ex. A, June 25, 2008 Opinion and Order. As part of that construction, the Dormitory Authority of New York ("DASNY") entered into multiple contracts with various prime contractors, including Contracts 15 and 16 which were awarded to Trataros Construction, Inc. ("Trataros"). Id. Trataros subcontracted with G.M. Crocetti for work related to interior stonework, precast terrazzo flooring, and epoxy terrazzo flooring. Wishert Aff., Ex. B, Amended Fourth Party Complaint dated 04/08/2008 ¶ 41. Trataros subcontracted with Bartec Industries, Inc. ("Bartec"), to install self-leveling underlayment in connection with the epoxy terrazzo flooring at the Baruch Project. Wishert Aff., Ex. B ¶ 50.)

By letter dated March 7, 2003, the construction manager, TDX Construction Corp. ("TDX"), supplied Trataros with an investigative report by Testwell Laboratories, Inc., concluding that the terrazzo flooring system at the Baruch Project was experiencing extensive debonding. See Wishert Affirmation, dated August 8, 2008, Ex. C. In this correspondence, TDX also informed Trataros that "this serious matter deserves your full cooperation, due to the potential repercussions of what has been found to date, plus the extent of the affected areas," and that Trataros, as general contractor, would "be held responsible for all conditions, should final analysis show G.M. Crocetti's system failure was due to poor workmanship; not to mention the potential problems posed by the underlayment subcontractor, Bartec, and its recommended product, Conflow, for floor-leveling." Id.

Thereafter, on June 17, 2003, TDX wrote to DASNY regarding investigations and analyses performed by three different firms with respect to the alleged failure of the terrazzo system. See Wishert Aff., Ex. D. Two months later, on August 28, 2003, TDX again wrote to DASNY, noting that "there has been deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation at Baruch College Site B." Wishert Aff., Ex. E.

On June 28, 2004, Travelers, as administrator of Reliance Insurance Company, commenced an action against DASNY seeking to recover damages related to the Baruch Project ("the Original Action"). Wishert Aff., Ex. F. On August 4, 2004, DASNY commenced a third party action against Trataros and Travelers seeking indemnification and contribution on the grounds that the work of Trataros and its subcontractors on the Baruch Project, particularly with respect to the epoxy terrazzo flooring, was defective, substandard and otherwise unacceptable. Wishert Aff., Ex. G. Trataros and Travelers acknowledged service of the third party complaint on September 13, 2004. Wishert Aff., Ex. H.

On February 17, 2005, Trataros and Travelers filed an amended Fourth Party Complaint to add claims against Harleysville, among other insurance carriers, seeking coverage for damages related to the epoxy terrazzo flooring. Wishert Aff., Ex. I. Trataros and Travelers served Harleysville with the Amended Fourth Party Complaint through the New York State Insurance Department on March 2, 2005. Wishert Aff., Ex. J. Prior to this time, Trataros never provided notice to Harleysville that it was seeking coverage for damages related to the Baruch Project under the Harleysville Policy. Affidavit of Derrick Harris ¶ 3. In September 2005, the parties to the Original Action entered into a voluntary stipulation of dismissal without prejudice before proceeding to mediation which was ultimately unsuccessful.

The Amended Fourth-Party Complaint in the present action was filed with the Court by Trataros on November 14, 2007. Wishert Aff., Ex. B. Trataros alleges therein that it is an insured and/or an additional insured under the policies issued by Harleysville, among other carriers. Id. ¶ 137. Trataros further alleges that, should the trier of fact in this action find that Trataros is liable to DASNY and/or TDX for damages in connection "with the repair, replacement, and/or loss of use of the allegedly damaged and/or impaired property," then the cost of repairing and/or replacing the allegedly defective or damaged property "may be covered in whole or in part by any one or all of the insurance policies written by the carriers," including those issued by Harleysville. Id. ¶ 145.

The Harleysville Policy

Harleysville issued Contractor's Business Owners Policy Number CB-8E8397 to Bartec, for consecutive policy periods between May 26, 2002 to May 6, 2004, with limits of $1 million per occurrence and $2 million in the aggregate (the "Harleysville Policy"). Wishert Aff., Ex. K. The Harleysville Policy contains a notice provision which states:

**2. Duties in the Event of Occurrence, Claim, or Suit**

    a.    You must see to it that we are notified promptly of an "occurrence" that may result in a claim. Notice should include:

        (1)    How, when and where the "occurrence" took place; and

        (2)    The names and addresses of any injured persons and witnesses.

    b.    If a claim is made or "suit" is brought against any insured you must see to it that we receive prompt written notice of the claim or "suit."

    c.    You and any other involved insured must:

        (1)    Immediately send copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

Id.

## **LEGAL ARGUMENT**

**I.      SUMMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See FED. R. CIV. P. 56(c). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a material fact." Id. Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); see also, FED. R. CIV. P. 56(e). In this regard, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, id., and not just "some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

A party opposing a summary judgment motion "may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." See Big Apple BMW v. BMW of N. America, 974 F.2d 1358, 1363 (3rd Cir. 1992). "A fact is 'material'

5

for these purposes if it 'might affect the outcome of the suit under the governing law.'" See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## II.  TRATAROS FAILED TO PROVIDE TIMELY NOTICE TO HARLEYSVILLE

Harleysville first received notice of Trataros' claim for coverage under its policy when it was served with the Amended Fourth-Party Complaint in the Original Action in March 2005. Such notice violated the express conditions of the Harleysville Policy, which requires that an insured provide prompt notice of any claim or suit as well as prompt notice of any "occurrence" that may result in a claim. Wishert Aff., Ex. K. Thus, Trataros' failure to provide proper and timely notice to Harleysville vitiates any potential coverage to Trataros as an insured or additional insured under the Harleysville Policy.

New York case law is clear that compliance with a notice provision of an insurance policy is a condition precedent to coverage, and any unexcused failure of the insured to adhere to such a provision vitiates coverage under the policy. See White v. City of New York, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993); Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972); Paramount Ins. Co. v Rosedale Gardens, 293 AD2d 235, 239, 743 N.Y.S.2d 59 (1st Dep't 2002); Fusco v. Amer. Colonial Ins. Co., 221 A.D.2d 231, 633 N.Y.S.2d 316 (1st Dep't 1995) (holding that where insured failed to timely comply with the notice provision of the policy, which is, in effect, a condition precedent to coverage, the insurer is relieved of liability).

The salutary purposes underlying the requirement of proper notice of claim to the insurer are to enable the insurer to: (1) exercise early control over the claim including assessing settlement potential; and (2) to adjust its reserves to account for the insured's claim. Asbeka

6

Indus. v. Travelers Indem. Co., 831 F. Supp. 74 (E.D.N.Y. 1993). The New York Court of Appeals has confirmed that the right of an insurer to receive timely notice is so fundamental that the insurer need not show prejudice to be able to disclaim on this basis. Argo Corp. v. Greater New York Mut. Ins. Co., 4 N.Y.3d 332, 827 N.E.2d 762, 794 N.Y.S.2d 704 (2005); Allstate Ins. Co. v. Furman, 84 A.D.2d 29, 31, aff'd, 58 N.Y.2d 613 (1982).

Pursuant to the Harleysville Policy, Trataros was required to give notice of an occurrence "promptly" and, also, to "immediately" send copies of any demands, summonses, or legal papers received to Harleysville. Wishert Aff., Ex. K. It is well settled that an insurance policy's requirement that notice of an occurrence or action be given "promptly" means within a reasonable time in view of the facts and circumstances. See The Doe Fund, Inc. v Royal Indem. Co., 2006 NY Slip Op 8895; 34 A.D.3d 399; 825 N.Y.S.2d 450; slip. op. at *21 (App. Div., 1st Dept 2006); US Pack Network Corp. v Travelers Prop. Cas., 2005 NY Slip Op 8884; 23 A.D.3d 299; 808 N.Y.S.2d 153; slip op. (App. Div., 1st Dep't 2005); Insurance Corp. of N.Y. v. United States Fire Ins. Co., 2008 NY Slip Op 50257U; 859 N.Y.S.2d 895 (Sup. Ct., N.Y. Cty., 2008).

Significantly, under New York law, each insured, named or additional, has an independent and separate obligation to provide timely notice of the occurrence/claim and suit to the insurer. Amer. Mfrs. Ins. Co. v. CMA Enterprises, Ltd., 246 A.D.2d 373 (N.Y. App. Div. 1st Dep't 2002) Accordingly, the fact that the insurer may have received notice from the primary insured is irrelevant to an additional insured's obligation to provide timely notice. Id. (stating "[s]ince plaintiffs, owners of the property and additional insured under the policy, had an independent obligation to give timely written notice of the claim against them, it is irrelevant whether [the insurer] acquired actual knowledge of the occurrence from ... the primary insured or from another source..."); Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 43, (1st

7

Dep't 2002); Structure Tone, Inc. v. Burgess Steel ProductsCorp., 249 A.D.2d 144, 145 672 N.Y.S.2d 33 (1st Dep't 1998); U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., 2003 WL 22019429 (S.D.N.Y. 2003) (the notice requirement in an insurance policy applies to both the named insured and additional insured and timely notice provided by one insured will not be imputed to the other insured). Therefore, Trataros cannot claim to have fulfilled its notice obligation to Harleysville based upon any notice given by its subcontractor, Bartec.

In interpreting what constitutes timely notice, New York courts have held that relatively short periods of unexcused delay are unreasonable as a matter of law. Amer. Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76 (2d Cir. 1993)(36 day delay); Deso v. London & Lancashire Indem. Co. of Amer., 3 N.Y.2d 127, 164 N.Y.S.2d 689 (1957)(51 day delay); Safer v. Gov't Employees Ins. Co., 254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998)(more than a one month delay); Winstead v. Uniondale Union Free School Dist., 201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1994)(one month delay); Rushing v. Commercial Cas. Ins. Co., 251 N.Y. 302, 167 N.E. 450 (1929)(22 days); Haas Tobacco Co. v. Amer. Fidelity Co., 226 N.Y. 343, 123 N.E. 755 (1919)(10 days); Herold v. East Coast Scaffolding, Inc., 208 A.D.2d 592, 616 N.Y.S.2d 197 (2d Dep't 1994)(failure to notify insurer until three and a half months after the accident was untimely); and Zadrima v. PSM Ins. Co., 208 A.D.2d 529, 616 N.Y.S.2d 817 (2d Dep't 1994)(four month delay).

Here, DASNY commenced a third-party action against Trataros on August 14, 2004 in which it alleged that Trataros and its subcontractors negligently performed work on the Project. Wishert Aff., Ex. G. Thus, it is indisputable that, by August 2004, Trataros was well aware of the claims against it relating to the work of its subcontractor, Bartec. Upon being impleaded, however, Trataros did not "immediately send copies of any demands, notices, summonses or

legal papers" or otherwise provide notice of the claim to Harleysville as required under the terms of the Harleysville Policy. Instead, some <u>seven months</u> later, on March 2, 2005, Trataros served Harleysville with an Amended Fourth-Party Complaint through the New York State Insurance Department. Wishert Aff., Ex. J. This was Harleysville's first notice of Trataro's claim for coverage under the Harleysville Policy. Affidavit of Derrick Harris ¶ 3. As stated in the Court's Opinion and Order dated June 25, 2008, "absent a valid excuse, [a] seven-month delay in notification is unreasonable as a matter of law." Wishert Aff., Ex. A.

In addition to requiring "immediate" notice of a filed claim or suit, the Harleysville Policy required that Trataros provide prompt notice of an "occurrence" which could give rise to a claim or a suit. Wishert Aff. Ex. K. New York courts have consistently held that an insured's duty to give notice of an occurrence arises when, from the information available relative to the accident or "occurrence," the insured could glean a reasonable possibility of a policy's involvement. See, e.g., <u>DiGuglielmo v. Travelers Property Cas. Co.</u>, 6 A.D.3d 344, 776 N.Y.S.2d 542 (1st Dep't 2004). <u>Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.</u>, 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902 (1972)(notice must be given within a reasonable time under all the circumstances); <u>Odgen Corp. v. Travelers Indem. Co.</u>, 924 F.2d 39, 43 (2d Cir. 1991)(an insured's knowledge that a claim is likely, though not yet actually filed, is sufficient to trigger the duty of notice); <u>Utica Mut. Ins. v. Fireman's Fund</u>, 748 F.2d 118, 122 (2d Cir. 1984)("New York law applies an objective test, asking what the insured's officers 'reasonably could or should have concluded'" that an alleged occurrence would give rise to liability.). Once an insured possesses such knowledge, it cannot recede and do nothing and its carelessness will not absolve it from the consequences of its actions. See, e.g., <u>Haas Tobacco Co. v. Amer. Fidelity Co.</u>, 226 N.Y. 343, 123 N.E. 755 (1919). By any objective standard, Trataros and Travelers failed to

9

provide notice in a timely fashion to Harleysville of both the potential claims against Trataros and of the lawsuit itself.

Trataros was undoubtedly aware of DASNY's claims against it relating to the terrazzo flooring long before DASNY commenced its 2004 third-party action. It is undisputed that TDX wrote to Trataros and DASNY in March, June and August 2003 regarding Testwell Laboratories investigation and findings that the epoxy terrazzo flooring at the Baruch Project was experiencing "failure," providing unambiguous notice of a potential claim. <u>See</u> Wishert Aff. Exs. C, D, E. This correspondence was sent to Trataros <u>nearly two years</u> before Trataros sued Harleysville for coverage. Despite being apprised of the potential claims that form the basis of this lawsuit years before it elected to sue Harleysville, Trataros never provided notice regarding any potential claim against it, in contravention of the conditions precedent to coverage under the Harleysville Policy.

The Harleysville Policy clearly and unambiguously required Trataros to provide timely notice of any potential claim against it to Harleysville. <u>See, e.g.</u>, <u>Olin v. Ins. Co of Amer.</u>, 743 F. Supp. 1044 (S.D.N.Y. 1990)(obligation to provide notice accrues when the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim). Thus, not only did Trataros fail to give timely notice of the lawsuit filed against it, but it also failed to provide notice of any of the potential claims against it related to the terrazzo flooring. Because Trataros' late notice was unreasonable as a matter of law, it is not entitled to coverage under the Harleysville Policy. Consequently, the Amended Fourth-Party Complaint against Harleysville should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Harleysville respectfully requests that the Court dismiss the Fourth Party Complaint against Harleysville with prejudice based upon Trataros' failure to comply with the notice provisions of the Harleysville Policy.

>Respectfully submitted,
>
>RIKER DANZIG SCHERER HYLAND
>    & PERRETTI LLP
>
>Attorneys for Defendant
>
>By: _____/s/  Lance J. Kalik_____
>
>Dated: August 8, 2008
>Lance J. Kalik (LK-4677)