UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>vs.<br><br>DORMITORY AUTHORITY – STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>     Defendants. | Case No.  07-CV-6915 (DLC)<br>ECF CASE<br><br>*Document Electronically Filed* |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK,<br><br>     Third-Party Plaintiff,<br><br>vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>     Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>     Fourth-Party Plaintiffs,<br><br>vs.<br><br>CAROLINA CASUALTY INSURANCE COMPANY, et al.,<br><br>     Fourth-Party Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF 4TH PARTY DEFENDANT OHIO CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

MORGAN MELHUISH ABRUTYN
*Attorneys for Fourth-Party Defendant*
*Ohio Casualty Insurance Company*
651 West Mt. Pleasant Avenue, Suite 200
Livingston, NJ 07039
(973) 994-2500
Our File No.  OHX 25 112 HM

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................ii

FACTUAL BACKGROUND .............................................................1

LEGAL ARGUMENT

    THE CLAIMS FOR COVER UNDER OHIO
    CASUALTY POLICIES ARE BARRED BY THE
    PUTATIVE INSUREDS' FAILURE TO PROVIDE
    TIMELY NOTICE OF OCCURRENCE, CLAIM,
    AND/OR LAWSUIT.................................................................6

    A.  G.M. Grocetti Failed to Give Timely Notice of the
        Occurrence and the Lawsuit .......................................8

    B.  Bartec Failed to Give Timely Notice of the
        Occurrence and the Lawsuit .......................................10

    C.  Trataros Failed to Give Timely Notice of the
        Occurrence and the Lawsuit .......................................11

CONCLUSION ...........................................................................13

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>Allstate Ins. Co. v. Furman</u>, 84 A.D.2d 29, 31, <u>aff'd</u> 58 N.Y.2d
  613 (1982) ...............................................................................6

<u>American Home Assurance Co. v. International Ins. Co.</u>,
  90 N.Y.2d 433 (1997) ............................................................7

<u>American Home Assur. Co. v. Republic Ins. Co.</u>, 984 F.2d 76
  (2d Cir. 1993)..........................................................................8

<u>Argo Corp. v. Greater New York Mut. Ins. Co.</u>, 4 N.Y.3d 332,
  827 N.E.2d 762, 794 N.Y.S.2d 704 (2005) ............................7

<u>Asbeka Industries v. Travelers Indem. Co.</u>, 831 F.Supp. 74
  (E.D.N.Y. 1993) ......................................................................6

<u>Deso v. London & Lancashire Indem. Co. of America</u>, 3 N.Y.2d
  127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957) ....................8

<u>Fusco v. American Colonial Ins. Co.</u>, 221 .A.D.2d 231, 633
  N.Y.S.2d 316 (1st Dept. 1995) ...............................................6

<u>Haas v. Tobacco Co. v. American Fidelity Co.</u>, 226 N.Y. 343,
  123 N.E. 755 (1919) ...............................................................8

<u>Herold v. East Coast Scaffolding, Inc.</u>, 208 A.D.2d 592, 616
  N.Y.S.2d 197 (2nd Dept. 1994)..............................................8

<u>Power Auth. v. Westinghouse Elec. Corp.</u>, 117 A.D.2d 336,
  339, 502 N.Y.S.2d 420 (1st Dept. 1986) ...............................8

<u>Rushing v. Commercial Casualty Ins. Co.</u>, 251 N.Y. 302, 167,
  N.E. 450 (1929).......................................................................8

<u>Safer v. Government Employees Ins. Co.</u>, 254 A.D.2d 344,
  678 N.Y.S.2D 667 (2nd Dept. 1998).......................................8

<u>Security Mutual Ins. Co. v. Acker-Fitzsimmons Corp.</u>, 31
  N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) ...................6

<u>Smurfit Newsprint Corp. v. Southeast Paper Mfg.</u>, 368 Fed.3d
  944 (7th Cir. 2004)..................................................................7

Structure Tone, Inc. v. Burgess Steel Products Corp., 249
   A.D.2d 144, 672 N.Y.S.2D 33 (1st Dept. 1998).....................................7

Travelers Ins. Co. v. Vomar Const. Co., Inc., 752 N.Y.S.2d
   (1st Dept 2002) ....................................................................................7

White v. City of New York, 81 N.Y.2d 955, 957, 598 N.Y.S.2d
   759, 615 N.E.2d 216 (1993) ................................................................6

Winstead v. Uniondale Union Free School Dist., 201 A.D.2d
   721, 608 N.Y.S.2d 487 (2nd Dept. 1984)............................................8

Zadrima v. PSM Ins. Co., 208 A.D.2d 529, 616 N.Y.S.2d 817
   (2nd Dept. 1994) ................................................................................8

## FACTUAL BACKGROUND

The within matter involves claims arising from the installation of an allegedly defective flooring system throughout a 14-story building owned by Baruch College located between 24th and 25th Streets and Lexington and Third Avenues, New York, NY.

Trataros Construction Co., (Trataros), was retained as a prime contractor to install certain finishes in the building to include epoxy terrazzo flooring. See Prime Contact Number 16, annexed to Aff. of Hall as Exhibit A. Trataros contracted with G.M. Crocetti, (Crocetti), to install the epoxy terrazzo flooring over a concrete subfloor. See Crocetti Sub-contract annexed to Aff. of Hall as Exhibit B.

Due to design/construction errors committed by others, the concrete decking surfaces were not sufficiently level to allow for the installation of the epoxy terrazzo flooring. Accordingly, with approval of the owner, DASNY, and the construction manager, TDX, a Change Order was issued to Trataros for the installation of a self-leveling flooring underlayment called Conflow, to level the floors in order to permit installation of the epoxy terrazzo. See Floor leveling Change Order annexed to Aff. of Hall as Exhibit C. Bartec, Industries, Inc., (Bartec) was retained through a "purchase order" to install the Conflow underlayment. See Conflow purchase Order annexed to Aff. of Hall as Exhibit D.

As work progressed through the construction process, Conflow was installed in portions of the building from the upper floors to the lower floors. The epoxy terrazzo was installed over top the Conflow in substantially the same order.

As early as January 2001, problems were noted with the installation of the Conflow/terrazzo flooring system. See January 26, 2001, and February 28, 2001 correspondence annexed to Aff. of Hall as Exhibit E. Hollow spots were detected in the underlayment, and the terrazzo was not properly binding to the underlayment. Id. Large areas of the completed flooring job had to be removed and replaced on the 13th, 8th, 11th, 6th, and 5th floors throughout February, March, and April, 2001. See repair tickets annexed to Aff. of Hall as Exhibit F. DASNY contends that the flooring failure was progressive, and the flooring system has continued to fail throughout the building. See DASNY Third Party Complaint annexed to Aff. of Hall as Exhibit G.

The Ohio Casualty insurance company issued policy, No. BHO 52849621, to Bartec for policy period May 26, 2001 to May 26, 2002. See Policy form annexed to Aff. of Hamilton as Exhibit A. An excess policy with the same policy number but with the prefix BXO, was issued to Bartec for the same policy period. See Policy form annexed to Aff. of Hamilton as Exhibit B. Ohio Casualty issued to Crocetti, a certain commercial umbrella insurance policy, No. BXO 02 52 69 35 48, for the period from March 31, 2001 to March 31, 2004. See Policy form annexed

2

to Aff. of Sharpe as Exhibit A. Each of the above policies contains a

"notice condition," which provides in pertinent part:

### 2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit

a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1)   How, when and where the "occurrence" or offense took place;

   (2)   The names and addresses of any injured persons and witnesses; and

   (3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.   If a claim is made or "suit" is brought against any insured, you must:

   (1)   Immediately record the specifics of the claim or "suit" and the date received; and

   (2)   Notify us as soon as practicable.

   Your must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.   You and any other involved insured must:

   (1)   Immediately send us copies of any demands, notices,

3

> summonses or legal papers
> received in connection with
> the claim or "suit"; ...[1]

These notice provisions mandate that a person or entity seeking coverage must notify Ohio Casualty of an "occurrence," or a "suit," "as soon as practicable."

## THE LITIGATIONS

On or about July 18, 2003, a lawsuit was initiated in the New York Supreme Court, New York County under Index No. 113225/2003 captioned: R&J Construction Corp. v. Trataros Construction Inc., et al. See Complaint Annexed to Aff. of Hall as Exhibit H. Trataros, Crocetti, and Bartec were identified as defendants in that action, which in part addressed the defective Conflow/terrazzo flooring system. Id. Crocetti Answered the Complaint and asserted cross claims and counter claims on September 3, 2003. See Answer annexed to Aff. of Hall as Exhibit I. Bartec Answered that action and asserted a Third-Party Complaint on December 3, 2003. See Answer annexed to Aff. of Hall as Exhibit J.

Six months later, on June 28, 2004, Travelers as a successor in interest to Trataros commenced an action against DASNY, TDX Construction Corp., and Kohn, Pederson, Fox & Associates, in the United States District Court for the Southern District of New York, No. 04 Civ. 5101. See Complaint annexed to Aff. of Hall as Exhibit K. On August 4, 2004, DASNY filed a Third-Party action against Trataros in that matter

---

[1] The policy language differs only slightly between the policies, but is nearly identical in all practical affects.

seeking, among other things, a determination that Trataros and its subcontractors were negligent and caused or contributed to alleged property damage at Baruch College. See Answer/Third-Party Complaint annexed to Aff. of Hall as Exhibit K. Specifically, DASNY sought as damages, the costs of removing and replacing the Conflow/terrazzo flooring system in the entire building. Id.

Three months later, on November 24, 2004, Trataros commenced a Fourth-Party action in the Federal case against its subcontractors, including Crocetti, and Bartec, seeking a determination that the subcontractors were required to defend and to indemnify Trataros with respect to the claims asserted against it. See Answer/Fourth-Party Complaint annexed to Aff. of Hall as Exhibit L. That Fourth Party Complaint also sought a determination of Trataros' eligbility for insurance coverage as an additional insured under the insurance policies issued to Crocetti and Bartec.

These actions were dismissed on October 7, 2005, in anticipation of resolving the differences of the parties through mediation. The mediation was not successful, and the claims of the various parties were filed anew in the United States District Court for the Southern District of New York, in this current action.

**LEGAL ARGUMENT**

**THE CLAIM FOR COVERAGE UNDER OHIO CASUALTY'S POLICIES ARE BARRED BY THE PUTATIVE INSURED'S FAILURE TO PROVIDE TIMELY NOTICE OF OCCURRENCE, CLAIM, AND/OR LAWSUIT**

New York case law is clear that compliance with a notice provision of an insurance policy is a condition precedent to coverage, and an unexcused failure by the insured to adhere to these provisions will vitiate coverage under the policy. See White v. City of New York, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993); Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). Noncompliance with the provision vitiates the contract, both as to the insured and persons injured by the insured's actions. See Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 633 N.Y.S.2d 316 (1st Dep't 1995) (where insured failed to timely comply with the notice provision, the insurer is relieved of liability).

The purposes underlying the requirement of proper notice of claim to the insurer are to enable the insurer to: (1) exercise early control over the claim including assessing settlement potential; and (2) to adjust its reserves to account for the insured's claim. Asbeka Industries v. Travelers Indem. Co., 831 F. Supp. 74 (E.D.N.Y. 1993). The New York Court of Appeals has confirmed that the right of an insurer to receive timely notice is so fundamental that the insurer need not show prejudice to be able to disclaim on this basis. Allstate Ins. Co. v. Furman, 84

6

A.D.2d 29, 31, aff'd, 58 N.Y.2d 613 (1982). Argo Corp. v. Greater New York Mut. Ins. Co., 4 N.Y.3d 332, 827 N.E.2d 762, 794 N.Y.S.2d 704 (2005).[2]

Furthermore, the duty to give reasonable notice as a condition of recovery is also applicable to putative additional insureds. See Structure Tone, Inc. v. Burgess Steel Products Corp., 249 A.D.2d 144, 672 N.Y.S.2d 33 (1st Dep't 1998); Travelers Ins. Co. v. Vomar Const. Co., Inc., 752 N.Y.S. 2d 286 (1st Dept. 2002) (the notice requirement in an insurance policy applies to both the named insured and additional insured and timely notice provided by one insured will not be imputed to the other insured).

Likewise, excess insurers have the same vital interest in prompt notice as to primary insurers and are equally entitled to the fair opportunity to protect themselves that timely notice affords. Accordingly, excess insurers are entitled to assert a defense based on late notice even if they are unable to demonstrate that they were actually prejudiced by the delay in receiving notice. See American Home Assurance Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) and Smurfit Newsprint Corp. v. Southeast Paper Mfg., 368 Fed.3rd 944 (7th Cir.) (2004).

Pursuant to Ohio Casualty's policies, any person or entity claiming coverage was required to give notice of an occurrence or suit "as soon as practicable." These provisions have been interpreted to require notice

---

[2] We note that the New York legislature has adopted recent legislation that will negate these holdings, however, that legislation is not retroactive, and not current in effect.

within a reasonable time under the circumstances. See Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 339, 502 N.Y.S.2d 420 (1st Dept. 1986). In interpreting what constitutes timely notice, courts have held that relatively short periods of unexcused delay are unreasonable as a matter of law. See American Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76 (2d Cir. 1993)(36 day delay); Deso v. London & Lancashire Indem. Co. of America, 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957)(51 day delay); Safer v. Government Employees Ins. Co., 254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998)(more than a one month delay); Winstead v. Uniondale Union Free School Dist., 201 A.D.2d 721, 608 N.Y.S.2d 487 (2d Dep't 1984)(one month); Rushing v. Commercial Casualty Ins. Co., 251 N.Y. 302, 167 N.E. 450 (1929)(22 days); Haas Tobacco Co. v. American Fidelity Co., 226 N.Y. 343, 123 N.E. 755 (1919)(10 days). See also, Herold v. East Coast Scaffolding, Inc., 208 A.D.2d 592, 616 N.Y.S.2d 197 (2d Dept. 1994)(failure to notify insurer until three and a half months after the accident was untimely); Zadrima v. PSM Ins. Co., 208 A.D.2d 529, 616 N.Y.S.2d 817 (2d Dept. 1994)(four month delay unreasonable as a matter of law).

**A. G.M. Crocetti Failed To Give Timely Notice Of The Occurrence, And The Lawsuit.**

As outlined above, significant problems with the flooring system were discovered in January, 2001. Those problems included hollow spots in the underlayment, and de-bonding of terrazzo from the underlayment. Significant repairs were performed on the flooring system on the 13th, 8th,

11th, 6th, and 5th floors throughout February, March, and April 2001. These repairs included wholesale removal and replacement of the entire flooring system in defective areas. Despite Crocetti's knowledge of the defects, and demands for repair of same, no notice was provided to Ohio Casualty Ins. Co.

Following the alleged progressive failure of the flooring system, Crocetti was sued in two separate lawsuits. The R&J Construction lawsuit was initiated in on July 18, 2003, and was Answered by Crocetti on September 3, 2003. The Trataros lawsuit was filed on November 24, 2004. No notice of either lawsuit was ever provided to Ohio Casualty.

On August 12, 2005, Ohio Casualty learned for the first time from its own investigation, that Crocetti was deeply involved in the alleged defective construction, and had been sued. See Aff. of Hollie Sharpe. Ohio Casualty promptly disclaimed coverage.

The uncontradicted record demonstrates that Crocetti had knowledge of a putative occurrence, for some 52 months and did not provide notice to Ohio Casualty. The record also demonstrates that Crocetti was sued twice, and some 25 months passed without notice to Ohio Casualty of the lawsuits. In fact, Ohio Casualty issued its disclaimer to Crocetti in August 2005, prior to receiving any notice from Crocetti regarding the putative occurrence or the lawsuits against it. Under such circumstances, there can be little doubt that Crocetti breached the notice provisions of its insurance policy as a matter of law.

9

Accordingly, coverage for anyone under the Crocetti policy should be barred.

**B.    Bartec Failed To Give Timely Notice Of The Occurrence, And The Lawsuit.**

As outlined above, significant problems with the flooring system were discovered in January, 2001, and significant repairs were performed on the flooring system throughout February, March, and April 2001. Despite Bartec's knowledge of the defects, and demands for repair of same, no notice was provided to Ohio Casualty Ins. Co.

Following the alleged progressive failure of the flooring system, Bartec was sued. The R&J Construction lawsuit was initiated on July 18, 2003. No notice of that litigation was given to Ohio Casualty until December 2, 2003, a five-month delay. Bartec has offered no excuse for its delay, and Ohio promptly disclaimed coverage.

The uncontradicted record demonstrates that Bartec had knowledge of a putative occurrence, for some 36 months and did not provide notice to Ohio Casualty. The record also demonstrates that after Bartec had been sued, some five months passed without notice to Ohio Casualty. Under such circumstances, there can be little doubt that Bartec breached the notice provisions of its insurance policies as a matter of law. Accordingly, coverage for anyone under the Bartec policies should be barred.

C. **Trataros Failed To Give Timely Notice Of The Occurrence, And The Lawsuit.**

Like Crocetti, and Bartec, Trataros was well aware of the manifestation of defects in the flooring system in January 2001. Trataros was further aware that the building owners demanded that the defective flooring be removed and replaced, and that the owners were holding Trataros responsible for the costs associated with the remedial work. See refusal to issue change order annexed to Aff. of Hall as Exhibit M.

Trataros was sued by R&J Construction on July 18, 2003. A second lawsuit as against Trataros in the form of a Third-Party Complaint was filed on August 4, 2004. In each lawsuit, damages for defective construction were sought.

On February 17, 2005, Trataros by way of Fourth-Party Complaint, for the first time sought insurance coverage from Ohio Casualty in connection with claims asserted against Trataros for the defective Conflow/terrazzo flooring system. See Affirmation of Hollie Sharpe. Ohio Casualty received the Complaint, and the demand for coverage it contained on March 10, 2005. Id.

Trataros had actual knowledge of the defects in the Conflow/terrazzo flooring system in January 2001. Trataros provided no notice to Ohio Casualty of that putative occurrence. Likewise, Trataros was sued, in July 2003, and August 2004. No notice was given to Ohio Casualty. It was not until March, 2005, some 20 months after it had been served with a lawsuit, that Trataros made an initial claim for

11

coverage to Ohio Casualty as an additional insured under the Bartec and Crocetti policies. That demand for coverage was in the form of its amended Fourth-Party Complaint. On April 5, 2005, Ohio Casualty Answered the Amended Fourth-Party Complaint, asserting, among other defenses, that Trataros' claims were barred due to its failure to comply with the notice provision contained in the Ohio Casualty policies.

Trataros has not disputed the delay, but claims that its notice was reasonable under the circumstances because it closed its business operations and its files were in storage. Thus Trataros claims it did not know who its insurers were. That excuse has been adjudicated as unreasonable as a matter of law, and has already been rejected by this Court. Accordingly, Trataros' unreasonable delay in reporting the putative occurrence, and in reporting the lawsuits against it, has barred its claims for coverage under the Ohio policies.

## CONCLUSION

Based upon the forgoing authorities and arguments it is respectfully submitted that based upon their undisputed late notice of occurrence and lawsuit, the insurance policies issued to Crocetti, and Bartec, provide no coverage to Trataros Construction Co. Accordingly, summary judgment must be entered reflecting that conclusion and dismissing all such claims for insurance coverage with prejudice.

Respectfully submitted,

**MORGAN MELHUISH ABRUTYN**
Attorneys for Fourth-Party
Defendant, Ohio Casualty Insurance
Company

/s/ *Mark T. Hall*
By:_____
Mark T. Hall, Esq. (MH3275)

Dated:    Livingston, NJ
          August 8, 2008

#495411

13