**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRAVELERS CASUALTY AND SURETY COMPANY as
Administrator for RELIANCE INSURANCE COMPANY,

Plaintiff,

vs.

DORMITORY AUTHORITY - STATE OF NEW YORK, et al.

Defendants.

Case No. 07-CV-6915 (DLC)
**ECF CASE**

DORMITORY AUTHORITY OF THE STATE OF NEW YORK
and TDX CONSTRUCTION CORP.,

Third-Party Plaintiffs,

vs.

TRATAROS CONSTRUCTION, INC.,

Third-Party Defendant.

TRATAROS CONSTRUCTION, INC. and TRAVELERS
CASUALTY AND SURETY COMPANY,

Fourth-Party Plaintiffs,

vs.

CAROLINA CASUALTY INSURANCE COMPANY, et al.

Fourth-Party Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## FOURTH-PARTY DEFENDANT, OHIO CASUALTY INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

---

**Of Counsel,**
JoAnne M. Bonacci, Esq.

**On the Brief,**
JoAnne M. Bonacci, Esq.
Eli J. Rogers, Esq.
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Travelers Casualty and Surety*
*   Company, and Trataros Construction, Inc.*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ I

TABLE OF AUTHORITIES ..................................................................................... II

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

LEGAL ARGUMENT ............................................................................................... 3

I.   THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS
     TIMELY ............................................................................................................. 3

II.  SUMMARY JUDGMENT CANNOT BE GRANTED ON THE BARTEC POLICIES
     IN THAT NEW JERSEY LAW APPLIES AND OHIO CASUALTY HAS NOT
     ESTABLISHED PREJUDICE ............................................................................ 5

   A.   Choice of Law Rules Require Application of New Jersey Substantive Law. ................. 5

   B.   The Parties Intended for New Jersey Law to Apply to the Bartec Policies ..................... 7

   C.   Ohio Casualty Fails to Prove Appreciable Prejudice Required for
        Summary Judgment on the Bartec Policies. .................................................. 10

III. NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES AND/OR
     LATE NOTICE SHOULD BE EXCUSED. ..................................................... 11

   A. DASNY Asserted No Claims regarding Terrazzo in the R&J Action. ............................ 15

   B. No Duty to Notify Until Claim is About to Reach Excess Policy Limits. ........................ 17

IV.  DISPUTED ISSUES OF MATERIAL FACT PRECLUDE
     SUMMARY JUDGMENT AS TO THE PURPORTED LATE NOTICE
     OF CLAIM AND OCCURRENCE .................................................................. 19

V.   NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION. ....20

CONCLUSION ......................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

875 Forest Ave. Corp. v. Aetna Cas. Corp., 37 A.D.2d 11, 322 N.Y.S.2d 53
    (1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ..........................................................22

Acker-Fitzsimmons, 31 N.Y.2d 436, 442 (1972) ..............................................................16

Aetna Cas. & Sur. Co. v. General Time Corp. 704 F.2d 80, 81-83 (2d Cir. 1983).................11

American Home Assur. Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) ........................21

American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995) .....................11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)...............................................3

Apache Foam Prods. v. Continental Ins. Co.., 139 A.D.2d 933,528 N.Y.S.2d 448 (4th Dep't
    1988)....................................................................................................................11

Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 337 (2005)................................15

Asbeka Indus. v. Travelers Indem. Co., 831 F.Supp. 74, 82 (E.D.N.Y. 1993) ......................6

Bonded Concrete, Inc. v. Transcontinental Ins. Co., 12 A.D.3d 761, 762, 784 N.Y.S.2d
    212, 213 ((3d Dep't 2004) .......................................................................................11

Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008).................24

Christiania Gen'l Ins. Corp, of N.Y. v. Great Amer. Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992) 16

City of Utica, N.Y. v. Genesee Mgmt., Inc., 934 F. Supp. 510, 524 (N.D.N.Y. 1996) ...............18

Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 130-131 (1957)...................15

Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317 (1st Dep't
    1995).....................................................................................................................4

Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227, 231, 787 N.Y.S.2d
    22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005).....................................................23

Greater N.Y. Mut. Ins. Co. v. I Kalfus Co., 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't), aff'd, 37
    N.Y.2d 820 (1975)...................................................................................................22

In re Brandon, 97 N.Y.2d 491, 496 n.3 (2002).........................................................14,23

Innophos, Inc. v. Rhodia, S.A., 10 N.Y.3d 25, 29 (2008) ................................................7

J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993)......................................12

Kelly v. Nationwide Mut. Ins. Co., 174 A.D.2d 481, 483, 571 N.Y.S.2d 258, 259 (1st Dep't 1991)................................................................................................................20

Klersy Bldg. Corp. v. Harleysville Worcester Ins. Co., 36 A.D.3d 1117, 1119, 828 N.Y.S. 2d 661, 663 [3d Dept 2007]....................................................................................22

Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003).............................5

Maryland Cas. Co. v. W.R. Grace and Co., 128 F.3d 794, 800 (1997)........................................16

Maryland Cas. Co., 332 F.3d at 153-154.......................................................................................7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) ............................3

Metropolitan Cas. & Sur. Co. v. Mancuso, 93 N.Y.2d 487, 493 (1999).......................................14

New York Mut. Underwriters v. Kaufman, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312 (3d Dep't 1999) ................................................................................................................24

Olin Corp. v. Insurance Co. of North Amer., 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991) .................................................................................5, 18

Regional Import & Export Trucking Co. v. North River Insurance Co., 149 A.D.2d 361 .............7

Sagendorf v. Selective Insurance Co. of Amer., 293 N.J. Super. 81, 95 (App. Div. 1996)..........10

Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972)............3

Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49, 54 (App. Div. 1987)...............................................................................................................10

Town of Smithtown v. National Union Fire Ins. Co., 191 A.D.2d 426, 427-428, 594 N.Y.S.2d 318, 319 ...............................................................................................14

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) ........................21

Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994)............................6

**Statutes**
11 N.J. Admin. Code § 11:1-20.2(f)...............................................................................................9
11 N.J. Admin. Code § 1-20.3.........................................................................................................8
N.Y. Ins. Law § 3420(a)(4)...........................................................................................................22
N.Y. Ins. Law § 3420(a)(5)...........................................................................................................21
N.Y. Ins. Law § 3420(c)(2)(A),.....................................................................................................20

**Rules**

Fed. R. Civ. P. 56(c) .......................................................................................................................3

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") respectfully submit that the motion for Summary Judgment filed by Ohio Casualty Insurance Company ("Ohio Casualty") should be denied. The movant is unable to contest that the notice provided for the within action was fully compliant with the notice provisions of the applicable policies. Movant's attempt to boot-strap the notice analysis for this action into alleged delays associated with a separate, prior action voluntarily dismissed with Ohio Casualty's consent is simply an attempt to cloud the issue of Trataros' proper notification. No party is seeking a judgment against Ohio Casualty as to any losses associated with the prior action. Significantly, the judgment sought pertains to the claims filed in this case only.

Second, it is respectfully submitted that the Bartec policies are subject to and governed by New Jersey substantive law, not New York law. As such, the movant must satisfy its burden of establishing appreciable prejudice as required to sustain a disclaimer of coverage on notice grounds under the law of that state.

Further, the claims alleged by DASNY and/or TDX do not facially implicate coverage under the primary and excess coverage issued to Bartec (the "Primary Bartec Policy" and "Excess Bartec Policy," respectively) or the excess policy issued to Crocetti. Travelers' and Trataros' knowledge of the potential commercial general liability ("CGL") coverage was only derived through their own efforts and investigations. Given the notice pleading style of DASNY's allegations, Travelers and Trataros cannot equitably be charged with knowledge that liability may have existed under the carrier's policies.

In addition, the purported notices of claim and/or occurrence relied upon by the movant are insufficient to trigger those policies' notice requirements. The incidents referred to in

movant's papers did not result in claims against Travelers or Trataros; DASNY's present allegations are extremely different from the alleged flooring issues of 2001/2002.

Lastly, even if New York law applied, it is respectfully submitted that the Court of Appeals questioning application of the "no-prejudice" rule, may eliminate the rule as a result of the certification of a case from the Second Circuit and, in any event, there is an appropriate excuse/justification for any alleged late notice as set forth in the Declaration of John Scarpellino ("Scarpellino Dec.") filed herewith.

## STATEMENT OF FACTS

The Court is respectfully referred to Travelers' and Trataros' Counter-Statement of Material Facts in Opposition to Ohio Casualty's Motion for Summary Judgment, for a recitation of the applicable facts. The Court is also respectfully referred to the Declaration of Eli J. Rogers, Esq., with corresponding exhibits submitted with this motion as well as the Declaration of John Scarpellino.

## LEGAL ARGUMENT

Travelers and Trataros submit that Ohio Casualty's motion for summary judgment should be denied based upon, among other things, timely notice of suit, the application of New Jersey law to some of the policies as well as due to disputed issues of material fact, changes in substantive law, and movant's failures of proof. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, Ohio Casualty bears the burden of proving the lack of any factual issues. Id. Where "the evidence is such that a reasonable party could return a verdict for the nonmoving party," summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Any inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-movants. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

## I.    THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS TIMELY.

Travelers and Trataros provided Ohio Casualty with timely notice of the pending, present action, transmitting copies of the Third-Party Complaint and Counterclaims to the carriers via Federal Express **on the same day** they were received. (See Counter-Statement of Material Facts herein referred to as "CSF" at ¶89) There can be no colorable claim that notice of the within action was unreasonably late; thus, Ohio Casualty's argument alleging late notice of suit is a quintessential red herring. "[A] provision that notice be given 'as soon as practicable' … merely requires that notice be given within a reasonable time under all the circumstances." Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972). No decision cited by Ohio Casualty supports the proposition that an insurer is entitled to summary judgment

in an action of which it was timely notified on the grounds that <u>previously</u> the carrier received late notice of a separate action that was since voluntarily dismissed on mutual consent of the insurer and insured, among others.

Indeed, the Honorable Harold Baer, U.S.D.J., specifically determined that the within action was unrelated to the Baer Action [1] shortly after Travelers filed its Complaint and Jury Demand in 2007. (CSF ¶¶85&86)  Significantly, neither the Amended Fourth-Party Complaint nor the Fourth-Party Complaint filed in the present action assert any claim against Ohio Casualty for indemnification of the claims alleged by the Dormitory Authority - State of New York ("DASNY") <u>in the Baer Action</u>.  No judgment was ever entered against Travelers or Trataros in the Baer Action; no finding of liability to DASNY was ever entered in the Baer Action; nor was the amount of DASNY's claims alleged therein liquidated during the Baer Action.  Thus, for purposes of the potential liability faced by Ohio Casualty *here*, the Baer Action cannot be considered to be an "underlying action," where the carrier's potential liability under the policies became fixed. <u>E.g.</u>, <u>Fusco v. American Colonial Ins. Co.</u>, 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317 (1st Dep't 1995).  To the contrary, the Baer Action was voluntarily dismissed during the early stages of discovery, before even a single deposition had taken place.  Ohio Casualty gave its explicit consent to the dismissal of the Baer Action, and participated in voluntary mediation following that action's conclusion.

Under these circumstances, it is respectfully submitted that Ohio Casualty received timely notice of this suit irrespective of which state's law is applied and which insurance policy is considered.

---

[1]  On or about June 28, 2004, Travelers commenced an action in the United States District Court for the Southern District of New York entitled, <u>Travelers Casualty and Surety Company, et al., v. The Dormitory Authority of the State of New York, et al.</u>, and bearing Civil Action No. 04-CV-5101 (HB).

## II.    SUMMARY JUDGMENT CANNOT BE GRANTED ON THE BARTEC POLICIES IN THAT NEW JERSEY LAW APPLIES AND OHIO CASUALTY HAS NOT ESTABLISHED PREJUDICE.

It is respectfully submitted that Ohio Casualty should be denied summary judgment with respect to the policies issued to Bartec because the movant has failed to demonstrate "appreciable prejudice" as required under New Jersey law, which is applicable to those policies. New York's choice-of-law rules for insurance disputes make clear that New Jersey law controls the analysis of Ohio Casualty's late notice defense with respect to Bartec's policies.  See, Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) (When a Federal Court sits in diversity, the forum state's choice of law rules are applied.)

### A.    Choice of Law Rules Require Application of New Jersey Substantive Law.

As the Bartec policies are a species of written contract, the dispute here is subject to the "center of gravity" or "grouping of contacts" analysis, which New York courts apply to contract actions generally. Id.  "Put differently, New York courts apply 'the law of the place which has the most significant contacts with the matter in dispute.'" Id. (Citation omitted.)  New York courts have identified six factors used to analyze choice of law questions relating to insurance contracts: "the location of the risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." Olin Corp. v. Insurance Co. of North America, 743 F.Supp. 1044, 1049 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991).  The Olin factors are simply an insurance-specific reworking of New York's traditional five factors applied to choice-of-law in contract disputes:

> (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance [i.e., of the contract of insurance], (4) the location of the subject matter of the [insurance]

5

contract, and (5) the domicile or place of business of the contracting parties.

Maryland Cas., 332 F.3d at 151-2 (citing, Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84

N.Y.2d 309, 317 (1994)). And see, Maryland Cas., 332 F.3d at 153 (endorsing the Olin court's

choice of law analysis); Asbeka Indus. v. Travelers Indem. Co., 831 F.Supp. 74, 82 (E.D.N.Y.

1993) (citing Olin factors). Applying the Olin factors here clearly establishes New Jersey as the

state with the most significant contacts to Bartec's policies.

First, Bartec's principal place of business was and is located in New Jersey, the policy

was issued and delivered in New Jersey, and the agent placing the policy was located in New

Jersey. (CSF ¶94, 95 &96) For purposes of this analysis, Ohio Casualty's relevant place of

business should be regarded as either New Jersey (Hamilton Aff., Exhs. A & B, at respective

first pages, identifying the issuer of the policies as Ohio Casualty's "New Jersey Branch Office")

or Ohio. (Rogers Dec., Exh. 29) (admitting Ohio Casualty is an Ohio corporation with its

principal place of business located at 9450 Seward Road, Fairfield, Ohio.) Significantly, the

Broker who arranged for the policy and the payments was located in New Jersey. (CSF ¶96&98)

In terms of the location of the risk, it is clear that the risk covered by Bartec's policy was

not confined to a single project. Rather, "the risks covered by the insurance policies were not

confined to any one principal location." Olin, 743 F. Supp. at 1049. Specifically, the Primary

Bartec Policy provides that its CGL coverage "applies to … 'property damage' only if the …

'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"

(Hamilton Aff., p. 5 of 33) (emphasis added). The policy defines the term "coverage territory"

broadly, to include "The United States of America (including its territories and possessions),

Puerto Rico and Canada; … International waters or airspace…; [and] … All parts of the world

[under several conditions]…." (Id., p. 13 of 33.) The Bartec policies do not identify any

particular construction project as a covered risk; to the contrary, the only "covered location" identified in any of the policies declarations is located in New Jersey. (Id., Exh. A, p. 3 of 33.)

Thus, New Jersey should be construed as the location of the risk. The Second Circuit and the courts of New York have held under similar circumstances that "the principal location of the insured risk should be deemed to be the State where [the insured] … is incorporated and has its principal place of business, from which it negotiated … the Policy, and where the Policy presumably was delivered to it…." Maryland Cas. Co., 332 F.3d at 153-154.

"It is commonplace for courts applying New York choice-of-law rules to disregard (or at least discount) the location of the insured risk when the risk is located in two or more states." Maryland Cas., 332 F.3d at 153 (parenthetical in original). The Second Circuit cited the Olin decision with approval, where the location of the insured risk was "disregarded … because 'the risks covered by the insurance policies were not confined to any one principal location.'" Id., 332 F.3d at 153 (quoting, Olin, 743 F. Supp. 1044). Likewise, the Second Circuit endorsed the First Department's decision in Regional Import & Export Trucking Co. v. North River Insurance Co., 149 A.D.2d 361, in which it was held that "a policy delivered to a New Jersey corporation to insure against a loss occurring 'anywhere' should be subject to the law of [New Jersey.]" Maryland Cas., 332 F.3d at 153 (brackets in original). And see, Regional Imp. & Exp. Trucking Co. v. North River Ins. Co., 149 A.D.2d 361, 362 (1st Dep't 1989).

**B.**      **The Parties Intended for New Jersey Law to Apply to the Bartec Policies.**

In addition, the policy language reflects that the parties intended at the time of contract formation that New Jersey law would govern the insurance contract(s). Innophos, Inc. v. Rhodia, S.A., 10 N.Y.3d 25, 29 (2008) (Agreements are construed in accord with contracting parties' intent at time of formation. Best evidence of that intent is contained in four corners of

the written agreement.)    For example, the Primary Bartec Policy contains a number of endorsements identified as being specific to New Jersey, such as the endorsements entitled "New Jersey Changes – Loss Information," "New Jersey Aggregate Limits Notification," and "New Jersey Changes – Cancellation and Nonrenewal." (Hamilton Aff., Exh. A, pp. 19 of 33, 20 of 33, and 31 of 33 to 32 of 33.)  The Excess Bartec Policy also contains an endorsement entitled "New Jersey Changes – Cancellation and Nonrenewal."  (Id., Exh. B, p. 25 of 35 to 26 of 35.) [2]

The "New Jersey Changes – Cancellation and Nonrenewal" endorsements included in each of Bartec's policies both specifically reference New Jersey law as applicable to the insurer's and insured's respective rights.  Both endorsements contain the following language:

> **Pursuant to New Jersey law**, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured.  The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request....

(Id., Exh. A, p. 31 of 33, & Exh. B, p. 25 of 35) (Emphasis added.)  New Jersey administrative regulations explicitly require this policy language to be included in "[a]ll commercial insurance policy forms issued or renewed on or after January 6, 1987...." 11 N.J. Admin. Code § 1-20.3. And see, 11 N.J. Admin. Code § 1-20.4(a) ("No insurer may cancel or nonrenew a policy based upon underwriting guidelines which are arbitrary, capricious or unfairly discriminatory.")

Both cancellation/renewal endorsements also explicitly refer to the New Jersey Administrative Code for the policy definition of "moral hazard":

"We may cancel this policy ... at least

---

[2]  We note however that while the two endorsements contain similar language, they do not appear to be identical forms.  (Cf., Hamilton Aff., Exh. A at pp. 31 of 33 & 32 of 33, with, Exh. B at pp. 25 of 35 and 26 of 35.)  In addition, a page of the endorsement included in the Primary Bartec Policy appears to be missing.  (Id., Exh. A, pp. 31 of 33 and 32 of 33, at bottom right, identifying "Page 1 of 3" and "Page 3 of 3", respectively.)

(1)   10 days before the effective date of cancellation if we cancel for
...

    (b)   Existence of a moral hazard, **as defined in N.J.A.C. 11:1-20.2(f) as follows**:

        (i)   "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds.  Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard;' and

        (ii)   The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible...."

(Hamilton Aff., Exh. A, p. 31 of 33, & Exh. B, p. 25 of 35.)  This clause conforms to, and is adapted from, the New Jersey Administrative Code, which provides in pertinent part that "[a] policy shall not be cancelled for moral hazard unless the insurer, at least 10 days prior to the effective termination date has mailed or delivered to the insured notice … [stating] the basis for termination in conform[ance] to the following definitions of moral hazard: [et cetera.]"  11 N.J. Admin. Code § 11:1-20.2(f).

Further, although a page is missing from the Primary Bartec Policy's cancellation/renewal endorsement, the corresponding endorsement contained in the Excess Bartec Policy is likewise conformed to the timing requirements set forth by the New Jersey Administrative Code.  Cf., 11 N.J. Admin Code § 1-20.2(d) ("No cancellation … shall be valid unless notice is mailed or delivered by the insurer to the insured … not more than 120 days nor less than 30 days prior to effective date of such cancellation…."), See, Hamilton Aff., Exh. B, p. 26 of 35 ("…If we cancel this policy for any reason listed above, we will mail or deliver a written notice to the first Named Insured … not more than 120 days nor less than 30 days before the effective date of such cancellation.")  Thus, in light of the clear intent that New Jersey law

9

will apply to the Bartec policies, and the fact that virtually all of the six <u>Olin</u> factors weigh toward New Jersey, Travelers and Trataros respectfully submit that New Jersey substantive law should be applied to movant's late notice defense.

### C.     Ohio Casualty Fails to Prove Appreciable Prejudice Required for <u>Summary Judgment on the Bartec Policies.</u>

Applying New Jersey law, Ohio Casualty fails to establish its entitlement to summary judgment on late notice grounds. Regardless as to whether an insurer is alleging late notice of an occurrence, late notice of claim, or the insured's failure to cooperate, such defenses cannot be sustained under New Jersey law "unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by reason of the insured's failure to comply." <u>Solvents Recovery Serv. of New England v. Midland Ins. Co.</u>, 218 N.J. Super. 49, 54 (App. Div. 1987).

Merely unreasonable behavior by an insured is not sufficient to rise to the level of appreciable prejudice; even where an insured failed to give its carrier notice of a claim for fifteen months in violation of the policy requirements, the carrier is "not reliev[d] … of its obligation to show that [the insured's] … delay caused it to irretrievably lose substantial rights and undermined the 'likelihood that it would have had a meritorious defense had it been informed of the accident in a timely fashion.'" <u>Sagendorf v. Selective Insurance Co. of Amer.</u>, 293 N.J. Super. 81, 95 (App. Div. 1996). "Another factor that courts consider in determining whether appreciable prejudice exists pertains to the likelihood of success of an insurer in defending against the insured's claim." <u>Ethicon</u>, 805 F.Supp. at 204. In the matter <u>sub judice</u> there can be no showing of appreciable prejudice because Ohio Casualty has fully participated in the litigation including all discovery and depositions and it has been able to fully investigate and study the floor as DASNY has performed no remediation on it as of the date of this opposition to Ohio's motion.(CSF ¶107) Because Ohio Casualty has not met its burden of establishing

"appreciable prejudice" its motion for summary judgment should be denied as to the Bartec policies.

### III.    NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES AND/OR LATE NOTICE SHOULD BE EXCUSED.

Even if New York law is applied, it is respectfully submitted that notice was timely or should be excused.  Here, the issues are when it was known that a covered claim related to the performance of Bartec as to Bartec's policies or as to the performance of Crocetti as to the Crocetti policies.  That is different than any determination as to when the claim related to Trataros itself.  Further, one policy is an excess policy which requires knowledge that a claim may exceed the primary policy's limit.  It is respectfully submitted that the notice was timely when these factors are considered.

Initially, it is the "assertion of an exposure to liability within the risks covered by an insurance policy" which constitutes a claim such that a policy's notice provision is triggered. (Emphasis added) American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995).

Allegations of defective workmanship are, generally speaking, not claims for which coverage exists under a CGL policy such as was issued by Ohio Casualty.  Bonded Concrete, Inc. v. Transcontinental Ins. Co., 12 A.D.3d 761, 762, 784 N.Y.S.2d 212, 213 ((3d Dep't 2004) (A CGL insurer "is not a surety for a construction contractor's defective work product.")  In that regard, it has been stated that the purpose of a CGL policy "is to provide coverage for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product ... is not what the damaged [party] bargained for."  Id. [3]

---

[3] Nonetheless, New York and the Second Circuit recognize an exception to this rule where "an insured's defective product is a mere component of another product on structure Bonded Concrete, 12 A.D.3d at 763; Aetna Cas. & Sur. Co. v. General Time Corp. 704 F.2d 80, 81-83 (2d Cir. 1983); Apache Foam Prods. v. Continental Ins. Co.., 139 A.D.2d 933,528 N.Y.S.2d 448 (4th Dept' 1988).  In this action only through Travelers' investation did it become

Here, the bare allegations set forth in the Third-Party Complaint filed by DASNY and TDX Construction Corp. ("TDX"), in the Baer action, without support of extraneous matters developed through investigation and discovery, are not sufficient to constitute a claim for CGL coverage. To the contrary, as the claim has been couched by DASNY, its Third-Party allegations facially allege defective workmanship issues, such that CGL coverage would typically be excluded. (CSF, ¶¶79 & 88 ) This is not meant to imply that Travelers and Trataros do not believe CGL coverage exists for DASNY's claims; merely that their investigation led to that conclusion in advance of allegations by and/or discovery from DASNY triggering the duty to notify. (See Declaration of John Scarpellino, Sr. hereinafter "Scarpellino Dec." ¶¶ 6, 8-10)

For example, although not alleged by DASNY with specificity in the Third-Party Complaint, DASNY's 30(b)(6) witness testified in this action on July 2, 2008 that DASNY's position is not only that the terrazzo is failing, but that the underlayment is failing as well. (Rogers Dec., Exh. 3, CSF ¶116) (Cf., Rogers Dec., Exh. 33- 2007 3rd Party Comp.) Thus, although the Third-Party Complaint's allegations of floor defects only specifically mention G.M. Crocetti, Inc. ("Crocetti") and/or Trataros, the development of the facts through discovery indicates a more complex scenario with potential liability of Bartec. Indeed, the issue is further complicated by the fact that Crocetti installed portions of the underlayment. (CSF ¶¶67-69) Thus, to the extent DASNY alleges that the underlayment is "failing" in addition to the terrazzo, Crocetti (and vicariously, its surety Carolina Casualty Insurance Company) may bear some responsibility relevant to both aspects of DASNY's claim. (CSF ¶ 29)

---

apparent that the claim against Travelrs is "not simply one for faulty workmanship, but rather for consequential property damage inflicted upon a third party as a result of the insured's activity," thus implicating potential CGL coverage for DASNY's claims. J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993) (surveying such cases.

While Travelers does not concur, DASNY further contends in deposition testimony that the purported flooring failures occur in a two step process: first, the epoxy terrazzo allegedly shrinks away from the zinc strips which border the terrazzo panels, then at some indeterminate time in the future, the adhesive bond between the terrazzo and the underlayment allegedly fails, leading to a purported buckling or "uplifting" of the floor surface. (See Rogers Cert., Exh. 3; CSF ¶¶109-113). Allegedly, DASNY can detect through visual inspection those areas where the first stage of the process has occurred but where the second stage has not yet transpired. (See Rogers Cert., Exh. 3; CSF ¶¶109,111). Assuming, arguendo, this is the case, then the two steps of the purported failure process are not so close in time as to be a single event; rather, if that is true, it would appear under those circumstances that one or more elements of the flooring system is/are damaging the entire flooring system. (See Rogers Cert., Exh. 3; CSF ¶¶109,111).

DASNY further alleges that the underlayment material Conflow is either defective or mislabeled. (See Rogers Cert., Exh. 3; CSF ¶119). Given that this purportedly defective material is incorporated into a flooring system composed of the additional elements of structural concrete, "hydraulic cement" and epoxy terrazzo (See Rogers Cert., Exh. 3; CSF ¶¶49,67-69), coverage should be implicated under the CGL policies issued by Ohio Casualty and others. Yet none of these allegations are apparent on the face of DASNY's pleadings, either in the Baer Action or here.

Similarly, the allegations advanced by DASNY in its pleadings, in both the Baer Action and the within action, make no allegations as to the cause of the alleged defects but rather go simply to the effect. To the extent that DASNY's notice allegations could be construed as implicating causation, those implications are solely directed to purportedly poor workmanship by Crocetti and/or Trataros. Neither the contemporaneous project records, nor DASNY's pleadings,

13

make any mention of alleged product defects in the underlayment installed by Bartec industries, Inc. ("Bartec"), nor of any purportedly defective products incorporated into the Project's epoxy terrazzo flooring system.

Thus, the owner itself had no knowledge of an occurrence, and did not allege one had occurred. Under such circumstances, it would be the height of inequity to charge Trataros not only with imputed knowledge of an occurrence that was never alleged, but strict liability to report a non-claim (at least, so far as the term "claim" is defined in the policies.) to its carriers, including Ohio Casualty. By way of comparison, the New York Court of Appeals has recognized that under certain circumstances a civil action can begin before the insured knows or reasonably should know that he must comply with the policy's notice of claim requirements. In re Brandon, 97 N.Y.2d 491, 498 (2002). Similarly, the Court of Appeals ruled that:

> [a]lthough in theory most automobile accidents carry a potential claim for underinsurance benefits, it takes time, investigation and analysis to determine whether one will actually result. In the assessment a number of factors come into play, including the seriousness and nature of the insured's injuries, the potential liability of multiple parties, and of course the extent of a tortfeasor's coverage. Because these factors will vary from case to case, so too will the time at which an underinsurance claim becomes reasonably ascertainable.

Metropolitan Cas. & Sur. Co. v. Mancuso, 93 N.Y.2d 487, 493 (1999). Although the instant case involves a CGL/construction industry context, the same principle holds true where there has been no notice of claim preceding the complaint (or third-party complaint), and the allegations pleaded are not sufficient to put the insured on notice as to the policy implications. And see, Town of Smithtown v. National Union Fire Ins. Co., 191 A.D.2d 426, 427-428, 594 N.Y.S.2d 318, 319 (summary judgment in favor of insurer reversed; allegations in complaint may create issue of fact as to whether insured should have reasonably believed that coverage claim may

arise from allegations); <u>Deso v. London & Lancashire Indem. Co. of Am.</u>, 3 N.Y.2d 127, 130-131 (1957) (discussing decisions where delay was excused due to insured's ignorance that injury resulted from an accident, or where the insured testified he was unaware the policy covered the accident in question).

The typical cases where an insured is charged with knowledge of an occurrence and concomitant duty to notify arise where the fact of the occurrence was known to the insured, but the person to whom liability attached was unknown. <u>See</u>, <u>e.g.</u>, <u>Argo Corp. v. Greater N.Y. Mut. Ins. Co.</u>, 4 N.Y.3d 332, 337 (2005) (slip and fall accident results in personal injury action). In circumstances such as <u>Argo</u>, there can be no question as to the likelihood that the injuries described in a personal injury suit would come within the coverage provided; the allegations themselves should present sufficient notice to the insured. <u>Id.</u>

Here, the circumstances present the exact opposite scenario. At the very best, Trataros could be said to have had knowledge (at least by the point of the Third-Party Complaint's filing) that the owner believed Trataros to be at least partially responsible for the alleged problems, however, Trataros had no reason to believe based upon the claim presented by DASNY that its potential liability arose from an occurrence and/or that that occurrence was attributable to Bartec or Crocetti.

A.    **<u>DASNY Asserted No Claims regarding Terrazzo in the R&J Action.</u>**

While Ohio Casualty contends that it did not receive timely notice of the R&J Action,[4] at <u>no point</u> in that action did DASNY assert claims against Travelers or Trataros alleging defects in the Project's epoxy terrazzo floors and/or underlayment. Travelers and Trataros cannot speak to whether or when Bartec or Crocetti provided notice to any of their carriers with respect to <u>any</u>

---

[4] Trataros' subcontractor, R&J Construction Corp. ("R&J") commenced a civil action in the Supreme Court of the State of New York, New York County, on or about July 18, 2003, entitled R&J Construction Corp. v. Trataros Construction, Inc., and bearing Index No. 113225/03 (the "R&J Action").

action.  Presumably, that will need to be the subject of discovery.  In that regard, Crocetti is not even a party to these proceedings.  However, it should also be noted that those parties were only named as defendants by R&J with respect to its lien foreclosure causes of action due to liens they had filed.  It is difficult to fathom what implications, if any, a purported failure to provide notice of the R&J Action has for the coverage issues presented here.    One significant fact cannot be contested, DASNY made <u>no</u> claim against Travelers or Trataros for alleged defects in the epoxy terrazzo or underlayment in the R&J action. (CSF, ¶76)

As the Second Circuit has stated, "[w]hen the duty to provide such notice commences requires an **objective** evaluation of the facts known to the insured.  The objective standard is one of <u>reasonableness</u>."  <u>Christiania Gen'l Ins. Corp. of N.Y. v. Great Amer. Ins. Co.</u>, 979 F.2d 268, 275 (2d Cir. 1992) (emphasis added).  There is no *duty* to provide notice when there is only a bare, outside chance that coverage may be implicated.  "[T]he *duty* to provide notice … does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question."  <u>Id</u>. (citing, <u>Acker-Fitzsimmons</u>, 31 N.Y.2d 436, 442 (1972)) (emphasis added).  This notice obligation only arises "when an insured complying with its duty to use diligence in investigating potential claims against it would believe from the information available that its policy would be involved."  <u>Id</u>., 275-276.

"[O]bviously the insurer is not requiring its insured to give notice of suits that do not implicate the insurer's policy."  <u>Maryland Cas. Co. v. W.R. Grace and Co.</u>, 128 F.3d 794, 800 (1997).  "Notice of 'suit' must mean notice of suit for which the insurer might have to respond, and the same construction applies to notice of 'occurrence.'"  <u>Id</u>.

Under the terms of Ohio Casualty's policies, there is no obligation to provide notice of claims which do not implicate a claim for insurance coverage.  Nothing in the policies at issue

supports Ohio Casualty's position that a simple breach of subcontract/payment bond/lien foreclosure action requires notice to the carrier. To the extent that Travelers and Trataros have never asserted any claim for coverage in connection with any claims asserted during the R&J Action, the issue of alleged late notice of that action is a red herring, without any significance to the claims currently pending before this Court.

**B.      No Duty to Notify Until Claim is About to Reach Excess Policy Limits.**

Further, Ohio Casualty was not entitled to notice, whether of an occurrence or a claim, from either Travelers or Trataros until it became clear that the potential liability arising from DASNY's claim would reach Ohio Casualty's policies. There is nothing in the record establishing whether and when this occurred. For Travelers' and Trataros' purposes, without regard to how they might be designated by the carrier, each of the policies at issue in this motion are "excess" policies. Ohio Casualty admits that two of the policies at issue in this motion are by definition excess policies. (See Hamilton Aff., ¶¶2-3). The third policy at issue, the Primary Bartec Policy provides primary coverage to its named insured, Bartec; Trataros (and/or its subrogee, Travelers) are additional insureds under the policy. Under the explicit terms of the policy, the coverage provided to an additional insured "shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis." (Hamilton Aff., Exh. A, page 23 of 33, entitled "Blanket Additional Insured (Owners, Contractors or Lessors.") Nothing in Bartec's purchase order requires the additional insured coverage to be primary. (See Hall Dec., Exh. D, p. 2, ¶ 21.)

Thus, for the Ohio policies, Trataros and Travelers had no duty to provide notice until they reasonably should have known that Trataros' own insurance coverage, and "any other valid and

collectible insurance available" to Trataros and/or Travelers would be exhausted.  (CSF ¶101) <u>And see</u>, <u>City of Utica, N.Y. v. Genesee Mgmt., Inc.</u>, 934 F. Supp. 510, 524 (N.D.N.Y. 1996) ("An insured's duty to notify its excess carrier of an occurrence is triggered 'when the circumstances … would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage.")

Unlike a primary carrier, who will "uniformly undertake[] to investigate and defend any claim covered by the policy," an excess carrier "does not undertake to defend the insured." <u>Olin Corp. v. Insurance Co. of North Amer.</u>, 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990), <u>aff'd</u>, 929 F.2d 62 (2d Cir. 1991).  For that reason, an excess carrier "is not interested in every accident, but only in those that may be serious enough to involve it." <u>Id</u>.

Given the breadth of the Primary Bartec Policy's exhaustion requirement, as well as the fact that the other Ohio policies are excess policies as well as the numerous potentially liable parties, the date on which Trataros and/or Travelers became reasonably certain that the Primary Bartec Policy could be reached by DASNY/TDX's alleged damages is when DASNY first advised of its damage claims in discovery after the carriers were already parties (CSF ¶101).  Even then there was the issue of exhaustion of coverage from Trataros' own primary and excess carriers, and Carolina Casualty's bond for Crocetti's subcontract. Certainly, the project records dating from 2001 and 2002 which Ohio Casualty attaches to its motion are insufficient to even <u>suggest</u> a possible range of damages, let alone predict whether the penal sum of Carolina's bond and Trataros' applicable insurance coverage would be exhausted and/or whether there is a claim that would be covered by such insurance.

The difficulty in establishing the date when Trataros' and Travelers' duty to notify vested is compounded with respect to the Excess Bartec Policy.  That policy only becomes implicated

once the Primary Bartec Policy is exhausted, which itself is not reached until all other available sources have been exhausted.

## IV.    DISPUTED ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT AS TO THE PURPORTED LATE NOTICE OF CLAIM AND OCCURRENCE.

The other grounds relied upon by Ohio Casualty, namely, the purported indicia of claim and/or occurrence allegedly arising contemporary with the Project, do not support the construction advanced by Ohio Casualty. First, Trataros promptly investigated the possible occurrence, arranging for an inspection of the alleged problem areas by a representative of Conspec, Dayton's predecessor-in-interest; performing surveys of the underlayment and installed terrazzo; taking coring samples of the terrazzo for analysis (even before the alleged "claim letter"); and directing its subcontractor to perform corrective work. (CSF ¶¶58-59). Conspec's representative stated that the alleged terrazzo problem on the 13th floor was limited to "a small portion of the lobby area." (See Exh. 13 annexed to Rogers Dec.). The corrective work was performed within 8 working days on the two problem areas. (See CSF ¶¶58-59).

Further, to the extent that Ohio Casualty attempts to imply that DASNY/TDX's letter dated May 13, 2002, refusing to pay for corrective work performed by Crocetti is somehow indicative of a pending claim or occurrence, Travelers and Trataros note that, in fact, DASNY continued to pay change orders to Trataros for work performed by Crocetti, including a change order issued by DASNY for repairs to terrazzo damaged by "unidentified trades" executed by DASNY in December, 2002. (See Hall Dec., Exh. M, Rogers Dec., Exh. 17, CSF ¶71) Thus, this change order compensating Trataros for repairs to the terrazzo floors was issued by DASNY approximately eight months **after** the date of the letter appended as Exhibit C to the Hall Affidavit. (See Rogers Dec., Exh. 17, CSF ¶71) DASNY also issued a separate change order to compensate Crocetti for its work installing underlayment at the Project. (CSF ¶67).

19

To the extent that the majority of the Crocetti work tickets appended to Ohio Casualty's moving papers relate to repairs undertaken in response to TDX's February 28, 2001 letter, DASNY and TDX Project personnel have testified that the alleged defects in the terrazzo floors relied upon by movant were in fact remedied and considered to be a dead issue. (CSF ¶63-66, 126)   Indeed, DASNY's own project manager testified that when he left the Project, *seven months after* the purported claim letter attached as Exhibit C to the Hall Affidavit, there were no complaints about the installed terrazzo and that it "looked great." (CSF ¶64).

New York law has long held that "[N]ot every trivial mishap [requires] notice be given immediately to the insurance company, even though it may prove afterwards to result in serious injury."  Kelly v. Nationwide Mut. Ins. Co., 174 A.D.2d 481, 483, 571 N.Y.S.2d 258, 259 (1st Dep't 1991). Because disputed issues of material fact exist as to when Trataros knew or should have known of an "occurrence" and when DASNY asserted an affirmative claim, that required notice to Ohio Casualty, Travelers and Trataros respectfully submit that this Court should deny summary judgment to Ohio Casualty.

## V.    NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION.

Travelers and Trataros submit that summary judgment is inappropriate as New York has abrogated the no-prejudice exception.  On or abut July 21, 2008, New York Governor David Paterson signed into law a bill amending Section 3420 of the New York Insurance Law.  The revised statute provides, in pertinent part, that "[i]n any action in which an insurer maintains that it was prejudiced as a result of failure to provide timely notice, the burden of proof shall be on … the insurer to prove that it has been prejudiced, if the notice was provided **within two years** of the time required under the policy…."  N.Y. Ins. Law § 3420(c)(2)(A), (emphasis added).  The new bill also requires all, new insurance contracts to be issued with a provision stating "that

failure to give any notice required to be given by such policy within the time prescribed therein, shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer...." N.Y. Ins. Law § 3420(a)(5). Under the bill's own terms, it does not take effect until 180 days after its enactment; however, as discussed below, the public policy considerations underlying the bill are consistent with New York case law favoring liberalization of the no-prejudice exception. In light of the recent trends in jurisprudential and statutory law expressing a disfavor for the no-prejudice exception, and/or the oppressive manner of its application, Travelers and Trataros respectfully submit that Ohio Casualty's motion for summary judgment should be denied. In the alternative, an appropriate excuse or justification for the delay has been established.

Although it is infrequently treated as such in its application, the New York Court of Appeals has repeatedly stated that the no-prejudice exception relied upon by Ohio Casualty

> is a **limited** exception to two established rules of contract law: (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice; and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) (citations omitted). Indeed, as recently as 1997, the New York Court of Appeals re-affirmed that *"[u]nder traditional contract-law principles*, the breach of such a contractual condition would excuse the aggrieved party's performance *only if that party was actually prejudiced by the delay*." American Home Assur. Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) (emphasis added).

Numerous limiting factors are built into New York's no-prejudice doctrine, both in terms of statutory law and *stare decisis*. Such constraints include the rule that reasonableness of a proffered excuse for late notice is an issue of fact (Klersy Bldg. Corp. v. Harleysville Worcester

Ins. Co., 36 A.D.3d 1117, 1119, 828 N.Y.S.2d 661, 663 [3d Dept 2007]), and the current version of Insurance Law § 3420(a)(4) which provides that an insured's failure to timely forward a summons and complaint may be excused if it was not "reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible." N.Y. Ins. Law § 3420(a)(4). Obviously, the intent of such constraints is to ameliorate the harshness of the exception; however, some courts simply pay lip service to these concepts without applying them. Thus, the explicitly "limited" exception has been at times applied with a draconian bent.

Some of the relevant New York precedents demonstrate greater liberality with application of the no prejudice exception, and far greater concern regarding the equity of charging an insured with a strict duty of notification under particular circumstances. See e.g., Greater N.Y. Mut. Ins. Co. v. I Kalfus Co., 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't), aff'd, 37 N.Y.2d 820 (1975). In Acker-Fitzsimmons, the Court of Appeals endorsed a Third Department holding, previously affirmed by the Court of Appeals in a separate decision, the facts of which were as follows per the Court:

> a three-year-old child fell from a fourth floor apartment window and was killed. It was held that delayed notice of the accident did not breach the notice provision where the insured, acting as a reasonable and prudent person, believed he was not liable. That accident … simply was not one which would lead a reasonable person to envision any possible liability on the part of the insured corporate owner of the building. In fact, the circumstances (of which the insured apprised itself) indicated negligence on the part of the child's mother.

Security Mut., 31 N.Y.2d at 442. And see, 875 Forest Ave. Corp. v. Aetna Cas. Corp., 37 A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ("[M]ere knowledge that an accident has occurred does not always give rise to a duty upon the insured to report such accident to his insurer.")

Yet, as this Court cited in its opinion as to the United States Fire Insurance Company motion, some more recent caselaw largely ignores this traditional moderation of the no-prejudice exception.  However, other recent caselaw has questioned whether the doctrine will survive as to late notice of claims.  The Court of Appeals has noted that "New York is one of a minority of states that still maintain a no-prejudice exception." In re Brandon, 97 N.Y.2d 491, 496 n.3 (2002)

> [A]s the Supreme Court of Tennessee noted … "the number of jurisdictions that still follow the traditional view has dwindled dramatically."  Indeed, that court noted that in the preceding 20 years, only two states -New York and Colorado- had "considered the issue" and "continued to strictly adhere to the traditional approach."  Since then, Colorado adopted the majority rule, requiring insurers to demonstrate prejudice.

Id.  A growing number of courts applying New York law, in apparent recognition that a judicially-enforced forfeiture of contractual rights in the absence of prejudice grants a windfall to the disclaiming carrier, have taken a jaundiced view of the no-prejudice exception.  "In other words, the insurer has been granted, wholly through judicial largess, the benefit of a conclusive presumption of prejudice."  Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227, 231, 787 N.Y.S.2d 22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005).

Brandon appeared to signal the beginning of a shift away from the no-prejudice exception, insofar as the Court declined to extend the exception's use into the area of Supplementary Uninsured Motorist ("SUM") coverage, holding that SUM insurers must show prejudice in order to disclaim on late notice grounds.  Brandon, 97 N.Y.2d at 498.  And see, Mark A.Varrichio v. Chicago Ins. Co., 312 F.3d 544 (2d Cir. 2002) ("We believe [Brandon] … casts doubt on the traditional New York [no-prejudice] rule…").  Only a few years before Brandon, the Third Department held that an insurer who disclaims coverage under a

homeowner's policy on late notice grounds was required to demonstrate prejudice. <u>New York Mut. Underwriters v. Kaufman</u>, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312 (3d Dep't 1999).

While some in-roads were made via these decisions, ultimately the Legislature abrogated the rule outright, expressing its distaste for the no-prejudice exception in no uncertain terms:

> New York is in the minority of states in the country because most states require insurers to suffer some form of prejudice before coverage may properly be denied for late notice. <u>Current law, therefore, leads to an inequitable outcome with insurers collecting billions of dollars in premiums annually, and disclaiming coverage over an inconsequential technicality</u>…. This bill … eliminates the extreme hardship placed on those who pay their premiums timely only to find at a time of need that their policy is not available.

(Rogers Dec., Exh. 42.)

Further, in a recent case where it noted the "severity" of the no-prejudice rule, the Second Circuit certified to the Court of Appeals a question which may lead to a decision as to whether the no-prejudice rule should apply as to late notice of a claim where, as here, timely notice of suit was provided. See <u>Briggs Avenue L.L.C. v. Ins. Corp. of Hannover</u>, 516 F.3d 42, 49 (2d Cir. 2008). The Court of Appeals accepted Certification in March of this year. 10 N.Y.3d 780, 886 N.E.2d 775 (2008). Therefore, at a minimum, if this Court otherwise disagrees with all of our positions, it is respectfully submitted that it should refrain from decoding this issue until the Court of Appeals renders its decision in that case.

Further, however, even if the notice were otherwise late, there is the issue of a reasonable excuse or justification. In that regard, it is respectfully submitted that the following facts should be considered: 1. Trataros' investigation and understanding that any problems with the floor had been corrected (Rogers Dec, Exh. 23 and 24; CSF ¶¶56-62); 2. Travelers' investigation and belief that neither Trataros nor Travelers had liability (See Scarpellino Affidavit, ¶¶5-6); 3. Trataros went out of business and had no employees after 2002 (CSF ¶127); 4. It was unclear whether Bartec had any

exposure; 5. It was unclear whether Crocetti had any exposure; 6. It was unclear whether excess coverage would be impacted (CSF¶101) and 7. It did not appear that the claims would be covered in any event. (Scarpellino Affidavit at ¶8). For one or more of the foregoing reasons, it is respectfully submitted that any delay should be excused/justified.

## CONCLUSION

For the foregoing reasons, and those adduced in the opposing Affidavit submitted herewith, Travelers and Trataros respectfully request that the Court deny Ohio Casualty's Motion for Summary Judgment in its entirety.

Dated:    Florham Park, New Jersey
          September 12, 2008

                              Respectfully submitted,
                              **DREIFUSS BONACCI & PARKER, LLP**


                              By:    _____/S/_____
                                     Eli J. Rogers (ER:6564)