# EXHIBIT
# 38

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW
(A stock insurance company, herein called the company)

THE OHIO CASUALTY INSURANCE COMPANY

| POLICY NUMBER |
| BXO (02) 52 69 35 48 |
| COMMERCIAL UMBRELLA |
| OCCURRENCE |

# The Ohio Casualty Group of Insurance Companies
**136 North Third Street, Hamilton, Ohio 45025**    1-800-843-6446

**POLICY DECLARATIONS**

| NAMED INSURED & MAILING ADDRESS        (ITEM 1) | AGENT'S NAME & ADDRESS        0660 31 00 6454 |
|---|---|
| G.M. CROCETTI, INC.<br>3960 MERRITT AVE<br>BRONX NY 10466 2502 | TELEPHONE: (516) 733-9400<br>ATLANTIC STAR INTERMEDIARIES<br>390 N BROADWA<br>JERICHO              NY 11753-2125 |

| INSURED IS CORPORATION | PREVIOUS POLICY NO.        UMB 09 27 43 86 |
|---|---|
| | INSURED'S BUSINESS MARBLE, STONE AND TILE |

**POLICY PERIOD:** THIS POLICY IS IN FORCE FROM 03/31/01 TO 03/31/02 AT (ITEM 2) 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.
THESE DECLARATIONS AND THE UMBRELLA COVERAGE FORM (WHICH CONSISTS OF COVERAGE FORMS AND OTHER APPLICABLE FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART OF IT) COMPLETE THIS POLICY.

3. PREMIUM:

    COMMERCIAL UMBRELLA PREMIUM. . . . . . . . . . . . .    $24,000.00
    TOTAL ADVANCE PREMIUM. . . . . . . . . . . . . . .    $24,000.00

    TOTAL PROVISIONAL PREMIUM. . . . . . . . . . . . .    $24,000.00

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY WILL RECEIVE AND RETAIN NO LESS THAN    $4,800 AS THE MINIMUM PREMIUM

BASIS OF PREMIUM:    NON-AUDITABLE ( X )    AUDITABLE ( )

4. LIMITS OF INSURANCE:

    $25,000,000    EACH OCCURRENCE
    $25,000,000    GENERAL AGGREGATE (WHERE APPLICABLE)
    $25,000,000    PRODUCTS - COMPLETED OPERATIONS AGGREGATE

5. SELF-INSURED RETENTION:    $10,000.00

N81        CONTINUED ON PAGE 2

Issue Date 04/02/01 At WINDSOR BRANCH OFFICE        By _____

CLASS E

OC7007/0399

 **The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

**NAME OF COMPANY** THE OHIO CASUALTY INSURANCE COMPANY

**NAMED INSURED** G.M. CROCETTI, INC.          **POLICY NO.** BXO (02) 52 69 35 48

**INTERNAL USE**

SCHEDULE OF FORMS AND ENDORSEMENTS

FORMS/ENDORSEMENTS APPLICABLE TO THIS POLICY AT TIME OF ISSUE

| CU60020697 | CU60060499 | CU61060697 | CU61500697 |
| CU61530697 | CU62050398 | CU62200697 | CU63110697 |
| CU63690697 | CU63980697 | | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

TRANS:0001

CONTINUED ON PAGE   3

WT3 BJS7      0000 00/00/03 24688      HOME OFFICE COPY      N/R PAGE:      2

 **The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

| NAME OF COMPANY | THE OHIO CASUALTY INSURANCE COMPANY |
|---|---|

| NAMED INSURED | G.M. CROCETTI, INC. | POLICY NO. BXO (02) 52 69 35 48 |
|---|---|---|

| INTERNAL USE | | |
|---|---|---|

## SCHEDULE OF
## UNDERLYING INSURANCE

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF COVERAGE | LIMITS OF INSURANCE |
|---|---|---|
| LUMBERMEN'S MUTUAL 4LS00175900 03/31-01-03/31/02 | GENERAL LIABILITY (X) OCCURRENCE FORM ( ) CLAIMS MADE FORM | $ 1000000 EACH OCCURRENCE LIMIT $ 1000000 PERSONAL AND ADVERTISING INJURY LIMIT $ 2000000 GENERAL AGGREGATE LIMIT $ 2000000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT |
| PENNSYLVANIA GENERAL OJAP15148 03/31/01-03/31/02 | AUTOMOBILE LIABILITY ANY AUTOMOBILE | (X) COMBINED SINGLE LIMIT $ 1000000 EACH ACCIDENT |
| NEW YORK STATE FUND 12503579 05/01/00-05/01/01 | EMPLOYERS LIABILITY | BODILY INJURY BY ACCIDENT $ 500000 EACH ACCIDENT BODILY INJURY BY DISEASE $ 500000 POLICY LIMIT $ 500000 EACH EMPLOYEE |
| LUMBERMEN'S MUTUAL 4LS00175900 03/31/01-03/31/02 | EMPLOYEE BENEFITS LIABILITY | $ 1000000 EACH CLAIM $ 1000000 AGGREGATE |

TRANS:0001

CONTINUED ON PAGE   4

WT3 BJS7        0000 00/00/03 24688        HOME OFFICE COPY        N/R PAGE:    3

 **The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

**NAME OF COMPANY** THE OHIO CASUALTY INSURANCE COMPANY

**NAMED INSURED** G.M. CROCETTI, INC.                    **POLICY NO.** BXO (02) 52 69 35 48

| INTERNAL USE | |
|---|---|

CU6011 0697

GENERAL ENDORSEMENT

NAMED INSURED

THE NAMED INSURED IS HEREBY EXTENDED TO INCLUDE THE FOLLOWING:

　　　G.M. CROCETTI, INC.
　　　SUPERIOR STONE & TERRAZZO CORP.
　　　BEVERLY TILE & MARBLE, INC.

THIS ENDORSEMENT DOES NOT CHANGE ANY OTHER PROVISION OF THIS
POLICY.

TRANS:0001                    CONTINUED ON PAGE    5

 **The Ohio Casualty Group** of Insurance Companies
136 North Third Street, Hamilton, Ohio 45025

**NAME OF COMPANY** THE OHIO CASUALTY INSURANCE COMPANY

**NAMED INSURED** G.M. CROCETTI, INC.                    **POLICY NO.** BXO (02) 52 69 35 48

**INTERNAL USE**

SCHEDULE OF FORMS AND ENDORSEMENTS
CONTINUED

FORMS/ENDORSEMENTS APPLICABLE TO THIS POLICY AT TIME OF ISSUE

CU60110697    NAMED INSURED

TOTAL PROVISIONAL CHARGES:............. $24,000.00

TRANS:0001

WT3 BJS7      0000 00/00/03 24688      HOME OFFICE COPY      N/R PAGE:      5

CU 60 02 06 97

# COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

I.    **COVERAGE**

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement Section II. LIMITS OF INSURANCE.**

II.   **LIMITS OF INSURANCE**

A.    The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

1.    "Insureds";

2.    "claims" made or "suits" brought; or

3.    persons or organizations making "claims" or bringing "suits."

B.    The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section I., except:

1.    damages included in the "products-completed operations hazard"; and

2.    coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

C.    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

D.    Subject to **B.** or **C.** in Section **II. LIMITS OF INSURANCE,** whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section I. because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

CU 60 02 06 97                              **(Page 1 of 15)**

E.  If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1.  in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

2.  in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G.  **Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1.  the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

2.  the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III.  **DEFENSE**

A.  We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

1.  the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

2.  damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

B.  When we assume the defense of any "claim" or "suit":

1.  We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

2.  All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

CU 60 02 06 97                                      **(Page 2 of 15)**

3. We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the "Insured":

   a. premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

   c. all costs taxed against the "Insured" in any "claim" or "suit" we defend;

   d. pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   f. the "Insured's" actual and reasonable expenses incurred at our request.

C. We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

D. In all other instances except Subsection A. in Section III. DEFENSE, we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV.  EXCLUSIONS

This insurance does not apply to:

A. "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B. Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

C. Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

D. Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

E. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

CU 60 02 06 97                                    (Page 3 of 15)

F.   "Property damage" to "your product" arising out of it or any part of it.

G.   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.   "your product";
2.   "your work"; or
3.   "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.   "Property damage" to property owned by the "Insured."

J.   "Personal injury" or "advertising injury":
1.   arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

2.   arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

3.   arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

4.   for which the "Insured" has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

K.   "Advertising injury" arising out of:
1.   breach of contract, other than misappropriation of advertising ideas under an implied contract;

2.   the failure of goods, products or services to conform with advertised quality or performance;

3.   the wrong description of the price of goods, products or services; or

4.   an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

L.   Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:
1.   The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

2.   Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

3.   Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

CU 60 02 06 97                              (Page 4 of 15)

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**M.** "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**N.** Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

    **1.** asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

    **2.** exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

    **3.** any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

**O.** "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

    **1.** refusal to employ or promote;

    **2.** termination of employment;

    **3.** coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

    **4.** consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **O.1.** through **O.3.**

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

**P.** "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion** attached to this Policy.

**Q.** The following Items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

    **1.** Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

    **2.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

    **3.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such aircraft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

CU 60 02 06 97                     **(Page 5 of 15)**

4. "Bodily injury" to:

    a.    an employee of any "Insured" arising out of and in the course of:
        i.    employment by any "Insured"; or
        ii.    performing duties related to the conduct of any "Insured's" business; or
    b.    the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph 4.a.

This exclusion applies:
    a.    whether any "Insured" may be liable as an employer or in any other capacity; and
    b.    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## V.    DEFINITIONS

A.    "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

    1.    oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    2.    oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;
    3.    misappropriation of advertising ideas or style of doing business;
    4.    infringement of copyright, title or slogan; or
    5.    mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

B.    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

C.    "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D.    "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

E.    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    1.    it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.    you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1.    the repair, replacement, adjustment or removal of "your product" or "your work"; or

    2.    your fulfilling the terms of the contract or agreement.

F.    "Insured" means each of the following, to the extent set forth:

    1.    The Named Insured meaning:

        a.    Any person or organization listed in Item 1. of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

        b.    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

CU 60 02 06 97                **(Page 6 of 15)**

(1)    coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2)    coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

(3)    coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2.    If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3.    If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4.    If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5.    Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6.    Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision 6.does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

7.    Any person, other than one of your employees, or organization while acting as your real estate manager.

8.    Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision 8. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

9.    No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

G.    "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

CU 60 02 06 97                           **(Page 7 of 15)**

H.    "Loading" or "unloading" means the handling of property:

    1.    after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    2.    while it is in or on an aircraft, watercraft or "auto";

    3.    while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    1.    bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    2.    vehicles maintained for use solely on or next to premises you own or rent;

    3.    vehicles that travel on crawler treads;

    4.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted: a. power cranes, shovels, loaders, diggers or drills; or b. road construction or resurfacing equipment such as graders, scrapers or rollers;

    5.    vehicles not described in **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

        b.    cherry pickers and similar devices used to raise or lower workers;

    6.    vehicles not described in **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        a.    equipment designed primarily for:
            (1)    snow removal;
            (2)    road maintenance, but not construction or resurfacing; or
            (3)    street cleaning;

        b.    cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

        c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J.    "Occurrence" means:

    1.    as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

    2.    as respects "personal injury," an offense arising out of the business of any "Insured" that results in "personal injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3.    as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K.    "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1.    false arrest, detention or imprisonment;

2.    malicious prosecution;

3.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.    oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.    oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6.    mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

L.  1.    "Products-completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except:
    a.    products that are still in your physical possession; or
    b.    work that has not yet been completed or abandoned.

2.    "Your work" will be deemed completed at the earliest of the following times:

a    When all of the work called for in your contract has been completed.

b.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3.    This "products-completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

a.    the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

b.    the existence of tools, uninstalled equipment or abandoned or unused materials.

M.    "Property damage" means:

1.    physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.    loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N.    "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

      1.     an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

      2.     any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**O.**    "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing.  It includes any policies issued to replace those policies during the term of this insurance that provide:

      1.     at least the same policy limits, and

      2.     insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

**P.**    "Your product" means:

      1.     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
          a.     you;
          b.     others trading under your name; or
          c.     a person or organization whose business or assets you have acquired; and

      2.     Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

    "Your product" includes:

      1.     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      2.     the providing of or failure to provide warnings or instructions.

    "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**Q.**    "Your work" means:

      1.     work or operations performed by you or on your behalf; and

      2.     materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:

      1.     warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      2.     the providing of or failure to provide warnings or instructions.

## VI.    Conditions

### A.    Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal.  If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item **4.** of the Declarations plus the cost and expense of such appeal.

### B.    Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C.    Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy.  Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

**D.   Cancellation**

1.     You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.     We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

3.     The policy period will end on the day and hour stated in the cancellation notice.

4.     If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

5.     If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

6.     Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7.     The first Named Insured in Item **1.** of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.     Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E.   Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F.   Duties in The Event of An Occurrence, Claim Or Suit**

1.     You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

    **a.**     how, when and where the "occurrence" took place;

    **b.**     the names and addresses of any injured person and witnesses;

    **c.**     the nature and location of any injury or damage arising out of the "occurrence."

2.     If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.     You and any other involved "Insured" must:

    **a.**     immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

    **b.**     authorize us to obtain records and other information;

CU 60 02 06 97                                   **(Page 11 of 15)**

      c.     cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

      d.     assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

    **4.**     The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G.**    **Inspection**

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

**H.**    **Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

    **1.**     you have complied with all the terms of this policy; and

    **2.**     the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

**I.**    **Maintenance of Underlying Insurance**

During the period of this policy, you agree:

    **1.**     to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

    **2.**     that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

    **3.**     that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

    **4.**     that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**J.**    **Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K.**    **Premium**

The first Named Insured designated in Item 1.of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 3. of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

CU 60 02 06 97                    **(Page 12 of 15)**

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item 3. of the Declarations for each twelve months of our policy period.

**L.     SEPARATION OF INSUREDS**
Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

    **1.**      as if each Named Insured were the only Named Insured; and

    **2.**      separately to each "Insured" against whom "claim" is made or "suit" brought.

**M.     TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**
If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

    **1.**      any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

    **2.**      we then will be reimbursed up to the amount we have paid; and

    **3.**      lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

**N.     TERMS CONFORMED TO STATUTE**
The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

**O.     TRANSFER OF YOUR RIGHTS AND DUTIES**
Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1. of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.     WHEN LOSS IS PAYABLE**
Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self-Insured Retention advanced by us at our discretion on behalf of any "Insured."

CU 60 02 06 97                                    (Page 13 of 15)

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1.　Any liability, injury or damage:

　　a.　with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

　　b.　resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.　Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

　　a.　the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or (b) has been discharged or dispersed therefrom;

　　b.　the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

　　c.　the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion 2.c. applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3.　As used in this exclusion:

　　a.　"Hazardous properties" includes radioactive, toxic or explosive properties.

　　b.　"Nuclear facility" means:

　　　　i.　any "nuclear reactor";

　　　　ii.　any equipment or device designed or used for

　　　　　　(1)　separating the isotopes of uranium or plutonium,

　　　　　　(2)　processing or utilizing "spent fuel" or

　　　　　　(3)　handling, processing or packaging "nuclear waste";

　　　　iii.　any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

　　　　iv.　any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

　　c.　"Nuclear material" means "source material," "special nuclear material" or by-product material.

　　d.　"Nuclear property damage" includes all forms of radioactive contamination of property.

e.    "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f.    "Nuclear waste" means any nuclear waste material **(a)** containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g.    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h.    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.


**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.


**CU 60 02 06 97**                            **(Page 15 of 15)**

CU 60 06 04 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT TO ADVERTISING INJURY AND PERSONAL INJURY**

I.      Exclusion **J.** is deleted from Section **IV. - EXCLUSIONS** and is replaced by the following:

    **J.**      "Personal injury" or "advertising injury":

        **1.**      arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity:

        **2.**      arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

        **3.**      for which the "Insured" has assumed liability in a contract or agreement. This exclusion J.3. does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement;

        **4.**      caused by or at the direction of the "Insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

        **5.**      arising out of a criminal act committed by or at the direction of any "Insured".

II.     Exclusion **K.** is deleted from Section **IV. - EXCLUSIONS** and is replaced by the following:

    **K.**      "Advertising injury" arising out of:

        **1.**      any breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

        **2.**      the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

        **3.**      the wrong description of the price of goods, products or services stated in your "advertisement"; or

        **4.**      an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

III.    Section **V. - DEFINITIONS**, definition **A.**, "Advertising injury", is deleted and replaced by the following:

    **A.**      "Advertising injury" means injury, including consequential "bodily injury", arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

        **1.**      oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        **2.**      oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

        **3.**      the use of another's advertising idea in your "advertisement";

        **4.**      infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

        **5.**      mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **A.1.** through **A.4.** of this definition.

### AMENDMENT TO ADVERTISING INJURY AND PERSONAL INJURY

IV.    Section **V. - DEFINITIONS**, definition **K.**, "Personal injury", is deleted and replaced by the following:

K.    "Personal injury" means injury, including consequential "bodily injury", that is other than "advertising injury" and arises out of one or more of the following offenses during the policy period:

1.    false arrest, detention or imprisonment;

2.    malicious prosecution;

3.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.    oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5.    oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6.    mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through K.5. of this definition.

V.    The following definition is added to Section **V. - DEFINITIONS:**

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

This endorsement does not change any other provision of the policy.

CU 60 06 04 99

CU 61 06 06 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AUTO LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

CU 61 06 06 97

CU 61 50 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTRACTORS LIMITATION ENDORSEMENT

Exclusions **IV.F.** and **IV.G.** are deleted from this policy and the following exclusion is added to Section **IV - EXCLUSIONS:**

**1.**    **a.**    Any liability assumed by any "Insured" under any "insured contract";
            or

        **b.**    Any "property damage":

            **(1)**    to "your product" arising out of it or any part of it;

            **(2)**    to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"; (but this Subparagraph **(2)** does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

            **(3)**    to property leased or rented to, occupied or used by or in the care, custody or control of any "Insured" or as to which any "Insured" is for any purpose exercising physical control;

            **(4)**    arising out of:

                **(a)**    blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

                **(b)**    the collapse of or structural injury to any building or structure due to **(a)** grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work, or **(b)** moving, shoring, underpinning, razing or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

                **(c)**    injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving;

except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

**2.**    Any liability arising out of:

        **a.**    any project insured under a wrap-up or any similar rating plan; or

        **b.**    the rendering of or failure to render any professional services, including but not limited to:

            **(1)**    the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

            **(2)**    supervisory, inspection, architectural or engineering activities.

This endorsement does not change any other provision of the policy.

CU 61 50 06 97

CU 61 53 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

CU 61 53 06 97

OC | Commercial Umbrella Forms | 03/01/98

CU 62 05 03 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NEW YORK CHANGES - CANCELLATION AND NONRENEWAL

SECTION VI - CONDITION D. CANCELLATION, Paragraph 1., 2., 3., and 5. are deleted and the following conditions are added to VI - CONDITIONS:

CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2.  a.  CANCELLATION FOR POLICIES IN EFFECT 60 DAYS OR LESS

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    (1)  30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph (2) below.

    (2)  15 days before the effective date of cancellation if we cancel for any of the following reasons:

        (a)  nonpayment of premium;

        (b)  conviction of a crime arising out of acts increasing the hazard insured against;

        (c)  discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

        (d)  after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

        (e)  material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed:

        (f)  required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public; or

        (g)  a determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code.

    b.  CANCELLATION OF POLICIES IN EFFECT FOR MORE THAN 60 DAYS

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel this policy only for any of the reasons listed in Paragraph a.(2) above provided we mail the first Named Insured a notice of cancellation at least 15 days before the effective date of cancellation.

3.   We will mail or deliver our notice including the reason for cancellation to the first Named Insured at the address shown in the policy and the authorized agent or broker.

5.   If this policy is canceled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata.  Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater.  The cancellation will be effective even if we have not made or offered a refund.

The following CONDITIONS are added and supersede any provisions to the contrary;

If one of the reasons for cancellation in Paragraphs 2.a.(2) exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

CU 62 05 03 98                                        Page 1 of 2

NONRENEWAL

If we decide not to renew this policy, we will send notice as provided in the NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL section below along with the reason for nonrenewal.

CONDITIONAL RENEWAL

If we conditionally renew this policy subject to a:

1.   change of limits;

2.   change in type of coverage;

3.   reduction of coverage;

4.   increased deductible;

5.   addition of exclusion;

6.   increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added; or as a result of experience rating, retrospective rating or audit;

we will send notice as provided in the paragraph below.

NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL

1.   If we decide not to renew this policy or to conditionally renew this

policy as provided in the Nonrenewal And Conditional Renewal paragraphs above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

a.   the expiration date; or

b.   the anniversary date if this is a continuous policy.

2.   Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and the authorized agent or broker, if notice is mailed, proof of mailing will be sufficient proof of notice.

3.   We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or no longer desired.

CU 62 05 03 98

Page 2 of 2

©The Ohio Casualty Insurance Company
©2007 SilverPlume Reference Systems, Inc. All Rights Reserved.

CU 62 20 06 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF POLLUTION EXCLUSION -
## EXCEPTION FOR NAMED PERIL OF HOSTILE FIRE; VEHICLE

Exclusion L. is deleted from Section IV. - **EXCLUSIONS** and is replaced by the following:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1.      The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused.

2.      Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants."  This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.

3.      Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.  Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" arising out of:

1.      the named peril of heat, smoke or fumes from a "hostile fire" at any "Insured's" premises or job location; or

2.      collision or overturning of an "auto" or "mobile equipment";

to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

As used in this exclusion:

"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

This endorsement does not change any other provision of the policy.

CU 62 20 06 97

CU 63 11 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US AMENDMENT**

**SECTION VI - CONDITION M. Transfer Of Rights Of Recovery Against Others To Us** is amended to include the following:

This insurance will not be invalidated should the "Insured" waive in writing prior to loss any and all rights of recovery against all subsidiary and affiliated organizations of the Named Insured for loss occurring to any and all coverages provided by this policy.

This endorsement does not change any other provision of the policy.

CU 63 11 06 97

CU 63 69 06 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NEW YORK CHANGES - AMENDATORY ENDORSEMENT

**Section II. - LIMITS OF INSURANCE** Paragraph **F.** is deleted and the following is added:

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. Limits of this policy will be increased in proportion to any policy extension provided in accordance with this paragraph.

**Section III. - Defense** Paragraph **A.** is deleted and the following condition is added:

A.     We will have the right and duty to investigate any claim and defend any suit, even if any of the allegations of the claim or suit are groundless, false or fraudulent, seeking damages covered by the terms and conditions of this policy when:

   1.     the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits Of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of claims for any "occurrence" to which this policy applies; or

   2.     damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

**Section III. - Defense** Paragraph **C.** is deleted and the following condition is added:

C.     Transfer of duties when a Limit of Insurance is used up.

   1.     If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

      a.     Umbrella Occurrence Limit; or
      b.     Umbrella Aggregate Limit

   is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

   2.     When a Limit of Insurance described in Paragraph **1.** above has actually been used up in the payment of judgments or settlements:

      a.     We will notify the first Named Insured, in writing, as soon as practicable, that:

         (1)     such a limit has actually been used up; and

         (2)     our duty to defend "suits" seeking damages subject to that limit has also ended.

      b.     We will initiate, and cooperate in, the transfer of control, to any appropriate "Insured," of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That "Insured" must cooperate in the transfer of control of said claims and "suits." We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of such "suits" until such transfer is completed, provided the appropriate "Insured" is cooperating in completing such transfer. We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after the Limit of Insurance has been used up.

      c.     The first Named Insured and any other "Insured" involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate "Insured" and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

CU 63 69 06 97                                                                                         Page 1 of 2

3.  The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **2.b** above.

    The duty of the first Named Insured to reimburse us will begin on:

    a.  the date on which the applicable Limit of Insurance is used up, if we send notice in accordance with Paragraph **1.** above; or

    b.  the date on which we sent notice in accordance with Paragraph **2.a.** above, if we did not send notice in accordance with Paragraph **1.** above.

4.  The exhaustion of any Limit of Insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**Section V. - DEFINITIONS H.** "loading" and "unloading" is deleted from this policy.

**Section VI. - CONDITION F.** Paragraph **2.** is deleted and the following condition is added:

If a "claim" or "suit" against any "insured" is reasonably likely to involve this policy, you must notify us or an agent of ours in New York State in writing as soon as practicable.

**Section VI. - CONDITION H.** Paragraph **2.** is deleted and the following condition is added:

2.  the amount you owe has been determined by settlement with our consent.

**Retained Limit Consent**

We, the company, cannot settle any claim or suit that involves the retained limit you are legally obligated to pay without your consent.

**Workers' Compensation**

Any reference to Workers' Compensation or Employers' Liability is strictly applicable to employees who are not subject to New York Workers' Compensation Law.

**Section VI. - CONDITIONS** Paragraph **A. Appeals** is deleted and the following is added:

**A.     Appeals**

If the "insured" or an "insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, we will be liable for the costs and interest incidental to this appeal.

**CU 63 69 06 97**

CU 63 98 06 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CROSS SUITS EXCLUSION - PROPERTY DAMAGE ONLY

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability of one "Insured" covered under this policy for "property damage" to the property of another "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.