UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  vs.<br><br>DORMITORY AUTHORITY - STATE OF NEW YORK, TDX CONSTRUCTION CORP. and KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>      Defendants. | Case No. 07-CV-6915 (DLC)<br>ECF CASE |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,<br><br>      Third-Party Plaintiffs,<br><br>  vs.<br><br>TRATAROS CONSTRUCTION, INC.,<br><br>      Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,<br><br>      Fourth-Party Plaintiffs,<br><br>  vs.<br><br>CAROLINA CASUALTY INSURANCE COMPANY; BARTEC INDUSTRIES INC.; DAYTON SUPERIOR SPECIALTY CHEMICAL CORP. a/k/a DAYTON SUPERIOR CORPORATION; SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER CASUALTY INSURANCE COMPANY d/b/a KEMPER INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; UNITED STATES FIRE INSURANCE COMPANY; NORTH AMERICAN SPECIALTY INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. f/k/a COMMERCIAL UNDERWRITERS INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY d/b/a ZURICH INSURANCE COMPANY; OHIO CASUALTY INSURANCE COMPANY d/b/a OHIO CASUALTY GROUP; HARLEYSVILLE MUTUAL INSURANCE COMPANY (a/k/a HARLEYSVILLE INSURANCE COMPANY,); JOHN DOES 1-20 and XYZ CORPS. 1-19, | DECLARATION OF<br>ELI J. ROGERS IN OPPOSITION TO HARLEYSVILLE MUTUAL INSURANCE COMPANY'S (a/k/a HARLEYSVILLE INSURANCE COMPANY'S) MOTION FOR SUMMARY JUDGMENT |

|  |
|---|
| Fourth-Party Defendants. |
| KOHN PEDERSEN FOX ASSOCIATES, P.C., |
| Third-Party Plaintiff, |
| vs. |
| WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, P.C., CASTRO-BLANCO PISCIONERI AND ASSOCIATES, ARCHITECTS, P.C., ARQUITECTONICA NEW YORK, P.C., COSENTINI ASSOCIATES, INC., CERMAK, PETERKA PETERSEN, INC., JORDAN PANEL SYSTEMS CORP., TRATAROS CONSTRUCTION, INC. and LBL SKYSYSTEMS (U.S.A.), INC., |
| Third-Party Defendants. |

**ELI J. ROGERS**, of full age and under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.10, declares as follows.

1. I am associated with the law firm of Dreifuss Bonacci & Parker, LLP, attorneys for Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") in the above-captioned matter, and I submit this Declaration in opposition to the motion for summary judgment filed by Fourth-Party Defendant, Harleysville Mutual Insurance Company (a/k/a Harleysville Insurance Company)("Harleysville").

2. This action arises out of a construction project known as Baruch College, Site B located at 55 Lexington Avenue, New York, New York (the "Project", frequently referred to in the Project records as "Baruch College, Site B"). (See, Exh. 44)

3. The Project's "owner" was the Dormitory Authority - State of New York ("DASNY"). (See id., 2nd page, prefatory statement, and 3rd page, ¶ 4.)

4. Kohn Pedersen Fox Associates, P.C. ("KPF") was engaged by DASNY to provide architectural and engineering services for the Project. (A true and correct copy of DASNY's contract with KPF relating to the Project is attached hereto as **Exhibit 1**)

2

5. Under the terms of KPF's contract with DASNY, KPF was required to provide insurance coverage in connection with its work on the Project, including professional liability insurance with a policy limit of $2,000,000.00 per occurrence. (See, id. Article X, ¶ 6.)

6. KPF's contract also contains a provision requiring them to "[r]eview and approve or disapprove all shop drawings and samples submitted by the Contractor for adherence to the intent and requirements of the Contract Documents...." (See, id., Appendix "A" – Scope of Services of Architect, p. A.9, ¶ H.1.)

7. TDX Construction Corp. ("TDX") was engaged by DASNY to provide construction management services for the Project. (A true and correct copy of DASNY's "Construction Phase" contract with TDX is attached hereto as **Exhibit 2**.)

8. TDX's "Construction Phase" contract obligated TDX to obtain insurance coverage relating to its work on the Project, including a policy for Commercial General Liability ("CGL") coverage, with a minimum combined single policy limit of $5,000,000.00 per occurrence and aggregate. (See, Exh. 2, p. 4, Article VIII, ¶ 3.)

9. KPF's contract also contains provisions requiring them to:

   a.) "[i]nspect all work daily for quality and conformance to the Contract Documents. Advise Prime Contractor(s) of necessary corrective work. Inspect materials and equipment prior to installation for conformance to the specifications." (Id., Appendix "A" – Scope of Services, p. A2, ¶ 5.b);

   b.) "[p]repare periodic "Exception Reports" as required by the Construction Work of the Prime Contractors. Distribute to the appropriate Contractor(s) for necessary corrective work. Maintain a log of the noted exception, date issued, and date corrected. Maintain a photographic record where life safety issues/systems are involved." (Id., Appendix "A" – Scope of Services, p. A2, ¶ 5.c);

   c.) "[i]nspect the Project jointly with the OWNER and Architect prior to the time the OWNER is to use, occupy, or operate any part or all of the Project, and prepare a list of observed variances and deficiencies in the Construction Work. Distribute the list to the appropriate Prime Contractor(s) for necessary corrective work." (Id., Appendix "A" – Scope of Services, p. A2, ¶ 5.d);

d.) "Expedite and coordinate the work of all Prime Contractors." (Id., Appendix "A" – Scope of Services, p. A2, ¶ 7.a).

10. A true and correct copy of excerpted portions of the deposition testimony of Charles Bartlett, DASNY's Rule 30(b)(6) designee in this action is attached hereto as **Exhibit 3**.

11. A true and correct copy of excerpted portions of the deposition testimony of Athena Curis, Trataros' Rule 30(b)(6) designee for the terrazzo phase of depositions is attached hereto as **Exhibit 4**.

12. A true and correct copy of excerpted portions of the deposition testimony of John Scarpellino, Travelers' Rule 30(b)(6) designee is attached hereto as **Exhibit 5**.

13. On or about October 7, 1998, Shroid Construction, Inc. ("Shroid"), the structural prime concrete contractors wrote to TDX, advising that the Project's concrete flooring decks on the 8th floor evidenced "inconsistencies in floor flatness," and that the finished concrete on the 2nd and 6th floors did not meet "the [standards for] flatness or level that is required in the contract specifications." Shroid further advised that "[w]e in fact know that these [concrete] decks do not meet ACI tolerances. We can only assume that they will not meet other trades [sic] requirements either." A true and correct copy of Shroid's October 7, 1998 letter to TDX is attached hereto as **Exhibit 6**.

14. On or about November 3, 1998, TDX forwarded Shroid's letter to KPF, noting, among other things, that upon review the floor heights for the concrete slabs are 2 inches too high in certain areas. TDX notes that "no action will be taken at this time," however "at a later date" the concrete slabs will be evaluated to determine which "areas … will require remedial action." A true and correct copy of TDX's November 3, 1998 letter to KPF is attached hereto as **Exhibit 7**.

15. On or about August 5, 1999, Trataros wrote to TDX, stating that the uneven concrete floor slabs need to be leveled out before the epoxy terrazzo is installed. A true and correct copy of Trataros' August 5, 1999 letter to TDX is attached hereto as **Exhibit 8**.

16. On or about November 8, 1999, KPF issued a memorandum regarding the tolerances necessary for three types of floor finishes, including epoxy terrazzo. KPF directed that "[w]here slabs are beyond these tolerances, flash patch material should be used to level the slabs prior to finish installation." A true and correct copy of KPF's November 8, 1999 memorandum is attached hereto as **Exhibit 9**.

17. Subsequently, DASNY issued a change order to Contract No. 16, GC2-028, adding the "installation of 'self leveling' floor fill" to that contract. The "Change Order Memorandum" prepared by TDX and incorporated as part of the change order recites that "[t]his additional work is necessary due to the camber in the steel not coming out in the loading of the structure… This created irregular contours in the flatness of the [concrete] slab." A true and correct copy of Change Order GC2-028 is attached hereto as **Exhibit 10**.

18. The "Change Order Memorandum" prepared by TDX and incorporated as part of the change order further recites "TDX has reviewed this change order and finds it to be fair and reasonable and recommends its approval. It is our recommendation that the cost should be appropriated as a design omission."(Exh. 10)

19. Change Order GC2-028 incorporated Trataros' proposal for the floor leveling work, which included a list of exclusions, including the statement that Trataros was "[n]ot responsible for concrete delamination." (Id.)

20. Change Order GC2-028 also incorporated KPF's memo dated November 8, 1999, and a product catalogue sheet for a self-leveling underlayment material known as Conflow. (Id.)

21. A true and correct copy of excerpted portions of the deposition testimony of Ray Leu, TDXs Rule 30 (b)(6) designee for the terrazzo phase of depositions in this action is attached hereto as **Exhibit 11**. Mr. Leu admitted that pursuant to the floor leveling change order, Conflow was the specified material for floor leveling. (Exh. 11, Leu Day 2, 302:15-22.)

22. Subsequently, KPF approved the use of Conflow as a self-leveling underlayment in connection with the "floor leveling change order," i.e., Change Order GC2-028. A true and correct copy of the Conflow submittal approved by KPF is attached hereto as **Exhibit 12**.

23. On or about March 1, 2001, Conspec Marketing & Manufacturing Co., Inc. ("Conspec") wrote to Trataros, acknowledging a site visit to the Project held "last Tuesday." Conspec observed that "[t]he terrazzo flooring has come loose in a *small portion* of the lobby area" on the 13th floor, and that the Conflow in that area appeared to have been contaminated by some "foreign substance, or environmental condition," as the Conflow exhibited an unusual "powdery, loose surface." Conspec recommended grinding back the underlayment "to a solid surface before proceeding with a reapplication of the flooring system." A true and correct copy of Conspec's March 1, 2001 letter to Trataros is attached hereto as **Exhibit 13**.

24. On or about March 7, 2001, Trataros wrote to TDX enclosing Conspec's findings, as well as the testing lab's findings regarding the core samples taken by Trataros. Trataros further noted that, following its survey of the installed terrazzo, the only area exhibiting separation between the terrazzo and underlayment had been found to be on the 13th floor, and that no additional areas of debonding Conflow had been found. Trataros further noted that "[i]t is the concessive or [sic] all parties that the delaminating of the terrazzo was due to the contamination of the last lift of Conflow." A true and correct copy of Trataros' March 7, 2001 letter to TDX is attached hereto as **Exhibit 14**.

25. A true and correct copy of excerpted portions of the deposition testimony of Nicholas D'Ambrosio, DASNY's Project Manager on the Project from its beginning until approximately September/October, 2001 is attached hereto as **Exhibit 15**.

26. Upon information and belief, Crocetti performed certain underlayment work pursuant to separate change orders issued by DASNY to Trataros, including Change Order GC2-202. A true and correct copy of the Change Order GC2-202 is attached hereto as **Exhibit 16**.

27. Change Order GC2-202 appears to contain a number of Crocetti work tickets purporting to represent work performed installing underlayment at the Project pursuant to this Change Order (**Exhibit 16**).

28. A true and correct copy of a certain change order issued to Trataros, Change Order GC2-182, is attached hereto as **Exhibit 17**.

29. A true and correct copy of a subcontract agreement entered between Trataros and R&J Construction Corp. ("R&J") in connection with the project is attached hereto as **Exhibit 18**.

30. True and correct copies of two notices of mechanic's liens purportedly filed by R&J in connection with the Project are attached hereto as **Exhibits 19** and **20**.

31. Subsequently, R&J commenced an action in the Supreme Court of the State of New York, New York County, on or about July 18, 2003.

32. True and correct copies of DASNY's responsive pleadings filed in the R&J action are attached hereto as **Exhibits 21** and **22**.

33. A true and correct copy of a Stipulation of Discontinuance relating to the R&J action is attached hereto as **Exhibit 23**.

34. On or about June 28, 2004, Travelers commenced a civil action entitled <u>Travelers Casualty and Surety Company as Administrator for Reliance Insurance Company v. The</u>

7

<u>Dormitory Authority of the State of New York, *et al.*</u>, Case No. 04-CV-5101, by filing its Complaint and Jury Demand with the Clerk of the United States District Court for the Southern District of New York. That civil action was assigned to the Honorable Harold Baer, Jr.,U.S.D.J. (the "Baer Action"). A true and correct copy of Travelers' Complaint and Jury Demand filed in the Baer Action is attached hereto as **Exhibit 24**.

35.    On or about August 4, 2004, DASNY, a named defendant in the Baer Action, filed a Third-Party Complaint therein against Travelers and impleading Trataros. A true and correct copy of DASNY's Third-Party Complaint filed in the Baer Action is attached hereto as **Exhibit 25.**

36.    On or about December 1, 2004, Travelers and Trataros filed their Fourth-Party Complaint in the Baer Action, impleading Crocetti, Bartec, and Dayton Superior, among others, on theories of indemnification and contribution, *inter alia*. A true and correct copy of Travelers' Fourth-Party Complaint filed in the Baer Action is attached hereto as **Exhibit 26.**

37.    One day later, on December 2, 2004, the Honorable Harold Baer, Jr., U.S.D.J. entered a Scheduling Order, setting a deadline of February 17, 2005 for joinder of additional parties. A true and correct copy of the Scheduling Order entered by the Court on December 2, 2004 in the Baer Action is attached hereto as **Exhibit 27**.

38.    In the Baer Action, Travelers and Trataros impleaded Harleysville, among other insurance carriers, by filing their Amended Fourth-Party Complaint on or about February 17, 2005. A true and correct copy of Travelers' Amended Fourth-Party Complaint filed in the Baer Action is attached hereto as **Exhibit 28**.

39.    A true and correct copy of Harleysville's Answer to the Amended Fourth-Party Complaint is attached hereto as **Exhibit 29**.

40. Subsequently, the Baer Action was voluntarily dismissed, upon the consent of all parties, including Harleysville and the other insurance carriers. A true and correct copy of the Stipulation of Dismissal Without Prejudice, executed by all parties to the Baer Action and "so ordered" by the Honorable Harold Baer, Jr., U.S.D.J., is attached hereto as **Exhibit 30**.

41. Following dismissal, the parties engaged in confidential non-binding mediation. After the close of the mediation, pursuant to the tolling agreement Travelers commenced the within action by filing its Complaint and Jury Demand (the "Complaint") with the Southern District, on August 1, 2007. A true and correct copy of Travelers' Complaint filed in the within action is attached hereto as **Exhibit 31**.

42. At the time of Travelers' filing, it marked the action as related to the prior Baer Action. Upon information and belief, the Clerk of the Court referred the issue to Judge Baer for decision as to whether the two actions were related. On or about August 14, 2007, Judge Baer declined the within action as "not similar", and the case was returned to the Clerk's Office for assignment. A true and correct copy of excerpted portions of the docket sheet for the within action are attached hereto as **Exhibit 32**.

43. On or about September 28, 2007, Defendants, Dormitory Authority - State of New York ("DASNY") and TDX Construction Corp. ("TDX") filed their "Answer of DASNY and TDX with Affirmative Defenses, Counterclaims, and Cross-Claims" (hereinafter, the "DASNY/TDX Answer"). A true and correct copy of the DASNY/TDX Answer in the within action is attached hereto as **Exhibit 33**.

44. The DASNY/TDX Answer alleged a number of counterclaims against Travelers, including a counterclaim regarding alleged construction defects purportedly attributable to work performed by Trataros and/or its subcontractors/suppliers. In particular, DASNY/TDX allege

that their claim(s) for purportedly defective work includes a claim relating to the "defective installation of the Project's epoxy terrazzo flooring." (Exh. 33, ¶ 137.)

45. On or about September 28, 2007, DASNY and TDX filed their Third-Party Complaint, impleading Trataros into the within action. A true and correct copy of the Third-Party Complaint filed by DASNY and TDX in the within action is attached hereto as **Exhibit 34**.

46. The Third-Party Complaint alleged a number of claims against Trataros, including a claim that Trataros and/or its subcontractors/suppliers performed allegedly defective construction work on the Project, including purported defects in the Project's epoxy terrazzo floor system (the "Flooring Claims"). (Exh. 33, ¶¶ 23 & 54-57.) In addition, DASNY and TDX allege claims relating to purported defects in the construction work performed by Trataros and/or its subcontractors separate and apart from the alleged defects referenced in the Flooring Claims. (Id., ¶¶ 52, 54-55.)

47. The Third-Party Complaint was not entered on the Court's ECF system until October 2, 2007. (See, Exhibit 32.)

48. On October 1, 2007, Counsel for Travelers and Trataros received a hard-copy of the Third-Party Complaint, under cover of a letter from counsel for DASNY and TDX requesting that Trataros execute a Waiver of Service of Summons. That same day, Travelers and Trataros transmitted copies of the Third-Party Complaint and the DASNY/TDX Answer to the various carriers via Federal Express. A true and correct copy of Travelers' and Trataros' October 1, 2007 letter to counsel for the fourth-party defendant insurance carriers is attached hereto as **Exhibit 35**.

49. In response to the claims alleged in the present action by DASNY and TDX in their Third-Party Complaint, and in their respective counterclaims, Travelers and Trataros filed

their Fourth-Party Complaint on November 14, 2007. Travelers' and Trataros' Fourth-Party Complaint impleaded Harleysville, among others. A true and correct copy of the Fourth-Party Complaint is attached hereto as **Exhibit 37**.

50. On November 14, 2007, Travelers and Trataros transmitted to all named Fourth-Party Defendants, including the various fourth-party insurance carriers with the exception of NAS which was not a party at the time, copies of the Fourth-Party Summonses, prior pleadings filed to date, and copies of other pertinent documents. A true and correct copy of Travelers' and Trataros' November 14, 2007 letter to counsel for the fourth-party defendant insurance carriers is attached hereto as **Exhibit 36**.

51. During the pendency of the Baer Action, Harleysville produced to Travelers and Trataros copies of the primary policy purportedly issued to Bartec by Harleysville for the policy period May 26, 2003 to May 26, 2004, a true and correct copy of which is attached hereto as **Exhibits 38**.

52. Harleysville, through its counsel, has fully participated in discovery and depositions in the within matter.

53. In its Fourth Party Answer filed in the within action, Bartec has admitted that it is a New Jersey Corporation, with its principal place of business located at 453 Main Street, Little Falls, New Jersey 07424. See, a true and correct copy of Bartec's Answer to the Fourth Party Complaint filed in this action, attached hereto as **Exhibit 39**, at ¶4. (Cf., Exh. 35, ¶4.)

54. A true and correct copy of Bill No. A11541 of the New York State Assembly, recently signed into law by New York Governor Paterson, amending Section 3420 of the New York Insurance Law, *inter alia*, is attached hereto as **Exhibit 40**. This information is available on the New York State Assembly's website: http://assembly.state.ny.us/leg/.

55. A true and correct copy of the New York State Assembly's "Bill Summary" for Bill No. A11541, including the State Assembly's "Statement in Support" of the bill, is attached hereto as **Exhibit 41**. This information is available on the New York State Assembly's website: http://assembly.state.ny.us/leg/.

56. Attached hereto as **Exhibit 42** is a true and correct copy of DASNY's Rule 26 Disclosures in the within action.

57. A true and correct copy of a report prepared by DASNY's Rule 30 (b)(6) witness, Charles Bartlett, analyzing the alleged terrazzo flooring problems is attached hereto as **Exhibit 43.**

58. A true and correct copy of Contract No. 16 entered between DASNY and Trataros is attached hereto as **Exhibit 44**.

59. A true and correct copy of excerpts of the General Conditions for Contract No. 16 is attached hereto as **Exhibit 45**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: Florham Park, New Jersey
September 12, 2008

_____/S/_____
Eli J. Rogers, Esq. (ER-6564)