**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> DORMITORY AUTHORITY - STATE OF NEW YORK, et al. <br><br> Defendants. | Case No. 07-CV-6915 (DLC) <br> **ECF CASE** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> TRATAROS CONSTRUCTION, INC., <br><br> Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY, <br><br> Fourth-Party Plaintiffs, <br><br> vs. <br><br> CAROLINA CASUALTY INSURANCE COMPANY, et al. <br><br> Fourth-Party Defendants. | |

---

## MEMORANDUM OF LAW IN OPPOSITION TO FOURTH-PARTY DEFENDANT, HARLEYSVILLE INSURANCE COMPANY OF NEW JERSEY'S MOTION FOR SUMMARY JUDGMENT

---

**Of Counsel,**
JoAnne M. Bonacci, Esq.

**On the Brief,**
JoAnne M. Bonacci, Esq.
Eli J. Rogers, Esq.
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Travelers Casualty and Surety*
  *Company, and Trataros Construction, Inc.*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ I

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ............................................................................................ 1

LEGAL ARGUMENT ........................................................................................................... 3

   I.   SUMMARY JUDGMENT CANNOT BE GRANTED ON HARLEYSVILLE'S POLICY
       IN THAT NEW JERSEY LAW APPLIES AND HARLEYSVILLE HAS NOT
       ESTABLISHED PREJUDICE ........................................................................................... 3

     A.   Choice of Law Rules Require Application of New Jersey Substantive Law. .................. 4

     B.   The Parties Intended for New Jersey Law to Apply to the Bartec Policies ..................... 6

     C.   Harleysville Fails to Prove Appreciable Prejudice Required forSummary Judgment on
         the Bartec Policies. ........................................................................................................ 8

  II.  THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS
      TIMELY ............................................................................................................................. 9

  III. NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES   AND/OR
      LATE NOTICE SHOULD BE EXCUSED. .................................................................... 10

     A.   The Letters Relied Upon By Movant Are Not "Claims" Under the Policy. ................. 10

     B.   DASNY'S Third-Party Allegations Do Not Implicate Coverage Under The Policy
         Issued By Harleysville .................................................................................................. 13

   IV. NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION. ....... 19

CONCLUSION ................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993)...................................14

875 Forest Ave. Corp. v. Aetna Cas. Corp., 37 A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ................................................................................22

Acker-Fitzsimmons, 31 N.Y.2d 436, 442 (1972) .......................................................19

Aetna Cas. & Sur. Co. v. General Time Corp. 704 F.2d 80, 81-83 (2d Cir. 1983) ......................14

American Home Assur. Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) ..............................21

American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995) ........................11,13

Amin Realty, L.L.C. v. Travelers Property Cas. Co., 2006 WL 1720401 (E.D.N.Y. June 20, 2006)....................................................................................................13

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).............................................3

Apache Foam Prods. v. Continental Ins. Co., 139 A.D.2d 933,528 N.Y.S.2d 448 (4th Dep't 1988) ...............................................................................................14

Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 337 (2005).....................................17

Asbeka Indus. v. Travelers Indem. Co., 831 F.Supp. 74, 82 (E.D.N.Y. 1993) ..............................4

Bonded Concrete, Inc. v. Transcontinental Ins. Co., 12 A.D.3d 761, 762, 784 N.Y.S. 2d 212, 213 ((3d Dep't 2004) ..........................................................................13

Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008).......................23

Christiania Gen'l Ins. Corp, of N.Y. v. Great Amer. Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992) ..........................................................................................19

City of Utica, N.Y. v. Genesee Mgmt., Inc., 934 F. Supp. 510, 524 (N.D.N.Y. 1996) ...............19

Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 130-131 (1957)....................17

Evanston Ins. Co. v. GAB Business Serv., Inc., 132 A.D.2d 180, 186, 521 N.Y.S.2d 692, 695 (1st Dep't 1987)........................................................................11

Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317 (1st Dep't 1995)...........................................................................................10

Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227, 231, 787 N.Y.S.2d 22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005)..............................................22

Greater N.Y. Mut. Ins. Co. v. I Kalfus Co., 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't),
    aff'd, 37 N.Y.2d 820 (1975) ...................................................................................21

In re Brandon, 97 N.Y.2d 491, 496 n.3 (2002).....................................................................22

Innophos, Inc. v. Rhodia, S.A., 10 N.Y.3d 25, 29 (2008) ......................................................6

Klersy Bldg. Corp. v. Harleysville Worcester Ins. Co., 36 A.D.3d 1117, 1119, 828
    N.Y.S.2d 661, 663 [3d Dept 2007]), .................................................................21

Mark A.Varrichio v. Chicago Ins. Co., 312 F.3d 544 (2d Cir. 2002) .................................23

Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003)...................3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) ...................3

Metropolitan Cas. & Sur. Co. v. Mancuso, 93 N.Y.2d 487, 493 (1999).............................17

New York Mut. Underwriters v. Kaufman, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312
    (3d Dep't 1999) ....................................................................................................23

Olin Corp. v. Insurance Co. of North Amer., 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990),
    aff'd, 929 F.2d 62 (2d Cir. 1991) .....................................................................4,19

Purcigliotti v. Risk Enterprise Mgmt. Ltd., 240 A.D.2d 205, 206, 658 N.Y.S.2d 296, 297
    (1997)....................................................................................................................11

Regional Imp. & Exp. Trucking Co. v. North River Ins. Co., 149 A.D.2d 361, 362
    (1st Dep't 1989).......................................................................................................6

Sagendorf v. Selective Insurance Co. of Amer., 293 N.J. Super. 81, 95 (App. Div. 1996) ...........8

Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972) ...........9

Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49, 54
    (App. Div. 1987)......................................................................................................8

Town of Smithtown v. National Union Fire Ins. Co., 191 A.D.2d 426, 427-428, 594
    N.Y.S.2d 318, 319 .................................................................................................17

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) .......................20

Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994)............................4

**Statutes**

11 N.J. Admin Code § 1-20.2(d) ...........................................................................................8
11 N.J. Admin. Code § 11:1-20.2(f)........................................................................................7
11 N.J. Admin. Code § 1-20.3 ................................................................................................7

11 N.J. Admin. Code § 1-20.4(a) ...................................................................................... 7

N.Y. Ins. Law § 3420(a)(4) ............................................................................................ 21

N.Y. Ins. Law § 3420(a)(5) ............................................................................................ 20

N.Y. Ins. Law § 3420(c)(2)(A), rev'd ............................................................................ 20

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................... 3

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") respectfully submit that the motion for Summary Judgment filed by Harleysville Insurance Company of New Jersey ("Harleysville") should be denied. Respectfully, the policy at issue is subject to and governed by New Jersey substantive law, not New York law. Harleysville and its named insured, Bartec Industries, Inc. ("Bartec"), are both New Jersey corporations with principal places of business in New Jersey. The broker that arranged for the policy and the payments for same is also located in New Jersey. Thus New Jersey law is properly applied to the question of allegedly late notice under the policy. Under the laws of that state, Harleysville bears the burden of establishing appreciable prejudice as a result of the alleged late notice, a threshold it has not, and cannot, satisfy.

Likewise, movant is unable to contest that <u>the notice provided for the within action</u> complied fully with the policy's notice provisions. Movant's attempt to boot-strap the notice analysis for this action into alleged delays associated with a separate, prior action voluntarily dismissed with Harleysville's consent is simply an attempt to cloud the issue of Trataros' proper notification. No party is seeking a judgment against Harleysville as to any losses associated with the prior action. Significantly, the judgment sought pertains to the claims filed in this case only.

Further, the claims alleged by DASNY and/or TDX do not facially implicate coverage under the policy. Travelers' and Trataros' knowledge of the potential commercial general liability ("CGL") coverage was only derived through their own efforts and investigations. Given the notice pleading style of DASNY's allegations, Travelers and Trataros cannot equitably be charged with knowledge that liability may have existed under the carrier's policies.

Lastly, even if New York law applied, it is respectfully submitted that the question of the continued application of the no-prejudice rule under circumstances similar to those presented

here has been certified to the New York Court of Appeals by the Second Circuit. In light of the State Legislature's statutory abrogation of the no-prejudice exception, and recent case law questioning its continued viability as a judicial doctrine, the pending decision may result in the elimination of the doctrine. In any event, there is an appropriate excuse/justification for any late notice as set forth in the Declaration of John Scarpellino, Sr. ("Scarpellino Dec.") filed herewith.

## STATEMENT OF FACTS

The Court is respectfully referred to Travelers' and Trataros' Counter-Statement of Material Facts in Opposition to Harleysville's Motion for Summary Judgment, for a recitation of the applicable facts. The Court is also respectfully referred to the Declaration of Eli Rogers, Esq. with corresponding exhibits submitted with this motion as well as the Declaration of John Scarpellino submitted herewith.

## LEGAL ARGUMENT

Travelers and Trataros submit that Harleysville's motion for summary judgment should be denied due to, among other things, the application of New Jersey law, disputed issues of material fact, changes in substantive law, and movant's failures of proof. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, Harleysville bears the burden of proving the lack of any factual issues. Id. Where "the evidence is such that a reasonable party could return a verdict for the nonmoving party," summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Any inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-movants. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

## I.   SUMMARY JUDGMENT CANNOT BE GRANTED ON HARLEYSVILLE'S POLICY IN THAT NEW JERSEY LAW APPLIES AND HARLEYSVILLE HAS NOT ESTABLISHED PREJUDICE

It is respectfully submitted that Harleysville should be denied summary judgment with respect to its policy issued to Bartec, because the movant has failed to demonstrate "appreciable prejudice" as required under New Jersey law, which is applicable to that policy. New York's choice-of-law rules for insurance disputes make clear that New Jersey law controls the analysis of Harleysville's late notice defense with respect to Bartec's policy. See, Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) (When a Federal Court sits in diversity, the forum state's choice of law rules are applied.)

**A.**    <u>**Choice of Law Rules Require Application of New Jersey Substantive Law.**</u>

As the Bartec policy is a written agreement, the dispute here is subject to the "center of gravity" or "grouping of contacts" analysis, which New York courts apply to contract actions generally. <u>Id</u>. "Put differently, New York courts apply 'the law of the place which has the most significant contacts with the matter in dispute.'" <u>Id</u>. (Citation omitted.)  New York courts have identified six factors used to analyze choice of law questions relating to insurance contracts: "the location of the risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." <u>Olin Corp. v. Insurance Co. of North America</u>, 743 F.Supp. 1044, 1049 (S.D.N.Y. 1990), <u>aff'd</u>, 929 F.2d 62 (2d Cir. 1991).   The <u>Olin</u> factors are simply an insurance-specific reworking of New York's traditional five factors applied to choice-of-law in contract disputes:

> (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance [i.e., of the contract of <u>insurance</u>], (4) the location of the subject matter of the [insurance] contract, and (5) the domicile or place of business of the contracting parties.

<u>Maryland Cas.</u>, 332 F.3d at 151-2 (<u>citing</u>, <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d 309, 317 (1994).  <u>And see</u>, <u>Maryland Cas.</u>, 332 F.3d at 153 (endorsing the <u>Olin</u> court's choice of law analysis); <u>Asbeka Indus. v. Travelers Indem. Co.</u>, 831 F.Supp. 74, 82 (E.D.N.Y. 1993) (citing <u>Olin</u> factors).  Applying the <u>Olin</u> factors here establishes New Jersey as the state with the most significant contacts to Bartec's policy.

First, Bartec's principal place of business was and is located in New Jersey, the policy was issued and delivered in New Jersey, and the agent placing the policy was located in New

Jersey. (Rogers Dec., Exh. 38, Declaration Page)  Harleysville is a New Jersey corporation with its principal place of business located at 224 Strawbridge Dr., Moorestown, New Jersey 08057. (Rogers Dec. Exh. 38).  The broker who arranged for the policy and the payments for same is also located in New Jersey.

In terms of the location of the risk, it is clear that the risk covered by Bartec's policy was not confined to a single project.  Rather, "the risks covered by the insurance policies were not confined to any one principal location."  Olin, 743 F. Supp. at 1049.  Specifically, the policy provides that its CGL coverage "applies only to … 'property damage' that occurs during the policy period and that is caused by an 'occurrence.  The 'occurrence' must take place in the 'coverage territory.'"  (Id. 38 P. 23.) (emphasis added).  The policy defines the term "coverage territory" broadly, to include "The United States of America (including its territories and possessions), Puerto Rico and Canada; International waters or airspace…; [and] … All parts of the world [under several conditions]…."  (Id. Exh. 38 pg. 42.)  Otherwise, the Bartec policy does not identify any particular construction project as a covered risk.

Thus, New Jersey should be construed as the location of the risk.  The Second Circuit and the courts of New York have held under similar circumstances that "the principal location of the insured risk should be deemed to be the State where [the insured] … is incorporated and has its principal place of business, from which it negotiated … the Policy, and where the Policy presumably was delivered to it…."  Maryland Cas. Co., 332 F.3d at 153-154.

"It is commonplace for courts applying New York choice-of-law rules to disregard (or at least discount) the location of the insured risk when the risk is located in two or more states."  Maryland Cas., 332 F.3d at 153 (parenthetical in original).  The Second Circuit cited the Olin decision with approval, where the location of the insured risk was "disregarded … because 'the

risks covered by the insurance policies were not confined to any one principal location.'" <u>Id.</u>, 332 F.3d at 153 (<u>quoting</u>, <u>Olin</u>, 743 F. Supp. 1044).  Likewise, the Second Circuit endorsed the First Department's decision in <u>Regional Import & Export Trucking Co. v. North River Insurance Co.</u>, 149 A.D.2d 361, in which it was held that "a policy delivered to a New Jersey corporation to insure against a loss occurring 'anywhere' should be subject to the law of [New Jersey.]" <u>Maryland Cas.</u>, 332 F.3d at 153 (brackets in original).  <u>And see</u>, <u>Regional Imp. & Exp. Trucking Co. v. North River Ins. Co.</u>, 149 A.D.2d 361, 362 (1st Dep't 1989).

**B.     The Parties Intended for New Jersey Law to Apply to the Bartec Policies.**

In addition, the policy language reflects that the parties intended at the time of contract formation that New Jersey law would govern the insurance contract(s).  <u>Innophos, Inc. v. Rhodia, S.A.</u>, 10 N.Y.3d 25, 29 (2008) (Agreements are construed in accord with contracting parties' intent at time of formation.  Best evidence of that intent is contained in four corners of the written agreement.)  For example, the policy contains a number of endorsements identified as being specific to New Jersey, such as the endorsements entitled "New Jersey Changes – Auto/Mobile Equipment and Nonowned Watercraft," "New Jersey Changes - Business Liability Coverage," and "New Jersey Changes – Cancellation and Nonrenewal." (Rogers Dec. Exh 38.)

The "New Jersey Changes – Cancellation and Nonrenewal" endorsement included in Bartec's policy specifically references New Jersey law as applicable to the insurer's and insured's respective rights:

> **Pursuant to New Jersey law**, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured.  The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request....

(Rogers Dec. Exh. 38) (Emphasis added.)   New Jersey administrative regulations explicitly require this policy language to be included in "[a]ll commercial insurance policy forms issued or renewed on or after January 6, 1987...." 11 N.J. Admin. Code § 1-20.3.   And see, 11 N.J. Admin. Code § 1-20.4(a) ("No insurer may cancel or nonrenew a policy based upon underwriting guidelines which are arbitrary, capricious or unfairly discriminatory.")

This endorsement also explicitly refers to the New Jersey Administrative Code for the policy's definition of the term "moral hazard":

> "We may cancel this policy ... at least
> (1)   10 days before the effective date of cancellation if we cancel for
> ...
>     (b)   Existence of a moral hazard, **as defined in N.J.A.C. 11:1-20.2(f) as follows**:
>         (i)   "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds.  Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard;' and
>
>         (ii)   The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible...."

(Rogers Dec., Exh. 38) This clause conforms to, and is adapted from, the New Jersey Administrative Code, which provides in pertinent part that "[a] policy shall not be cancelled for moral hazard unless the insurer, at least 10 days prior to the effective termination date has mailed or delivered to the insured notice ... [stating] the basis for termination in conform[ance] to the following definitions of moral hazard: [et cetera.]" 11 N.J. Admin. Code § 11:1-20.2(f).

Further, the cancellation/renewal endorsement ("...If we cancel this policy for any other reason listed above, we will mail or deliver a written notice to the first Named Insured ... not

more than 120 days nor less than 30 days before the effective date of such cancellation.") likewise conforms to the timing requirements set forth by the New Jersey Administrative Code. Cf., 11 N.J. Admin Code § 1-20.2(d) ("No cancellation ... shall be valid unless notice is mailed or delivered by the insurer to the insured ... not more than 120 days nor less than 30 days prior to effective date of such cancellation....") Thus, in light of the clear intent that New Jersey law will apply to the Bartec policies, and the fact that virtually all of the six Olin factors weigh toward New Jersey, Travelers and Trataros respectfully submit that New Jersey substantive law should be applied to movant's late notice defense.

      **C.**      **Harleysville Fails to Prove Appreciable Prejudice Required for Summary Judgment on the Bartec Policies.**

Applying New Jersey law, Harleysville failed to establish its entitlement to summary judgment on late notice grounds. Regardless as to whether an insurer is alleging late notice of an occurrence, alleged late notice of claim, or the insured's failure to cooperate, such defenses cannot be sustained under New Jersey law "unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by reason of the insured's failure to comply." Solvents Recovery Serv. of New England v. Midland Ins. Co., 218 N.J. Super. 49, 54 (App. Div. 1987).

Merely unreasonable behavior by an insured is not sufficient to rise to the level of appreciable prejudice. Sagendorf v. Selective Insurance Co. of Amer., 293 N.J. Super. 81, 95 (App. Div. 1996). Even where an insured failed to give its carrier notice of a claim for fifteen months in violation of the policy requirements, the carrier is "not reliev[d] ... of its obligation to show that [the insured's] ... delay caused it to irretrievably lose substantial rights and undermined the 'likelihood that it would have had a meritorious defense had it been informed of the accident in a timely fashion.'" Id. "Another factor that courts consider in determining whether appreciable prejudice exists pertains to the likelihood of success of an insurer in

defending against the insured's claim." Ethicon, 805 F.Supp. at 204. In the matter sub judice, there can be no showing of appreciable prejudice because Harleysville has fully participated in the litigation including all discovery and depositions, and it has been fully able to investigate and study the floor, as DASNY has performed no remediation on it as of the date of this opposition to Harleysville's motion. (Rogers Dec., Exh. 3) Because Harleysville has not met its burden of establishing "appreciable prejudice" its motion for summary judgment should be denied as to the Bartec policies.

## II.    THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS TIMELY.

Travelers and Trataros provided Harleysville with timely notice of the pending, present action, transmitting copies of the Third-Party Complaint and Counterclaims to the carriers via Federal Express **on the same day** they were received. (Id. ¶38) There can be no colorable claim that notice of the within action was unreasonably late; thus, Harleysville's argument alleging late notice of suit is a quintessential red herring. "[A] provision that notice be given 'as soon as practicable' ... merely requires that notice be given within a reasonable time under all the circumstances." Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972). No decision cited by Harleysville supports the proposition that an insurer is entitled to summary judgment, in an action of which it was timely notified, on the grounds that previously the carrier received late notice of a separate action that was since voluntarily dismissed on mutual consent of the insurer and insured, among others.

Indeed, the Honorable Harold Baer, U.S.D.J. specifically determined that the within action was unrelated to the Baer Action [1] shortly after Travelers filed its Complaint and Jury

---

[1] On or about June 28, 2004, Travelers commenced an action in the United States District Court for the Southern District of New York entitled, Travelers Casualty and Surety Company, et al., v. The Dormitory Authority of the State of New York, et al., and bearing Civil Action No. 04-CV-5101 (HB).

Demand in 2007. (Id. ¶42)  Significantly, neither the Amended Fourth-Party Complaint nor the Fourth-Party Complaint filed in the present action assert any claim against Harleysville for indemnification of the claims alleged by the Dormitory Authority - State of New York ("DASNY") in the Baer Action.  No judgment was ever entered against Travelers or Trataros in the Baer Action, no finding of liability to DASNY was ever entered therein, nor were the amounts of DASNY's claims liquidated during the Baer Action.  Thus, for purposes of the potential liability faced by Harleysville *here*, the Baer Action cannot be considered to be an "underlying action," where the carrier's potential liability under the policies became fixed. E.g., Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317 (1st Dep't 1995).  To the contrary, the Baer Action was voluntarily dismissed during the early stages of discovery, before even a single deposition had taken place.  Harleysville gave its explicit consent to the dismissal of the Baer Action, and participated in voluntary mediation following that action's conclusion. Under these circumstances, it is respectfully submitted that Harleysville received timely notice of this suit irrespective of which state's law is applied to Harleysville's policy.

### III. NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES AND/OR LATE NOTICE SHOULD BE EXCUSED.

#### A.   The Letters Relied Upon By Movant Are Not "Claims" Under the Policy.

None of the three letters which Harleysville appends to its moving papers constitute a "claim" within the meaning of the policy.  In fact, at least one of the letters is not even addressed to Trataros.  All three of the letters are dated after Trataros went out of business.  Of the two letters that purport to have been delivered to Trataros, to the extent they represent to be addressed, or "carbon-copied," to Athena Curis, Trataros' project manager for Contract No. 16, they are dated

after Ms. Curis was no longer in Trataros' employ. (Id. Exh. 4) Finally, none of the letters purportedly sent to Trataros are addressed to Trataros' record place of business, where DASNY was contractually obligated to send "notices" with respect to Contract No. 16. (Id. Exh. 44) Rather, the mailing address that TDX used for Trataros is not a business address that Trataros maintained; oddly, the address that TDX used appears to be the physical address for Baruch College.".  It is submitted that as of the date of these letters, Trataros was already de-mobilized from the Project and no longer occupying its offices on site. (Wishert Aff. Exh.C&E) Thus, it is doubtful that DASNY regarded them to be official notices, despite the after-the-fact characterizations which Harleysville attempts to "spin."  Even assuming the two letters addressed to Trataros reached it (despite the use of Trataros' incorrect address and despite Trataros' cessation of business), neither of those letters rises to the level of a "claim" that would trigger Harleysville's notice requirements.

As the Second Circuit has noted, "[u]nlike the term 'occurrence,' … the term 'claim' would not seem to be a fertile ground for disputes…. [A] claim is an assertion by a third party that in [its] opinion … the insured may be liable to it for damages within the risks covered by the policy." American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 439 (2d Cir. 1995).  "[A] claim must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." Evanston Ins. Co. v. GAB Business Serv., Inc., 132 A.D.2d 180, 186, 521 N.Y.S.2d 692, 695 (1st Dep't 1987).  Within the meaning of Harleysville's policy, a claim "is not merely an awareness that some wrongdoing has occurred, but rather a demand for specific relief that can be defended, settled and paid by the insurer." Purcigliotti v. Risk Enterprise Mgmt. Ltd., 240 A.D.2d 205, 206, 658 N.Y.S.2d 296, 297 (1997).

In <u>Evanston</u> the Court placed emphasis on the fact that the policy in question included language to the effect that the carrier agreed to pay "all sums … which the Insured shall become legally obligated to pay as damages as a result of [etc]." <u>Evanston</u>, 132 A.D.2d at 185. Here, the Harleysville policy contains similar language, stating: "We will pay those <u>sums</u> that the insured becomes <u>legally obligated</u> to pay <u>as damages</u> because of … property damage … to which this insurance applies." (Rogers Dec. Exh. 38) (Emphasis added.)  In addition, the Harleysville policy contains a clause stating the insurer's right to "defend any 'suit' seeking those damages." (Rogers Dec., Exh. 38, p. 23.)  The Court, in <u>Evanston,</u> relied upon a similar clause, among other things. <u>Id</u>. (Provision obligates Evanston to "defend any claim or suit against the Insured seeking damages to which this insurance applies.")  Likewise, Harleysville's duty to defend expires once the policy limits are exhausted; a similar provision was contained in the policy at issue in <u>Evanston</u>. (<u>See, id.</u>, and Rogers Dec., Exh. 38)

Finally, as with the letter relied upon in <u>Evanston</u>, the two letters directed to Trataros "contain[] no mention of damages or compensation."  The letters relied on by movant "merely contain statements of dissatisfaction with certain aspect's of [Trataros'] … past performance, [and] a demand for future performance in accordance with the contract;" matters insufficient as a matter of law to constitute a claim.  In light of the foregoing, and the facts that Ms. Curis has testified that she had left Trataros' employ more than 6 and 11 months, respectively, before the letters were purportedly sent to Trataros (Rogers Dec. Exh. 4); the incorrect address used on the letters; and the fact that Trataros was out of business at the time of the letters (<u>Id.</u> Exh. 4), it is submitted that none of the attached letters can be considered a claim triggering the policy's notice provisions.  As discussed above, the letters make no reference to defective products or damage to other property, thus there was little reason to assume, taking the letters at face value, that an occurrence arising

under the policy had transpired. <u>Amin Realty, L.L.C. v. Travelers Property Cas. Co.</u>, 2006 WL 1720401 (E.D.N.Y. June 20, 2006) (Ordinarily, defective workmanship, standing alone, is not an occurrence under a CGL policy.)

### B.     DASNY'S Third-Party Allegations Do Not Implicate Coverage Under The Policy Issued By Harleysville

Even if New York law is applied, it is respectfully submitted that notice was timely or should be excused.  Here, the issues are when it was known that a covered claim related to the performance of Bartec as to Bartec's policies.  That is different than any determination as to when the claim related to Trataros itself.  In particular, given that DASNY's allegations do not facially relate to Bartec, Harleysville's position -that they should have received notice of the Third-Party Complaint filed by DASNY in the Baer Action within a mere matter of days- is simply not colorable. As a result of the extensive investigation that was necessary to determine first, Bartec's potential involvement, and then Harleysville's potential liability under circumstances which ordinarily would suggest no coverage is available, it is respectfully submitted that the notice was timely when these factors are considered.

Initially, it is the "assertion of <u>an exposure to liability within the risks covered</u> by an insurance policy" which constitutes a claim such that a policy's notice provision is triggered. (Emphasis added) <u>American Ins. Co. v. Fairchild Indus., Inc.</u>, 56 F.3d 435, 438 (2d Cir. 1995)

Allegations of defective workmanship are, generally speaking, not claims for which coverage exists under a CGL policy such as was issued by Harleysville. <u>Bonded Concrete, Inc. v. Transcontinental Ins. Co.</u>, 12 A.D.3d 761, 762, 784 N.Y.S.2d 212, 213 ((3d Dep't 2004) (A CGL insurer "is not a surety for a construction contractor's defective work product.")  In that regard, it has been stated that the purpose of a CGL policy "is to provide coverage for tort

13

liability for physical damage to others and not for contractual liability of the insured for economic loss because the product ... is not what the damaged [party] bargained for." Id. [2]

Here, the bare allegations set forth in the Third-Party Complaint filed by DASNY and TDX Construction Corp. ("TDX"), without support of extraneous matters developed through investigation and discovery, do not appear sufficient to constitute a claim for CGL coverage. Most significant for Harleysville's late notice defense, neither DASNY's Third-Party Complaint in this action, nor in the Baer Action, specifically mentioned Bartec. Thus, strictly speaking the pleading does not support a claim under Harleysville's policy, even on the most basic level. Only recently (in the pending case and after Harleysville was already a party) has DASNY finally provided record evidence that it claims the Project's underlayment to be deficient in addition to the Project's epoxy terrazzo. Thus Travelers' proffered excuse, namely that it had to perform significant investigation before impleader, and that in fact its notice of claim was early under the circumstances is completely borne out by the facts. Here there simply was not a claim against Bartec set forth in the Third Party Complaint. Thus, the notice which Travelers and Trataros provided to Harleysville and the rest of Bartec's carriers was made in good faith, upon Travelers belief that Bartec may be implicated in DASNY's allegation in advance of a more particularized statement of DASNY's claim which would trigger the notice provisions of the Bartec policy.

Further, as the claim has been couched by DASNY, its Third-Party allegations facially allege defective workmanship issues, such that CGL coverage would typically be excluded.

---

[2] Nonetheless, New York and the Second Circuit recognize an exception to this rule where "an insured's defective product is a mere component of another product on structure Bonded Concrete, 12 A.D.3d at 763; Aetna Cas. & Sur. Co. v. General Time Corp. 704 F.2d 80, 81-83 (2d Cir. 1983); Apache Foam Prods. v. Continental Ins. Co.., 139 A.D.2d 933,528 N.Y.S.2d 448 (4th Dep't 1988). In this action only through Travelers' investigation did it become apparent that the claim against Travelers is "not simply one for faulty workmanship, but rather for consequential property damage inflicted upon a third party as a result of the insured's activity," thus implicating potential CGL coverage for DASNY's claims. J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993) (surveying such cases).

This does not imply that Travelers and Trataros believe there is no potential CGL coverage for DASNY's claims; merely that their investigation led them to conclude that coverage was not available in advance of allegations by and/or discovery from DASNY. (See Scarpellino Dec. ¶5,6&8.)

In addition to the recent testimony of DASNY's 30(b)(6) witness that DASNY's position is that both the terrazzo and the underlayment are failing, DASNY further alleges that the underlayment installed at the Project was mislabeled and/or negligently manufactured. (Rogers Dec., Exh. 3) The issue is further complicated by the fact that Crocetti installed portions of the underlayment. (Id. 3) To the extent DASNY alleges that the underlayment is "failing" in addition to the terrazzo, Crocetti (and vicariously, its surety Carolina Casualty Insurance Company) may bear some responsibility relevant to both aspects of DASNY's claim. (Id. Exh. 3)  Thus, although the Third-Party Complaint's allegations of floor defects only specifically mention G.M. Crocetti, Inc. ("Crocetti") and/or Trataros, the development of the facts indicates a more complex scenario.

DASNY further contends in deposition testimony that the purported flooring failures occur in a two step process: first, the epoxy terrazzo allegedly shrinks away from the zinc strips which border the terrazzo panels; then, at some indeterminate time in the future, the adhesive bond between the terrazzo and the underlayment allegedly fails, leading to a purported buckling or "uplifting" of the floor surface. Allegedly, DASNY can detect through visual inspection those areas where the first stage of the process has occurred but where the second stage has not yet transpired. (Id. Exh. 3) Assuming, arguendo, this is the case, then the two steps of the purported failure process are not so close in time as to be a single event; rather, it would appear under those circumstances that one or more elements of the flooring system is/are damaging the entire

flooring system. (Id. Exh. 3) DASNY's allegations that one or more products are defective and/or causing damage to the balance of the flooring system are not to be read into the several letters relied upon by Harleysville.

DASNY further alleges that the underlayment material Conflow is either defective or mislabeled. (Id. Exh. 3) Given that this purportedly defective material is incorporated into a flooring system composed of the additional elements of structural concrete, "hydraulic cement" and epoxy terrazzo (Id. Exh. 3), coverage should be implicated under the CGL policies issued by Harleysville and others. Yet none of these allegations are apparent on the face of DASNY's pleadings, either in the Baer Action or here, and were only learned through discovery in this case after Harleysville was already a party.

Similarly, the allegations advanced by DASNY in its pleadings, in both the Baer Action and the within action, make no allegations as to the cause of the alleged defects but rather go simply to the effect (Id. Exh. 25-34) To the extent that DASNY's notice allegations could be construed as implicating causation, those implications are solely directed to purportedly poor workmanship by Crocetti and/or Trataros. Neither the contemporaneous project records, nor DASNY's pleadings, make any mention of alleged product defects in the underlayment installed by Bartec industries, Inc. ("Bartec"), nor of any purportedly defective products incorporated into the Project's epoxy terrazzo flooring system.

Thus, the owner itself had no knowledge of an "occurrence," and did not allege one had occurred. Under such circumstances, it would be the height of inequity to charge Trataros not only with imputed knowledge of an occurrence that was never alleged, but strict liability to report a non-claim (at least, so far as the term "claim" is used in an insurance context) to its carriers, including Harleysville. By way of comparison, the New York Court of Appeals has

recognized that under certain circumstances a civil action can begin before the insured knows or

reasonably should know that he must comply with the policy's notice of claim requirements. <u>In</u>

<u>re Brandon</u>, 97 N.Y.2d 491, 498 (2002). Similarly, the Court of Appeals ruled that

> [a]lthough in theory most automobile accidents carry a potential
> claim for underinsurance benefits, it takes time, investigation and
> analysis to determine whether one will actually result. In the
> assessment a number of factors come into play, including the
> seriousness and nature of the insured's injuries, the potential
> liability of multiple parties, and of course the extent of a
> tortfeasor's coverage. Because these factors will vary from case to
> case, so too will the time at which an underinsurance claim
> becomes reasonably ascertainable.

<u>Metropolitan Cas. & Sur. Co. v. Mancuso</u>, 93 N.Y.2d 487, 493 (1999). Although the instant case

involves a CGL/construction industry context, the same principle holds true where there has been

no notice of claim preceding the complaint (or third-party complaint), and the allegations

pleaded are not sufficient to put the insured on notice as to the policy implications. <u>And see</u>,

<u>Town of Smithtown v. National Union Fire Ins. Co.</u>, 191 A.D.2d 426, 427-428, 594 N.Y.S.2d

318, 319 (summary judgment in favor of insurer reversed; allegations in complaint may create

issue of fact as to whether insured should have reasonably believed that coverage claim may

arise from allegations); <u>Deso v. London & Lancashire Indem. Co. of Am.</u>, 3 N.Y.2d 127, 130-

131 (1957) (discussing decisions where delay was excused due to insured's ignorance that injury

resulted from an accident, or where the insured testified he was unaware the policy covered the

accident in question).

The typical cases where an insured is charged with knowledge of an occurrence and

concomitant duty to notify arise where the fact of the occurrence was known to the insured, but

the person to whom liability attached was unknown. <u>See</u>, <u>e.g.</u>, <u>Argo Corp. v. Greater N.Y. Mut.</u>

<u>Ins. Co.</u>, 4 N.Y.3d 332, 337 (2005) (slip and fall accident results in personal injury action). In

circumstances such as <u>Argo</u>, there can be no question as to the likelihood that the injuries described in a personal injury suit would come within the coverage provided; the allegations themselves should present sufficient notice to the insured. <u>Id</u>.

Here, the circumstances present the exact opposite scenario. At the very best, Trataros could be said to have had knowledge (at least by the point of the Third-Party Complaint's filing) that the owner believed Trataros to be at least partially responsible for the alleged problems; however, Trataros had no reason to believe based upon the claim presented by DASNY that its potential liability arose from an occurrence nor that the "occurrence was attributable to Bartec." Additionally, since Trataros' coverage was as an additional insured, its coverage under Harleysville's policy is excess to any other coverage available to it. Harleysville has not established when, or if Trataros should have reasonably known that the claims alleged by DASNY would reach Harleysville's policy.

Although the Harleysville policy provides primary coverage to its named insured, Bartec, Trataros is an additional insured under the policy. (<u>Id</u>. Exh. 38) ("[A]dditional insured [is] any general contractor … or owner whom you are required to add as an additional insured on this policy under a written or oral construction contract….") Under the explicit terms of the policy, the coverage provided to an additional insured "hereunder shall be excess over other valid and collectible insurance available to the additional insured whether that other insurance is primary, excess, contingent or provided on any other basis." (<u>Id</u>. Exh. 38) Here, Bartec's purchase order with Trataros contained a provision requiring it to name Trataros and DASNY as additional insureds on its coverage. (CSF,¶40.)

As an additional insured, Trataros had no duty to provide notice to Harleysville until Trataros reasonably should have known that its' own insurance coverage, and "any other valid and

collectible insurance available" to Trataros would be exhausted.  (Rogers Dec. Exh. 38) And see, City of Utica, N.Y. v. Genesee Mgmt., Inc., 934 F. Supp. 510, 524 (N.D.N.Y. 1996) ("An insured's duty to notify its excess carrier of an occurrence is triggered 'when the circumstances … would have suggested a reasonable possibility of a claim that would trigger that excess insurer's coverage.")

Unlike a primary carrier, who will "uniformly undertake[] to investigate and defend any claim covered by the policy," an excess carrier "does not undertake to defend the assured." Olin Corp. v. Insurance Co. of North Amer., 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991).  For that reason, an excess carrier "is not interested in every accident, but only in those that may be serious enough to involve it."  Id.

As the Second Circuit has stated, "[w]hen the duty to provide such notice commences requires an **objective** evaluation of the facts known to the insured.  The objective standard is one of reasonableness."  Christiania Gen'l Ins. Corp. of N.Y. v. Great Amer. Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992) (emphasis added).  There is no *duty* to provide notice when there is only a bare, outside chance that coverage may be implicated.  "[T]he *duty* to provide notice … does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question." Id. (citing, Acker-Fitzsimmons, 31 N.Y.2d 436, 442 (1972)) (emphasis added). This notice obligation only arises "when an insured complying with its duty to use diligence in investigating potential claims against it would believe from the information available that its policy would be involved." Id., 275-276.

## IV.    NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION.

Travelers and Trataros submit that summary judgment is inappropriate as New York has abrogated the no-prejudice exception.  On or abut July 21, 2008, New York Governor David

19

Paterson signed into law a bill amending Section 3420 of the New York Insurance Law.  The revised statute provides, in pertinent part, that "[i]n any action in which an insurer maintains that it was prejudiced as a result of failure to provide timely notice, the burden of proof shall be on … the insurer to prove that it has been prejudiced, <u>if the notice was provided **within two years** of the time required</u> under the policy.…"  N.Y. Ins. Law § 3420(c)(2)(A), rev'd (emphasis added). The new bill also requires all new insurance contracts to be issued with a provision stating "that <u>failure to give any notice</u> required to be given by such policy within the time prescribed therein, <u>shall not invalidate any claim made by the insured, injured person or any other claimant</u>, unless the failure to provide timely notice has prejudiced the insurer.…"  N.Y. Ins. Law § 3420(a)(5). Under the bill's own terms, it does not take effect until 180 days after its enactment; however, as discussed below, the public policy considerations underlying the bill are consistent with New York case law favoring liberalization of the no-prejudice exception.  In light of the recent trends in jurisprudential and statutory law expressing a disfavor for the no-prejudice exception and/or the oppressive manner of its application, Travelers and Trataros respectfully submit that Harleysville's motion for summary judgment should be denied. In the alternative we submit that an appropriate excuse or justification for the delay has been established.

Although it is infrequently treated as such in its application, the New York Court of Appeals has repeatedly stated that the no-prejudice exception relied upon by Harleysville

> is a **limited** exception to two established rules of contract law: (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice; and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.

<u>Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.</u>, 79 N.Y.2d 576, 581 (1992) (citations omitted).  Indeed, as recently as 1997, the New York Court of Appeals re-affirmed that *"[u]nder*

*traditional contract-law principles*, the breach of such a contractual condition would excuse the aggrieved party's performance *only if that party was actually prejudiced by the delay*." <u>American Home Assur. Co. v. International Ins. Co.</u>, 90 N.Y.2d 433 (1997) (emphasis added).

Numerous limiting factors are built into New York's no-prejudice doctrine, both in terms of statutory law and *stare decisis*. Such constraints include the rule that reasonableness of a proffered excuse for late notice is an issue of *<u>fact</u>* (<u>Klersy Bldg. Corp. v. Harleysville Worcester Ins. Co.</u>, 36 A.D.3d 1117, 1119, 828 N.Y.S.2d 661, 663 [3d Dept 2007]), and the current version of Insurance Law § 3420(a)(4) which provides that an insured's failure to timely forward a summons and complaint may be excused if it was not "reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible." N.Y. Ins. Law § 3420(a)(4). Obviously, the intent of such constraints is to ameliorate the harshness of the exception; however, courts often simply pay lip service to these concepts without applying them. Thus, the explicitly "limited" exception has been at times applied with a draconian bent.

Some of the relevant New York precedents demonstrate greater liberality with application of the no prejudice exception, and far greater concern regarding the equity of charging an insured with a strict duty of notification under particular circumstances. <u>See</u> e.g., <u>Greater N.Y. Mut. Ins. Co. v. I Kalfus Co.</u>, 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't), <u>aff'd</u>, 37 N.Y.2d 820 (1975). In <u>Acker-Fitzsimmons</u>, the Court of Appeals endorsed a Third Department holding in favor of the insured, previously affirmed by the Court of Appeals in a separate decision, the facts of which were as follows per the Court:

> a three-year-old child fell from a fourth floor apartment window and was killed. It was held that delayed notice of the accident did not breach the notice provision where the insured, acting as a reasonable and prudent person, believed he was not liable. That accident … <u>simply was not one which would lead a reasonable person to envision any possible liability on the part of the insured</u>

corporate owner of the building.   In fact, the circumstances (of
which the insured apprised itself) indicated negligence on the part
of the child's mother.

Security Mut., 31 N.Y.2d at 442.   And see, 875 Forest Ave. Corp. v. Aetna Cas. Corp., 37

A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ("[M]ere knowledge

that an accident has occurred does not always give rise to a duty upon the insured to report such

accident to his insurer.")

Yet, as this Court cited in its opinion as to the motion of Untied States Fire Insurance

Company, some recent case law largely ignores this traditional moderation of the no-prejudice

exception.  However, other recent case law has questioned whether the doctrine will survive as to

late notice of claims.  The Court of Appeals has noted that  "New York is one of a minority of

states that still maintain a no-prejudice exception." In re Brandon, 97 N.Y.2d 491, 496 n.3 (2002)

> [A]s the Supreme Court of Tennessee noted … "the number of
> jurisdictions that still follow the traditional view has dwindled
> dramatically."   Indeed, that court noted that in the preceding 20
> years, only two states -New York and Colorado- had "considered
> the issue" and "continued to strictly adhere to the traditional
> approach."  Since then, Colorado adopted the majority rule,
> requiring insurers to demonstrate prejudice.

Id.   A growing number of courts applying New York law, in apparent recognition that a

judicially-enforced forfeiture of contractual rights in the absence of prejudice grants a windfall to

the disclaiming carrier, have taken a jaundiced view of the no-prejudice exception.  "In other

words, the insurer has been granted, wholly through judicial largess, the benefit of a conclusive

presumption of prejudice."  Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227,

231, 787 N.Y.S.2d 22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005).

Brandon appeared to signal the beginning of a shift away from the no-prejudice exception

insofar as the Court declined to extend the exception's use into the area of Supplementary

Uninsured Motorist ("SUM") coverage, holding that SUM insurers must show prejudice in order to disclaim on late notice grounds. Brandon, 97 N.Y.2d at 498. And see, Mark A.Varrichio v. Chicago Ins. Co., 312 F.3d 544 (2d Cir. 2002) ("We believe [Brandon] ... casts doubt on the traditional New York [no-prejudice] rule..."). Only a few years before Brandon, the Third Department held that an insurer who disclaims coverage under a homeowner's policy on late notice grounds was required to demonstrate prejudice. New York Mut. Underwriters v. Kaufman, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312 (3d Dep't 1999).

While some in-roads were made via these decisions, ultimately the Legislature abrogated the rule outright, expressing its distaste for the no-prejudice exception in no uncertain terms:

> New York is in the minority of states in the country because most states require insurers to suffer some form of prejudice before coverage may properly be denied for late notice. Current law, therefore, leads to an inequitable outcome with insurers collecting billions of dollars in premiums annually, and disclaiming coverage over an inconsequential technicality.... This bill ... eliminates the extreme hardship placed on those who pay their premiums timely only to find at a time of need that their policy is not available.

(Rogers Dec., Exh 40-41.)  In light of New York's explicit abrogation of the no-prejudice rule, and the unsettled nature of the law leading up to that abrogation, Travelers and Trataros respectfully submit that the no-prejudice rule should not be applied to this motion for summary judgment.

Further, in a recent case where it noted the "severity" of the no-prejudice rule, the Second Circuit certified to the Court of Appeals a question which may lead to a decision as to whether the no-prejudice rule should apply as to late notice of a claim where, as here, timely notice of suit was provided. See, Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008). The Court of Appeals accepted Certification in March of this year. 10 N.Y.3d 780, 886 N.E.2d 775 (2008).  Therefore, at a minimum, if this Court otherwise disagrees with all of our positions, it is

respectfully submitted that it should refrain from decoding this issue until the Court of Appeals renders its decision in that case.

Further, however, even if the notice were otherwise late, there is the issue of a reasonable excuse or justification. In that regard, it is respectfully submitted that the following facts should be considered: 1. Trataros' investigation and understanding that any problems with the floor had been corrected ; 2. Travelers' investigation and belief that neither Trataros nor Travelers had liability (Scarpellino Dec.); 3. Trataros went out of business and had no employees after 2002 (Rogers Dec. Exh. 4.) It was unclear whether Bartec had any exposure; 5. It was unclear whether excess coverage would be impacted and 6. It did not appear that the claims would be covered in any event.   For one or more of the foregoing reasons, it is respectfully submitted that any delay should be excused/justified, and Harleysville's motion for summary judgment denied.

## CONCLUSION

For the foregoing reasons, and those adduced in the opposing declarations submitted herewith, Travelers and Trataros respectfully request that the Court deny Harleysville's Motion for Summary Judgment in its entirety.


Dated:      Florham Park, New Jersey
            September 12, 2008

                              Respectfully submitted,
                              **DREIFUSS BONACCI & PARKER, LLP**


                    By:      _____/S/_____
                              Eli J. Rogers (ER:6564)