**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>DORMITORY AUTHORITY - STATE OF NEW YORK, et al.<br><br>　　　　　　　　　　Defendants. | Case No. 07-CV-6915 (DLC)<br>**ECF CASE** |

DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP.,

　　　　　　　　　　Third-Party Plaintiffs,

vs.

TRATAROS CONSTRUCTION, INC.,

　　　　　　　　　　Third-Party Defendant.

TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY,

　　　　　　　　　　Fourth-Party Plaintiffs,

vs.

CAROLINA CASUALTY INSURANCE COMPANY, et al.

　　　　　　　　　　Fourth-Party Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO FOURTH-PARTY DEFENDANTS, ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S AND NORTH AMERICAN SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

---

**Of Counsel,**
JoAnne M. Bonacci, Esq.

**On the Brief,**
JoAnne M. Bonacci, Esq.
Eli J. Rogers, Esq.
DREIFUSS BONACCI & PARKER, LLP
*Attorneys for Travelers Casualty and Surety*
*   Company, and Trataros Construction, Inc.*
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
(973) 514-1414

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ I

TABLE OF AUTHORITIES ..................................................................................................... II

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

LEGAL ARGUMENT .................................................................................................................. 3

   I.   THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS
      TIMELY ............................................................................................................................ 3

   II.  NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES AND/OR
      LATE NOTICE SHOULD BE EXCUSED. ...................................................................... 5

    A.  The Letters Relied Upon By Movants Are Not "Claims" Under the Policy. ................... 5

    B.  DASNY'S Third-Party Allegations Do Not Implicate Coverage Under The Policy
       Issued By NAS ................................................................................................................ 7

   III. NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION. ....... 12

   IV. DISPUTED ISSUES OF MATERIAL FACT PRECLUDE SUMMARY
      JUDGMENTAS TO THE PURPORTED LATE NOTICE OF CLAIM AND
      OCCURRENCE. ............................................................................................................ 17

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

875 Forest Ave. Corp. v. Aetna Cas. Corp., 37 A.D.2d 11, 322 N.Y.S.2d 53
(1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ........................................................14

Acker-Fitzsimmons, 31 N.Y.2d 436, 442 (1972) ...................................................12

Aetna Cas. & Sur. Co. v. General Time Corp. 704 F.2d 80, 81-83 (2d Cir. 1983).......................8

American Home Assur. Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) ..............................13

American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995) ...........................5,8

Amin Realty, L.L.C. v. Travelers Property Cas. Co., 2006 WL 1720401 (E.D.N.Y. June 20,
2006).................................................................................................................7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).......................................................3

Apache Foam Prods. v. Continental Ins. Co.., 139 A.D.2d 933,528 N.Y.S.2d 448
(4th Dept't 1988) .................................................................................................8

Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 337 (2005)......................................11

Bonded Concrete, Inc. v. Transcontinental Ins. Co., 12 A.D.3d 761, 762, 784 N.Y.S.2d
212, 213 ((3d Dep't 2004) ......................................................................................8

Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2008)......................16

Christiania Gen'l Ins. Corp, of N.Y. v. Great Amer. Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992) 12

Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 130-131 (1957)....................11

Evanston Ins. Co. v. GAB Business Serv., Inc., 132 A.D.2d 180, 186, 521 N.Y.S.2d
692, 695 (1st Dep't 1987).........................................................................................6

Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317
(1st Dep't 1995)...................................................................................................4

Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227, 231, 787 N.Y.S.2d
22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005)...................................................15

Greater N.Y. Mut. Ins. Co. v. I Kalfus Co., 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't),
aff'd, 37 N.Y.2d 820 (1975).....................................................................................14

In re Brandon, 97 N.Y.2d 491, 496 n.3 (2002)..................................................................10, 15

J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993) ..................................................8

Klersy Bldg. Corp. v. Harleysville Worcester Ins. Co., 36 A.D.3d 1117, 1119, 828
    N.Y.S.2d 661, 663 [3d Dept 2007]), ......................................................................................13

Mark A.Varrichio v. Chicago Ins. Co., 312 F.3d 544 (2d Cir. 2002) ...........................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) .............................3

Metropolitan Cas. & Sur. Co. v. Mancuso, 93 N.Y.2d 487, 493 (1999)........................................10

New York Mut. Underwriters v. Kaufman, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312
    (3d Dep't 1999) ........................................................................................................................15

Purcigliotti v. Risk Enterprise Mgmt. Ltd., 240 A.D.2d 205, 206, 658 N.Y.S.2d
    296, 297 (1997)...........................................................................................................................6

Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972) ...........3

Town of Smithtown v. National Union Fire Ins. Co., 191 A.D.2d 426, 427-428, 594
    N.Y.S.2d 318, 319 ....................................................................................................................11

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) ........................13

**Statutes**
Insurance Law § 3420(a)(4) .........................................................................................................13
N.Y. Ins. Law § 3420(a)(5) .........................................................................................................12
N.Y. Ins. Law § 3420(c)(2)(A), rev'd ........................................................................................12

**Rules**
Fed. R. Civ. P. 56(c) ......................................................................................................................3

## PRELIMINARY STATEMENT

Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") respectfully submit that the motion for Summary Judgment filed by North American Specialty Insurance Company and Allied World Assurance Company (U.S.), Inc. (collectively referred to as "NAS") should be denied. It is respectfully submitted that NAS is unable to contest that the notice provided for the within action complied fully with the policy's notice provisions. Movants' attempt to boot-strap the notice analysis for this action into alleged delays associated with a separate, prior action voluntarily dismissed with NAS consent is simply an attempt to cloud the issue of Trataros' proper notification. No party is seeking a judgment against NAS as to any losses associated with the prior action. Significantly, the judgment sought pertains to the claims filed in this case only.

Further, the correspondence relied upon in NAS' moving papers simply does not rise to the level of a "claim" asserted by DASNY and/or TDX against Trataros; thus, Trataros' duties under the policy's notice provisions were never triggered. Given that the Third-Party allegations of DASNY and/or TDX do not facially implicate coverage under the policy, Travelers' and Trataros' knowledge of the potential commercial general liability ("CGL") coverage was only derived through their own efforts and investigations. Given the notice pleading style of DASNY's allegations, Travelers and Trataros cannot equitably be charged with knowledge that liability may have existed under the carrier's policies.

Lastly, it is respectfully submitted that the question of the continued application of the no-prejudice rule under circumstances similar to those presented here has been certified to the New York Court of Appeals by the Second Circuit. In light of the State Legislature's statutory abrogation of the no-prejudice exception, and recent case law questioning its continued viability as a judicial doctrine, the pending decision may result in the elimination of the doctrine. In any

1

event, there is an appropriate excuse/justification for any late notice as set forth in the Declaration of John Scarpellino, Sr. ("Scarpellino Dec.") filed herewith.

While we are aware of this Court's ruling relating to United States Fire's motion, we hope that the Court will reach a different result here after reviewing these analyses and facts.

## STATEMENT OF FACTS

The Court is respectfully referred to Travelers' and Trataros' Counter-Statement of Material Facts in Opposition to NAS Motion for Summary Judgment for a recitation of the applicable facts. The Court is also respectfully referred to the Declaration of Eli Rogers, Esq. with corresponding exhibits submitted with this motion, as well as the Declaration of John Scarpellino also submitted herewith.

## LEGAL ARGUMENT

Travelers and Trataros submit that NAS motion for summary judgment should be denied due to, among other things, disputed issues of material fact, changes in substantive law, and movants' failures of proof.  Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact" and that the movants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As the moving parties, NAS bears the burden of proving the lack of any factual issues.  Id.  Where "the evidence is such that a reasonable party could return a verdict for the nonmoving party," summary judgment is not appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Any inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-movants. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

## I.    THE NOTICE OF SUIT PROVIDED BY TRATAROS AND TRAVELERS WAS TIMELY.

Travelers and Trataros provided NAS with timely notice of the pending, present action, transmitting copies of the Third-Party Complaint and Counterclaims to the carriers via Federal Express **on the same day** they were received. (Rogers Dec., ¶47) There can be no colorable claim that notice of the within action was unreasonably late; thus, NAS argument alleging late notice of suit is a quintessential red herring.  "[A] provision that notice be given 'as soon as practicable' ... merely requires that notice be given within a reasonable time under all the circumstances."  Security Mut. Ins. Co. of N.Y. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972).  No decision cited by NAS supports the proposition that an insurer is entitled to summary judgment, in an action of which it was timely notified, on the grounds that previously

the carrier received late notice of a separate action that was since voluntarily dismissed on mutual consent of the insurer and insured, among others.

Indeed, the Honorable Harold Baer, U.S.D.J. specifically determined that the within action was unrelated to the Baer Action [1] shortly after Travelers filed its Complaint and Jury Demand in 2007. (Rogers Dec.¶41)  Significantly, neither the Amended Fourth-Party Complaint nor the Fourth-Party Complaint filed in the present action assert any claim against NAS for indemnification of the claims alleged by the Dormitory Authority - State of New York ("DASNY") in the Baer Action.  No judgment was ever entered against Travelers or Trataros in the Baer Action, no finding of liability to DASNY was ever entered therein, nor were the amounts of DASNY's claims liquidated during the Baer Action.  Thus, for purposes of the potential liability faced by NAS _here_, the Baer Action cannot be considered to be an "underlying action," where the carrier's potential liability under the policies became fixed.  E.g., Fusco v. American Colonial Ins. Co., 221 A.D.2d 231, 231, 633 N.Y.S.2d 316, 317 (1st Dep't 1995).  To the contrary, the Baer Action was voluntarily dismissed during the early stages of discovery, before even a single deposition had taken place.  Allied World Assurance Company (U.S.), Inc. ("Allied") gave its explicit consent to the dismissal of the Baer Action, and participated in voluntary mediation following that action's conclusion. [2]  Under these circumstances, it is respectfully submitted that NAS received timely notice of this suit.

---

[1]  On or about June 28, 2004, Travelers commenced an action in the United States District Court for the Southern District of New York entitled, Travelers Casualty and Surety Company, et al., v. The Dormitory Authority of the State of New York, et al., and bearing Civil Action No. 04-CV-5101 (HB) (the "Baer Action").

[2]  As the Court will recall, even though NAS was provided with actual notice of the Baer Action at the time it was pending, as well as the within action, Allied elected to enter an appearance and move to dismiss on the ground that NAS was the entity with liability on the policy.  Following the Court's denial of Allied's motion to dismiss, Travelers and Trataros amended their Fourth-Party Complaint in the within action to implead NAS separately. Allied and NAS are now represented by the same counsel.

II.    **NOTICE OF CLAIM WAS TIMELY UNDER THE CIRCUMSTANCES AND/OR LATE NOTICE SHOULD BE EXCUSED.**

    A.    **The Letters Relied Upon By Movants Are Not "Claims" Under the Policy.**

None of the three letters which NAS appends to its moving papers constitute a "claim" within the meaning of the policy. In fact, at least one of the letters is neither addressed to, nor "carbon-copied" to Trataros. All three of the letters are dated after Trataros went out of business.(Rogers Dec, Exhibit 4) Of the two letters that purport to have been delivered to Trataros, to the extent they represent to be addressed, or "carbon-copied," to Athena Curis, Trataros' project manager for Contract No. 16, they are dated after Ms. Curis was no longer in Trataros' employ. (Rogers Dec, Exhibit 4) Finally, none of the letters purportedly sent to Trataros are addressed to Trataros' record place of business, where DASNY was contractually obligated to send "notices" with respect to Contract No. 16. (Rogers Dec Exh. 4) Rather, the mailing address used is the address of the Project itself. As of the date of these letters, Trataros was already de-mobilized from the Project and no longer occupying its offices on site. (Rogers Dec. Exh. 40 Section 2.03) Thus, it is doubtful that DASNY regarded them to be official notices, despite the after-the-fact characterizations which NAS attempts to "spin." Even assuming the two letters addressed to Trataros reached it (despite the use of Trataros' incorrect address and despite Trataros' cessation of business), neither of those letters rises to the level of a "claim" that would trigger NAS notice requirements.

As the Second Circuit has noted, "[u]nlike the term 'occurrence,' … the term 'claim' would not seem to be a fertile ground for disputes…. [A] claim is an assertion by a third party that in [its] opinion … the insured may be liable to it for damages within the risks covered by the policy." American Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 439 (2d Cir. 1995). "[A] claim must relate to an assertion of legally cognizable damage, and must be a type of demand that can be

defended, settled and paid by the insurer." Evanston Ins. Co. v. GAB Business Serv., Inc., 132 A.D.2d 180, 186, 521 N.Y.S.2d 692, 695 (1st Dep't 1987). Within the meaning of NAS policy, a claim "is not merely an awareness that some wrongdoing has occurred, but rather a demand for specific relief that can be defended, settled and paid by the insurer." Purcigliotti v. Risk Enterprise Mgmt. Ltd., 240 A.D.2d 205, 206, 658 N.Y.S.2d 296, 297 (1997).

In Evanston the Court placed emphasis on the fact that the policy in question included language to the effect that the carrier agreed to pay "all sums … which the Insured shall become legally obligated to pay as damages as a result of [etc.]." Evanston, 132 A.D.2d at 185. Here, the NAS policy contains similar language, stating: "We will pay those sums that the insured becomes legally obligated to pay as damages because of … property damage … to which this insurance applies." (Rogers Dec. Exh. 38) (Emphasis added.) In addition, the NAS policy contains a clause setting fourth the insurer's right to "defend any 'suit' seeking those damages." (Rogers Dec., Exh. 38, p. 23.) The Court, in Evanston, relied upon a similar clause, among other things. Id. (Provision obligates Evanston to "defend any claim or suit against the Insured seeking damages to which this insurance applies.") Likewise, NAS duty to defend expires once the policy limits are exhausted; a similar provision was contained in the policy at issue in Evanston. See, id., and Rogers Dec., Exh. 38.

Finally, as with the letter relied upon in Evanston, the two letters directed to Trataros "contain[] no mention of damages or compensation." The letters relied on by the movants "merely contain statements of dissatisfaction with certain aspect's of [Trataros'] … past performance, [and] a demand for future performance in accordance with the contract" matters insufficient as a matter of law to constitute a claim. In light of the foregoing, and the facts that Ms. Curis has testified that she had left Trataros' employ more than 6 and 11 months, respectively, before the letters were

6

purportedly sent to Trataros (Rogers Dep. at Exh. 4); that the incorrect address was used on the letters (Rogers Dep. at Exh. 4); and the fact that Trataros was out of business at the time of the letters (Rogers Dep. Exh. 4), it is submitted that none of the attached letters can be considered a claim triggering the policy's notice provisions. As discussed above, the letters make no reference to defective products or damage to other property, thus there was little reason to assume, taking the letters at face value, that an occurrence arising under the policy had transpired. Amin Realty, L.L.C. v. Travelers Property Cas. Co., 2006 WL 1720401 (E.D.N.Y. June 20, 2006) (Ordinarily, defective workmanship, standing alone, is not an occurrence under a CGL policy.)

**B.    DASNY'S Third-Party Allegations Do Not Implicate Coverage Under The Policy Issued By NAS**

Travelers and Trataros respectfully submit that, pursuant to New York law, the notice provided was timely or should be excused. Here, the issues are not when Trataros was "notifi[ed] … of its potential exposure" (Moving Brief, p. 5); to the contrary, the notice issue requires a two-step inquiry: first, when DASNY asserted a bona fide "claim" as that term is understood in the CGL context and applicable case law, and second, whether the claim has any implications for coverage under the policy. This inquiry is significantly different than any determination as to when Trataros first learned it had any potential exposure for purportedly defective construction work. Because the various letters relied upon by NAS do not satisfy the requirements of a "claim," it is respectfully submitted that the second prong should not even be reached in the Court's inquiry. Nonetheless, an extensive investigation was performed regarding the purported flooring defects. It was only during this investigative process that the possible CGL coverage for DASNY's claims first arose.

Simply an assertion of possible "exposure" is not enough. It is the "assertion of <u>an</u> <u>exposure to liability **within the risks covered**</u> by an insurance policy" which constitutes a claim

7

such that a policy's notice provision is triggered. (Emphasis added), <u>American Ins. Co. v.</u>
<u>Fairchild Indus., Inc.</u>, 56 F.3d 435, 438 (2d Cir. 1995)

Allegations of defective workmanship are, generally speaking, not claims for which
coverage exists under a CGL policy such as was issued by NAS. <u>Bonded Concrete, Inc. v.</u>
<u>Transcontinental Ins. Co.</u>, 12 A.D.3d 761, 762, 784 N.Y.S.2d 212, 213 (3d Dep't 2004) (A CGL
insurer "is not a surety for a construction contractor's defective work product.") In that regard, it
has been stated that the purpose of a CGL policy "is to provide coverage for tort liability for
physical damage to others and not for contractual liability of the insured for economic loss
because the product … is not what the damaged [party] bargained for." <u>Id</u>. [3]

Here, the bare allegations set forth in the Third-Party Complaint filed by DASNY and
TDX Construction Corp. ("TDX"), without support of extraneous matters developed through
investigation and discovery, do not appear sufficient to constitute a claim for CGL coverage. As
the claim has been couched by DASNY, its Third-Party allegations facially allege defective
workmanship issues, such that CGL coverage would typically be excluded. (Rogers Dec. Exh. 25
&34) This does not imply that Travelers and Trataros now believe there is no potential CGL
coverage for DASNY's claims; merely that Travelers' investigation led them to conclude that
there was no liability and it was Mr. Scarpellino's understanding that even if there was liability,
it would not be covered. (See Scarpellino Dec. ¶8.)

Only recently, DASNY's 30(b)(6) witness testified that DASNY's position is that <u>both</u>
the terrazzo and the underlayment are failing, DASNY further alleges that the underlayment

---

[3] Nonetheless, New York and the Second Circuit recognize an exception to this rule where "an insured's defective
product is a mere component of another product on structure <u>Bonded Concrete</u>, 12 A.D.3d at 763; <u>Aetna Cas. & Sur.</u>
<u>Co. v. General Time Corp.</u> 704 F.2d 80, 81-83 (2d Cir. 1983); <u>Apache Foam Prods. v. Continental Ins. Co.</u>, 139
A.D.2d 933,528 N.Y.S.2d 448 (4th Dep't 1988). In this action only through Travelers' investigation did it become
apparent that the claim against Travelers is "not simply one for faulty workmanship, but rather for consequential
property damage inflicted upon a third party as a result of the insured's activity," thus implicating potential CGL
coverage for DASNY's claims. <u>J.Z.G. Resources, Inc. v. King</u>, 987 F.2d 98, 102 (2d Cir. 1993) (surveying such
cases).

installed at the Project was mislabeled and/or negligently manufactured. (Rogers Dec., Exh. 3) The issue is further complicated by the fact that another entity, Bartec, installed portions of the underlayment, and not simply Crocetti. (Rogers Dec. ¶¶26-27) To the extent DASNY alleges that the underlayment is "failing" in addition to the terrazzo, Crocetti (and vicariously, its surety Carolina Casualty Insurance Company) may bear some responsibility relevant to both aspects of DASNY's claim. (Rogers Dec. ¶¶26-27) Thus, although the Third-Party Complaint's allegations of floor defects only specifically mention G.M. Crocetti, Inc. ("Crocetti") and/or Trataros, the development of the facts indicates a more complex scenario.

DASNY further contends in deposition testimony that the purported flooring failures occur in a two step process: first, the epoxy terrazzo allegedly shrinks away from the zinc strips which border the terrazzo panels, then at some indeterminate time in the future, the adhesive bond between the terrazzo and the underlayment allegedly fails, leading to a purported buckling or "uplifting" of the floor surface. [Bartlett day 3] Allegedly, DASNY can detect through visual inspection those areas where the first stage of the process has occurred, but where the second stage has not yet transpired. (Rogers Dec. Exh. 3) Assuming arguendo this is the case, then the two steps of the purported failure process are not so close in time as to be a single event; rather, it would appear under those circumstances that one or more elements of the flooring system is/are damaging the entire flooring system. (Rogers Dec. Exh. 3) DASNY's allegations that one or more products are defective and/or causing damage to the balance of the flooring system are not to be read into the several letters relied upon by NAS.

DASNY further alleges that the underlayment material Conflow is either defective or mislabeled. (Id. Exh. 3) Given that this purportedly defective material is incorporated into a flooring system composed of the additional elements of structural concrete, "hydraulic cement"

and epoxy terrazzo (Rogers Dec. Exh. 12-16), coverage should be implicated under the CGL

policies issued by NAS and others.  Yet none of these allegations are apparent on the face of

DASNY's pleadings, either in the Baer Action or here.

Similarly, the allegations stated by DASNY in its pleadings, in both the Baer Action and

the within action, include no allegations as to the cause of the alleged defects but rather go

simply to the effect.

Thus, the owner itself had no knowledge of an occurrence, and did not allege one had

occurred.  Under such circumstances, it would be the height of inequity to charge Trataros not

only with imputed knowledge of an occurrence that was never alleged, but strict liability to

report a non-claim (at least, so far as the term "claim" is used in an insurance context) to its

carriers, including NAS.  By way of comparison, the New York Court of Appeals has recognized

that under certain circumstances a civil action can begin before the insured knows or reasonably

should know that he must comply with the policy's notice of claim requirements.  In re Brandon,

97 N.Y.2d 491, 498 (2002).  Similarly, the Court of Appeals ruled that

> [a]lthough in theory most automobile accidents carry a potential
> claim for underinsurance benefits, it takes time, investigation and
> analysis to determine whether one will actually result. In the
> assessment a number of factors come into play, including the
> seriousness and nature of the insured's injuries, the potential
> liability of multiple parties, and of course the extent of a
> tortfeasor's coverage. Because these factors will vary from case to
> case, so too will the time at which an underinsurance claim
> becomes reasonably ascertainable.

Metropolitan Cas. & Sur. Co. v. Mancuso, 93 N.Y.2d 487, 493 (1999).  Although the instant case

involves a CGL/construction industry context, the same principle holds true where there has been

no notice of claim preceding the complaint (or third-party complaint), and the allegations

pleaded are not sufficient to put the insured on notice as to the policy implications.  And see,

Town of Smithtown v. National Union Fire Ins. Co., 191 A.D.2d 426, 427-428, 594 N.Y.S.2d 318, 319 (summary judgment in favor of insurer reversed; allegations in complaint may create issue of fact as to whether insured should have reasonably believed that coverage claim may arise from allegations); Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 130-131 (1957) (discussing decisions where delay was excused due to insured's ignorance that injury resulted from an accident, or where the insured testified he was unaware the policy covered the accident in question).

The typical cases where an insured is charged with knowledge of an occurrence and concomitant duty to notify arise where the fact of the occurrence was known to the insured, but the person to whom liability attached was unknown. See, e.g., Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 337 (2005) (slip and fall accident results in personal injury action). In circumstances such as Argo, there can be no question as to the likelihood that the injuries described in a personal injury suit would come within the coverage provided; the allegations themselves should present sufficient notice to the insured. Id.

Here, the circumstances present the exact opposite scenario. At the very best, Trataros could be said to have had knowledge (at least by the point of the Third-Party Complaint's filing) that the owner believed Trataros to be at least partially responsible for the alleged problems; however, Trataros had no reason to believe based upon the claim presented by DASNY that its potential liability arose from an occurrence nor that the occurrence itself would not be subject to the policy's exclusions.

As the Second Circuit has stated, "[w]hen the duty to provide such notice commences requires an **objective** evaluation of the facts known to the insured. The objective standard is one of reasonableness." Christiania Gen'l Ins. Corp. of N.Y. v. Great Amer. Ins. Co., 979 F.2d 268,

275 (2d Cir. 1992) (emphasis added). There is no **duty** to provide notice when there is only a bare, outside chance that coverage may be implicated (by the same token, there is no prohibition against it either). "[T]he **duty** to provide notice … does not begin on the basis of mere speculation, rumor, or remote contingencies far removed from the particular policy in question." Id. (citing, Acker-Fitzsimmons, 31 N.Y.2d 436, 442 (1972)) (emphasis added). This notice obligation only arises "when an insured complying with its duty to use diligence in investigating potential claims against it would believe from the information available that its policy would be involved." Id., 275-276.

### III.    NEW YORK STATE HAS ABROGATED THE NO-PREJUDICE EXCEPTION.

Travelers and Trataros submit that summary judgment is inappropriate as New York has abrogated the no-prejudice exception. On or abut July 21, 2008, New York Governor David Paterson signed into law a bill amending Section 3420 of the New York Insurance Law. The revised statute provides, in pertinent part, that "[i]n any action in which an insurer maintains that it was prejudiced as a result of failure to provide timely notice, the burden of proof shall be on … the insurer to prove that it has been prejudiced, if the notice was provided **within two years** of the time required under the policy.…" N.Y. Ins. Law § 3420(c)(2)(A), rev'd (emphasis added). The new bill also requires all, new insurance contracts to be issued with a provision stating "that failure to give any notice required to be given by such policy within the time prescribed therein, shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer.…" N.Y. Ins. Law § 3420(a)(5). Under the bill's own terms, it does not take effect until 180 days after its enactment; however, as discussed below, the public policy considerations underlying the bill are consistent with New York case law favoring liberalization of the no-prejudice exception. In light of the recent trends in jurisprudential and statutory law expressing a disfavor for the no-prejudice exception, and/or

the oppressive manner of its application, Travelers and Trataros respectfully submit that NAS' motion for summary judgment should be denied. In the alternative we submit that an appropriate excuse or justification for the delay has been established.

Although it is infrequently treated as such in its application, the New York Court of Appeals has repeatedly stated that the no-prejudice exception relied upon by NAS

> is a **limited** exception to two established rules of contract law: (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice; and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 79 N.Y.2d 576, 581 (1992) (citations omitted). Indeed, as recently as 1997, the New York Court of Appeals re-affirmed that *"[u]nder traditional contract-law principles*, the breach of such a contractual condition would excuse the aggrieved party's performance *only if that party was actually prejudiced by the delay*." American Home Assur. Co. v. International Ins. Co., 90 N.Y.2d 433 (1997) (emphasis added).

Numerous limiting factors are built into New York's no-prejudice doctrine, both in terms of statutory law and *stare decisis*. Such constraints include the rule that reasonableness of a proffered excuse for late notice is an issue of *fact* (Klersy Bldg. Corp. v. Harleysville Worcester Ins. Co., 36 A.D.3d 1117, 1119, 828 N.Y.S.2d 661, 663 [3d Dept 2007]), and the current version of Insurance Law § 3420(a)(4) which provides that an insured's failure to timely forward a summons and complaint may be excused if it was not "reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible." N.Y. Ins. Law § 3420(a)(4). Obviously, the intent of such constraints is to ameliorate the harshness of the exception; however, courts sometimes simply pay lip service to these concepts without

applying them. Thus, the explicitly "limited" exception has been at times applied with a draconian bent.

Some of the relevant New York precedents demonstrate greater liberality with application of the no prejudice exception, and far greater concern regarding the equity of charging an insured with a strict duty of notification under particular circumstances. See e.g., Greater N.Y. Mut. Ins. Co. v. I Kalfus Co., 45 A.D.2d 574, 360 N.Y.S.2d 28 (1st Dep't), aff'd, 37 N.Y.2d 820 (1975). In Acker-Fitzsimmons, the Court of Appeals endorsed a Third Department holding, previously affirmed by the Court of Appeals in a separate decision, the facts of which were as follows per the Court:

> a three-year-old child fell from a fourth floor apartment window and was killed. It was held that delayed notice of the accident did not breach the notice provision where the insured, acting as a reasonable and prudent person, believed he was not liable. That accident … simply was not one which would lead a reasonable person to envision any possible liability on the part of the insured corporate owner of the building. In fact, the circumstances (of which the insured apprised itself) indicated negligence on the part of the child's mother.

Security Mut., 31 N.Y.2d at 442. And see, 875 Forest Ave. Corp. v. Aetna Cas. Corp., 37 A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't 1971), aff'd, 30 N.Y.2d 726 (1972) ("[M]ere knowledge that an accident has occurred does not always give rise to a duty upon the insured to report such accident to his insurer.")

Yet, as this Court cited in its opinion as to the motion of Untied States Fire Insurance Company, some more recent case law largely ignores this traditional moderation of the no-prejudice exception. However, recent case law has questioned whether the doctrine should survive as to late notice of claims. The Court of Appeals has noted that "New York is one of a

minority of states that still maintain a no-prejudice exception." In re Brandon, 97 N.Y.2d 491,

496 n.3 (2002)

> [A]s the Supreme Court of Tennessee noted … "the number of jurisdictions that still follow the traditional view has dwindled dramatically." Indeed, that court noted that in the preceding 20 years, only two states -New York and Colorado- had "considered the issue" and "continued to strictly adhere to the traditional approach." Since then, Colorado adopted the majority rule, requiring insurers to demonstrate prejudice.

Id. A growing number of courts applying New York law, in apparent recognition that a

judicially-enforced forfeiture of contractual rights in the absence of prejudice grants a windfall to

the disclaiming carrier, have taken a jaundiced view of the no-prejudice exception. "In other

words, the insurer has been granted, wholly through judicial largess, the benefit of a conclusive

presumption of prejudice." Great Canal Realty Corp. v. Seneca Ins. Co., Inc., 13 A.D.3d 227,

231, 787 N.Y.S.2d 22, 25 (1st Dep't 2004), rev'd, 5 N.Y.3d 742 (2005).

Brandon appeared to signal the beginning of a shift away from the no-prejudice exception

insofar as the Court declined to extend the exception's use into the area of Supplementary

Uninsured Motorist ("SUM") coverage, holding that SUM insurers must show prejudice in order

to disclaim on late notice grounds. Brandon, 97 N.Y.2d at 498. And see, Mark A.Varrichio v.

Chicago Ins. Co., 312 F.3d 544 (2d Cir. 2002) ("We believe [Brandon] … casts doubt on the

traditional New York [no-prejudice] rule…"). Only a few years before Brandon, the Third

Department held that an insurer who disclaims coverage under a homeowner's policy on late

notice grounds was required to demonstrate prejudice. New York Mut. Underwriters v.

Kaufman, 257 A.D.2d 850, 851, 685 N.Y.S.2d 312 (3d Dep't 1999).

While some in-roads were made via these decisions, ultimately the Legislature abrogated

the rule outright, expressing its distaste for the no-prejudice exception in no uncertain terms:

> New York is in the minority of states in the country because most states require insurers to suffer some form of prejudice before coverage may properly be denied for late notice.  <u>Current law, therefore, leads to an inequitable outcome with insurers collecting billions of dollars in premiums annually, and disclaiming coverage over an inconsequential technicality</u>…. This bill … eliminates the extreme hardship placed on those who pay their premiums timely only to find at a time of need that their policy is not available.

(Rogers Dec., Exh. 41.)  In light of New York's explicit abrogation of the no-prejudice rule, and the unsettled nature of the law leading up to that abrogation, Travelers and Trataros respectfully submit that the no-prejudice rule should not be applied to this motion for summary judgment.

Further, in a recent case where it noted the "severity" of the no-prejudice rule, the Second Circuit certified to the Court of Appeals a question which may lead to a decision as to whether the no-prejudice rule should apply as to late notice of a claim where, as here, timely notice of suit was provided.  <u>See</u>, <u>Briggs Avenue L.L.C. v. Ins. Corp. of Hannover</u>, 516 F.3d 42, 49 (2d Cir. 2008). The Court of Appeals accepted Certification in March of this year. 10 N.Y.3d 780, 886 N.E.2d 775 (2008).  Therefore, at a minimum, if this Court otherwise disagrees with all of our positions, it is respectfully submitted that it should refrain from deciding this issue until the Court of Appeals renders its decision in that case.

In that regard, it is respectfully submitted that the following facts should be considered: 1. Trataros' investigation and understanding that any problems with the floor had been corrected; 2. Travelers' investigation and belief that neither Trataros nor Travelers had liability (see Scarpellino Dec., ¶ 5-6,8); 3. Trataros went out of business and had no employees after 2002 (Rogers Dec Exh. 4); 4. The continuing negotiations of Trataros' affirmative claims made negative exposure on the part of Trataros seem unlikely; and 5. It did not appear that the claims would be covered in any event. .  For one or more of the foregoing reasons, it is respectfully

submitted that any delay should be excused/justified on, at a minimum, the matter left to the jury to decide.

## IV.   DISPUTED ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT AS TO THE PURPORTED LATE NOTICE OF CLAIM AND OCCURRENCE.

The other grounds relied upon by NAS, namely, the purported indicia of claim and/or occurrence allegedly arising contemporaneously with the Project, do not support the construction advanced by NAS. First, there is little ground to support a contention that the March 7, 2003 and August 28, 2003 letters appended to the Simon Declaration (Simon Dec., Exhs. D & F), evidence an intent to assert a claim, as Travelers' 30(b)(6) witness has testified that in late fall/early winter of 2003, DASNY was still in negotiations with Travelers to compromise Trataros' claims for contract balance and delay/impact damages. (Rogers Dec., Exh 3.) As late as that date, DASNY was still offering to pay millions of dollars to Travelers in connection with Trataros' claims; thus, the movants' contention that Trataros was faced with significant, imminent "exposure" as of March, 2003 or August, 2003 is simply not colorable.

Further, the August 28, 2003 TDX letter, authored by Ray Leu, TDX's project manager for the Project, bears little indicia of a formal claim letter as it contains no threat of legal action, and no reference to purported damages of DASNY, TDX, the City University of New York, nor Baruch College. (Simon Dec., Exh. E.) Rather, the August 28, 2003 letter appears more likely to be an "exception report" relating to Trataros' performance of Contract No. 16. [4] Mr. Leu has already testified in this action, appearing as TDX's Rule 30(b)(6) witness on the flooring issues. In that context, Mr. Leu testified that, in and about the Spring of 2001, an "exception report" had previously been sent to Trataros with respect to alleged problems with the Project's epoxy terrazzo and/or underlayment; Mr. Leu subsequently identified a letter dated February 28, 2001

---

[4] Under TDX's Construction Phase contract, TDX was required to "prepare periodic 'Exception Reports' as required by the Construction Work of the Prime Contractors." (Rogers Dec., Exh. 2.)

as being the so-called "exception report." (Rogers Dec. Exh. 11) This "exception report" arose out of alleged delaminations and/or debondings in several areas at the Project. (Id.) DASNY has also testified to the effect that that the February 28, 2001 TDX letter was an exception report. (Rogers Dec. at Exh. 11)

Given that the August 28, 2003 letter written by Mr. Leu is written by TDX's Project personnel rather than a General Counsel or other claims personnel, it appears to have been generated in the ordinary course of business by TDX. This factor, coupled with the facts that the letter does not threaten legal action or reference purported damages, and does not seem to assert a "claim" of any stripe, it is submitted that the August 28, 2003 letter relied upon by NAS can only be characterized as an exception report. Exception reports are generally for the purpose of a contractor to correct a problem not respond to a claim. Because disputed issues of material fact exist as to when Trataros knew or should have known of an "occurrence" and when DASNY asserted an affirmative claim, that required notice to NAS, Travelers and Trataros respectfully submit that this Court should deny summary judgment to NAS.

## CONCLUSION

For the foregoing reasons, and those adduced in the opposing declaration submitted herewith, Travelers and Trataros respectfully request that the Court deny NAS' Motion for Summary Judgment in its entirety.

Dated:    Florham Park, New Jersey
          September 12, 2008

                          Respectfully submitted,
                          **DREIFUSS BONACCI & PARKER, LLP**


                          By:    _____/S/_____
                                 Eli J. Rogers (ER:6564)

18