| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY AS ADMINISTRATOR FOR RELIANCE INSUANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>DORMITORY AUTHORITY – STATE OF NEW YORK, TDX CONSTRUCTION CORP. AND KOHN PEDERSEN FOX ASSOCIATES, P.C.,<br><br>Defendants.<br><br>Et al. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTHER DISTRICT OF NEW YORK<br><br>Case Action No. Civil Action No. 07-cv-6915<br><br>Hon. Denise L. Cote |

---

### HARLEYSVILLE'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON LATE NOTICE

---

                                            RIKER DANZIG SCHERER HYLAND &
                                              PERRETTI LLP
                                              Headquarters Plaza
                                              One Speedwell Avenue
                                              Morristown, NJ 07962-1981
                                              (973) 538-0800

                                              Attorneys for Fourth Party Defendant,
                                              Harleysville Insurance Company of New
                                              Jersey

Of Counsel and On the Brief:
    Lance J. Kalik

On the Brief:
    Tracey K. Wishert

3892148.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

HARLEYSVILE'S RESPONSE TO TRATAROS' STATEMENT OF ADDITIONAL MATERIAL FACTS............................................................................4

LEGAL ARGUMENT .....................................................................................................5

I.   NEW YORK LAW APPLIES TO THE ADDITIONAL INSURED COVERAGE FOR TRATAROS ON THE HARLEYSVILLE POLICY..................................................5

II.  TRATAROS AND TRAVELERS DID NOT PROVIDE TIMELY NOTICE TO HARLEYSVILLE..................................................................................................9

    A.   Trataros Breached Its Duty To Give Prompt Notice Of An "Occurrence."..........................................................................................9

    B.   Trataros Has No Reasonable Excuse For Its Untimely Notice............................................................................................................11

    C.   Trataros Breached Its Duty To Give Prompt Written Notice Of A Claim Or "Suit" ..........................................................................12

CONCLUSION................................................................................................................15

## PRELIMINARY STATEMENT

Fourth Party Defendant Harleysville Insurance Company of New Jersey ("Harleysville") submits this reply brief in further support of its motion for summary judgment based upon the failure of Trataros Construction Corp. and its surety, Travelers Casualty and Surety Company (collectively "Trataros") to comply with the notice provisions of the Harleysville Policy.

Under New York choice of law rules, there is no doubt that New York has the more significant "grouping of contacts" to the issue of whether Trataros is entitled to coverage under the Harleysville Policy. Trataros' alleged additional insured coverage arises solely from the Baruch Project in New York, the underlying claim is being litigated in New York, and during its operations, Trataros was a New York Company operating out of Brooklyn. Under <u>Worth Construction</u>, the Appellate Division has already determined that such contacts are sufficient to place the center of gravity for Trataros' additional insured coverage in New York; thus New York law applies. Under New York law, Harleysville must only show that Trataros delayed for an unreasonable amount of time before notifying Harleysville of the alleged flooring damages or of the "suit" filed by DASNY to recover such damages. New York does not require that Harleysville show prejudice to prevail on its late notice defense.

Trataros breached its notice obligations to Harleysville by failing to provide timely notice of 1) an "occurrence" that may result in a claim; and 2) an actual claim or suit alleging damages potentially covered under the Harleysville Policy. As an initial matter, no reasonable person could have reviewed the 2003 letters to Trataros or been aware of the investigative findings by multiple engineers that the flooring was debonding, yet not foreseen the possibility that DASNY would submit a claim for such damages. Since the letters also

1

specifically referred to the "potential problem" with Bartec's work, Trataros was certainly aware of the likelihood that the Harleysville Policy would be triggered. Trataros' failure to provide notice of this potential liability related to the underlayment installation by Bartec for almost two years visciates coverage under the Harleysville Policy. Since it is clear from John Scarpellino's deposition testimony that Travelers was well aware of the flooring delamination issues in the Spring of 2003, it does not matter that Trataros had ceased operations at this time. It is not relieved of its duty to provide notice of an occurrence.

Furthermore, in August 2004, DASNY filed a third party complaint seeking damages relating to the debonding of the terrazzo flooring. It is undisputed that Trataros did not notify Harleysville of this suit until March 2005 when it served Harleysville with a Fourth Party complaint seeking coverage for the claims alleged therein. This seven month delay is unreasonable as a matter of law and precludes coverage under the Harleysville Policy. The fact that the 2004 action was voluntarily dismissed in 2005 and then refiled in 2007 has no bearing on Trataros' failure to comply with the notice provision of the Policy, as the present action is merely a continuation of the "suit" which originally triggered Trataros' notice obligations. In addition, Trataros cannot escape its notice obligations by claiming that it needed to "investigate" to determine whether the Harleysville Policy was potentially triggered. Based upon the 2003 letters and the testimony of Travelers representative, John Scarpellino, there is no question that Trataros was aware of and had already been investigating the issue of the terrazzo delamination by the time the 2004 action was finally filed. Accordingly, Trataros' failure to timely notify Harleysville should not be excused based on an alleged lack of knowledge that the Harleysville Policy might be triggered. Similarly, Trataros' claimed belief that the allegations of the 2004 third party complaint by DASNY would not be covered under the Harleysville Policy based upon

the faulty workmanship exclusions, is not a legally cognizable excuse for its failure to timely notify Harleysville of the 2004 suit.

Finally, because the Harleysville Policy is not an "excess policy," but rather provides excess coverage only by operation of an "other insurance" clause in the Policy, Trataros did not have a right to delay providing notice until all primary coverage had been exhausted.

For these reasons, Harleysville respectfully requests that the Court grant its motion for summary judgment and dismiss the fourth party complaint against Harleysville with prejudice.

# HARLEYSVILE'S RESPONSE TO TRATAROS' STATEMENT OF ADDITIONAL MATERIAL FACTS

In opposition to Harleysville's motion for summary judgment, Trataros submitted a counter-statement of 80 "additional material facts" yet, curiously, Trataros does not discuss in its brief how any of these facts are material to the motion at issue. Harleysville responds that each of these facts is not material in any way to the issue of late notice in the present motion. Trataros' responsive arguments in its opposition are based upon legal interpretation and do not assert that the uncertainty of any of the proffered "material" facts should preclude summary judgment.

## LEGAL ARGUMENT

I.  **NEW YORK LAW APPLIES TO THE ADDITIONAL INSURED COVERAGE FOR TRATAROS ON THE HARLEYSVILLE POLICY**

As the Court is aware, New York courts apply a "center of gravity" or "grouping of contacts" analysis when deciding choice of law issues relating to insurance contracts. Schwartz v. Twin City Ins. Co., 539 F.3d 135, 152 (2d Cir. 2008). With respect to the present issue of whether Trataros is entitled to coverage as an additional insured on the Harleysville Policy, there is no doubt that New York, rather than New Jersey, has the more significant contacts. Indeed, New York's Appellate Division has already decided an almost identical issue in Worth Construction Co. Inc. v. Admiral Ins. Co., 836 N.Y.S.2d 155 (1st Dept. 2007).

In that case, Worth Construction, a Connecticut corporation, was a general contractor on a construction site in White Plains, New York. Id. at 156. Worth hired Hackensack Steel, a New Jersey corporation, as a subcontractor on the White Plains site. Id. Admiral Insurance Company, a New Jersey insurer, issued a liability insurance policy to Hackensack which contained an additional insured endorsement covering Worth for liability arising out of Hackensack's operations at the White Plains project. Id. An employee who was injured on the site brought an action against Worth in Westchester County, New York for which Worth sought coverage as an additional insured on the Admiral policy. Id. Because Worth delayed almost 15 months before providing notice to Admiral, Admiral disclaimed under the notice provision of the policy. Id. In response, Worth argued that New Jersey law governed the policy because Admiral was a New Jersey insurer and the named insured, Hackensack, was also a New Jersey company and therefore Admiral could not disclaim on late notice because it had not shown prejudice. Id.

5

Both the trial court and the Appellate Division disagreed. Id. Affirming the trial court's decision, the Appellate Division stated "[i]n deciding which law to apply the motion court correctly found the center of gravity to be in New York, where the subject construction site was located and the underlying personal injury action is being litigated, not New Jersey, where Admiral issued its policy to Hackensack." Id.; see also Liberty Surplus Ins. Corp. v. Nat'l Union Fire Ins. Co., 2008 N.Y. Misc. LEXIS 4599 at **9 (N.Y. Sup. Ct. Aug. 4, 2008) (applying CT law to the issue of additional insured coverage because the coverage arose from the named insured's operations at a CT site and the underlying action was being litigated in CT, stating "the risks for which plaintiffs seek coverage as additional insureds arose from [the named insured's] work for [the additional insureds] performed only at the building located in CT.")

Like these cases, the additional insured coverage which Trataros is presently seeking from Harleysville arises solely from Bartec's work at the Baruch Project. Specifically, the relevant endorsement provides:

> WHO IS AN INSURED (Section II) is amended to include as an additional insured any general contractor, subcontractor, or owner whom you are required to add as an additional insured on this policy under a written or oral construction contract or agreement where a certificate of insurance showing that person or organization as an additional insured has been issued and received by "us" prior to the date of loss. The written or oral contract or agreement must not be a lease agreement for equipment or property, and must be:
>
> (a)    currently in effect or becoming effective during the term of the policy; and
>
> (b)    executed prior to the "occurrence" resulting in "bodily injury," "property damage," "property damage," "personal injury" or "advertising injury."
>
> The insurance provided to the additional insured is limited as follows:
>
> (a)    The additional insured is covered for its vicarious liability for the acts or omissions of the named insured which arise from the named insured's ongoing operations. The additional insured is not covered for liability due to its independent acts or for any supervision of "your work" or the work of any other person or organization; and

6

>   (b) The limits of insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever are less.

Reply Affirmation of Tracey K. Wishert, dated Sept. 26, 2008 ("Wishert Reply Affirmation"), Ex. A. Accordingly, Trataros' coverage as an additional insured, if any[1], was directly linked to the Baruch Project in New York, and not to any other project on which Bartec was working for which Bartec might have otherwise be covered under the Harleysville Policy. In addition, Trataros was a New York company with a principal place of business at 664 64th Street in Brooklyn, NY at the time of Bartec's ongoing operations at Baruch. See Affirmation of Tracey K. Wishert dated Aug. 7, 2008 ("Wishert Affirmation") Ex. C; Rogers Declaration Ex. 4 at T19:25-20:8. Therefore, under New York caselaw, the center of gravity for Trataros' coverage under the Harleysville Policy is in New York, where the Baruch College project was located, the "suit" for damages is being litigated, and Trataros' own main offices were located while Trataros was operating. Because New York is the center of gravity for the issue of coverage owed to Trataros under Harleysville's Policy, New York applies to interpretation of that coverage, including the issue of whether Trataros complied the notice provision of the Harleysville Policy. Under New York law, it is clear that Trataros breached the notice provision of the Harleysville Policy and thus is not entitled to coverage.

Despite Trataros' acknowledgement that applicable New York law does not require Harleysville to show prejudice in order to succeed on its late notice defense, Trataros urges this Court to disregard New York's longstanding "no-prejudice" rule based on alleged public policy. Trataros claims that New York has "abrogated" the no-prejudice rule through New York

---

[1] Harleysville continues to reserve its rights to assert all other defenses available to it that Trataros is not entitled to coverage as an additional insured or otherwise under the Harleysville Policy.

Insurance Law § 3420(c), however, in reality the bill requires an insurer to show prejudice where notice is given two years or less from the date the notice provision is triggered. Where notice is provided more than two years late, the burden switches to the insured to show an absence of prejudice on the insurer. NY Ins. Law § 3420 (c)(2)(A). More importantly, however, by its own terms, the bill does not take effect until January 18, 2009, 180 days after its enactment into law on July 21, 2008. Had the Legislature intended for the law to become effective prior to that time or indeed to apply retroactively as in this case, it certainly was within its power to do so. Notably, Trataros does not cite to any caselaw which would give this court the authority to disregard the plain language of the bill as to the date the new law becomes effective.

In addition, Trataros' argument that New York caselaw has tended toward requiring an insurer to show prejudice to succeed on a late notice defense is misleading. There is no question that the applicable law at the time the notice provision was triggered does not require Harleysville to show prejudice to succeed on its late notice defense. See e.g., Briggs Avenue L.L.C. v. Ins. Corp. of Hannover, 516 F.3d 42, 49 (2d Cir. 2007) (stating that court has declined to abandon or even reduce the New York rule that prejudice need not be shown by insurer in late notice cases); Olin Corporation v. Certain Underwriters at Lloyd's London, 468 F.3d 120, 132 (2d Cir. 2006) (holding that District Court erred in requiring a showing of prejudice as an element of a late notice defense); Transportation Ins. Co. v. AARK Const. Group, Ltd. 526 F. Supp. 2d 350, 357 (E.D.N.Y. 2007); 105 Street Associates, LLC v. Greenwich Ins. Co., 507 F.Supp.2d 377, 380 (S.D.N.Y. 2007); The Argo Corporation v. Greater New York Mutual Ins. Co., 4 N.Y.3d 332, 339 (2005); York Specialty Food, Inc. v. Tower Ins. Co. of New York, 850 N.Y.S.2d 409, 410 (App. Div. 1 Dept. 2008) (citing Argo Corporation v. Greater New York Mutual Ins. Co., 4 N.Y.3d 332, 339 (2005)); Atlantic General Contracting, Inc., v. United States

Liability Ins. Group, 806 N.Y.S.2d 225, 227 (App. Div. 2d Dept. 2005) (finding that New York law, unlike New Jersey law, does not require a showing of prejudice). Accordingly, because Trataros failed to provide timely notice to Harleysville of an occurrence or of a claim/suit, Harleysville is entitled to disclaim coverage to Trataros for the damages alleged in the present action.

## II. TRATAROS AND TRAVELERS DID NOT PROVIDE TIMELY NOTICE TO HARLEYSVILLE

### A. Trataros Breached Its Duty To Give Prompt Notice Of An "Occurrence."

Pursuant to the Harleysville Policy, Trataros had a duty to promptly notify Harleysville of "an 'occurrence' that may result in a claim" – in addition to a duty to provide prompt written notice of any actual claim or suit brought. Wishert Affirmation Ex. K. Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy. State v. Blank, 27 F.3d 783, 793 (2d Cir. 1994) (quoting Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 272 (2d Cir. 1987)). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." Wishert Reply Affirmation Ex. A. Under New York law, the obligation to provide notice of an occurrence is triggered "when the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." Kaesong Corp. v. United Nat'l Specialty Ins. Co., 2008 U.S. Dist. LEXIS 34254 (E.D.N.Y. Apr. 25, 2008) (quoting Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 272 (2d Cir. 1987)).

As an initial matter, it is worth noting that Trataros does not dispute that the debonding of the terrazzo discussed in the 2003 letters from TDX Construction Corp. ("TDX") to Trataros constituted an "occurrence" as defined by the Harleysville policy. Rather, Trataros

9

asserts that the letters do not rise to the level of a claim or suit. According to the Policy and New York law, however, an "occurrence" need only give rise to the *possibility* of a claim to trigger the notice provision of the policy. See DiGuglielmo v. Travelers Prop. & Cas. Co., 776 N.Y.S.2d 542 (1st Dep't 2004); Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y. 2d 436, 400 (1972). There can be no question that the 2003 letters to Trataros would have suggested to any reasonable person the possibility of a claim.

First, the March 7, 2003 letter enclosed an investigative report by Testwell Laboratories detailing areas where the epoxy terrazzo floor was debonding and concluding that "the cause of the problem is limited to the flooring application and not larger scale movements or failures of the underlying structural slab." Wishert Affirmation Ex. C. Since Trataros was the prime contractor for the flooring application, the report alone should have suggested to Trataros that DASNY or TDX, who had commissioned the report, might make a demand for the flooring damages claimed to be the result of the flooring application. To make the issue even clearer, however, TDX's letter expressly stated: "Trataros Construction, being the General Contractor, will be held responsible for all conditions, should final analysis show G.M. Crocetti's system failure was due to poor workmanship; not to mention the potential problem posed by the underlayment subcontractor, Bartec, and its recommended product, Conflow, for floor leveling." Id. It is difficult to imagine how this language could be reasonably interpreted as anything other than notice of the possibility of a claim by TDX and DASNY for the debonding epoxy terrazzo floor at Baruch College. Moreover, the letter expressly notes the potential for liability arising from the work of Trataros' subcontractor, Bartec. Accordingly, there is no question that Trataros had a duty in March 2003 to notify Harleysville that it would be seeking coverage under the Policy for damages from the floor debonding.

On August 28, 2003, Trataros received a second letter from TDX, enclosing additional investigative reports regarding the terrazzo flooring. The letter refers to "deteriorating and hazardous conditions due to the deficiencies of the terrazzo flooring and underlayment installation" and states "[b]ased upon the findings of the independent testing agency reports, it has been determined that the deficiencies in the terrazzo installation and underlayment are your responsibility." Again, any reasonable person reading this correspondence and the enclosed investigative reports would have considered that Trataros might be subject to a claim for these damages. In such circumstances, Trataros had a duty to notify Harleysville of such a possibility.

**B.     Trataros has no reasonable excuse for its untimely notice.**

Realizing that it cannot prevail on its claim that notice was provided timely, Trataros' argues that it should be excused because Trataros was no longer in business on the date of the 2003 letters and may not have received the letters. Failure to provide notice of an occurrence may be excused where "the insured has a reasonable argument that it was unaware of the accident." Travelers Ins. Co. v. Vomar Constr. Co., 752 N.Y.S.2d 286, 289 (1st Dep't 2002). In this case, however, there is no reasonable argument that Trataros and Travelers were unaware of the alleged flooring damages since regardless of the status of Trataros' business operations, Travelers' own representative has testified that he became aware of the flooring problems in the Spring of 2003, the same timeframe as the letters. Wishert Aff. Ex. B at T32:20-33:16. Specifically, Mr. Scarpellino testified that he attended a meeting with Doug Van Vleck from DASNY, among others, in the spring of 2003 at which time he first heard of a "major defect" with the flooring. Id. Accordingly, Trataros and Travelers cannot now claim that it should be excused from its untimely notice based on a lack of knowledge of the alleged occurrence. Because Trataros has no reasonable excuse for its failure to provide timely notice of an "occurrence," it is not entitled to coverage under the Harleysville Policy.

11

### C. Trataros breached its duty to give prompt written notice of a claim or "suit"

After sending multiple letters notifying Trataros that the terrazzo floor was delaminating, on or about August 4, 2004, DASNY filed a third party complaint seeking damages related to the flooring. Specifically DASNY alleged:

> The epoxy terrazzo that Trataros and Crocetti installed in the Project has begin to deteriorate and is otherwise defective. Among other things, the epoxy terrazzo began to crack and crumble at the perimeter of the poured area at the zinc divider strips over a substantial area of the epoxy terrazzo installation. The epoxy terrazzo also began to delaminate and "blister" in increasingly larger areas.

Wishert Affirmation Ex. G, ¶ 30. It is indisputable that the allegations of the 2004 Third Party Complaint constituted a "suit" as defined by the Harleysville Policy which would trigger the Policy's notice provisions. See Wishert Reply Affirmation Ex. A (policy definitions) (defining "suit" as "a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies are alleged.) Despite having received this suit regarding the flooring damages, Trataros did not put Harleysville on notice of these claims until March 2, 2005 when it served Harleysville with a Fourth Party Complaint. Because this seven month delay in providing notice of DASNY's "suit" for flooring damages is unreasonable as a matter of law, Trataros has breached its obligation to provide prompt written notice of "suit" and is not entitled to coverage under the Harleysville Policy. See Wishert Affirmation Ex. A at 15 (citing Amer. Ins. Co. v. Fairchild Indus. Inc., 56 F.3d 435, 440 (2d Cir. 1995)).

In its opposition Trataros makes much of the fact that the 2004 action which proceeded before the Honorable Harold Baer, U.S.D.J., was voluntarily dismissed by the parties in late September 2005. Specifically, Trataros argues that because the 2004 action was assigned a new docket number when the pleadings were refiled in 2007, the late notice obligations under

the relevant insurance policies were somehow reset. Trataros' bases this argument solely on a docket designation by Judge Baer and claims that the two actions are "unrelated." This argument ignores reality. A review of the pleadings from both actions shows that they are virtually identical. The fact that the parties voluntarily dismissed the action before Judge Baer has no bearing on the fact that Trataros failed to give notice that it was seeking coverage under the Harleysville Policy for seven months after DASNY filed its third party complaint regarding damages to the terrazzo flooring. Trataros' notice obligations are governed by the Harleysville Policy and there is no question that the claims asserted in the originally docketed action before Judge Baer constituted a claim or suit which triggered the Policy's notice provisions. The present action is merely a continuation of that "suit." The fact that Trataros immediately forwarded a copy of DASNY's third party complaint to Harleysville's counsel when it was refiled in 2007 in no way absolves Trataros of its failure to comply with the Policy's notice provisions originally.

Trataros' argument that it was unclear from DASNY's third party complaint whether Harleysville's Policy was potentially triggered, is equally without merit. Trataros claims that it needed to perform "significant investigation" to determine whether the Harleysville Policy was triggered because the third party complaint did not specifically mention Bartec. As discussed in detail above, Trataros was aware long before the filing of the 2004 third party complaint that DASNY and TDX believed the problems with the epoxy terrazzo flooring were in part related to the underlayment installation performed by Bartec. Specifically, the March 2003 letter referred to "the potential problem posed with the underlayment subcontractor, Bartec, and its recommended product, Conflow, for floor leveling." Wishert Affirmation Ex. C. In addition, the August 2003 letter discussed "deficiencies of the terrazzo flooring *and underlayment* at

Baruch College." Id. Moreover, the investigative reports which were enclosed with the August 2003 letter (which are summarized in Ex. D of the Wishert Affirmation) referred to problems with the underlayment application and the use of a non-conforming underlayment product. As general contractor for the terrazzo floor, Trataros was certainly aware that the underlayment had been installed by Bartec and thus would have understood the implications of the 2004 Third party complaint as it related to Bartec's work. Accordingly, Trataros should not be excused from its failure to timely notify Harleysville when the 2004 complaint was filed.

Similarly, Trataros' claimed belief that the allegations of the 2004 action would not be covered under the Harleysville Policy based upon the faulty workmanship exclusions, is not a legally cognizable excuse for its failure to notify Harleysville of the 2004 suit until seven months later. See New York v. Blank, 27 F.3f 783, 796 (2d Cir. 1994) (stating "a good faith belief by an insured that it was not covered under the policy would not excuse unreasonable delay in failing to notify and insurer of a claim.")

Finally, Trataros' claim that its notice obligations were not triggered at the time of the 2004 action because Harleysville was an "excess" carrier is unsupported in fact and law. Unlike a true "excess" carrier, Harleysville's coverage becomes excess only by operation of an "other insurance" clause in its policy. The cases which Trataros cites for its proposition are all situations involving an excess policy in which the insuring agreement of the policy does not allow for coverage until the primary coverage has been exhausted. Accordingly, the notice provisions of such policies are not triggered until there is a reasonable possibility that the primary coverage will be exhausted. The Harleysville Policy's insuring agreement provides no such limitation on coverage and thus allows for the possibility that its coverage could be primary even for an additional insured like Trataros. Although Harleysville agrees with Trataros that the

"other insurance" clause of its endorsement mandates that it provides additional insured coverage on an excess basis only, that does not relieve potential insureds from giving timely notice. Accordingly, Trataros' argument that it believed it had no obligation to notify Harleysville as an "excess" carrier is entirely unreasonable and does not excuse the failure to provide timely notice of the 2004 suit to Harleysville.

## **CONCLUSION**

For the foregoing reasons, Harleysville respectfully requests that the Court grant its Motion for Summary Judgment and dismiss the Fourth Party Complaint against Harleysville with prejudice based upon Trataros' failure to comply with the notice provisions of the Harleysville Policy.

                                      Respectfully submitted,

                                      RIKER DANZIG SCHERER HYLAND
                                      & PERRETTI LLP

                                      Attorneys for Fourth Party Defendant,
                                      Harleysville Insurance Company of New Jersey

                                      By:   /s/ Lance K. Kalik
                                                Lance J. Kalik

Date: September 29, 2008