```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY as  :
Administrator for RELIANCE INSURANCE      :
COMPANY,                                  :
                Plaintiff,                :   07 Civ. 6915 (DLC)
                                          :
                -v-                       :   OPINION AND ORDER
                                          :
DORMITORY AUTHORITY - STATE OF NEW YORK,  :
TDX CONSTRUCTION CORP. and KOHN PEDERSEN  :
FOX ASSOCIATES, P.C.,                     :
                Defendants.               :
                                          :
------------------------------------------:
DORMITORY AUTHORITY OF THE STATE OF NEW   :
YORK and TDX CONSTRUCTION CORP.,          :
                Third-Party Plaintiffs,   :
                                          :
                -v-                       :
                                          :
TRATAROS CONSTRUCTION, INC.,              :
                Third-Party Defendant.    :
                                          :
------------------------------------------:
TRATAROS CONSTRUCTION, INC. and TRAVELERS :
CASUALTY AND SURETY COMPANY,              :
                Fourth-Party Plaintiffs,  :
                                          :
                -v-                       :
                                          :
CAROLINA CASUALTY INSURANCE COMPANY;      :
BARTEC INDUSTRIES, INC.; DAYTON SUPERIOR  :
SPECIALTY CHEMICAL CORP. a/k/a DAYTON     :
SUPERIOR CORPORATION; SPECIALTY           :
CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER :
CASUALTY INSURANCE COMPANY d/b/a KEMPER   :
INSURANCE COMPANY; GREAT AMERICAN         :
INSURANCE COMPANY; NATIONAL UNION FIRE    :
INSURANCE COMPANY OF PITTSBURGH, PA.;     :
UNITED STATES FIRE INSURANCE COMPANY;     :
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.:
f/k/a COMMERCIAL UNDERWRITERS INSURANCE   :
COMPANY; ZURICH AMERICAN INSURANCE COMPANY:
d/b/a ZURICH INSURANCE COMPANY; OHIO      :
CASUALTY INSURANCE COMPANY d/b/a OHIO     :
CASUALTY GROUP; HARLEYSVILLE MUTUAL       :
INSURANCE COMPANY (a/k/a HARLEYSVILLE     :
INSURANCE COMPANY); JOHN DOES 1-20 and XYZ:
CORPS. 1-20,                              :
                Fourth-Party Defendants.  :
----------------------------------------X
```

Appearances:

For Fourth-Party Plaintiffs Trataros Construction, Inc. and
Travelers Casualty and Surety Company:
JoAnne M. Bonacci
Eli J. Rogers
Dreifuss Bonacci & Parker LLP
26 Columbia Turnpike, North Entrance
Florham Park, NJ 07932

For Fourth-Party Defendant Harleysville Mutual Insurance Company:
Lance J. Kalik
Tracey K. Wishert
Riker Danzig Scherer Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

DENISE COTE, District Judge:

On June 25, 2008, this Court granted fourth-party defendant U.S. Fire Insurance Company's ("U.S. Fire") converted motion for summary judgment, concluding that a seven-month delay in providing notice of a claim to an insurer is unreasonable under New York law and relieves the insurer of any obligation to provide coverage in this complex construction litigation. This Opinion concludes that New Jersey law, not New York law, governs disputes pertaining to the policy issued by fourth-party defendant Harleysville Mutual Insurance Company ("Harleysville"),[1] and therefore that because Harleysville has not demonstrated prejudice from the delayed notice of a claim, its motion for summary judgment is denied.

---

[1] Harleysville asserts that it was improperly pled as Harleysville Mutual Insurance Company, and that the correct fourth-party defendant is Harleysville Insurance Company of New Jersey.

BACKGROUND

The procedural history and relevant background for this motion have been set out in the Opinion granting fourth-party defendant U.S. Fire's converted summary judgment motion, Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ. 6915(DLC), 2008 WL 2567784 (S.D.N.Y. June 25, 2008) ("U.S. Fire Opinion"), which is incorporated by reference.[2]  As set out in the U.S. Fire Opinion, this litigation relates to alleged problems in the design and construction of a building in Manhattan for the use of Baruch College (the "Project").  On August 1, 2007, plaintiff Travelers Casualty and Surety Company ("Travelers"), acting as administrator for Reliance Insurance Company ("Reliance") and asserting claims assigned to Travelers by Trataros Construction, Inc. ("Trataros"), commenced this action against defendant Dormitory Authority-State of New York ("DASNY") and others.  DASNY, who acted as the "owner" of the Project on behalf of City University of New York and Baruch College, had entered into more than a dozen co-prime contracts for the Project's construction work, two of which were awarded to Trataros.

---

[2]  The background for this litigation has also been described in this Court's Opinions granting the motion to dismiss of material supplier Specialty Construction Brands Inc. (known as "TEC"), Travelers Cas. & Sur. Co. v. Dormitory Auth., No. 07 Civ. 6915(DLC), 2008 WL 1882714 (S.D.N.Y. Apr. 25, 2008), and granting Travelers' and Trataros' motion to withdraw a bankruptcy reference for an adversary proceeding with Trataros' subcontractor G.M. Crocetti, Inc., In re G.M. Crocetti, Inc., No. 08 Civ. 6239(DLC), 2008 WL 4601278 (S.D.N.Y. Oct. 15, 2008).

3

The work called for under the contracts awarded to Trataros included the installation of an epoxy terrazzo flooring system. Bartec Industries, Inc. ("Bartec") was a Trataros sub-contractor. Bartec's role in the Project included installing a portion of the epoxy terrazzo flooring as well as leveling the Project's concrete floor slabs. The third-party complaint filed by DASNY against Trataros alleged that "[t]he epoxy terrazzo that Trataros . . . installed in the Project is deteriorating and is otherwise defective," and that "significant portions of Trataros' work were defective, substandard, or otherwise unacceptable" and "had to be repaired or replaced."

Faced with DASNY's claims in the third-party complaint, Travelers and Trataros responded on November 13, 2007 with a fourth-party complaint against, inter alia, Bartec, two material suppliers, and eight named insurance companies. One of those insurance companies was Harleysville, which had issued a contractor's business owners policy ("Harleysville Policy") to Bartec.[3] The claim against Harleysville seeks, inter alia, a declaratory judgment that coverage exists under the Harleysville Policy for the claims asserted by DASNY and its construction manager, as well as "complete indemnification and/or compensatory damages, to the full extent of such coverage," in the event that DASNY prevails on those claims.

---

[3] The Purchase Order that memorialized the sub-contract between Bartec and Trataros required Bartec to maintain insurance that named Trataros as an additional insured.

4

The Harleysville Policy contains an additional insured endorsement, which provides that any general contractor, subcontractor or owner of Bartec's is an additional ensured under the policy if Bartec was required to add them as an additional insured under a written or oral construction contract. The Harleysville Policy provides two main types of insurance coverage: property and comprehensive business liability. The section of the Harleysville Policy pertaining to business owner's liability coverage requires that if a "claim is made or 'suit' is brought against any insured, [Bartec] must see to it that we receive prompt written notice of the claim or "suit," and that Bartec and other involved insureds must "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

On June 25, 2008, this Court granted fourth-party defendant U.S. Fire's converted motion for summary judgment, concluding that a seven-month delay in providing notice of a claim to an insurer is unreasonable under New York law and relieves the insurer of any obligation to provide coverage in this complex construction litigation. After the U.S. Fire Opinion was issued, a July 14, 2008 scheduling order permitted other fourth-party defendant insurance companies to file summary judgment motions based on an assertion that the reasoning in the U.S. Fire Opinion supported dismissal of the claims against them as well. Harleysville's motion was fully submitted on September 26, 2008. Harleysville asserts that its

situation is identical to that of U.S. Fire. DASNY's third-party complaint in a previous action that raised identical issues to those being litigated here was filed on August 4, 2004, and Harleysville did not receive notice of the suit until it was served with Traveler's and Trataros' amended fourth-party complaint in March 2005.[4] It argues that because a delay of this length was found unreasonable as a matter of law as to U.S. Fire, it should also be held unreasonable here.

Travelers and Trataros advance several contentions for a different result in this case. Principally, they argue that New Jersey law, not New York law, should govern interpretation of the Harleysville Policy. Because New Jersey requires an insurer to show prejudice before it can avoid coverage due to a delay in providing notice of a claim, they argue that the U.S. Fire Opinion does not control here.

DISCUSSION

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state." International Business Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). Under New York's choice-of-law rules, "the first step" is to determine

---

[4] This prior action was discontinued without prejudice on October 7, 2005 by the Honorable Harold Baer, the judge to whom it was assigned, to permit the parties to pursue voluntary mediation. After the mediation collapsed, the litigation was refiled and reassigned to this Court. See Travelers, 2008 WL 2567784, at *5 n.7.

6

"whether there is an actual conflict between the laws invoked by the parties." Booking v. General Star Management Co., 254 F.3d 414, 419 (2d Cir. 2001) (citation omitted).

In this case, there is a conflict between the laws of the two jurisdictions regarding delay in giving notice of a claim. "Under New York law, it is well-established that a liability insurer may generally disclaim coverage on the basis of defective notice regardless of whether the insurer was prejudiced by the defect ('the no-prejudice rule')." Id. at 420. Under New Jersey law, however, the insurer must demonstrate prejudice in order to disclaim coverage on the basis of late notice. See Polarome Mfg. Co., Inc. v. Commerce & Industry Ins. Co., 708 A.2d 450, 454 (N.J. Super. Ct. App. Div. 1998) (noting "the conflict between New York law which requires timely notice of a claim to the insurer and New Jersey law which requires the insurer to show prejudice if the notice is late"); Solvents Recovery Serv. v. Midland Ins. Co., 526 A.2d 1112, 1114 (N.J. Super. Ct. App. Div. 1987) (New Jersey law requires insurer to show "appreciable prejudice" for late notice of claim defense). As such, this case presents an actual conflict. See Booking, 254 F.3d at 421 (finding conflict between New York and Texas laws regarding notice defects).

Because there is a conflict, this Court "must apply the New York choice of law rules that govern disputes as to the interpretation of insurance contracts." Id. at 422. The Second Circuit has set forth those rules as follows:

7

> New York applies a grouping of contacts theory to contract
> claims, looking to a spectrum of significant contacts --
> rather than a single possibly fortuitous event.  The
> purpose of grouping contacts is to establish which State
> has the most significant relationship to the transaction
> and the parties.  Along with the traditionally
> determinative choice of law factor of the place of
> contracting, the New York Court of Appeals has endorsed
> the following factors (identified in the Restatement): the
> places of negotiation and performance; the location of the
> subject matter; and the domicile or place of business of
> the contracting parties.

Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 151-52 (2d Cir. 2008) (citation omitted).  Additionally, "New York further recognizes that sometimes the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered.  In such cases, a court may properly consider State interests to determine whether to apply New York law."  Id. at 152.

As for insurance contracts in particular, "New York recognizes the precept that a court should apply the local law of the state which the parties understood was to be the principal location of the insured risk unless with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties."  Schwartz v. Liberty Mut. Ins. Co., 539 F.3d at 152 (citation omitted).  "However, [i]t is commonplace for courts applying New York choice-of-law rules to disregard (or at least discount) the location of the insured risk when the risk is located in two or more states."  Id. (citation omitted).  Thus, the Second Circuit has endorsed a district court's decision to "disregard[] the

8

location of the insured risk because the risks covered by the insurance policies were not confined to any one principal location," and to look instead to the other choice of law factors such as "the location of negotiations, underwriting, issuance, execution, and delivery of the insurance policies and the location of the insurer, the insured, and its insurance broker" to determine which state "had the most significant contacts with the dispute." Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 153 (2d Cir. 2003) (citation omitted). See also Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 35 (1st Dep't 2006) ("[W]here it is necessary to determine the law governing a liability insurance policy covering risks in multiple states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk.").

Applying these rules, the court in Booking found that Texas law, and not New York law, applied to an insurance contract where "the policy was negotiated in Texas, the place of contracting was Texas, . . . the parties to the policy are domiciled in Texas and Connecticut," and "[t]here [wa]s no evidence in the record tending to suggest that the contracting parties ever contemplated performance of [the policy] in New York, or otherwise reasonably foresaw that New York law could apply here." Booking, 254 F.3d at 422-23 (citation omitted).

9

An examination of these New York choice-of-law factors leads to the conclusion that New Jersey law has the most significant contacts with the dispute over the Harleysville Policy. Under the Harleysville Policy's "Schedule of Locations," only the address for Bartec's principal place of business in New Jersey is listed. The policy specifies that both the property coverage and comprehensive business liability coverage apply to that particular location.

Furthermore, there is no specific reference in the policy to either the Project or Trataros. "Coverage [t]erritory" in the business liability section of the policy is defined as the United States, Canada, and Puerto Rico. Additionally, the provision of the policy through which Travelers and Trataros claim coverage, the Additional Insured Endorsement for Construction Contracts, states that an additional insured under this policy is "<u>any</u> general contractor, subcontractor, or owner who [Bartec is] required to add as an additional insured" pursuant to another contract. (Emphasis supplied). These provisions show that the parties to the contract considered the principal location of the insured risk to be either New Jersey or nationwide.

Additionally, other factors in the choice-of-law analysis point toward finding that New Jersey law applies to this contract: both contracting parties are New Jersey corporations with principal places of business in New Jersey, and the policy notes that Bartec's insurance agent is "Wharton/Atlantic," for which a New Jersey telephone number is provided. The policy also contains numerous New

Jersey-specific additions, pertaining to, inter alia, the terms involving cancellation and renewal of the policy, changes to the terms of the business liability coverage, and earthquake insurance. Indeed, with respect to that portion of the Harleysville Policy that provides property coverage, the entire risk is necessarily confined to New Jersey. The only factor weighing in favor of finding that New York should apply to the interpretation of this contract is the fact that most of the events in the underlying dispute, relating to flooring problems with the Project, took place in New York. Thus, an analysis of the New York choice-of-law factors demonstrates that New Jersey has the most significant contacts with this insurance contract.

Consideration of the public policies which underlie the decisions in New York and New Jersey to reject or to adopt a "no prejudice" rule does not alter the conclusion that New Jersey supplies the rule of decision here. New York's rule "protects the carrier against fraud or collusion; gives the carrier an opportunity to investigate claims while evidence is fresh; allows the carrier to make an early estimate of potential exposure and establish adequate reserves and gives the carrier an opportunity to exercise early control of claims, which aids settlement." Argo Corp. v. Greater New York Mut. Ins. Co., 4 N.Y.3d 332, 339 (N.Y. 2005) (citation omitted). New Jersey, on the other hand, has enacted a rule to protect insureds. See Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 206 (N.J. 1998) ("The reason for the New Jersey rule is to

11

protect the interests of policyholders because insurance contracts are contracts of adhesion and policyholders should not lose the benefits of coverage unless the delay has prejudiced the insurance company."). Each policy reflects a considered decision regarding competing interests, and therefore, should not tip the balance when consideration of the other traditional factors supplies sufficient guidance. Furthermore, there is no unfairness or surprise in applying New Jersey's pro-insured rule to this policy. In addition to the fact that the insured and the insurance agent were located in New Jersey, the many New Jersey-specific endorsements contained in the policy indicate that Harleysville expected New Jersey law to supply the rules of decision for disputes over the policy.

Harleysville relies on Worth Const. Co. Inc. v. Admiral Ins. Co., 836 N.Y.S.2d 155, 156 (1st Dep't 2007), rev'd on other grounds, Worth Const. Co., Inc. v. Admiral Ins. Co., 10 N.Y.3d 411 (N.Y. 2008), for its contention that New York law should apply. In Worth, the insurance policy was issued to a New Jersey subcontractor and covered the Connecticut general contractor as an additional insured "for liability arising out of" a specifically identified New York construction project. Id. In addressing the issue of what law should apply to the notice provision in the policy, the court found that "the motion court correctly found the center of gravity to be in New York, where the subject construction site was located and the underlying personal injury action is being litigated, not New

12

Jersey," where the policy was issued. Id. (citing Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 225-26 (N.Y. 1993)).

Worth is entirely distinguishable. In the instant case, the policy at issue's coverage territory is nationwide, and is not specific to just the site of the Project. Additionally, Worth relies on Stolarz, 81 N.Y.2d at 225-28, whose analysis supports the conclusion that New Jersey law applies in this case.

Because New Jersey law applies to this contract, Harleysville is required to prove that it was prejudiced by Travelers' and Trataros' delayed notice. Having offered no evidence of prejudice, Harleysville's motion for summary judgment is denied.

CONCLUSION

Harleysville's August 8, 2008 motion for summary judgment is denied.

SO ORDERED:

Dated: New York, New York
November 5, 2008

*[signature]*
DENISE COTE
United States District Judge