UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY,

        Plaintiff,

- against -

DORMITORY AUTHORITY – STATE OF NEW YORK, TDX CONSTRUCTION CORP., and KOHN PEDERSEN FOX ASSOCIATES, P.C.,

        Defendants.

AND THIRD AND FOURTH PARTY ACTIONS.

---

Case No. 07 Civ. 6915 (DLC)

**AFFIDAVIT OF STEPHAN A. BOIKO IN OPPOSITION TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT**

---

STATE OF NEW YORK   )
                               : ss.:
COUNTY OF ALBANY    )

STEPHAN A. BOIKO, being duly sworn, deposes and says:

1.     I am the Assistant General Counsel of the Dormitory Authority of the State of New York ("DASNY"), and I submit this affidavit in opposition to Travelers Casualty and Surety Company's ("Travelers") motion for summary judgment. I am fully familiar with the facts set forth below.

2.     In my capacity as Assistant General Counsel of DASNY, I provided legal counsel in connection with the negotiation of claim settlements with various contractors and subcontractors that performed work at Baruch College – Site B project (the "Project").

3.     DASNY entered into two contracts with Trataros for construction work on the Project, which were generally referred to as Contract 15 and Contract 16 (the "Trataros

Contracts"). Travelers Casualty and Surety Company ("Travelers") provided Labor and Material Payment Bonds (the "Payment Bonds") for the Trataros Contracts.

4. Both Contract 15 and Contract 16 incorporated by reference the Project's General Conditions, a true and accurate copy of which is annexed hereto as **Exhibit 1**. In Article 5 of the General Conditions, Trataros agreed to "provide full-time competent supervision for the duration of the Contract" (see ¶ 5.01(A)), and represented and warranted that it was "financially solvent." See ¶ 5.02(A).

5. Trataros performed substantially all of its work in the field through specialty trade subcontractors. A significant number of those subcontractors claimed that they incurred additional costs in performing their respective scopes of work and demanded payment from Trataros for both base contract and alleged change order work. Trataros failed or refused to pay certain subcontractors for base contract and alleged change order work. Many of those subcontractors asserted claims against Travelers under the Payment Bonds.

6. In addition to submitting claims under the Payment Bonds to Travelers, a significant number of Trataros' subcontractors, including LBL Skysystems Corporation ("LBL"), Universal Services Group, Ltd. ("Universal"), and R & J Construction Corporation ("R&J") filed notices of mechanic's liens on the account of a public improvement, serving these notices on Trataros as well as DASNY pursuant to the public lien law.

7. Pursuant to the New York Lien Law, DASNY was required to withhold from Trataros payments in the amount equal to the amount of the various liens until the liens were removed.

8. Ultimately, LBL, Universal and R & J commenced separate actions in the Supreme Court of the State of New York (collectively referred to as the "Subcontractor

2

Lawsuits") seeking, *inter alia*, (1) recovery under the mechanic's lien statute from DASNY, (2) breach of contract damages from Trataros, and (3) recovery under the Payment Bonds from Travelers. As required by the Lien Law, LBL, Universal and R & J named subcontractors to Trataros who had filed notices of lien as defendants. Most of those subcontractors asserted independent mechanic's lien and bond claims in the Subcontractor Lawsuits. A true and correct copy of the complaint filed by LBL is attached hereto as **Exhibit 2**. A true and correct copy of the complaint filed by Universal is attached hereto as **Exhibit 3**. A true and correct copy of the complaint filed by R & J is attached hereto as **Exhibit 4**.

9. From 2002 to 2005, DASNY engaged in settlement negotiations with Trataros; Travelers; various subcontractors, including those that had filed mechanics lien claims; and other defendants in the mechanic's lien claims. These negotiations included a settlement process that was ordered by the Hon. Charles Ramos, who directed Travelers and Trataros to meet with the subcontractors in an effort to resolve all outstanding disputes in the Subcontractor Lawsuits.

10. DASNY participated in several meetings with Trataros, Travelers and Trataros' subcontractors during the settlement negotiations. DASNY understood that Trataros and Travelers were represented by independent representatives during those meetings and all other aspects of the settlement negotiation process.

11. DASNY executed several bilateral change orders with Trataros as a result of the settlement negotiations described above. DASNY made payments to Trataros as set forth in these change orders with the understanding that Trataros would make agreed upon payments to the appropriate subcontractors. DASNY understood that Travelers participated in these change order negotiations in its capacity as a defendant in the Subcontractor Lawsuits and as Payment Bond surety.

3

12. Under Contract 15, DASNY executed change orders with Trataros to settle claims of Trataros' subcontractors Component Assembly Systems, Inc. ("Component"), R & J, and Ace Elevator Co., Inc. ("Ace"). Each change order contains language reserving DASNY's rights under the Contract, and states that "DASNY further reserves its right to independently assess and allocate responsibility for delay to the Contract." In connection with each of these change orders, Travelers provided the required consent of surety after agreeing to the terms that had been negotiated among DASNY, Trataros and the applicable subcontractor. True and correct copies of the change orders and consents of surety concerning the settlements of the Component, R & J, and Ace claims are attached hereto as **Exhibit 5**, **Exhibit 6**, and **Exhibit 7**, respectively.

13. Under Contract 16, DASNY executed change orders with Trataros to settle claims of Trataros' subcontractors AMMFE, Inc. a/k/a Pansini Stone Setting, Inc. ("Pansini"), Klepp Wood Flooring Corp. ("Klepp"), DAG Floors, Inc. (DAG), Stretchwall Installations, Inc. ("Stretchwall"), L&L Painting, Inc. ("L&L"), Mometal, Inc. ("Mometal"), and Shroid Construction, Inc. ("Shroid"). Each change order contains language reserving DASNY's rights under the Contract, and states that "DASNY further reserves its right to independently assess and allocate responsibility for delay to the Contract." In connection with each of these change orders, Travelers provided the required consent of surety after agreeing to the terms that had been negotiated among DASNY, Trataros and the applicable subcontractor. True and correct copies of the change orders and consents of surety concerning the settlements of the Pansini, Klepp, DAG, Stretchwall, L&L, Mometal and Shroid claims are attached hereto as **Exhibit 8**, **Exhibit 9**, **Exhibit 10**, **Exhibit 11**, **Exhibit 12**, **Exhibit 13**, and **Exhibit 14**, respectively.

14. In or about the Spring of 2003, DASNY, Travelers, and Trataros had negotiated a settlement with G.M. Crocetti ("Crocetti"), a Trataros flooring subcontractor and claimant in the

above-captioned litigation. This settlement was to be partially funded by DASNY. However, by the late Summer of 2003, DASNY had learned that there were potential widespread problems with the epoxy terrazzo flooring installed by Crocetti on the Project. Specifically, large portions of the epoxy terrazzo flooring appeared to be delaminating from the substrate below.

15. Section 19.01 of the General Conditions incorporated into Trataros' Contract 16 provides in relevant part:

> The Contractor shall in all respects guarantee the Work to the owner and be responsible for all material, equipment and workmanship of the Work. The Contractor shall forthwith repair, replace or remedy in a manner approved by the Owner, any said material, equipment, workmanship, or other part of the Work found by the Owner to be defective or otherwise faulty and not acceptable to the Owner, which defect or fault appears during the minimum period of one (1) year, or such longer period as may be prescribed by the Contract, from the date of Construction Completion or any part thereof, by the Owner.

See Exhibit 1, ¶ 19.01.

16. After the epoxy terrazzo failure was identified, it became clear to me and others from DASNY that it would be inappropriate to pay Trataros or Crocetti any additional funds until the epoxy terrazzo failure was corrected.

17. On or about October 1, 2003, I attended a meeting to discuss the settlement of claims relating to the Project. Athena Curis, George Curis, Nick Seminara, and John Scarpellino were at the meeting, together with myself and several other representatives of DASNY, including Douglas Van Vleck and Charles Bartlett. At the time, it was the understanding of myself and the other DASNY representatives at the meeting that Athena Curis and George Curis were employees of Trataros, and that they were attending the meeting as representatives of Trataros. It was our understanding that Mr. Seminara and Mr. Scarpellino were employees of Travelers, and that they were attending the meeting as representatives of Travelers.

18. At the October 1, 2003 meeting, representatives from DASNY raised the issue of the defective epoxy terrazzo flooring and advised Trataros and Travelers that DASNY could not reach a final settlement with Trataros until the flooring issue was appropriately corrected. At this time, DASNY believed Trataros was still functioning as a business and was capable of performing the supervisory duties that were needed to oversee Crocetti's completion and/or correction of the terrazzo flooring work.

19. Nick Seminara, Travelers' senior representative during the October 1, 2003 meeting, objected to DASNY's decision to withhold money from Trataros because this decision could delay Travelers' ability to close out the remaining payment bond claims, including Crocetti's claim. Mr. Seminara also stated his belief that the use of certain cleaning products might be causing the problems with the terrazzo floors. DASNY disagreed with Mr. Seminara's view of the problem and insisted that Trataros and Crocetti remediate the epoxy terrazzo flooring delamination.

20. No representative of Trataros or Travelers advised DASNY during the October 1, 2003 meeting or any other time that Trataros had discharged all of its employees, turned over all of its records to Travelers' custody, and discarded all documents and computers with information relating to the Baruch Project that had not been taken into Travelers' custody.

21. The payments for each of the change orders referenced in paragraphs 12 and 13 above (with the exception of the R & J change order) were made by DASNY to Trataros, with the last such payment being made on or about June 1, 2004. The R & J change order was paid by DASNY to Travelers on or about April 15, 2005.

22. Since the commencement of the current litigation, I have had the opportunity to review documents produced by other parties to the litigation as well as deposition transcripts including but not limited to the deposition transcripts of John Scarpellino and Athena Curis.

23. Through its review of sworn testimony and documents obtained through discovery in this case or other litigations involving Baruch College, DASNY has learned the following:

- In June 2002, Travelers and Trataros entered into an Interim Financing Agreement.

- In June 2002, Travelers and Trataros entered set up a joint account that appeared to third-party contract owners and vendors to be that of Trataros. In fact, it appears that Travelers had absolute control of all of Trataros' assets, including funds that were deposited in the joint account.

- Trataros went out of business sometime in late 2002 or early 2003 and closed its doors in the spring of 2003.

- In or about the Spring of 2003, Travelers sent a consultant to go to Trataros' warehouse and pick up all documents that Trataros had in its possession. After Travelers' consultant took custody of the records it desired, Trataros discarded the records that remained in a trash dumpster. After this point, Trataros apparently did not possess any records from the Project.

- Travelers had discharged all of its employees during or before the Fall of 2003, including George Curis and Athena Curis.

24. If DASNY had known that Trataros had (1) become financially insolvent in contravention of the express requirements the Trataros Contracts, (2) discharged all of its employees and was relying on Travelers and Travelers' independent consultants to administer the Trataros Contracts, and (3) improperly, and without notice to DASNY, abandoned its duties on the Project by releasing all of its records to Travelers, DASNY would have defaulted/terminated Trataros and made a demand under the Performance Bonds that Travelers furnished under Contract 15 and Contract 16.

7

25. Instead, Trataros and Travelers did not disclose the status of Trataros' business operation and the true nature of the relationship that Travelers had in taking over Trataros' contractual obligations concerning the Project without an appropriate takeover agreement.

26. Since the awarding of Contracts 15 and 16 to Trataros in 1998, DASNY has never received any notification that Trataros had sought bankruptcy protection or that an involuntary bankruptcy petition had been filed against Trataros.

27. It is my understanding that pursuant to the financing agreement between Travelers and Trataros, Trataros pledged all of its assets (as well as substantial assets of Trataros' individual principals) to Travelers. Accordingly, upon information and belief, if DASNY obtains a judgment against Trataros in connection with the defective terrazzo flooring, Trataros has no assets to satisfy such a judgment.

_____
STEPHAN A. BOIKO

Sworn to before me this
19th day of March, 2010

_____
Notary Public

KELLY A. WHITBECK
Notary Public, State of New York
No. 01WH6068431
Qualified in Albany County
Commission Expires December 31, 20_13_

# 9267363_v3