# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as Administrator for RELIANCE INSURANCE COMPANY, | Case No. 07-CV-6915 (DLC) |
| Plaintiff, | Consolidated with:<br>Case No. 08-CV-6239 (DLC) |
| vs. | **ECF CASE** |
| DORMITORY AUTHORITY - STATE OF NEW YORK, TDX CONSTRUCTION CORP., and KOHN PEDERSEN FOX ASSOCIATES, P.C., | |
| Defendants. | |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK and TDX CONSTRUCTION CORP., | |
| Third-Party Plaintiffs, | **AFFIDAVIT OF<br>ELI J. ROGERS IN<br>IN SUPPORT OF TRAVELERS<br>CASUALTY AND SURETY<br>COMPANY'S MOTIONS IN LIMINE** |
| vs. | |
| TRATAROS CONSTRUCTION, INC., | |
| Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC. and TRAVELERS CASUALTY AND SURETY COMPANY, | |
| Fourth-Party Plaintiffs, | |
| vs. | |
| CAROLINA CASUALTY INSURANCE COMPANY, BARTEC INDUSTRIES INC.; DAYTON SUPERIOR SPECIALTY CHEMICAL CORP. a/k/a DAYTON SUPERIOR CORPORATION; SPECIALTY CONSTRUCTION BRANDS, INC. t/a TEC; KEMPER CASUALTY INSURANCE COMPANY d/b/a KEMPER INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; UNITED STATES FIRE INSURANCE COMPANY; NORTH AMERICAN SPECIALTY INSURANCE COMPANY; ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. f/k/a COMMERCIAL UNDERWRITERS INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY d/b/a ZURICH INSURANCE | |

COMPANY; ASSURANCE COMPANY OF
AMERICA; OHIO CASUALTY INSURANCE
COMPANY d/b/a OHIO CASUALTY GROUP;
HARLEYSVILLE MUTUAL INSURANCE
COMPANY (a/k/a HARLEYSVILLE INSURANCE
COMPANY,); JOHN DOES 1-20 and XYZ CORPS.
1-19,

                          Fourth-Party Defendants.

KOHN PEDERSEN FOX ASSOCIATES, P.C.,

                          Third-Party Plaintiff,

               vs.

WEIDLINGER ASSOCIATES CONSULTING
ENGINEERS, P.C., CASTRO-BLANCO
PISCIONERI AND ASSOCIATES, ARCHITECTS,
P.C., ARQUITECTONICA NEW YORK, P.C.,
COSENTINI ASSOCIATES, INC., CERMAK,
PETERKA PETERSEN, INC., JORDAN PANEL
SYSTEMS CORP., TRATAROS CONSTRUCTION,
INC. and LBL SKYSYSTEMS (U.S.A.), INC.,

                          Third-Party Defendants.

**ELI J. ROGERS,** of full age and under penalty of perjury, pursuant to 28 U.S.C. § 1746 and Local Civil Rule 1.10, declares as follows:

1.     I am associated with the law firm of Dreifuss Bonacci & Parker, LLP, counsel for Travelers Casualty and Surety Company ("Travelers") and Trataros Construction, Inc. ("Trataros") in this action.  I make this Affidavit in support of Travelers' Motions In Limine against Defendant, Dormitory Authority – State of New York ("DASNY").

2.     It is alleged in Travelers' Complaint and Jury Demand, attached hereto as **Exhibit 1**, that this action arises from the construction of a 785,000 square-foot vertical campus for Baruch College which is part of the City University of New York ("CUNY") and that the building consists of fourteen above-ground stories which principally housed academic classrooms and offices, and three below-ground stories, which include an athletic complex and

2

performing arts center. Most of those facts are also included in this Court's opinion annexed hereto as Exhibit 10, at pages 4, 10 and 11.

3.      The Complaint and Jury Demand, attached hereto as **Exhibit 1**, reflects that Travelers commenced the within action against DASNY, TDX Construction Corp. ("TDX") and Kohn Pederson Fox Associates, P.C. ("KPF") on or about August 1, 2007, by filing its Complaint and Jury Demand with the United States District Court for the Southern District of New York.

4.      DASNY's and TDX's responsive pleading, attached hereto as **Exhibit 2**, indicates that it was filed on or about September 28, 2007, asserting Counterclaims arising from alleged breaches of the Payment and Performance Bonds issued to Trataros in connection with the Project and administered by Travelers.

5.      DASNY's and TDX's Third-Party Complaint, attached hereto as **Exhibit 3**, indicates that on or about September 28, 2007, DASNY and TDX filed a Third-Party Complaint, impleading Trataros into this action, which sets forth two causes of action for breach of contract.

6.      The second page of the excerpted portion of Contract 15, attached hereto as **Exhibit 4**, indicates that on or about April 22, 1998, DASNY and Trataros entered into Contract 15 for the fixed sum of $50,222,000.00.

7.      The "Performance Bond" and "Labor and Material's Payment Bond" for Contract 15, copies of which are attached hereto as **Exhibits 5** and **6**, respectively, indicate that Trataros obtained two surety bonds from Reliance Insurance Company in connection with Contract 15, each carrying a penal sum of $50,222,000.00 with Trataros as principal and DASNY as obligee.

8.    The second page of the excerpted portion of Contract 16, attached hereto as **Exhibit 7**, indicates that on or about September 16, 1998, DASNY and Trataros entered into Contract 16 for the fixed sum of $24,140,000.00.

9.    The "Performance Bond" and "Labor and Material's Payment Bond" for Contract 16, attached hereto as **Exhibits 8** and **9**, respectively, indicate that Trataros obtained two surety bonds from Reliance Insurance Company in connection with Contract 16, each carrying a penal sum of $24,140,000.00 with Trataros as principal and DASNY as obligee.

10.    According to pages 9-11 of Judge Cote's Decision and Opinion, the entirety of which was filed August 26, 2010 and which is attached hereto as **Exhibit 10**, Contract 15 was originally scheduled to be completed by September 1, 2000 and Contract 16 was originally scheduled to be completed November 1, 2000.  It is further indicated therein that, in or about July 2001, DASNY received a temporary certificate of occupancy ("TCO") for the above-ground floors of the Project and that in or about late August 2001, the above-ground floors opened for use.  Further, the opinion states that on or about February 1, 2002, DASNY received a TCO for the three basement levels of the Project.

11.    Page 1 of the subcontracts executed by AMMFE, Inc.(Pansini Stone Corp.); Klepp Flooring; D.A.G. Floors, Inc.; A.C.E. Elevator Co., Inc.; R&J Construction Corporation; Stretchwall Installations, Inc.; Component Assembly Systems, Inc.; L&L Painting Co., Inc.; Mometal, Inc., and Shroid Construction, Inc. (the "Delay Claim Subcontractors"), attached hereto as **Exhibits 11** through **20**, respectively, indicates that Trataros entered into subcontract agreements with the Delay Claim Subcontractors in furtherance of Contracts 15 and 16, all of which expressly provided that the Contract Documents "are made a part of this subcontract."

4

12.     Page 6 of the subcontracts executed by the Delay Claim Subcontractors, attached hereto as **Exhibits 11** through **20**, provide that "the List of Contract Documents included the Contract between Trataros and DASNY."

13.     The excerpted portions from Contracts 15 and 16, attached hereto as **Exhibit 21**, states:

> No claims for increased costs, charges, expenses or damages of any kind shall be made by the Contractor against the Owner for any delays or hindrances from any cause whatsoever; provided that the Owner, in the Owner's discretion, may compensate the Contractor for any said delays by extending the time for completion of the Work as specified in the Contract.

14.     Pages 2 to 3 of the subcontracts executed by the Delay Claim Subcontractors, attached hereto as **Exhibits 11** through **20** state:

> Time Performance
>
> a.     Subcontractor will proceed with the Work… in accordance with the Contractor's schedule, **as reasonably amended from time to time**… Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement.
>
> b.     If requested by Contractor, Subcontractor Shall [sic] submit a detailed schedule for performance of the Subcontract… Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.
>
> c.     Subcontractor will coordinate its work with the work of Contractor, other subcontractor's and Owner's other builders, if any, so no delays or interference will occur in any part or all of the Project.
>
> d.     Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the Contractor, other subcontractors, or the Contractor's suppliers, or delayed impacted or disrupted by any acts or causes which would entitle Contractor to an extension of time under time for the performance of this Subcontract, but shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays impacts, disruptions, or acceleration resulting therefrom **unless the**

5

**Owner is liable and pays Contractor** for such delays, impacts, disruptions, or acceleration."

[Emphasis added]

15.     Page 17 of the subcontracts executed by the Delay Claim Subcontractors, attached hereto as **Exhibits 11** through **20**, state:

EXHIBIT B, SCOPE OF WORK

…

D.      TIME OF PERFORMANCE

     This Subcontractor understands the Project schedule and phasing plan provide[d] by owner… This subcontractor agrees that the following specific scheduling intervals [sic] shall be maintained by him and coordinated with other trades provided that the work of others has advanced sufficiently to permit the sequencing as called for:

    1.      Work under this Subcontract shall commence <u>immediately *upon receipt of instructions from the General Contractor* and shall proceed **when and where directed,**</u> with sufficient labor and manpower, to allow the entire Project to be completed in accordance with the Project Construction Schedule. The work under this <u>Subcontract shall follow all interim schedules</u> that may be issued by the General Contractor, <u>as the job conditions require.</u>

    …

    3.      The Subcontractor understands that <u>work of this trade may not be continuous</u> and that <u>he may be required to work out of sequence and/or leave a portion of work out due to coordination at the direction of the General Contractor</u>. **There shall be no charges for "comeback time" or out of sequence work.**

    4.      The Subcontractor shall be prepared to commence his work **<u>as directed by General Contractor</u>** <u>provided that the work of others has advanced sufficiently to permit such a start</u> and shall be capable of completing his work in accordance with the Project Construction Schedule. [emphasis added]

16.     Attached hereto as **Exhibit 22** is pages 365 to 367 of the Charles Bartlett deposition transcript ("Bartlett Deposition"), where he identified Change Order GC2-147 ("GC2-147"), attached hereto as **Exhibit 22A**, which indicates that it was executed between DASNY and Trataros relative to Pansini Stone's claim for delays.  Attached hereto as **Exhibit 22B** is another copy of GC2-147, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

17.     Attached hereto as **Exhibit 23** is page 400 of the Bartlett Deposition, where he identified Change Order GC2-192 ("GC2-192"), attached hereto as **Exhibit 23A**, which indicates that it was executed between DASNY and Trataros relative to Klepp Wood Flooring's claim for delays.  Attached hereto as **Exhibit 23B** is another copy of GC2-192, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

18.     Attached hereto as **Exhibit 24** is pages 405 to 406 of the Bartlett Deposition, where he identified Change Order GC2-201 ("GC2-201"), attached hereto as **Exhibit 24A**, which indicates that it was executed between DASNY and Trataros relative to DAG Floor's claim for delays.  Attached hereto as **Exhibit 24B** is another copy of GC2-201, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

19.     Attached hereto as **Exhibit 25** is page 408 of the Bartlett Deposition, where he identified Change Order GC1-166 ("GC1-166"), attached hereto as **Exhibit 25A**, which indicates that it was executed between DASNY and Trataros relative to A.C.E. Elevator's claim for delays.  Attached hereto as **Exhibit 25B** is another copy of GC1-166, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

20.     Attached hereto as **Exhibit 26** is page 424 of the Bartlett Deposition, where he identified Change Order GC1-165 ("GC1-165"), attached hereto as **Exhibit 26A**, which

indicates that it was executed between DASNY and Trataros relative to R&J Construction's claim for delays. Attached hereto as **Exhibit 26B** is another copy of GC1-165, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

21.     Attached hereto as **Exhibit 27** are pages 425 to 426 of the Bartlett Deposition, where he identified Change Order GC2-208 ("GC2-208"), attached hereto as **Exhibit 27A**, which indicates that it was executed between DASNY and Trataros relative to Stretchwall Installation's claim for delays. Attached hereto as **Exhibit 27B** is another copy of GC2-208, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

22.     Attached hereto as **Exhibit 28** is page 439 of the Bartlett Deposition, where he identified Change Order GC1-164 ("GC1-164"), attached hereto as **Exhibit 28A**, which indicates that it was executed between DASNY and Trataros relative to Component Assembly System's claim for delays. Attached hereto as **Exhibit 28B** is another copy of GC1-164, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

23.     Attached hereto as **Exhibit 29** is page 443 of the Bartlett Deposition, where he identified Change Order GC2-210 ("GC2-210"), attached hereto as **Exhibit 29A**, which indicates that it was executed between DASNY and Trataros relative to L&L Painting's claim for delays. Attached hereto as **Exhibit 29B** is another copy of GC2-210, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

24.     Attached hereto as **Exhibit 30** are pages 449 to 450 of the Bartlett Deposition, where he identified Change Order GC2-211 ("GC2-211"), attached hereto as **Exhibit 30A**, which indicates that it was executed between DASNY and Trataros relative to Mometal's claim

for delays.  Attached hereto as **Exhibit 30B** is another copy of GC2-211, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

25.    Attached hereto as **Exhibit 31** are pages 456 to 458 of the Bartlett Deposition, where he identified Change Order GC2-212 ("GC2-212"), attached hereto as **Exhibit 31A**, which indicates that it was executed between DASNY and Trataros relative to Shroid Construction's claim for delays.  Attached hereto as **Exhibit 31B** is another copy of GC2-212, which is also signed by DASNY and which was not provided by DASNY until after Mr. Bartlett's deposition.

26.    As set forth in the checks issued by Travelers and Trataros to the Delay Claim Subcontractors, attached hereto as **Exhibit 32**, after DASNY paid the funds for the Delay Claims to Trataros, it paid the Delay Claim Subcontractors

27.    Attached hereto as **Exhibit 33** are the releases which indicate that they were executed by the subcontractors in question.

28.    As set forth on pages 46 and 61 of Judge Cote's Decision and Opinion, filed August 26, 2010, attached hereto as **Exhibit 10**, the Court has previously ruled that the delay claims of Trataros' subcontractors are unrecoverable either due to a lack of privity between the subcontractors and the owner, or due to the "no damages for delay" provisions in Contracts 15 and 16, as well as various other provisions of the subcontracts themselves.

29.    As set forth on pages 67-68 of this Court's Opinion (annexed hereto as Exhibit 10), this Court held that "[i]nsofar as the Subcontractors' rights of recovery under the Pass-Through Claims necessarily rely upon Trataros' rights under Contracts 15 and 16, DASNY is entitled to assert the no-damages-for-delay clause of those Contracts against Travelers, the Subcontractors, or whoever else might be standing in Trataros' shoes."

30.     As set fort on pages 67 and 68 of Judge Cote's Decision and Opinion, filed August 26, 2010, attached hereto as **Exhibit 10**, this Court has found that the exculpatory provisions were not waived by DASNY.

31.     The lien bonds attached hereto as Exhibit 34, indicate that Travelers bonded mechanics liens off, thereby discharging DASNY's potential liability.

32.     Annexed hereto as Exhibit 35 is an excerpt from the deposition transcript of Athena Curis, previously of Trataros, in which she testified that Trataros was no longer in business by March 7, 2003.

33.     Annexed hereto as Exhibit 36 is a copy of the Counterclaim of DASNY filed in the action before Judge Baer. It indicates that it was filed on August 2, 2004. I am not aware, from any of the documents produced, of DASNY asserting a Payment Bond claim as against Travelers in connection with the project in question prior thereto.

34.     Annexed hereto as Exhibit 37 is a copy of pages 699-702 of the deposition transcript of Mark Anderson, one of DASNY's experts, taken on August 6, 2009.

35.     Annexed hereto as Exhibit 38 are what has been produced as the Certificates of Occupancy for the basement floors dated February 1, 2002.


Dated: Florham Park, New Jersey
       January 11, 2011

                                              Eli J. Rogers (ER-6564)

Sworn to and subscribed
before me this _11th_ day
of January, 2011.

Notary Public

MARIA ESPOSITO
Notary Public of New Jersey
I.D.# 2247678
Commission Expires 8/23/2012