## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY, *et al*., | Case No. 07-CV-6915 (DLC) |
| Plaintiff, | |
| vs. | Consolidated with: Case No. 08-CV-6239 (DLC) |
| DORMITORY AUTHORITY - STATE OF NEW YORK, *et al*., | |
| Defendants. | **ECF CASE** |
| DORMITORY AUTHORITY OF THE STATE OF NEW YORK, *et al*., | |
| Third-Party Plaintiffs, | |
| vs. | |
| TRATAROS CONSTRUCTION, INC., | |
| Third-Party Defendant. | |
| TRATAROS CONSTRUCTION, INC., *et al*., | |
| Fourth-Party Plaintiffs, | |
| vs. | |
| CAROLINA CASUALTY INSURANCE COMPANY, *et al*., | |
| Fourth-Party Defendants. | |

## BRIEF IN SUPPORT OF TRAVELERS CASUALTY AND SURETY COMPANY'S MOTIONS IN LIMINE

**Of Counsel**
JoAnne M. Bonacci, Esq.

**On the Brief**
JoAnne M. Bonacci, Esq.
David C. Dreifuss, Esq.
**DREIFUSS BONACCI & PARKER, LLP**
Five Penn Plaza, 23rd Floor
New York, New York 10001
    -and-
26 Columbia Turnpike, North Entrance
Florham Park, New Jersey 07932
Tel. No.  (973) 514-1414
*Attorneys for Trataros Construction, Inc.*
*and Travelers Casualty and Surety Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL HISTORY .................................................................................. 3

STATEMENT OF FACTS ................................................................................... 5

LEGAL ARGUMENT ........................................................................................ 10

    **POINT I**
        DASNY'S CLAIMS UNDER THE PAYMENT BOND SHOULD BE
        BARRED AS THOSE CLAIMS WERE RELEASED BY TRATAROS'
        SUBCONTRACTORS ............................................................................... 10

    **POINT II**
        DASNY SHOULD BE BARRED FROM INTRODUCING ANY
        EVIDENCE AS TO ANY CLAIMS ON THE PAYMENT BONDS AS
        THOSE CLAIMS ARE IN EFFECT SEEKING DELAY DAMAGES
        WHICH THE COURT HAS PREVIOUSLY DENIED AND/OR,
        IN ANY EVENT, DASNY HAD NO OBLIGATION TO PAY THEM ......... 12

    **POINT III**
        DASNY'S CLAIMS UNDER THE PAYMENT BOND ARE TIME BARRED
        AS A MATTER OF LAW ......................................................................... 15

    **POINT IV**
        THE PAYMENT BONDS AT ISSUE DO NOT COVER DELAY
        CLAIMS .................................................................................................. 17

    **POINT V**
        SINCE DASNY ISSUED CHANGE ORDERS REVISING TRATAROS'
        CONTRACT RELATIVE TO THE DELAY CLAIMS OF TRATAROS'
        SUBCONTRACTORS, DASNY CANNOT SEEK TO RECOVER THE
        FUNDS FROM TRATAROS' SURETY. ................................................ 19

CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>A.C. Legnetto Const., Inc. v. Hartford Fire Ins. Co.</u>, 92 N.Y.2d 275 (1998) ............................... 15

<u>Allstate Ins. Co. v. Mazzola</u>, 175 F.3d 255, 260 (2d Cir. 1999).................................................... 11

<u>A.J. McNulty & Co. v. P.J. Carlin Const. Co.</u>, 669 N.Y.S.2d 29 (1st Dep't. 1998)..................... 15

<u>Aetna Casualty & Surety Co. v. Bekins Van Lines Co.</u>, 494 N.Y.S.2d 1 (1st Dep't. 1985) ........ 11

<u>Aetna Casualty & Surety Co. v. Schulman</u>, 417 N.Y.S.2d 77 (1st Dep't. 1979) ......................... 11

<u>Bermuda Trust Co. v. Ameropan Oil Corp.</u>, 698 N.Y.S.2d 691 (2d Dep't. 1999) ....................... 13

<u>Broadway Houston Mack Development, LLC. v. Kohl</u>, 897 N.Y.S. 2d 505, 506
    (2d Dept. 2010) .................................................................................................................. 13, 14

<u>CDJ Builders Corp. v. Hudson Group Const. Corp.</u>, 67 A.D.3d 720, 889 N.Y.S.2d 64, 65
    (2d Dep't. 2009)......................................................................................................................... 14

<u>Cohn v. Rothman-Goodman Mgt. Corp.</u>, 547 N.Y.S.2d 881 (2d Dep't. 1989)............................ 13

<u>D.J. Rossetti Inc. v. Joseph Francese Inc.</u>, 710 N.Y.S.2d 166 (3d Dep't. 2000 ........................... 15

<u>Emergency Enclosures, Inc. v. National Fire Adjustment Co., Inc.</u>, 68 A.D. 3d 1658,
    893 N.Y.S. 2d 414, 420 (4th Dept. 2009) .................................................................................. 13

<u>Federal Ins. Co. v. Arthur Andersen & Co.</u>, 75 N.Y.2d 366, 372 (1990).................................... 11

<u>Finkel v. Nova Cas. Co.</u>, 880 N.Y.S.2d 223 (1st Dep't. 2009).................................................... 15

<u>Flowers v. 73rd Townhouse, LLC</u>, 855 N.Y.S. 2d 146, 150-151 (1st Dept. 2008)........................ 19

 <u>Gibbs v. Hawaiian Eugenia Corp.</u>, 966 F.2d 101, 106 (2d Cir. 1992)......................................... 11

<u>Great Am. Ins. Co. v. United States</u>, 575 F.2d 1031, 1034 (2d Cir. 1978)................................... 11

<u>Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp.</u>, 878 N.Y.S.2d 97
    (2d Dep't. 1999)......................................................................................................................... 14

<u>Hartford Ins. Group v. Posen</u>, 511 N.Y.S.2d 1 (N.Y. City Civ. Ct. 1986) .................................. 11

<u>In re Chateaugay Corp.</u>, 89 F.3d 942, 947 (2d Cir. 1996). .......................................................... 13

Lamparter Acoustical Products Ltd. v. Maryland Cas. Co., 407 N.Y.S.2d 579, 580
   (2d Dep't. 1978)........................................................................................... 17, 18, 19

Morse/Diesel, Inc. v. Trinity Industries, Inc., 67F. 3d 435, 445 (2d Cir. 1995).................... 17, 19

Reliance Ins. Co. v. County of Monroe, 604 N.Y.S. 2d 439, 440-441 (4th Dept. 1993) ............. 19

U.S. for the Use and Benefit of Gutman v. P.J. Carlin Const. Co., 254 F. Supp. 1001
   (E.D.N.Y. 1965)..................................................................................................... 17

Varlotta Const. Corp. v. Sette-Juliano Const. Corp., 651 N.Y.S.2d 484 (1st Dep't. 1996) ........ 17

Weeks Marine, Inc. v. City of New York, 737 N.Y.S. 2d 92, 94 (1st Dept. 2002)...................... 19

Yeshiva University v. Fidelity and Deposit Co. of Maryland, 500 N.Y.S.2d 241, 245
   (1st Dep't. 1986) .................................................................................................... 16

**Statutes**

New York State Finance Law § 137(4)(b)...................................................................... 15

**PRELIMINARY STATEMENT**

This action arises out of two construction contracts between Trataros Construction, Inc. ("Trataros") and the Dormitory Authority of the State of New York ("DASNY") in connection with the construction of a project located in lower Manhattan known as the Baruch College, Site B Project (the "Project").  Travelers Casualty & Surety Company ("Travelers") commenced the within action pursuant to its rights as surety to Trataros, and DASNY filed a Counterclaim against Travelers.  Upon resolution of various Motions for Summary Judgment which were decided in August, 2010, the only claim remaining against Travelers by DASNY is that it is equitably subrogated to the delay claims of the subcontractors of Trataros who DASNY indirectly paid.[1]  However, those subcontractors released Travelers which then cannot be held liable to DASNY. Further, this Court has already concluded that the "no-damage-for-delay" clauses contained in Contracts 15 and 16, which were incorporated into the subcontract agreements, apply to bar the subcontractors' delay claims as do provisions in the subcontracts themselves. Further, Travelers contends that the Counterclaim was untimely filed and that its payment bond does not cover delay claims. As a result, Travelers is filing these Motions In Limine seeking to bar the following evidence, including all related testimony:

(1) DASNY should be barred from introducing any evidence as to claims against Travelers' Payment Bond because the claims as to which it contends it was equitably subrogated were released by the claimants in question;

---

[1] DASNY issued change orders to Trataros and then conveyed the relevant funds to Trataros, which deposited them into a joint controlled checking account. Trataros or Travelers then issued the checks to the subcontractors upon the condition of their releasing Travelers and Trataros from any and all liability.  See infra.

(2) DASNY should be barred from introducing any evidence as to claims against Travelers' Payment Bond as those delay claims were previously barred by the Court and/or, in any event, DASNY was under no obligation to pay them;

(3) DASNY should be barred from introducing any evidence as to claims against Travelers' Payment Bond because they are untimely as a matter of law;

(4) DASNY should be barred from introducing any evidence as to claims against Travelers' Payment Bond because the Payment Bond does not cover delay claims; and

(5) Since DASNY Issued Change Orders Revising Trataros' Contract relative to the delay claims of Trataros' subcontractors, DASNY cannot seek to recover the funds from Trataros' surety.

Since the claims against the Payment Bond also impact Trataros, Travelers' principal, it joins in this motion as well.

## PROCEDURAL HISTORY

Travelers commenced the within action against DASNY, TDX Construction Corp. ("TDX") and Kohn Pedersen Fox Associates, P.C. ("KPF") on or about August 1, 2007, by filing its Complaint and Jury Demand with the United States District Court for the Southern District of New York. (Affidavit of Eli J. Rogers in Support of Motion In Limine, the "Rogers Aff.," ¶ 3 and Ex. 1.)[2]   Travelers is prosecuting a claim that it is entitled to recover approximately $4,700,000.00 in remaining contract funds, retainage and interest in connection with Trataros' two prime contracts on the Baruch College, Site B project (the "Project").

DASNY and TDX filed their responsive pleading on or about September 28, 2007, asserting Counterclaims arising from alleged breaches of the Payment and Performance Bonds issued by Reliance Insurance Company ("Reliance") to Trataros in connection with the Project and which were administered by Travelers. (Rogers Aff., ¶ 4 and Ex. 2.) As a result of Travelers' Motion for Summary Judgment, DASNY's claims against the performance bond were dismissed. The only claim remaining against Travelers is the claim that DASNY is equitably subrogated to the Payment Bond claims of ten subcontractors of Trataros which total approximately $1,780,000.00.

On or about September 28, 2007, DASNY and TDX filed their Third-Party Complaint, impleading Trataros into this action. (Rogers Aff., ¶ 5 and Ex. 3.) Among other things, the Third-Party Complaint alleges two causes of action for breach of contract against Trataros. (Rogers Aff., ¶ 5 and Ex. 3.)  These causes of action remain active, and will likely consume most of the

---

[2] The claims at issue in this action were the subject of a prior proceeding before the Honorable Harold Baer, U.S.D.J., commenced in 2004 (the "Baer Action").  DASNY filed its responsive pleading in the Baer Action on or about August 2, 2004 alleging, inter alia, a cause of action against Travelers seeking purported damages arising from an alleged breach of the payment bonds administered by Travelers in connection with Trataros' Contract No. 15 and Contract No. 16 on the Project.  The Baer Action was dismissed without prejudice in order to pursue voluntary mediation, subject to a tolling agreement which tolled the applicable statutes of limitation during the mediation's pendency.

trial time, as they relate to alleged defects in the terrazzo flooring and alleged delays to the

Project.  Other claims also remain active, but are not critical to this motion.

## STATEMENT OF FACTS

This action arises from the construction of a 785,000 square-foot vertical campus for Baruch College which is part of the City University of New York ("CUNY").  The building consists of fourteen above-ground stories which principally housed academic classrooms and offices, and three below-ground stories, which include an athletic complex and performing arts center.  (Rogers Aff., ¶ 2 and Ex. 1.)

On or about April 22, 1998, DASNY and Trataros entered into Contract 15 for the fixed sum of $50,222,000.00.  (Rogers Aff., ¶ 6 and Ex. 4)  On or about April 27, 1998, Trataros obtained two surety bonds from Reliance for Contract 15, namely a "Performance Bond" and a "Labor and Materials Payment Bond," each with a penal sum of $50,222,000.00 with Trataros as principal and DASNY as obligee.  (Rogers Aff., ¶ 7 and Exs. 5 & 6.)  On or about September 16, 1998, DASNY and Trataros entered into Contract 16 for the fixed sum of $24,140,000.00.  (Rogers Aff., ¶ 8 and Ex. 7.)  On or about June 10, 1998, Trataros obtained Performance and Payment Bonds from Reliance for Contract 16, each with the penal sum of $24,140,000.00 and naming Trataros as principal and DASNY as obligee.  (Rogers Aff., ¶ 9 and Exs. 8 & 9.)

Trataros proceeded to work on the Project. As this Court previously ruled, the contract completion dates were extended through September 1, 2001. This Court's explanation was as follows:

> The Project, which was designed and built on a "fast-track" basis, did not proceed on schedule. Contract 15 was originally to be completed by September 1, 2000, while Contract 16 was originally to be completed by November 1, 2000. On or about August 15, 1999, the Project's construction manager, TDX, provided Trataros with a new construction schedule including a "late finish" date of September 1, 2001 for Trataros' work under both Contracts. Trataros agreed to complete its work within this

new time frame, provided that it did not "encounter future circumstances causing delays" or "some unforeseen calamity."

On or about April 6, 2001, DASNY executed Change Order No. GC2-064 ("Change Order GC2-64") to formalize an extension of time for Trataros' performance of the Contracts until the aforementioned "late finish" date. Change Order GC2-64 provided that Trataros' time for completion of Contract 15 would be extended 365 days, while the time for Contract 16 would be extended 304 days, thereby mandating a "new contract completion date for both Contracts of September 1, 2001." In accordance with General Conditions § 11.02 (the no-damages-for-delay clause), however, Change Order GC2-64 did not provide any additional compensation to Trataros or its subcontractors.

In about July 2001, DASNY received a temporary certificate of occupancy ("TCO") for the above-ground floors of the Project. In late August 2001, those fourteen stories opened for the use of Baruch. On or about February 1, 2002, DASNY received a TCO for the three basement levels of the Project. As of about that date, according to the parties' expert witnesses, Trataros' work under Contracts 15 and 16 became "substantially complete." At or about that time, Baruch began to occupy and use the basement levels.

(Rogers Aff., ¶ 10 and Ex. 10.)

In furtherance of Contracts 15 and 16, Trataros entered into various subcontracts, including subcontracts with AMMFE, Inc.(Pansini Stone Corp.); Klepp Flooring; D.A.G. Floors, Inc.; A.C.E. Elevator Co., Inc.; R&J Construction Corporation; Stretchwall Installations, Inc.; Component Assembly Systems, Inc.; L&L Painting Co., Inc.; Mometal, Inc., and Shroid Construction, Inc. (the "Delay Claim Subcontractors") (Rogers Aff., ¶11 and Exs.11-20)  All of those subcontracts expressly provided that the Contract Documents "are made a part of this subcontract." (Rogers Aff., ¶11, Exhibits 11-20, page 1 of each subcontract) They also provided that "the List of Contract Documents included the Contract between Trataros and DASNY." (Rogers Aff., ¶12, Exhibits 11-20, page 6 of each subcontract.) Therefore, as this Court has

noted, the "No Damage for Delay" clause in the contracts also applied to the subcontractors. (Rogers Aff., ¶13, Ex. 21.) That clause provided that:

> Section 11.03- Claims for Delay
>
> No claims for increased costs, charges, expenses or damages of any kind shall be made by the Contractor against the Owner for any delays or hindrances from any cause whatsoever; provided that the Owner, in the Owner's discretion, may compensate the Contractor for any said delays by extending the time for completion of the Work as specified in the Contract. (Rogers Aff., ¶13, Ex. 21)

As this Court also indicated, the Trataros subcontracts contained clauses which would undermine delay claims by the subcontractors. For example, they included the following provisions:

> 6.    Time Performance
>
> a.    Subcontractor will proceed with the Work… in accordance with the Contractor's schedule, **as reasonably amended from time to time**… Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement.
>
> b.    If requested by Contractor, Subcontractor Shall [sic] submit a detailed schedule for performance of the Subcontract… Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.
>
> c.    Subcontractor will coordinate its work with the work of Contractor, other subcontractor's and Owner's other builders, if any, so no delays or interference will occur in any part or all of the Project.
>
> d.    Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the Contractor, other subcontractors, or the Contractor's suppliers, or delayed impacted or disrupted by any acts or causes which would entitle Contractor to an extension of time under time for the performance of this Subcontract, but shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays impacts, disruptions, or acceleration resulting therefrom **unless the Owner is liable and pays Contractor** for such delays, impacts, disruptions, or acceleration."

7

(Emphasis added)(Rogers Aff., ¶14, Exs. 11-20, p. 2-3)

EXHIBIT B, SCOPE OF WORK

…

D.      TIME OF PERFORMANCE

This Subcontractor understands the Project schedule and phasing plan provide[d] by owner… This subcontractor agrees that the following specific scheduling intervals [sic] shall be maintained by him and coordinated with other trades provided that the work of others has advanced sufficiently to permit the sequencing as called for:

1.      Work under this Subcontract shall commence <u>immediately *upon receipt of instructions from the General Contractor* and shall proceed **when and where directed,**</u> with sufficient labor and manpower, to allow the entire Project to be completed in accordance with the Project Construction Schedule. The work under this <u>Subcontract shall follow all interim schedules</u> that may be issued by the General Contractor, <u>as the job conditions require.</u>

…

3.      The Subcontractor understands that <u>work of this trade may not be continuous</u> and that <u>he may be required to work out of sequence and/or leave a portion of work out due to coordination at the direction of the General Contractor</u>. **There shall be no charges for "comeback time" or out of sequence work.**

4.      The Subcontractor shall be prepared to commence his work **<u>as directed by General Contractor</u>** <u>provided that the work of others has advanced sufficiently to permit such a start</u> and shall be capable of completing his work in accordance with the Project Construction Schedule.

(Rogers Aff., ¶15, Exs. 11-20, p. 17)(emphasis added).

The above referenced Delay Claim Subcontractors submitted delay claims in connection with the Project (the "Delay Claims").   (Rogers Aff., ¶¶16-25 and Exs.22-31B: the claims are attached to the change orders themselves)  DASNY executed ten change orders in which it settled the Delay Claims of the Delay Claim Subcontractors.  (Rogers Aff., ¶¶16-25 and Exs.22-31B)  DASNY paid the funds for the Delay Claims to Trataros which, in turn, paid the Delay

Claim Subcontractors, (Rogers Aff., ¶26, Ex. 32), in exchange for releases in favor of Trataros and Travelers. (Rogers Aff., ¶27 and Ex. 33)

Due to lack of privity and the exculpatory clauses in the prime contracts and in the subcontracts, this Court has expressly ruled that the subcontractors could not recover their claims from DASNY. (Rogers Aff., ¶28, Ex. 10, pp. 46, 61 and 64) Therefore, DASNY had no obligation to pay the claims and acted as a volunteer. Furthermore, even if this Court determined that, notwithstanding those facts, DASNY stands in the shoes of the subcontractors, the subcontractors released Travelers so DASNY cannot pursue any such claim(s) at this time.

In addition, as will be addressed _infra_, DASNY's claims are untimely and, as delay claims, they are not covered by the payment bonds. Lastly, since DASNY provided contract change orders to Trataros, DASNY cannot pursue Trataros and, therefore, also cannot pursue Travelers.

For the foregoing reasons, it is respectfully submitted that all evidence pertaining to DASNY's claim(s) allegedly pursuant to Travelers' payment bonds should be barred at time of trial.

**LEGAL ARGUMENT**

**POINT I**

**DASNY'S CLAIMS UNDER THE PAYMENT BOND SHOULD BE BARRED AS THOSE CLAIMS WERE RELEASED BY TRATAROS' SUBCONTRACTORS**

DASNY has asserted claims against Travelers pursuant to the Payment Bonds which were executed by Reliance for the benefit of Trataros' subcontractors. While DASNY did not plead equitable subrogation nor did it contend in reply to Travelers' Motion for Summary Judgment that it stands in the shoes of Trataros' subcontractors, this Court denied Travelers' Motion for Summary Judgment as to those claims based upon the determination that factual issues existed as to whether DASNY was equitably subrogated to the subcontractors' claims. (Rogers Aff., ¶10, Ex. 10, p. 96) However, since this issue was not raised by DASNY, Travelers did not address all of the relevant facts and law in its motion papers. Based upon those facts and law, it is respectfully submitted that evidence consistent with DASNY being equitably subrogated to those rights should not be admitted at trial.

The subcontractors in question had submitted claims to Trataros for delays on the Project. Trataros then submitted those same claims to DASNY. DASNY issued change orders to Trataros regarding the subcontractor claims it agreed to pay. (Rogers Aff., ¶¶16-25, Exs. 22-31B) After DASNY issued payment to Trataros which deposited the funds into a joint account, Trataros paid each subcontractor (Rogers Aff., ¶26, Ex. 32) which, in exchange for payment, executed Releases releasing Travelers, amongst others. (Rogers Aff., ¶27, Ex. 33)

Now, DASNY contends, based upon this Court's opinion and order, that it is subrogated to the rights of the subcontractors because it paid "a legal obligation" that should have been paid by Travelers pursuant to its payment bond. However, a subrogee (in this case, DASNY) maintains only those rights of recovery possessed by the subrogor (in this case, the

subcontractors).  <u>Allstate Ins. Co. v. Mazzola</u>, 175 F.3d 255, 260 (2d Cir. 1999); <u>Great Am. Ins. Co. v. United States</u>, 575 F.2d 1031, 1034 (2d Cir. 1978); <u>Federal Ins. Co. v. Arthur Andersen & Co.</u>, 75 N.Y.2d 366, 372 (1990).  Here, the subcontractors released Travelers and Trataros from any and all liability as a condition to the receipt of the above-mentioned funds.  (Rogers Aff., ¶ 27 and Ex. 33.)   As a result, any rights to which DASNY is allegedly subrogated do not exist since the subcontractors' Payment Bond claims were released.  Accordingly, it is respectfully submitted that any evidence related to DASNY's claims under the Payment Bond should be barred.

As a general rule, the right to subrogation attaches, by operation of law, on the paying of the insured's loss; but when the insured party releases a third party from liability, any subrogation right against such a party is destroyed.  <u>Gibbs v. Hawaiian Eugenia Corp.</u>, 966 F.2d 101, 106 (2d Cir. 1992).  In other words, where, as here, the subrogor no longer has a right of recovery against a third party, the subrogee too has no enforceable right as to that party.  <u>Ibid.</u>; <u>see</u> <u>also</u> <u>Aetna Casualty & Surety Co. v. Schulman</u>, 417 N.Y.S.2d 77 (1st Dep't. 1979); <u>Hartford Ins. Group v. Posen</u>, 511 N.Y.S.2d 1 (N.Y. City Civ. Ct. 1986). It has been recognized that when a release or settlement is executed contemporaneously with the payment for losses, the party receiving the release would not expect that any payment and/or any subrogation rights would remain.  <u>See</u> <u>Aetna Casualty & Surety Co. v. Bekins Van Lines Co.</u>, 494 N.Y.S.2d 1 (1st Dep't. 1985)

Because DASNY "maintains only those rights of recovery possessed by the subrogor" which released any claims under the Payment Bond, it is respectfully submitted that those claims and/or all evidence pertaining thereto should be barred at the time of trial.

<u>**POINT II**</u>

<u>**DASNY SHOULD BE BARRED FROM INTRODUCING ANY EVIDENCE AS TO ANY CLAIMS ON THE PAYMENT BONDS AS THOSE CLAIMS ARE IN EFFECT SEEKING DELAY DAMAGES WHICH THE COURT HAS PREVIOUSLY DENIED AND/OR, IN ANY EVENT, DASNY HAD NO OBLIGATION TO PAY THEM**</u>

DASNY, in arguing that it is subrogated to the rights of the ten subcontractors of Trataros it paid, seeks to recover for the subcontractors' delay claims it paid by means of change orders issued to Trataros. (Rogers Aff., ¶¶16-25, Ex. 22-31B) Consistent with the change orders, DASNY issued the payments for the Delay Claims to Trataros which in turn paid the Delay Claim Subcontractors (Rogers Aff., ¶26, Ex. 32) in exchange for releases. (Rogers Aff., ¶27 and Ex. 33)

This Court has previously ruled that the delay claims of Trataros' subcontractors are unrecoverable as against DASNY either due to a lack of privity between the subcontractors and the owner or due to the "No Damages for Delay" provisions in Contracts 15 and 16, as well as various other provisions of the subcontracts themselves.[3] (Rogers Aff., ¶ 28 and Ex. 10, pp. 46 and 61.)

As this Court expressly declared, Contracts 15 and 16 each contain "No Damage for Delay" provisions which were incorporated by reference into the subcontracts. (Rogers Aff, ¶13, Ex. 21) Said provisions are quoted in the Statement of Facts, <u>infra</u>, at page 7. This Court expressly found that said "No-Damages-For-Delay" clause in Contracts 15 and 16, as well as various other Subcontract provisions (as quoted in the Statement of Facts, <u>infra</u>, at pages 7 and 8) apply to bar "the Subcontractors' damage claims against DASNY." (Rogers Aff., ¶ 28 and Ex.

---

[3] This is law of the case since determined by this Court. With great respect for this Court, it should be noted that by inclusion of this point herein, Travelers is not indicating agreement with the Court's opinion nor waiving its right of appeal.

10, pp. 46, 61 and 64.) More specifically, this Court held that "[i]nsofar as the Subcontractors'

rights of recovery under the Pass-Through Claims necessarily rely upon Trataros' rights under

Contracts 15 and 16, DASNY is entitled to assert the no-damages-for-delay clause of those

Contracts against Travelers, the Subcontractors, or whoever else might be standing in Trataros'

shoes."  (Rogers Aff., ¶ 29 and Ex. 10, pp. 67-68.)  Finally, the Court found that those provisions

were not waived by DASNY.  (Rogers Aff., ¶ 30 and Ex. 10, pp. 67-68.)  Those determinations

are now law of the case. In the Matter of the Application of the City of New York, 14 Misc. 3d

1232(A), 836 N.Y.S. 2d 497 (Sup. Ct. 2007); Emergency Enclosures, Inc. v. National Fire

Adjustment Co., Inc., 68 A.D. 3d 1658, 893 N.Y.S. 2d 414, 420 (4th Dept. 2009).

Those findings clearly establish that DASNY was under no legal obligation to pay any

subcontractor claims; thus, DASNY cannot be equitably subrogated to the subcontractors' rights.

Broadway Houston Mack Development, LLC. v. Kohl, 897 N.Y.S. 2d 505, 506 (2d Dept. 2010).

It is only one who is compelled to pay a debt which ought to have been paid by another that is

entitled to exercise all the remedies which the creditor possessed against that other.  In re

Chateaugay Corp., 89 F.3d 942, 947 (2d Cir. 1996).

It is well settled in New York that the doctrine of subrogation is applicable only to cases

where a party is compelled to pay the debt of a third person to protect his/her own rights, or to

save his/her own property, and that it cannot be invoked where the payments sought to be

recovered are voluntary.  Broadway Houston, supra, 897 N.Y.S.2d at 506; see also Bermuda

Trust Co. v. Ameropan Oil Corp., 698 N.Y.S.2d 691 (2d Dep't. 1999); Cohn v. Rothman-

Goodman Mgt. Corp., 547 N.Y.S.2d 881 (2d Dep't. 1989).  A party seeking subrogation can

only establish that its payments were not voluntary either by pointing to a contractual obligation

it had, Hamlet at Willow Cr. Dev. Co., LLC v. Northeast Land Dev. Corp., 878 N.Y.S.2d 97 (2d

13

Dep't. 1999) or to the need to protect its own legal or economic interests.  Broadway Houston, supra, 897 N.Y.S.2d at 506.  When invoking the latter ground, however, the party seeking subrogation must show that the act is not merely helpful but absolutely necessary to the protection of its interests.  Ibid.

In this case, it cannot be said that DASNY was "compelled" to pay Trataros' subcontractors under the Payment Bond.  DASNY was under no contractual obligation to make said payments; indeed, contractual privity did not exist between DASNY and Trataros' subcontractors as this Court expressly found previously. (Rogers Aff., ¶ 16 and Ex. 11.) In that regard, a subcontractor is in privity with the general contractor on a construction project, but is not in privity with the owner even if the owner has benefitted from the subcontractor's work. CDJ Builders Corp. v. Hudson Group Const. Corp., 67 A.D.3d 720, 889 N.Y.S.2d 64, 65 (2d Dep't. 2009).

While DASNY may also argue that it was forced to pay subcontractors because mechanics liens were placed on the project, that argument would be without merit because Travelers bonded the mechanics liens off, thereby discharging DASNY's potential liability. (Rogers Aff., ¶ 31 and Ex. 34.)

Furthermore, as set forth above, Contracts 15 and 16 contained "No Damage for Delay" clauses which the Court has previously ruled were not waived.  (Rogers Aff., ¶ 30 and Ex. 10, pp. 67-68.)  Accordingly, DASNY was under no obligation to make any payments whatsoever to any of Trataros' subcontractors for their delay claims. As a result, it is respectfully submitted that any evidence as to DASNY's claim against Travelers should be barred at trial.

**POINT III**

**DASNY'S CLAIMS UNDER THE PAYMENT BOND ARE TIME BARRED
AS A MATTER OF LAW**

While it is respectfully submitted that DASNY never properly plead equitable subrogation, for purposes of this point we will assume it had when it filed its Counterclaim. Furthermore, we assume without conceding herein that the time period was tolled from the filing of the Counterclaim in the first case before Judge Baer. Those assumptions are not for purposes of trial, but they are solely for purposes of this motion.

Pursuant to New York State Finance Law § 137(4)(b), "no action on a payment bond…shall be commenced after the expiration of one year from the date on which final payment under the claimant's subcontract became due." This provision has been enforced by the Courts. See A.C. Legnetto Const., Inc. v. Hartford Fire Ins. Co., 92 N.Y.2d 275 (1998). Here, the Labor and Material Payment Bond which was executed between Trataros and the various subcontractors, provided that "[n]o suit or action shall be commenced hereunder by any claimant…[a]fter the expiration of one (1) year following the date on which CONTRACTOR ceased work of said Contract[.]" (Rogers Aff., ¶13 and Exs. 6 & 9.) Courts abide by contractual limitations periods established by payment bonds themselves. See Finkel v. Nova Cas. Co., 880 N.Y.S.2d 223 (1st Dep't. 2009); D.J. Rossetti Inc. v. Joseph Francese Inc., 710 N.Y.S.2d 166 (3d Dep't. 2000; A.J. McNulty & Co. v. P.J. Carlin Const. Co., 669 N.Y.S.2d 29 (1st Dep't. 1998).

As found by the Court in its ruling, as quoted in the Statement of Facts, infra., at pp. 5-6, the Project was substantially complete by February 1, 2002. (see also Rogers Aff., ¶10, Ex. 10, pp. 10-11 and Rogers Aff., ¶35, Ex. 38) This Court also held that the building was fully occupied as of that date. (Rogers Aff., ¶ 10, Ex. 10, pp. 10-11). In Yeshiva University v. Fidelity and

Deposit Co. of Maryland, 500 N.Y.S.2d 241, 245 (1st Dep't. 1986), the Court ruled that the strongest indication that the job was finished and acceptable – and thus that final payment was due – was the owner taking occupancy of the building.  The Baruch College Project was fully occupied on or about February 1, 2002, and final payment to Trataros' subcontractors would have come due thirty (30) days thereafter at the latest. Furthermore, Trataros ceased business operations by no later than March, 2003. (Rogers Aff., ¶32, Ex. 35) Therefore, neither it, nor anyone nor any entity working for it, could have worked thereafter.

Here, DASNY first asserted a Payment Bond claim by filing its Counterclaim on or about August 2, 2004[4], well beyond the one-year period irrespective of whether the bond term or the statutory term is considered.  (Rogers Aff., ¶ 33 and Ex. 36.) As a result, it is respectfully submitted that all evidence as to same should be barred at trial.

---

[4] This is the date in the first action and is assuming while not conceding that the tolling agreement applies to the limitations period in the Payment Bond.

**POINT IV**

**THE PAYMENT BONDS AT ISSUE DO NOT COVER DELAY CLAIMS**

Even if otherwise recoverable, payment bonds do not, pursuant to New York law, cover delay claims.  U.S. for the Use and Benefit of Gutman v. P.J. Carlin Const. Co., 254 F. Supp. 1001 (E.D.N.Y. 1965) Therefore, Travelers cannot be held liable under any circumstances for the subcontractors' delay claims even if no other defense was available.

Furthermore, payment bonds, such as the one executed in this case, attach to the underlying construction contract and must be construed in conjunction therewith.  Varlotta Const. Corp. v. Sette-Juliano Const. Corp., 651 N.Y.S.2d 484 (1st Dep't. 1996).  In that regard, a surety's exposure is co-extensive with the liability assumed by its named "principal," i.e., the contractor, here Trataros. Morse/Diesel, Inc. v. Trinity Industries, Inc., 67F. 3d 435, 445 (2d Cir. 1995); Lamparter Acoustical Products Ltd. v. Maryland Cas. Co., 407 N.Y.S.2d 579, 580 (2d Dep't. 1978).  Thus, where, as here, the underlying contract contains exculpatory clauses prohibiting delay damages, "the surety cannot be held liable for delay damages…." Lamparter, supra, 407 N.Y.S. 2d at 580.

As this Court expressly declared, Contracts 15 and 16 each contain "No Damage for Delay" provisions which were incorporated into the subcontracts.  (Rogers Aff., ¶ 13, Ex. 21.) As a result, the Court found that "The no-damages-for-delay clause in Contracts 15 and 16, as well as the various other Subcontract conditions… apply to bar the Subcontractors' damage claims against DASNY."  (Rogers Aff., ¶28 and Ex. 10, pp. 46, 61 and 64)  Further, as quoted in detail in the Statement of Facts, infra, pp. 7-8, the underlying agreements between Trataros and

the subcontractors expressly state that the general contractor will not be liable for delay damages. (Rogers Aff., ¶¶14 and 15, and Exs. 11-20, pp 2-3 and 17 of each exhibit)  Accordingly, since the surety's liability is no greater than that of its principal, <u>Lamparter</u>, <u>supra</u>, 407 N.Y.S.2d at 580, evidence of DASNY's claims under the Payment Bonds should be barred <u>In Limine</u>.

**POINT V**

**SINCE DASNY ISSUED CHANGE ORDERS REVISING TRATAROS'
CONTRACT RELATIVE TO THE DELAY CLAIMS OF TRATAROS'
SUBCONTRACTORS, DASNY CANNOT SEEK TO RECOVER THE FUNDS
FROM TRATAROS' SURETY.**

Here, as set forth above, DASNY paid Trataros funds in connection with the subcontractors' delay claims pursuant to the change orders approved and issued by DASNY, which thereby modified Trataros' prime contracts on the Project. Flowers v. 73rd Townhouse, LLC, 855 N.Y.S. 2d 146, 150-151 (1st Dept. 2008), Weeks Marine, Inc. v. City of New York, 737 N.Y.S. 2d 92, 94 (1st Dept. 2002); Reliance Ins. Co. v. County of Monroe, 604 N.Y.S. 2d 439, 440-441 (4th Dept. 1993) In turn, Trataros paid the allocable portions of those delay claim settlements to its subcontractors. (Rogers Aff., ¶26, Ex. 32) Notwithstanding the formal change orders issued by DASNY to Trataros, DASNY is seeking recovery of its payments from Trataros' surety. That is something even DASNY's expert admitted he had never seen before (Rogers Aff., ¶34, Ex. 37.)

Since Trataros' contracts were thereby changed, DASNY has no right to recover from Trataros. As a result, it also has no right to recover from Travelers. Morse/Diesel, Inc. v. Trinity Industries, Inc., 67F. 3d 435, 445 (2d Cir. 1995); Lamparter Acoustical Products Ltd. v. Maryland Cas. Co., 407 N.Y.S.2d 579, 580 (2d Dep't. 1978).

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Travelers' Motions <u>In Limine</u> should be granted.

Dated: Florham Park, New Jersey
      January 11, 2011

                                     Respectfully Submitted,


                                   _____/s/_____
                                   JoAnne M. Bonacci (JMB-1354)
                                   Five Penn Plaza, 23rd Floor
                                   New York, New York 10001
                                    -and-
                                   26 Columbia Turnpike, North Entrance
                                   Florham Park, New Jersey 07932
                                   Tel. No.  (973) 514-1414