UNITED STATES DISTRICT COURT            ECF
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY,
etc.,

                                                                     07-CV-6915 DLC

                          Plaintiff,

      - - against - -

DORMITORY AUTHORITY - STATE OF NEW YORK,
et al.,

                         Defendants.
-------------------------------------------------------------------X
      - - and impleader actions - -
-------------------------------------------------------------------X


## Memorandum of Law
## in opposition to
## DASNY Motions in Limine


**Zichello & McIntyre, LLP**        **O'Connor Redd LLP**
Attorneys for Carolina Casualty      Attorneys for Fourth-Party Insurance
Company                                      Defendant,
60 East 42nd Street                       Bartec Industries Inc.
New York, NY 10165                 200 Mamaroneck Avenue
Tel. 212-972-5560                        White Plains, New York 10601
E-mail zimc@msn.com                (914) 686-1700 (SO-8230)
                                                 E-mail: jplatek@oconnorlawfirm.com

## Preliminary Statement

In opposition to DASNY's motions in limine we will rely, in the main, on arguments and authorities presented by others. Here we will address but one of DASNY's attempts to keep evidence from the jury, specifically, DASNY's effort to exclude the following:

Any evidence regarding the Project's budget and expenditures including information   obtained through FOIL concerning DASNY's legal fees, should be excluded.

Incidentally, the evidence had to be obtained under New York's Freedom of Information Law because DASNY counsel represented to this court that it did not exist, that records were kept only for DASNY's payments to Trataros, separately, that there was no consolidated record of funds available for the project and how those funds were spent. (See record of 2/19/09 discovery-dispute argument.)

No longer able to deny the existence of the evidence, DASNY now wants to keep it from the jury. But the jury needs to know.

## Argument

**The jury needs to know that DASNY had ample funds to repair its floor but chose to spend the money elsewhere. The jury also needs to know the enormous amounts paid to DASNY's architect and construction manager whose culpability DASNY tries to cover up while making the contractors the scapegoats.**

"Catastrophic failure" is the way DASNY witnesses like to complain

about the terrazzo-covered flooring system that has been in continuous use, daily, since September of 2001, without significant repair.

"Full removal and replacement" demands DASNY, but DASNY has not even spent money to mitigate some of the particular defects it complains of, like grouting separations between panels which DASNY says allow water to enter and dissolve the gypsum underlayment, contributing to "propagation".

"Trip hazards" cries DASNY, pointing to "toe traps" it seems to have left unattended for nine years. Instead, DASNY pays its expert to play-act trip hazards in a video produced only as recently December 2010 for this nine-year-old floor.

Why hasn't DASNY spent any money to remedy the supposed "catastrophe" or at least to eliminate those "trip hazards" or to apply some grout? The jury will want to know. And given the ambient jeremiads about chronic government budget shortfalls, the jury is apt to jump to the conclusion that sheer penury compels DASNY and CUNY to endure these "hazardous" and "propagating" conditions.

If the jury doesn't jump, DASNY counsel will no doubt give them a push, by argument and innuendo. DASNY counsel have already "poor mouthed", in arguments in this case, and have postured about championing the taxpayers against these villainous contractors and parsimonious sureties. But DASNY attorneys don't want this jury of taxpayers to know the truth: that DASNY had plenty of money for repairs but chose not to spend it. They want to exclude that

evidence because it gives the lie to DASNY's alarms about "trip hazards" and the need for urgent and massive repairs.

The evidence shows that, contrary to DASNY's litigation stance, its true priorities lay elsewhere.

One of those "elsewheres" was to use construction money to pay outside counsel. DASNY's outside counsel are especially sensitive about that, but for the wrong reasons. They worry about charges of "government waste". Those charges are for others to make, another day, in another forum. For present purposes, we do not care whether this Court protects the evidence from the media or turns it over to the State Comptroller. The issue here is not waste but true priorities, as evidenced by allocation of resources.

On that score - - allocation of resources - - DASNY counsel make a startling revelation. They reveal that the lawyers' fees were also for "other matters", matters "unrelated to this claim." That makes it worse. The money after all came from funds supposed to be used for this building project. It wasn't even DASNY's money; it was money entrusted to DASNY by CUNY, from bond issues, for construction.

Which is another reason this evidence is relevant. DASNY needs to account for these funds. These are not supposed to be slush funds for DASNY. Actual or potential earnings go to reduce DASNY's damage claim here.

The sums paid to DASNY's architects and its construction manager are also highly relevant, for yet additional reasons.

It was DASNY's architects who approved changes in their original specifications, notably including approval of the "Conflow" self-leveling underlayment that DASNY now blames for so much of the trouble with the flooring. Yet DASNY's witnesses pretend the *contractors* are responsible for this substitution, as though the review and approval by DASNY's architects was merely perfunctory. So that the jury is not fooled, the jury needs to know that more than perfunctory is required from architects being paid $17 million.

The $27 million or more paid to DASNY's construction manager, TDX is also highly relevant. These were no minimum-wage supernumeraries or underpaid inspectors spread too thin on a large project. They were fully staffed and well paid, very well paid. And every time there was a problem with the project they were being paid to manage these managers managed to get paid even more. According to the payment records DASNY want to hide from the jury, payments to TDX ultimately swelled by 86%.

The jury needs those facts and figures to assess DASNY's complaints against the contractors.

DASNY complains the Conflow contained too much gypsum and evidently wants to blame not only the supplier, Dayton, but also the installer, Bartec, and even the terrazzo installer, Crocetti. But TDX didn't detect the gypsum, either, though paid $27 million, among other tasks, to "inspect materials".

There are issues about other trades traipsing through still wet underlayment or saturating concrete with oil. TDX was paid to "manage" the construction. How much they were paid attests this was no arm-chair exercise.

5

After the fact, DASNY suggests the contractors were guilty of poor workmanship and even used the wrong equipment. Such complaints were not made during the job TDX was tasked to "inspect daily". TDX's silence admits everything was copasetic. But to weigh the strength of that admission the jury needs to know the intensity of TDX's inspections, which is shown by the vast sums TDX was paid for its services.

Inspectors' stock excuse is that they can't stand next to every workman all day long. For $27 million, though, more than an occasional drive-by is implied; it implies appreciable on-site involvement.

Because everything was copasetic, TDX approved progress payments. Now DASNY wants to condemn work TDX approved, by using elaborate "scientific" tests TDX never used during the job. The jury needs to know that TDX didn't forgo those tests because it was being underpaid.

TDX was also being paid to detect deficiencies during construction. Despite known problems, however, TDX rushed the contractors to keep going, so the school could open on time. Now DASNY blames the contractors.

Ordinarily, a project owner itself would present such evidence, not hide it from the jury. In the classic "innocent owner" stance, the owner sues not only its contractors but also its architects and construction manager. Early on in this case, however, DASNY made a "strategic decision" to defend, not sue, its construction manager. A good strategy for TDX perhaps, a dubious strategy for DASNY. But DASNY is stuck with it.

DASNY is responsible to the contractors for its architects' mistakes, as this court has already recognized. See decision of 8/10/11 [docket #527] p.23 n.17. DASNY is no less responsible to the contractors for decisions made by its construction manager. See, e.g., Degnon Cont'g v. City, 235 NY 481, 488 (1923).

Furthermore, its construction manager's admissions, whether by words or by conduct, are admissible against DASNY, especially when DASNY has chosen to protect, not repudiate, its construction manager.

To give due weight to such matters, and to counter DASNY's attempts to shift to the contractors design and inspection and management duties of DASNY's architects and construction manager, it is highly relevant to understand not only what the architects and construction manager were hired to do, on paper, but how much they were paid for those services. The jury needs to know.

**Dated** New York
January 24, 2011

Respectfully submitted,

**O'Connor Redd LLP**                          **Zichello & McIntyre**
Attorneys for Fourth-Party Defendant,   Attorneys for Carolina Casualty
Bartec Industries Inc.                          Company

By: /s/ _____    By: /s/ _____

Jeremy D. Platek (JP 9153)           Vincent J. Zichello (VZ 3487)
200 Mamaroneck Avenue                60 East 42nd Street
White Plains, New York 10601         New York, NY 10165
(914) 686-1700                       Tel. 212-972-5560
E-mail: jplatek@oconnorlawfirm.com   E-mail zimc@msn.com

8