UNITED STATES DISTRICT COURT                 ECF
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRAVELERS CASUALTY AND SURETY COMPANY,
etc.,
                                                             07-CV-6915 DLC

                      Plaintiff,

         - - against - -

DORMITORY AUTHORITY - STATE OF NEW YORK,
et al.,

                      Defendants.
------------------------------------------------------------------X
        - - and impleader actions - -
------------------------------------------------------------------X


**Memorandum of Law
in response to
Motion To Substitute Parties**


                             **Zichello & McIntyre, LLP**
                             Attorneys for Carolina Casualty
                             Insurance Company
                             60 East 42nd Street
                             New York, NY 10165
                             Tel. 212-972-5560
                             E-mail zimc@msn.com

**Contents**

Preliminary Statement - - Response to motion to substitute parties ........ 1

Point I - - Substituting DASNY as a claimant against Carolina is an exercise in futility, because DASNY can have no right to sue on the Carolina surety bond. ........ 2

Point II - - The "Liquidating Agreement" is a sham transaction. ........ 6

Point III - - Substituting DASNY as a defendant on the affirmative claims by Carolina and Crocetti violates substantive law. ........ 6

## Preliminary Statement

This memorandum is submitted in response to a motion to substitute parties [docket #604] response being permitted by this Court's order [docket # 608]. This particular response is submitted on behalf of Carolina Casualty Insurance Company and G.M. Crocetti, Inc.

When DASNY counsel recently announced that DASNY was close to a possible settlement with Travelers this Court [docket # 590] directed all parties to indicate anticipated changes in claims, witnesses, exhibits, and motions in limine, assuming the settlement were concluded. We did so by letter of January 28, 2011. Our letter noted, however, that we could not anticipate all possible changes that might be in order until after full disclosure and an opportunity to review the actual terms of settlement.

After our anticipatory letter, at least one feature of the settlement was disclosed: a substitution of parties in the case, whereby DASNY would take the place of Travelers and Trataros. A motion quickly followed [docket # 604, 605] in which it was revealed that the proposed substitution was based on the fact that all of Travelers' and Trataros' rights in this matter have been assigned to DASNY. The assignment was confirmed when we thereafter received a copy of the written settlement agreement, which had been signed by DASNY and Travelers. (A copy is attached to the declaration being filed herewith.)

This new turn of events raised certain concerns. From the February 3 pre-trial hearing we understand that evidentiary matters, such as use of depositions or admissions, will not be affected by any substitution of parties. Other ramifications, however, remain to be considered. Which is what prompts this response.

## Point I

**Substituting DASNY as a claimant against Carolina is an exercise in futility, because DASNY can have no right to sue on the Carolina surety bond.**

By its terms, the right to sue on the Carolina surety bond is exclusive to Trataros itself or a successor company to the Trataros company. The full text of Carolina's surety bond is attached to the declaration filed herewith. The relevant provision reads as follows:

> No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators or successors of Obligee.

Consequently, the claim against Carolina by DASNY, a mere assignee, has to be dismissed. Substituting DASNY for Trataros is therefore an exercise in futility. See <u>In re DAK Electric (N.Y. City School Const. Auth)</u>, NYLJ p32, col 6, 1/12/95 (Sup Queens 1995) (copy attached to this memo). See also <u>Citibank v. Grupo Cupey, Inc.</u>, 382 F3d 29 (1st Cir 2004), dismissing bond claim by assignee despite substitution.

Assignees have no right to sue on the Carolina surety bond. In fact, allowing suit by a corporate successor of the Trataros company actually represents something of a loophole in traditional surety law. Traditionally, any change at all in the named obligee discharged the surety. See Stearns, <u>Law of Suretyship</u> §6.5; <u>Simpson on Suretyship</u> p. 334. The rationale of course is that a surety should be able to select the party it must answer to. A bond given to Portia should not be assigned to Shylock.

2

The strict rule leads to problems when the obligee dies or when a business-entity obligee undergoes changes. See examples given in <u>Shiya v. Ericson</u>, 156 Misc 738, 282 NYS 812 (City Ct. NY 1935). Even a corporate merger or consolidation has been held to discharge the surety. See <u>Worth Corp. v. Metropolitan Casualty</u>, 255 NYS 470 (App Term 1st Dept 1932).

One response to those real-world problems is the insertion of provisions, such as the one in Carolina's bond, extending the right to sue to corporate "successors". Another response, in jurisdictions other than New York, is to treat slight changes in parties the same way as other changes, at least in the case of commercial surety companies. See <u>Restatement, Surety and Guaranty</u> (Third) §13. We have found no New York case espousing that approach to a change in parties. And even the jurisdictions that do adopt that approach do not countenance "material" changes, or changes that affect risk, or changes precluded by the very terms of the surety contract. <u>Ibid</u>. All of which provisos would preclude suit by DASNY against Carolina here.

This is no arguably innocuous assignment to a person or entity that was originally connected to the Trataros company, like an original owner or a parent company. It isn't even done for any regular business purpose, such as an assignment to a factor or a lending bank. The assignment isn't even made by Trataros itself but by a prior assignee, namely, Travelers. So this assignment is twice removed. And the assignment is to DASNY, a party whose claims have been resisted vigorously in a long litigation, until just now, when Trataros' liability is suddenly admitted for Trataros, by

3

Travelers. (Settlement Agreement, art 2, p8) The assignment turns "sole" control over to DASNY (Settlement Agreement art 5) who has the unfettered right to prosecute or settle the claims as DASNY wishes. (Ibid) All Trataros' rights are now "owned by DASNY". ( Liquidating Agreement, art 2, p5).

No amount of casuistry can turn that scenario into anything even remotely within the contemplation of Carolina when it gave its bond to Trataros.

Trataros is not the claimant here. The claim is "owned" by DASNY, and it is DASNY that has "sole" control. Consequently, it does not really matter whether DASNY is permitted to substitute or whether instead DASNY continues to prosecute the claim ostensibly in the name of Trataros. The real party in interest here is DASNY, not Trataros.

The same of course would be true if Travelers itself proceeded by way of assignment from Trataros, as we pointed out in our answering pleadings [docket #41 p. 4 and #190].

Where is Trataros in all this? We are told "Trataros has not operated its business since approximately the Spring of 2003" (Settlement Agreement p. 11, para 6, b) So what we have here is something very different from those arrangements, also called "liquidating agreements" (or "pass through" agreements, or, by veteran practitioners, "Degnon" agreements, after an eponymous case) whereby a prime contractor actively conducts the litigation. Trataros has no such role here. Trataros has no control over this claim.

4

In this case, in any event, the only loophole in Carolina's bond as written is for a corporate "successor" of Trataros, not an assignee. And even if, instead of assigning one particular claim, all of Trataros' rights and all of Trataros' assets had been transferred to DASNY, it would still not turn DASNY into a corporate "successor" of Trataros. See <u>Schenin v. Micro Copper</u>, 272 F Supp 523 (SDNY 1967). See also Henn, <u>Law of Corporations</u> (3d ed.) §341 p. 967, §146 p. 351. Indeed, that is the very reason deals are sometimes structured as a purchase of assets instead of a merger or consolidation; it is the only latter that creates a corporate "successor".

A mere assignee, like DASNY here, is not a corporate successor of Trataros, thus not a successor "of the Obligee" named in Carolina's surety bond. For that matter, none of the eligible claimants (heirs, executors, administrators) take by assignment. So if you would know the meaning of "successor" by the company it keeps, that only reinforces our point. Notice also that the surety bond binds Crocetti and Carolina and their "successors and assigns". The right of action, however, is accorded only to Trataros and its "successors", period. It does not extend to "successors and assigns".

The claim against Carolina's bond must therefore be dismissed.

And, oh, by the way, DASNY was careful to make its agreement with Travelers (art 16, p 19) binding on "successors and assigns."

5

## Point II

### The "Liquidating Agreement" is a sham transaction.

Because Trataros has been out of business since 2003 Trataros faces no genuine liability exposure. So the "admissions of liability" is meaningless. Moreover, the "admission" was made, not by Trataros, but by Travelers, for Travelers own purposes. And, as already explained, Trataros itself has no role in the matter at all.

The entire transaction is a sham, a gambit contrived to get around the reality that Trataros is judgment-proof and to create a liability in favor of DASNY that does not exist.

Consequently, it should not be endorsed by this Court.

And that is so no matter in whose name the claim is prosecuted - - whether DASNY's, or Traveler's, or, ostensibly, Trataros'.

## Point III

### Substituting DASNY as a defendant on the affirmative claims by Carolina and Crocetti violates substantive law

Carolina and Crocetti have asserted claims against Trataros for money due under the Crocetti subcontract and against Trataros and Travelers on the payment bond they gave for the project.

Apparently, the motion seeks to substitute DASNY as the defendant on those contract and payment-bond claims and let Trataros and Travelers depart.

That would violate substantive law. To relieve Trataros and Travelers would require more than their separate agreement with DASNY; it would require a novation, agreed to by Carolina, which Carolina is not willing to give at this time. Without such a novation there can be no substitution of defendants here. See 6A NYJur 2d "Assignments" §75.

Moreover, the Trataros payment bond being a statutory bond (NY State Finance Law §137) it is questionable whether there could ever be any substitution other than by a surety company authorized to issue such bonds in New York.

**Dated** New York
February 4, 2011

                                        Respectfully submitted,

                                        **Zichello & McIntyre**
                                        Attorneys for Carolina Casualty
                                        Insurance Company

                                        By: /s/ _____

                                        Vincent J. Zichello (VZ 3487)
                                        60 East 42nd Street
                                        New York, NY 10165
                                        Tel. 212-972-5560
                                        E-mail zimc@msn.com

1/12/95 N.Y.L.J. 32, (col. 6)

New York Law Journal
Volume 213, Number 8
Copyright 1995 by the New York Law Publishing Company

Thursday, January 12, 1995

Court Decisions
Second Judicial Department
Queens County
Supreme Court: IA Part 2

IN RE DAK ELECTRIC CONTRACTING CORP. (N.Y. CITY SCHOOL CONSTRUCTION AUTHORITY)

Justice Lonschein

This is a combined action for declaratory judgment and for a judgment of prohibition or mandamus pursuant to CPLR 3001 and 7801. Petitioner DAK Electric Contracting Corp. (hereinafter "DAK") seeks a declaration to the effect 'that the subcontract between OAK and Koren-Diresta Construction Co., Inc. (hereinafter "KD") is not assignable to respondent New York City School Construction Authority (hereinafter "SCA"), and that the DAK-KD performance bond is not assignable as a matter of law to the SCA. Petitioner further seeks a declaration to the effect that the July 15, 1994 notice of default issued by the SCA to DAK is a nullity. Petitioner seeks a judgment prohibiting the SCA from enforcing the subcontract, the performance bond, and taking any action with respect to the notice of default.

The SCA and KD entered into a general contract, dated March 1, 1990, to construct two school buildings in the Bronx, P.S. 15 and P.S. 20. On November 25, 1991 KD entered into a subcontract with DAK to perform electrical work at P.S. 15 for the sum of $2,850,000. On May 27, 1994, KD and the SCA entered into an agreement to terminate the general contract for reasons of mutual convenience. KD, pursuant to the termination agreement, assigned all subcontracts for both schools to the SCA. DAK, in a letter dated May 27, 1994, was informed by that the general contract had been terminated and the subcontract had been assigned to the SCA. DAK, in a letter dated May 31, 1994, informed the SCA that the assignment was not valid, but that it would return to work upon receipt of a purchase order. The SCA maintained that the assignment was valid and that it would not enter into a new contract with DAK. The parties continued to dispute the validity of the assignment throughout June and July 1994. DAK maintained that it would complete the project, upon the resolution of certain issues which are not pertinent here. The SCA maintained that DAK failed to meet its obligations under the subcontract, and sent DAK notices of breach and termination on July 1, 1994 and July 15, 1994. The SCA thereafter agreed to hold the termination proceedings in abeyance, as DAK agreed to return to the project on July 25, 1994, without waiving any of its legal rights. The SCA, in letters dated August 2 and August 18, 1994, notified DAK that it had provided an insufficient number of electricians, and was delaying the progress of the work. Due to a lack of progress, the SCA informed DAK, in a letter dated September 12, 1994, that it was reactivating the termination proceedings.

Petitioner thereafter commenced the within proceeding for declaratory judgment and for judgment in the nature of prohibition or mandamus. Petitioner asserts that upon the termination of the general contract, its subcontract with KD was also terminated pursuant to paragraph 38 of the subcontract. It is further asserted that pursuant to paragraph 9 of the subcontract, the subcontract could only be assigned to the SCA when the general contract was terminated for cause. Therefore, petitioner asserts that the assignment was invalid, as the general contract was clearly terminated for reasons of mutual convenience and that the July 15, 1994 default letter is a nullity. Petitioner also asserts that the performance bond could not be assigned, as it provides that it could only be enforced by KD or its heirs, successors, executors or administrators. Petitioner, therefore, seeks a declaration to the effect that the subcontract is not assignable, as a matter of law, that the performance bond is not assignable, as a matter of law, and that the July 15, 1994 default notice is a nullity, as a matter of law. Petitioner further seeks a judgment prohibiting respondent from enforcing the subcontract, and the performance bond, and from taking any action with respect to the notice of termination and default.

Respondent, in opposition, asserts that the subcontract by its terms did not prohibit an assignment when the general contract was terminated by mutual convenience, and that the performance bond, by its terms, did not prohibit an assignment. It is, therefore, asserted that the subcontract and performance bond were assignable. It is further asserted that the assignment of the subcontract was expressly authorized by the terms of the general contract which were incorporated into the subcontract. Finally, SCA asserts that DAK, by its conduct, waived any objections to the assignment of the subcontract.

It is well established that an action for declaratory judgment may be an appropriate vehicle for settling justiciable disputes as to contract rights and obligations. (See, Matter of Public Service Commn. v. Norton, 304 NY 522; 'Kalisch-Jarcho Inc. v. City of New York, 72 NY2d 727.) It is undisputed that the SCA and KD terminated the general contract on May 27, 1994, on the grounds of mutual convenience pursuant to section 9.02 of the general contract.

Section 5.09(B) of the general contract provided, in pertinent part, that each subcontract shall "include a provision under which the Subcontractor agrees that the Subcontractor's obligations shall be assigned to the Authority, at the Authority's election, upon a termination of a Contractor's rights to perform the Contract under either section 9.01 or 9.02 hereof (effective upon the giving of the Authority's Notice of Termination under either Section)." The subcontract, in turn provided as follows:

"9. That the CONTRACTOR shall have the right to terminate this contract by giving notice to the SUBCONTRACTOR (a) if the work required pursuant hereto is discontinued, cancelled or terminated for any reason, or (b) when the OWNER [SCA] deems it to be in its best interest, whereupon this Subcontract shall be deemed terminated on the date specified in such notice, and (c) in the event of termination of the GENERAL CONTRACT, by the OWNER for cause as defined in the General Conditions of the CONTRACT. In the event the OWNER terminates the GENERAL CONTRACT for cause the SUBCONTRACTOR'S obligations pursuant hereto may be assigned to the OWNER, at the OWNER'S election."

Paragraph 38 of the subcontract provides, in pertinent part, "[t]hat in the event the OWNER terminates or cancels the GENERAL CONTRACT for any cause whatsoever at any time after the date hereof, this Subcontract shall likewise be deemed cancelled and terminated and it is understood that the SUBCONTRACTOR shall have no claim of any kind whatsoever against the CONTRACTOR for breach of this subcontract for any cause or reason whatsoever."

KD gave DAK written notice of the termination of the general contract, effective May 27, 1994, and the simultaneous assignment of all subcontracts to the SCA.

At the outset, the court finds that the terms of the general contract, which were incorporated into the subcontract by reference, only served to bind DAK to the prime contract provisions which relate to the scope, quality, character and manner of the work to be performed by the subcontractor. Prime contract provisions unrelated to the work of the subcontract are not incorporated by reference into a subcontract. (See, S. Leo Harmonay Inc. v. Binks Manufacturing Company, 597 F Supp 1014; see also, Guerini Stone Co. v. P.J. Carlin Construction Co., 240 US 264; U.S. Steel Corp. v. Turner Construction Co., 560 F Supp 871.)

The provisions of the general contract between KD and SCA regarding the assignment of the subcontracts to the SCA, therefore, were not, as a matter of law, incorporated into the DAK subcontract.

The provisions of the general contract and the subcontract, when read together, clearly indicates the parties' intent to provide for uninterrupted performance by the subcontract in the event that the general contractor stopped work. The subcontract, paragraph 9, thus, provided that upon termination of the general contract for cause, the subcontract would simultaneously be assigned to the SCA, at the election of the SCA. The subcontract under this provision would continue to exist, and would not be deemed terminated pursuant to paragraph 38. KD's failure to include an assignment provision in the event that the general contract was terminated for mutual convenience appears to have been a breach of the general contract. This failure, however, did not make the assignment of the subcontract void. It is well established that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments. (Allhusen v. Caristo Const. Corp., 303 NY 446; State Bank v. Central Mercantile Bank, 248 NT 428; Sullivan v. Int'l. Fidelity Insurance Co., 96 AD2d 555.) On the other hand, where, as here, no clause exists which specifically eliminated the power as well as the right to assign, the subcontract is assignable. (See, University Mews Associates v Jeanmarie. 122 Misc 2d 434, and cases cited therein.) The subcontract, therefore, was assignable upon the termination of the general contract for reasons of mutual convenience.

The performance bond contains no provision prohibiting its assignment. A right of action upon the performance bond, however, by its terms, is enforceable only by or its "heirs, executors, administrators, or successors". The performance bond, thus, while assignable, may not be enforced by the assignee, as the right of enforcement is clearly restricted.

In view of the foregoing, it is hereby the declaration of this court that petitioner's subcontract with KD was assignable upon the termination of the general contract for reasons of mutual convenience. The court further declares that the performance bond is also assignable, but may only be enforced by the parties enumerated therein, and that the July 15, 1994 notice of default was validly issued. Petitioner's request for Article 78 relief is denied as moot, in light of this court's declarations. Settle judgment.

1/12/95 NYLJ 32, (col. 6)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.